1    IN THE UNITED STATES DISTRICT COURT
     FOR THE NORTHERN DISTRICT OF ILLINOIS
2              EASTERN DIVISION

3   KLEEN PRODUCTS LLC,              )   No. 10 C 5711
                                     )
4                   Plaintiff,       )   Chicago, Illinois
                                     )   October 4, 2010
5                                    )   9:15 o'clock a.m.
    -vs-                             )
6                                    )
                                     )
7   PACKAGING CORPORATION OF         )
    AMERICA, et al.,                 )
8                                    )
                    Defendants.      )
9

10          TRANSCRIPT OF PROCEEDINGS - STATUS
         BEFORE THE HONORABLE MILTON I. SHADUR
11
    APPEARANCES:
12
    For the Plaintiff:      FREED KANNER LONDON & MILLEN LLC
13                          2201 Waukegan Road, Suite 130
                            Bannockburn, Illinois 60015
14                          BY:  MR. STEVEN A. KANNER
                                and
15                          THE MOGIN LAW FIRM
                            707 Broadway, Suite 1000
16                          San Diego, California 92101
                            BY:  MR. DANIEL J. MOGIN
17
    For the Defendant       KIRKLAND & ELLIS LLP
18  Packaging Corp.:        300 North LaSalle Street
                            Chicago, Illinois 60654
19                          BY:  MR. DOUGLAS J. KURTENBACH
                                 MR. DANIEL E. LAYTIN
20
    For the Defendant       NEAL GERBER & EISENBERG
21  International Paper:     Two North LaSalle Street, Suite 1700
                            Chicago, Illinois 60602
22                          BY:  MR. SCOTT J. FISHER

23
    Court Reporter:         ROSEMARY SCARPELLI
24                          219 South Dearborn Street, Room 1412
                            Chicago, Illinois  60604
25                          (312) 435-5815

```
 1   APPEARANCES:   (Cont.)

 2   For the Defendant          MAYER BROWN LLP
     Temple-Inland, Inc.:       71 South Wacker Drive
 3                              Chicago, Illinois 60606
                                BY:  MS. BRITT M. MILLER
 4
     For the Defendant          WINSTON & STRAWN LLP
 5   Smurfit-Stone              35 West Wacker Drive
     Container:                 Chicago, Illinois 60601
 6                              BY:  MR. R. MARK McCAREINS
                                     MR. JAMES F. HERBISON
 7

 8   ALSO PRESENT:              MR. TREY NICOUD

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1           THE CLERK:  10 C 5711, Kleen Products versus

2    Packaging Corporation of America.

3           MR. KANNER:  Good morning, your Honor, Steve Kanner

4    on behalf of plaintiffs from the Freed Kanner firm.  And I

5    would like to present to this Court and introduce Dan

6    Mogin --

7           MR. MOGIN:  Good morning, your Honor.

8           THE COURT:  Good morning.  Welcome.

9           MR. KANNER:  -- on behalf of the plaintiffs, your

10   Honor.

11          MR. FISHER:  Good morning, your Honor, Scott Fisher

12   on behalf of International Paper Company.  And with me is

13   Trey Nicoud whose pro hac application is being entered this

14   morning, I believe, your Honor.

15          MR. NICOUD:  Good morning, your Honor.

16          THE COURT:  Good morning.  Welcome.

17          MR. MCCAREINS:  Good morning, your Honor, Mark

18   McCareins and Jim Herbison from Winston & Strawn on behalf of

19   Smurfit Stone Container.

20          MS. MILLER:  Good morning, your Honor, Britt

21   Miller, Mayer Brown, on behalf of the Temple-Inland.

22          THE COURT:  All right.  Anybody here for

23   Weyerhaeuser or --

24          MR. KURTENBACH:  Your Honor, I am Doug Kurtenbach,

25   and I am here with Dan Laytin on behalf of Packaging

1    Corporation of America.  And I think that is the group.

2              MR. NICOUD:  Your Honor, with respect to

3    Weyerhaeuser, International Paper Company purchased the

4    business assets of Weyerhaeuser relating to this business.

5              THE COURT:  Ah.

6              MR. NICOUD:  And we -- we are still in the process

7    of determining whether Weyerhaeuser will have separate

8    counsel or not.

9              THE COURT:  And what is Norampac?

10             MR. NICOUD:  Norampac, your Honor, is a joint

11   venture, I believe, among Cascades and Domtar.  At least at

12   one point I believe that is the circumstance.

