```
 1            IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                    EASTERN DIVISION

 3    KLEEN PRODUCTS LLC, et al.,      )  No. 10 C 5711
                                       )
 4                     Plaintiffs,     )  Chicago, Illinois
                                       )  November 24, 2009
 5                                     )  9:30 o'clock a.m.
      -vs-                             )
 6                                     )
                                       )
 7    PACKAGING CORPORATION OF         )
      AMERICA, et al.,                 )
 8                                     )
                       Defendants.     )
 9

10               TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE MILTON I. SHADUR
11
      APPEARANCES:
12    For the Plaintiffs:      FREED KANNER LONDON & MILLEN LLC
                               2201 Waukegan Road, Suite 130
13                             Bannockburn Illinois 60015
                               BY:  MR. STEVEN A. KANNER
14                                  MR. MICHAEL J. FREED
                                        and
15                             THE MOGIN LAW FIRM
                               707 Broadway, Suite 1000
16                             San Diego, California  92101
                               BY:  MR. DANIEL J. MOGIN
17
      For Plaintiff Thule:     MILLER LAW LLC
18                             115 South LaSalle Street, Suite 2910
                               Chicago, Illinois 60603
19                             BY:  MR. MARVIN A. MILLER
                                        and
20                             ROBBINS GELLER RUDMAN & DOWD LLP
                               655 West Broadway, Suite 1900
21                             San Diego, California
                               BY:  MS. ALEXANDRA S. BERNAY
22

23    Court Reporter:          ROSEMARY SCARPELLI
                               219 South Dearborn Street
24                             Room 1412
                               Chicago, Illinois  60604
25                             (312) 435-5815
```

1    APPEARANCES:   (Continued)

2    For Defendant              KIRKLAND & ELLIS LLP
     Packaging Corporation     300 North LaSalle Street
3    of America:               Chicago Illinois 60654
                               BY:  MR. DANIEL E. LAYTIN
4
     For Defendant              GIBSON DUNN & CRUTCHER LLP
5    International Paper:       555 Mission Avenue, Suite 3000
                               San Francisco California 94105
6                              BY:  MR. GEORGE A. NICOUD, III
                                         and
7                              EIMER STAHL KLEVORN & SOLBERG
                               224 South Michigan Avenue
8                              Suite 1100
                               Chicago, Illinois 60604
9                              BY:  MR. NATHAN P. EIMER
                                    MR. JOHN K. THEIS
10
     For Defendant              K&L GATES LLP
11   Cascades, Inc. and        70 West Madison Street, Suite 3100
     Norampac Industries:      Chicago Illinois 60602
12                             BY:  MR. SCOTT M. MENDEL

13   For Defendant              McDERMOTT WILL & EMERY
     Weyerhaeuser Company:     227 West Monroe Street, Suite 4400
14                             Chicago, Illinois 60606
                               BY:  MS JENNIFER A. DIVER
15
     For Defendant              FIGLIULO & SILVERMAN
16   Georgia Pacific:          Ten South LaSalle Street, Suite 3600
                               Chicago, Illinois 60603
17                             BY:  MR. JAMES R. FIGLIULO
                                         and
18                             QUINN EMANUEL URQUHART
                               & SULLIVAN LLP
19                             51 Madison Avenue, 22nd Floor
                               New York, New York 10010
20                             BY:  MR. STEPHEN R. NEUWIRTH

21   For Defendant              MAYER BROWN LLP
     Temple-Inland, Inc.:      71 South Wacker Drive
22                             Chicago, Illinois 60606
                               BY:  MR. ANDREW S. MAROVITZ
23

