```
 1                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                           EASTERN DIVISION

 3
     KLEEN PRODUCTS, LLC, et al.     )
 4                                   )
                       Plaintiffs,   )
 5                                   )  Case No. 10 C 5711
     -vs-                            )
 6                                   )  Chicago, Illinois
     PACKAGING CORPORATION OF        )  December 13, 2010
 7   AMERICA, et al.,                )  9:15 a.m.
                                     )
 8                     Defendants.   )

 9
                      TRANSCRIPT OF PROCEEDINGS
10             BEFORE THE HONORABLE MILTON I. SHADUR

11   APPEARANCES:

12   For Kleen and other
     Plaintiffs:            MR. STEVEN A. KANNER
13                          MR. MICHAEL E. MOSKOVITZ
                            MR. MICHAEL J. FREED
14                          Freed Kanner London & Millen, LLC
                            2201 Waukegan Road
15                          Suite 130
                            Bannockburn, IL  60015
16                          (224) 632-4500

17                          MR. DANIEL J. MOGIN
                            The Mogin Law Firm
18                          707 Broadway
                            Suite 1000
19                          San Diego, CA  92101
                            (619) 687-6611
20

21   Court Reporter:

22         KATHLEEN M. FENNELL, CSR, RPR, RMR, FCRR
                      Official Court Reporter
23                United States District Court
         219 South Dearborn Street, Suite 2144-A
24                 Chicago, Illinois  60604
                  Telephone:  (312) 435-5569
25                   www.Kathyfennell.com
```

```
 1   APPEARANCES:  (Continued)

 2   For Plaintiffs Thule: MR. MARVIN A. MILLER
                           Miller Law LLC
 3                         115 S. LaSalle Street
                           Suite 2910
 4                         Chicago, IL  60603
                           (312) 332-3400
 5
                           MS. BONNY E. SWEENEY
 6                         Robbins Geller Rudman & Dowd, LLP
                           655 West Broadway
 7                         Suite 1900
                           San Diego, CA  92101
 8                         (619) 231-1058

 9   For Defendant
     Packaging Corporation
10   Of America:           MR. BARACK S. ECHOLS
                           MR. DANIEL E. LAYTIN
11                         Kirkland & Ellis, LLP (Chicago)
                           300 N. LaSalle Street
12                         Chicago, IL  60654
                           (312) 862-2000
13
     For Defendant
14   International Paper:  MR. NATHAN P. EIMER
                           Eimer Stahl Klevorn & Solberg, LLP
15                         224 S. Michigan Avenue
                           Suite 1100
16                         Chicago, IL  60604
                           (312) 660-7600
17
                           MR. GEORGE A. NICOUD, III
18                         Gibson, Dunn & Crutcher, LLP
                           555 Mission Avenue
19                         San Francisco, CA  94105
                           (415) 393-8308
20
     For Defendants
21   Norampac and
     Cascades:             MR. SCOTT M. MENDEL
22                         K&L Gates LLP
                           70 West Madison
23                         Suite 3100
                           Chicago, IL  60602
24                         (312) 372-1121

25
```

```
 1  APPEARANCES:   (Continued)

 2  For Defendant
    Weyerhaeuser:        MS. JENNIFER A. SMULIN DIVER
 3                       McDermott Will & Emery, LLP
                         227 W. Monroe Street
 4                       Suite 4400
                         Chicago, IL  60606
 5                       (312) 984-7528

 6  For Defendant
    Georgia Pacific:     MR. JAMES R. FIGLIULO
 7                       Figliulo & Silverman
                         Ten South LaSalle Street
 8                       Suite 3600
                         Chicago, IL  60603
 9                       (312) 251-4600

10  For Defendant
    Temple-Inland:       MR. ANDREW S. MAROVITZ
11                       Mayer Brown, LLP
                         71 South Wacker Drive
12                       Chicago, IL  60606
                         (312) 782-0600
13
    For Defendant
14  Smurfit-Stone:       MR. R. MARK McCAREINS
                         MR. JAMES F. HERBISON
15                       Winston & Strawn, LLP
                         35 West Wacker Drive
16                       Chicago, IL  60601
                         (312) 558-5600
17

18

19

20

21

22

23

24

25
```

