1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

2

3    KLEEN PRODUCTS LLC, et al.,        )   No. 10 C 5711
                                        )
4                     Plaintiffs,       )   Chicago, Illinois
                                        )   December 15, 2011
5                                       )   9:45 o'clock a.m.
     -vs-                               )
6                                       )
                                        )
7    PACKAGING CORPORATION OF           )
     AMERICA, et al.,                   )
8                                       )
                      Defendants.       )
9

10               TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE MILTON I. SHADUR

11
     APPEARANCES:

12
     For the Plaintiffs:         FREED KANNER LONDON & MILLEN LLC
13                               2201 Waukegan Road
                                 Suite 130
14                               Bannockburn Illinois 60015
                                 BY:  MR. MICHAEL J. FREED
15                                    MR. STEVEN A. KANNER
                                         and
16                               THE MOGIN LAW FIRM, P.C.
                                 707 Broadway
17                               Suite 1000
                                 San Diego, California 92101
18                               BY:  MR. DANIEL J. MOGIN

19
     For the Defendant           KIRKLAND & ELLIS LLP
20   Packaging Corporation       300 North LaSalle Street
     of America:                 Chicago Illinois 60654
21                               BY:  MR. LEONID FELLER

22

23   Court Reporter:             ROSEMARY SCARPELLI
                                 219 South Dearborn Street,
24                               Room 2304A
                                 Chicago, Illinois  60604
25                               (312) 435-5815

APPEARANCES:   (Continued)

For Defendant                   EIMER STAHL KLEVORN & SOLBERG LLP
International Paper:             224 South Michigan Avenue
                                Suite 1100
                                Chicago Illinois 60604
                                BY:  MR. NATHAN P. EIMER
                                         and
                                FOLEY & LARDNER LLP
                                777 East Wisconsin Avenue
                                Milwaukee, Wisconsin 53202
                                BY:  MR. JAMES T. McKEOWN


For Defendant                   MAYER BROWN LLP
Temple-Inland:                  71 South Wacker Drive
                                Chicago, Illinois 60606
                                BY:  MR. ANDREW S. MAROVITZ


For Defendants                  K&L GATES LLP
Cascades & Norampac:            70 West Madison Street
                                Suite 3100
                                Chicago Illinois 60602
                                BY:  MR. SCOTT M. MENDEL


For Defendant                   FIGLIULO & SILVERMAN
Georgia Pacific:                Ten South LaSalle Street
                                Suite 3600
                                Chicago Illinois 60603
                                BY:  MR. JAMES R. FIGLIULO
                                         and
                                QUINN EMANUEL URQUHART
                                & SULLIVAN LLP
                                51 Madison Avenue
                                22nd Floor
                                New York, New York 10010
                                BY:  MR. STEPHEN R. NEUWIRTH


For Defendant                   WINSTON & STRAWN
Rock Tenn:                      35 West Wacker Drive
                                Chicago, Illinois 60601
                                BY:  MR. R. MARK McCAREINS

1    THE CLERK:  10 C 5711, Kleen Products versus

2   Packaging Corporation.

3    THE COURT:  Yes.  Do you want to reflect your

4   appearances.  And I think for Rosemary's purposes you ought

5   to go along maybe from my left to my right, your right to

6   your left sequentially.  Okay.

7    MR. KANNER:  Good morning, your Honor, Steve

8   Kanner, co-lead counsel on behalf of plaintiffs.

9    MR. FREED:  Michael Freed, your Honor, on behalf of

10   the plaintiffs.

11    MR. MOGIN:  Good morning, your Honor, Daniel Mogin

12   behalf of the plaintiffs.

13    MR. NEUWIRTH:  Good morning, Stephen Neuwirth on

14   behalf of Georgia Pacific.

15    MR. EIMER:  Good morning, your Honor, Nate Eimer on

16   behalf of defendant International Paper.

17    MR. FIGLIULO:  Good morning, your Honor, Jim

18   Figliulo on behalf of defendant Georgia Pacific.

19    MR. FELLER:  Good morning, your Honor, Leonid

20   Feller on behalf of defendant Packaging Corp. of America.

21    MR. McKEOWN:  Good morning, your Honor, James

22   McKeown on behalf of International Paper.

23    MR. McCAREINS:  Good morning, your Honor, Mark

24   McCareins on behalf of Rock Tenn.  I will slide by here.

25    MR. MENDEL:  Scott Mendel for defendant Cascades

1   and Norampac.

2        MR. MAROVITZ:  Good morning, your Honor, Andy

3   Marovitz for Temple-Inland.

4        THE COURT:  Good morning.  Why don't you sit down.

5   I will get the papers here.

6        First of all, I wanted to thank you particularly

7   for the obvious degree of professionalism and cooperation

8   that I think are reflected here, despite the fact that you

9   are apart on some issues, and also on how constructive it is,

10  at least from my perspective, to get something like this

11  joint status conference report No. 2.  I hope that that means

12  that my protocol -- that is really too fancy a term for it --

13  that the procedure that I follow seems to be working.

