**Exhibit 1**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| KLEEN PRODUCTS LLC, *et al*., individually and on behalf of all others similarly situated, | |
| Plaintiffs, | No. 1:10-cv-05711 |
| v. | |
| PACKAGING CORPORATION OF AMERICA, *et al*., | |
| Defendants. | |

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
DIRECTED TO ALL DEFENDANTS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs hereby request that each Defendant produce the documents and things herein requested within 30 days of the date of service at the offices of Freed Kanner London & Millen LLC, 2201 Waukegan Road, Suite 130, Bannockburn, IL 60015 A, or such other time and place as may be agreed upon by counsel.  Pursuant to F.R.C.P. 34(b), unless otherwise specified, all documents must be organized and labeled to correspond to the categories in the associated document request. Corrections and supplemental answers and production of documents are required as provided for in the Federal Rules of Civil Procedure.

**DEFINITIONS**

The following definitions shall apply to these document requests:

1.      "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

1

2.      "Capacity reduction" refers to any permanent or near-permanent mill, plant or facility closure, curtailment or reduction in output from your maximum production capacity, but not including "Downtime" (defined *below*).

3.      "Communication" means, without limitation, the imparting or exchange of information, thoughts or opinions by any means including orally, in writing, by signs, signals or code, including oral, written or electronic communications, such as face-to-face meetings, electronic communications, emails, facsimiles, telephone communications, correspondence or other exchange of written or recorded information.   The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

4.      "Competitive Conditions" means actual or forecasted, projected or estimated conditions or trends relating to pricing, production (including output, capacity, capacity utilization, operating rates, facility closures, rationalization, downtime and/or production scheduling), supply, inventories, demand, sales, profitability or margins, market share (including mergers, acquisitions, joint ventures, divestitures, sales or transfers of assets, spin-offs or any other form of change of ownership or control or consolidation), competitors, fixed or variable costs, imports or exports in the market for Containerboard Products.

5.      "Complaint" means the Consolidated and Amended Complaint for Violation of the Sherman Act, filed November 8, 2010.

6.      "Contact information," when used with reference to a natural person, means to state their:

       a.      present or last known home address;

       b.      present or last known business address;

      c.     all current, former and last known home, mobile and business telephone numbers;

      d.     all current, former and last known personal and business email user identifications and email address information (used for any business purposes);

      e.     all current, former and last known home and business facsimile numbers;

      f.     all current, former or last known home and business text, SMS, MMS or similar addresses; and

      g.     all current, former or last known positions and business affiliations.

7.     "Containerboard Products" means linerboard, corrugated medium, corrugated or containerboard sheets and products constructed from corrugated sheets including boxes and other containers and, where context appropriate, also refers to the Containerboard Products-related business, industry or markets.

8.     "Corporate Communications" means without limitation communications by the responding parties' corporate officers or employees responsible in whole or in part for its external communications or messaging (*i.e.*, to media, financial community, customer base, government, industry bodies and institutes and general public), including, but not limited to, public relations, investor relations, government relations or similar functions or activities.

9.     "Corporate Functions" shall be construed broadly in the context of the Complaint and includes, but is not limited to, the following executive, managerial or informational policy, study or analysis roles or responsibilities relating to any of the following functions or subjects and Containerboard Products:

      a.     production (including output, capacity, capacity utilization, operating rates, facilities closures, rationalization, downtime and/or production scheduling);

      b.      supply and inventories;

      c.      pricing;

      d.      sales, marketing and distribution;

      e.      intra-company transfers or transactions (including transfer pricing);

      f.      swaps, exchanges and other inter-Defendant or manufacturer transactions;

      g.      business strategy, planning and analysis;

      h.      monitoring, forecasting or reporting of market or Competitive Conditions;

      i.      mergers, acquisitions, joint ventures, divestitures, sales or transfers of assets, spin-offs or any other form of change of ownership or control;

      j.      finance and accounting, including financial performance and objectives;

      k.      antitrust training or compliance;

      l.      Corporate Communications; and

      m.      purchasing or procurement of inputs, raw materials or intermediates (*i.e.*, pulp, OCC, linerboard, corrugated medium, dyes and inks, energy, supply chain, etc.) used in production.

10.      "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly-owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers, employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant.

11. "Document" shall be broadly interpreted as used in Rule 34(a) of the Federal Rules of Civil Procedure and means the original and all non-identical copies of all written, printed, recorded or electronically-stored information ("ESI"), including, but not limited to, letters, correspondence, memoranda, drafts, legal pleadings, calendars, diaries, day planners, journals, travel records, lists, outlines, summaries, notes, reports, compilations, notebooks, work papers, graphs, charts, spreadsheets, databases, blueprints, books, pamphlets, brochures, circulars, manuals, instructions, ledgers, drawings, sketches, telephone records, voicemail, telegrams, facsimiles, photographs, videotapes, audiotapes, digital audio or video recordings, other film and sound reproductions, presentations, slideshows, email, email attachments, text messages, instant messages, internal or external web sites, social networking data and messages, compact discs, computer files and disks, sales, advertising and promotional literature, agreements, stored recordings, minutes or other records of meetings, all written or graphic records or representations of any kind, and all electronic data, records or representations of any kind, including all file folders, directories, and metadata.

12. "Downtime" means any non-permanent mill curtailment, reduction in output or reduction in production capacity, including but not limited to, plant or facility closures, curtailment or production downtime imposed for maintenance (whether scheduled or unscheduled), curtailment or production downtime imposed to balance supply with demand, or reduction in output for any other reason.

13. "Electronically stored information" ("ESI") includes, without limitation, the following:

    a. activity listings of electronic mail receipts and/or transmittals;

b.     output resulting from the use of any software program, including, without limitation, word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, Blackberry Messenger (or similar program including mobile instant messengers, web browser-based messengers or scoial network messengers) or bulletin board programs, operating and backup systems, source code, PRF files, PRY files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, a backup file or system, a deleted file or system, or file fragment; and

c.     any and all items stored on computer memories, hard disks, floppy disks, CD-ROM, magnetic tape, microfiche, cloud data center(s) or in any other vehicle for digital data storage or transmittal, such as, but not limited to, desktop computers, servers and other network computers, backup tapes or systems, laptop computers, home or personal computers used for business purposes, a personal digital assistant, *e.g.*, Palm Pilot, R.I.M., Blackberry, iPhone or similar device (generically known as "smart phones" or "PDAs"), external storage devices (such as "keychain" drives) and file folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all documents requested herein.

14.    "Employee" means, without limitation, any Person that you employ or employed during the Relevant Time Period.

15.    "Identity" or "identify" means:

a.     when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home

and business telephone numbers, present or last known position and business affiliation and contact information;

      b.     when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified; and

      c.     when used with reference to documents, to state specifically:

          i.     the type of documents involved (*e.g.*, letter, inter-office memorandum, etc.), together with information sufficient to enable a person to locate the document, such as its date, the name of any addressee, the name of any signer, the title or heading of the documents and its approximate number of pages; and

          ii.     the identity of the person last known to have possession of the document, together with the present or last known location of the document. If any document was, but is no longer, in your possession, custody or control, identify the document, state what disposition was made of it and the reason for such disposition. In lieu of identifying documents, copies may be provided.

16.    "Including" is used to emphasize certain types of documents requested and should not be construed as limiting the request in any way.  Including therefore means "including, but not limited to," or "including without limitation."

17.    "Industry Meeting" means, without limitation, any meeting, directly or indirectly relating to Containerboard Products or related products or industries, Trade Association (or other industry or similar organizations) or other entities or persons, whether formal, informal or *ad hoc*, involving two or more manufacturers, distributors or re-sellers of Containerboard Products or related businesses or persons and includes any formal or informal committee or other sub-unit.

18.    "Management" shall be construed broadly and means without limitation, Employees or other Persons with executive, management, supervisory or policy-setting responsibilities, both individually and collectively, and, depending upon context, includes their administrative assistants, secretaries or other support staff.

19.    "Manufacture," "Manufacturing," "Produce" or "Production" in each of their forms mean, without limitation, to make goods or products by manual labor or machinery or both, including to assemble, fabricate, construct, convert or process.

20.    "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

21.    "Named Plaintiffs" means the following: Kleen Products LLC; R.P.R. Enterprises, Inc.; Mighty Pac, Inc.; Ferraro Foods of North Carolina, LLC; Distributors Packaging Group, LLC; RHE Hatco, Inc.; and Chandler Packaging, Inc.

22.     "Person" means, without limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state or any foreign country.

23.     "Planning Staff" shall be construed broadly and means without limitation, Employees or other Persons with strategic planning, informational or analysis responsibilities both individually and collectively, and, depending upon context, includes their administrative assistants, secretaries or other support staff.

24.     "Policy" or "procedure" means any rule, practice or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by you.

25.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly or indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other documents.

26.     "Relevant Time Period" means January 1, 2002 through and including December 31, 2010, unless otherwise noted.[1]

27.     "Sales Personnel" shall be construed broadly and means, without limitation, any Employees or other Persons that had responsibility, directly or indirectly, relating to sales to customers of Containerboard Products sold in the U.S. (including any role or responsibility for

---

[1] See Instruction No. 1, *infra*.

selling, determining or establishing pricing, effectuating, or establishing terms and conditions of sales or purchases).

28.     "Studies" or "analyses" include all reports, memoranda, statistical compilations, reviews, audits and other types of written, printed, or electronic submissions of information.

29.     "Trade Association" means any group or association, formal or informal, relating to the market for Containerboard Products, including the Association of Independent Corrugated Converters ("AICC"), the Fibre Box Association ("FBA"),  The American Forest & Paper Association ("AF&PA"),  The International Corrugated Case Association ("ICCA"), Corrugated Packaging Alliance ("CPA"), the Corrugated Packaging Alliance Action Team ("CPAAT"),  the American Forest & Paper Association ("AFPA"),  the International Corrugated Case Association ("ICCA"), the Paper Industry Management Association ("PIMA"), the Association of Independent Corrugated Converters ("AICC") and RISI (originally founded and known as Resource Information Systems, Inc.) and includes any formal or informal committee or other sub-unit.

30.     "United States" or "U.S." means each of the 50 states, the District of Columbia, and the commonwealths, territories, and possessions of the United States.

31.     "You," "your" or "your company" mean the responding Defendant, including its predecessors, wholly-owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity that the responding Defendant manages or controls, including those merged with or acquired, together with all present and former directors, officers, employees, agents, attorneys, representatives or any persons acting or purporting to act on their behalf.

## INSTRUCTIONS

1.      Each request seeks all responsive documents created or generated during the designated time period, as well as all responsive documents created or generated outside the designated time period that contain information concerning the designated time period.  Changes that occurred within a designated time period shall be included in the documents produced.

2.      Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these document requests are continuing in nature so that if you subsequently discover or obtain possession, custody or control of any document covered by these requests, you shall promptly make any such document available to Plaintiffs.

3.      In producing documents and other materials, you are to furnish all documents in your possession, custody or control regardless of whether such documents or materials are physically or otherwise possessed, in the custody of or controlled directly or indirectly by you or your employees or former employees, agents or former agents, parents, subsidiaries, affiliates, investigators or by your attorneys or their employees, agents or investigators.  (Archived documents, ESI or other information maintained by third-party vendors, cloud data centers, or off-site shall be considered within your possession, custody or control.)

4.      Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, unless otherwise specified, all documents must be organized and labeled to correspond to categories in the associated document request.  For purposes of this instruction, the labels in Exhibit "A" shall be used as a "coding field" entry in the parties' document production.

5.      All documents shall be produced in the file folder, envelope or other container in which the documents are kept or maintained.  If for any reason the container cannot be produced,

you should produce copies of all labels or other identifying marks that may be present on the container.

6.      Documents attached to one another should not be separated.  If any portion of any document is responsive to any portion of the document requests below, then the entire document must be produced.

7.      Documents shall be produced in such fashion as to identify the department, branch or office in whose possession they were located and, where applicable, the natural person in whose possession they were found (*i.e.*, the document custodian) and the business address of each document custodian.

8.      All documents produced should be numbered sequentially, with a unique production number on each page (i.e., a "bates" number), and with a prefix identifying the party producing the document. An electronic document produced in its native format shall include the document's production number and an MD5 or similar hash number as associated metadata.

9.      To distinguish between paper and electronic records, all paper records shall include the letter "P" in the applicable Bates prefix.

10.     If a document once existed and subsequently has been lost, destroyed or is otherwise missing, you should provide sufficient information to identify the document and state, in writing, the details, including whether the document:

        a.      is lost or missing;

        b.      has been destroyed and, if so, by whom at whose request;

        c.      has been transferred or delivered, voluntarily or involuntarily, to another person or entity and at whose request; or

        d.      has been otherwise disposed of.

11.     In each instance in which a document once existed but now is lost or missing or has been destroyed or otherwise disposed of, explain the circumstances surrounding the disposition of the document, including, but not limited to:

a.     the identity of the person or entity who last possessed the document;

b.     the date or approximate date of the document's disposition; and

c.     the identity of all persons who have or had knowledge of the documents' contents.

12.     If any document responsive to any of these requests is privileged, and the document or any portion of the document requested is withheld based on a claim of privilege pursuant to Rule 26(b)(5) of the Federal Rules of Civil Procedure, provide a statement of the claim of privilege and all facts relied upon in support of that claim, as required by Federal Rules of Civil Procedure, including the following information:

a.     the reason for withholding the document;

b.     the date of such communication;

c.     the medium of such communication;

d.     the general subject matter of such communication (such description shall not be considered a waiver of your claimed privilege);

e.     the identity of any document that was the subject of such communication and the present location of any such document;

f.     the identity of all the persons involved in such communication;

g.     the identity of any document which records, refers, or relates to such communication and present location of any such document; and

      h.     the number or numbers of these requests for production of documents to which such information is responsive.

13.    Each document requested herein should be produced in its entirety and without deletion, redaction or excision, except as qualified by Instruction 11 above, regardless of whether you consider the entire document or only part of it to be relevant or responsive to these document requests. If you have redacted any portion of a document on the ground of privilege, stamp the word "REDACTED" beside the redacted information on each page of the document which you have redacted. Any redactions to documents produced should be identified in accordance with Instruction 11 above.

14.    All documents produced in paper form should be numbered sequentially, with a unique number on each page, and with a prefix identifying the party producing the document.

15.    All ESI shall be produced in such fashion as to identify the location, *i.e.*, the network file folder, hard drive, back-up tape, or other location, where the documents are stored and, where applicable, the natural person in whose possession they were found and the business address of each document's custodian(s). All ESI must include a .dii file or similar industry standard load file indicating the beginning and ending Bates numbers of all documents.

16.    ESI shall be produced, in its native format without deletion or alteration of metadata, or in a reasonably usable format agreed upon by the parties and shall include information or instructions sufficient to enable to the propounding party to access the ESI in such format.

17.    If a producing party produces electronic documents without some or all of the metadata that was contained in the electronic documents, the producing party shall inform all other parties of this fact, in writing, at or before the time of production.

## SPECIFIC DOCUMENT REQUESTS[2]

<u>Organizational Structure</u>

### REQUEST NO. 1:

For the period January 1, 2000 through December 31, 2010, organizational charts or other documents sufficient to show your complete organizational structure directly or indirectly relating to Containerboard Products, including a description of the business functions or responsibilities of each of the following:

      a.      predecessors, parents, subsidiaries, affiliates and joint ventures,

      b.      divisions, departments, segment, units or sub-divisions, and

      c.      board or management committees, subcommittees, or working groups and each of their related Persons.

<u>Document Preservation</u>

### REQUEST NO. 2:

For the period January 1, 2000 to the present, all documents relating to your policies or practices concerning the backup, archiving, retention, storage, destruction, disposal, or preservation of documents or ESI (including litigation hold policies and procedures).

<u>Current and Former Personnel</u>

### REQUEST NO. 3:

Documents sufficient to identify:

      a.      the names, titles, job descriptions, business affiliations[3] and contact information of each of your current or former directors and officers (including each of their administrative assistants, secretaries or other support staff);

---

2   Sub-headings and footnotes are included for convenience only and are qualified in their entirety by the relevant Definitions, Instructions and Specific Requests.

b.      the names, titles and job descriptions, business affiliations and contact information of each of your current or former Management with responsibilities relating to the Corporate Functions (including each of their administrative assistants, secretaries or other support staff);

c.      the names, titles and job descriptions business affiliations and contact information each of your current or former Planning Staff with responsibilities relating to the Corporate Functions (including each of their administrative assistants, secretaries or other support staff);

d.      the names, titles and job descriptions, business affiliations and contact information each of your current or former Sales Personnel (including each of their administrative assistants, secretaries or other support staff);

e.      the names, titles and job descriptions business affiliations and contact information each of your current or former directors, officers, Employees or vendors responsible for maintaining any ESI or other electronic database(s), including archives, of email or other electronic documents relating to the Corporate Functions (including retention and/or destruction policies or implementation); and

f.      the names, titles and job descriptions business affiliations and contact information each of your current or former directors, officers, Employees or vendors responsible for maintaining any central files or archives of paper document relating to the Corporate Functions (including retention and/or destruction policies or implementation).

---

3   For purposes of this Request, "business affiliations" includes affiliations with any of you, your predecessors, parents, subsidiaries, affiliates, joint ventures, divisions, departments, segment, units or sub-divisions, board or management committees, subcommittees, or working groups. "Business affiliations" also includes known business relationships with any other Persons.

**REQUEST NO. 4:**

For each your current or former directors and officers, Management, Planning Staff and Sales Personnel identified in the foregoing Request No. 3 (excluding administrative assistants, secretaries or other support staff) all:

a.      electronic and manual diaries, calendars, appointment books, to do lists, Day Timers, day planners or appointment notes;

b.      trip and travel logs, records, expenses, and other supporting documents;

c.      expense or entertainment reports, including supporting documents;

d.      personal and company copies of telephone number logs, directories, notebooks, Rolodex cards and related memoranda;

e.      bills, statements, records, and supporting documents concerning local, long distance, or cellular telephone calls by such employees, including calls made using telephones not paid for by you (such as home telephones or personal cellular telephones) if such telephones were used for business purposes;

f.      documents relating to membership in any Trade Association or industry group;

g.      contact information including all email addresses used by such persons for any business purposes, even if only sparingly; and

h.      communications with any other Defendant or their Employees or agents.

**REQUEST NO. 5:**

All documents relating to the voluntary or involuntary termination, resignation, retirement, discipline, discharge, reassignment, transfer or suspension of any current or former officers, directors or Employees with responsibilities relating to the Corporate Functions as a

result or relating to any contacts or communications with directors, officers, Employees, or any other representatives of any other Defendant or producer of Containerboard Products.

**REQUEST NO. 6:**

All documents relating to the voluntary or involuntary termination, resignation, retirement, discipline, discharge, reassignment, transfer or suspension of any current or former officers, directors, Employees or other Person as a result of any alleged participation in, involvement in or knowledge of any agreement, understanding, plan, contract, combination or conspiracy, express or implied, direct or indirect, in any manner relating to the production, marketing, distribution, sale, or resale of Containerboard Products.

Trade Associations & Industry Meetings

**REQUEST NO. 7:**

All documents relating to any Trade Associations (including membership lists, meeting announcements, agendas, minutes, notes, attendance lists, expense reports, handouts, reports, statistical bulletins, or correspondence).

**REQUEST NO. 8:**

Documents sufficient to identify any of your current or former officers, directors, Employees or other Persons acting on your behalf who attended any Trade Association meeting including the dates, locations, subject matter and sponsors of any such meeting(s).

**REQUEST NO. 9:**

All documents relating to any Industry Meetings (including meeting announcements, agendas, minutes, notes, attendance lists, expense reports, handouts, reports, statistical bulletins, or correspondence).

**REQUEST NO. 10:**

Documents sufficient to identify any of your current or former officers, directors, Employees or other Persons acting on your behalf who attended any Industry Meetings including the dates, locations, subject matter and sponsors of any such meeting(s).

**REQUEST NO. 11:**

For any other Person not covered by Request Nos. 3 or 4 but who attended any Trade Association meetings or events or Industry Meeting(s) all:

      a.     electronic and manual diaries, calendars, appointment books, to do lists, Day Timers, day planners or appointment notes;

      b.     trip and travel logs, records, expenses, and other supporting documents;

      c.     expense or entertainment reports, including supporting documents;

      d.     personal and company copies of telephone number logs, directories, notebooks, Rolodex cards and related memoranda;

      e.     bills, statements, records, and supporting documents concerning local, long distance, or cellular telephone calls by such employees, including calls made using telephones not paid for by you (such as home telephones or personal cellular telephones) if such telephones were used for business purposes;

      f.     documents relating to membership in any Trade Association or industry group;

      g.     contact information including all email addresses used by such persons for any business purposes, even if only sparingly , and

      h.     communications with any other Defendant or their Employees or agents.

Products & Manufacturing Processes

**REQUEST NO. 12:**

For the period January 1, 2000 through December 31, 2010, documents sufficient to identify the countries, geographic regions or territories where you manufacture, sell, market, or distribute Containerboard Products including each class, type, grade, or category.

**REQUEST NO. 13:**

For the period January 1, 2000 through December 31, 2010, documents sufficient to identify each class, type, grade, or category of Containerboard Product that you marketed, sold or distributed in the United States, including any brand name, its function, its physical properties and characteristics (including flute designation, flutes per linear foot, flute thickness per inch, flute per linear meter, other measures of flute thickness and ATSM designation).[4]

**REQUEST NO. 14:**

For the period January 1, 2000 through December 31, 2010, documents sufficient to identify each class, type, grade, or category of Containerboard Product you manufactured in the United States, including any brand name, its function, its physical properties and characteristics including flute designation, flutes per linear foot, flute thickness per inch, flute per linear meter, other measures of flute thickness and ATSM designation.[5]

**REQUEST NO. 15:**

All documents that compare or contrast Containerboard Products sold by you in the U.S with Containerboard Products sold by any other Defendant or by any other manufacturer,

---

[4]   Containerboard Products that are marketed, sold or distributed in the U.S are included within this Request regardless of the country where they were actually manufactured.

[5]   Containerboard Products that are manufactured in the U.S. are included within this Request regardless of the county where they marketed, sold or distributed.

distributor, re-seller or broker (including product characteristics, specifications, quality, prices, availability, delivery schedules, etc.).

**REQUEST NO. 16:**

All documents relating to actual or potential substitutes for Containerboard Products (including the effect of such substitutes' prices upon Containerboard Products pricing, purchase terms or profits).

**REQUEST NO. 17:**

For the period January 1, 2000 through December 31, 2010, documents sufficient to show the production process of each class, type, grade or category of Containerboard Products that you manufactured, marketed, sold or distributed in the U.S. (including raw material inputs or intermediates and the types of sheet, corrugating or converting machines used).

Mills, Plants & Converting Facilities

**REQUEST NO. 18:**

For the period January 1, 2000 through December 31, 2010, documents sufficient to determine the identity of all mills, plants, converting facilities or other facilities where you produced Containerboard Products sold in the U.S., including the identity of each sheet, corrugating or converting machine at each particular facility.[6]

**REQUEST NO. 19:**

For the period January 1, 2000 through December 31, 2010, documents sufficient to determine the dates that production of Containerboard Products sold in the U.S. began at each mill, plant, converting facility or other facilities, including:

      a.      production starting dates for each particular facility;

---

[6] This Request includes all Containerboard Products that you sold in the U.S. regardless of the country of manufacturing origin.

b.      production starting dates for each particular sheet, corrugating or converting machine at that facility; and

c.      production starting dates for each brand, class, type, grade, or category of Containerboard Product manufactured at that facility.

## REQUEST NO. 20:

For the period January 1, 2000 through December 31, 2010, for each mill, plant, converting facility or other facility where you produced Containerboard Products that you marketed, sold or distributed in the U.S, documents sufficient to:

a.      identify the subsidiaries, affiliates, joint ventures, divisions, departments, segments, units or sub-divisions or other Persons that owned, operated or controlled the particular facility;

b.      identify (by matching) each brand, class, type, grade, or category of Containerboard Product manufactured at that particular facility; and

c.      identify (by matching) each brand, class, type, grade, or category of Containerboard Product manufactured to each particular sheet, corrugating or converting machine at that particular facility.

Production Capacity[7]

## REQUEST NO. 21:

For the period January 1, 2000 through December 31, 2010, for each mill, plant, converting facility or other facility where you produced Containerboard Products that you marketed, sold or distributed in the U.S, documents sufficient to determine the weekly, monthly,

---

[7]    Produce the requested documents on a facility-by-facility, product-by-product (including class, type, grade, or category), machine-by-machine and product-by-machine basis or that matches the facilities, products and machines as they are used in the production process.

quarterly and annual (i) rated production capacity (according to generally accepted rating methodologies, such as thousands of short tons) and (ii) actual production capacity (if different from rated capacity, including the method or metrics of measurement and the means used to calculate such capacity). The requested information must be provided for (i) each particular facility; (ii) each particular sheet, corrugating or converting machine at that facility; and (iii) producing each brand, class, type, grade, or category of Containerboard Product manufactured at that facility.

**REQUEST NO. 22:**

For the period January 1, 2000 through December 31, 2010, for each mill, plant, converting facility or other facility where you produced Containerboard Products that you marketed, sold or distributed in the U.S., all documents that relate to any changes or variance in weekly, monthly, quarterly and annual rated or actual production capacity including all reasons for such changes or variance. The requested information must be provided for (i) each particular facility; (ii) each particular sheet, corrugating or converting machine at that facility; and (iii) producing each brand, class, type, grade, or category of Containerboard Product manufactured at that facility.

Operating Rates, Capacity Changes, Downtime[8]

**REQUEST NO. 23:**

For the period January 1, 2000 through December 31, 2010, for each mill, plant, converting facility or other facility where you produced Containerboard Products that you marketed, sold or distributed in the U.S., documents sufficient to determine actual weekly,

---

[8]   Produce the requested documents on a facility-by-facility, product-by-product (including class, type, grade, or category), machine-by-machine and product-by-machine basis or in any way that matches the facilities, products and machines as they are used in the production process.

monthly, quarterly and annual (i) forecasted, projected or estimated operating or capacity utilization rates and (ii) actual operating or capacity utilization rates. The requested information must be provided for (i) each particular facility; (ii) each particular sheet, corrugating or converting machine at that facility; and (iii) producing each brand, class, type, grade, or category of Containerboard Product manufactured at that facility.

**REQUEST NO. 24:**

For the period January 1, 2000 through December 31, 2010, for each mill, plant, converting facility or other facility where you produced Containerboard Products that you marketed, sold or distributed in the U.S., all documents that relate to changes or variance in (i) the forecasted, projected or estimated weekly, monthly, quarterly and annual operating or capacity utilization rates and (ii) the actual weekly, monthly, quarterly and annual operating or capacity utilization rates, including the reasons for such changes or variances. The requested information must be provided for (i) each particular facility; (ii) each particular sheet, corrugating or converting machine at that facility; and (iii) producing each brand, class, type, grade, or category of Containerboard Product manufactured at that facility.

**REQUEST NO. 25:**

For the period January 1, 2000 through December 31, 2010, documents sufficient to determine all Capacity Reductions, capacity additions or other changes to capacity, by each mill, plant, converting facility or other facility where you produced Containerboard Products that you marketed, sold or distributed in the U.S, including both planned or actual changes. The requested information must be provided for (i) each particular facility; (ii) each particular sheet, corrugating or converting machine at that facility; and (iii) producing each brand, class, type, grade, or category of Containerboard Product manufactured at that facility.

**REQUEST NO. 26:**

For the period January 1, 2000 through December 31, 2010, all documents that relate to any reasons for any Capacity Reductions, capacity additions or changes to capacity by each mill, plant, converting facility or other facility where you produced Containerboard Products that you marketed, sold or distributed in the U.S, including both planned or actual changes. The requested information must be provided for (i) each particular facility; (ii) each particular sheet, corrugating or converting machine at that facility; and (iii) producing each brand, class, type, grade, or category of Containerboard Product manufactured at that facility.

**REQUEST NO. 27:**

For the period January 1, 2000 through December 31, 2010, documents sufficient to determine all Downtime of each mill, plant, converting facility or other facility where you produced Containerboard Products that you marketed, sold or distributed in the U.S. (including both scheduled and unscheduled downtime). The requested information must be provided for (i) each particular facility; (ii) each particular sheet, corrugating or converting machine at that facility; and (iii) producing each brand, class, type, grade, or category of Containerboard Product manufactured at that facility.

**REQUEST NO. 28:**

For the period January 1, 2000 through December 31, 2010, all documents that relate to any reasons for all Downtime incurred at each mill, plant, converting facility or other facility where you produced Containerboard Products that you marketed, sold or distributed in the U.S (including both scheduled and unscheduled Downtime). The requested information must be provided for (a) each particular facility; (b) each particular sheet, corrugating or converting

machine at that facility; and (c) producing each brand, class, type, grade, or category of Containerboard Product manufactured at that facility.

Pricing

**REQUEST NO. 29:**

All documents utilized or generally referred to by your Management or Sales Personnel for quoting, changing, or setting the prices or the terms and conditions for sale of Containerboard Products (including documents relating to pricing guidelines, pricing methods, pricing formulas, procedures or authorization procedures for Sales Personnel to quote a price, price changes, price lists, pricing policies, pricing guidelines, pricing methods, violations of pricing policies and documents providing guidance to Sales Personnel about implementation of price changes).

**REQUEST NO. 30:**

All documents relating to or communicating price changes of Containerboard Products produced or sold in the U.S., (including price announcements, explanations of the reasons for price changes).

**REQUEST NO. 31:**

All documents analyzing the prices of Containerboard Products produced or sold in the U.S.

**REQUEST NO. 32:**

All documents relating to the forecasted, projected, estimated or actual effects of price increases for Containerboard Products (including any documents relating to any evaluation of the success or failure of any price increase).

**REQUEST NO. 33:**

For the period January 1, 2000 through December 31, 2010, all price lists or similar documents relating to Containerboard Products produced and/or sold in the U.S.

**REQUEST NO. 34:**

All non-transaction specific documents, including communications, relating to the price of Containerboard Products offered by you, by any other Defendant, or by any other manufacturer, distributor, re-seller or broker of Containerboard Products (including price announcements, price changes, explanations of the reasons for price changes, price lists, pricing policies, pricing guidelines, pricing methods, pricing formulas, procedures or authorization procedures for Sales Personnel to quote a price, analysis of market prices, and monitoring of competitor pricing).

**REQUEST NO. 35:**

For the period January 1, 2000 to the present, documents sufficient to show weekly, monthly, quarterly, and annual prices of Containerboard Products sold in the U.S. including prices offered by you, by any other Defendant, or by any other manufacturer, distributor, re-seller or broker of Containerboard Products identified on a (i) product line or product category basis; and (ii) product line-by-facility or product category-by-facility basis.

