**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

KLEEN PRODUCTS LLC, et al.,
individually and on behalf of all those
similarly situated,

                Plaintiffs,

     v.

PACKAGING CORPORATION OF
AMERICA, et al.,

                Defendants.

Case No. 1:10-cv-05711

Hon. Milton I. Shadur

Hon. Nan R. Nolan

**DEFENDANTS' REPLY MEMORANDUM CONCERNING DISCOVERY ISSUES
TO BE ADDRESSED AT FEBRUARY 21, 2012 HEARING**

Plaintiffs' submission fails to rebut Defendants' previous showing that Plaintiffs have no factual or legal basis to challenge the sophisticated search term methodology that Defendants are using in this case.[1] Defendants already have tested, independently validated, and implemented a search term methodology that is wholly consistent with the case law around the nation and that more than satisfies the ESI production guidelines endorsed by the Seventh Circuit and the Sedona Conference. Ignoring Defendants' significant efforts and citing no case law supporting their position, Plaintiffs seek to have this Court engage in a theoretical discourse of the merits of what Plaintiffs call content-based advanced analytics ("CBAA"). Plaintiffs make no reference to the equivalent of more than one million pages of documents Defendants have already produced. Plaintiffs raise no challenge to the completeness of Defendants' ultimate productions. Instead, Plaintiffs ask this Court to order each of the Defendants – despite the substantial time, effort and expense already devoted to their search term methodology for identifying potentially responsive ESI – to go back to the drawing board. Putting aside the obvious delay and burden this would impose, Plaintiffs fail to provide any legal authority to support the unprecedented conclusion that search terms *per se* are an unacceptable methodology for locating potentially responsive ESI. Plaintiffs would have the Court now establish a new and radically different ESI standard for cases in this District.

---

[1]  At the February 9, 2012 status conference, this Court made clear that the primary purpose of the February 21 hearing is to provide the Court with particularized testimony – not "law review" or theoretical supposition as to what "might work", but rather testimony geared to the specifics of this case – to address whether Defendants' ESI searches meet the requirements of the Federal Rules. While there may be testimony regarding indexing, the bulk of the hearing will be devoted to this primary issue. Tertiary issues (e.g., whether the back-up tapes or archived servers of Defendants need be searched) are not generally susceptible to expert testimony; but more importantly, the resolution of those issues will require an evaluation of fact-based and individualized issues unique to each Defendant. As such, there are ongoing efforts between the parties to resolve these other issues. While these disputes may ultimately require court intervention, for purposes of the upcoming hearing and this reply brief, Defendants have confined themselves to the primary issue of ESI searches (and, briefly, the indexing issue).

In short, Plaintiffs fail to show that the sophisticated search protocol used by Defendants is inadequate or that CBAA – however Plaintiffs ultimately choose to define it – is the only permissible means of searching electronic documents for potential production in this case.

**I.      Defendants Have Developed and Implemented an Effective ESI Search Process That Satisfies Well-Established Criteria.**

Plaintiffs ask the Court to impose upon Defendants a vaguely described "CBAA" process that is unproven and has never been mandated by any court.  Defendants have undertaken a costly, time-consuming process consistent with what courts regularly endorse in commercial litigation.

Defendants' efforts to date flatly refute Plaintiffs' claim that "Defendants' refusal to cooperate in discovery is manifest."  (Pls.' Br. 2.)  Defendants have:

- produced the equivalent of over 1,000,000 pages of documents;

- sought and utilized Plaintiffs' input in the search term development process; and

- provided Plaintiffs with their respective lists of custodians, including senior executives and other knowledgeable employees, whose ESI would be searched for responsive documents.

Consistent with these efforts, it was *Defendants* that asked Judge Shadur this past December to convene a hearing to confirm the appropriateness of their methodology.

Similarly, Plaintiffs' claim that, in response to Plaintiffs' requests for Rule 30(b)(6) depositions, Defendants withheld "potentially important evidence" is spurious.  (Pls.' Br. 3.) Each Defendant provided to Plaintiffs a detailed letter in response to Plaintiffs' deposition notices.  *See* Exs. 16-22 to Defendants' Brief on Discovery Issues (Dkt. No. 288) ("Defs.' Feb. 6 Br.").  These comprehensive letters described in detail each Defendant's respective document preservation and collection efforts as well each Defendant's IT systems, applications, and processes.