13             THE COURT:  All right.  I was just trying to figure

14   out -- you can't get players without a score card, I guess.

15   This is the first time all of you people have assembled, you

16   know, in connection with this lawsuit.  And I suppose I ought

17   to say something in the interests of full disclosure,

18   although I don't think it is something that would require

19   recusal.

20             One of the things that drove me to law school, one

21   of the principal things, was that after I emerged from the

22   service after World War II I was a partner with my brother in

23   the paper box industry -- and paper box, that is a

24   glorification -- a small paper box company in Des Moines,

25   Iowa.  And I -- I know we wondered at the time how it was

1    that the only supplier that we could deal with -- now, you

2    understand this was not corrugated.  This was paper boxes,

3    you know, the shirt boxes, candy boxes and so on, in which

4    you, know, you buy -- you don't buy in rolls, you buy in

5    sheets.  And you try to figure out in advance what size sheet

6    you need for what size box.

7              And I was saying, my brother and I wondered why it

8    was that the only outfit we could deal with was the Tama

9    Mills in Tama, Iowa.  And I didn't know until years later,

10   you see, when I not only got to law school but emerged from

11   law school, we were targets of what turned out to be an

12   antitrust conspiracy, which turned out to be the litigation

13   that all of us know about in Philadelphia, Pennsylvania.

14             So I -- I am not ascribing anything to the

15   defendants here.  I simply wanted to let you know that I had

16   some -- in my misspent youth I had some contacts with the --

17   with the problem of this nature of the kind that is charged

18   here, and I learned much later actually existed there.

19             So I -- as I say, I put that in category of

20   disclosure but not something that, as I think of it, would

21   call for my recusal in this case because, I can assure you, I

22   have no factual predilections here.

23             So now I see -- and, by the way, and that is the

24   reason that -- although I didn't realize that we were going

25   to assemble so many people at such great expense, I

1    ordinarily -- you know, when I am asked for extensions of

2    time, that is sort of a no-brainer and I simply grant that as

3    a matter of course.  But I did feel a responsibility to

4    apprize everybody of the -- this background situation.

5          Now, with that said, I also noted that the -- that

6    there are other actions pending and -- and that is the other

7    reason that I wanted you people to assemble, because what is

8    talked about here is a consolidation.  And, of course,

9    consolidation is a term of art.  It is something that is

10   specifically provided for in the Federal Rules of Civil

11   Procedure, but it doesn't automatically flow from the

12   presence of related actions.

13         The -- our concept, as I think everybody knows,

14   under Local Rule 40.4 of reassignment on grounds of

15   relatedness requires not only relatedness, which is an easy

16   one, because that is -- there are four things in -- in

17   40.4(a).  They are stated in disjunctive.  And almost any

18   action is going to be related to any other one on some

19   concept of that.  The tough part is 40.4(b) which is stated

20   in the conjunctive and all four things have to be satisfied

21   in order to do that.

22         So very often what we get in our Court is that

23   actions that have been assigned at random, as they always

24   are, to different judges' calendars may stay on the calendars

25   of those judges, with the most usual arrangement being that

1    the judge with the lowest-numbered case may act sort of to

2    monitor the discovery process, and -- and usually coupled

3    with orders in individual courts that say that discovery in

4    Case A is also going to apply to Case B, so you don't have to

5    be plowing the same field all over again.  You take a

6    deposition, a person's deposition, once.  Anybody who is a

7    participant in any of the cases, you know, participates in

8    the deposition so you don't have to repeat it.

9           So I make this point so that when you talk about a

10   consolidated complaint as in prospect, that the thing that I

11   think would have to be done first would be to have a motion

12   for reassignment on grounds of relatedness to bring all the

13   cases on the calendar of the same judge.

14          Now, although very often lawyers who, you know,

15   don't fully follow or aren't accustomed to following our

16   local rule may founder on -- usually on the fourth part of

17   40.4(b), which is the -- that the things can be resolved in a

18   single proceeding because single proceeding, as we have

19   applied it, always means a single trial.  And that doesn't

20   necessarily follow, you know, but it sounds to me as though

21   it may be likely that these actions could qualify for that.

22   But I want to leave that to you people to sort out.

23          But my notion is that probably step one ought to

24   be, if it fits, to file a motion for reassignment on

25   relatedness grounds.  I guess I have got the lowest-numbered

1    one, so I would be stuck anyway.  And then at that point

2    consider the possibility whether you can or cannot actually

3    go to consolidate.  I think it is Rule 42 that deals with

4    that.