24

25

```
 1   APPEARANCES:  (Cont.)

 2   For Smurfit-Stone          WINSTON & STRAWN LLP
     Container Corporation:     35 West Wacker Drive
 3                              Chicago, Illinois 60601
                                BY:  MR. R. MARK McCAREINS
 4                                   MR. JAMES F. HERBISON

 5   ALSO PRESENT:              SIDLEY & AUSTIN LLP
                                One South Dearborn Street
 6                              Chicago, Illinois 60603
                                BY:  MR. MATTHEW A. CLEMENTE
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    THE CLERK:  This is 10 C 5711, Kleen Products

2    versus Packaging Corporation of America.

3    THE COURT:  If there are more persons than one out

4    on the phone, first identify yourselves, if you would, for

5    the record.  And then if you have an occasion to talk again,

6    make sure that you give your name up front so that our court

7    reporter can match it with what is -- what is being said with

8    who says it.  Okay?

9    MR. NEUWIRTH:  Thank you, your Honor.  This is

10   Stephen Neuwirth from Quinn Emanuel Urquhart & Sullivan for

11   defendant Georgia Pacific.

12   THE COURT:  And you are the only one on the phone?

13   MR. THEIS:  No, your Honor.  This is Jack Theis

14   from Eimer Stahl Klevorn & Solberg on behalf of International

15   Paper.

16   THE COURT:  Okay.  And then --

17   MS. BERNAY:  Good morning, your Honor, Alexandra

18   Bernay from Robbins Geller Rudman & Dowd on behalf of

19   plaintiff Thule.

20   THE COURT:  Okay.  And that is it on the phone?

21   MR. MOGIN:  Good morning, your Honor, this is

22   Daniel Mogin on behalf of the other plaintiffs.

23   THE COURT:  Okay.  Now I guess we have to go from

24   left to right as I have it and the court reporter has it, and

25   so let's do that.