1  (Proceedings heard in open court:)
2       THE CLERK:  10 C 5711, Kleen Products versus
3  Packaging Corporation.
4       MR. MILLER:  Good morning, your Honor.  Marvin Miller
5  on behalf of Thule.
6       MS. SWEENEY:  Good morning, your Honor.  Bonny
7  Sweeney also on behalf of Plaintiff Thule.
8       MR. MOGIN:  Dan Mogin, your Honor, on plaintiff of
9  plaintiff Kleen and the other eight plaintiffs.
10      MR. KANNER:  Good morning, your Honor.  Steve Kanner
11 on behalf of Plaintiff Hatco and the remaining plaintiffs.
12      MR. FREED:  Your Honor, Michael Freed on behalf of
13 plaintiff Kleen Products and the other remaining plaintiffs
14 other than Thule.
15      MR. NICOUD:  Good morning, your Honor.  Trey Nicoud
16 on behalf of International Paper, defendant.
17      MS. DIVER:  Good morning, your Honor.  Jennifer Diver
18 on behalf of defendant Weyerhaeuser Company.
19      MR. McCAREINS:  Good morning, your Honor.  Mark
20 McCareins on behalf of Smurfit-Stone.
21      MR. HERBISON:  Good morning, your Honor.  Jim
22 Herbison on behalf of defendant Smurfit-Stone.
23      MR. EIMER:  Good morning, Judge.  Nate Eimer on
24 behalf of International Paper.
25      MR. MAROVITZ: Good morning, your Honor.  Andy

1 | Marovitz for Temple-Inland.
2 |     MR. FIGLIULO: Good morning. Jim Figliulo on behalf
3 | of Georgia Pacific.
4 |     MR. MENDEL: Scott Mendel on behalf of Cascades and
5 | Norampac.
6 |     MR. ECHOLS: Good morning, your Honor. Barack Echols
7 | on behalf of Packaging Corporation of America.
8 |     MR. LAYTIN: And Dan Laytin for PCA.
9 |     THE COURT: Good morning. Let me say at the
10 | beginning, as I thought I had suggested last time, that except
11 | for the fact that we may be dealing at some other points with
12 | substantive matters that affect, for example, defendants on an
13 | individualized basis, I'm really troubled by being confronted
14 | by the troops en masse because I know that -- you know, I used
15 | to practice law, and I know that lawyers like to get paid and
16 | clients are entitled to representation, but I think that
17 | people ought to be exercising some level of judgment in terms
18 | of what we deal with.
19 |     You know, at this point, I know that the matter that
20 | had been tentatively before the bankruptcy court vanished --
21 |     MR. FREED: Yes, your Honor.
22 |     THE COURT: -- completely. I saw the order that was
23 | entered, and as far as I'm concerned, the issue that we really
24 | have before us is the question of representation of the
25 | plaintiff class, something in which the defendants are

1  certainly interested, but I would expect, in candor, that what
2  you people ought to try to do, when you have something of this
3  nature on, is to reach some understanding among yourselves
4  about who would be here as a representative and inform the
5  others rather than, as I say, showing -- having all the troops
6  appear -- well, that's really a side issue.
7       Let me address the question that we have.
8       First of all, as you know, the one issue that was
9  raised had to do with how it was appropriate for counsel for
10 Thule who had, I thought, made a mistake in judgment, and not
11 a good one, in terms of dropping Smurfit-Stone, given the
12 nature of the complaint, and the issue that was raised by the
13 other competitor for representation is that that doesn't -- I
14 don't know whether to characterize that as a conflict of
15 interest because I guess it no longer exists, but they say
16 that that's something that ought to be considered.
17      I make no ultimate comment on that, and I should also
18 say at the outset that I am not -- I'm not going to suggest
19 that we engage in the process that is mistakenly referred to
20 as somehow bidding as though it were only a money matter in
21 terms of representation.  I'm not going to impose that.
22      I am, however, I think, for purposes of evaluating
23 what seems to be a pair of submissions on behalf of highly
24 qualified counsel with a lot of experience in these areas on
25 plaintiffs' side, I think that there's an added item of