14        I -- you heard me say in a much smaller case

15  earlier this morning that I think that the idea of setting

16  schedules at an early point is about the most pointless thing

17  imaginable.  And so I hope this unless somebody finds what

18  has been done up to now and the procedure that we are

19  following to be troublesome, that you would all agree that we

20  will continue on the same vein.

21        Now, that doesn't mean, of course, that as and when

22  issues may arise in the interim, that anybody should be

23  bashful about bringing them on.  And that is -- I am

24  available for that purpose.  But other than, that I really

25  again find the notion of periodic reports and statuses to be

1   the best way.

2          I do get the sense, though, I will tell you, that

3   -- you know, I saw a reference in here to 45-day intervals.

4   I think that may be too short for -- you know, as long as you

5   are getting along and working at the thing, I don't know any

6   reason that everybody has to show up and that we are dealing

7   with -- I hesitate to multiply, but whatever thousands of

8   dollars an hour are involved doesn't seem to me to be

9   especially constructive.  So I would think that something

10  more in the range of 60 to 75 days intervals would be

11  sensible.  And we will talk about that afterwards, but I

12  throw that out to you.

13          Now, having said that, I want to turn to the two

14  statements of position about the maybe four disputed issues

15  that you have covered.  This is I guess kind of an editorial

16  comment, but you will pardon it because I am sitting here,

17  but, you know, modern discovery seems to me to be a combined

18  blessing and a curse.  You know, it takes us I know from the

19  -- quite a distance from the historical fox hunt or sporting

20  theory of litigation when people went ahead blindly into

21  trial, armed only with the information that they had gotten

22  from their own clients.  Although the system I guess worked.

23  I don't know how.  But the --

24          On the other hand -- and this is particularly true,

25  at least I find -- with the explosion of electronic data, it

1  enables a responding party, for example, to overwhelm a

2  requesting party with responsive materials so that whatever

3  critical information might be contained someplace in the

4  massive pile of material is buried and it is retrievable only

5  by chance or maybe by excessive efforts at examining

6  thousands of documents.

7  While I was thinking about this, it struck me that

8  -- that that term "smoking gun" was particularly inapt a term

9  because, you know, critical documents don't emit little puffs

10  of smoke so that you can pull them out of the huge mass, even

11  if there is fire there.  So I don't think that the problem of

12  extricating the important things from the mass of otherwise

13  not particularly helpful documents is sensible.

14  It is understandable then to me why the provision

15  that plaintiffs' counsel relies on in Rule 34 -- 34(b)(2) --

16  (b)(1) which talks about production says, "Unless otherwise

17  stipulated or ordered by the Court, these procedures apply to

18  producing documents or electronically-stored information."

19  And one -- the first thing that is said is, "A party must

20  produce documents as they are kept in the usual course of

21  business or must organize and label them to correspond to the

22  categories in the request."

23  In a way that requirement strikes me as being in

24  harmony with the provision that we have all become familiar

25  with because it preceded the predominance of electronic

1    requirement that has to do with the one about interrogatories

2    in Rule 33.  33(d), as you know, gives the option.  Instead

3    of responding to an interrogatory, it can be determined by

4    specifying the records in enough detail to enable the

5    interrogating party to locate and identify them.  And that is

6    true if the burden of deriving or substantiating the answer

7    will be the same for either party.

8            Defendants argue on that one, which is the question

9    of how does the thing get organized, by saying, you know, we

10   spent a lot of time and it would really be terribly

11   burdensome for us to categorize them in a way that is

12   responsive to the way in which plaintiffs have chosen to

13   categorize their request.  It is hard to tell from the

14   outside, you know, where I haven't really seen the thing,

15   whether that is -- that is really legitimate or -- I won't --

16   "legitimate" is the wrong term.  Whether that is really a

17   persuasive response because it is quite obvious that in a

18   lawsuit like this everything is expensive.  I mean, you know,

19   you are dealing with enormous documentation.  But it seems to

20   me that the alternative of requiring the plaintiff, the

21   requesting party, to try to figure out, when they have been

22   delivered a warehouse full of papers, to bring those within

23   the -- their own organizational categories seems to me to be

24   a substantially greater burden than is imposed on the parties

25   who know what the documents are when they are producing them

1   and I would think could more readily categorize them.

2            So I will tell you my inclination generally is to

3   say I think on that one aspect the plaintiffs have I think

4   the better of the argument.