**REQUEST NO. 36:**

All documents relating to the elasticity of demand or price sensitivity of Containerboard Products.

**REQUEST NO. 37:**

All documents relating to any index or indices prices.

Cost Accounting

**REQUEST NO. 38:**

Documents sufficient to identify the names, titles, job descriptions, business affiliations and contact information of each of your current or former Employees with executive or management responsibility for cost accounting (production, sales, and distribution costs, etc.) for Containerboard Products manufactured or sold in the U.S. including on a (i) consolidated basis; (ii) for each business unit or segment (iii) product line or product category basis; and (iv) facility-by-facility basis.

**REQUEST NO. 39:**

Documents identifying all software, programs, databases and systems you used in connection with cost accounting for Containerboard Products manufactured or sold in the U.S., including their outputs of such software, programs, databases and systems.

**REQUEST NO. 40:**

Documents sufficient to identify all types of fixed and variable production, sales or marketing costs, including raw materials, that you track or record for Containerboard Products manufactured or sold in the U.S.

**REQUEST NO. 41:**

All documents identifying and relating to your cost accounting policies and procedures for Containerboard Products manufactured or sold in the U.S.

**REQUEST NO. 42:**

All documents relating to accounting policies and procedures for intra-company transfer pricing and intra-defendant transactions for Containerboard Products manufactured or sold in the U.S.

**REQUEST NO. 43:**

All weekly, monthly, quarterly and annual cost or cost accounting reports (including, production, sale and distribution) regularly prepared or received by your current or former directors, officers, Management, Planning Staff on a (i) consolidated basis; (ii) for each business unit or segment (iii) product line or product category basis; and (iv) facility-by-facility basis, including all documents or communications related to the foregoing.

**REQUEST NO. 44:**

All budgets, projections, estimates, or related studies or reports prepared or received by your current or former directors, officers, Management, or Planning Staff on a (i) consolidated basis; (ii) for each business unit or segment (iii) product line or product category basis; and (iv) facility-by-facility basis.

<u>Competitive Conditions and Reports</u>

**REQUEST NO. 45:**

All documents relating to Competitive Conditions in the market for Containerboard Products, including reports, studies or analyses relating to forecasted, projected, estimated, planned or actual: (i) market shares, (ii) consolidation, (iii) production capacity, capacity reduction, capacity utilization or operating rates (iv) fixed or variable costs, (v) pricing, (vi) inventories (vii) entry or exist conditions (viii) inventories, (ix) supplies/supply trends, (x) demand/demand trends, or (xi) substitute products.

**REQUEST NO. 46:**

All documents relating or referring to price discipline, price leadership, industry leadership, industry discipline, production discipline, supply discipline or a disciplined approach or practices.

**REQUEST NO. 47:**

For the period January 1, 2000 through December 31, 2010 all documents relating to monitoring, analyzing, or studying any competitor's: (i) market shares, (ii) pricing, (iii) production capacity, capacity reduction, capacity utilization or operating rates, (iv) downtime, (v) supplies and inventories, or (vi) customers.

**REQUEST NO. 48:**

All documents concerning Containerboard Products sold in the U.S. relating to policies, studies, reports, presentations received or prepared by your current or former directors, officers, Management or Planning Staff relating to the forecasted, projected, estimated, planned or actual:

        a.      effects of production capacity, capacity reduction, capacity utilization, operating rates or downtime (including changes) on prices, supplies or inventories;

        b.      effects of supplies or inventories (including changes) on prices; and

        c.      effects of price changes on demand.

**REQUEST NO. 49:**

All documents relating to studies, reports and presentations received or prepared by your current or former directors, officers, Management or Planning Staff relating to Competitive Conditions in the market for Containerboard Products (including management reports and presentations, financial reports and presentations, business planning and strategy reports and presentations, planning analyses, budgets, forecasts, sales projections consulting and advisory reports and presentations).

**REQUEST NO. 50:**

All business or strategic plans relating to Containerboard Products, for the period January 1, 2000 to December 31, 2010.

**REQUEST NO. 51:**

All documents relating to forecasted, projected, estimated, planned, or actual demand for Containerboard Products.

**REQUEST NO. 52:**

All documents relating to demand changes or demand fluctuations for Containerboard Products sold in the U.S. (including the underlying causes of demand fluctuations and the effect of demand fluctuations upon Containerboard Products pricing, purchase terms or profits).

**REQUEST NO. 53:**

All documents relating to any memoranda, studies, reports, analyses, or presentations concerning Containerboard Products, prepared by any consulting firms (including McKinsey & Company, Deloitte Consulting LLP or Accenture).

**REQUEST NO. 54:**

All documents relating to any memoranda, studies, reports, analyses, or presentations concerning Containerboard Products, prepared by any investment banking, commercial banking or other financial services firms (including Deutsche Bank, Citigroup, Lazard Ltd., UBS or Morgan Stanley).

**REQUEST NO. 55:**

All documents relating to any trade publications, market analyst studies, reports, analyses, presentations, newsletters, publications, market updates or other similar documents concerning  Containerboard Products (including documents authored by Deutsche Bank, Buckingham Research Group Inc., the Gerson Lehman Group, RISI, Official Board Markets or any other market analyst or firm).

**REQUEST NO. 56:**

All documents relating to memoranda, studies, reports or presentations relating to Containerboard Products that were delivered to investors, annual meeting attendees, earnings call participants, roadshow attendees, prospective investors, lenders, bondholders, other creditors or prospective creditors, investment banks, investment funds, commercial banks, market analysts, or credit rating agencies.

**REQUEST NO. 57:**

All documents relating to memoranda, studies, reports or presentations (including related documents such as speeches or speaker's notes) received or delivered by current or former current or former directors, officers, Management, Planning Staff or Sales Personnel who attended any Trade Association meeting, Industry Meeting or similar event attended by any other Defendant (including those sponsored by any Trade Association, consulting firm, investment or commercial bank, trade publication or market information provider or analyst).

**REQUEST NO. 58:**

All documents relating to studies, reports, presentations, newsletters or data reports concerning Containerboard Products that were submitted to, received from, or published by any Trade Association or other formal or informal industry group.

**REQUEST NO. 59:**

All documents relating to any meeting, communications (including corporate communications) with any financial analyst, investment or commercial bank, trade publication or market information provider or analyst concerning Competitive Conditions in the market for Containerboard Products.

**REQUEST NO. 60:**

All documents relating to any contemplated, proposed, or actual bids for Containerboard Products business, including documents concerning whether or not to bid.

Competitor Contacts

**REQUEST NO. 61:**

For the period January 1, 2000 through December 31, 2010, all documents that refer to, relate to, or contain information concerning, in whole or in part, any consummated, proposed, direct or indirect meeting, communication, written or unwritten agreement or understanding involving any of your current or former officers, directors or Employees or other Persons acting on your behalf, on the one hand, and any current or former officers, directors, Employees or other Persons acting on behalf of any other Defendant or other Person involved in production, marketing, distribution, sale, or resale of Containerboard Products on the other hand, relating in any manner to Containerboard Products:

      a.     production (including output, capacity, capacity reduction, capacity utilization, operating rates, facilities closures, rationalization, downtime and/or production scheduling);

      b.     supply and inventories;

      c.     pricing (including prices, pricing and terms, discounts, conditions of sale, price increases, maintaining prices and price increases and strategy for implementing price increases);

      d.     sales and marketing;

      e.     customers;

      f.     imports or exports;

g.      swaps, exchanges, intra-company transfers and inter-Defendant transactions;

h.      business strategy, planning and analysis;

i.      market or Competitive Conditions;

j.      mergers, acquisitions, joint ventures, divestitures, sales or transfers of assets, spin-offs or any other form of change of ownership or control;

k.      finance and accounting, including financial performance and objectives;

l.      antitrust training or compliance;

m.      Corporate Communications;

n.      purchasing or procurement or supply conditions of inputs, raw materials or intermediates (*i.e.*, pulp, OCC, linerboard, corrugated medium, dyes and inks, energy, supply chain, etc. ) used in production;

o.      market share levels or changes in market share; and

p.      profit margins or profitability.

<u>Industry Consolidation</u>

**<u>REQUEST NO. 62:</u>**

For the period January 1, 2000 through December 31, 2010, all documents relating to any proposed or consummated sale, acquisition, merger, joint venture, divestiture, transfer of assets, spin-off, or any other form of change of ownership or control or business combination concerning any Containerboard Products related business, production facilities, product lines or other assets (including both businesses or assets owned or controlled by you and those owned or controlled by other Persons and any minutes, notes, reports, studies, analysis, presentations,

expert or market participant comments, analysis or other information and all such documents submitted to or received from any governmental agency).

<u>Announcements, Press Releases & Corporate Communications</u>

## **REQUEST NO. 63:**

All documents relating to public announcements, press releases, or Corporate Communications concerning Containerboard Products that were made by you, or any other Defendant or any other manufacturer, distributor, re-seller or broker of Containerboard Products:

a. production (including output, capacity, capacity reduction, capacity utilization, operating rates, facilities closures, rationalization, downtime and/or production scheduling);

b. supply and inventories;

c. pricing (including prices, pricing and terms, discounts, conditions of sale, price changes, maintaining prices and strategy for implementing price changes);

d. sales and marketing;

e. customers;

f. imports or exports;

g. swaps, exchanges, intra-company transfers and inter-Defendant transactions;

h. business strategy, planning and analysis;

i. Competitive Conditions;

j. mergers, acquisitions, joint ventures, divestitures, sales or transfers of assets, spin-offs or any other form of change of ownership or control;

k. finance and accounting (including financial performance and objectives);

l.      antitrust training or compliance;

m.      purchasing and procurement and supply condition of inputs, raw materials or intermediates (*i.e.*, pulp, OCC, linerboard, corrugated medium, dyes and inks, energy, supply chain, etc. ) used in production;

n.      market share levels or changes in market share; and

o.      profit margins or profitability.

 Inquiries, Investigation, Litigation & Compliance Policies, Procedures, Practices and Guidelines 

**REQUEST NO. 64:**

For the period January 1, 1996 through December 31, 2010, all documents that directly or indirectly relate, in whole or in part, alone or when viewed with other documents any combination, conspiracy, agreement or understanding, explicit, implied or tacit, to fix prices, reduce output, production capacity supplies or inventories or allocate customers, product lines or territories for Containerboard Products sold in the U.S.

**REQUEST NO. 65:**

For the period January 1, 1996 through December 31, 2010, all documents relating to any possible or alleged violations of federal, state, or international antitrust laws, competition laws, anti-monopoly laws, anti-cartel laws, unfair competition laws, anti-bribery laws and any similar laws, rules or regulations by you, any other Defendant or any other Containerboard Products-related business or person  (including any current or former officers, directors, Employees or other persons)  including:

a.      any inquiry, investigation, administrative, criminal or civil litigation or similar actions (regardless of characterizations such as non-adjudicative, cooperating, preliminary, informal, formal, incomplete, open, closed or final) by any government

entity, legislative body or representative or instrumentality thereof (*i.e.*, the United States Department of Justice, the Federal Bureau of Investigation, the Federal Trade Commission, the International Trade Commission, any state law enforcement agency, any grand jury, any committee of the United States Congress, any agency of a state or other political subdivision, and any domestic or international government body) (including all documents received from or provided to such governmental entities or used during or regarding discussions or negotiations with them);

b.      any internal inquiry or investigation (regardless of characterizations such as non-adjudicative, cooperating, preliminary, informal, formal, incomplete, open, closed or final) and further including any violation of internal antitrust or competition law policies or practices; and

c.      any private actions or civil litigation (including arbitrations, mediations or negotiations and further including any violation of internal antitrust or competition law policies or practices) in which you have been a party, witness, participant, or subject.

**REQUEST NO. 66:**

For the period January 1, 1996 through December 31, 2010, all documents relating to actions to conceal or avoid detection of any potential violations of federal, state, or international antitrust laws, competition laws, anti-monopoly laws, anti-cartel laws, unfair competition laws, anti-bribery laws and any similar laws, rules or regulations (including meeting in locations such as coffee shops, airport hotels, and going for a walk outside, using non-traceable prepaid calling cards, non-contract or disposable cell phones, placing calls from public phones, and destroying, secreting, altering or forging documents).

**REQUEST NO. 67:**

Without time limitation, documents:

       a.    sufficient to show the terms and conditions of any preliminary or permanent injunction, consent decree, plea agreement, sentencing agreement, settlement agreement or stipulation of settlement in a class action or private action, judgment or similar orders or agreements relating to alleged violations of federal, state, or international antitrust laws, competition laws, anti-monopoly laws, anti-cartel laws, unfair competition laws, anti-bribery laws and any similar laws, rules or regulations entered against you or any other Defendant, further including in the following actions:

          i.    *United States of America v. National Container Association, et al.*;

          ii.    *United States v. Container Corporation of America, et al.*;

          iii.    *In re Folding Carton Antitrust Litigation*;

          iv.    United States v. 14 companies and 26 individuals, including International Paper, Weyerhaeuser and Stone Container Corporation in United States District Court for the Southern District of Texas alleging a conspiracy east of the Rocky Mountains to fix prices of corrugated containers and sheets, including *United States v. International Paper Co*., No. H-78-11 and *United States v. Boise Cascade Corp*., No. H-78-12;

          v.    *In re Corrugated Container Antitrust Litigation*;

          vi.    *In the Matter of Stone Container Corp*., FTC Docket No. C-8306; and

          vii.    *In re Linerboard Antitrust Litigation.*

**REQUEST NO. 68:**

All documents relating to compliance policies whether implemented, adopted, used or considered concerning federal, state, or international antitrust laws, competition laws, anti-monopoly laws, anti-cartel laws, unfair competition laws, anti-bribery laws and any similar laws or regulations, or contacts and/or communications with your competitors (including current and former versions of compliance policies and procedures, presentations, seminars, programs, memos, Corporate Communications, statements signed by your employees with responsibility for Containerboard Products that  acknowledge receipt of or compliance with such policies arising from or relating to  any prior legal proceedings) and all documents relating to any inquiries or investigations concerning compliance with such policies including those listed in the prior Request.

**REQUEST NO. 69:**

All documents relating to any joint defense, contribution, indemnity or judgment sharing agreement relating to any investigation, civil or criminal litigation involving the production, sale, resale or marketing of Containerboard Products.

<u>Plaintiffs</u>

**REQUEST NO. 70:**

All documents relating to the Named Plaintiffs in this action.

<u>Complaints</u>

**REQUEST NO. 71:**

All documents relating to complaints received from any Containerboard Products customer regarding prices, pricing, or terms or conditions of sale or the refusal or failure to

supply Containerboard Products and any responses thereto, and all documents reflecting any policy of your company concerning the handling of such complaints.

Affirmative Defenses

**REQUEST NO. 72:**

All documents that support any affirmative defense relating to the applicable statute of limitation period in this case (including actual or inquiry notice of the claims alleged in the Complaint).

**REQUEST NO. 73:**

All documents that support any affirmative defense relating to any release of claims alleged in this lawsuit by any Named Plaintiff or member of the proposed class.

**REQUEST NO. 74:**

All documents that support any affirmative defense relating in whole or in part, to the doctrines of estoppel and laches.

**REQUEST NO. 75:**

All documents that support any other affirmative defense you have alleged in your answer to the Complaint.

Forms of Contract

**REQUEST NO. 76:**

All forms of contracts or invoices issued to customers for sale of Containerboard products in the U.S.

ESI

**REQUEST NO. 77:**

Documents sufficient to identify and describe your computer hardware and systems, software, ESI, database, storage, backup and archiving systems and communications systems and devises used in connection with any of the Corporate Functions.

**REQUEST NO. 78:**

All documents necessary to understand the operation of any of the computer hardware and systems, software, ESI, database, storage, backup and archiving systems and communications systems and devises information requested herein (including, but not limited to, documents describing or defining the fields contained in any such database file naming conventions and standards; Help features or documentation; password, encryption, and other security protocols; diskette, CD, DVD, and other removable media labeling standards; email storage conventions, *e.g.*, limitations on mailbox sizes/storage locations; schedule and logs for storage; software and hardware upgrades (including patches) for the relevant time period (including who and what organization conducted such upgrades); and Backup tape rotation

**REQUEST NO. 79:**

Documents sufficient to identify and describe policies relating to your computer hardware and systems, software, ESI, database, storage, backup and archiving systems and communications systems and devises including, but not limited to, the following:

   a.    employee usage policies for company computers, telephones, and other technology (including personal or home computer usage policies for work-related activities);

   b.    company-wide monitoring software;

      c.      Backup tape rotation schedules; and

      d.      ESI retention, preservation and destruction schedules.

**REQUEST NO. 80:**

Documents sufficient to identify or describe the outputs of your ESI, information systems, databases and communications systems used by you to record, store, communicate, compute, analyze, organize, or retrieve information relating to the Corporate Functions (including all mainframe systems, legacy systems, archives, computers, networks, telephones, handheld devices, smart phones, storage or archiving systems, and word processing, electronic mail, personal information managers, calendar, or spreadsheet programs).

<u>Data</u>

**REQUEST NO. 81:**

All weekly, monthly, quarterly, and annual audited or unaudited financial statements, regularly prepared or received by your current or former directors, officers, Management, Planning Staff, Affiliated Person responsibilities relating to the Corporate Functions (including the CFO, treasurer or controller) for Containerboard Products sold in the U.S., including all documents appended to the foregoing (including profit and loss statements, balance sheets, cash flow statements, and other financial, accounting or operating statements) on a: (i) consolidated basis; (ii) for each business unit or segment; (iii) product line or product category basis; and (iv) facility-by-facility basis.

**FOR THE FOLLOWING DOCUMENT REQUESTS NOS. 82 – 94 THE RELEVANT TIME PERIOD IS JANUARY 1, 2000 THROUGH DECEMBER 31, 2010 AND DATA REQUESTS ARE FOR ESI IN NATIVE FORMAT:**

**REQUEST NO. 82:**

Documents sufficient to show your weekly, monthly, quarterly, and annual production of Containerboard Products.

**REQUEST NO. 83:**

Documents sufficient to show your weekly, monthly, quarterly, and annual price, cost and margin data for Containerboard Products sold in the U.S.

**REQUEST NO. 84:**

For all sales of Containerboard Products in the U.S., transaction level data, including:

      a.      customer names, addresses and transaction dates;

      b.      product data;

      c.      price and volume data;

      d.      discount, credit and rebate data;

      e.      freight charge, transportation and other cost data; and

      f.      any other data available in such a database.

**REQUEST NO. 85:**

Documents sufficient to show your weekly, monthly, quarterly, and annual sales (in dollars) and shipments (in short tons, linear feet, or other unit of volume) of Containerboard Products sold in the U.S. on a (i) consolidated basis; (ii) business segment or unit; (iii) product line or product category basis; and (iv) facility-by-facility basis.

**REQUEST NO. 86:**

Documents sufficient to show your weekly, monthly, quarterly, and annual imports of Containerboard Products sold in the U.S, identified by product line or product category[9] and country of origination.

---

[9] Includes brand, class, type, grade, or category

**REQUEST NO. 87:**

Documents sufficient to show your weekly, monthly, quarterly, and annual exports of Containerboard Products made in the U.S., identified by product line or product category and country of delivery or end-use.

**REQUEST NO. 88:**

Documents sufficient to show your weekly, monthly, quarterly, and annual inventories of Containerboard Products for sale in the U.S. identified on a (i) consolidated basis; (ii) business segment or unit; (iii) product line or product category basis; and (iv) facility-by-facility basis.

**REQUEST NO. 89:**

Documents sufficient to show your weekly, monthly, quarterly, and annual prices of Containerboard Products sold in the U.S. identified on a (i) consolidated basis; (ii) business segment or unit; (iii) product line or product category basis; and (iv) facility-by-facility basis..

**REQUEST NO. 90:**

For Containerboard Products sold in the U.S., all transaction level data for all costs of production (including raw materials), sales, marketing, and distribution, including:

      a.      supplier names, addresses, and transaction dates;

      b.      product data;

      c.      price and volume data;

      d.      discount, credit and rebate data;

      e.      freight charge, transportation and other data; and

      f.      any other data available in such a database.

**REQUEST NO. 91:**

For all Containerboard Products produced in the U.S., all transaction level data for all costs of production (including raw materials), sales, marketing, and distribution including:

        a.      supplier names, addresses, and transaction dates;

        b.      product data;

        c.      price and volume data;

        d.      discount, credit and rebate data;

        e.      freight charge, transportation and other data; and

        f.      any other data available in such a database.

**REQUEST NO. 92:**

Documents sufficient to show your weekly, monthly, quarterly, and annual cost incurred to produce Containerboard Products including, but not limited to, documents showing each of your fixed costs, variable costs (including raw materials, intermediates, labor, etc.), cost of goods sold, or any other measure of production cost, identified on a (i) consolidated basis; (ii) unit basis; (iii) product line or product category basis; and (iv) facility-by-facility basis. If any costs are allocated or shared costs, please produce all documents detailing the allocation and itemization of the costs so allocated or shared.

**REQUEST NO. 93:**

Documents sufficient to show your weekly, monthly, quarterly, and annual margins on Containerboard Products produced or sold in U.S., identified on a (i) consolidated basis; (ii) product line or product category basis; and (iii) facility-by-facility basis (including contribution margin, gross margin, other measure of margin).

**REQUEST NO. 94:**

To the extent not provided in response to the foregoing Request, documents sufficient to show your weekly, monthly, quarterly, and annual profits on Containerboard Products produced or sold in U.S reports identified on a (i) consolidated basis; (ii) product line or product category basis; and (iii) facility-by-facility basis, (including, but not limited to, gross profits, operating profits, net profits, cash flow reports, and EBITDA).

Dated: May 3, 2011

Daniel J. Mogin
Matthew T. Sinnott
THE MOGIN LAW FIRM, P.C.
707 Broadway, Suite 1000
San Diego, CA 92101
T: 619-687-6611
F: 619-687-6610

Michael J. Freed
Steven A. Kanner
FREED KANNER LONDON
& MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015 USA
T: 224-632-4500
F: 224-632-4521
Lead Counsel for the Proposed Class

## Exhibit A – Coding Field Labels for Document Discovery

| Plaintiffs' Discovery Request | Coding Field Label |
|---|---|
| No. 1 | Organizational |
| No. 2 | Document Preservation |
| Nos. 3-6 | Personnel |
| Nos. 7-11 | Trade Associations |
| Nos. 12-17 | Products |
| Nos. 18-20 | Plants |
| Nos. 21-22 | Production Capacity |
| Nos. 23-28 | Capacity Changes |
| Nos. 29-37 | Pricing |
| Nos. 38-44 | Cost Accounting |
| Nos. 45-60 | Competitive Conditions |
| No. 61 | Competitor Contacts |
| No. 62 | Industry Consolidation |
| No. 63 | Corporate Communications |
| Nos. 64-69 | Investigations |
| No. 70 | Plaintiffs |
| No. 71 | Complaints |
| Nos. 72-75 | Affirmative Defenses |
| No. 76 | Forms of Contract |
| Nos. 77-80 | ESI – Systems |

| Plaintiffs' Discovery Request | Coding Field Label |
|---|---|
| No. 81 | Data – Financial Statements |
| No. 82 | ESI – Production |
| Nos. 83-84 | ESI – Transaction Data |
| Nos. 85-86 | ESI – Imports |
| No. 87 | ESI – Exports |
| No. 88 | ESI – Inventory |
| No. 89 | ESI – Prices |
| Nos. 90-92 | ESI – Costs |
| Nos. 93-94 | ESI – Margins/Profits |

## CERTIFICATE OF SERVICE

I certify that on May 3, 2011, a copy of the foregoing Plaintiffs' First Request for Production of Documents Directed to All Defendants was served by email on the following persons:

**SEE ATTACHED LIST**

Daniel J. Mogin
Matthew T. Sinnott
THE MOGIN LAW FIRM, P.C.
707 Broadway, Suite 1000
San Diego, CA 92101
T: 619-687-6611
F: 619-687-6610

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.,*
No. 1:10-cv-05711

## SERVICE LIST

Douglas J. Kurtenbach
Daniel E. Laytin
Barack S. Echols
Jeannie Young Evans
Luke Christian Ruse
KIRKLAND & ELLIS LLP
300 North LaSalle St
Chicago, IL 60654
(312) 682-2000 MAIN
(312) 826-3094 (LCR)
douglas.kurtenbach@kirkland.com
daniel.laytin@kirkland.com
bechols@kirkland.com
jeannie.evans@kirkland.com
juke.ruse@kirkland.com

*Attorneys for Packaging Corp of America*


Dao Lee Boyle
Scott Jared Fisher
NEAL, GERBER & EISENBERG
Two North LaSalle Street
Suite 1700
Chicago, IL 60602
(312) 269-8000 (DLB)
(312) 269-8035 (SJF)
dboyle@ngelaw.com
sfisher@ngelaw.com

Nathan P. Eimer
John K. Theis
EIMER STAHL KLEVORN & SOLBERG LLP
224 South Michigan Ave.
Suite 1100
Chicago, IL 60604
neimer@eimerstahl.com
jtheis@eimerstahl.com

Daniel W. Nelson
Joshua Lipton
Austin Schwing
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave., N.W.
Washington, DC 20036
(202) 887-3687 MAIN
dnelson@gibsondunn.com
jlipton@gibsondunn.com

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.,*
No. 1:10-cv-05711

George A. Nicoud III
Casey N. Carrington
Rebecca Justice Lazarus
Robert Kim
Austin Schwing
Joel Willard
GIBSON, DUNN & CRUTCHER LLP
555 Mission St., Suite 3000
San Francisco, CA 94105
(415) 393-8308 MAIN
tnicoud@gibsondunn.com
ccarrington@gibsondunn.com
sdale@gibsondunn.com
rkim@gibsondunn.com
aschwing@gibsondunn.com

*Attorneys for International Paper*


Scott M. Mendel
John Edward Susoreny
Lauren Nicole Norris
K&L GATES LLP
70 West Madison, Suite 3100
Chicago, IL 60602
(312) 372-1121 (SMM)
(312) 807-4285 (JES)
(312) 807-4218 (LNN)
smendel@bellboyd.com
john.susoreny@klgates.com
lauren.norris@klgates.com

*Attorneys for Cascades, Inc. and Norampac Industries*


James R. Figliulo
Stephanie D. Jones
FIGLIULO & SILVERMAN
Ten South LaSalle Street
Suite 3600
Chicago, IL 60603
(312) 251-4600 MAIN
jfigliulo@fslegal.com
sjones@fslegal.com

{00029066.}

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.,*
No. 1:10-cv-05711

Stephen Neuwirth
Sami Husayn Rashid
Kyle R. Taylor
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison, 22nd FL
New York, NY 10010
(212)849-7000
stephenneuwirth@quinnemanuel.com
samirashid@quinnemanuel.com
kyletaylor@quinnemanuel.com

*Attorneys for Georgia Pacific LLC*


Andrew Stanley Marovitz
Britt Marie Miller
Courtney Lynn Anderson
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600 MAIN
amarovitz@mayerbrown.com
bmiller@mayerbrown.com
courtnofication@mayerbrown.com

*Attorneys for Temple-Inland, Inc.*


R. Mark McCareins
James Franklin Herbison
Michael P. Mayer
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600 MAIN
rmccareins@winston.com
jherbison@winston.com
mmayer@winston.com

*Attorneys for Smurfit-Stone Container Corp*

David Marx Jr.
Jennifer A. Smulin Diver
Rachael V. Lewis
MCDERMOTT WILL & EMERY LLP
227 W. Monroe Street #4400
Chicago, Illinois 60606
(312) 984-7668
dmarx@mwe.com
jdiver@mwe.com
rlewis@mwe.com

*Attorneys for Weyerhaeuser*

{00029066.}

**Exhibit 2**

MAYER · BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

August 11, 2011

**BY E-MAIL & FIRST CLASS MAIL**

**Britt M. Miller**
Direct Tel +1 312 701 8663
Direct Fax +1 312 706 8763
bmiller@mayerbrown.com

Michael J. Freed
Steven A. Kanner
FREED KANNER LONDON & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015

Daniel J. Mogin
THE MOGIN LAW FIRM
707 Broadway, Suite 1000
San Diego, CA 92101

Re:  *Kleen Products LLC, et al. v. Packaging Corp. of
America, et al.*, Case No. 10-CV-5711 (N.D. Ill.)

Counsel:

Thank you again for a productive meet-and-confer session on August 3. We believe that we
resolved a number of issues and made clear that, with a few exceptions, the parties are largely in
agreement on the way forward. Below is a summary of the results of our discussion (which
largely tracks, in reverse, the issues set forth in Dan Mogin's July 6, 2011 E-mail) as well as
defendants' responses and proposals regarding the parties' outstanding issues.[1]

**Defendants' Responses to Specific Document Requests (Section C of the July 6 Email)**

- ***Request Nos. 9, 10, 11.*** As we discussed, the parties' disagreement on these requests
  largely stems from the breadth of plaintiffs' definition of the term "Industry Meeting."
  Fairly read, plaintiffs' definition includes virtually every meeting each defendant (and
  anyone associated with that defendant) may have had with any of its customers over the
  relevant period. As set forth in defendants' objections to these requests, that definition is
  grossly overbroad and unduly burdensome. In an attempt to resolve the issue, both sides
  agreed to propose alternative definitions for the term which, as we understand it, is
  intended to capture horizontal meetings between containerboard manufacturers and/or
  their authorized representatives at which the pricing, manufacture, sale, or distribution of
  linerboard, corrugated medium, containerboard, and corrugated products was discussed.
  To this end, defendants propose the following revised definition:

---

[1]     Defendants' proposals necessarily assume that the parties will ultimately be able to reach agreement on the
scope of production as outlined herein.

Mayer Brown LLP operates in combination with our associated English limited liability partnership
and Hong Kong partnership (and its associated entities in Asia) and is associated with Tauil & Chequer Advogados, a Brazilian law partnership.

Michael J. Freed
Steven A. Kanner
Daniel J. Mogin
August 11, 2011
Page 2

> "Industry Meeting" means any meeting, whether formal or
> informal, involving two or more manufacturers of linerboard,
> corrugating medium, containerboard, or corrugated products or
> their authorized representatives or agents related to the pricing,
> sale, manufacture, or distribution of such products in the United
> States. Specifically excluded are routine sales calls and meetings
> between a defendant and one of its non-co-defendant customers."