Defendants' ESI production process, which sought Plaintiffs' input on search terms and involved collaboration with expert consultants, comfortably meets the guidelines for this Circuit and other courts around the country, as well as the standards that have been articulated by the Sedona Conference. This process resulted in a degree of accuracy (including random sample testing which showed that less than 5% of the documents in each Defendant's null set sample were potentially responsive) that meets or exceeds acceptable standards. Rather than acknowledge the strength of Defendants' results, Plaintiffs propose that this Court should establish a rule whereby one litigant may dictate that another must use an ESI-production method that has *never* been authorized by a court and *not* use a method that the courts *have* approved. Plaintiffs have failed to even explain the most basic details of this alleged "CBAA" protocol, including to:

- describe exactly what CBAA is or explain how it works;

- explain how the CBAA process would be implemented in this case and the additional burdens it would impose;

- give any reason that this case requires this new and unfamiliar process; or

- provide even a single case where CBAA was required by the court as a necessary means of locating potentially responsive electronic documents.

The Court should not order Defendants to start from scratch and undertake a novel procedure that Plaintiffs have not been able to show has been required by any court in any case, let alone a case like this one, where Defendants employed a tested and effective method.[2]

---

[2] Significantly, this is not a case where both sides seek direction from the Court as to the ESI methodology that will be utilized by both sides going forward. Rather, the purpose of the upcoming hearing is to determine whether the ESI methodology already utilized by Defendants is valid and effective. Plaintiffs' claim that they intend to use a CBAA approach is wholly irrelevant to this determination, as there is no requirement that both sides use the same ESI methodology. Plaintiffs' claim notwithstanding, Defendants requested the particulars of Plaintiffs' supposed CBAA approach on multiple occasions. Plaintiffs responded in early December 2011 by providing vague overviews and sales brochures (including from Defendant Georgia-Pacific's own consultant in this case, KPMG). Nor have

A.     **This is Not a Unique Case that Justifies a Departure from Established Search Term Methodology.**

Plaintiffs have provided no legitimate reason that this Court should deviate here from reliable, recognized, and established discovery practices.  Plaintiffs claim that "[a] CBAA search of documents collected by corporate or department function is the best and most practical method for locating responsive ESI in this case" (Pls.' Br. 6).[3]  But Plaintiffs cite no authority for this claim or their more general assertion that the standard, well-established Boolean keyword methodology is now suddenly insufficient.  (Pls.' Br. 6.)  Plaintiffs identify no salient feature of this case that justifies a seismic shift in discovery practices.

Defendants have engaged in a state-of-the-art process that involved the commitment of very substantial time, resources, and expense, the repeated collaboration of all Defendants, the hiring of multiple consultants, and the input of Plaintiffs themselves.  Yet Plaintiffs simply insist that this case mandates a venture into uncharted waters with a novel methodology.

Plaintiffs' assertion that CBAA methods "provide a richer, substantially more accurate return than can ever be achieved with a terms searching process" (Pls.' Br. 5) is not supported by any legal authority.  It disregards the authorities and federal court ESI policies that Defendants have cited (*see* Dkt. No. 267 and Defs.' Feb. 6 Br. 10-13).  Moreover, it is belied by the fact that Plaintiffs' counsel have been involved in several recent antitrust cases in which search terms have been used, including *In re Steel Antitrust Litig.* (N.D. Ill.) (Zagel, J.), *In re Chocolate Confectionary Antitrust Litig.* (M.D. Pa.), and *In re Aftermarket Filters Antitrust Litig.* (N.D. Ill.)

---

Plaintiffs, to date, made any production of ESI or confirmed to what extent they themselves have even begun to implement any ESI search process, using CBAA or otherwise.

[3]   Plaintiffs also claim that a CBAA search requires that documents be "collected by corporate or department function."  (Pls.' Br. 6.)  Incredibly, Plaintiffs simply claim that this broad, non-targeted search is necessary, but they ignore Defendants' prior written responses that none of them has the alleged company-wide "data warehouses" that Plaintiffs claim would permit such searches.

(Gettleman, J./Brown, J.). Plaintiffs make no attempt to show why search terms constitute an acceptable ESI search protocol in those cases, while this case purportedly requires an entirely new methodology.

**B.** **Defendants Have Developed, Tested, and Implemented an Effective and Well-Established Search Term Protocol.**

Defendants' efforts to date are not only consistent with the guidelines set out by the Seventh Circuit and the Sedona Conference, they exceed those guidelines. Plaintiffs fail to show how Defendants' process was "plainly inadequate" (Pls.' Br. 2) in light of the relevant guidelines, and they provide no credible basis for deviating from the governing standard. *See* Seventh Circuit Principles at Principle 2.05. As Judge Facciola has held, the party criticizing a responding party's search term methodology must present actual evidence that demonstrates how the methodology is insufficient, not simply the type of generic criticism that Plaintiffs levy here. *See U.S. v. O'Keefe*, 537 F. Supp. 2d 14, 24 (D.D.C. 2008).