5              Now, is there anybody who either doesn't have

6    familiarity with that or for whom my suggestion you think

7    creates a possible problem?  Anybody?

8              Okay.  So I have no problem with the extension of

9    time and -- and that is granted.  And I would -- I will

10   simply -- let me get this -- and, you see, you framed that in

11   terms of days after filings and so on.  And you have

12   committed the cardinal sin that you have to pick numbers that

13   are divisible by seven, which is what we always do these

14   days.  They finally caught up to the calendar, you know, and

15   so all the -- all the rules have been amended now.  So we are

16   talking about 49 and 91 and so on.  Okay?

17             So I am not going to grant the part of it that sets

18   a time frame yet because you will want to think about that.

19   I am simply granting sort of an open-ended extension of time.

20   And what I do instead is to set a status date that will give

21   you time to consider the things I have talked about, and it

22   is really a place-keeping date more than anything else

23   because what will happen is that once you do that and have

24   talked among yourselves about the timing here, then you can

25   let Sandy know and, if need be, I will simply change the date

1    in addition to granting whatever motion has to be dealt with

2    there.

3         So with that in mind, I suppose that maybe

4    something like 63 days would be a decent period of time.  And

5    63 days would put us into December.  Wait just a minute.

6    December 13th.  That is a Monday.  That is 63 days.

7         Now, again, there is no magic about that date.  It

8    is likely to get replaced for the reasons I have just talked

9    about.  So unless there is something specially bad about that

10   for anybody, let's call it 63 days for status.  That is

11   December 13th at 9:00 o'clock for status.  That vacates my

12   previous setting which had been November 4th.  So that

13   November 4th is replaced by December 3rd -- 13th, rather, at

14   9:00 o'clock.  And in the meantime I will look forward to

15   getting whatever you resolve doing as a result of this

16   morning's discussion.

17        Now, is there anything else you think ought to be

18   taken care of now?

19        MR. KANNER:  Your Honor, Steve Kanner again for

20   plaintiffs.

21        THE COURT:  Yeah.

22        MR. KANNER:  You have contemplated most of the

23   issues that we would have raised today, and so we appreciate

24   that.  And we appreciate your disclosure certainly, your

25   Honor.  We intend to file a motion for relatedness.  We were

1  simply waiting, because we understand from other counsel,

2  that additional complaints may be filed.  I would like to

3  avoid filing duplicative motions.  And so your Honor's date

4  of 63 days --

5           THE COURT:  Why don't you -- why don't you file it.

6  And then as others may come in, if they are really

7  duplicative, you can just treat those as follow-up motions.

8  I mean why wait --

9           MR. KANNER:  I am perfectly --

10          THE COURT:  -- until you think that -- that people

11  who are out there in the woodwork are going to emerge at some

12  point?  You don't know who they are and you don't know when

13  they are going to file something.  So it seems to me --

14          MR. KANNER:  We will do so, your Honor.

15          THE COURT:  -- it doesn't seem to make a lot of

16  sense simply to wait on the possibility.

17          MR. KANNER:  Well, it is more than that.  We have

18  heard from other firms about their interest in filing.  If

19  nothing is filed by the end of this week --

20          THE COURT:  Yeah.

21          MR. KANNER:  -- we will move ahead with that.

22          THE COURT:  That is fine.

23          Anybody else have anything that hasn't been covered

24  here?

25          MR.  No, your Honor.  Thank you.

1      MR. FISHER:  Thank you.

2      THE COURT:  All right.  Thank you all.

3      MR. KANNER:  Thank you for having us.

4      MR. MOGIN:  Have a nice day.

5      MR. MILLER:  Thank you.

6      MR. MCCAREINS:  Thank you.

7      MR. HERBISON:  Thank you.

8      MR. KURTENBACH:  Thank you.

9      MR. LAYTIN.  Thank you.

10     (Which were all the proceedings heard.)

11                     CERTIFICATE

12     I certify that the foregoing is a correct transcript

13     from the record of proceedings in the above-entitled matter.

14

15     s/Rosemary Scarpelli/        Date:  October 7, 2010

16

17

18

19

20

21

22

23

24

25