```
 1              MR. KANNER:  Good morning, your Honor, Steve Kanner
 2   from the Freed Kanner firm in Chicago here on behalf of the
 3   plaintiffs.
 4              MR. MILLER:  Good morning, your Honor, Marvin
 5   Miller on behalf of Thule.
 6              MR. FREED:  Good morning, your Honor, Michael Freed
 7   on behalf of class plaintiffs other than Thule.
 8              MR. McCAREINS:  Good morning, your Honor, Mark
 9   McCareins and Jim Herbison on behalf of Smurfit Stone.
10              MR. EIMER:  Good after -- good morning, your Honor,
11   Nate Eimer on behalf of International Paper.
12              MR. NICOUD:  Good morning, your Honor, Trey Nicoud
13   also on behalf of International Paper.
14              MS. DIVER:  Good morning, your Honor, Jennifer
15   Diver on behalf of Weyerhaeuser Company.
16              MR. FIGLIULO:  Good morning, Jim Figliulo on behalf
17   of Georgia Pacific.
18              MR. MENDEL:  Scott Mendel on behalf of defendants
19   Cascades and Norampac.
20              MR. MAROVITZ:  Good morning, your Honor, Andy
21   Marovitz on behalf of Temple-Inland.
22              MR. LAYTIN:  Dan Laytin for PCA.
23              THE COURT:  Well, good morning to all of you.  As
24   always, I shudder when I try to figure out the total hourly
25   rate that we are looking at here, but put that aside.  And I
```

1   am very appreciative for all of you making yourselves

2   available on short notice, but -- and there is no reason you

3   have to be standing around for this.  I want to tell you

4   where I am and why I have called this meeting.  Okay?  So you

5   can all be seated, if you will.

6           This request that I have made has been occasioned

7   by my having reviewed the submissions that were made in the

8   Bankruptcy Court in Delaware, although I didn't get a chance

9   to read the most recent one that just got tendered to me.

10  But I don't know if that may be another copy of the November

11  19th reply brief which I had already received.  So if that is

12  the thing that got delivered physically, I have already read

13  that.  Okay.

14          And that in turn caused me to review once again the

15  Consolidated Complaint in this antitrust case.  If I may be

16  blunt, counsel for Smurfit-Stone are seeking to obtain an

17  order from the Bankruptcy Court that I believe it has no

18  jurisdiction to entertain, and I would be remiss if I were

19  not to order counsel for Smurfit-Stone and plaintiffs'

20  counsel who are before me to apprise the bankruptcy judge of

21  why I have concluded that.

22          Let me explain.  It is just flat-out misleading to

23  characterize the lawsuit before me as seeking relief from

24  Smurfit-Stone that is at odds with its discharge in

25  bankruptcy.  That I do not regard as accurate and I think --

1    although I don't like to say this, I think that

2    Smurfit-Stone's counsel really ought to know that.  Although

3    the class period is defined in Paragraph 1 of the complaint

4    as running from May 2005 to the present day, and that is true

5    as to all other defendants, that is, all defendants other

6    than Smurfit-Stone, the provision of Paragraph 22 of the

7    complaint cannot be more clear.  After reciting the facts, as

8    it does, about Smurfit-Stone's entry into and its emergence

9    from Chapter 11 proceedings with a discharge, the complaint

10   says this:  "This complaint seeks to recover damages from

11   Smurfit-Stone for post-discharge conduct only and in no way

12   seeks to violate any orders of the above-referenced

13   Bankruptcy Court," and then goes on to identify some specific

14   post charge -- post-discharge actions that were allegedly

15   taking place in furtherance of a conspiracy.

16              Now that disclaimer, I suggest, could not be more

17   express.  And I can assure you of one thing, and that is that

18   the plaintiffs are going to be held to that in my court.  And

19   what do I get offered up in the way of responses from

20   Smurfit-Stone?  What I view as inaccurate and impermissible

21   arguments, based on all the allegations of the complaint that

22   speak, it is true, of Smurfit-Stone's predischarge conduct.

23              Now why do I say that that is really misleading?

24   It is because that contention, I believe, impermissibly

25   conflates evidence with claims.  It is an ironic coincidence

1    that all of you were, I guess, sitting in court when I just

2    was talking to the young lady about the employment

3    discrimination case and made exactly that distinction.  And I

4    will -- I certainly wouldn't expect all you gurus in the

5    antitrust field to be generalists, as used to be the case in

6    ancient days, and to know, for example, about employment

7    discrimination, but that is exactly the same proposition,

8    that is, the conduct that was present, or allegedly present

9    -- I shouldn't be misunderstood as making any findings.  I am

10   not.

11         But things that would be predischarge that could be

12   considered, for example, on the issue whether Smurfit-Stone

13   was possessed of the prohibited intent that might be an

14   element of the antitrust claim of fixing prices in restraint

15   of trade are certainly permissible.  And the fact that

16   Smurfit-Stone has been washed clean of any potential for

17   damages on that score does not alter the fact that those

18   allegations may well be considered by the Court.

19         Again, you know, it is -- as I say, it was really

20   ironic because I hadn't anticipated when I asked you to come

21   in that I was going to be dealing with precisely the same

22   phenomenon in a case in another area of the law.  But it is

23   just the same, that is, the idea that liability does not

24   control -- or the lack of liability does not control, the

25   appropriateness of allegations that are in the -- that are in

1   the complaint that deal with a time period for which