1  information that I ought to have, and it ought to follow the
2  same kind of pattern that I had set up in situations in which
3  I had people speaking to the issue of representation, and that
4  is, I ought to have some indication, which I think could most
5  appropriately be handled by *in camera* submissions, indicating
6  the -- a sense of evaluation of the litigation by each of the
7  putative representatives, representative firms that are
8  involved here.
9        And as I've frequently commented, lawyers from out of
10 town probably are not familiar with this, but the late Hu
11 Will, whom I succeeded, unlike what was it that Jefferson said
12 when he was congratulated on having replaced Benjamin Franklin
13 as our minister to France said, "No, I do not replace
14 Mr. Franklin.  I only succeed him," but Hu used to use the
15 Lloyd's of London approach that I would guess most
16 practitioners of any age around here are familiar with, and
17 what it consisted of essentially was the notion that the best
18 way to evaluate or to try to evaluate a lawsuit -- and this
19 would be in the context, for example, of efforts at
20 settlement, but it has a lot of, a lot of echos otherwise --
21 is to make a determination as to what the outcome might be if
22 plaintiffs were totally successful, on which knowledgeable
23 counsel most often come pretty close on both the plaintiff and
24 defense side, and then discount that by the sense of the
25 likelihood of success on which people differ very sharply, but

1 the reason it was called Lloyd's of London approach, of
2 course, is what it amounted to was what would an insurance
3 company charge for insuring against the lawsuit, and they
4 charge a premium that would represent that kind of discount if
5 you'd take aside the costs that have to do with transaction
6 costs.
7 Anyway, I would like to have that from both sides,
8 and also what kind of arrangements each side thought would be
9 appropriate in terms of fee arrangements, just on -- I
10 recognize this is kind of a semi-educated guess, but it seems
11 to me that that's something that is useful for the Court
12 toward making a determination.
13 For those of you who haven't read comments that I've
14 made in the bidding process or some of the cases I've dealt
15 with, including initially an antitrust case, as it happens,
16 not under the securities, private securities litigation
17 aspect, you might take a look at a long opinion that the late
18 Ed Becker, great Judge Ed Becker wrote in the Cendant,
19 C-E-N-D-A-N-T, litigation, in which he quotes a portion of
20 what I had said in that and agreed with that conceptually but
21 said essentially it's a matter of statutory construction that
22 it did not apply in securities litigation.
23 So it seems to me that I need that supplementation in
24 order to make a judgment about which of two, as I say, highly
25 qualified sets of lawyers have put in a pitch for

1  representation.
2       Now, let me just ask each side what's your best
3  judgment about how long it might take to make that kind of a
4  submission? And remember, it's not going to be disclosed to
5  the other side and it's certainly not going to be disclosed to
6  defendants, although I'll ask them whether any of them sees a
7  problem with that kind of *in camera* submission.
8       Mr. Freed?
9       MR. FREED: We would be able to do that in a week,
10 your Honor.
11      MS. SWEENEY: We could probably do it in a week, your
12 Honor. I think a little more time would be helpful, but if
13 your Honor wants it in a week, we can do that.
14      THE COURT: Let's say I'll give you until the end of
15 next week instead. That would be by let's say the 23rd.
16 That's ten days. I would think that should be sufficient.
17      Now, let me turn, if I may, to plaintiffs -- to
18 defense counsel.
19      Does any of you see a problem with that kind of *in
20 camera* submission in which I act essentially like the
21 astronomical black hole, information comes in but nothing goes
22 out?
23     (Laughter.)
24      MR. NICOUD: Your Honor, Trey Nicoud for
25 International Paper.