5            As for the others -- well, let's talk about the

6   methods for ESI search.  On that score I cheerfully

7   acknowledge my lack of background to choose between the

8   opposing positions that I have gotten.  From earlier movies I

9   think Mr. Freed is well aware, maybe Mr. Eimer as well, that

10  I still inhabit a universe where the quill pen and the

11  inkwell play a significant part in the whole process -- or

12  maybe a major role.  To the extent that I am educable, I find

13  that the defendants' proposal for a hearing, with the

14  proverbial battle of experts, is the right way to approach

15  it.

16           One alternative, though, would be I -- you know, I

17  took a look at who the Magistrate Judge was who is assigned

18  to the case.  It is Nan Nolan.  Nan may be, among I think our

19  very extraordinarily able group of magistrate judges, the one

20  who is most familiar with electronic discovery.  And I think

21  that it might make very good sense to have such a hearing

22  assigned to her.  I don't know what the parties -- I

23  recognize, by the way, I do less referral to magistrate

24  judges than I think most of my colleagues or maybe any of

25  them.  And for a reason.  But -- and of course one of the

1    main reasons is that, you know, to do it when that is just a

2    weigh station to ultimate delivery to the Court is often very

3    wasteful.

4          It struck me though that in this instance that

5    might not be so.  And so I don't know whether the parties --

6    you haven't heard this before, but I would think the parties

7    might want to think about that because it is quite right -- I

8    don't know whether -- how familiar any of you are with

9    Magistrate Judge Nolan's know-how in this area.

10         What is --

11         THE CLERK:  She is on sabbatical until the end of

12   the month.

13         THE COURT:  Oh, well, but that is --

14         THE CLERK:  Well, I mean just --

15         THE COURT:  That is until December 31?

16         THE CLERK:  Right.  But I just wanted to let you

17   know.

18         THE COURT:  And she is going to come back very

19   refreshed.

20         THE CLERK:  Well, there you go.

21         THE COURT:  So I want to throw that out as a

22   suggestion that I think the parties might want to talk about

23   because I think it would probably be constructive in this

24   case.  And that applies to the other related issues as well,

25   the other two which are essentially -- they are not a

1  variance on the second one but basically they are closely

2  interrelated I think.

3        Anyway, that is really all that I wanted to say at

4  the outset.  And I am perfectly willing now to listen to

5  counsel in terms of the first point that I made -- I know

6  that defendants were opposed to that -- and also to the

7  suggestion that I have just thrown out with respect to the

8  other three contested issues.

9        So who is up?  Who wants to come up first?  Yes?

10        MR. NEUWIRTH:  Your Honor, Stephen Neuwirth again

11  for defendant Georgia Pacific --

12        THE COURT:  Yeah.

13        MR. NEUWIRTH: -- speaking on behalf of all

14  defendants.

15        THE COURT:  Yeah.

16        MR. NEUWIRTH:  I think, as your Honor appears to

17  recognize in your comments, the defendants have really

18  invested a tremendous amount of time, effort and through the

19  use of consultants to develop a methodology for

20  identification of ESI that we believe is state of the art.

21        THE COURT:  Yeah, I think -- look, I think -- I

22  don't mean to minimize -- in my comments I don't mean to

23  minimize at all the point that you have -- you know, that you

24  invested a lot of time, a lot of money.  You have developed

25  something.

1    I should say, by the way, on that score, you know,

2    although, as I say, I confess that the area you are talking

3    about is not -- is not one that I am comfortable saying I am

4    certainly not -- I wouldn't qualify under Daubert under any

5    circumstances.  But I do want to say one other thing about

6    that, and that is what I do know and what I have dealt with

7    extensively, as you might guess, is the corollary to that in

8    terms of legal research.  And I think anybody who is -- who

9    is familiar with -- and that has got to be all lawyers now --

10   with Westlaw and Lexis knows that that is a very valuable

11   search engine, but it has a lot of limitations, a lot of

12   limitations because what you are doing is you are guessing

13   what word or what combination of words would have been used

14   in terms of the classification that you are looking for.

15   You know, the days when we used to work with the

16   West key number system are long gone.  But the difficulty

17   that was really created for the researcher at that point was

18   that you had to figure out what the nomes that worked for

19   West had done in terms of putting it under a particular key

20   number.  And so your search had to be quite widespread

21   because you had to figure out all conceivable key numbers

22   that maybe they would do, whereas the middleman is eliminated

23   by Lexis and Westlaw because now your burden is only to

24   figure out what kind of words the Court would use.

25   Well, it is somewhat the same I think -- not

1    exactly but somewhat the same in this area, so that the kind

2    of search that you have talked about I am sure was expensive.

3    I not sure that it would uncover all of the things -- and,

4    you know, they made the statement that it is no more than

5    25 percent.  I am not buying that necessarily.  But I think

6    there is something to be said on both sides of that issue.