- ***Request Nos. 25 & 26.*** As explained during the August 3 meet-and-confer, there is a logical conflict between plaintiffs' definitions of "Capacity Reductions" and "Downtime." Specifically, plaintiffs' definition of "Capacity Reduction" includes both permanent and non-permanent reductions in capacity. At the same time, plaintiffs' definition of "Downtime" is limited to "non-permanent" reductions in capacity due to "plant and facility closures" or "reduction in output for any other reason," among other things. Taken together, these definitions are confusing and ambiguous. The term "Capacity Reduction" also includes reductions at both the mill and box plant levels, yet to the best of defendants' knowledge, the term "capacity" is not typically used in the industry to describe box plant production or output. Consequently, in responding to the Requests, defendants shall interpret the term "Capacity Reduction" to include only permanent reductions in mill capacity or output (*i.e.*, permanent mill or mill machine closure), and the term "Downtime" to cover non-permanent reductions in mill capacity or output, provided that such period of non-production lasted for more than 24 hours (*i.e.*, non-de minimis, temporary mill or mill machine closures or curtailments due to, among other things, natural disasters, scheduled maintenance, market-related reasons, or prolonged machine malfunctions).

- ***Request No. 44.*** In Dan Mogin's July 6 email, plaintiffs state that Request No. 44 seeks all "documents relating to budgets, projections, estimates or related studies or reports." In actuality, Plaintiffs' request 44 as drafted seeks "all budgets, projections, estimates, or related studies or reports prepared or received by your current or former directors, officers, Management, or Planning Staff...." And whereas the parties' discussion on August 3 centered on plaintiffs' use of the phrase "relating to" (which does not actually appear in the request itself), the request remains substantially overbroad and ambiguous. As virtually everything defendants do is arguably tied to their respective budgeting and related processes, plaintiffs' request could be read to include every file in defendants' possession. That said, defendants appreciate that plaintiffs are seeking not only the budgets, projections, and estimates themselves, but any analyses, discussions, or other underlying documents. As we discussed, however, defendants believe that such documents would be captured by other requests. So as to avoid any confusion, in responding to this request, defendants will produce those documents that form the basis

Michael J. Freed
Steven A. Kanner
Daniel J. Mogin
August 11, 2011
Page 3

> for each defendant's respective budgets, projections, or estimates concerning linerboard, corrugated medium, containerboard, or corrugated products to the extent those documents exist and can be found following a reasonable search of the named custodians' files.

- ***Request No. 46.***  Here again, the problem is the overbreadth of the phrase "relating or referring to."  As discussed during the parties' meet-and-confer, although plaintiffs are trying to "get at a concept here," defendants need to be able to meaningfully search their documents for responsive information using objective criteria.  As part of the meet-and-confer, defendants have proposed additional search terms aimed at capturing the information sought by this request.  Those additional terms were included in defendants' comprehensive list of search terms that were provided to plaintiffs this past Friday (*see* Letter from S. Rashid to D. Millen, dated August 5, 2011) and we look forward to discussing them with plaintiffs in the short term.

- ***Request Nos. 86, 90, 91, 92.***  For these requests, plaintiffs expressed concern that defendants were limiting their document productions to those documents that reflect only those sales of "Containerboard Products" that were (a) made in the United States and (b) sold in the United States—*i.e.,* defendants were specifically excluding products made outside of the United States but sold within the United States.  As defendants explained, that is not the case.  In order to address plaintiffs' concern, defendants confirmed that to the extent that their documents and data regarding sales of linerboard, corrugated medium, containerboard, and corrugated products include country of origin information, that information/data will be included in defendants' productions.

## Sub-Categories of Information (Section B of the July 6 Email)

Plaintiffs' Request Nos. 38, 43-44, 81, 85, 88-89, and 92-93 seek the production of certain of defendants' information as follows: on a "(i) consolidated basis; (ii) business segment or unit; (iii) product line or product category basis; and (iv) facility-by-facility basis."  During the August 3 meet-and-confer, plaintiffs expressed concern that defendants' failure to address the specific sub-categories itemized in the requests reflected an intention by defendants to specifically exclude information related to defendants' box plant operations.  But the reality is that not all defendants' information is organized in the various forms plaintiffs have requested and each has different limitations on its systems.  As we explained during our call, the data available at the box plant level may be different in type and in quantity for some defendants than what is available at the mill level.  In other words, although certain mill data may be kept and or analyzed on something other than a consolidated basis—including in a manner that may approximate what is set forth in plaintiffs' requests—data regarding box plants is typically not broken down to the same level of detail for the simple reason that it would be impracticable to do so.  For example, because defendants produce hundreds of thousands of different box configurations for their customers (which bear their own unique SKU#s) and each box product is unique to each customer, it would be largely meaningless to aggregate sales data on a product by product basis.  Accordingly, defendants will produce the requested information in the manner

Michael J. Freed
Steven A. Kanner
Daniel J. Mogin
August 11, 2011
Page 4

requested (or some reasonable equivalent) if and to the extent the information is maintained in that matter in the ordinary course of defendants' business, is maintained by defendants as part of their centralized corporate records, and is available without undue burden (*i.e.,* is not stored on inactive servers or other inaccessible media). In order to facilitate this process, defendants suggest that the parties meet-and-confer, most likely on an individualized basis, so that the parties can discuss what can reasonably be produced by each defendant.

**Time Period (Section A of the July 6 Email)**

Plaintiffs' Complaint alleges that "in 2005, … Defendants began a coordinated across-the-board imposition of capacity restraints, leading to a subsequent restriction in the supply of Containerboard Products on the market." Compl. ¶ 6. Plaintiffs further allege that it was not until "after the failed *May 2005* price increase, [that] Smurfit-Stone recognized that their *independent* action to reduce containerboard capacity *could not* force industry prices upward unless Defendants supported by the capacity reduction and subsequent price increases." *Id.* at ¶ 65 (emphasis added). With the exception of the mention of a failed price increase in 2003 and Smurfit-Stone's admittedly "independent" capacity action that same year, plaintiffs' complaint is devoid of any allegation that the purported conspiracy began prior to 2005.[2] Indeed, as Judge Shadur recognized in his ruling on the motion to dismiss, "*in this instance Plaintiffs allege the existence of such behavior beginning in August 2005….*" Kleen Products, LLC v. Packaging Corp. of America, 2011 WL 1343203, at *4 (N.D. Ill. Apr. 8, 2011) (emphasis added).

Given these allegations, defendants agreed to produce documents created on or after January 1, 2004, approximately 18 months before the start of the alleged class period.

In our past two meet-and-confer sessions, plaintiffs have stated that the Complaint's single reference to Smurfit-Stone's October 2003 restructuring plan announcement (Compl. ¶ 65), suggests that the alleged conspiracy may have begun before 2005. In our August 3 meet-and-confer, plaintiffs further stated that the August 2005-December 2010 class period is merely the period during which plaintiffs claim they began to suffer damage as the result of the alleged conspiracy and that it should not be confused with the alleged conspiracy period. As a result, plaintiffs are requesting documents responsive to their so-called "conduct requests" for the period January 1, 2002 – December 31, 2010, and seek information responsive to their so-called "data requests" for the period January 1, 2000 – December 1, 2010. We address each set of requests in turn.

---

[2]     Plaintiffs' boilerplate recitation in their claim for relief that defendants entered into the alleged conspiracy "beginning at a time presently unknown to Plaintiffs" (which appears in paragraph 197 of plaintiffs' 201 paragraph complaint) does not alter the specific recitations in the prior 196 paragraphs that make clear that plaintiffs have alleged a conspiracy beginning in mid-2005.

Michael J. Freed
Steven A. Kanner
Daniel J. Mogin
August 11, 2011
Page 5

*"Conduct Requests"*

In their July 6, 2011 email, plaintiffs identify some 54 document requests that they categorize as "conduct requests." Setting aside the question of how certain of these requests (*e.g.*, Request No. 3 (organizational charts) and Request Nos. 77-81 (documents sufficient to describe defendants' computer systems and ESI policies)) can provide much if any insight on defendants' alleged conduct, defendants remain at a loss to understand how one event in 2003—which plaintiffs themselves classify as an "independent" act of one of the defendants—can form the basis for plaintiffs' request that all defendants generally produce documents responsive to more than 50 requests dating back to 2002. Regardless, expanding the search by an additional two full years would impose an undue burden and expense upon the majority of defendants that may outweigh any probative value of any information that might still exist. As such, defendants cannot wholesale agree to the time period proposed by plaintiffs for the 50+ identified requests. That said, if there are specific, individual requests for which plaintiffs can identify a reasonable need and basis for requesting information pre-dating January 1, 2004, defendants stand willing to meet-and-confer with plaintiffs—either collectively or individually, as appropriate—so that the parties can meaningfully address each defendant's particularized concerns.

*"Data Requests"*

Plaintiffs have identified some 43 requests which they have labeled "data requests." For these requests, plaintiffs have requested that defendants produce information dating back to January 1, 2000. Again, without crediting plaintiffs' characterization of these requests as seeking "data," defendants do not understand why plaintiffs (or their experts) need five years of alleged "pre-period" data in order to conduct their economic analyses. During the parties' meet-and-confers, plaintiffs explained that the sole basis for the requested time period was a request from plaintiffs' experts. Specifically, plaintiffs stated that their experts had requested ten years of pre-period data and that five years—an amount of time equal to the duration of the class period—was a compromise on plaintiffs' part.

Although defendants appreciate plaintiffs' willingness to compromise on this issue, five years of data is simply untenable. Counsel for both plaintiffs and defendants have been involved in many cases such as this one and it is not often the case that defendants are required to provide pre-period data for a span of time equal to the alleged class period. To the contrary, it is defense counsel's experience in cases such as this one—including in the initial *Linerboard* litigation—that 1-2 years of pre-alleged-conspiracy-period data has been more than sufficient for the parties' purposes—especially in cases where, as here, requiring defendants to search for and produce data beyond that 1-2 year window could exponentially increase the burden imposed on many of the defendants. Plaintiffs have offered no reasoned explanation for seeking to impose those burdens.

Michael J. Freed
Steven A. Kanner
Daniel J. Mogin
August 11, 2011
Page 6

That said, although defense counsels' investigation into exactly what data each company still have available is ongoing, and subject to the non-time period objections in each defendant's responses to the specific requests, defendants are willing to agree to search for and produce what relevant, responsive data that they may still have on their main, active servers dating back to January 1, 2003. Some defendants believe that this may include data responsive to all of plaintiffs' requests; for others defendants there may be far less responsive data available. But all defendants are willing to undertake the effort to search for and produce that which may exist and is reasonably available without undue expense. To be clear, defendants are not agreeing to search ancillary or retired servers, restore back-up tapes, or root through historical data that is stored on media or systems other than their current primary, active systems. Nor can defendants represent that any pre-2004 data they might produce will be as robust, as comprehensive, or as usable as defendants' post-2004 data. Data fields may have changed, detail may have been lost over time, new systems may have been implemented and it may be difficult or even impossible for defendants to explain the data much less verify its accuracy. In the spirit of compromise, however, defendants are willing to produce the responsive data they have on their main, active servers dating back to January 1, 2003, to the extent such data is reasonably available.

**Scope of Search / Protocol for Production**

Plaintiffs requested that defendants provide additional specificity concerning the scope of their search for documents and data responsive to plaintiffs' requests. By way of background, during the parties' preservation discussions in late December/early January, defendants identified the custodians whose files defendants believed may contain information relevant to the allegations in plaintiffs' complaint, and provided plaintiffs with relevant organizational charts. A month later, in their Fed. R. Civ. P. 26(a) disclosures, defendants identified those individuals "likely to have discoverable information that the disclosing party may use to support its claims or defenses." In the months that followed, plaintiffs and various of the defendants have had ongoing discussions regarding those identified custodians and which individuals' files would be searched for relevant information.

In the past several months, the parties have been unable to agree as plaintiffs have insisted that they are not willing to agree to a "custodian-based approach" and instead believe the parties should pursue a "subject matter approach." Plaintiffs, however, have yet to identify what such a "subject matter approach" might look like, what files within these companies would be searched, and how this can be accomplished without defendants first identifying where, and in whose or which department's files the potentially responsive documents are located (*i.e.,* the "custodian" of the documents). Indeed, during the August 3 meet-and-confer, defendants pressed plaintiffs to explain what type of search protocol might yield more than defendants' approach but would require defendants to search less than every file in their respective companies; plaintiffs were unable to identify one.

Michael J. Freed
Steven A. Kanner
Daniel J. Mogin
August 11, 2011
Page 7

Put simply, the approach proposed by defendants is a mainstay in modern electronic discovery and has been successfully used by both plaintiffs and defendants in numerous other multi-defendant conspiracy cases such as this. Indeed, in two recent such cases—*Steel* and *Rail Freight Fuel Surcharge*—plaintiffs have adopted and successfully implemented similar custodian-based search protocols proposed by defendants here. Defendants therefore see no reason to try to construct some new form of searching in the instant case which, given the parties' unfamiliarity, will only delay the discovery process and impose greater burdens on the parties going forward.

In the parties' meet-and-confer, plaintiffs expressed some concern that defendants' proposed search protocol would omit a host of relevant and responsive documents that could not be traced back or attributed to a specific custodian. As defendants explained, however, that is simply not the case. Indeed, as we discussed, we believe that the parties may have gotten bogged down in semantics and that the broad approach defendants are taking in responding to plaintiffs' requests is appropriate, consistent with defendants' discovery obligations, and, frankly, provides the only practical way for defendants to proceed.

What defendants propose (and what has been successfully used by both sides in the past) is essentially a "custodian-plus" approach whereby, in addition to documents that are found in the identified individual custodians' files (both electronic and hard-copy), other sources, such as so-called "corporate" or "departmental" files, including those for which there may be no one custodian, would also be searched for responsive documents.

Specifically, the protocol defendants propose (some of which is already underway) is as follows:

1.      Each defendant has identified the individual custodians that it believes possess documents responsive to plaintiffs' requests. Defendants are in the process of collecting those individuals' hard copy documents and ESI for review and production in response to plaintiffs' requests (subject to a producing party's objections to those requests) and, as indicated in prior correspondence, have already performed substantial search term testing on their respective electronic collections. Each defendant's proposed list of custodians—which collectively number 109—is attached.[3]

---

[3]      These productions would include electronic and hard copy files of assistants (as applicable) for named custodians in senior management during the class period to the extent those assistants maintain files for the named custodians, predecessors of each named custodian (any readily identifiable data or files still in existence from the time such predecessor held the same job) during the relevant time period, and shared network drives identified by any named custodian as a location on which he/she stores potentially relevant documents.

Mayer Brown LLP

Michael J. Freed
Steven A. Kanner
Daniel J. Mogin
August 11, 2011
Page 8

2.      Following plaintiffs' review and assessment of materials received from the files of these custodians, defendants are willing to meet and confer with plaintiffs concerning additional custodians from each defendant they believe may be necessary. Defendants would expect that plaintiffs would articulate a good faith basis—based on the materials received and any discovery to date—to believe that those custodians are reasonably likely to have non-duplicative (*i.e.*, new), relevant information.  If the parties cannot agree, the issue could of course, be raised with the Court.

3.      In addition to the individual custodian searches described above, defendants are in the process of undertaking entity/departmental searches in order to identify those categories of responsive information that may not be attributable to a single custodian.   For example, defendants are searching the appropriate corporate departments for the following types of documents and data:[4]

- Travel/expense reports for named custodians (*see, e.g.*, RFPs 4, 8-11)

- Company phone bills (to the extent applicable/available) for each named custodian (*see, e.g.*, RFPs 4, 11)

- Relevant presentations and correspondence provided to the Board of Directors and maintained by the Chief Ethics and Compliance Officer or their equivalent (*see, e.g.*, RFPs 43-44; 48-49)

- Relevant press releases maintained by the corporate communications department (*see* RFP *63)*

- Document retention/destruction policies in effect during the period (*see* RFP 2)

- Antitrust policies in effect during the period maintained by in-house competition counsel (*see* RFP 68)

- Organizational charts for the business unit in which defendants' containerboard and/or box business is located (*see, e.g.*, RFPs 1, 3)

- Company directories in effect during the period as maintained by HR department (*see, e.g.*, RFPs 1, 38)

---

[4]      As noted in defendants' individual responses to plaintiffs' document requests, not all defendants possess each type of document or data.

Mayer Brown LLP

Michael J. Freed
Steven A. Kanner
Daniel J. Mogin
August 11, 2011
Page 9

- Routine reports regarding the manufacture, sale, or distribution of linerboard, corrugated medium, containerboard, and corrugated products sold in the United States that are regularly provided to defendants' executives with primary decision-making responsibility for those activities.

- Transactional data reflecting defendants' sales of linerboard, corrugated medium, containerboard, and corrugated products.

As summarized in our prior correspondence, defendants will use a (we hope) mutually-agreed upon set of search terms or other methodologies to limit the universe of documents to be reviewed and produced. Entity/departmental searches will be conducted based on the relevant subject matter. If necessary, defense counsel for each defendant are prepare to discuss with plaintiffs the specifics of their individual searches.

* * * * * *

Over the past seven months, defendants have worked diligently to identify the appropriate sources of information responsive to plaintiffs' extensive document requests, understand the extent and breadth of their various electronic systems and repositories, formulate manageable and appropriate search terms, and develop a workable and tested protocol for the production of documents and plaintiffs' recent insinuations to the contrary are unfounded. Indeed, we had hoped to already have plaintiffs' agreement on an ESI protocol and the protective order to advance this process even further. Nevertheless, the majority of defendants intend to make a substantial production of documents this week (others early next week) which will include a myriad of core operational reports and other documents that go directly to a number of plaintiffs' document requests.

In the end, defendants believe their proposals—both those set forth above and in their other recent correspondence—are reasonable and fully comport with the Federal Rules and relevant ESI case law. As always, we remain available to engage in any further meet-and-confers with plaintiffs, as appropriate, and are hopeful that the parties will be able to resolve any outstanding issues.

Sincerely,

Britt M. Miller

Britt M. Miller

Atts.

cc:    Defense Counsel (via email)

**DEFENDANTS' PROPOSED PRIORITY CUSTODIANS**

<u>GEORGIA-PACIFIC PROPOSED CUSTODIANS</u>

GP intends to search the reasonably accessible files of the following custodians for documents responsive to Plaintiffs' document requests, subject to GP's responses and objections to those requests.

GP has previously provided additional information on most of these custodians during meet and confer discussions with Plaintiffs on December 13, 2010 and February 16, 2011; as well as in its Fed. R. Civ. P. 26(a)(1) disclosures (dated February 10, 2011).  GP remains available to discuss these custodians further with Plaintiffs.

| <u>Custodian Name</u> | <u>Title</u> |
|---|---|
| Mike Adams | Senior Vice President, Sourcing |
| Travis Ballard | Director of Planning & Operations Support, Containerboard |
| Brandon Bennett | President, Containerboard & Kraft |
| Lizabeth Bernate | Project Coordinator for Brandon Bennett and Mike Tuchalski |
| Linda Brown | Executive Assistant to Christian Fischer, Assistant to Renee Valgoi |
| Matt Denton | former Vice President, Finance & Business Planning, Containerboard/Packaging & Pulp |
| M. Scott Denton | Director, Planning & Analysis, Containerboard & Packaging |
| Christian Fischer | Executive Vice President, Packaging |
| Mattie M. Gould | former Vice President, Containerboard & Kraft Sales |
| Asa Hardison | former Senior Vice President, Manufacturing |
| Mollie Hilliard | Sourcing Manager |
| David Null | Vice President, Business Development |
| Michael Rehwinkel | former Senior Vice President, Packaging |
| Mike Tuchalski | Senior Vice President, Manufacturing |
| Renee Valgoi | Vice President, Finance & Business Planning, Containerboard & Packaging/Pulp |
| Danette York | Director of Marketing, Containerboard Sales and Logistics |

**INTERNATIONAL PAPER PROPOSED CUSTODIANS**

| Custodian<br>[Title] | Description of Responsibilities |
|---|---|
| **Domenick Andreana**<br><br>[(formerly) Vice President & General Manager of Commercial & National Accounts] | • Reported to Bill Hoel<br>• Involved with commercial and national sales accounts within IP's container (CTA) business |
| **Wayne Brafford**<br><br>[(formerly) Senior Vice President – IPG] | • Was responsible for operations and strategy regarding IP's Industrial Packaging Group business, including both the Containerboard and Container the Americas (CTA) businesses (CTA is IP's corrugated container business)<br>• Oversaw all IPG personnel |
| **Shelley Carr**<br><br>[Planning and Systems Manager, Containerboard] | • Reports to Jim Kirkpatrick (with a "dotted line" reporting relationship to the head of the containerboard business)<br>• Involved in area planning, mill supply planning, sales and operation planning. |
| **Tom Cleves**<br><br>[(formerly) Vice President, Investor Relations] | • Reported to Tim Nicholls.<br>• Was responsible for company investor relations during the relevant time period, including company earnings calls, quarterly reviews, investor presentations, and interactions with third-party analysts |
| **Dennis Colley**<br><br>[(formerly) Vice President and General Manager, Containerboard and Recycling] | • Reported directly to Carol Roberts and was a member of her "lead team"<br>• Was responsible for sales of containerboard during the relevant time period<br>• Was involved in containerboard pricing |
| **Rebecca Dupuy**<br><br>[Pricing Manager] | • Reports to James Lewis<br>• Involved in ensuring that terms and conditions of contracts and agreements with open market containerboard customers are followed (e.g., rebates, discounts, etc.)<br>• Involved in containerboard pricing analysis |
| **John Faraci**<br><br>[Chairman and CEO] | • Chairman and CEO of IP since November 2003<br>• Responsible for company-wide business and strategy. |
| **Kathy Halligan**<br><br>[(formerly) Domestic Sales Manager] | • Reported to Glenn Landau during the relevant time period<br>• Involved in domestic sales of containerboard and recycling |

| Custodian [Title] | Description of Responsibilities |
|---|---|
| **Tom Hamic** [Area VP and GM South] | • Reports to Bill Hoel<br>• Oversees IP's Container the Americas (CTA) business and sales operations in South region |
| **Peter Heist** [Area VP and GM West] | • Reports to Bill Hoel<br>• Oversees IP's Container the Americas (CTA) business and sales operations in West region |
| **William Hoel** [Vice President, CTA] | • Oversees IP's Container the Americas (CTA) business – this includes both the production and sale of boxes<br>• Reports directly to Carol Roberts and is a member of her "lead team". |
| **Tim Kelly** [Vice President, Manufacturing, Industrial Packaging] | • Reports directly to Carol Roberts and is a member of her "lead team"<br>• Oversees manufacturing operations for Industrial Packaging Group's Containerboard & Recycling business, including containerboard mill operations and management of mill outages and efficiency |
| **Paul King** [Manager Business Analysis] | • Reports to John Sims<br>• Performs accounting analysis<br>• Assists in financial element of IP strategic planning |
| **Jim Kirkpatrick** [Director, Supply Chain] | • Reported directly to Glenn Landau during the relevant time period<br>• Involved in supply-demand balance and planning for containerboard mill manufacturing including trades |
| **Mike Lackey** [Area VP and GM East] | • Reports to Bill Hoel<br>• Oversees IP's Container the Americas (CTA) business and sales operations in East region<br>• Formerly Area VP and GM (West Area) of IP's Container the Americas (CTA) business. |
| **Donna Lajeunesse** [Manager Trades] | • Reports to Jim Kirkpatrick<br>• Involved in initial discussions with competitors as to what another company may need from IP for purposes of a swap/trade agreement |
| **Glenn Landau** [(formerly) Vice President and General Manager, Containerboard and Recycling] | • Reported directly to Carol Roberts and was a member of her "lead team"<br>• Was responsible for sales of containerboard during the relevant time period<br>• Was involved in containerboard pricing |

| Custodian [Title] | Description of Responsibilities |
|---|---|
| **James Lewis** [Domestic Sales Manager] | • Reported to Glenn Landau during the relevant time period<br>• Involved in domestic sales of containerboard and recycling – these are sales of containerboard to companies that own box plants outside of IP (referred to as "open market" customers) |
| **Christopher Liddell** [(formerly) Senior Vice President & CFO] | • Was responsible for company-wide finance and strategy, including the Industrial Packaging Group (containerboard and corrugated container) business<br>• Oversaw investor communications |
| **Tim Nicholls** [Senior Vice President & CFO] | • Responsible for company-wide finance and strategy, including the Industrial Packaging Group (containerboard and corrugated container) business<br>• Oversees investor communications |
| **Marianne Parrs** [(formerly) Senior Vice President & CFO] | • Was responsible for company-wide finance and strategy, including the Industrial Packaging Group (containerboard and corrugated container) business<br>• Oversaw investor communications |
| **Tracy Pearson** [Area VP and GM Central] | • Reports to Bill Hoel<br>• Oversees IP's Container the Americas (CTA) business and sales operations in Central region |
| **Carol Roberts** [Senior Vice President – IPG] | • Responsible for operations and strategy regarding IP's Industrial Packaging Group business, including both the Containerboard and Container the Americas (CTA) businesses (CTA is IP's corrugated container business)<br>• Oversees all IPG personnel<br>• Formerly VP and GM of CTA. |
| **Jay Royalty** [Vice President and General Manager, Commercial and National Accounts, CTA] | • Reports to Bill Hoel<br>• Involved with commercial and national sales accounts within IP's container (CTA) business<br>• Formerly Area VP and GM (South Area) of IP's Container the Americas (CTA) business |
| **Amy Sawyer** [Senior Manager, IPG Communications] | • Reports to Pattie Neuhoff (IP Director of Communications). She also has a dotted line reporting relationship to Carol Roberts<br>• Involved in internal and external communications related to IPG business, including media inquiries and press releases. |

5

| Custodian<br>[Title] | Description of Responsibilities |
|---|---|
| **John Sims**<br>[Vice President, IPG Finance and Strategy] | • Reports directly to Carol Roberts and is a member of her "lead team"<br>• Responsible for both strategic and financial planning of operations within the Industrial Packaging Group |

**NORAMPAC/CASCADES PROPOSED CUSTODIANS**

| Custodian | Position |
|---|---|
| Marc-Andre Depin | President & CEO |
| Francois Guite | Vice President, Sales, Marketing & Innovation |
| Maurice Plante | Vice President, Containerboard & Boxboard |
| Danick Lavoie | Director, Administration Containerboard & Boxboard and RGM Burnaby |
| Jean Houde Jr. | Regional GM, Mississauga, Trenton, Cabano |
| Luc Nadeau | Regional GM, Avot-Vallee, Kingsley Falls, Niagara Falls |
| Robert Lanthier | General Manager Containerboard & SWAP |
| Charles Malo | Vice President and Chief Operating Officer, Packaging |
| Christian Vezina | Director, Administration and Regional Controller, U.S. Packaging |
| Wm. Scott Russell | Regional GM, U.S.A., Leominster, Schenectady, Thompson, Lancaster, NYC |

Norampac's designated custodians comprise the management-level employees of Norampac's containerboard and corrugated box businesses. These individuals are responsible for Norampac's containerboard and corrugated box operations. Their responsibilities include: sales of containerboard and corrugated boxes, swaps, pricing of containerboard and corrugated boxes, mill downtime, containerboard inventory, changes in mill capacity, capital investments, containerboard and corrugated box business strategies and planning, product development, and acquisitions and divestitures. Among these custodians are also the individuals who are Norampac's main representatives for the containerboard and corrugated box trade associations. These are the individuals who will have the relevant documents requested by plaintiffs in their document request.

## PCA PROPOSED CUSTODIANS

The proposed custodians identified below, which include those current and former employees previously identified in PCA's Rule 26(a) disclosures as individuals likely to have discoverable information that PCA may use to support its defenses in this action, include those management and other personnel that PCA has determined had authority or responsibility for, and/or information concerning, any of the business decisions concerning the production, capacity, downtime and pricing of linerboard, corrugating medium or corrugated products alleged in Plaintiffs' Complaint.  This list also includes PCA's current and former employees that represented PCA in connection with industry trade associations.  These custodians are the individuals that PCA has identified as the most likely to possess documents and information relevant to the subject matter alleged in Plaintiffs' Complaint and responsive to Plaintiffs' document requests.

**Current Employees:**

| Name | Job Title | Subject Matter |
|---|---|---|
| Paul T. Stecko | Chairman | PCA's overall business strategy and decisions concerning capacity, production, and pricing of containerboard and corrugated products |
| Mark W. Kowlzan | Chief Executive Officer | PCA's overall business strategy and its production of containerboard products |
| Richard B. West | Chief Financial Officer | PCA's financial performance and objectives and communications with investors |
| Thomas A. Hassfurther | Executive Vice President - Corrugated Products | PCA's manufacture and sales of corrugated products and sale of containerboard products |
| Pete Martens | Executive Director - Finance | PCA's operational management reporting, financial planning, and data analysis |

| Name | Job Title | Subject Matter |
|---|---|---|
| Thomas W.H. Walton | Senior Vice President - Sales and Marketing, Corrugated Products | PCA's sales and marketing of corrugated products |
| Heidi Patton | General Manager - Containerboard Sales | PCA's sales of containerboard |
| Tricia Robinson | General Sales Manager | PCA's sales of containerboard |
| Joe Perry | Operations Controller | PCA's sales of corrugated products |
| Brian Sorensen | Vice-President EH&S and Operations Services | PCA's mill operations |
| Prafulla D'Souza | Director of Sales & Marketing Services | PCA's sales and marketing of corrugated products |

**Former Employees**:

| Name | Former Job Title | Subject Matter |
|---|---|---|
| William J. Sweeney | Executive Vice President - Corrugated Products (retired) | PCA's manufacture and sales of corrugated products and sales of containerboard |
| Gerald Greeter | Vice-President and General Manager- Containerboard Sales, (retired) | PCA's sales of containerboard |

9

## RockTenn CP, LLC Proposed Custodians

Set forth below is a proposed list of custodians, representing both current and former employees of Smurfit-Stone Container Corporation (now known as Rock-Tenn CP, LLC). The job titles provided below represent the titles held by the custodians prior to RockTenn Company's acquisition of Smurfit-Stone Container Corporation in May 2011. These employees had management responsibility with respect to the Containerboard Mill Division, Container Division, and supply chain functions. Chuck Hinrichs left Smurfit-Stone in 2009 (before the acquisition).