Plaintiffs' selective quotation of Sedona Conference literature ignores portions of the same publication that explicitly endorse the practices that Defendants have employed. *The Sedona Conference Best Practices Commentary on the Use of Search & Information Retrieval Methods in E-Discovery*, 8 Sedona Conf. J. 189, 200 (2007) (quoting *In re Lorazepam & Clorazepate*, 300 F. Supp. 2d 43, 46 (D.D.C. 2004)) ("By far the most commonly used search methodology today is the use of 'keyword searches' . . . . The ability to perform keyword searches against large quantities of evidence has represented a significant advance in using automated technologies, as increasingly recognized by the courts."). The Sedona Conference has recognized that the type of protocol Defendants employed here is not only proper, but has in certain cases been held to be mandatory. *Id.* (citing *Zubulake v. UBS Warburg*, LLC, 229 F.R.D.

5

422 (S.D.N.Y. 2004)) ("Courts have not only accepted, but in some cases have ordered, the use of keyword searching to define discovery parameters and resolve discovery disputes.").

Plaintiffs' characterization of Defendants' search term protocol as a "crude short-cut used to avoid reviewing all potentially responsive documents in a party's possession" (Pls.' Br. 8) is inaccurate and completely fails to distinguish between the state-of-the-art protocol implemented by Defendants, and the type of "go fish" approach that has been criticized elsewhere.  (*See* Defs.' Feb. 6 Br. 11-12.)  Try as they may, Plaintiffs cannot plausibly lump Defendants' protocol in the latter camp.  Defendants implemented the very steps and safeguards that make search terms effective, such as the use of random and statistically significant sample sets for developing, testing, and validating the search terms; an iterative search term development process; and a leading software tool (Clearwell). Each Defendant conducted its own separate testing and validation, and the results were consistently robust.

Similarly, Plaintiffs' criticisms of individual Defendants are unsupported and inaccurate. For example, Plaintiffs claim that Mayer Brown, Temple-Inland's counsel, "has described the deficiencies and risks associated with using 'traditional keyword searches'" and favors CBAA. (Pls.' Br. 9.)  This claim is disingenuous because in the very same document, Mayer Brown (1) identifies ways to mitigate such risks with keyword searches, (2) identifies risks associated with concept-based searching, and (3) states, "[t]here is not yet much case law certifying non-Boolean search methods as acceptable."  Plaintiffs' criticism of Georgia-Pacific's ESI searching and validation process, which was largely followed by other Defendants, is also unfounded. Plaintiffs do not provide any specifics as to how the process was purportedly "riddled with errors and poor practices." (Pls.' Br. 10.).  Such vague generalities are inadequate. *See O'Keefe*, 537 F. Supp. 2d at 24.

In addition, Plaintiffs' criticism of Defendants for relying "as a group upon the testing and validation process conducted by Georgia Pacific and its consultants" (Pls.' Br. 10) ignores the independent testing and validation that each Defendant engaged in with respect to its own ESI production. In fact, Defendants have taken numerous measures to employ the kinds of safeguards recognized in cases Plaintiffs cite. *See, e.g., In re Seroquel Prods. Litig.,* 244 F.R.D. 650, 660 n.6, 662 (M.D. Fla. 2007) ("while key word searching is a recognized method to winnow relevant documents from large repositories . . . [c]ommon sense dictates that sampling and other quality assurance techniques must be employed to meet the requirements of completeness"). As Defendants have explained in detail to Plaintiffs, each Defendant separately and independently tested the results of the search term methodology on its own data. Moreover, the statistical results bear this out. After Georgia-Pacific had completed its testing, each other Defendant conducted its own testing and achieved a margin of error of no more than 3.9 percent. (*See* Defs.' Feb. 6 Br. 10.)

Given Defendants' detailed explanation and their inclusion of Plaintiffs in the process, Plaintiffs cannot plausibly claim that Defendants' process was "secretive." (Pls.' Br. 11.) Plaintiffs provided feedback (albeit of limited value) on the specific search terms Defendants had developed. Defendants extracted what they could from Plaintiffs' input and revised the search terms to incorporate Plaintiffs' input.

## C. Plaintiffs Propose an Unsupported and Untested Protocol in Place of Defendants' Well-Established and Tested Methodology.