2   Smurfit-Stone no longer has any potential liability of the

3   type that the Bankruptcy Court could deal with appropriately.

4           Now my colleagues and I are constantly

5   encountering, I will say, misguided defense lawyers who

6   sometimes move, for example, to strike allegations relating

7   to the earlier time frame, the same sort of thing that I

8   dealt with not ten minutes before all of you stepped up here.

9   That is wrong.  And it is equally wrong here.

10          Now I can tell you I don't have any desire to

11  create a tug of war or any kind of conflict with the

12  bankruptcy judge in Delaware.  But what you are asking the

13  judge to do is to enjoin litigation that addresses, so far as

14  Smurfit-Stone is concerned, only a period over which the

15  Bankruptcy Court has no jurisdiction.  Now every federal

16  judge has an affirmative duty to police jurisdiction.  As I

17  know all the practitioners in this district are aware, I

18  regularly address sua sponte cases in which federal

19  jurisdiction is absent, either dismissing or remanding those

20  cases, as the case may be.

21          There is no lesser duty, as I view it, to protect

22  and preserve jurisdiction where it clearly exists, as it does

23  here.  If injunctive relief is indeed called for, I suppose

24  that I ought to have no hesitancy in acting to enjoin

25  Smurfit-Stone from the effort to impede this Court's

1    jurisdiction.

2         Anyway, so much for my unkind comments.  But I felt

3    compelled to deal with that because, as I understand it, you

4    know, you people have teed up in front of the bankruptcy

5    judge in Delaware something that urges the bankruptcy judge

6    to do something that I think is inappropriate and that is, as

7    I would emphasize again, outside of the jurisdiction of that

8    court.  The Bankruptcy Court would have no business, of

9    course, enjoining or stopping this proceeding to the extent

10   that it seeks post-discharge responsibility on

11   Smurfit-Stone's part.

12        So with my having said that, I suppose I would like

13   to ask Smurfit-Stone what -- now, I read your stuff, but I've

14   got to tell you I found it unpersuasive.  But maybe you have

15   got something that would overcome what I have just said.

16        MR. McCAREINS:  Your Honor, Mark McCareins on

17   behalf of Smurfit-Stone in the antitrust case.  Two comments.

18   First, since there is no motion pending before your Honor on

19   this point, how would you envision memorializing your Court's

20   ruling which you just gave?

21        THE COURT:  I have specifically delivered it to you

22   orally, and there is a record of that.  And when you want to

23   know about memorializing it, the Court's statement is

24   memorialized.  And I've got to tell you I did this quite

25   deliberately.

1        Again, when I said I don't want to create a tug of

2    war, I don't want a -- I don't want to get a bankruptcy

3    judge's nose out of joint out of the sense that I have

4    intermeddled with the Bankruptcy Court's jurisdiction,

5    because I haven't.  But I would also be remiss, as I say, if

6    the bankruptcy judge didn't have before him the views of this

7    Court in connection with what is -- has been tendered there

8    as a request for preliminary injunctive relief that I think

9    is out of bounds.  And so that is -- I didn't -- you know, I

10   haven't -- although I am -- as you know, I am not hesitant to

11   commit myself to paper, and it is not just the fact that my

12   secretary happens to be away in Hawaii on vacation.  That is

13   not really the issue.

14       But I felt that it would be most appropriate, given

15   what I understand to be the timetable and the fact that the

16   issues have been posed to the Bankruptcy Court, at a minimum

17   I think that report should be made to the Bankruptcy Court

18   about the views that I have just expressed.

19       Now, I am not -- you know, I am not going to order

20   the Bankruptcy Court to do anything.  Of course not.  But I

21   do have power over the litigants, and so if I were to say,

22   "Smurfit-Stone, subside," I would expect they wouldn't want

23   to run the risk of contempt over here.  But who wants -- who

24   wants to do something like that?  I don't.  But again, you

25   know, I thought through this thing, as you might gather, and

1   I read through the Complaint, and it confirmed exactly what I

2   had thought from day one.

3           And somehow the -- what I consider misguided is the

4   effort to sort of scrap the allegations in the Complaint that

5   it is quite true do not serve as a basis for liability for

6   Smurfit-stone because it is discharged, it is washed clean of

7   anything in terms of potential liability for those earlier

8   acts, if they occurred.  Don't misunderstand, if they

9   occurred.  But to say those don't belong in the Complaint

10  because of the fact that there is no liability is a

11  misunderstanding, I think, of what the law is and ought to

12  be.  And you could not -- you know, we are dealing with good

13  lawyers on all sides here.  And I don't think that the

14  Consolidated Complaint could have been more precise and more

15  obvious and more clear and more accurate in what I just read

16  than it has been.

17          So that is -- that is my message to you, and I

18  would hope that a word to the many wise ones here would be

19  sufficient.

20          MR. McCAREINS:  One other thought.  I am not

21  counsel to Smurfit in the bankruptcy matter.

22          THE COURT:  Yeah.

23          MR. McCAREINS:  Matt Clemente from Sidley & Austin

24  is here who represents Smurfit in the bankruptcy proceeding.

25          MR. CLEMENTE:  Good morning, your Honor.

1          MR. McCAREINS:  And, Matt, would you like to

2     address any of these issues?

3          THE COURT:  Sure.

4          MR. CLEMENTE:  I would.  Thank you, your Honor.