1          Conceptually, we have no issue with that approach and
2   the -- I guess the only reservation we would express is to the
3   extent plaintiffs either deliberately or inadvertently use
4   that as an opportunity to make evidentiary submissions to the
5   Court.  I don't think that's what you're asking.
6          THE COURT:  No, I'm not asking for a salesmanship job
7   in that regard, of course; and even if there were one made, I
8   wouldn't -- I wouldn't -- I would not only not put it in the
9   bank, but I wouldn't really give any particular credence to
10  it.  After all, I'm a stranger to the dispute.  All I know is
11  what I have seen in the consolidated complaint, and I'm
12  certainly not going to credit any kind of advocacy aspect of
13  that.
14         MR. NICOUD:  That would be our only concern.
15         THE COURT:  Anybody else see a problem with that?
16         Okay.  Then if we have it on the 23rd, I know I've
17  been inflicting pain and suffering on some of my staff here by
18  setting stuff in that next week, and I'm not going to do it
19  here, which I know is going to relieve Sandy somewhat anyway.
20         Suppose I put it into maybe the first week after -- I
21  can do it either in the first week after January 1st or the
22  second week, but I would have to be doing it at an 8:45 time
23  because most of the days are pretty well set for 9:00 o'clock.
24         Sandy, tell me which of the days -- let's start with
25  maybe the 6th and -- the 6th through the 14th.

| | |
|---|---|
| 1 | THE CLERK: As far as an 8:45? |
| 2 | THE COURT: 8:45, yeah. |
| 3 | THE CLERK: The 6th and the 7th, I think, are okay. |
| 4 | THE COURT: The 6th, 7th, right? |
| 5 | THE CLERK: Uh-huh, or the 14th. |
| 6 | THE COURT: So I have one -- I see I do have one on |
| 7 | the 10th by the way? |
| 8 | THE CLERK: Yes. |
| 9 | THE COURT: Okay. |
| 10 | All right. So either Thursday, the 6th, or Friday, |
| 11 | the 7th, or Friday, the 14th, and I would expect that as we |
| 12 | talk now about getting a timing for a response, responsive |
| 13 | pleading, I'll see what we're looking at. |
| 14 | Well, let me turn to that first. What's -- on the |
| 15 | defense side, you have the consolidated complaint. You've had |
| 16 | it. What kind of time is it going to take to deal with |
| 17 | responsive pleadings? |
| 18 | MR. NICOUD: Your Honor, we've had some discussions |
| 19 | with plaintiffs' counsel, and I believe we have an agreement |
| 20 | that defendants have indicated we would expect to file a |
| 21 | motion or motions, given we have multiple defendants, to |
| 22 | dismiss, and the holiday periods unfortunately are upon us. |
| 23 | THE COURT: Yeah. |
| 24 | MR. NICOUD: We've talked with plaintiffs, and I |
| 25 | understand that they are agreeable that defendants could make |

1 those motions on January 14th.

2 THE COURT: Ah, well, then if you were going to get
3 such a motion on January 14th, then let's look at the
4 following week for purposes of a status because we'll see then
5 what plaintiffs' counsel believes is going to be needed in
6 terms of time for a response to the motion or motions, so I
7 will provide then that any defense motions will be made by
8 January 14th, 2011.

9 And that next week is not so bad. I could actually
10 do it at a 9:00 o'clock, I think, several of those days, I
11 believe, although Sandy probably has more than I have listed.

12 THE CLERK: I think an 8:45 would be better.

13 THE COURT: Okay. 8:45 then in the week that begins
14 with Martin Luther King holiday. So I think I have Tuesday,
15 the 18th, or Thursday, the 20th, right, Sandy?

16 THE CLERK: Fine.

17 THE COURT: Okay. Either of those. Probably the
18 20th would be better under the circumstances, okay?

19 So we'll have a status, if that's all right, on
20 January 20th at 8:45. Okay?

21 I think that covers everything for the day, right?
22 Thank you all.

23 MR. MILLER: Thank you, Judge.

24 MR. FREED: Thank you, your Honor.

25 MR. NICOUD: Thank you, your Honor.

1    (Which were all the proceedings heard.)

2

3               \*   \*   \*   \*   \*   \*   \*   \*

4

5               C E R T I F I C A T E

6      I certify that the foregoing is a correct

7 transcript from the record of proceedings in the

8 above-entitled matter.

9 */s/ Kathleen M. Fennell*           *December 14, 2010*

10 Kathleen M. Fennell                     Date
Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25