7            MR. NEUWIRTH:  Yes, your Honor.  And I think you

8    have hit the nail on the head in terms of what seems to be

9    the underlying points, not just the amount of money that is

10   spent, but it is the quality of what you do --

11           THE COURT:  Right.

12           MR. NEUWIRTH: -- when you spend the money.  And on

13   that score I think that as the defendants detailed in their

14   papers --

15           THE COURT:  I know you consulted with professionals

16   and you came -- which is exactly what should have been done.

17   I am not criticizing that at all.

18           MR. NEUWIRTH:  And we consulted with the plaintiffs

19   in the process as well.

20           THE COURT:  Yeah.

21           MR. NEUWIRTH:  And I do think that this really

22   bears on the indexing issue as well.  You know, I think that

23   the type of testing and validation we did of our methodology,

24   which can be the subject of the upcoming hearing, shows that

25   the level of accuracy that we have been able to achieve with

1  the methods that we are using really is beyond the state of

2  the art, at least in terms of what courts have required.  And

3  the type of methods that the plaintiffs are suggesting that

4  we use here are ones that in fact were -- only came to market

5  after the defendants were well along the way in implementing

6  the system that they have set up.

7          THE COURT:  Yeah, I read that as well.  Again I

8  find a lot of force in that.  And, you know, the idea of

9  saying, well, start over again because somebody has come

10  along with a better mousetrap is -- really has something to

11  be said against it, even if the mousetrap is better.

12          MR. NEUWIRTH:  Right.

13          THE COURT:  And I don't mean to minimize that.  All

14  I am saying is I don't -- I am certainly not in a position to

15  resolve that one now because I haven't heard from the

16  consultants, the experts that you have dealt with.  And I

17  assume that the kind of hearing that we are talking about is

18  going to get conducted, a judicial officer is going to get

19  that and also input from the other side, and we will resolve

20  it.

21          MR. NEUWIRTH:  Yes, your Honor.  In terms of that

22  hearing I think I can say that all of the defendants would be

23  very pleased to proceed before your Honor, if that would

24  facilitate doing this expeditiously.  I think that if your

25  Honor's determination is that it makes more sense to send

1   this to Judge Nolan, the defendants will obviously be pleased

2   to proceed before her as well.  But certainly we would be

3   very comfortable proceeding before your Honor, in part

4   because you are educated about the case generally and we

5   think that the information that the experts would be able to

6   provide would be quite straightforward in terms of the

7   different positions of the parties and we think it is

8   something that even people like us, who tend to do a lot with

9   pens and paper perhaps more than computers, would be able to

10  understand very clearly and it may facilitate a more prompt

11  resolution.

12          The defendants have already produced about a

13  million pages of documents and are very interested in moving

14  this process forward, in part so that we can get to the

15  merits of the case.  And so getting this resolved quickly is

16  something that the defendants would be grateful for --

17          THE COURT:  Yeah.

18          MR. NEUWIRTH:  -- if your Honor has the opportunity

19  on your calendar to hear this at the start of the new year.

20          The reason I said that this was in some ways

21  related to indexing is because I think that the blessing and

22  curse point you made before really applies to both of these

23  issues because we really do feel that what the defendants

24  have done -- we have blessed this case with an opportunity to

25  get things produced quickly and effectively and efficiently

1  in response to the plaintiffs' requests, and we are facing a

2  curse we think of being asked to do things that no court to

3  our knowledge has ever ordered.

4  And indexing is a good example of that because, as

5  I believe your Honor may recall, you have already entered an

6  ESI protocol in this case --

7  THE COURT:  Yes.

8  MR. NEUWIRTH:  -- it was stipulated by the

9  parties -- that requires defendants, when they produce ESI,

10  to include significant amounts of metadata that, among other

11  things, identify the custodian of the document, from whose

12  files the document came, et cetera.  And --

13  THE COURT:  Well, that of course doesn't really

14  answer, I think, the point that they are making.  I mean it

15  is not a question of being able to locate.  It is a question

16  of being -- of categorizing, and that is a different issue.

17  I mean, you know, the fact that something may be -- that

18  documents may be spread out over a very wide area and that

19  some available from this person, some available from that

20  person, doesn't really respond fully at all to the point that

21  the plaintiffs are making about organizing the materials as

22  -- and that is the reason, by the way, that I made the point

23  that I did about the -- what is sort of a rough equivalent in

24  Rule 33, and that is it is very difficult for a recipient to

25  be doing that, and considerably more difficult than it is for

1    the producing party because the producing party knows what

2    those documents are, whereas they -- you know, they get --

3    they get documents unvarnished.

4        And to my knowledge it continues to be true that

5    the only way to find out what is in a document is to read it.