**Former Employees:**

| Name | Former Job Title |
|------|------------------|
| Butler, Michael | Vice President Containerboard Sales |
| Burton, Larry | Vice President Containerboard Sales |
| Griffith, Tim | Vice President and Treasurer |
| Hinrichs, Chuck | Chief Financial Officer |
| Hunt, Craig | Senior Vice President, Secretary, General Counsel |
| Kaufmann, Paul | Vice President and Corporate Controller |
| Klinger, Steve | President and Chief Operating Officer |
| Moore, Pat | Chief Executive Officer |

**Current Employees:**

| Name | Job Title |
|------|-----------|
| Denton, Matt | Senior Vice President Business Planning & Analysis |
| Exner, Mike | Senior Vice President and General Manger of Containerboard Division |
| Knudsen, John | Senior Vice President of Supply Chain and Board Sales |
| Polivka, Mark | Vice President of Supply and Demand |

10

| Name | Job Title |
|---|---|
| Renfro, Art | Division Controller |
| Strickland, Steve | Senior Vice President and General Manager of Container Division |

## TEMPLE-INLAND PROPOSED CUSTODIANS

Temple-Inland's February 10, 2011 Rule 26(a) disclosures identified twelve individuals "likely to have discoverable information that [Temple-Inland] may use to support its claims or defenses." On March 11, 2011, counsel for plaintiffs and counsel for Temple-Inland met to discuss preservation issues including the identity of the appropriate Temple-Inland custodians. During that meeting, plaintiffs inquired about a number of additional individuals identified on Temple-Inland's organizational chart but not included in its Rule 26(a) disclosures. Temple-Inland promptly conducted due inquiry into the individuals identified by plaintiffs and have added a number of additional custodians to Temple-Inland's custodian list. Thus, that list now reads as follows:

| NAME | TITLE | AREAS OF RELEVANT KNOWLEDGE |
|---|---|---|
| Arif, Ali | VP & Controller of Corrugated Packaging | Knowledge regarding transactional and other financial data associated with the production and sale of containerboard boxes. |
| Baker, Barry | System Optimization Manager | Knowledge concerning efficient supply of paper to box plants and Temple-Inland's trades, swaps, and exports of paper products. |
| Doney, Bart | *Former* Vice President of Sales | Knowledge concerning, among other things, Temple-Inland's sales and marketing of containerboard products, decisions about pricing of such products, implementation of pricing decisions, and Temple-Inland's production capacity and efficiency strategies; some knowledge concerning the closing of Temple-Inland box plants preceding and during part of the proposed Class Period. |
| Fugate, Adam | Manager, Marketing Information | Knowledge concerning Temple-Inland's sales and marketing of boxes to certain national market segments. |
| Glover, David | Dir., Global Solutions Group (Boxes) | Knowledge concerning communication of Temple-Inland's quotes, bids, and pricing to Temple-Inland's Midwest national accounts. |

| NAME | TITLE | AREAS OF RELEVANT KNOWLEDGE |
|------|-------|------------------------------|
| Hoaglund, Karen | Sales Executive (Mills) | Knowledge concerning Temple-Inland's domestic sales of paper products. |
| Huey, Larry | Sales Executive (Mills) | Knowledge concerning Temple-Inland's domestic sales of paper products. |
| Jastrow, Kenny | *Former* CEO and COB | Knowledge and information concerning, among other things, Temple-Inland's business strategy before and during part of the Class Period, and his general oversight of Temple-Inland's containerboard business. |
| Levy, Randy | CFO & Treasurer | Knowledge concerning Temple-Inland's overall financial performance and objectives and certain of its acquisitions. |
| Lind, Roy | VP of Sales and Marketing for Packaging | Knowledge concerning, among other things, Temple-Inland's sales and marketing of containerboard products, decisions about pricing of such products, implementation of pricing decisions, and Temple-Inland's production capacity and efficiency strategies. |
| Maley, Pat | President & COO | Knowledge concerning, among other things, the oversight of Temple-Inland's containerboard mills and box plants, as well as strategic decisions regarding production capacity and efficiency, plant closures, and product pricing. |
| Mills, Rick | *Former* Division Controller of Mills | Knowledge and information concerning, among other things, transactional and other financial data associated with Temple-Inland's paper mill facilities. |
| Norton, Larry | Group VP of Corrugated Packaging Operations | Knowledge concerning, among other things, the oversight of a number of Temple-Inland's manufacturing facilities. |
| Purrington, Roger | *Former* Consultant Paperboard-Mills. | Knowledge concerning mill operations. |

| NAME | TITLE | AREAS OF RELEVANT KNOWLEDGE |
|---|---|---|
| Recht, Paul | Dir., Global Solutions Group (Boxes) | Knowledge concerning communication of Temple-Inland's quotes, bids, and pricing to Temple-Inland's West Coast national accounts. |
| Simons, Doyle | CEO & COB | Knowledge concerning, among other things, Temple-Inland's business strategy during the Class Period, including its acquisition of certain manufacturing facilities and its efforts to increase production, efficiencies, and market share; also has knowledge concerning his general oversight of Temple-Inland's containerboard business, as well as his participation in certain industry trade organizations and contact with industry executives. |
| Stone, Bob | *Former* VP Operations for Paper Mills | Knowledge concerning, among other things, managerial oversight of Temple-Inland's paper mills, including capacity expansions. |
| Sullivan, Rich | Dir., Global Solutions Group (Boxes) | Knowledge concerning communication of Temple-Inland's quotes, bids, and pricing to Temple-Inland's East Coast national accounts. |
| Toohey, Jeremy | Business Analyst | Knowledge concerning the accounting for all paperboard sales and outside purchased rollstock, Temple-Inland's statistical and financial information related to its mills, and accounting of the paperboard sales group. |
| Vandiver, Wayne | Sales Executive (Mills) | Knowledge concerning Temple-Inland's domestic sales of paper products. |
| Vesci, Dennis | *Former* Group Vice President of Packaging | Knowledge concerning managerial oversight of Temple-Inland's box plants including related manufacturing and sales. |

| NAME | TITLE | AREAS OF RELEVANT KNOWLEDGE |
|---|---|---|
| Zimbelman, Ron | VP of Sales & Marketing for Containerboard | Knowledge concerning, among other things, the sales and marketing of Temple-Inland's containerboard products, including the purchase, sale, and trade of products from other containerboard manufacturers; also has knowledge of the pricing of containerboard products for internal purposes, sales to other manufacturers and sales to end-users. |

### WEYERHAEUSER PROPOSED CUSTODIANS

| Name | CPBR Business Title* |
|------|----------------------|
| Atkinson, Donald C | VP, Marketing and Managing Sales, CPBR |
| Fulton, Daniel S | President, Weyerhaeuser |
| Gideon, Thomas F | Senior VP, CBPR |
| Grace, Claire S | VP, Corporate Secretary & Assistant General Counsel |
| Hill, Steven C | IT CBPR Director |
| Marshall, Scott R | VP Operations Support |
| Steed, Jeff | Director, Financial and Planning Demand, CPBR |
| Yerke, John F | VP Mills, Containerboard Packaging |

\* Daniel Fulton, Claire Grace, and Scott Marshall were not part of the CBPR
   business.

As plaintiffs know, Weyerhaeuser sold its CBPR business in 2008 and very few of the former
CBPR management personnel are still with the company. This list of custodians comprises
current Weyerhaeuser employees who had at least some management responsibilities for
business within the CBPR group during the 2004-2008 timeframe. Weyerhaeuser also agrees to
search the files of Daniel Fulton, Claire Grace, and Scott Marshall, none of whom had day-to-
day management responsibilities for the CBPR business but who may have documents related to
the sale of the business to IP.

16

**Exhibit 3**

Defendants' Draft 8/5/2011

***Kleen Products LLC, et al. v. Packaging Corporation of America, et al.***

**Search Terms**[1]

| 1 | "ipaper.com" OR "cascades.com" OR "domtar.com" OR "gapac.com" OR "norampac.com" OR "packagingcorp.com" OR "smurfit.com" OR "templeinland.com" OR "weyerhaeuser.com"[2] |
|---|---|
| 2 | ("fba" OR "fibre box association" OR "af&pa" OR "afpa" OR "american forest & paper association" OR "icca" OR "international corrugated case association" OR "cpa" OR "corrugated packaging alliance" OR "cpaat" OR "corrugated packaging alliance action team" OR "pima" OR "paper industry management association") AND (membership OR meeting OR announcement OR agenda OR minutes OR notes OR attendance OR "expense report" OR handout OR correspondence) |
| 3 | (substitut* OR alternative) w/5 (box OR container) |
| 4 | (reason OR justification OR cause OR why OR explanation OR motivation OR need OR benefit) w/25 ("downtime" OR "slowback" OR "slow-back" OR (slow w/2 back)) |
| 5 | (rationalize OR close OR shut) w/25 (mill OR plant) |
| 6 | "downtime" OR ("slowback" OR "slow-back" OR (slow w/2 back)) OR "downdays" OR (down w/10 (days OR hours)) OR (("shutdown" OR "slowdown") w/25 ("fixed costs" OR "variable costs")) OR "s&op" OR "sop" OR "tonnage balance" OR "pov" OR ((lose OR loose) w/5 (hour* OR day*)) OR ((increase OR decrease) w/3 capacity) OR (machine w/25 restrict*) |
| 7 | ((analyze OR analysis OR evaluate OR assess OR study OR consider) w/25 price) w/25 (liner* OR medium OR containerboard OR box OR container OR corrugated OR sheet) |
| 8 | (pric* w/5 (increas* OR decreas* OR rais* OR low* OR chang* OR discount* OR rebate OR offset OR reduc* OR project* OR agree* OR "cost" OR demand OR ton)) w/25 (liner* OR medium OR containerboard OR box OR container OR corrugated OR sheet) |
| 9 | ("elasticity of demand" OR "demand elasticity" OR "price elasticity" OR "inelasticity of demand" OR "inelastic demand") AND (liner* OR medium OR containerboard OR box OR container OR corrugated OR sheet) |
| 10 | "price discipline" OR "price leadership" OR "industry leadership" OR "industry |

---

[1]  This list of search terms is still subject to ongoing testing, and further modifications, as well as Defendant-specific additions, may be necessary based on that testing.  All searches are to be run in a non-case sensitive manner.

[2]  Each Defendant will run only the other Defendants' domain names.

| | |
|---|---|
| | discipline," OR "production discipline" OR "supply discipline" |
| 11 | (GP OR "G-P" OR "G P" OR gapac OR "Georgia-Pacific" OR "Georgia Pacific" OR weyerhaeuser OR "weyco" OR "wy" OR "temple-inland" OR "temple inland" OR temple OR inland OR "ti" OR "smurfit-stone" OR smurfit OR "sscc" OR "pca" OR "packaging corporation of america" OR "international paper" OR "ipaper" OR "intl paper" OR "ip" OR norampac OR "np" OR cascades OR "cas") w/25 ("market share" OR "m/s" OR (price w/2 increas*) OR (price w/2 change) OR (price w/2 decreas*) OR capacity OR "operating rate" OR "downtime" OR "slow back" OR "slowback" OR "slow-back" OR inventory)[3] |
| 12 | (GP OR "G-P" OR "G P" OR gapac OR "Georgia-Pacific" OR "Georgia Pacific" OR weyerhaeuser OR "weyco" OR "wy" OR "temple-inland" OR "temple inland" OR "temple" OR "inland" OR "ti" OR "smurfit-stone" OR "smurfit" OR "sscc" OR "pca" OR "packaging corporation of america" OR "international paper" OR "ipaper" OR "intl paper" OR "ip" OR "norampac" OR "np" OR "cascades" OR "cas") w/5 ("press release" OR statement OR announcement)[4] |
| 13 | kleen OR ("rpr" w/2 enterprises) OR ("r.p.r." w/2 enterprises) OR "mighty pac" OR ferraro OR "distributors packaging" OR "hatco" OR "chandler packaging" OR topsy* |
| 14 | complaint w/10 (pric* OR term* OR condition* OR refus* OR fail* OR supply) |
| 15 | (inventor* w/5 (pric* OR reduc* OR decreas* OR lower OR increas* OR higher)) w/25 (liner* OR medium OR containerboard OR box OR container OR corrugated OR sheet) |

---

[3]  Each Defendant will run only the other Defendants' names.

[4]  Each Defendant will run only the other Defendants' names.

**Exhibit 4**

# Plaintiffs' Preliminary Analysis of Defendants' First Set of Proposed Search Terms

On August 5, 2011, defendants provided plaintiffs with a draft list of search terms. The list contains 15 search strings (or terms). After we reviewed the list, we told defendants that we believed their search terms, among other deficiencies, failed to address many of the categories of documents that plaintiffs requested in Plaintiffs' Requests for Production ("RFP"). Defendants asked plaintiffs to provide a list of these categories, and we agreed to do so. **This memo summarizes our initial findings. But please not that this memo is _not_ Plaintiffs' complete, or final, submission on search terms or any search protocol.**

In summary, defendants' search term list fails to include most of the terms and categories suggested in the definitions, sub-headings and Exhibit A to the RFPs. Specifically, when we compared the RFP's defined terms to the search terms, we noted a serious lack of correlation (_see infra_). Accordingly, our attempt to match defendants' search terms to the RFP categories is just that – an attempt. Moreover, many obvious search terms have been omitted from defendants' list. For example, the list does not contain any abbreviations or derivatives of the following, core product terms: "linerboard," "corrugated medium," or "sheets." Additionally, the term "meet*" appears only in connection with trade associations and not in connection with competitors; the core terms "reduc*,"[1] "suppl*," and "demand" appear only in limited contexts; the term "balanc*" only appears as "tonnage balance"; and there is no derivative or plural of "inventory."

In addition to the above, non-exhaustive list of core terms, the following terms (and derivatives) that appear in the RFP's definitions do not appear in defendants' list: "Clos*"; "curt*"; "e-mail*"; email, fax*; facsimile; compet*"; "forecast *"; "estimate*"; "trend*"; "output"; "utilize*"; clos*"; "schedule*"; "sale*"; "rev*"; "profit*"; "margin*"; "merg*"; "acqui*"; "joint*"; "divest*"; "transfer*"; "asset*"; "spin-off*"; "control"; "own*"; "consolid*"; "import*"; "export*"; "contact*"; "address*"; home"; "mobile"; "cell"; "business"; "telephone'"; "text;" SMS"; "MMS"; "messag*"; "media"; "press"; "financ*"; "communit*"; "customer"; "gov*"; "instit*"; "public"; "invest*"; "relat*"; "polic*"; "marketing"; "distib*"; "transfer*"; "swap*"; "exchang*"; "strat*"; "plan*"; "monitor*"; "forecast*"; "report*"; "market*"; "merg*"; "acqui*"; "joint*"; "divest*"; "transfer*"; "asset*"; "spin-off*"; "control"; "own*"; "consolid*"; "finance*"; "account*"; "perform*"; "object*"; "train*"; "compli*"; "comply"; "communicat*"; "purchas*"; "procur*"; "input*"; "raw"; "material"; "pulp"; "OCC"; "dye*"; "ink*"; "energy"; "supply chain"; "labor"; "maint*";

---

[1] See search terms Nos. 8 (pric* w/in 5 of reduc*) and 15 (inv* w/ 5 of reduc*). What about reduction of supply, production, product or capacity?

"sched*"; "unsched*"; "output"; report*"; "memo"; "stats"; "statist*"; "compil*"; "rev*" "audit"; "AICC"; "RISI"; "antitrust"; and "anti-trust." Additionally, the terms "reduc*"; "suppl*"; and "demand" do not appear in the context of downtime. The term "balanc*" only appears as "tonnage balance"; "market" is only used once in the search terms and is coupled with "share"; and "meeting" is only used in connection with certain trade associations, not with competitors.

Plaintiffs are providing the following chart to demonstrate (by way of example) the critical omissions from Defendants' list.

| Definition # | PLAINTIFFS' RFP DEFINED TERMS | DEFENDANTS" SEARCH TERMS |
|---|---|---|
| 2 | "Capacity reduction" … permanent or near-permanent mill, plant or facility closure, curtailment or reduction in output from your maximum production capacity, but not including "Downtime" (defined below). | No. 6 appears to refer to non-permanent reductions (see "Downtime" below). "clos*"; "curt*" do not appear in the context of capacity reductions |
| 3 | "Communication" … meetings, electronic communications, emails, facsimiles, telephone communications, correspondence …. | "meet*" appears only in connection with trade associations; "e-mail*" or "email*" does not appear; "fax"" or "facsimile*" does not appear |
| 4 | "Competitive Conditions" ... actual or forecasted, projected or estimated conditions or trends relating to pricing, production (including output, capacity, capacity utilization, operating rates, facility closures, rationalization, downtime and/or production scheduling), supply, inventories, demand, sales, profitability or margins, market share (including mergers, acquisitions, joint ventures, divestitures, sales or transfers of assets, spin-offs or any other form of change of ownership or control or consolidation), competitors, fixed or variable costs, imports or exports in the market for Containerboard Products. | *See* No. 11, which is other defendants w/in 25 of market share OR price increase, decrease OR change OR capacity OR operating rate OR downtime OR slowback OR inventory [note no derivative of "inventory"]<br><br>The following terms do not appear in any search terms: "compet*"; "forecast *"; "estimate*"; "trend*"; "output"; "utilize*"; clos*"; "schedule*"; "sale *"; "rev*"; "profit*"; "margin*"; "merg*"; "acqui*"; "joint*"; "divest*"; "transfer*"; "asset*"; "spin-off*"; "control"; "own*"; "consolid*"; "import*"; "export*"<br><br>"market" is only used once in the search terms and is coupled with "share"<br><br>The following do not appear in the |

| | | |
|---|---|---|
| | | context of competitive conditions: "suppl*"; "inventor*"; "demand"; "fixed costs"; "variable costs" |
| 6 | "Contact information" … address … home, mobile and business … telephone … email user identifications and email … facsimile … text, SMS, MMS or similar addresses;… | The following do not appear in any search terms: "contact*"; "address*"; "home"; "mobile"; "cell"; "business'" "telephone"; "email"; "e-mail*"; "fax"; "facsimile*"; "text"; "SMS"; "MMS" |
| 7 | "Containerboard Products" … linerboard, corrugated medium, corrugated or containerboard sheets … boxes … containers | No initials or derivatives; i.e., CB, LB, MED, CORR |
| 8 | Corporate Communications" … messaging …. media, financial community, customer base, government, industry bodies and institutes and general public …, public relations, investor relations, government relations …. | The following do not appear in any search terms: "messag*"; "media"; "press"; "financ*"; "communit*"; "customer"; "gov*"; "instit*"; "public"; "invest*"; "relat*"<br><br>"Industr*" does not appear in the context of corporate communications |
| 9 | "Corporate Functions … policy, study or analysis …<br>a.      production (including output, capacity, capacity utilization, operating rates, facilities closures, rationalization, downtime and/or production scheduling);<br>b.      supply and inventories;<br>c.      pricing;<br>d.      sales, marketing and distribution;<br>e.      intra-company transfers or transactions (including transfer | The following do not appear in any search terms: "polic*"; "marketing"; "distib*"[2]; "transfer*"; "swap*"; "exchang*"; "strat*"; "plan*"; "monitor*"; "forecast*"; "report*"[3]; "market*"[4]; "merg*"; "acqui*"; "joint*"; "divest*"; "transfer*"; "asset*"; "spin-off*"; "control"; "own*"; "consolid*"; "finance*"; "account*"; "perform*"; "object*"; "antitrust"; "anti-trust"; "train*"; "compli*"; "comply"; "communicat*"; "purchas*"; |

[2] Except as  part of the name of plaintiff "Distributors Packaging" in search term No. 13.

[3] Except as part of "expense report" in search term No. 2

[4] Except as part of "market share" in search term No. 11.

| | | |
|---|---|---|
| | pricing);<br>f.     swaps, exchanges and other inter-Defendant or manufacturer transactions;<br>g.     business strategy, planning and analysis;<br>h.     monitoring, forecasting or reporting of market or Competitive Conditions;<br>i.     mergers, acquisitions, joint ventures, divestitures, sales or transfers of assets, spin-offs or any other form of change of ownership or control;<br>j.     finance and accounting, including financial performance and objectives;<br>k.     antitrust training or compliance;<br>l.     Corporate Communications; and<br>m.     purchasing or procurement of inputs, raw materials or intermediates (i.e., pulp, OCC, linerboard, corrugated medium, dyes and inks, energy, supply chain, etc.) used in production. | "procur*"; "input*"; "raw"; "material"; "pulp"; "OCC"; "dye*"; "ink*"; "energy"; "supply chain"; "labor" |
| 12 | "Downtime"… curtailment, reduction in output or reduction in production capacity, … plant or facility closures, curtailment or production downtime imposed for maintenance (whether scheduled or unscheduled), curtailment or production downtime imposed to balance supply with demand, or reduction in output … | The following do not appear in any search terms:<br>"curt*"; "maint*"; "sched*"; "unsched*"; "output"<br><br>The terms "reduc*"[5]; "suppl*"[6]; "demand" do not appear in context of downtime<br>The term "balanc*" only appears as "tonnage balance" |
| 17,20 | Meeting | "Meeting" is only used in connection with certain trade associations  (see search term No. 2), not other usage |
| 28 | Studies" or "analyses" … reports, memoranda, statistical compilations, | The following terms do not appear: "report*"; "memo"; "stats"; "statist*"; |

---

[5] See search terms Nos. 8 (pric* w/in 5 of reduc*) and 15 (inv* w/ 5 of reduc*).

[6] See search term No. 10 ("supply discipline") and No. 14 ("complaint " w/ 10 of supply)

| | reviews, audits | "compil*"; "rev*"; "audit" |
|---|---|---|
| 29 | Trade Association" … Association of Independent Corrugated Converters ("AICC"), the Fibre Box Association ("FBA"), The American Forest & Paper Association ("AF&PA"), The International Corrugated Case Association ("ICCA"), Corrugated Packaging Alliance ("CPA"), the Corrugated Packaging Alliance Action Team ("CPAAT"), the American Forest & Paper Association ("AFPA"), the International Corrugated Case Association ("ICCA"), the Paper Industry Management Association ("PIMA"), the Association of Independent Corrugated Converters ("AICC") and RISI (originally founded and known as Resource Information Systems, Inc.) and includes any formal or informal committee or other sub-unit. | Search terms do not include AICC, RISI or "commit*" |

The following chart compares defendants' search terms with the RFPs (and Ex. A) and highlights the deficiencies.

| Plaintiffs' Discovery Request | RFP Sub-headings and EX A Categorization Field Description | Defendant search terms |
|---|---|---|
| No. 1 | Organizational Structure (CB organizational structure including description of the business functions or responsibilities of: a. predecessors, parents, subsidiaries, affiliates and joint ventures, b. divisions, departments, segment, units or sub-divisions, and c. board or management committees, subcommittees, or working groups) | None |
| | Document Preservation | None |

| Plaintiffs' Discovery Request | RFP Sub-headings and EX A Categorization Field Description | Defendant search terms |
|---|---|---|
| No. 2 | (policies or practices concerning backup, etc. (including litigation hold policies and procedures) | |
| Nos. 3-6 | <u>Current and Former Personnel</u> (names, titles and contact information; calendars expense reports, etc.; terminations, etc.) | None |
| Nos. 7-11 | <u>Trade Associations & Industry Meetings</u> (membership lists, meeting announcements, agendas, minutes, notes, attendance lists, expense reports, handouts, reports, statistical bulletins, or correspondence; identity of attendees; diaries, calendars, etc.) | 2 ([Certain trade associations] AND membership OR meeting OR announcement OR agenda OR minutes OR notes OR attendance OR "expense report" OR handout OR correspondence) |
| Nos. 12-17 | <u>Products & Manufacturing Processes</u> documents sufficient to identify the geographic regions; each class, type, grade, or category of CBP sold or distributed in the U.S., including brand name, function, physical properties and characteristics (including flute designation, flutes per linear foot, flute thickness per inch, flute per linear meter, other measures of flute thickness) and ATSM designation; production process and substitutes | None (except that search term No. 3 deals with substitutes per RPD 16) |
| Nos. 18-20 | <u>Mills, Plants & Converting Facilities</u> | None |

| Plaintiffs' Discovery Request | RFP Sub-headings and EX A Categorization Field Description | Defendant search terms |
|---|---|---|
| | (docs identifying production facilities and capacities, etc.) | |
| Nos. 21-22 | <u>Production Capacity</u> (actual weekly, monthly, quarterly and annual (i) forecasted, projected or estimated operating or capacity utilization rates, and (ii) actual operating or capacity utilization rates for (i) each particular facility; (ii) each particular sheet, corrugating or converting machine at that facility; and (iii) producing each brand, class, type, grade, or category of Containerboard Product manufactured at that facility) | None |
| Nos. 23-28 | <u>Operating Rates, Capacity Changes, Downtime</u> (Capacity Reductions, capacity additions or other changes to capacity; scheduled and unscheduled downtime) | 4, 5, 6 (reason OR justification OR cause OR why OR explanation OR motivation OR need OR benefit) w/25 ("downtime" OR "slowback" OR "slow-back" OR (slow w/2 back)); (rationalize OR close OR shut) w/25 (mill OR plant) "downtime" OR ("slowback" OR "slow-back" OR (slow w/2 back)) OR "downdays" OR (down w/10 (days OR hours)) OR (("shutdown" OR "slowdown") w/25 ("fixed costs" OR "variable costs")) OR "s&op" OR "sop" OR "tonnage |

| Plaintiffs' Discovery Request | RFP Sub-headings and EX A Categorization Field Description | Defendant search terms |
|---|---|---|
| | | balance" OR "pov" OR ((lose OR loose) w/5 (hour* OR day*)) OR ((increase OR decrease) w/3 capacity) OR (machine w/25 restrict*) |
| Nos. 29-37 | Pricing (price lists, policy and procedures; communications, analysis, effects, elasticity, indexes) | 7, 8, 9 (((analyze OR analysis OR evaluate OR assess OR study OR consider) w/25 price) w/25 (liner* OR medium OR containerboard OR box OR container OR corrugated OR sheet) (pric* w/5 (increas* OR decreas* OR rais* OR low* OR chang* OR discount* OR rebate OR offset OR reduc* OR project* OR agree* OR "cost" OR demand OR ton)) w/25 (liner* OR medium OR containerboard OR box OR container OR corrugated OR sheet) ("elasticity of demand" OR "demand elasticity" OR "price elasticity" OR "inelasticity of demand" OR "inelastic demand") AND (liner* OR medium OR containerboard OR box OR container OR corrugated OR sheet) |
| Nos. 38-44 | Cost Accounting (fixed and variable production, sales or marketing costs, including raw materials, that you track or record; intra-company transfer pricing and intra-defendant transactions; | None |

| Plaintiffs' Discovery Request | RFP Sub-headings and EX A Categorization Field Description | Defendant search terms |
|---|---|---|
| | budgets, projections, estimates, or related studies) | |
| Nos. 45-60 | <u>Competitive Conditions and Reports</u><br>(reports, studies or analyses relating to forecasted, projected, estimated, planned or actual: (i) market shares, (ii) consolidation, (iii) production capacity, capacity reduction, capacity utilization or operating rates (iv) fixed or variable costs, (v) pricing, (vi) inventories (vii) entry or exist conditions (viii) inventories, (ix) supplies/supply trends, (x) demand/demand trends, or (xi) substitute products; price discipline, price leadership, industry leadership, industry discipline, production discipline, supply discipline or a disciplined approach or practices; strategic plans; demand forecasts; consultant reports; financial analysts, trade reports | 11<br>(w/25 ("market share" OR "m/s" OR (price w/2 increas*) OR (price w/2 change) OR (price w/2 decreas*) OR capacity OR "operating rate" OR "downtime" OR "slow back" OR "slowback" OR "slow-back" OR inventory) |
| No. 61 | <u>Competitor Contacts</u> | 1 (?)<br>(defendants' email domains) |
| No. 62 | <u>Industry Consolidation</u> | None |
| No. 63 | <u>Announcements, Press Releases & Corporate Communications</u> | 12<br>(w/5 ("press release" OR statement OR announcement)) |
| Nos. 64-69 | <u>Inquiries, Investigation, Litigation & Compliance Policies, Procedures, Practices and Guidelines</u> | None |

| Plaintiffs' Discovery Request | RFP Sub-headings and EX A Categorization Field Description | Defendant search terms |
|---|---|---|
| | (prior investigations or litigation re: violations of federal, state, or international antitrust laws; compliance and training; joint defense agreements, destruction of relevant documents (shred, delete, erase, etc) | |
| No. 70 | Plaintiffs | 13 |
| No. 71 | Customer Complaints | 14 |
| Nos. 72-75 | Affirmative Defenses | None |
| No. 76 | Forms of Contract (forms of contracts or invoices issued to CBP customers) | None |
| Nos. 77-80 | ESI – IT Systems | None |
| No. 81 | Data – Financial Statements | None |
| No. 82 | ESI – Production | None |
| Nos. 83-84 | ESI – Transaction Data | None |
| Nos. 85-86 | ESI – Imports | None |
| No. 87 | ESI – Exports | None |
| No. 88 | ESI – Inventory | None |
| No. 89 | ESI – Prices | None |
| Nos. 90-92 | ESI – Costs | None |
| Nos. 93-94 | ESI – Margins/Profits | None |

**Exhibit 5**

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

| Search String No. | Search String[1] | Stems removed |
|---|---|---|
| 1 | "ipaper.com" OR "cascades.com" OR "domtar.com" OR "norampac.com" OR "packagingcorp.com" OR "smurfit.com" OR "templeinland.com" OR "weyerhaeuser.com" | |
| 1.1 | (weyerhaeuser OR "weyco" OR "wy" OR "temple-inland" OR "temple inland" OR "temple" OR "inland" OR "ti" OR "smurfit-stone" OR "smurfit" OR "sscc" OR "pca" OR "packaging corporation of america" OR "international paper" OR "ipaper" OR "intl paper" OR "ip" OR "norampac" OR "np" OR "cascades" OR "cas" OR domtar OR "IP" OR "DTC" OR "TIN" OR "WY" OR "UFS" OR "NP" OR "cas.to") w/10 (phone OR telephone OR fax OR facsimile OR email OR "e-mail" OR "e-mailed" OR <e-mail> OR call OR meet OR mtg OR contact OR "talk to" OR "talked to" OR spoken OR voicemail OR "voice mail" OR vm OR sms OR message OR mms OR text OR communicate OR discuss) | Removed "CA" stem from CAS; removed all stems except "TI" from TI. |
| 1.2 | (phone OR telephone OR fax OR facsimile OR email OR "e-mail" OR "e-mailed" OR call OR meet OR mtg OR contact OR "talk to" OR "talked to" OR spoken OR SMS OR MMS OR voicemail OR "voice mail" OR vm OR text OR communicate OR discuss) w/10 ((liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR cb OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR <white-top> OR wt OR (kraft w/1 (liner OR linerboard))) w/10 (price* OR sale OR trade OR swap OR demand OR cost OR distribute OR logistics OR capacity OR output OR production OR supply OR inventory OR "operating rate" OR "utilization rate")) | Left only these container stems: containers container containere containerized; Left only these demand stems: demande demand |

---

[1] All search terms will be run in a non case sensitive manner. Given the different processing platforms being utilized by Defendants, each Defendant may make non-substantive adjustments to the search terms in order to account for how its platform handles syntax, stemming and wildcards.