Plaintiffs, by insisting on imposing an unproven, untested, and undefined CBAA approach, have engaged in a theoretical second-guessing of Defendants' efforts to date. While Plaintiffs claim that CBAA is the "best and most practical method for locating responsive ESI in this case," these assertions are not grounded in fact or law. (Pls.' Br. 5.) Plaintiffs claim that

"analytics" – a generic term that Plaintiffs fail to sufficiently define – have been available for years. While it is true that certain analytical tools have been available for some time, Defendants utilized the best of those analytical tools through the Clearwell platform. And the KPMG predictive coding features, for which Plaintiffs sent Defendants a brochure, only became commercially available in the fall of 2011, months after Defendants had already undertaken the methodology employed here. Plaintiffs cite no case in which a court ordered a party to use CBAA. Rather, Plaintiffs are attempting to change the rules of the game, and do so here after Defendants devoted substantial time, effort, and resources to the process.[4]

Defendants, as the responding parties, are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own ESI. Sedona Principles, 2d ed., Comment 6.a (2007) ("The producing party should determine the best and most reasonable way to locate and produce relevant information in discovery."). Plaintiffs assert that a CBAA search of documents collected by corporate or department function is preferable to a custodian-based search, as it "produces more initial materials and minimizes the likelihood of missing responsive materials." (Pls.' Br. 6.) But Plaintiffs provide no specific explanation here of why the custodians Defendants have identified are not reasonably likely to have the documents responsive to Plaintiffs' document requests. And simply collecting more ESI in terms of volume – regardless whether the material is responsive – is not the standard for whether a party's ESI collection and review efforts satisfy Rule 34. Indeed, the whole point of an ESI search process is to avoid the impracticable result of searching all or even most of a corporation's ESI.

---

[4] For example, International Paper has already devoted more than 15,000 hours of contract attorneys' time to reviewing its documents, Georgia-Pacific has already devoted more than 7,200 hours of contract attorneys' time to reviewing its documents, Weyerhaeuser has already devoted more than 3,200 hours of contract attorneys' time to reviewing its documents, and Temple-Inland has already devoted more than 5,000 hours of contract attorneys' time to reviewing its documents.

Collecting electronic documents for an entire department or function would result in significantly – if not exponentially – more cost to a responding party than collecting ESI from the individual relevant custodians. Moreover, Defendants here have not limited their efforts to a custodian-based search; they have also agreed to provide certain categories of ESI (including certain types of business reports and transactional data) without regard to custodians. At bottom, what Plaintiffs propose is overtly disproportionate.

Plaintiffs state that their expert, Dr. Lewis, will rely on studies that hypothesize about CBAA's effectiveness.[5] (Pls.' Br. 6.) These academic studies have no application here, as they are not controlling or even compelling authority, let alone proven reliable for Defendants' particulars. The Seventh Circuit and other courts expressly recognize the acceptability of keyword searches. *See* Seventh Circuit Principles at Principle 2.05. Plaintiffs focus on evolution of e-discovery search tools and ignore the processes already accepted by courts.

Plaintiffs do not cite a single case to support their claim that courts have realized that keyword searching is "not well suited to obtaining informal communications." (Pls.' Br. 9.) Instead of referring to case law, Plaintiffs cite a "forbes.com" article (that also does not cite a single case). This theoretical argument by Plaintiffs is not based on a review of the documents already produced. It also ignores the guidelines of many courts, including the Seventh Circuit and the District of Delaware, that explicitly recognize keyword search terms as an appropriate method for searching ESI.

---

[5] Plaintiffs make the wholly unsupported claim that CBAA will capture no less than 70% of responsive documents, while Defendants' process can capture no more than 24%. (Pls.' Br. 1, 6.) In both instances, Plaintiffs fail to offer any citation, support, or authority for these figures. Neither do they disclose how and from where these statistics were obtained or who determined them. In contrast, Defendants used a comprehensive, rigorous, and accurate validation process.

9

## II.     The Court Should Reject Plaintiffs' Indexing Request

As explained in their initial submission, Defendants are producing electronic documents in accordance with Fed. R. Civ. P. 34(b)(2)(E)(i) and the ESI production order entered in this matter.  The cases cited by Plaintiffs do not support Plaintiffs' argument for indexing here and do not provide precedent for requiring Defendants to bear the heavy and expensive burden of creating tables or charts for Plaintiffs to sort Defendants' documents into Plaintiffs' desired categories.[6]  The Court should therefore deny Plaintiffs' indexing request.

## III.     Conclusion

Defendants respectfully request that the Court enter an order permitting Defendants to continue with the ESI methodology already implemented by Defendants and denying Plaintiffs' proposal for indexing and coding.