5     For the record, Matt Clemente, Sidley Austin, on behalf of

6     Smurfit-Stone Container Corporation.  And, your Honor, I do

7     appreciate your comments.  And just as an initial matter, we

8     will be certain to inform Judge Shannon of your comments

9     today.  So rest assured we will absolutely take care to do

10    that.

11         Your Honor, as you may or may not know, I have been

12    counsel to Smurfit throughout its Chapter 11 reorganization

13    proceedings which concluded on June 30, 2010, with the entry

14    of a confirmation order, a key provision of which, as your

15    Honor is aware, is a discharge and a discharge injunction.

16         THE COURT:  Right.  And you are out.  Okay.

17         MR. CLEMENTE:  Well, we are out.  However, your

18    Honor, I was slightly disturbed by what I heard your Honor

19    say today for obvious reasons.  Are you suggesting that we

20    are out, but we are not really out?

21         THE COURT:  Oh, no, on the contrary.  What I am

22    saying -- you know, here:  For example, Smurfit-Stone clearly

23    has to respond to discovery.  The fact that it is discharged

24    from liability for that doesn't say that it is -- that from

25    the beginning of the world to the date of June 30th has

1    vanished from the scene.  It hasn't.  It existed.  And

2    whatever happened during that earlier period may be relevant

3    in this action to the extent that it bears upon

4    Smurfit-Stone's potential liability from the time of

5    discharge forward.  If --

6            MR. CLEMENTE:  That is where, your Honor, we would

7    have a slight disagreement.

8            THE COURT:  Suppose that somebody murdered somebody

9    else and then has -- and then a conviction is vacated for

10   that.  And then the person comes along and kills somebody

11   else afterwards.  The idea that the Court should put on

12   blinders in terms of sentencing and say, "Oh, well, that

13   never existed," is just unrealistic.  You know, in the

14   criminal field as well we often look at situations in which

15   there is no potential for punishment or for sanctions or

16   anything else in an earlier time, and yet we are aware of the

17   matter and take it into account.  No different, really.

18           MR. CLEMENTE:  Your Honor, I would actually

19   respectfully disagree with that, although I --

20           THE COURT:  You can.

21           MR. CLEMENTE:  Although I believe reorganization

22   proceedings are crucially important, it is clearly not on the

23   level of murder proceedings.  I wouldn't purport to suggest

24   that.

25           But what we have here, your Honor, is a situation

1    where a group of plaintiffs who have not disputed the notice

2    of the bankruptcy process, have not disputed the things that

3    give rise to a claim that accrued prior to the discharge,

4    made a decision to wait until after the discharge was entered

5    to prosecute this particular proceeding.  And then they are

6    using --

7              THE COURT:  So what is wrong with that?

8              MR. CLEMENTE:  I am going to get to that, your

9    Honor.  Then they are using the strength of allegations

10   related to predischarge conduct.  Your Honor, we also

11   examined the Complaint, including the speaking notice that

12   was filed yesterday in front of your Honor.  And if I might

13   quote:  "Such allegations are clearly relevant to this

14   antitrust case; however, since they provide background

15   concerning Smurfit-Stone's participation in an illegal

16   conspiracy, which knowledge was carried over by senior

17   executives to Smurfit-Stone in its post bankruptcy conduct."

18   Your Honor, what they are trying to do is they are trying to

19   say, "We had a claim prior to the discharge.  We chose not to

20   pursue it.  Now we are going to pursue that very same claim

21   and say, you know what, we are just going to limit liability

22   for post-discharge conduct, but we are going to bootstrap" --

23             THE COURT:  Not in my court are they going to be in

24   a position to do what you characterize as pursue a claim.

25   There is one way to pursue a claim, and that is to seek to

1    obtain a judgment.  That is how you pursue a claim.  They are

2    clearly not going to get any kind of relief, any kind of

3    judgment that stands -- that is based upon -- predischarge

4    conduct.  That is a very different phenomenon from the one

5    that I talked about, and that is that predischarge conduct

6    may well be taken into account.  And by the way, you know, I

7    read their response.  I wasn't -- I was not taken by the fact

8    that they chose to rehash early on all of the substantive

9    part because that is really -- I am talking about their

10   response in the Bankruptcy Court.

11             MR. CLEMENTE:  I understand, your Honor.

12             THE COURT:  Because that, as far as I am concerned,

13   was really irrelevant.  They are not -- they are not proving

14   their case before the Bankruptcy Court in Delaware.

15             MR. CLEMENTE:  I understand, your Honor.

16             THE COURT:  And they shouldn't try.  But again I

17   think that what you have said really does not face up to the

18   points that I have made, and that is that -- that I am going

19   to be very careful, I can assure you, to separate out any

20   prospect of seeking liability for pre -- for predischarge

21   conduct.

22             But the notion that, as I say, the Court should don

23   blinders and not take matters into his -- suppose -- again,

24   you know, it really is a parallel.  If there is -- if what we

25   have as a necessary ingredient of an antitrust claim is bad

1    intent, okay, and bad intent can be manifested by earlier

2    conduct that creates inferences about current intent -- that

3    happens all the time and it does not get in the way of

4    404(b), incidentally, because it is one of the things that