6    And --

7        MR. NEUWIRTH:  Well --

8        THE COURT:  -- I know that that is unpopular these

9    days.

10       MR. NEUWIRTH:  Well, your Honor, without in any way

11   disagreeing with any of the points you made, which are --

12   which are all valid, I think there are some additional

13   considerations that may bear on this.  First, you know, this

14   is not a situation where the plaintiffs are saying to us, can

15   you please tell us which of our document requests, which of

16   our over 90 document requests, our over 90 overlapping

17   documents requests, this refers to, but they are saying, we

18   have come up with 29 categories that will help us analyze the

19   case and we would like you to go through the documents you

20   produced and code them for us, substantively code them based

21   on which of those categories you think they are responsive

22   to.

23       Now, the categories are overlapping.  We don't know

24   exactly what the plaintiffs consider them to be.  But there

25   really is no case we are aware of that has ever held that

17

1    anything like this needs to be done.  And the one case

2    plaintiffs cite in their submission is the Pass & Seymour

3    case from the Northern District of New York.  While it talks

4    about indexing --

5                THE COURT:  Yeah, I saw it.

6                MR. NEUWIRTH:  -- the ultimate ruling is to deny

7    the very type of thing that is being asked for here.

8                THE COURT:  I read that.

9                MR. NEUWIRTH:  And in fact that was a case where

10   there were 70 document requests, not the more than 90 we have

11   here.  And the court said, "Come on, that is too much."

12               Second, I think that while it is true that

13   defendants look at the documents they produce in the process

14   of producing them, the reality is that the defendants, just

15   like the plaintiffs, are dealing with a huge amount of ESI

16   that they need to review.  And many of the documents, as I am

17   sure your Honor knows, in corporations like the defendants

18   are business planning documents that may be 40 pages long

19   that cover multiple topics.  And on Page 3 you might find

20   something that is responsive to one code, on Page 5 you might

21   find something responsive to another.

22               We think that what the plaintiffs are really asking

23   for here is not what the discovery rules are talking about,

24   they are asking the defendants to do their document review

25   for them.  And we think that no precedent stands for having

1  substantive document review be undertaken by the producing

2  side or the receiving side.  This is not a request to

3  associate documents we produced with the document requests.

4  And that would be impossible given there are more than 90.

5  So instead they have come up with 29 codes that

6  presumably they think will help them through the documents.

7  And we are -- as we said, there is no case that would require

8  this.  So we would really be breaking new ground here to

9  require something like that.

10  And, you know, to the extent the plaintiffs want to

11  use their interrogatories to ask us for information about

12  documents we have produced, that is one option available to

13  them.  But there is a huge burden for the defendants just to

14  get through these documents for our purposes, let alone for

15  the plaintiffs' purposes.

16  So on that issue we would hope that your Honor

17  would consider those other factors and the fact that the

18  specific thing that the plaintiffs are asking us to do really

19  goes beyond, we would respectfully submit, the types of

20  things you are describing --

21  THE COURT:  Yeah.

22  MR. NEUWIRTH:  -- which defendants don't disagree

23  with, but we think plaintiffs are asking for something very

24  different and really understating in their papers the extent

25  of the type of burden that they would seek to put upon us.

1    So the only other thing we would add, your Honor,

2    is that part of the reason we think the hearing is so

3    important in this is because we think on all of these issues

4    if the Court, you or Judge Nolan, were to hear from the

5    experts about the nature of what defendants are doing and how

6    it relates to what both the experts understand about the

7    marketplace and what the case law says, we believe that the

8    Court will conclude that what defendants have done is

9    actually more than satisfactory.

10   And just finally, you know, while it is true that

11   the plaintiffs are talking about some new technology, the

12   plaintiffs have not yet undertaken any of this themselves.

13   And we are at the stage where they have literally sent us

14   brochures, including from our own consultant, describing type

15   of things that may be available.

16   THE COURT:  Yeah, I saw that.

17   MR. NEUWIRTH:  And they certainly haven't

18   implemented anything themselves.  They have asked us to help

19   them come up with so-called exemplars to help them figure

20   this out.

21   So all the defendants are working hard here.  We

22   want to get this resolved quickly.  And if it would please

23   the Court to have a hearing before your Honor in early

24   January, defendants would be very pleased to appear for that.

25   Thank you.

1        THE COURT:   Thank you.

2        Mr. Freed.

3        MR. FREED:   Thank you, your Honor.

4        THE COURT:   I do want to pose another question to

5    you in light of what counsel has said and it struck me based

6    on his comment, and that is this:   The one thing that I think

7    would be inappropriate would be if defendants were required

8    to comply with the kind of categorization that you have just

9    made and were then to be met later on in the litigation with

10   a charge that somehow there has not been adequate disclosure

11   because of miscategorization, I think particularly where -- I

12   haven't seen the categories -- don't misunderstand -- but I

13   suspect that it is true these do not occupy water tight

14   compartments.