1

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

| Search String No. | Search String[1] | Stems removed |
|---|---|---|
| 2 | "fba" OR "fibre box association" OR "af&pa" OR "afpa" OR "american forest & paper association" OR "icca" OR "international corrugated case association" OR "cpa" OR "corrugated packaging alliance" OR "cpaat" OR "corrugated packaging alliance action team" OR "pima" OR "paper industry management association" OR "association of independent corrugated converters" OR "AICC" OR "RISI" OR WCO OR "world containerboard organ*" | |
| 3 | (substitute OR alternative) w/5 (box OR container OR corrugated) | |
| 4 | [eliminated search string due to redundancy] | |
| 5 | (rationalize OR clos* OR shut* OR idle OR suspen* OR "start up" OR <start-up> OR resum* OR restart) w/25 (mill OR plant OR machine OR Toledo OR "Cedar Springs" OR Brewton OR Monticello OR "Big Island") | |
| 6 | downtime OR slowback OR (slow w/2 back) OR downdays OR (down w/10 (days OR hours)) OR (("shutdown" OR "slowdown") w/25 ("fixed costs" OR "variable costs")) OR "s&op" OR "sop" OR "tonnage balance" OR "pov" OR ((lose OR loose) w/5 (hour OR day)) OR (machine w/25 restrict) OR "production profile" | |
| 6.1 | ((increase OR decrease OR low OR high OR change OR expan* OR maximize OR restrict OR reduc* OR curt* OR weekly OR monthly OR actual OR "week of" OR "month of") w/10 (capacity OR output OR produc* OR supply OR supplies OR inventory OR "operating rate" OR "utilization rate")) w/10 (liner OR linerboard OR LB OR medium OR med OR containerboard OR CTB OR CB OR box* OR container OR corrugated OR sheet* OR "white top" OR "white-top" OR WT OR (kraft w/1 (liner OR linerboard))) | Left only container stems listed in 1.2 |

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

| Search String No. | Search String[1] | Stems removed |
|---|---|---|
| 7 | (pric* w/5 (analyze OR analysis OR evaluate OR assess OR study OR consider)) w/25 (liner OR linerboard OR LB OR medium OR med OR containerboard OR CTB OR CB OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR WT OR (kraft w/1 (liner OR linerboard))) | Left only container stems listed in 1.2 |
| 8 | (pric* w/5 (increase OR decrease OR raise OR low OR high OR declin* OR change OR discount OR rebate OR offset OR reduc* OR project* OR agree* OR cost OR demand OR ton OR negotiate OR commission OR actual OR current OR monthly OR weekly OR "week of" OR "month of")) w/25 (liner OR linerboard OR LB OR medium OR med OR containerboard OR CTB OR CB OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR WT OR (kraft w/1 (liner OR linerboard))) | Left only container stems listed in 1.2; Left only demand stems listed in 1.2 |
| 8.1 | ((profit OR margin OR sale OR revenue OR EPS OR EBITDA) w/5 (increase OR decrease OR raise OR low OR high OR change OR discount OR rebate OR offset OR reduc* OR project* OR "cost" OR demand OR ton)) w/15 (liner OR linerboard OR LB OR medium OR med OR containerboard OR CTB OR CB OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR WT OR (kraft w/1 (liner OR linerboard))) | Left only container stems listed in 1.2; Left only demand stems listed in 1.2 |
| 8.2 | (cost w/5 (increase OR decrease OR raise OR low OR high OR decline OR change OR discount OR offset OR reduc* OR project OR agree* OR negotiate OR ton)) w/15 (liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR cb OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR <white-top> OR wt OR (kraft w/1 (liner OR linerboard)) | Left only container stems listed in 1.2 |

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

| Search String No. | Search String[1] | Stems removed |
|---|---|---|
| 9 | ("elasticity of demand" OR "demand elasticity" OR "price elasticity" OR "inelasticity of demand" OR "inelastic demand") AND (liner OR linerboard OR LB OR medium OR med OR containerboard OR CTB OR CB OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR WT OR (kraft w/1 (liner OR linerboard))) | Left only container stems listed in 1.2 |
| 9.1 | demand w/10 (liner OR linerboard OR LB OR medium OR med OR containerboard OR CTB OR CB OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR <white-top> OR WT OR (kraft w/1 (liner OR linerboard))) | Left only container stems listed in 1.2; Left only demand stems listed in 1.2 |
| 10 | (((discipline OR leader* OR follow) w/5 (pric* OR industry OR supply OR production OR capacity OR output OR inventory)) OR (price w/2 match)) AND (liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR cb OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR <white-top> OR wt OR (kraft w/1 (liner OR linerboard)) OR weyerhaeuser OR "weyco" OR "wy" OR "temple-inland" OR "temple inland" OR "temple" OR "inland" OR "ti" OR "smurfit-stone" OR "smurfit" OR "sscc" OR "pca" OR "packaging corporation of america" OR "international paper" OR "ipaper" OR "intl paper" OR "ip" OR "norampac" OR "np" OR "cascades" OR "cas" OR domtar OR "ip" OR "dtc" OR "tin" OR "wy" OR "ufs" OR "np" OR "cas.to") | Left only container stems listed in 1.2; Removed "CA" stem from CAS; removed all stems except "TI" from TI. |

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

| Search String No. | Search String[1] | Stems removed |
|---|---|---|
| 11 | (weyerhaeuser OR "weyco" OR "wy" OR "temple-inland" OR "temple inland" OR temple OR inland OR "ti" OR "smurfit-stone" OR smurfit OR "sscc" OR "pca" OR "packaging corporation of america" OR "international paper" OR "ipaper" OR "intl paper" OR "ip" OR norampac OR "np" OR cascades OR "cas" OR pkg OR tin OR cas.to OR wy OR ufs OR DTC)) w/25 ("market share" OR <m/s> OR pric* OR compet* OR monitor* OR "antitrust" OR "anti-trust" OR illegal OR unlawful OR conspir* OR "downtime" OR "slow back" OR "slowback" OR "slow-back" OR capacity OR output OR production OR supply OR supplies OR inventor* OR "operating rate" OR "utilization rate") | Removed "CA" stem from CAS; removed all stems except "TI" from TI. |
| 12 | (weyerhaeuser OR "weyco" OR "wy" OR "temple-inland" OR "temple inland" OR "temple" OR "inland" OR "ti" OR "smurfit-stone" OR "smurfit" OR "sscc" OR "pca" OR "packaging corporation of america" OR "international paper" OR "ipaper" OR "intl paper" OR "ip" OR "norampac" OR "np" OR "cascades" OR "cas" OR pkg OR tin OR cas.to OR wy OR ufs OR dtc) w/5 ("press release" OR statement OR announce OR report) | Removed "CA" stem from CAS; removed all stems except "TI" from TI. |
| 13 | kleen OR ("rpr" w/2 enterprises) OR ("r.p.r." w/2 enterprises) OR "mighty pac" OR ferraro OR "distributors packaging" OR "hatco" OR "chandler packaging" OR topsy* | |
| 14 | Complain* w/10 (pric* OR term OR condition OR refus* OR fail* OR supply) | |
| 15 | (budget OR projection OR estimate OR forecast OR trend* OR outlook) w/10 (liner OR linerboard OR LB OR medium  OR med OR containerboard OR CTB OR CB OR box OR container OR corrugated OR sheet* OR "white top" OR "white-top" OR WT OR (kraft w/1 (liner OR linerboard))) | Left only container stems listed in 1.2 |

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

| Search String No. | Search String[1] | Stems removed |
|---|---|---|
| 16 | (price w/3 increase) w/10 ("pass through" OR "pass-through" OR fail OR "fell flat" OR stick) | |
| 17 | (((economy OR economic OR demand) w/5 (downturn OR tank OR collapse)) OR recession*) w/25 (containerboard OR liner OR linerboard OR medium OR corrugated OR box OR sheet OR (kraft w/1 (liner OR linerboard))) | Left only demand stems listed in 1.2 |

**Exhibit 6**

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

Cascades Canada LLC and Norampac Holdings U.S. Inc.'s Search Terms

| Search String No. | Search String |
|---|---|
| 1 | "*ipaper com" or "*gapac com" or "*packagingcorp.com" or "*smurfit com" or "*templeinland com" or "*weyerhaeuser com" |
| 1.1 | (((GP or "G P" or gapac or "Georgia Pacific" or GeorgiaPacific or weyerhaeuser or weyco or wy or "temple inland*" or templ* or inland* or ti or "smurfit* ston*" or smurfit* corpor* of america*" or "int* paper*" or ipaper* or "intl* paper*" or (ips OR ipped OR ipe OR ip) or (tin or tins or tinned) or UF*) w/10 (phon* or telephon* or fax* or facsimil* or email* or "e mail*" or "e mailed" or call* or meet* or met or mtg* or contact* or "talk* to" or "talked to" or spoken or voicemail* or "voic* mail*" or "voice mail" or vm* or (sm OR sms) or messag* or (mm or mms) or text* or commun* or discuss*)) |
| 1.2 | ((phon* or telephon* or fax* or facsimile* or email* or "e mail" or "e mailed" or call* or meet* or mtg* or contact* or "talk* to" or "talked to" or (spok* or speak*) or (sm OR sms) or (MM OR MMS) or voicemail* or "voice mail" or vm* or text* or commun* or discuss*) w/10 ((liner* or linerboard* or (lb OR lbs) or med* or med* or containerboard* or ctb or cb or box* or container* or corrug* or sheet* or "whit* top*" or (wt OR WTS) or (kraft* w/1 (liner* or linerboard*))) w/10 (price* or sale* or trad* or swap* or demand* or cost* or distribut* or logist* or capac* or output* or product* or suppl* or inventor* or "oper* (rate* or rating*)" or "util* (rate* or rating*)"))) |
| 1.3 | Email header search for domains: (Addressee contains ("*ipaper.com" or "*gapac.com" or "*packagingcorp.com" or "*smurfit.com" or "*templeinland.com" or "*weyerhaeuser.com")) OR (cc contains ("*ipaper.com" or "*gapac.com" or "*packagingcorp.com" or "*smurfit.com" or "*templeinland.com" or "*weyerhaeuser.com")) OR (from contains ("*ipaper.com" or "*gapac.com" or "*packagingcorp.com" or "*smurfit.com" or "*templeinland.com" or "*weyerhaeuser.com")) OR (bcc contains ("*ipaper.com" or "*gapac.com" or "*packagingcorp.com" or "*smurfit.com" or "*templeinland.com" or "*weyerhaeuser.com")) |

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

| Search String No. | Search String |
|---|---|
| 2 | (fba or "fibr* box* associ*" or "fiber* box* associ*" or "af pa" or afpa or "americ* forest paper* associ*" or icca or "intern* corrug* case associ* or cpa or "corrug* pack* allianc*" or cpaat or "corrug* pack* alliance* action* team*" or pima or "paper* indust* manag* associ*" or "associ* of independ* corrug* convert*" or AICC or RISI or WCO or "world* contain* organ*") |
| 3 | ((substitut* or altern*) w/5 (box* or contain* or corrug*)) |
| 4 | [eliminated search string due to redundancy] |
| 5 | ((ration* or clos* or shut* or idl* or suspen* or "start* up*" or resum* or restart) w/25 (mill* or plant* or machin* or Cabano or Trenton or "Niagara Falls" or Mississauga or "Kingsey Falls" or Burnaby or "Red Rock")) |
| 6 | (downtim* or slowback* or (slow* w/2 back*) or downday* or (downn* w/10 (day* or hour*)) or ((shutdown* or slowdown*) w/25 ("fix* cost*" or "variab* cost*")) or "mill* results" or "monthly production report*" or "monthly report" or "mill package" or "tonnage* balanc*" or ((lose* or lost or losing or loos*) w/5 (hour* or (day* OR dai*))) or (machin* w/25 restrict*) or "product* profil*") |
| 6.1 | (((increas* or decreas* or low or high or change or expan* or maxim* or restrict* or reduc* or curt* or week* or month* or month* or actual* or "week* of" or "month* of") w/10 (capac* or output* or produc* or suppl* or supplies or inventor* or "operat* rate" or "util* rate")) and ((capac* or output or produc* or suppl* or supplies or inventor* or "operat* rate" or "util* rate")) w/10 (liner* or linerboard* or (lb OR lbs) or medi* or med* or containerboard* or CTB or CB or box* or contain* or corrug* or sheet* or "whit* top" or "whit* top*" or (wt OR WTS) or (kraft* w/1 (liner* or linerboard*))))) |

- 2 -

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

| Search String No. | Search String |
|---|---|
| 7 | ((pric* w/5 (analy* or analys* or evalu* or assess* or assess* or stud* or consid*)) and ((analy* or analys* or evalu* or assess* or stud* or consid*)) w/25 (liner* or linerboard* or LB or lbs or medi* or med* or containerboard* or CTB or CB or box* or contain* or corrug* or sheet* or "whit* top" or WT or (kraft* w/1 (liner* or linerboard*)))) |
| 8 | ((pric* w/5 (increas* or decreas* or raise or low or high or declin* or chang* or discount* or rebat* or offset* or reduc* or project* or agree* or cost* or demand* or ton* or negotiat* or commiss* or actual* or current or month1* or week* or "week* of" or "month* of")) and ((increas* or decreas* or rais* or low or high or declin* or chang* or discount* or rebat* or offset* or reduc* or project* or agree* or cost* or demand* or (ton or tons) or negotiat* or commiss* or actual* or current* or month1* or week* or "week* of" or "month* of")) w/25 (liner* or linerboard* or LB or medi* or med* or containerboard* or CTB or CB or box* or contain* or corrug* or sheet* or "whit* top" or WT or (kraft* w/1 (liner* or linerboard*)))) |
| 8.1 | (((profit* or margin* or sale* or revenu* or EP* or EBITDA*) w/5 (increas* or decreas* or rais* or low or high* or chang* or discount* or offset* or reduc* or project* or "cost*" or demand* or ton*)) and ((increas* or decreas* or rais* or low or high or chang* or discount* or rebat* or offset* or reduc* or project* or "cost*" or demand* or (ton or tons))) w/15 (liner* or linerboard* or (LB OR LBS) or medi* or med* or containerboard* or CTB or (CB OR cbs) or box* or container* or corrug* or sheet* or "whit* top*" or (WT OR WTS) or (kraft* w/1 (liner* or linerboard*)))) |
| 8.2 | ((cost* w/5 (increas* or decreas* or rais* or low or high or declin* or chang* or discount* or offset* or reduc* or project or agree* or negotiat* or ton*)) and ((increas* or decreas* or rais* or low or high or declin* or chang* or discount* or offset* or reduc* or project* or agree* or negotiat* or (ton or tons))) w/15 (liner* or linerboard* or (lb OR LBS) or medi* or med* or containerboard* or ctb or ctb or (cb OR cbs) or box* or container* or corrug* or sheet* or "whit* top*" or (wt OR WTS)) or (kraft* w/1 (liner* or linerboard*)))) |

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

| Search String No. | Search String |
|---|---|
| 9 | (("elastic* of demand*"' or "demand* elastic*" or "pric* elastic*" or "inelastic* of demand*" or "inelastic* demand*") AND (liner* or linerboard* or (LB OR LBS*) or medi* or med* or containerboard* or CTB or (cb OR cbs) or box* or contain* or corrug* or sheet* or "whit* top*" or (wt OR WTS) or (kraft* w/1 (liner* or linerboard*)))) |
| 9.1 | (demand* w/10 (liner* or linerboard* or (LB OR LBS)or medi* or med* or containerboard* or CTB or (CB OR CBS) or box* or container* or corrug* or sheet* or "whit* top*" or (wt OR WTS) or (kraft* w/1 (liner* or linerboard*)))) |
| 10 | (((((discipline* or leader* or follow*) w/5 (pric* or industr* or suppl* or product* or capac* or output* or inventor*)) or (pric* w/2 match*") AND (liner* or linerboard* or (lb OR LBS) or med* or med* or containerboard* or ctb or (cb OR cbs) or box* or container* or corrug* or sheet* or "whit* top*" or wt or (kraft* w/1 (liner* or linerboard*)) or weyerhaeuser or weyco or wy or "templ* inland*" or templ* or inland* or ti or "Smurfit* ston*" or smurfit* or sscc or pca* or "packag* corp* of america*" or "int* paper* or ipaper* or "intl* paper*" or ip or (tin or tins or tinned) or wy or uf* or GP or "G P" or gapac or "Georgia Pacific")) |
| 11 | ((GP or "G P" or gapac or "Georgia Pacific" or weyerhaeuser or weyco or wy or "templ* inland*" or templ* or inland* or ti or "smurfit* ston*" or smurfit* or sscc or pca* or "packag* corp* of america* or "int* paper*" or ipaper* or ip or pkg* or (tin or tins or tinned) or wy or uf*) w/25 ("market* shar*" or "m s" or "m/s" or pric* or compet* or monitor* or antitrust or "anti trust" or illegal* or unlaw* or conspir* or downtim* or "slow* back*" or slowback* or capac* or output* or product* or suppl* or supplies or inventor* or "operat* rate*" or "oper* rating*" or "util* rate*" or "util* rating*")) |
| 12 | (((GP or "G P" or gapac or "Georgia Pacific" or weyerhaeuser or weyco or wy or "templ* inland*" or templ* or inland* or ti or "smurfit* ston*" or smurfit* or sscc or pca* or "packag* corp* of america* or "int* paper*" or ipaper* or ip or pkg* or (tin or tins or tinned) or wy or uf*) w/5 ("press* releas*" or statement* or announc* or report*)) |

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

| Search String No. | Search String |
|---|---|
| 13 | (kleen or (tpr* w/2 enterpris*) or ("r p l" w/2 enterpris*) or "might* pac*" or ferraro or "distribut* packag*" or hatco or "chandler packag*" or topsy*) |
| 14 | (Complain* w/10 (pric* or term* or condit* or refus* or fail* or suppl*)) |
| 15 | ((budget* or project* or estim* or forecast* or trend* or outlook*) w/10 (liner* or linerboard* or (LB OR LBS) or medi* or med* or containerboard* or CTB or CB or box* or contain* or corrug* or sheet* or "whit* top*" or WT or (kraft* w/1 (liner* or linerboard*)))) |
| 16 | ((pric* w/3 increas*) w/10 ("pass* through*" or fail* or "fell* flat*" or "fall* flat*" or (stick* or stuck))) |
| 17 | (((((econom* or demand*) w/5 (downturn* or tank* or collaps*)) and ((downturn* or tank* or collaps*) w/25 (containerboard* or liner* or linerboard* or medi* or corrug* or box* or sheet* or (kraft* w/1 (liner* or linerboard*))))) or (recession* w/25 (containerboard* or liner* or linerboard* or medi* or corrug* or box* or sheet* or (kraft* w/1 (liner* or linerboard*))))) |
| Socio (domains only) | (o.name like '%ipaper%') or (o.name like '%gapac%') or (o.name like '%packagingcorp%') or (o.name like '%smurfit%') or (o.name like (%templeinland%') or (o.name like '%weyerhaeuser%')) |

- 5 -

**Exhibit 7**

| \multicolumn{2}{c}{INTERNATIONAL PAPER SEARCH TERMS} |
|---|---|
| **String No.** | **Search** |
| 01 | [all domain gp.com][or all people gapac.com][or all domain cascades.com][or all domain domtar.com][or all domain norampac.com][or all domain packagingcorp.com][or all domain smurfit.com][or all domain templeinland.com][or all domain weyerhaeuser.com][and all people rocktenn.com] |
| 01.1 | [Any Text: (((weyerhaeuser OR weyerhauser OR weyco OR wy OR temple OR inland OR ti OR smurfit OR sscc OR pca OR "packaging corporation of america" OR "georgia pacific" OR gp OR gapac OR norampac OR np OR cascades OR cas OR domtar OR dtc OR tin OR sscq OR rkt OR ufs OR "cas.to" OR "rock tenn" OR rocktenn OR "rock tn" OR rocktn) w/10 (phone OR telephone OR fax OR facsimile OR email OR "e-mail" OR call OR meet OR mtg OR contact OR talk OR spoke OR voicemail OR "voice mail" OR vm OR sms OR message OR mms OR text OR communicate OR discuss)))] |
| 01.2 | [Any Text: (phone OR telephone OR fax OR facsimile OR email OR "e-mail" OR call OR meet OR mtg OR contact OR talk OR spoken OR sms OR mms OR voicemail OR "voice mail" OR vm OR text OR communicate OR discuss) w/10 (liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR cb OR box OR container OR corrugated OR sheet OR "white top" OR wt OR kraft OR ctrb OR ipg OR cbpr OR readyfill OR cta OR britetop OR "brite top" OR boxusa OR "box usa" OR brown OR preprint OR "pre print") w/10 (price OR sale OR trade OR swap OR demand OR cost OR distribute OR logistics OR capacity OR output OR production OR supply OR inventory OR "operating rate" OR "utilization rate")] |
| 02 | [Any Text: "fba" OR "fibre box" OR fibrebox OR "af&pa" OR afpa OR "american forest & paper association" OR icca OR "international corrugated case association" OR cpa OR "corrugated packaging alliance" OR cpaat OR pima OR "paper industry management association" OR "association of independent corrugated converters" OR aicc OR risi OR wco OR "world containerboard organization"] |
| 03 | [Any Text: (substitute OR alternative) w/5 (box OR readyfill OR cta OR britetop OR "brite top" OR boxusa OR "box usa" OR brown OR preprint OR "pre print" OR container OR corrugated)] |
| 04 | [Search string eliminated due to redundancy] |
| 05 | [Any Text: (rationalize OR close OR shut OR idle OR suspend OR "start up" OR "start-up"  OR resume OR restart) w/25 (mill OR plant OR machine OR mansfield OR pineville OR prattville OR savannah OR "terre haute" OR vicksburg OR madison OR pensacola OR valliant OR "cedar river" OR "pine hill" OR "red river" OR albany OR springfield OR henderson OR groveton OR hueneme)] |
| 06 | [Any Text: downtime OR "down time" OR dt OR loo OR slowback OR "slow back" OR downdays OR (down w/10 (days OR hours)) OR (("shutdown" OR "slowdown") w/25 ("fixed costs" OR "variable costs")) OR "s&op" OR sop OR "tonnage balance" OR pov OR ((lose OR loose) w/5 (hour OR day)) OR (machine w/25 restrict) OR "production profile"] |
| 06.1 | [Any Text: ((increase OR decrease OR low OR high OR change OR expand OR expansion OR expanding OR maximize OR restrict OR reduce OR curtail OR weekly OR monthly OR actual OR "week of" OR "month of") w/10 (capacity OR output OR produce OR production OR produced OR supply OR inventory OR "operating rate" OR "utilization rate")) w/10 (liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR cb OR box OR container OR corrugated OR sheet OR "white top" OR wt OR kraft OR readyfill OR cta OR britetop OR "brite top" OR boxusa OR "box usa" OR brown OR preprint OR "pre print" OR ctrb OR ipg OR cbpr)] |

| | |
|---|---|
| 07 | [Any Text: (price w/5 (analyze OR analysis OR evaluate OR assess OR study OR consider)) w/25 (liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR ctbr OR cb OR ipg OR cbpr OR box OR readyfill OR cta OR britetop OR "brite top" OR boxusa OR "box usa" OR brown OR preprint OR "pre print" OR container OR corrugated OR sheet OR "white top" OR "white-top" OR wt OR dlk OR (kraft w/1 (liner OR linerboard))))] |
| 08 | [Any Text: (price w/5 (increase OR decrease OR raise OR low OR high OR decline OR change OR discount OR rebate OR offset OR reduce OR project OR agree OR cost OR demand OR ton OR negotiate OR commission OR actual OR current OR monthly OR weekly OR "week of" OR "month of")) w/25 (liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR ctbr OR cb OR ipg OR cbpr OR box OR readyfill OR cta OR britetop OR "brite top" OR boxusa OR "box usa" OR brown OR preprint OR "pre print"OR box OR container OR corrugated OR sheet OR "white top" OR wt OR kraft OR dlk)] |
| 8.1 | [Any Text: ((profit OR margin OR sale OR revenue OR eps OR ebitda) w/5 (increase OR decrease OR raise OR low OR high OR change OR discount OR rebate OR offset OR reduce OR project OR "cost" OR demand OR ton)) w/15 (liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR cb OR box OR container OR corrugated OR sheet OR "white top" OR wt OR kraft OR ctrb OR ipg OR cbpr OR box OR readyfill OR cta OR britetop OR "brite top" OR boxusa OR "box usa" OR brown OR preprint OR "pre print")] |
| 8.2 | [Any Text: (cost w/5 (increase OR decrease OR raise OR low OR high OR decline OR change OR discount OR offset OR reduce OR reduction OR project OR agree OR negotiate OR ton)) w/15 (liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR cb OR ctbr OR ipg OR cbpr OR box OR readyfill OR cta OR britetop OR "brite top" OR boxusa OR "box usa" OR brown OR preprint OR "pre print" OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR wt OR dlk OR "kraft liner" OR "kraft linerboard")] |
| 09 | [Any Text: (elasticity OR inelasticity) AND (liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR cb OR ctrb OR ipg OR cbpr OR readyfill or britetop OR "brite top" OR cta OR boxusa OR "box usa" OR brown OR preprint OR "pre print" OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR wt OR "kraft liner" OR "kraft linerboard")] |
| 09.1 | [Any Text: demand w/10 (liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR cb OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR wt OR ctrb OR ipg OR cbpr OR readyfill OR britetop OR "brite top" OR cta OR boxusa OR "box usa" OR brown OR preprint OR "pre print" OR dlk OR "kraft liner" OR "kraft linerboard")] |
| 10 | [Any Text: (((discipline OR leader OR follow) w/5 (price OR industry OR supply OR production OR capacity OR output OR inventory)) OR (price w/2 match)) AND (liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR cb OR ctrb OR ipg OR cbpr OR readyfill OR cta OR britetop OR "brite top" OR boxusa OR "box usa" OR brown OR preprint OR "pre print" OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR wt OR dlk OR "kraft liner" OR "kraft linerboard" OR weyerhaeuser OR weyerhauser OR "weyco" OR "wy" OR "temple" OR inland OR ti OR smurfit OR sscc OR pca OR "packaging corporation of america" OR gp OR "georgia pacific" OR norampac OR np OR cascades OR cas OR domtar OR dtc OR tin OR wy OR ufs OR np OR "cas.to" OR "rock tenn" OR rocktenn OR "rock tn" OR rocktn)] |

| | |
|---|---|
| 11 | [Any Text: (weyerhaeuser OR weyerhauser OR weyco OR wy OR temple OR inland OR ti OR smurfit OR sscc OR pca OR "packaging corporation of america" OR gp OR "georgia pacific" OR norampac OR np OR cascades OR cas OR pkg OR tin OR "cas.to" OR ufs OR dtc OR "rock tenn" OR rocktenn OR "rock tn" OR rocktn) w/25 ("market share" OR "m/s" OR price OR compete OR monitor OR antitrust OR "anti-trust" OR illegal OR unlawful OR conspire OR downtime OR "slow back" OR slowback OR "slow-back" OR capacity OR output OR production OR supply OR inventory OR "operating rate" OR "utilization rate")] |
| 12 | [Any Text: (weyerhaeuser OR weyehauser OR weyco OR wy OR temple OR inland OR ti OR smurfit OR sscc OR pca OR "packaging corporation of america" OR  "georgia pacific" OR gp OR norampac OR np OR cascades OR cas OR pkg OR tin OR cas.to OR ufs OR ssccq OR rkt OR dtc OR "rock tenn" OR rocktenn OR "rock tn" OR rocktn) w/5 ("press release" OR statement OR announce OR report)] |
| 13 | [Any Text: kleen OR ("rpr" w/2 enterprises) OR ("r.p.r." w/2 enterprises) OR "mighty pac" OR ferraro OR "distributors packaging" OR "hatco" OR "chandler packaging" OR topsy] |
| 14 | [Any Text: complaint w/10 (price OR term OR condition OR refuse OR fail OR supply)] |
| 15 | [Any Text: (budget OR projection OR estimate OR forecast OR trend OR outlook) w/10 (liner OR linerboard OR lb OR medium  OR med OR containerboard OR ctb OR cb OR box OR ctrb OR ipg OR cbpr OR readyfill OR cta OR britetop OR "brite top" OR boxusa OR "box usa" OR brown OR preprint OR "pre print" OR container OR corrugated OR sheet OR "white top" OR "white-top" OR wt OR dlk OR "kraft liner" OR "kraft linerboard")] |
| 16 | [Any Text: (price w/3 increase) w/10 ("pass through" OR "pass-through" OR fail OR "fell flat" OR stick)] |
| 17 | [Any Text: (((economic OR demand) w/5 (downturn OR tank OR collapse)) OR recession) w/25 (containerboard OR liner OR linerboard OR medium OR corrugated OR box OR sheet OR "kraft liner" OR "kraft linerboard" OR lb OR med OR ctb OR cb OR ctrb OR ipg OR cbpr OR readyfill OR cta OR britetop OR "brite top" OR boxusa OR "box usa" OR brown OR preprint OR "pre print" OR container OR "white top" OR "white-top" OR wt OR dlk)] |
| 18 | [Any Text: trade w/10 (balance OR inbalance)] |
| 19 | [Any Text: "gp.com" OR "cascades.com" OR "domtar.com" OR "norampac.com" OR "packagingcorp.com" OR "smurfit.com" OR "templeinland.com" OR "weyerhauser.com" OR "gapac.com" OR "rocktenn.com"] |
| 20 | [DocType: Calendar Item][Any Text: weyerhaeuser OR weyehauser OR weyco OR wy OR temple OR inland OR ti OR smurfit OR sscc OR pca OR "packaging corporation of america" OR "georgia  pacific" OR gp OR gapac OR norampac OR np OR cascades OR cas OR domtar OR dtc OR tin OR ssccq OR rkt OR ufs OR "cas.to" OR "rock tenn" OR rocktenn OR "rock tn" OR rocktn OR liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR ctrb OR cb OR ipg OR cbpr OR box OR readyfill OR cta OR britetop OR "brite top" OR boxusa OR "box usa" OR brown OR preprint OR "pre print" OR container OR corrugated OR sheet OR "white top" OR "white-top" OR wt OR kraft OR dlk OR price OR sale OR trade OR swap OR demand OR cost OR distribute OR logistics OR capacity OR output OR production OR supply OR inventory OR "operating rate" OR "utilization rate" OR downturn OR tank OR collapse OR "trend-line" OR "trend line" OR trendline OR "pass through" OR "pass-through" OR fail OR "fell flat" OR stick |
| 21 | [Any Text: ("trend line" OR "trend-line" OR trendline) w/10 price] |