Dated: February 13, 2012                                Respectfully submitted,


By:    /s/ Stephen R. Neuwirth                    By:    /s/ Nathan P. Eimer

Stephen R. Neuwirth                          Nathan P. Eimer
Marc L. Greenwald                            Susan M. Razzano
Sami H. Rashid                               EIMER STAHL LLP
QUINN EMANUEL URQUHART &                      224 South Michigan Avenue, Suite 1100
SULLIVAN, LLP                                Chicago, IL 60604-2516
51 Madison Avenue, 22nd Floor                (312) 660-7600

---

[6]  The cases Plaintiffs cite are inapposite.  *See Mizner Grand Condo. Assoc., Inc. v. Travelers Prop. Cas. Co.*, 270 F.R.D. 698, 701 (S.D. Fla. 2010) (dealing with 30 bankers boxes of material "devoid of any organization" and stating "Courts typically require … 'some modicum of information' … which would ideally include 'the identity of the custodian … assurance that the documents have been produced in the order in which they are maintained, and a general description of the filing system from which they were recovered'"); *Cardenas v. Dorel Juvenile Group, Inc.*, 230 F.R.D. 611, 618 (D. Kan. 2005) (finding that production of nine bankers boxes of material was not in usual course of business where production lacked information about "where these documents were maintained or who maintained them, and whether the documents … came from one single source or file or from multiple sources or files").  *In re Sulfuric Acid*, 231 F.R.D. 351, 363 (N.D. Ill. 2005) actually held that to prove usual course as to documents kept in storage "[a]ll that is needed is the testimony of a person with knowledge of how the records were originally kept [in the usual course of business] and how they were maintained in storage."

New York, NY 10010
(212) 849-7000
stephenneuwirth@quinnemanuel.com
marcgreenwald@quinnemanuel.com
samirashid@quinnemanuel.com

James R. Figliulo
Stephanie D. Jones
FIGLIULO & SILVERMAN, P.C.
10 South LaSalle Street, Suite 3600
Chicago, IL 60603
(312) 251-4600
jfigliulo@fslegal.com
sjones@fslegal.com

COUNSEL FOR DEFENDANT GEORGIA-
PACIFIC LLC

By: ___/s/ Douglas J. Kurtenbach_____

Douglas J. Kurtenbach, P.C.
Daniel E. Laytin
Barack S. Echols
Leonid Feller
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000
douglas.kurtenbach@kirkland.com
daniel.laytin@kirkland.com
barack.echols@kirkland.com
leonid.feller@kirkland.com

COUNSEL FOR DEFENDANT
PACKAGING CORPORATION OF
AMERICA

By: ___/s/ Andrew S. Marovitz_____

Andrew S. Marovitz
Britt M. Miller
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606

neimer@eimerstahl.com
srazzano@eimerstahl.com

James T. McKeown
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
(414) 297-5530
jmckeown@foley.com


COUNSEL FOR DEFENDANT
INTERNATIONAL PAPER COMPANY

By: ____/s/ R. Mark McCareins_____

R. Mark McCareins
Michael P. Mayer
James F. Herbison
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600
rmccareins@winston.com
mmayer@winston.com
jherbison@winston.com

COUNSEL FOR DEFENDANT ROCKTENN
CP, LLC

By: ____/s/ Scott M. Mendel_____

Scott M. Mendel
John E. Susoreny
Lauren N. Norris
K&L GATES LLP
70 W. MADISON ST.

11

(312) 782-0600
amarovitz@mayerbrown.com
bmiller@mayerbrown.com

COUNSEL FOR DEFENDANT TEMPLE-
INLAND INC.

SUITE 3100
CHICAGO, IL 60602
(312) 372-1121
scott.mendel@klgates.com
john.susoreny@klgates.com
lauren.norris@klgates.com

COUNSEL FOR DEFENDANTS
CASCADES, INC. AND NORAMPAC
HOLDING U.S. INC.

By: ___/s/ David Marx Jr._____

David Marx Jr.
Jennifer S. Diver
Rachael Lewis
McDERMOTT WILL & EMERY LLP
227 W. Monroe Street
Chicago, IL 60606
(312) 372-2000
dmarx@mwe.com
jdiver@mwe.com
rlewis@mwe.com

COUNSEL FOR DEFENDANT
WEYERHAEUSER COMPANY

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on February 13, 2012, a true and correct copy of the foregoing **Defendants' Reply Memorandum Concerning Discovery Issues to be Addressed at February 21, 2012 Hearing** was electronically filed with the Clerk of the Court for the Northern District of Illinois using the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Joseph L. Siders