5    404(b) quite expressly excludes from the notion of

6    inadmissibility.

7            So again I think we are functioning somewhat at

8    cross-purposes, because I know you have got -- you know, you

9    have got a mindset that is -- that is a proper advocate's

10   mindset.  But I've got to tell you I am not bringing an

11   advocate's point of view to this one.  I am bringing what is

12   an objective and, I trust, judicial -- and I trust as well

13   judicious -- point of view to the point that I am dealing

14   with.

15           So you people go ahead and -- but I've got to tell

16   you, I would urge that given the characterization that I have

17   just placed, it is not well-considered to be seeking an

18   injunction against their proceeding on a post-discharge

19   theory of liability against Smurfit-Stone and to place that

20   before a Bankruptcy Court that really has no jurisdiction.

21   Once the discharge is made, that is out.

22           And indeed there are a number of cases that they

23   cited that basically say that a party that has been

24   discharged from bankruptcy is not then insulated from

25   post-discharge responsibility for whatever conduct that might

1  be actionable.  That is all we are going to be looking at

2  here.

3         Again I can assure you I am not going to permit

4  anything other than the representation that they have made

5  here in the paragraph that I read as establishing any

6  predicate for a potential liability on the part of

7  Smurfit-Stone.

8         But if it is engaged indeed in a conspiracy, the

9  notion that it should not be responsible, when the alleged

10 co-conspirators are, would I think really offend the justice

11 system.  Why should -- why should you be -- go clean, if that

12 is true -- and again I emphasize I am not making any findings

13 -- when everybody else may be on the hook?  It is just not

14 right, and it is not the law.

15         MR. CLEMENTE:  Your Honor, if I may, the only

16 distinction that I would continue to urge your Honor to

17 consider is, again, had this claim been brought in a

18 bankruptcy context as an initial matter, like we believe it

19 should have been, there would have been an adjudication,

20 perhaps in front of a nonbankruptcy forum.  I am not

21 suggesting it would have been Judge Shannon ultimately making

22 that adjudication.  But what would have not have happened if

23 -- had that claim been adjudicated and dealt with in the

24 bankruptcy process, three months later an additional

25 complaint could have been filed alleging pre-petition --

1    predischarge conduct being relevant to that post-discharge

2    claim that they are alleging.  That is the point that we are

3    trying to make, your Honor.  There is a distinction there

4    that they cannot stand on the sidelines while the bankruptcy

5    process goes forward, okay, and then arise three months later

6    and say --

7              THE COURT:  The consequence -- the consequence of

8    their, as you put it, having stood on the side is that they

9    have no ability to advance a claim based on the predischarge

10   conduct.  That is the consequence.  They are stuck.  Okay?

11   But the idea that you should somehow ease yourself out of

12   this lawsuit on that basis is just wrong.

13             And I know that we all get boring when we repeat

14   ourselves, and I am no exception to that.  But I've got to

15   tell you that you really have not -- I think you may have

16   lost your moorings on that one, because you haven't really

17   thought through what the effect is of, as you put it, their

18   not having presented that to the Bankruptcy Court.  Suppose

19   they had.  What would have happened is exactly the same thing

20   that has happened now, and that is the Bankruptcy Court would

21   have rejected it as one of the claims --

22             MR. CLEMENTE:  Correct.

23             THE COURT:  -- and it is gone as a claim.  Again,

24   that doesn't go to the issue --

25             MR. CLEMENTE:  And it would have been dealt with in

1    the bankruptcy context and it would have been treated in

2    accordance with the bankruptcy plan.  What we have now here,

3    your Honor, is a post -- an alleged post-discharge claim that

4    is being proven -- or allegedly being proven based on

5    predischarge conduct that would allow collection of monies to

6    advance on top of --

7              THE COURT:  Did you ever see Cool Hand Luke?

8              MR. CLEMENTE:  Part of it, I must admit, your

9    Honor.

10             THE COURT:  "What we have here is a failure to

11   communicate."  And you just haven't gotten it.

12             MR. CLEMENTE:  No, your Honor, I do get where you

13   are coming from, your Honor.

14             THE COURT:  I guess not.  But I really have said

15   all that I have to say this morning.

16             I thought it was important to get the message over

17   to everybody, because it affects this Court's jurisdiction.

18   And this Court has just as much of an obligation, as I say,

19   to preserve its jurisdiction as it does to reject

20   jurisdiction if it doesn't exist.  So that is where we are.

21   Okay?

22             Thank you all.

23             MR. CLEMENTE:  Thank you, your Honor.

24             MR. McCAREINS:  Thank you, your Honor.

25             MR. EIMER:  Have a nice holiday.

```
 1            THE COURT:  Pardon?

 2            MR. EIMER:  Have a nice holiday.

 3            THE COURT:  Thank you.  You too.

 4            MR. EIMER:  Thank you.

 5            THE COURT:  I guess all but Smurfit-Stone.

 6       (Which were all the proceedings heard.)

 7                      CERTIFICATE

 8       I certify that the foregoing is a correct transcript

 9  from the record of proceedings in the above-entitled matter.

10

11  s/Rosemary Scarpelli/        Date:  November 24, 2010

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```