15        And as a result I think that the notion of any

16   prospect that defendants could be met at a point with some

17   argument down the road that would be adverse to them in terms

18   of the failure to have -- or the asserted failure to have put

19   something in the right place, that would be, to me at least,

20   enormously troublesome.   You know, I -- I have no suggestion,

21   no indication anywhere by either side, by the way, that there

22   is an absence of good faith in terms of how people are

23   working at the thing.   And so I wouldn't want to see -- I

24   wouldn't want to create any prospect of that.

25        Anyway, I wanted to pose that because that I think

1  is an additional consideration.

2       Anyway, but go ahead.

3       MR. FREED:  Right.  Let me address that first, your

4  Honor.  We started with the Federal Rules, Rule 34, and going

5  way, way back.  These discussions have been ongoing for a

6  very long time.  They are complicated and so they have taken

7  a long time to crystallize to a point where we seem to be --

8  I would say at an impasse.  Maybe defendants wouldn't.  If we

9  started with just following Rule 34, which your Honor read,

10  which is either produce the documents as they are kept in the

11  standard course of business, which they are not clearly, or

12  comply with the other alternative, which is to identify --

13       THE COURT:  It does use the term "must."  I guess

14  Brian Garner got at them this time.  It doesn't say "shall."

15       MR. FREED:  Okay.  So defendants said that is very

16  onerous.  So we came up -- and they said, can you give us a

17  way -- another alternative for categorizing them.  So this is

18  sort of like no good deed goes unpunished.  We took an

19  inordinate length of time.  We came up with a content-based

20  group of 29 categories, and we said, if that works better for

21  you, then -- than responding to each of our document requests

22  and subparts, that is fine with us too.  We don't insist on

23  that.  If they want to go back to the language of Rule 34,

24  that is okay.  But even taking the rule -- the 29 categories,

25  that is not our intent.

1    Clearly we will be substantially ahead if the

2    defendants do a categorization.  And it may inadvertently on

3    their part -- and I don't question their good faith either --

4    if they inadvertently do not precisely categorize those

5    documents as we would, we will be way ahead than if they

6    don't categorize them at all.  And that is our concern.  As

7    your Honor knows, the whole case -- the key to the start of

8    discovery is the documents.  And the use of the documents

9    really was framed on our part by the way we framed our

10   request for production.

11   So to have a dump -- and I don't know any other

12   word to use -- of millions of pages of documents and say, oh,

13   we have done some analytical analysis for search, it doesn't

14   address the index problem from our perspective at all.  We

15   would never use it against them if they try sincerely to

16   comply with our 29 categories.  If they would rather go back

17   to the Federal Rules of Civil Procedure Rule 34, that is okay

18   too.

19   So we are not trying to take advantage.  It is not

20   a gotcha situation.  We are just trying to get some

21   reasonable definition of what documents relate to what

22   request.

23   THE COURT:  Well, I must say on that score, you

24   know, I haven't had occasion to research the question of how

25   that provision has been interpreted or applied, but it is

1   certainly true that not only that the provision is

2   unambiguous -- as I say, the style authors who are just about

3   to wreck havoc with the Federal Rules of Evidence, unless

4   they are stopped, which would be a tragedy -- they did it for

5   the civil rules, the criminal rules, the appellate rules --

6   and one of the things that they have done is to take "shall"

7   out of the vocabulary and use the term "must" when they mean

8   you have to.  And it says "must."

9          And I was just looking as you -- as you were

10  speaking at the Committee Report on the 2006 amendment, and

11  it says at the -- it makes it clear that that is a mandatory

12  requirement and that it applies to electronically-stored

13  information as well.

14          MR. FREED:  Right.

15          THE COURT:  So it is -- you know, when I am told,

16  well, no court has done it, I am not sure that -- it says --

17  the way the rule reads, it says, "Unless otherwise stipulated

18  or ordered by the Court, these procedures apply."  So I

19  suppose that there is a discretionary aspect of it that

20  enables a court to do some balancing on that score, but

21  certainly presumptively the rule requires what you are asking

22  to be done.  And as difficult as it may be -- now, of course,

23  again I am -- I am talking sort of in a vacuum because I

24  haven't seen the categories, I haven't seen whether they are

25  suspect in terms of making it especially difficult to do

1  that, but I guess on balance the thing really does appear to

2  be in the way that I started out by talking about it because

3  I was again looking at the rule, not having had an occasion

4  to search what courts may or may not have done with

5  compliance.