**Exhibit 8**

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

| Search String No. | Search String |
|---|---|
| 1 | "ipaper.com" OR "cascades.com" OR "domtar.com" OR "norampac.com" OR "smurfit.com" OR "templeinland.com" OR "weyerhaeuser.com" OR "gapac.com" |
| 1.1 | (gp OR "g-p" OR "g p" OR gapac OR "georgia-pacific" OR "georgia pacific" OR weyerhaeuser OR "weyco" OR "wy" OR "temple-inland" OR "temple inland" OR "temple" OR "inland" OR "ti" OR "smurfit-stone" OR "smurfit" OR "sscc" OR OR "international paper" OR "ipaper" OR "intl paper" OR "ip" OR "norampac" OR "np" OR "cascades" OR "cas" OR domtar OR "IP" OR "DTC" OR "TIN" OR "WY" OR "UFS" OR "NP" OR "cas.to") w/10 (phone OR telephone OR fax OR facsimile OR email OR "e-mail" OR "e-mailed" OR <e-mail> OR call OR meet OR mtg OR contact OR "talk to" OR "talked to" OR spoken OR voicemail OR "voice mail" OR vm OR sms OR message OR mms OR text OR communicate OR discuss) |
| 1.2 | (phone OR telephone OR fax OR facsimile OR email OR "e-mail" OR "e-mailed" OR call OR meet OR mtg OR contact OR "talk to" OR "talked to" OR spoken OR SMS OR MMS OR voicemail OR "voice mail" OR vm OR text OR communicate OR discuss) w/10 ((liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR cb OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR <white-top> OR wt OR (kraft w/1 (liner OR linerboard))) w/10 (price* OR sale OR trade OR swap OR demand OR cost OR distribute OR logistics OR capacity OR output OR production OR supply OR inventory OR "operating rate" OR "utilization rate")) |
| 2 | "fba" OR "fibre box association" OR "af&pa" OR "afpa" OR "american forest & paper association" OR "icca" OR "international corrugated case association" OR "cpa" OR "corrugated packaging alliance" OR "cpaat" OR "corrugated packaging alliance action team" OR "pima" OR "paper industry management association" OR "association of independent corrugated converters" OR "AICC" OR "RISI" OR WCO OR "world containerboard organ*" |

1

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

| Search String No. | Search String |
|---|---|
| 3 | (substitute OR alternative) w/5 (box OR container OR corrugated) |
| 4 | [eliminated search string due to redundancy] |
| 5 | (rationalize OR clos* OR shut* OR idle OR suspen* OR "start up" OR <start-up> OR resum* OR restart) w/25 (mill OR plant OR machine OR Valdosta OR Counce OR "Filer City" OR Tomahawk) |
| 6 | downtime OR "volume reduction" or "down time" OR slowback OR (slow w/2 back) OR downdays OR (down w/10 (days OR hours)) OR (("shutdown" OR "slowdown") w/25 ("fixed costs" OR "variable costs")) OR "tonnage balance" OR ((lose OR loose) w/5 (hour OR day)) OR (machine w/25 restrict) OR "production profile" |
| 6.1 | ((increase OR decrease OR low OR high OR change OR expan* OR maximize OR restrict OR reduc* OR curt* OR weekly OR monthly OR actual OR "week of" OR "month of") w/10 (capacity OR output OR produc* OR supply OR supplies OR inventory OR "operating rate" OR "utilization rate")) w/10 (liner OR linerboard OR LB OR medium OR med OR containerboard OR CTB OR CB OR box* OR container OR corrugated OR sheet* OR "white top" OR "white-top" OR WT OR (kraft w/1 (liner OR linerboard))) |
| 7 | (pric* w/5 (analyze OR analysis OR evaluate OR assess OR study OR consider)) w/25 (liner OR linerboard OR LB OR medium OR med OR containerboard OR CTB OR CB OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR WT OR (kraft w/1 (liner OR linerboard))) |
| 8 | (pric* w/5 (increase OR decrease OR raise OR low OR high OR declin* OR change OR discount OR rebate OR offset OR reduc* OR project* OR agree* OR cost OR demand OR ton OR |

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

| Search String No. | Search String |
|---|---|
| | negotiate OR commission OR actual OR current OR monthly OR weekly OR "week of" OR "month of")) w/25 (liner OR linerboard OR LB OR medium OR med OR containerboard OR CTB OR CB OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR WT OR (kraft w/1 (liner OR linerboard))) |
| 8.1 | ((profit OR margin OR sale OR revenue OR EPS OR EBITDA) w/5 (increase OR decrease OR raise OR low OR high OR change OR discount OR rebate OR offset OR reduc* OR project* OR "cost" OR demand OR ton)) w/15 (liner OR linerboard OR LB OR medium OR med OR containerboard OR CTB OR CB OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR WT OR (kraft w/1 (liner OR linerboard))) |
| 8.2 | (cost w/5 (increase OR decrease OR raise OR low OR high OR decline OR change OR discount OR offset OR reduc* OR project OR agree* OR negotiate OR ton)) w/15 (liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR cb OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR <white-top> OR wt OR (kraft w/1 (liner OR linerboard)) |
| 9 | ("elasticity of demand" OR "demand elasticity" OR "price elasticity" OR "inelasticity of demand" OR "inelastic demand") AND (liner OR linerboard OR LB OR medium OR med OR containerboard OR CTB OR CB OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR WT OR (kraft w/1 (liner OR linerboard))) |
| 9.1 | demand w/10 (liner OR linerboard OR LB OR medium OR med OR containerboard OR CTB OR CB OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR <white-top> OR WT OR (kraft w/1 (liner OR linerboard))) |

3

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

| Search String No. | Search String |
|---|---|
| 10 | (((discipline OR leader* OR follow) w/5 (pric* OR industry OR supply OR production OR capacity OR output OR inventory)) OR (price w/2 match)) AND (liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR cb OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR <white-top> OR wt OR (kraft w/1 (liner OR linerboard)) OR weyerhaeuser OR "weyco" OR "wy" OR "temple-inland" OR "temple inland" OR "temple" OR "inland" OR "ti" OR "smurfit-stone" OR "smurfit" OR "sscc" OR "international paper" OR "ipaper" OR "intl paper" OR "ip" OR "norampac" OR "np" OR "cascades" OR "cas" OR domtar OR "ip" OR "dtc" OR "tin" OR "wy" OR "ufs" OR "np" OR "cas.to" OR gp OR "g-p" OR "g p" OR gapac OR "georgia-pacific" OR "georgia pacific") |
| 11 | (gp OR "g-p" OR "g p" OR gapac OR "georgia-pacific" OR "georgia pacific" OR weyerhaeuser OR "weyco" OR "wy" OR "temple-inland" OR "temple inland" OR temple OR inland OR "ti" OR "smurfit-stone" OR smurfit OR "sscc" OR "international paper" OR "ipaper" OR "intl paper" OR "ip" OR norampac OR "np" OR cascades OR "cas" OR tin OR cas.to OR wy OR ufs OR DTC)) w/25 ("market share" OR <m/s> OR pric* OR compet* OR monitor* OR "antitrust" OR "anti-trust" OR illegal OR unlawful OR conspir* OR "downtime" OR "slow back" OR "slowback" OR "slow-back" OR capacity OR output OR production OR supply OR supplies OR inventor* OR "operating rate" OR "utilization rate") |
| 12 | (gp OR "g-p" OR "g p" OR gapac OR "georgia-pacific" OR "georgia pacific" OR weyerhaeuser OR "weyco" OR "wy" OR "temple-inland" OR "temple inland" OR "temple" OR "inland" OR "ti" OR "smurfit-stone" OR "smurfit" OR "sscc" OR "international paper" OR "ipaper" OR "intl |

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

| Search String No. | Search String |
|---|---|
|  | paper" OR "ip" OR "norampac" OR "np" OR "cascades" OR "cas" OR tin OR cas.to OR wy OR ufs OR dtc) w/5 ("press release" OR statement OR announce OR report) |
| 13 | kleen OR ("rpr" w/2 enterprises) OR ("r.p.r." w/2 enterprises) OR "mighty pac" OR ferraro OR "distributors packaging" OR "hatco" OR "chandler packaging" OR topsy* |
| 14 | Complain* w/10 (pric* OR term OR condition OR refus* OR fail* OR supply) |
| 15 | (budget OR projection OR estimate OR forecast OR trend* OR outlook) w/10 (liner OR linerboard OR LB OR medium  OR med OR containerboard OR CTB OR CB OR box OR container OR corrugated OR sheet* OR "white top" OR "white-top" OR WT OR (kraft w/1 (liner OR linerboard))) |
| 16 | (price w/3 increase) w/10 ("pass through" OR "pass-through" OR fail OR "fell flat" OR stick) |
| 17 | (((economy OR economic OR demand) w/5 (downturn OR tank OR collapse)) OR recession*) w/25 (containerboard OR liner OR linerboard OR medium OR corrugated OR box OR sheet OR (kraft w/1 (liner OR linerboard))) |

**Exhibit 9**

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

<u>RockTenn CP, LLC Search Terms</u>

| Search String No. | Search String |
|---|---|
| 1 | ipaper.com OR "cascades.com" OR "domtar.com" OR "norampac.com" OR "packagingcorp.com" OR "gapac.com" OR "templeinland.com" OR "weyerhaeuser.com" |
| 1.1 | (weyerhaeuser~ OR "weyco~" OR "wy~" OR "temple-inland" OR "temple inland" OR "temple~" OR "inland~" OR "ti" OR gapac~ or gp or g-p or georgia pacific or georgia-pacific "pca~" OR "packaging corporation of america" OR "packaging corp. of america" or "packaging corp of america" or "international paper" OR "ipaper~" OR "intl paper" OR "ip~" OR "norampac~" OR "np~" OR "cascades~" OR "cas" OR domtar~ OR "IP~" OR "DTC~" OR "TIN~" OR "WY~" OR "UFS~" OR "NP~" OR "cas.to") w/10 (phone~ OR telephone~ OR fax~ OR facsimile~ OR email~ OR "e-mail" OR "e-mailed" OR <e-mail> OR call~ OR meet~ OR mtg~ OR contact~ OR "talk to" OR "talked to" OR spoken~ OR voicemail~ OR "voice mail" OR vm~ OR sms~ OR message~ OR mms~ OR text~ OR communicate~ OR discuss~) |
| 1.2 | (phone~ OR telephone~ OR fax~ OR facsimile~ OR email OR "e-mail" OR "e-mailed" OR call~ OR meet~ OR mtg~ OR contact~ OR "talk to" OR "talked to" OR spoken~ OR SMS~ OR MMS~ OR voicemail~ OR "voice mail" OR vm~ OR text~ OR communicate~ OR discuss~) w/10 ((liner~ OR linerboard~ OR lb~ OR medium~ OR med~ OR containerboard~ OR ctb~ OR cb~ OR box~ OR containers or container or containere or containerized OR corrugated~ OR sheet~ OR "white top" OR "white-top" OR <white-top> OR wt~) OR ((kraft or krafted or krafts) w/10 (linered or lineres or liner or liners OR linerboards or linerboard)) w/10 (price~ OR sale~ OR trade~ OR swap~ OR demande or demand OR cost~ OR distribute~ OR logistics~ OR capacity~ OR output~ OR production~ OR supply~ OR inventory OR "operating rate" OR "utilization rate")) |

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

<u>**RockTenn CP, LLC Search Terms**</u>

| Search String No. | Search String |
|---|---|
| 2 | fba~ OR "fibre box association" OR "af&pa~" OR "afpa~" OR "american forest & paper association" OR "icca~" OR "international corrugated case association" OR "cpa~" OR "corrugated packaging alliance" OR "cpaat~" OR "corrugated packaging alliance action team" OR "pima~" OR "paper industry management association" OR "association of independent corrugated converters" OR "AICC~" OR "RISI~" OR WCO~ OR "world containerboard organ*" |
| 3 | (substitute~ OR alternative~) w/5 (box~ OR container~ OR corrugated~) |
| 4 | [eliminated search string due to redundancy] |
| 5 | (rationalize~ OR clos* OR shut* OR idle~ OR suspen* OR "start up" OR <start-up> OR resum* OR restart~) w/25 (mill~ OR plant~ OR machine~ OR Frenandina Beach or new richmond or bathurst~ or vernon~ or Los Angeles or Carthage~ or Snowflake~ or Missoula~ or Hodge~ or Ontonagon~ or Panama City or Matane~ or Jacksonville~ or Seminole~) |
| 6 | downtime~ OR slowback~ OR (slow w/2 back) OR downdays~ OR (down~ w/10 (days~ OR hours~)) or (dn. w/10 (days or hours)) OR (("shutdown~" OR "slowdown~") w/25 ("fixed costs" OR "variable costs")) OR "s&op~" OR "sop~" OR "tonnage balance" OR "pov~" OR ((lose~ OR loose~) w/5 (hour~ OR day~)) OR (machine~ w/25 restrict~) OR "production profile" |
| 6.1 | ((increase~ OR decrease~ OR low~ OR high~ OR change~ OR expan* OR maximize~ OR restrict~ OR reduc* OR curt* OR weekly~ OR monthly~ OR actual~ OR "week of" OR "month of") w/10 (capacity~ OR output~ OR produc* OR supply~ OR supplies~ OR inventory~ OR |

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

**RockTenn CP, LLC Search Terms**

| Search String No. | Search String |
|---|---|
| | "operating rate" OR "utilization rate")) w/10 (liner~ OR linerboard~ OR LB~ OR medium~ OR med~ OR containerboard~ OR CTB~ OR CB~ OR box* OR (containers or container or containere or containerized) OR corrugated~ OR sheet* OR "white top" OR "white-top" OR WT~ OR (kraft~ w/1 (linered or lineres or liner or liners or linerboards or linerboard))) |
| 7 | (pric* w/5 (analyze~ OR analysis~ OR evaluate~ OR assess~ OR study~ OR consider)) w/25 (linered or lineres or liner or liners or linerboards or linerboard OR LB~ OR medium~ OR med~ OR containerboard~ OR CTB~ OR CB~ OR box~ OR (containers or container or containere or containerized) OR corrugated~ OR sheet~ OR "white top" OR "white-top" OR WT~) or (pric* w/5 (analyze~ OR analysis~ OR evaluate~ OR assess~ OR study~ OR consider)) w/25 (kraft w/1 (linered or lineres or liner or liners or linerboards or linerboard)) |
| 8 | (pric* w/5 (increase~ OR decrease~ OR raise~ OR low~ OR high~ OR declin* OR change~ OR discount~ OR rebate~ OR offset~ OR reduc* OR project* OR agree* OR cost~ OR demande or demand OR ton~ OR negotiate~ OR commission~ OR actual~ OR current~ OR monthly~ OR weekly~ OR "week of" OR "month of")) w/25 ((liner~ OR linerboard~ OR LB~ OR medium~ OR med~ OR containerboard~ OR CTB~ OR CB~ OR box~ OR containers or container or containere or containerized OR corrugated~ OR sheet~ OR "white top" OR "white-top" OR WT~) or (pric* w/5 (increase~ OR decrease~ OR raise~ OR low~ OR high~ OR declin* OR change~ OR discount~ OR rebate~ OR offset~ OR reduc* OR project* OR agree* OR cost~ OR demande or demand OR ton~ OR negotiate~ OR commission~ OR actual~ OR current~ OR monthly~ OR weekly~ OR "week of" OR "month of")) w/25 ((kraft or krafts or krafted) w/1 (linered or lineres or liner or liners or linerboards or linerboard)) |

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

**RockTenn CP, LLC Search Terms**

| Search String No. | Search String |
|---|---|
| 8.1 | ((profit~ OR margin~ OR sale~ OR revenue~ OR EPS~ OR EBITDA~) w/5 (increase~ OR decrease~ OR raise~ OR low~ OR high~ OR change~ OR discount~ OR rebate~ OR offset~ OR reduc* OR project* OR 'cost~' OR demand~ OR ton~)) w/15 (liner~ OR linerboard~ OR LB~ OR medium~ OR med~ OR containerboard~ OR CTB~ OR CB~ OR box~ OR containers or container or containere or containerized OR corrugated~ OR sheet~ OR 'white top' OR 'white-top' OR WT~) or ((profit~ OR margin~ OR sale~ OR revenue~ OR EPS~ OR EBITDA~) w/5 ((kraft or krafts or krafted) w/1 (linered or lineres or liner or liners or linerboards or linerboard)) |
| 8.2 | (cost~ w/5 (increase~ OR decrease~ OR raise~ OR low~ OR high~ OR decline~ OR change~ OR discount~ OR offset~ OR reduc* OR project~ OR agree* OR negotiate~ OR ton~)) w/15 (liner~ OR linerboard~ OR lb~ OR medium~ OR med~ OR containerboard~ OR ctb~ OR cb~ OR box~ OR containers or container or containere or containerized OR corrugated~ OR sheet~ OR "white top" OR "white-top" OR <white-top>~ OR wt~) or (cost~ w/5 (increase~ OR decrease~ OR raise~ OR low~ OR high~ OR decline~ OR change~ OR discount~ OR offset~ OR reduc* OR project~ OR agree* OR negotiate~ OR ton~)) w/15 ((kraft or krafts or krafted) w/1 (linered or lineres or liner or liners or linerboards or linerboard)) |
| 9 | ("elasticity of demand" OR "demand elasticity" OR "price elasticity" OR "inelasticity of demand" OR "inelastic demand") AND (liner~ OR linerboard~ OR LB~ OR medium~ OR med~ OR containerboard~ OR CTB~ OR CB~ OR box~ OR containers or container or containere or containerized OR corrugated~ OR sheet~ OR "white top" OR "white-top" OR WT~) or ("elasticity of demand" OR "demand elasticity" OR "price elasticity" OR "inelasticity of demand" OR "inelastic demand") AND (kraft~ w/1 (liner~ OR linerboard~))) |

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

**RockTenn CP, LLC Search Terms**

| Search String No. | Search String |
|---|---|
| 9.1 | (demande OR demand) w/10 (liner~ OR linerboard~ OR LB~ OR medium~ OR med~ OR containerboard~ OR CTB~ OR CB~ OR box~ OR containers or container or containere or containerized OR corrugated~ OR sheet~ OR "white top" OR "white-top" OR <white-top> OR WT~) or (demande OR demand) w/10 ((kraft or krafts or krafted) w/1 (linered or lineres or liner or liners or linerboards or linerboard)) |
| 10 | (((discipline~ OR leader* OR follow~) w/5 (pric* OR industry~ OR supply~ OR production~ OR capacity~ OR output~ OR inventory~)) OR (price~ w/2 match~)) AND (liner~ OR linerboard~ OR lb~ OR medium~ OR med~ OR containerboard~ OR ctb~ OR cb~ OR box~ OR containers or container or containere or containerized OR corrugated~ OR sheet~ OR "white top" OR "white-top" OR <white-top> OR wt~ OR ((kraft or krafts or krafted) w/1 (linered or lineres or liner or liners or linerboards or linerboard)) OR weyerhaeuser~ OR "weyco~" OR "wy~" OR "temple-inland" OR "temple inland" OR "temple~" OR "inland~" OR "ti" OR "pca~" OR "packaging corporation of america" OR gapac~ or gp or g-p or georgia pacific or georgia-pacific OR "packaging corp. of america" or "packaging corp of america" or "international paper" OR "ipaper~" OR "intl paper" OR "ip~" OR "norampac~" OR "np~" OR "cascades~" OR "cas" OR domtar~ OR "ip~" OR "dtc~" OR "tin~" OR "wy~" OR "ufs~" OR "np~" OR "cas.to") |
| 11 | (weyerhaeuser~ OR "weyco~" OR "wy~" OR "temple-inland" OR "temple inland" OR temple~ OR inland~ OR "ti" OR gapac~ or gp or g-p or georgia pacific or georgia-pacific OR "packaging corp. of america" or "packaging corp of america" or "pca~" OR "packaging corporation of america" OR "international paper" OR "ipaper~" OR "intl paper" OR "ip~" OR norampac~ OR "np~" OR cascades~ OR "cas" OR pkg~ OR tin~ OR cas.to OR wy~ OR ufs~ OR DTC~) w/25 ("market share" OR <m/s> OR pric* OR compet* OR monitor* OR "antitrust~" OR "anti-trust" |

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

**RockTenn CP, LLC Search Terms**

| Search String No. | Search String |
|---|---|
| | OR illegal~ OR unlawful~ OR conspir* OR "downtime~" OR "slow back" OR "slowback~" OR "slow-back" OR capacity~ OR output~ OR production~ OR supply~ OR supplies~ OR inventor* OR "operating rate" OR "utilization rate") |
| 12 | (weyerhaeuser~ OR "weyco~" OR "wy~" OR "temple-inland" OR "temple inland" OR "temple~" OR "inland~" OR "ti" or gapac~ or gp or g-p or georgia pacific or georgia-pacific OR "packaging corp. of america" or "packaging corp of america" OR "pca~" OR "packaging corporation of america" OR "international paper" OR "ipaper~" OR "intl paper" OR "ip~" OR "norampac~" OR "np~" OR "cascades~" OR "cas" OR pkg~ OR tin~ OR cas.to OR wy~ OR ufs~ OR dtc~) w/5 ("press release" OR statement~ OR announce~ OR report~) |
| 13 | kleen~ OR ("rpr~" w/2 enterprises~) OR ("r.p.r." w/2 enterprises~) OR "mighty pac" OR ferraro~ OR "distributors packaging" OR "hatco~" OR "chandler packaging" OR topsy* |
| 14 | Complain* w/10 (pric* OR term~ OR condition~ OR refus* OR fail* OR supply~) |
| 15 | (budget~ OR projection~ OR estimate~ OR forecast~ OR trend* OR outlook~) w/10 (liner~ OR linerboard~ OR LB~ OR medium ~ OR med~ OR containerboard~ OR CTB~ OR CB~ OR box~ OR containers or container or containere or containerized OR corrugated~ OR sheet* OR "white top" OR "white-top" OR WT~ OR (kraft w/1 (liner~ OR linerboard))) |
| 16 | (price~ w/3 increase~) w/10 ("pass through" OR "pass-through" OR fail~ OR "fell flat" OR stick~) |

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

**RockTenn CP, LLC Search Terms**

| Search String No. | Search String |
|---|---|
| | |
| 17 | (((economy~ OR economic~ OR demande or demand) w/5 (downturn~ OR tank~ OR collapse~)) OR recession*) w/25 (containerboard~ OR liner~ OR linerboard~ OR medium~ OR corrugated~ OR box~ OR sheet~) or (((economy~ OR economic~ OR demande or demand) w/5 (downturn~ OR tank~ OR collapse~)) OR recession*) w/25 (kraft~ w/1 (liner~ OR linerboard~)) |

**Exhibit 10**

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

*Temple-Inland Inc. Search Terms*

| Search String No. | Final Rationalization String |
|---|---|
| 1 | "ipaper.com" OR "cascades.com" OR "domtar.com" OR "norampac.com" OR "packagingcorp.com" OR "smurfit.com" OR "gapac.com" OR "weyerhaeuser.com"[1] |
| 1.1 | (weyerhaeuser OR "weyco" OR "wy" OR "smurfit-stone" OR "smurfit" OR "sscc" OR "gapac" OR "gp" OR "g-p" OR "georgia pacific" OR "georgia-pacific" OR "pca" OR "packaging corporation of america" OR "packaging corp. of america" OR "packaging corp of america" OR "international paper" OR "ipaper" OR "intl paper" OR "ip" OR "norampac" OR "np" OR "cascades" OR "cas" OR domtar OR "IP" OR "DTC" OR "WY" OR "UFS" OR "NP" OR "cas.to") w/10 (phone OR telephone OR fax OR facsimile OR email OR "e-mail" OR "e-mailed" OR <e-mail> OR call OR meet OR mtg OR contact OR "talk to" OR "talked to" OR spoken OR voicemail OR "voice mail" OR vm OR sms OR message OR mms OR text OR communicate OR discuss) |
| 1.2 | (phone OR telephone OR fax OR facsimile OR email OR "e-mail" OR "e-mailed" OR call OR meet OR mtg OR contact OR "talk to" OR "talked to" OR spoken OR SMS OR MMS OR voicemail OR "voice mail" OR vm OR text OR communicate OR discuss) w/10 ((liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR cb OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR <white-top> OR wt OR (kraft w/1 (liner OR linerboard))) w/10 (price* OR sale OR trade OR swap OR demand OR cost OR distribute OR logistics OR capacity OR output OR production OR supply OR inventory OR "operating rate" OR "utilization rate")) |
| 2 | "fba" OR "fibre box association" OR "af&pa" OR "afpa" OR "american forest & paper association" OR "icca" OR "international corrugated case association" OR "cpa" OR "corrugated packaging alliance" OR "cpaat" OR "corrugated packaging alliance action team" OR "pima" OR "paper industry management association" OR "association of independent corrugated converters" OR "AICC" OR "RISI" OR WCO OR "world containerboard organ*" |
| 3 | (substitute OR alternative) w/5 (box OR container OR corrugated) |

---

[1] All search terms will be run in a non case sensitive manner.

1

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

*Temple-Inland Inc. Search Terms*

| Search String No. | Final Rationalization String |
|---|---|
| 4 | [Eliminated search string due to redundancy] |
| 5 | (rationalize OR clos* OR shut* OR idle OR suspen* OR "start up" OR \<start up\> OR resum* OR restart) w/25 (mill OR plant OR machine OR Bogalusa OR Orange OR Rome OR Ontario OR "New Johnsonville" OR Maysville OR Newport OR Antioch) |
| 6 | downtime OR slowback OR (slow w/2 back) OR downdays OR (down w/10 (days OR hours)) OR (("shutdown" OR "slowdown") w/25 ("fixed costs" OR "variable costs")) OR "s&op" OR "sop" OR "tonnage balance" OR "pov" OR ((lose OR loose) w/5 (hour OR day)) OR (machine w/25 restrict) OR "production profile" |
| 6.1 | ((increase OR decrease OR low OR high OR change OR expan* OR maximize OR restrict OR reduc* OR curt* OR weekly OR monthly OR actual OR "week of" OR "month of") w/10 (capacity OR output OR produc* OR supply OR supplies OR inventory OR "operating rate" OR "utilization rate")) w/10 (liner OR linerboard OR LB OR medium OR med OR containerboard OR CTB OR CB OR box* OR container OR corrugated OR sheet* OR "white top" OR "white-top" OR WT OR (kraft w/1 (liner OR linerboard))) |
| 7 | (pric* w/5 (analyze OR analysis OR evaluate OR assess OR study OR consider)) w/25 (liner OR linerboard OR LB OR medium OR med OR containerboard OR CTB OR CB OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR WT OR (kraft w/1 (liner OR linerboard))) |
| 8 | (pric* w/5 (increase OR decrease OR raise OR low OR high OR declin* OR change OR discount OR rebate OR offset OR reduc* OR project* OR agree* OR cost OR demand OR ton OR negotiate OR commission OR actual OR current OR monthly OR weekly OR "week of" OR "month of")) w/25 (liner OR linerboard OR LB OR medium OR med OR containerboard OR CTB OR CB OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR WT OR (kraft w/1 (liner OR linerboard))) |

2

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

*Temple-Inland Inc. Search Terms*

| Search String No. | Final Rationalization String |
|---|---|
| 8.1 | ((profit OR margin OR sale OR revenue OR EPS OR EBITDA) w/5 (increase OR decrease OR raise OR low OR high OR change OR discount OR rebate OR offset OR reduc* OR project* OR "cost" OR demand OR ton)) w/15 (liner OR linerboard OR LB OR medium OR med OR containerboard OR CTB OR CB OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR WT OR (kraft w/1 (liner OR linerboard))) |
| 8.2 | (cost w/5 (increase OR decrease OR raise OR low OR high OR decline OR change OR discount OR offset OR reduc* OR project OR agree* OR negotiate OR ton)) w/15 (liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR cb OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR <white-top> OR wt OR (kraft w/1 (liner OR linerboard))) |
| 9 | ("elasticity of demand" OR "demand elasticity" OR "price elasticity" OR "inelasticity of demand" OR "inelastic demand") AND (liner OR linerboard OR LB OR medium OR med OR containerboard OR CTB OR CB OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR WT OR (kraft w/1 (liner OR linerboard))) |
| 9.1 | demand w/10 (liner OR linerboard OR LB OR medium OR med OR containerboard OR CTB OR CB OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR <white-top> OR WT OR (kraft w/1 (liner OR linerboard))) |
| 10 | (((discipline OR leader* OR follow) w/5 (pric* OR industry OR supply OR production OR capacity OR output OR inventory)) OR (price w/2 match)) AND (liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR cb OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR <white-top> OR wt OR (kraft w/1 (liner OR linerboard)) OR weyerhaeuser OR "weyco" OR "wy" OR "smurfit-stone" OR "smurfit" OR "sscc" OR "gapac" OR "gp" OR "g-p" OR "georgia pacific" OR "georgia-pacific" OR "pca" OR "packaging corporation of america" OR "packaging corp. of america" OR "packaging corp of america " OR "international paper" OR "ipaper" OR "intl paper" OR "ip" OR "norampac" OR "np" OR "cascades" OR "cas" OR domtar OR "ip" OR "dtc" OR "wy" OR "ufs" OR "np" OR "cas.to") |

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

*Temple-Inland Inc. Search Terms*

| Search String No. | Final Rationalization String |
|---|---|
| 11 | (weyerhaeuser OR "weyco" OR "wy" OR "smurfit-stone" OR smurfit OR "sscc" OR "gapac" OR "gp" OR "g-p" OR "georgia pacific" OR "georgia-pacific" OR "pca" OR "packaging corporation of america" OR "packaging corp. of america" OR "packaging corp of america" OR "international paper" OR "ipaper" OR "intl paper" OR "ip" OR norampac OR "np" OR cascades OR "cas" OR pkg OR cas.to OR wy OR ufs OR DTC) w/25 ("market share" OR "m/s" OR pric* OR compet* OR monitor* OR "antitrust" OR "anti-trust" OR illegal OR unlawful OR conspir* OR "downtime" OR "slow back" OR "slowback" OR "slow-back" OR capacity OR output OR production OR supply OR supplies OR inventor* OR "operating rate" OR "utilization rate") |
| 12 | (weyerhaeuser OR "weyco" OR "wy" OR "smurfit-stone" OR "smurfit" OR "sscc" OR "gapac" OR "gp" OR "g-p" OR "georgia pacific" OR "georgia-pacific" OR "pca" OR "packaging corporation of america" OR "packaging corp. of america" OR "packaging corp of america" OR "international paper" OR "ipaper" OR "intl paper" OR "ip" OR "norampac" OR "np" OR "cascades" OR "cas" OR pkg OR cas.to OR wy OR ufs OR dtc) w/5 ("press release" OR statement OR announce OR report) |
| 13 | kleen OR ("rpr" w/2 enterprises) OR ("r.p.r." w/2 enterprises) OR "mighty pac" OR ferraro OR "distributors packaging" OR "hatco" OR "chandler packaging" OR topsy* |
| 14 | Complain* w/10 (pric* OR term OR condition OR refus* OR fail* OR supply) |
| 15 | (budget OR projection OR estimate OR forecast OR trend* OR outlook) w/10 (liner OR linerboard OR LB OR medium  OR med OR containerboard OR CTB OR CB OR box OR container OR corrugated OR sheet* OR "white top" OR "white-top" OR WT OR (kraft w/1 (liner OR linerboard))) |
| 16 | (price w/3 increase) w/10 ("pass through" OR "pass-through" OR fail OR "fell flat" OR stick) |

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

*Temple-Inland Inc. Search Terms*

| Search String No. | Final Rationalization String |
|---|---|
| 17 | (((economy OR economic OR demand) w/5 (downturn OR tank OR collapse)) OR recession*) w/25 (containerboard OR liner OR linerboard OR medium OR corrugated OR box OR sheet OR (kraft w/1 (liner OR linerboard))) |

**Exhibit 11**

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

*WY Modifications (as of 12/7/2011)*

| Search String No. | Search String[1] |
|---|---|
| 1 | "ipaper.com" OR "cascades.com" OR "domtar.com" OR "norampac.com" OR "packagingcorp.com" OR "smurfit.com" OR "templeinland.com" OR "gapac.com" |
| 1.1 | ("GP" OR "G-P" OR "G P" OR "gapac" OR "Georgia-Pacific" OR "Georgia Pacific" OR "temple-inland" OR "temple inland" OR "temple" OR "inland" OR "ti" OR "smurfit-stone" OR "smurfit" OR "sscc" OR "pca" OR "packaging corporation of america" OR "international paper" OR "ipaper" OR "intl paper" OR "ip" OR "norampac" OR "np" OR "cascades" OR "cas" OR domtar OR "IP" OR "DTC" OR "TIN" OR "UFS" OR "NP" OR "cas.to") w/10 (phon* OR telephon* OR fax* OR facsimile* OR email* OR "e-mail*" OR "e-mailed" OR call* OR meet* OR mtg* OR contact* OR "talk* to" OR "talked to" OR spoken OR voicemail* OR "voice mail*" OR vm* OR sms OR message* OR mms OR text* OR communicat* OR discuss*) |
| 1.2 | (phon* OR telephon* OR fax* OR facsimile* OR email* OR "e-mail*" OR "e-mailed" OR call* OR meet* OR mtg* OR contact* OR "talk* to" OR "talked to" OR spoken OR SMS OR MMS OR voicemail* OR "voice mail*" OR vm* OR text* OR communicat* OR discuss*) w/10 ((liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR cb OR CBPR OR box* OR container* OR corrugated OR sheet* OR "white top*" OR "white-top*" OR wt OR "kraft liner" OR "kraft linerboard")) w/10 (price* OR sale* OR trade* OR swap* OR demand* OR cost* OR distribut* OR logistic* OR capacity OR output* OR production* OR suppl* OR inventor* OR "operat* rate*" OR "utilization rate*")) |

---

[1] All search terms will be run in a non case sensitive manner. Given the different processing platforms being utilized by Defendants, each Defendant may make non-substantive adjustments to the search terms in order to account for how its platform handles syntax, stemming and wildcards.