6          What about the -- what about the others in terms of

7  the suggestion that I had made -- I appreciate the vote of

8  confidence that defense counsel had suggested, but I am not

9  sure that it is justified.  And I am totally candid about

10 that.  It seems to me that I would profit myself from input

11 by a respected judicial officer based upon a hearing rather

12 than my doing it in the first instance myself.  Although I --

13 you know, I don't mean to disclaim the ability to analyze.  I

14 am much too immodest for that.  But I -- I do think that it

15 might be more constructive, and that is the reason I made the

16 suggestion, not because I am ducking work, but really in

17 terms of what is in everybody's interest in the long haul.

18          MR. FREED:  I have been before Judge Nolan.  I

19 agree Magistrate Judge Nolan -- I believe she is highly

20 respected and would be very, very competent to do the

21 analysis which might be a help to your Honor.  We would also

22 be perfectly willing to do it in front of your Honor.  But if

23 you think that her initial input would be helpful, we will

24 certainly agree with that.

25          THE COURT:  Well, she is coming off of what we

1  improperly refer to as sabbatical.  That is a term that my

2  colleague Bill Hart invented for us as district judges, and

3  we have passed it on to magistrate judges.  I don't know when

4  a sabbatical turned out to be a three-month interval, but

5  anyhow that is the vocabulary.  So, you know, she may be

6  raring to go.  On the other hand, she may be totally

7  overloaded with what is coming back to her right after her

8  arrival.  So I am not going to inflict on her something in

9  that nature.

10  I think that maybe the sensible thing to do is to

11  find out, when Nan gets back, what her situation is.  My

12  inclination would still be -- and I am appreciative of the

13  nice things that you said about my ability to do it, but I

14  got to tell you I think that it might be in everybody's

15  interest to have her dealing with it in the first instance.

16  MR. FREED:  That be would fine, your Honor.  And,

17  your Honor, if she is available but there is a range of

18  dates, then perhaps --

19  THE COURT:  Yeah.

20  MR. FREED:  -- we could speak with the defendants

21  about organizing it so that everybody could do it at a time

22  which is best.

23  THE COURT:  Well, I will make it my business to

24  check with her as soon as she gets back, which is -- her

25  "sabbatical" ends on December 31.  It is a three-month period

1  during which they are off the wheel essentially and free to

2  do whatever they want, just as happens with us and has for a

3  number of years.

4  Okay.  Well --

5  MR. NEUWIRTH:  Your Honor, may I be heard on one

6  point very briefly?

7  THE COURT:  Sure.

8  MR. NEUWIRTH:  Just on this issue of Rule 34, we

9  would respectfully submit that to the extent there is going

10  to be a hearing, that the issue of indexing be included

11  within the scope of the hearing because as your Honor --

12  THE COURT:  Oh, I am not opposed to that.  It seems

13  to me we ought to look at in totality.  But I have tried to

14  indicate to you the considerations that I think ought to be

15  meaningful for consideration.  So I am not taking that off

16  the table.

17  MR. NEUWIRTH:  Right.  Because as your Honor noted,

18  the beginning of Rule 34 says one of the options that the

19  defendants have is to produce documents in the way they are

20  stored.  And the metadata permits that.

21  THE COURT:  That is the way it reads.

22  MR. NEUWIRTH:  Right.

23  THE COURT:  And then it says they are maintained in

24  the ordinary course of business.  And as I understand what

25  the plaintiff said what happened -- and I am not being

1    critical about this -- is there are a lot of places where

2    they are, and this -- that really is not what is I think

3    contemplated by the Rule's reference to the ordinary course

4    of business.  The Rule's reference ordinarily would be

5    thought about as a single plaintiff and a single defendant,

6    if you think about that, and that therefore -- and a single

7    defendant then maintains its records in the ordinary course

8    of business in a particular way.

9            What we are dealing with here is a very different

10   animal.  There are a large number of defendants and,

11   therefore, ordinary course of business -- one defendant has

12   papers over here, one has over here, one has over here, and

13   it is very difficult to think -- to regard that as what was

14   contemplated by the drafters of the Rule.

15           MR. NEUWIRTH:  We think --

16           THE COURT:  I think --

17           MR. NEUWIRTH:  Right.  We understand, your Honor,

18   but we believe one of the things that would be shown at the

19   hearing is that each defendant is producing documents

20   separately, each defendant is identifying file locations of

21   documents, et cetera.

22           THE COURT:  I --

23           MR. NEUWIRTH:  And so we think that we would at

24   least be able to show that the first component of Rule 34(b)

25   is being addressed.

1          And then -- just the last thing, your Honor.  I

2     believe that if you look at the quote from Wright and Miller

3     on Page 11 and 12 of our statement --

4          THE COURT:  Wright and Miller is perhaps -- I hate

5     to say this, and I shouldn't be regarded as biased because I

6     got the assignment of writing one of the chapters in -- when

7     Moore's got a total overhaul and being the super editor on

8     four other chapters.  Wright and Miller is really for me a

9     pale shadow of what it was because you look at Wright and

10    Miller and your typical page is going to have one line of

11    text and the rest of the page is filled up with footnotes

12    that simply cite cases without telling what they say.  And it

13    is the least useful research treatise that I know of.