1

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

*WY Modifications (as of 12/7/2011)*

| Search String No. | Search String[1] |
|---|---|
| 2 | "fba" OR "fibre box association" OR "af&pa" OR "afpa" OR "american forest & paper association" OR "icca" OR "international corrugated case association" OR "cpa" OR "corrugated packaging alliance" OR "cpaat" OR "corrugated packaging alliance action team" OR "pima" OR "paper industry management association" OR "association of independent corrugated converters" OR "AICC" OR "RISI" OR WCO OR "world containerboard organ*" |
| 2.1 | ("fba" OR "fibre box association" OR "af&pa" OR "afpa" OR "american forest & paper association" OR "icca" OR "international corrugated case association" OR "cpa" OR "corrugated packaging alliance" OR "cpaat" OR "corrugated packaging alliance action team" OR "pima" OR "paper industry management association") AND (membership OR meeting OR announcement OR agenda OR minutes OR notes OR attendance OR "expense report" OR handout OR correspondence) |
| 3 | (substitut* OR alternative*) w/5 (box* OR container* OR corrugated) |
| 3.1 | (substitut* OR alternative) w/5 (box OR container) |
| 4 | (reason OR justification OR cause OR why OR explanation OR motivation OR need OR benefit) w/25 ("downtime" OR "slowback" OR "slow-back" OR (slow w/2 back)) |
| 5 | (rationaliz* OR clos* OR shut* OR idle OR suspen* OR "start up*" OR resum* OR restart*) w/25 (mill* OR plant* OR machine* OR Plymouth) |
| 5.1 | (rationalize OR close OR shut) w/25 (mill OR plant) |

2

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

*WY Modifications (as of 12/7/2011)*

| Search String No. | Search String[1] |
|---|---|
| 6 | downtime* OR slowback* OR (slow* w/2 back*) OR downday* OR (down* w/10 (day* OR hour*)) OR (("shutdown*" OR "slowdown*") w/25 ("fix* cost*" OR "variable cost*")) OR "s&op" OR "sop*" OR "tonnage* balanc*" OR "pov" OR ((los* OR loose) w/5 (hour* OR day*)) OR (machine* w/25 restrict*) OR "production* profil*" |
| 6.1 | ((increas* OR decreas* OR low OR high OR chang* OR expan* OR maximize OR restrict OR reduc* OR curt* OR weekly OR monthly OR actual OR "week of" OR "month of") w/10 (capacity* OR output* OR produc* OR supply OR supplies OR inventor* OR "operat* rate*" OR "utilization rate*")) w/10 (liner* OR linerboard OR LB OR medium OR med OR containerboard OR CTB OR CB OR CBPR OR box* OR container* OR corrugated OR sheet* OR "white top*" OR "white-top*" OR WT OR "kraft liner" OR "kraft linerboard") |
| 6.2 | "downtime" OR ("slowback" OR "slow-back" OR (slow w/2 back)) OR "downdays" OR (down w/10 (days OR hours)) OR (("shutdown" OR "slowdown") w/25 ("fixed costs" OR "variable costs")) OR "s&op" OR "sop" OR "tonnage balance" OR "pov" OR ((lose OR loose) w/5 (hour* OR day*)) OR ((increase OR decrease) w/3 capacity) OR (machine w/25 restrict*) |
| 7 | (pric* w/5 (analyz* OR analysis OR evaluat* OR assess* OR stud* OR consider*)) w/25 (liner* OR linerboard OR LB OR medium OR med OR containerboard OR CTB OR CB OR CBPR OR box* OR container* OR corrugate*OR sheet* OR "white top*" OR "white-top*" OR WT OR "kraft liner" OR "kraft linerboard") |
| 7.1 | ((analyze OR analysis OR evaluate OR assess OR study OR consider) w/25 price) w/25 (liner* OR |

3

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

*WY Modifications (as of 12/7/2011)*

| Search String No. | Search String[1] |
|---|---|
| | medium OR containerboard OR box OR container OR corrugated OR sheet) |
| 8 | (pric* w/5 (increas* OR decreas* OR rais* OR low OR high OR declin* OR chang* OR discount* OR rebat* OR offset* OR reduc* OR project* OR agree* OR cost* OR demand* OR ton* OR negotiat* OR commission* OR actual OR current OR month* OR week* OR "week* of" OR "month* of")) w/25 (liner* OR linerboard OR LB OR medium OR med OR containerboard OR CTB OR CB OR CBPR OR box* OR container* OR corrugate* OR sheet* OR "white top*" OR "white-top*" OR WT OR "kraft liner" OR "kraft linerboard") |
| 8.1 | ((profit* OR margin* OR sale* OR revenue* OR EPS OR EBITDA) w/5 (increase* OR decreas* OR raise* OR low OR high OR change OR discount* OR rebat* OR offset* OR reduc* OR project* OR cost* OR demand* OR ton*)) w/15 (liner* OR linerboard OR LB OR medium OR med OR containerboard OR CTB OR CB OR CBPR OR box* OR container* OR corrugate* OR sheet* OR "white top*" OR "white-top*" OR WT OR "kraft liner" OR "kraft linerboard") |
| 8.2 | (cost* w/5 (increas* OR decreas* OR rais* OR low OR high OR decline* OR chang* OR discount* OR offset* OR reduc* OR project* OR agree* OR negotiate* OR ton*)) w/15 (liner* OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR cb OR CBPR OR box* OR container* OR corrugate* OR sheet* OR "white top*" OR "white-top*" OR wt OR "kraft liner" OR "kraft linerboard") |
| 8.3 | (pric* w/5 (increas* OR decreas* OR rais* OR low* OR chang* OR discount* OR rebate OR offset OR reduc* OR project* OR agree* OR "cost" OR demand OR ton)) w/25 (liner* OR |

4

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

*WY Modifications (as of 12/7/2011)*

| Search String No. | Search String[1] |
|---|---|
| | medium OR containerboard OR box OR container OR corrugated OR sheet) |
| 9 | ("elasticit* of demand" OR "demand elasticit*" OR "pric* elasticity" OR "inelasticit* of demand" OR "inelastic* demand") AND (liner* OR linerboard OR LB OR medium OR med OR containerboard OR CTB OR CB OR CBPR OR box* OR container* OR corrugate* OR sheet* OR "white top*" OR "white-top*" OR WT OR "kraft liner" OR "kraft linerboard") |
| 9.1 | Demand* w/10 (liner* OR linerboard OR LB OR medium OR med OR containerboard OR CTB OR CB OR CBPR OR box* OR container* OR corrugate* OR sheet* OR "white top*" OR "white-top*" OR WT OR "kraft liner" OR "kraft linerboard") |
| 9.2 | ("elasticity of demand" OR "demand elasticity" OR "price elasticity" OR "inelasticity of demand" OR "inelastic demand") AND (liner* OR medium OR containerboard OR box OR container OR corrugated OR sheet) |
| 10 | (((discipline* OR leader* OR follow*) w/5 (pric* OR industry* OR suppl* OR production* OR capacity* OR output* OR inventor*)) OR (pric* w/2 match*)) AND (liner* OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR cb OR CBPR OR box* OR container* OR corrugate* OR sheet* OR "white top*" OR "white-top*" OR wt OR "kraft liner" OR "kraft linerboard" OR "GP" OR "G-P" OR "G P" OR "gapac" OR "Georgia-Pacific" OR "Georgia Pacific" OR "temple-inland" OR "temple inland" OR "temple" OR "inland" OR "ti" OR "smurfit-stone" OR "smurfit" OR "sscc" OR "pca" OR "packaging corporation of america" OR "international paper" OR "ipaper" OR "intl paper" OR "ip" OR "norampac" OR "np" OR "cascades" OR "cas" OR domtar OR "ip" OR "dtc" OR "tin" OR "ufs" OR "np" OR "cas.to") |

5

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

*WY Modifications (as of 12/7/2011)*

| Search String No. | Search String[1] |
|---|---|
| | |
| 10.1 | "price discipline" OR "price leadership" OR "industry leadership" OR "industry discipline," OR "production discipline" OR "supply discipline" |
| 11 | ("GP" OR "G-P" OR "G P" OR "gapac" OR "Georgia-Pacific" OR "Georgia Pacific" OR "temple-inland" OR "temple inland" OR temple OR inland OR "ti" OR "smurfit-stone" OR smurfit OR "sscc" OR "pca" OR "packaging corporation of america" OR "international paper" OR "ipaper" OR "intl paper" OR "ip" OR norampac OR "np" OR cascades OR "cas" OR pkg OR tin OR cas.to OR ufs OR DTC) w/25 ("market share*" OR pric* OR compet* OR monitor* OR "antitrust" OR "anti-trust" OR illegal OR unlawful OR conspir* OR "downtime*" OR "slow* back*" OR "slowback*" OR "slow-back*" OR capacit* OR output* OR production* OR supply OR supplies OR inventor* OR "operat* rate*" OR "utilization rate*") |
| 11.1 | (GP OR "G-P" OR "G P" OR gapac OR "Georgia-Pacific" OR "Georgia Pacific" OR "temple-inland" OR "temple inland" OR temple OR inland OR "ti" OR "smurfit-stone" OR smurfit OR "sscc" OR "pca" OR "packaging corporation of america" OR "international paper" OR "ipaper" OR "intl paper" OR "ip" OR norampac OR "np" OR cascades OR "cas") w/25 ("market share" OR "m/s" OR (price w/2 increas*) OR (price w/2 change) OR (price w/2 decreas*) OR capacity OR "operating rate" OR "downtime" OR "slow back" OR "slowback" OR "slow-back" OR inventory) |

6

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

*WY Modifications (as of 12/7/2011)*

| Search String No. | Search String[1] |
|---|---|
| 12 | ("GP" OR "G-P" OR "G P" OR "gapac" OR "Georgia-Pacific" OR "Georgia Pacific" OR "temple-inland" OR "temple inland" OR "temple" OR "inland" OR "ti" OR "smurfit-stone" OR "smurfit" OR "sscc" OR "pca" OR "packaging corporation of america" OR "international paper" OR "ipaper" OR "intl paper" OR "ip" OR "norampac" OR "np" OR "cascades" OR "cas" OR pkg OR tin OR cas.to OR ufs OR dtc) w/5 ("press release*" OR statement* OR announc* OR report*) |
| 12.1 | (GP OR "G-P" OR "G P" OR gapac OR "Georgia-Pacific" OR "Georgia Pacific" OR "temple-inland" OR "temple inland" OR "temple" OR "inland" OR "ti" OR "smurfit-stone" OR "smurfit" OR "sscc" OR "pca" OR "packaging corporation of america" OR "international paper" OR "ipaper" OR "intl paper" OR "ip" OR "norampac" OR "np" OR "cascades" OR "cas") w/5 ("press release" OR statement OR announcement) |
| 13 | kleen OR ("rpr" w/2 enterprises) OR ("r.p.r." w/2 enterprises) OR "mighty pac" OR ferraro OR "distributors packaging" OR "hatco" OR "chandler packaging" OR topsy* |
| 14 | Complain* w/10 (pric* OR term* OR condition* OR refus* OR fail* OR suppl*) |
| 14.1 | complaint w/10 (pric* OR term* OR condition* OR refus* OR fail* OR supply) |
| 15 | (budget* OR projection* OR estimat* OR forecast* OR trend* OR outlook*) w/10 (liner* OR linerboard OR LB OR medium OR med OR containerboard OR CTB OR CB OR CBPR OR box* OR container* OR corrugate* OR sheet* OR "white top*" OR "white-top*" OR "kraft liner" OR "kraft linerboard") |

7

*Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*

*WY Modifications (as of 12/7/2011)*

| Search String No. | Search String[1] |
|---|---|
| 15.1 | (inventor* w/5 (pric* OR reduc* OR decreas* OR lower OR increas* OR higher)) w/25 (liner* OR medium OR containerboard OR box OR container OR corrugated OR sheet) |
| 16 | (pric* w/3 increas*) w/10 ("pass* through" OR "pass-through" OR fail* OR "fell flat" OR stick*) |
| 17 | (((econom* OR economic OR demand*) w/5 (downturn* OR tank* OR collaps*)) OR recession*) w/25 (containerboard OR liner* OR linerboard OR medium OR corrugate* OR CBPR OR box* OR sheet* OR "kraft liner" OR "kraft linerboard") |

8

**Exhibit 12**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KLEEN PRODUCTS LLC, *et al.*, individually
and on behalf of all others similarly situated,

                    Plaintiffs,

      v.

PACKAGING CORPORATION OF
AMERICA, *et al.*,

                  Defendants.

Case No. 1:10-cv-05711

Honorable Milton I. Shadur

STIPULATION AND [~~PROPOSED~~] ORDER REGARDING

PRODUCTION OF PAPER DOCUMENTS, EMAIL AND EFILES

      This Stipulation Regarding Format of Document Productions shall govern the parties in

the above-captioned case and all actions that are later consolidated with that case (collectively,

the "Litigation").

**I.    GENERAL PROVISIONS**

      A.    This Stipulation and Order will only govern the production of email and efiles

(collectively, "ESI"), and paper documents.

      B.    TIFFs:  All production images will be provided as single page Group IV TIFFs of

at least 300 dpi resolution.  Page size shall be 8.5 x 11 inches unless in the reasonable judgment

of the producing party, a particular item requires a different page size.  Each image will use the

Bates number of the first page of the document as its unique file name. Original document

orientation should be maintained (i.e., portrait to portrait and landscape to landscape).

C.    Text Files: Each paper document or ESI item produced under this order shall be accompanied by a text file as set out below. All text files shall be provided as a single text file for each item, not one text file per page. Each text file shall be named to use the bates number of the first page of the corresponding production item.

    i.    OCR: Paper documents will be accompanied by an OCR file. The parties will endeavor to generate accurate OCR and will utilize quality OCR processes and technology. The parties acknowledge, however, that due to poor quality of the originals, not all documents lend themselves to the generation of accurate OCR. OCR text files should indicate page breaks where possible.

    ii.    ESI: Emails and efiles will be accompanied by extracted text taken from the ESI item itself.

D.    Bates Numbering:

    i.    All images must be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant length (0- padded) across the entire production; (3) contain no special characters or embedded spaces; and (4) be sequential within a given document.

    ii.    If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production.

    iii.    The producing party will brand all TIFF images in the lower right-hand corner with its corresponding bates number, using a consistent font type

2

and size. The Bates number must not obscure any part of the underlying image. If the placement in the lower right-hand corner will result in obscuring the underlying image, the Bates number should be placed as near to that position as possible while preserving the underlying image.

E.  Parent-Child Relationships: Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved. For example, if a party is producing a hard copy printout of an e-mail with its attachments, the attachments should be processed in order behind the e-mail.

F.  Color: Documents or ESI containing color need not be produced initially in color. However, if an original document or ESI item contains color markings and it is necessary to see those markings in their original color to understand the meaning or content of the document, then the receiving party may, in good faith, request that the document or ESI item be produced in its original colors, and such a request will not be unreasonably denied by the producing party. The production of documents and/or ESI in color shall be made in TIFF format or in an alternative format, such as single page JPEG format, that provides sufficient quality for the review of these documents and/or ESI. All requirements for productions stated in this Stipulation and Order regarding productions in TIFF format would apply to any productions of documents and/or ESI in color made in such an alternative format.

G.  Confidentiality Designations: If a particular paper document or ESI item has a confidentiality designation, the designation shall be shown both on the face of all TIFFs pertaining to such item/document, and in the appropriate data field in the load file.

H.  Load Files: All production items will be provided with a delimited data file. Acceptable formats for the load file are .log, .opt, .dii .lfp, .txt, .dat, or .csv, as detailed in

3

Appendix 1. Each party will designate its preferred load file format. The load file must reference each TIFF in the corresponding production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load files in the production. Each deliverable volume should limit directory contents to approximately 1000 files per folder.

      I.      Each party agrees to designate an ESI Liaison: Each ESI Liaison will be prepared to participate in the resolution of ESI discovery issues; know the party's ESI discovery efforts; and have access to those who are familiar with the party's electronic systems and capabilities in order to, as appropriate, answer relevant questions. Each party shall designate its ESI Liaison within 10 days after entry of this stipulation and order. Any party is free to change their designated ESI Liaison by providing written notice to the other parties.

**II.    PRODUCTION OF PAPER DOCUMENTS**

      A.    Coding Fields: The following information shall be produced in the load file accompanying production of paper documents: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) PgCount, (f) Custodian, (g) TextPath (relative path to the document level text file specified in Paragraph I.C above), (h) Confidentiality, and (i) Redacted (Y/N).

      B.    Unitization of Paper Documents: Paper documents should be logically unitized for production. Therefore, when scanning paper documents for production, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records.

      C.    File/Binder Structures:

           i.  Unitization: Where the documents were organized into groups, such as folders, clipped bundles and binders, this structure shall be maintained and

4

provided in the load file. The relationship among the documents in a folder or other grouping should be reflected in proper coding of the beginning and ending document and attachment fields. The parties will make their best efforts to unitize documents correctly.

    ii.  Identification: Where a document, or a document group-- such as folder, clipped bundle, or binder-- has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

**III.**   **CUSTODIAN IDENTIFICATION**: The parties will utilize best efforts to ensure that paper records for a particular custodian, which are included in a single production, are produced in consecutive Bates stamp order. The parties will identify which documents in a production are scanned paper documents either in the cover letter accompanying the production or in a coding field titled "Paper (Y/N)."

**IV.**   **PRODUCTION OF ELECTRONICALLY STORED INFORMATION**

    A.  System Files: ESI productions may be de-nisted using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology. Other file types may be added to the list of excluded files by agreement of the parties.

    B.  Metadata Fields and Processing:

        i.  ESI items shall be processed in a manner that preserves their existing time, date and time-zone metadata.

ii.   Auto date/time stamps: ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

iii.   Except as otherwise set forth in paragraph IV.B.v, *infra*, ESI files shall be produced with at least each of the data fields set forth in Appendix 2 that can be extracted from a document.

iv.   The parties are not obligated to manually populate any of the fields in Appendix 2 if such fields cannot be extracted from the document using an automated process, with the exception of the following fields: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach,; (e) Custodian, (f) Confidentiality, (g) Redacted (Y/N), (h) AttachCount, (i) AttachName, (j) PGCount, and (k) NativeLink fields, which should be populated regardless of whether the fields can be populated pursuant to an automated process.

v.   With respect to the italicized fields in Appendix 2, a producing party need produce only those fields that it can provide (or can provide without additional cost) if it (a) provides the receiving party or parties with a good faith, written representation describing the fields it cannot provide or cannot provide without additional cost, and (b) agrees not to use any of the requested fields that it did not produce. Defendants have italicized in Appendix 2 the metadata fields that they currently anticipate may prove problematic for at least some Defendants. The parties will meet and confer in good faith to the extent that additional issues arise.

6

C.    Production of Native Items:  The parties agree that ESI shall be produced as TIFFs with an accompanying load file, which will contain, among other data points, the ESI data points listed in Appendix 2 hereto.  The exception to this rule shall be PowerPoint type presentation decks, Excel type spreadsheets, and audio/visual files such as voice and video recordings, for which the native items shall be produced in addition to the TIFF of the native item (or a single-page TIFF slipsheet indicating that a native item was produced) and a load file. The load file shall include a link to each native item.  Prior to processing non-standard native files for production, the producing party shall disclose the file type to, and meet and confer with, the receiving party on a reasonably useable production format.

D.    Requests for Other Native Files:  Other than as specifically set forth above, a producing party need not produce documents in native format. If a party would like a particular document produced in native format, and this order does not require the production of that document in its native format, the party making such a request shall bear the burden of showing that good cause exists for the document to be produced in its native format. The requesting party will provide a specific Bates range for documents it wishes to be produced in native format. Any native files that are produced should be produced with a link in the NativeLink field, along with all extracted text and applicable metadata fields set forth in Appendix 2.

E.    Redaction:

    i.    The parties agree that where ESI items need to be redacted, they shall be produced solely in TIFF with each redaction clearly indicated.  Any unaffected data fields specified in Appendix 2 shall be provided.  For example, if attorney-client privilege requires that the BCC field of a document needs to be redacted, all other available data fields specified in

7

Appendix 2 shall be provided and the redacted metadata fields will be clearly indicated.

ii. If the items redacted and partially withheld from production are PowerPoint type presentation decks or Excel type spreadsheets as addressed in paragraph III.C, *supra*, and the native items are withheld, the TIFFs provided shall be created so as to include such unprivileged hidden fields and other information which does not ordinarily print out. For PowerPoint type presentation decks, this shall include, but is not limited to, any speaker notes. For Excel type spreadsheets, this shall include, but is not limited to, formulas, annotations, notes. The producing party shall also make reasonable efforts to ensure that any spreadsheets produced only as TIFF images are formatted so as to be legible. For example, column widths should be formatted so that the numbers in the column will display rather than "##########."

iii. If the items redacted and partially withheld from production are audio/visual files, the producing party shall provide the unprivileged portions of the content. If the content is a voice recording, the parties shall meet and confer to discuss the appropriate manner for the producing party to produce the unprivileged portion of the content.

F. Exception Logs: ESI that cannot be reviewed, produced and/or imaged because of technical issues should be identified as exception files and included on a log that lists the file name, custodian, and reason for exception: for example, corruption, unavailable password protection, proprietary software, or other

8

technical issues. The producing party shall provide a copy of this log to the receiving party at least every 2 months, and shall provide a final copy of the log upon completion of document production. If the receiving party requests production of any files listed on the exception log, the parties will meet and confer on a reasonable and cost-effective means for attempting to provide the requested files.

G.  De-duplication:

    i.  The producing party need only produce a single copy of a particular item, and may de-duplicate across the population of records.

    ii.  Duplicates shall be identified by industry standard MD5 or SHA-1 hash value only. Any other methodology for identification of duplicates must be discussed with the receiving party and approved in writing before implementation.

    iii.  For each item removed, the producing party will provide a data field identifying the custodian from whose files the item was removed and the file's original file path.[1]

H.  Other Methods to Streamline Discovery: The parties agree to meet and confer in good faith about any other technology or process that a producing party proposes to use to streamline the document production requested by a receiving party in this case (e.g., email threading, near de-duplication, privilege filter to automatically log presumptively privileged

---

[1] This information (along with the corresponding MD5 or SHA-1 hash values) will be provided by the producing party in spreadsheet form within one month of making an initial production of ESI. Thereafter, the producing party shall produce spreadsheets for subsequent productions containing this information approximately every two months, as well as once after the completion of document production. Upon a good faith showing of need, e.g., due to a document production in advance of an upcoming deposition, a receiving party can request that the producing party produce a de-duplication spreadsheet on an expedited basis and such a request shall not be unreasonably denied.

documents, any advanced analytic (i.e., non-Boolean) automated "filtering" or "culling" application to identify items which are potentially responsive or which are to be excluded from its production). Following the disclosure of such technology or process by the producing party to the receiving party, the parties shall attempt to resolve any objections to the use of such technology or process before seeking relief from the Court.

## V.    CLAIMS OF PRIVILEGE

A.    In accordance with Federal Rule of Evidence 502, the parties hereby stipulate, and the Court orders that no production made pursuant to this order shall result in a waiver of the attorney-client privilege or work product doctrine, ("privileged material").

B.    If any privileged material is inadvertently produced in this matter, the party may claim it back by requesting return in writing, and providing the receiving party with a declaration sworn under penalty of perjury stating that the production was inadvertent. Upon receipt of such declaration, the receiving party shall return the items identified and retrieve and destroy any copies which were made.

## VI.    MISCELLANEOUS PROVISIONS

A.    Objections Preserved: Nothing in this protocol shall be interpreted to require disclosure of either irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Except as provided expressly herein, the parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of documents and ESI.

B.    Modifications: Any practice or procedure set forth herein may be varied by agreement of the parties, confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical production of documents or ESI.

10

C.      Limited 28 U.S.C. § 1920 Waiver:  Defendants waive any claim against Plaintiffs

under 28 U.S.C. § 1920 for the reimbursement of any and all costs relating to the production,

storage, and maintenance of ESI in TIFF format only to the extent that those TIFF-related costs

exceed the corresponding costs Defendants would have incurred had Defendants produced the

same ESI in native format.  Defendants expressly retain any and all other claims against

Plaintiffs for reimbursement of all other costs provided for by law or as the Court deems just

and proper.  By way of example only, Defendants retain the right to seek costs under 28 U.S.C.

§ 1920 related to the exemplification of documents for depositions, hearings or trial, as these

costs would be incurred even if such documents were produced in native format.  Nothing

herein constitutes an acknowledgement (implicit or otherwise) by Plaintiffs that ESI-related

costs are taxable under 28 U.S.C. § 1920.  The limited waiver under 28 U.S.C. § 1920 set forth

in this paragraph does not cover, and the parties have reached no understanding on, the

treatment of costs stemming from the production, formatting, structuring, or storage of

documents or data produced in a format other than a TIFF based one.

Dated: October 21, 2011                          Respectfully submitted,


By: ___/s/ Steven A. Kanner_____        By: ___/s/ Nathan P. Eimer_____

Michael J. Freed                             Nathan P. Eimer
Steven A. Kanner                             EIMER STAHL KLEVORN & SOLBERG
Douglas A. Millen                            LLP
FREED KANNER LONDON & MILLEN                 224 South Michigan Avenue, Suite 1100
LLC                                          Chicago, IL 60604-2516
2201 Waukegan Road, Suite 130                (312) 660-7600
Bannockburn, IL 60015                        neimer@eimerstahl.com
(224) 635-4500
mfreed@fklmlaw.com
skanner@fklmlaw.com
dmillen@fklmlaw.com

11

Daniel J. Mogin
THE MOGIN LAW FIRM, P.C.
707 Broadway, Suite 1000
San Diego, CA 92101
(619) 687-6611
dmogin@moginlaw.com

INTERIM CO-LEAD CLASS COUNSEL

George A. Nicoud III
Austin V. Schwing
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105-2933
(415) 393-8200
tnicoud@gibsondunn.com
aschwing@gibsondunn.com

COUNSEL FOR DEFENDANT
INTERNATIONAL PAPER COMPANY

By: ___ /s/ Douglas J. Kurtenbach ___

Douglas J. Kurtenbach, P.C.
Daniel E. Laytin
Barack S. Echols
Leonid Feller
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000
douglas.kurtenbach@kirkland.com
daniel.laytin@kirkland.com
barack.echols@kirkland.com
leonid.feller@kirkland.com

COUNSEL FOR DEFENDANT
PACKAGING CORPORATION OF
AMERICA

By: ___ /s/ R. Mark McCareins ___

R. Mark McCareins
Michael P. Mayer
James F. Herbison
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600
rmccareins@winston.com
mmayer@winston.com
jherbison@winston.com

COUNSEL FOR DEFENDANT ROCKTENN
CP, LLC

By: ___ /s/ Stephen R. Neuwirth ___

Stephen R. Neuwirth
Sami H. Rashid
Kyle R. Taylor
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
stephenneuwirth@quinnemanuel.com
samirashid@quinnemanuel.com

By: ___ /s/ Scott M. Mendel ___

Scott M. Mendel
John E. Susoreny
Lauren N. Norris
K&L GATES LLP
70 W. MADISON ST.
SUITE 3100
CHICAGO, IL 60602
(312) 372-1121
scott.mendel@klgates.com
john.susoreny@klgates.com

12

kyletaylor@quinnemanuel.com

James R. Figliulo
Stephanie D. Jones
FIGLIULO & SILVERMAN, P.C.
10 South LaSalle Street, Suite 3600
Chicago, IL 60603
(312) 251-4600
jfigliulo@fslegal.com
sjones@fslegal.com

COUNSEL FOR DEFENDANT GEORGIA-
PACIFIC LLC


By: ___/s/ Andrew S. Marovitz_____

Andrew S. Marovitz
Britt M. Miller
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600
amarovitz@mayerbrown.com
bmiller@mayerbrown.com

COUNSEL FOR DEFENDANT TEMPLE-
INLAND INC.


**IT IS SO STIPULATED.**

DATED: October 25, 2011

lauren.norris@klgates.com

COUNSEL FOR DEFENDANTS
CASCADES, INC. AND NORAMPAC
HOLDING U.S. INC.