14         So I most recently told the librarian that -- I

15    guess I am one of the few that is blessed with both sets.

16    Not here.  I don't have any books here, but up in 23.  And

17    that is because the -- the Moore's people provide me with a

18    new set every year in some kind of gratitude for -- I guess

19    for my having done the overhaul.  And the other one that we

20    pay for and pay dearly, and I am thinking very seriously

21    about simply discontinuing it.  I really don't find Wright

22    and Miller useful, in candor.  No disrespect to Wright and

23    Miller at all.

24         MR. NEUWIRTH:  We will not cite it again.  But I

25    think that the general point --

1    MR. McKEOWN:  Your Honor, if I may, just as a

2    former research assistant for Arthur Miller, I do have to

3    take exception.

4    MR. NEUWIRTH:  But the point, your Honor, whether

5    it is Wright and Miller or just the case law --

6    THE COURT:  Yeah.

7    MR. NEUWIRTH:  -- we think that your Honor

8    correctly noted that there would be a benefit to looking at

9    what the courts have actually said in the context to be

10    assessed under this Rule 34 requirement --

11    THE COURT:  Of course.

12    MR. NEUWIRTH:  --  because we do believe that what

13    we are suggesting is the way to proceed would be consistent

14    with how it is interpreted.  And perhaps then if there is a

15    hearing, there may --

16    THE COURT:  Let's leave it this way:  First I am

17    going to give you a next status date.  And it seems to me

18    from everything that we have talked about that probably to

19    set it sooner than 90 days out doesn't make a lot of sense,

20    unless somebody thinks that that would be inappropriate.

21    Okay?  So Sandy has arrived just in time.

22    THE CLERK:  Yep.

23    THE COURT:  Suppose that we set the corresponding

24    date in March.  Well, I could give you people three months.

25    I could give you the Ides of March and you can decide for

 1 │ whom it is fatal.  But it is -- that is certainly an open

 2 │ date, Thursday, March 15.  I don't know whether anybody is --

 3 │ finds it inconvenient or not.  But actually any day in the

 4 │ week of the 12th through the 16th is open.

 5 │          MR. NEUWIRTH:  March 15th is good for the

 6 │ defendants, your Honor.

 7 │          THE COURT:  All right.

 8 │          MR. FREED:  That is fine, your Honor.

 9 │          THE COURT:  All right.  Let's make it March 15th at

10 │ 8:45.  And that way I would hope you wouldn't have to sit

11 │ through what is in the category of noneducation in listening

12 │ to other motions that get dealt with on my motion call.  So

13 │ 8:45 on March 15th, 2012.

14 │          Then what I will do is I will check with Magistrate

15 │ Judge Nolan about her availability.  And what I would suggest

16 │ is that defendants ought to delegate the responsibility for

17 │ this information being passed along to one of you rather than

18 │ corralling everybody in sight.  And I would have my staff

19 │ people get back to you in terms of what might be available

20 │ there.

21 │          If it turns out that she is really weighted down

22 │ and would not be in a position to deal with the thing for an

23 │ extended period of time, then I will simply take it.  So --

24 │ let's see here.  So you people will talk and just let Sandy

25 │ know.

1          MR. FREED:  We can let you know now, your Honor.

2          THE COURT:  Single representatives from each side.

3  I will make sure that we get back to you as soon as Judge

4  Nolan becomes available.

5          MR. FREED:  In my case it will be myself, your

6  Honor, Michael Freed.

7          THE COURT:  Okay.

8          MR. NEUWIRTH:  And we can let you know, your Honor,

9  that Mr. Eimer for the defendants would be the person to

10  contact.

11          THE COURT:  So it is Mr. Eimer and Mr. Freed.

12          Anything else?

13          MR. FREED:  No.

14          MR. NEUWIRTH:  No, your Honor.

15          THE COURT:  Well, I want to thank you all again

16  just as I started out.  And I guess you ought to know by now

17  that I don't -- I don't say things just to be complimentary.

18  No, I am very serious.  I really -- I really have found this

19  very useful and I truly appreciate all the effort that you

20  have put in on the thing.

21          Thank you all.

22          MR. FREED:  Thank you, your Honor.

23          MR. NEUWIRTH: Thank you.

24      (Which were all the proceedings heard.)

25

1        CERTIFICATE

2        I certify that the foregoing is a correct transcript

3    from the record of proceedings in the above-entitled matter.

4

5    s/Rosemary Scarpelli/        Date:  December 16, 2011

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25