By: ___/s/ David Marx Jr._____

David Marx Jr.
Jennifer S. Diver
McDERMOTT WILL & EMERY LLP
227 W. Monroe Street
Chicago, IL 60606
(312) 372-2000
dmarx@mwe.com
jdiver@mwe.com

COUNSEL FOR DEFENDANT
WEYERHAEUSER COMPANY


_____
Hon. Milton I. Shadur
UNITED STATES DISTRICT JUDGE

13

1

# Appendix 1: File Formats

### Image Load Files

- The name of the image load file should mirror the name of the delivery volume, and should have the appropriate extension (e.g., ABC001.LFP).

- The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.).

- There should be one row in the load file per TIFF image.

- Every image in the delivery volume should be contained in the image load file.

- The image key should be named the same as the Bates number of the page.

- Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.), *i.e.*, a separate volume should be created for each piece of media delivered.

- Files that are the first page of a logical document should include a "D" where appropriate. Files that are the first page of an attachment to an e-mail should include a "C" where appropriate. Subsequent pages of all documents (regular document, e-mail, or attachment) should include a blank in the appropriate position.

```
IM,VN00000001,D,0,@29502601;295026001\0000;VN00000001.TIF;2
IM,VN00000002, ,0,@29502601;295026001\0000;VN00000002.TIF;2
IM,VN00000003, ,0,@29502601;295026001\0000;VN00000003.TIF;2
IM,VN00000004, ,0,@29502601;295026001\0000;VN00000004.TIF;2
IM,VN00000005,D,0,@29502601;295026001\0000;VN00000005.TIF;2
IM,VN00000006, ,0,@29502601;295026001\0000;VN00000006.TIF;2
IM,VN00000007, ,0,@29502601;295026001\0000;VN00000007.TIF;2
IM,VN00000008, ,0,@29502601;295026001\0000;VN00000008.TIF;2
IM,VN00000009,D,0,@29502601;295026001\0000;VN00000009.TIF;2
IM,VN00000010, ,0,@29502601;295026001\0000;VN00000010.TIF;2
```

Opticon Delimited File:

```
MSC000001,MSC001,D:\IMAGES\001\MSC000001.TIF,Y,,,3
MSC000002,MSC001,D:\IMAGES\001\MSC000002.TIF,Y,,,,
MSC000003,MSC001,D:\IMAGES\001\MSC000003.TIF,Y,,,,
MSC000004,MSC001,D:\IMAGES\001\MSC000004.TIF,Y,,,2
MSC000005,MSC001,D:\IMAGES\001\MSC000005.TIF,Y,,,,
```

Summation DII File:

```
@C HASIMAGE YES
@T EPRG036023 2
@DD.\FILES\PRODUCTION\CD0004\VOL0011\Images
EPRG036023.tif
EPRG036024.tif
```

### Concordance Delimited Files:

```
þBegDocþþEndDocþþBegAttachþþEndAttachþþPgCountþþCustodianþ
```

14

- The data load file should use standard Concordance delimiters:

  - Comma - ¶ (ASCII 20);

  - Quote - þ (ASCII 254);

  - Newline - ® (ASCII174).

- The first record should contain the field names in the order of the data.

- All date fields should be produced in mm/dd/yyyy format.

- Use carriage-return line-feed to indicate the start of the next record.

- Load files should not span across media (e.g., CDs, DVDs, Hard Drives, etc.); a separate volume should be created for each piece of media delivered.

- The name of the data load file should mirror the name of the delivery volume, and should have a .DAT extension (i.e., ABC001.DAT).

- The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.).

- If Foreign Language / Unicode text exists, DAT file shall be in appropriate UTF-8 or UTF-16 format.

**OCR / Extracted Text Files**

- OCR or Extracted Text files shall be provided in a separate \OCR\ directory containing Document level text files

- If Foreign Language / Unicode text exists, TEXT files shall be in appropriate UTF-8 or UTF-16 format

15

## Appendix 2: ESI Metadata and Coding Fields

| Field Name[2] | Populated For (Email, Edoc, Calendar, Contact or All) | Field Description |
|---|---|---|
| BegBates | All | Control Numbers. |
| EndBates | All | Control Numbers. |
| BegAttach | All | Control Numbers (First production bates number of the first document of the family). |
| EndAttach | All | Control Numbers (Last production bates number of the last document of the family). |
| PgCount | All | Page Count. |
| Custodian | All | Custodian name (ex. John Doe). |
| Size | All | Size (in bytes) of the original document. |
| LogicalPath | All | The directory structure of the original file(s). Any container name is included in the path. |
| Fingerprint | All | The MD5 or SHA-1 hash value. |
| NativeFile | All | Native File Link. |
| EmailSubject | Email | Subject line of email. |
| DateSent | Email | Date email was sent. |
| DateMod | Email, Edoc | Date the document was modified. |
| TimeSent | Email | Time email was sent. |
| ReceiveTime | Email | Time email was received. |
| To | Email | All recipients that were included on the "To" line of the email. |
| From | Email | The name and email address of the sender of the email. |
| CC | Email | All recipients that were included on the "CC" line of the email. |
| BCC | Email | All recipients that were included on the "BCC" line of the email. |
| AttachmentCount | Email | Number of attached documents. |
| Attach | Email | The file name(s) of the attached documents. |
| Importance Ranking | Email | Level of importance/sensitivity of messages. |
| Follow- Up Flags | Email | Tracks responses to messages that were sent and follow up on messages that were received. |
| Status as READ or UNREAD | Email | Whether or not a message was READ or UNREAD. |

---

[2] Field names can vary from system to system and even between different versions of systems. Thus, parties are to be guided by these Field Names and Descriptions when identifying the metadata fields to be produced for a given document pursuant to this stipulation.

16

| Field Name[2] | Populated For (Email, Edoc, Calendar, Contact or All) | Field Description |
|---|---|---|
| *GUID/$Message ID* | Email | The unique Email message identifier |
| *ID of Original Message REPLIED to or FORWARDED* | Email | The unique Email message identifier of the previous message in the thread (the message that was replied to or forwarded). |
| *Agent ID* | Email | If the item was created by someone on behalf of the email box owner, ID of the agent who created/sent the item. |
| DateCreated | Edoc | Date the document was created. |
| FileName | Email, Edoc | File name of the edoc or email. |
| Title | Edoc | Any value populated in the Title field of the document properties. |
| Subject | Edoc | Any value populated in the Subject field of the document properties. |
| Author | Edoc | Any value populated in the Author field of the document properties. |
| DocExt | All | File extension of the document. |
| TextPath | All | Relative path to the document level text file specified in Paragraph I.C of this ESI Stipulation and Order. |
| Redacted | All | "X," "Y," "Yes," "True," are all acceptable indicators that the document is redacted. Otherwise, blank. |
| Confidentiality | All | Indicates if document has been designated as "Confidential" or "Highly Confidential" under the Protective Order. |
| MD5 | Email, Edoc | MD5 or SHA-1 hash value of the document |
| *Date of Creation* | Contact | Date the contact entry was created or sent. |
| *Last Modified Date* | Contact | Date the contact entry was last modified. |
| *Name Fields* | Contact | All names associated with contact entry (such as first, last, middle, nicknames, prefix, suffix, etc.) |
| *Email Aliases* | Contact | For example, the name or reference that will display in the email address lines in place of the actual email address |
| *Phone Numbers* | Contact | All phone numbers associated with the contact entry |
| *Addresses* | Contact | All physical/mailing addresses associated with the contact entry |
| *URL addresses* | Contact | All URL addresses associated with the contact entry |
| *Notes/Journal Field* | Contact | All free text entered by user that is associated with and reflected in contact entry |
| *Other Contacts* | Contact | Identification of other contact entries associated with and reflected in the contact entry, such as contact |

| Field Name[2] | Populated For (Email, Edoc, Calendar, Contact or All) | Field Description |
|---|---|---|
| | | entry's assistant or manager |
| *Contact Tracking* | Contact | Track contacts made with the person or entity shown in the contact entry, such as date and/or time and type of contact. |
| *Importance Ranking* | Contact | Level of importance/sensitivity of the contact entry |
| *Follow- Up Flags* | Contact | Tracks responses to contact entries that were sent and follow up on contact entries that were received. |
| *Categories/ Groups* | Contact | Specific fields designed to sort, filter or classify the contact entry |
| *Date of Creation* | Calendar | The date the calendar entry was created or sent |
| *Last Modified Date* | Calendar | Date the contact entry was last modified. |
| Originator / Author | Calendar | The author of the calendar entry or the person who sent the calendar entry. |
| Recipients | Calendar | The persons that the calendar entry was sent to. |
| Subject / Title field(s) | Calendar | The subject or titles for the calendar entry. |
| *Other fields associated with the date, time and place of the calendar entry* | Calendar | For example, address and room designations for physical location meetings; dial-in information or web addresses for phone conferences and virtual meetings. |
| *Notes/Journal Field* | Calendar | All free text entered by user that is reflected in the calendar entry |
| *Importance Ranking* | Calendar | Level of importance/sensitivity of the calendar entry |
| *Follow- Up Flags* | Calendar | Tracks responses to contact entries that were sent and follow up on contact entries that were received. |
| *Categories/ Groups* | Calendar | Specific fields designed to sort, filter or classify calendar entries |
| *Response Category* | Calendar | The response to a calendar or meeting invitation (such as tentative or accepted) |

18

**Exhibit 13**

**Sami Rashid**

| | |
|---|---|
| **From:** | Dan Mogin [Dmogin@moginlaw.com] |
| **Sent:** | Tuesday, May 31, 2011 5:11 PM |
| **To:** | Dan Mogin; 'Nicoud, Trey' |
| **Cc:** | 'Michael Freed'; 'Steve Kanner' |
| **Subject:** | RE: Containerboard |

Trey:

Following up on our communications regarding search terms, ESI protocols and the production of electronic documents and data in response to plaintiffs' document requests, etc. , it is obviously in all parties' interests to minimize over-production and avoid repetitive searches. To accomplish that and to properly evaluate defendants' search terms, plaintiffs request that defendants provide the following information:

   a) a general description of the concept-clustering or other analytics employed by the application(s) used to conduct the searches,
   b) an identification of and other pertinent information about those applications and
   c) information describing any sampling and testing to ensure that the searches are accurate.

Please let me know if you have any questions, my apologies if this is a redundant request.

Best regards,

Dan

---

**From:** Dan Mogin
**Sent:** Tuesday, May 24, 2011 3:17 PM
**To:** 'Nicoud, Trey'
**Cc:** Michael Freed; Steve Kanner
**Subject:** RE: Containerboard

Trey: This sounds workable.

---

**From:** Nicoud, Trey [mailto:TNicoud@gibsondunn.com]
**Sent:** Tuesday, May 24, 2011 2:38 PM
**To:** Dan Mogin
**Cc:** Michael Freed; Steve Kanner
**Subject:** RE: Containerboard

Dan,

As regards the data fields and data dictionary referenced in your email below, all defendants are working to gather information that would facilitate productive discussions about ESI protocols and the production of data in response to a number of plaintiffs' document requests. Also, I now realize that the 21 days the parties agreed to falls on Memorial Day. Defendants' written responses to the document requests are due one week later, on Thursday, June 6. May I suggest that we shift our discussion of ESI protocols and search terms back to either June 6th or a date shortly thereafter? Particularly with respect to the search terms discussion, I think our discussions will be much more productive if you have had an opportunity to review the written responses.

Regards, Trey

**From:** Dan Mogin [mailto:Dmogin@moginlaw.com]
**Sent:** Wednesday, May 18, 2011 2:55 PM
**To:** Nicoud, Trey; Michael Freed; Steve Kanner
**Subject:** RE: Containerboard

Thank you.

**From:** Nicoud, Trey [mailto:TNicoud@gibsondunn.com]
**Sent:** Wednesday, May 18, 2011 2:55 PM
**To:** Dan Mogin; Michael Freed; Steve Kanner
**Subject:** RE: Containerboard

Dan, I didn't want to delay getting a draft order to you before leaving the office early on Monday.  GP has approved the draft.  Defendants are not contemplating that there be multiple protective orders.

As regards the data fields and data dictionary, let me confer with the other defendants' counsel and I will get back to you.

Regards, Trey

**From:** Dan Mogin [mailto:Dmogin@moginlaw.com]
**Sent:** Tuesday, May 17, 2011 7:58 PM
**To:** Nicoud, Trey; Michael Freed; Steve Kanner
**Subject:** RE: Containerboard

Trey:

We will review the proposed order but do not understand the comment that it is from "Defendants other than Georgia-Pacific LLC." GP attended the meeting and was a party to the agreement to respond to the proposed protective order within 7 days. Obviously we cannot burden the court and other parties with a separate order for GP. Please explain or have GP do so.

As to item 3 of my letter of May 10, 2011, regarding lists of data fields for ESI and a data dictionary,  we understood that defendants had agreed to provide this information. Moreover, we will need these items in order to make the discussion of items 1 (ESI protocol) and 2 (search terms) meaningful. In fact, item 3 represents information that had been promised some time ago in connection with the individual meet and confers.


Dan Mogin
dmogin@moginlaw.com
The Mogin Law Firm, P.C.
(V) 619-687-6611
(F) 619-687-6610

*Please note our new address, as of August 1, 2010:*
707 Broadway, Suite 1000
San Diego, California 92101

This message is sent by a law firm and may contain information that is privileged or
confidential. No tax advice is included.  If you received this transmission in error, please

notify the sender by reply e-mail and delete the message and any attachments. Any unauthorized use is strictly prohibited.

---

**From:** Nicoud, Trey [mailto:TNicoud@gibsondunn.com]
**Sent:** Monday, May 16, 2011 3:01 PM
**To:** Michael Freed; Steve Kanner; Dan Mogin
**Subject:** Containerboard

Dan, Mike, and Steve:

Consistent with the agreement we made last Monday, Defendants other than Georgia-Pacific LLC attach for your consideration a proposed protective order, which we have tried to align as much as possible with the draft order you provided to us.

We are continuing to work towards providing you within 21 days from last Monday items 1 and 2 in Dan Mogin's letter of May 10, 2011. We did not understand items 3 and 4 to be part of your proposed agreement, and thus did not agree to provide those items within 21 days. We are open, however, to further discussions on these items.

We look forward to continuing to work cooperatively to minimize unnecessary burdens and make the discovery process more efficient for all parties.

Sincerely yours, Trey
**Trey Nicoud**

### GIBSON DUNN

Gibson, Dunn & Crutcher LLP
555 Mission Street, San Francisco, CA 94105-2933
Tel +1 415.393.8308 • Fax +1 415.374.8473
TNicoud@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

**Exhibit 14**

**Sami Rashid**

---

| | |
|---|---|
| **From:** | Dan Mogin [Dmogin@moginlaw.com] |
| **Sent:** | Monday, August 01, 2011 7:00 PM |
| **To:** | 'Nicoud, Trey' |
| **Cc:** | 'skanner@fklmlaw.com'; 'mfreed@fklmlaw.com' |
| **Subject:** | RE: CB Products: Discovery |

Trey: Still nothing from Sami or anyone else regarding a list of search terms or a data dictionary. It's been since May. Please forward this information to us or provide a firm date. FYI, I have also asked Doug Millen to communicate with Sami about this.

---

**From:** Nicoud, Trey [mailto:TNicoud@gibsondunn.com]
**Sent:** Monday, June 27, 2011 7:20 PM
**To:** Dan Mogin
**Cc:** 'skanner@fklmlaw.com'; 'mfreed@fklmlaw.com'
**Subject:** RE: CB Products: Discovery

Dan, I'm jammed during the first part of the week, but should be able to get back to Mike and Steve on the protective order later this week.  I think we're very close.

On the subject of the meet and confer about defendants' responses to plaintiffs' requests for production, please contact Barack Echols at Kirkland & Ellis to set up a time to talk.  A subset of the defense group will also participate, but Barack has agreed to be the point person.

On the subject of ESI protocols and your related questions about search terms, please contact Sami Rashid at Quinn Emanuel to set up a time to talk.  Again, a subset of the defense group will participate, but Sami has agreed to be the point person.

Thanks, Trey

---

**From:** Dan Mogin [mailto:Dmogin@moginlaw.com]
**Sent:** Thursday, June 23, 2011 7:42 PM
**To:** Nicoud, Trey
**Cc:** 'skanner@fklmlaw.com'; 'mfreed@fklmlaw.com'
**Subject:** Re: CB Products: Discovery

No problem. I just wanted you to have the full laundry list. Call when you have time.

---

**From**: Nicoud, Trey <TNicoud@gibsondunn.com>
**To**: Dan Mogin
**Cc**: skanner@fklmlaw.com <skanner@fklmlaw.com>; mfreed@fklmlaw.com <mfreed@fklmlaw.com>
**Sent**: Thu Jun 23 19:22:11 2011
**Subject**: Re: CB Products: Discovery

Hi Dan, I got your message, but have family in town and had to leave early. I have a meeting out of the office in the morning, but will call when I get in.

-------------------------
Sent from my BlackBerry Wireless Handheld

1

**From**: Dan Mogin [mailto:Dmogin@moginlaw.com]
**Sent**: Thursday, June 23, 2011 06:44 PM
**To**: Nicoud, Trey
**Cc**: Steven A. Kanner <skanner@fklmlaw.com>; 'Michael J. Freed' <mfreed@fklmlaw.com>
**Subject**: CB Products: Discovery

Trey:

I left you a voicemail this afternoon to follow up on our conversation last Thursday, regarding the status of defendants' response to the ESI protocol. I also inquired about meeting-and-conferring on two of the issues from defendants' responses to requests for production.

I also want to follow up on our prior request for information regarding various aspects of the search process including analytics and sampling (See attached from 5/31/2011) and the data fields and dictionary (See attached from 5/24/2011).

Please give me a call when you get a chance.

Regards,

Dan Mogin
dmogin@moginlaw.com
The Mogin Law Firm, P.C.
(V) 619-687-6611
(F) 619-687-6610

*Please note our new address, as of August 1, 2010:*
707 Broadway, Suite 1000
San Diego, California 92101

This message is sent by a law firm and may contain information that is privileged or confidential. No tax advice is included. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. Any unauthorized use is strictly prohibited.

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

**Exhibit 15**

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7165**

WRITER'S INTERNET ADDRESS
**stephenneuwirth@quinnemanuel.com**

November 22, 2011

**VIA ELECTRONIC MAIL**
Michael J. Freed, Esq.
Steven A. Kanner, Esq.
Freed Kanner London & Millen LLC
2201 Waukegan Road
Suite 130
Bannockburn, Illinois 60015

Daniel J. Mogin
The Mogin Law Firm
707 Broadway, Suite 1000
San Diego, CA 92101

Re:    *Kleen Products LLC, et al. v. Packaging Corp. of America, et al.,* No. 1:10-Cv-05711

Dear Mike, Steve and Dan:

At the discovery meet and confer among Plaintiffs' and Defendants' counsel on November 16, we described the steps taken by Defendant Georgia-Pacific LLC ("Georgia Pacific") and other Defendants to develop and test the search terms being used by Defendants for identifying ESI responsive to Plaintiffs' document requests. At the conclusion of the meeting, you requested that we set forth in writing what we had described orally during the meeting. This letter is sent on behalf of all Defendants in response to that request.

Earlier this year, after receipt of Plaintiffs' document requests to Defendants, Georgia-Pacific retained two consulting firms – Counsel on Call ("COC") and KPMG – to assist it in developing and implementing appropriate steps to review, analyze, and produce non-privileged documents responsive to Plaintiffs' document requests. Both COC and KPMG, and the professionals from

**quinn emanuel urquhart & sullivan, llp**
LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois 60661 | TEL 312-705-7400 FAX 312-705-7401
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 (0) 20 7653-2000 FAX +44 (0) 20 7653-2100
TOKYO | Akasaka Twin Tower Main Bldg., 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81 (0) 3 5561-1711 FAX +81 (0) 3 5561-1712
MANNHEIM | Erzbergerstraße 5, 68165 Mannheim, Germany | TEL +49 (0) 621 43298-6000 FAX +49 (0) 621 43298-6100

those firms who have worked on this project, have broad experience and expertise bearing on this assignment. We understand from your comments during the meet and confer that Plaintiffs' counsel are familiar with KPMG's experience and prominence in this field.

**Preliminary Set of Search Terms:** As a preliminary step in the process, the consultants from COC and KPMG, in close coordination with Georgia-Pacific's in-house legal department and outside counsel from Quinn Emanuel ("QE"), devoted substantial time and effort to developing an initial search term list based on, among other things, (i) the subject matter of Plaintiffs' consolidated complaint; (ii) the subject matter of Plaintiffs' document requests and Defendants' objections thereto; (iii) consideration of industry- and company-specific language, terminology and abbreviations; and (iv) the expertise of the consultants.

As part of this process, QE reviewed and analyzed the RFPs to determine (1) which requests would be answered, in whole or in part, (2) which RFPs would be answered from a specific source not involving searching generally Georgia-Pacific's ESI, and (3) which RFPs would be answered by applying search terms to Georgia-Pacific's ESI. The other Defendants similarly considered these three factors with respect to the RFPs and their respective ESI, and provided input throughout the process described below.

**Creation of Sample Set of ESI:** For purposes of both developing and testing search terms, Georgia-Pacific and its consultants decided to undertake an early case assessment (ECA) process on a sample set of ESI. To develop that set, Georgia-Pacific first collected all of the existing ESI, including email, C and H drives, and network share drives, from the period January 1, 2004 through November 8, 2010, from the files of four Georgia-Pacific employees who had key roles related to decision-making on matters that are the subject of Plaintiffs' documents requests – specifically:

- Christian Fischer, Executive Vice President, Packaging: senior executive responsible for the containerboard and corrugated products businesses.

- Travis Ballard, Director of Planning and Operations Support, Containerboard: employee responsible for analyzing capacity, production and inventory data for decision-making and responsible for setting inventory and demand schedules for containerboard.

- Mollie Hilliard, formerly Director of Trades and Purchases: employee responsible for the buying and selling of linerboard, corrugated medium and containerboard to and from other manufacturers (also known as "trades").

- Scott Denton, Director, Planning and Analysis, Containerboard and Packaging: employee responsible for high-level pricing decisions.

In addition, the sample set of ESI included the email, C and H drives, and network share drives, from January 1, 2004 through November 8, 2010, of a "control custodian" – an employee named Rob Belanger – who is not from the group of company employees with decision-making roles related to the subject matter of the litigation.

Clearwell 6.1.15.0 was used to process the data for these five custodians, and a date filter was used to exclude documents outside the period January 1, 2004 through November 8, 2010. After application of the date filter and full processing with de-duplication, the ECA testing database contained over 94,000 documents (many of which had multiple pages).

**Run of Preliminary Search Terms:** COC and KPMG, in consultation with QE and in-house counsel at Georgia Pacific, then began a collaborative, iterative process of search term development, testing, refinement, and validation. The development and validation of the initial set of key search terms involved the following steps.

- The data set was reduced by culling clearly non-responsive junk materials, *e.g.*, by domain names such as wsj.com, espn.com, expedia.com, etc.

- QE developed high-level search concepts and initial search terms based on the factors set out above. These terms were then reviewed and supplemented by COC. KPMG created appropriate search term syntax and ran these initial terms against the data set.

- Post-culled documents were filtered with search terms and divided into two sets: (1) those containing positive search hits and (2) those negative for search hits. COC conducted a quasi-linear review of both the positive and null sets to test utility of search terms and to suggest refinements and alternative terms.

- The results were analyzed and discussed, resulting in the creation of a set of Phase I Validated Search Terms, which was shared with counsel for the other Defendants for input based on their knowledge of each Defendant's respective ESI. The input from the other Defendants was utilized in Phase 2.

- During Phase 2, COC used Clearwell content analytics, as discussed below, together with attorney judgment, to supplement, refine, and re-test the Phase 1 search terms and additional search terms.

- In addition, the consultants created (1) a *Combined Composite Set* of all positive hits and (2) a *Null Set*, *i.e.*, the data corpus less the Combined Composite Set. The purpose of the Null Set was to allow searching for false negatives, *i.e.*, documents that were responsive but were not captured by the search terms.

- Georgia-Pacific, in consultation with COC, sought to validate the Null Set to a 99% confidence level and a 5% margin of error, by the review and vetting of 660 randomly selected documents. The set validated with 27 marginally responsive documents, which discussed in minor detail certain individual sale transactions or manufacturing events, having been "missed" in the Null Set. COC also reviewed and vetted 400 randomly selected documents from the Combined Composite set, which produced 216 responsive and 184 non-responsive documents.

- Next, QE and COC began a process of rationalizing, or condensing, the search terms. This process included consultation with the other Defendants about the search terms and search term strings.

- This rationalization process, together with refinements agreed to among the Defendants, resulted in a new validated set of search terms.

**Use of Content Analytic Tools to Improve and Expand the Set of Search Terms:** As part of the search term validation process, and for purposes of improving the search terms generally, COC and KPMG utilized a number of features of the Clearwell e-discovery platform. The consultants advised Georgia-Pacific that Clearwell is among the best available programs for early case assessment. Among other features, COC used Clearwell's "topics classification" and "stemming" capabilities to enable the search term testing and refinement processes. Using proprietary linguistic algorithms, the Topics feature clusters documents based on linguistic similarity and then groups the documents according to topics. "Stemming" is used to capture all variations of words in which the stem is found, such as plurals or alternative verb forms. COC, Georgia-Pacific, KPMG, and QE relied on these technologies to assist in evaluating the effectiveness of the search terms in locating responsive documents.

COC, in coordination with KPMG, Georgia-Pacific in-house counsel and QE, applied the Topics Page content clustering tool to the "null sets" that resulted from application of the original search terms, and identified certain topics responsive to Plaintiffs' document requests that the original search terms had failed adequately to capture. COC also applied the Clearwell analytic tools to the set of documents that were "hit" by the original search terms. COC used the Topics Page tool to identify topics, and in particular industry-specific language and terminology, to add as search terms. They also applied the stemming feature to identify instances where stems in the original search terms were not ideally suited to identifying responsive information. Based on the results generated by the Clearwell analytic tools, COC, in ongoing coordination with KPMG, Georgia-Pacific in-house counsel and QE, revised and refined the set of search terms. Counsel on Call continued to use the Clearwell analytic tools throughout the process to revise and refine the search terms.

**Consultation with Other Defendants:** During July and early August 2011, Georgia-Pacific shared the search terms that resulted from the foregoing analytic processes with the other Defendants. Defendants then worked together to further improve the list of search terms, based on their knowledge of Defendants' documents and terminology.

**Search Terms Shared With the Plaintiffs:** After discussions with Plaintiffs on June 30, July 21, and July 25, Defendants shared their proposed set of search term strings with Plaintiffs on August 5, 2011. On September 15, 2011, Plaintiffs provided feedback in the form of a letter. While Plaintiffs' letter did not offer an alternative set of search terms, Defendants worked in good faith to extract from Plaintiffs' letter any potential search terms that had not been included in Defendants' proposed list. Over the course of the next month, Georgia-Pacific and its consultants added search terms suggested by Plaintiffs' letter. The words and categories that were selected, along with the search terms that were initially proposed to Plaintiffs, then underwent further development, refinement and testing. During this process, COC – in

4

coordination with KPMG, Georgia-Pacific in-house counsel and QE – also considered and tested additional search terms proposed by other Defendants. The result of this month-long process was a further refined set of search term strings.

**Final Testing and Validation:** COC then ran the full, revised set of search terms against the search term testing database. This generated a new set of "hits" and a new "null" set. The null set included approximately 72,000 documents. Counsel on Call reviewed a statistically significant, random sample of 660 documents to validate the effectiveness of the search terms in correctly identifying documents that are and are not responsive to Plaintiffs' document requests (subject to Defendants' objections). The 660 documents then were divided into four sets of 165 documents each, and those four sets were reviewed by two attorneys at COC, each reviewing two sets. The attorney reviews assessed whether each individual document was properly identified, through application of the search terms, as non-responsive to Plaintiffs' document requests. From the sample of 660 documents, a set of 131 was also given to QE to review, again to assess whether each of those 131 documents had properly been characterized as non-responsive.

Based on this validation process, COC determined with 99 percent confidence that the final set of search terms had no more than a 5 percent margin of error in identifying documents as not responsive to Plaintiffs' document requests. This result surpasses industry standards, including the 90 percent confidence level that COC typically views as sufficient for validating a search term set. We are not aware of another document review method, including manual review, that is reasonably likely to produce better results.

On October 20, we transmitted to Plaintiffs, on behalf of all Defendants, the list of search terms that had been validated in the foregoing process.

**Expected Review Corpus:** We advised you during the meeting that for the 17 custodians Georgia-Pacific has previously identified for Plaintiffs, approximately 97 gigabytes of ESI (approximately 3 million pages) have been collected. COC projects that the search terms and industry-standard de-duplication will yield approximately 128,000 documents – likely constituting more than 1 million pages – to be reviewed for production. As we reiterated at the meeting, each of the Defendants, including Georgia-Pacific, will also be producing other categories of ESI and hard copy documents without regard to custodian files, as well as transactional data for the time period beginning on January 1, 2003.

## Identification and Production of ESI by Plaintiffs

During the November 16 meeting, Defendants' counsel asked if you could identify any approaches that would be more effective and accurate than the process described above, and you did not identify any. You did acknowledge KPMG as a leading vendor in this field and indicated you were aware that Clearwell software includes analytic tools.

Defendants' counsel also asked if you could provide more details and explanation of the "content based analytics" – or "CBAA" – that you have suggested Defendants should employ. (This information had previously been requested in Jim McKeown's letter of November 8.) In

5

response, you indicated that you would prefer first to receive a written description of the steps, described orally during our November 16 meeting, that Defendants have taken to identify ESI responsive to Plaintiffs' document requests. This letter provides the written description you were seeking. Accordingly, we would reiterate our request that Plaintiffs specify with more detail the "CBAA" process that you are suggesting.

Finally, Defendants' counsel asked you to provide the names of the vendor(s), software program(s) and process(es) Plaintiffs are using to identify ESI responsive to Defendants' document requests to Plaintiffs, hoping that would provide further insights into the ESI process you are envisioning. You responded that Plaintiffs are in contact with a number of vendors, but you were not prepared to provide that information at the meeting. In this regard, we note that Doug Millen's November 10 letter stated that Plaintiffs were still interviewing vendors and determining what processes to utilize. We understand from this discussion that Plaintiffs may have not yet begun to identify – by search terms or other means – ESI responsive to Defendants' document requests. Please let us know what process Plaintiffs will be using.

* * *

The costly and time-consuming efforts undertaken by Georgia-Pacific, in coordination with the other Defendants, and described above involved a total of well over 900 hours of work by COC and KPMG. We understand that both COC and KPMG believe the process and its results readily meet, and likely exceed, e-discovery best practices.

We hope that this information you have requested in writing will further assist you in understanding the steps Defendants have taken to identify ESI responsive to Plaintiffs' document requests. Please let us know if you have any questions.

Very truly yours,

Stephen R. Neuwirth

SRN:ab

6