**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

KLEEN PRODUCTS LLC, individually and
on behalf of all others similarly situated,

                            Plaintiffs,

        vs.

PACKAGING CORPORATION OF
AMERICA, et al.,

                            Defendants.

Case No. 1:10-cv-05711

Judge Milton I. Shadur

Magistrate Judge Nan R. Nolan

**PLAINTIFFS' MOTION TO PRECLUDE DEFENDANTS' EXPERT WITNESS FROM
TESTIFYING ABOUT DEFENDANTS' TESTING AND VALIDATION PROCESSES
AND TO PRECLUDE EXHIBIT FROM BEING ADMITTED INTO EVIDENCE**

Pursuant to Rules 703 and 1006 of the Federal Rules of Evidence, Plaintiffs move to preclude Defendants' proposed expert Daniel L. Regard from testifying about the facts concerning Defendants' testing and validation processes and to preclude the chart prepared by Mr. Regard and marked as Defendants' Exhibit 4 at the February 21, 2012 hearing from being admitted into evidence.[1]

Defendants' attempt to use their expert witness to introduce such factual information is an end run around the Federal Rules of Evidence. Mr. Regard did not conduct Defendants' testing and validation processes. He is not a percipient witness. By his own testimony, Mr. Regard knows about Defendants' testing and validation only via his communications with various representatives of Defendants. Mr. Regard's testimony is an effort to introduce hearsay evidence – for the truth of the matter – through an expert witness, in violation of F.R.E. 703.

---

[1] The chart is also attached as Exhibit D to the Report of Daniel L. Regard submitted to the Court on March 21, 2012.

Despite the Court's admonition at the February 21 hearing, followed by Plaintiffs' specific requests, Defendants have failed to produce documents underlying their testing and validation processes, specifically, any documents evidencing the numerical presentation concerning Defendants' testing and validation set forth in Mr. Regard's chart. Plaintiffs are thus deprived of the ability to assess the accuracy of Defendants' testing and validation process and properly cross-examine Mr. Regard. Further, Defendants cannot shield these documents by asserting work-product privilege at the same time that they seek to elicit Mr. Regard's testimony.

Defendants' attempt to introduce Mr. Regard's chart violates both F.R.E. 703 and 1006. Once again, the introduction of Mr. Regard's chart is an attempt to introduce hearsay fact evidence through an expert in violation of F.R.E. 703. Defendants have also failed to establish the proper foundation for admissibility of the chart as a summary under F.R.E. 1006.

For these reasons, as more fully explained below, the Court should preclude Mr. Regard from testifying as to the facts underlying the non-Georgia Pacific ("GP") Defendants' testing and validation processes – including in his report of March 21, 2012 – and preclude the admission of Mr. Regard's chart into evidence.

I. **BACKGROUND**

At the February 21, 2012 hearing, during the testimony of Mr. Regard, Defendants moved to introduce into evidence the chart entitled "Summary of Defendants' Application of Search Methodology". Mr. Regard testified that the chart "is an exhibit that I had pulled together. I actually set it up, and my team and I helped pull this document together." (2/21/12 Hearing Transcript ("Tr.") at 96:9-11). The chart reflected "some of the information [Mr. Regard] gathered from the pleadings, the disclosures, and [his] conversations with individual defendants." (*Id*. at 96:11-13). Mr. Regard further testified that the "chart reflects my focus on gathering from defendants the specific information as to the null set testing that they conducted." (*Id*. at 101:3-5). Mr. Regard agreed the chart was a summary of the facts elicited during his interviews and culled from the documents he reviewed. (*Id*. at 96:16-19).

Defendants moved to introduce the chart. (*Id*. at 96:24-25). Plaintiffs objected. (*Id*. at 97:1-97:15). The Court reserved ruling on Plaintiffs' objection. (*Id*. at 98:14-15, 99:99:20).

Mr. Regard then proceeded to testify as to facts of the non-GP Defendants' testing and validation processes. (*Id*. at 100:13-104:24; *see also* 115:9-117:8). Plaintiffs' objected to Mr. Regard's testimony on the grounds that they did not have any of the underlying information regarding such testing and validation and had never previously been shown any of the related statistics Defendants' sought to introduce though Mr. Regard's chart. (Tr. at 106:16-24).

After the hearing, on March 6, Plaintiffs requested from Defendants the underlying information used to create Mr. Regards' chart. (Declaration of Daniel Mogin ("Mogin Decl."), Ex. 1). While Defendants produced to Plaintiffs a variety of information in response to Plaintiffs' March 6 request, and submitted Mr. Regard's Report on March 21, 2012, they have uniformly refused to produce the documents underlying the bottom portion of Mr. Regard's chart. (Mogin Decl., ¶ 3).

Like his testimony at the February 21, 2012 hearing, Mr. Regard's Report is clear that he is testifying to facts for which he is not a percipient witness. Regarding the numerical presentation in his report concerning non-GP Defendants' testing and validation, his report states:

> The final portion of the Exhibit (below the shaded line) is a tabular representation of a series of statistics and calculations, organized by Defendant, which I then used to calculate the "confidence level" of each Defendant's testing process. *I gathered these numbers directly from the vendors and counsel for each of the parties.*

(Regard Report at 6) (emphasis added). Mr. Regard also describes his chart as "summarizing the information made available to me during my communications with the Defendants . . . ." (Regard Report at 5).

II. **ARGUMENT**

    A.     **Defendants' Efforts to Have Mr. Regard Testify as to Facts Underlying Defendants' Testing and Validation Processes and Defendants' Request to Admit Mr. Regard's Chart into Evidence are Improper Attempts to Introduce Hearsay Fact Evidence Through an Expert Witness in Violation of F.R.E. 703.**

Defendants' attempt to have Mr. Regard testify to the facts involving their testing and validation processes and request to admit into evidence Mr. Regard's chart amount to an impermissible end run around the Federal Rules of Evidence. When discussing F.R.E. 703, the Seventh Circuit stated "in explaining his opinion an expert witness normally is allowed to explain the facts underlying it, even if they would not be independently admissible. But the judge must make sure that the expert isn't being used as a vehicle for circumventing the rules of evidence." *In re James Wilson Assoc.*, 965 F.2d 160, 172-73 (7th Cir. 1992). *See also Kay v. First Cont'l Trading, Inc.*, 976 F. Supp. 772, 774 (N.D. Ill. 1997) (Shadur, J.) ("Rule 703, which enables experts' opinions to be based upon facts or data that need not themselves be admissible in evidence, creates an obvious potential for the use of such opinions as a vehicle for creating a 'back door' hearsay exception.").

Defendants are seeking to circumvent the rules of evidence. Defendants called Mr. Regard to testify as an expert witness about the testing and validation of the search terms by the Defendants other than Georgia Pacific. (*See* Dkt. #288 at 18). Defendants are trying to introduce into evidence, through an expert, fact testimony about the testing and validation of search terms by the non-GP Defendants and a chart containing a purported summary of those facts. Mr. Regard's testimony and chart are based upon information that he apparently culled from documents provided to him by Defendants, from his interviews with an unspecified number of unidentified representatives of the Defendants, and from various venders. Plaintiffs have requested, but have not been provided with all the underlying information. The critical question is where are the documents that Mr. Regard culled, collected, or relied upon to produce the chart? Where are the documents that refer to the documents "collected (for Testing)", "Hits," "Null Set", "Test Set" and "Test Set Responsible"? To allow Mr. Regard's testimony and chart

into evidence without Plaintiffs' being provided with this basic information will unfairly deprive Plaintiffs of the opportunity to cross-examine the persons with actual knowledge of the facts. Plaintiffs' will be precluded from knowing what Mr. Regard looked at or what he was told, which formed the basis for his testimony and chart. This will essentially deny Plaintiffs' the basic right to evaluate the documents Mr. Regard reviewed, the witness information he received and the veracity and accuracy of the unknown witnesses. *See In re James Wilson Associates*, 965 F.2d at 173 (noting "it is improper to use an expert witness as a screen against cross-examination").

Plaintiffs previously stated their objections to legal and factual arguments being tendered in the guise of expert testimony in their briefing filed in advance of the February 21, 2012 hearing. (*See* Dkt. #294 at 5 ("[e]xpert testimony is meant to inform the Court about technical subjects, not to make legal or factual arguments."). About Mr. Regard, Plaintiffs wrote:

> Defendants state that Mr. Regard, also a lawyer, "will testify that the testing and validation results achieved by all Defendants here meet or surpass the results that are normally considered acceptable . . . ." What is or is not "acceptable" is a matter for the Court.

(Dkt. # 296 at 3; *see also* Tr. at 90:13-93:10; 104:25-109:9). Mr. Regard's Report extends Defendants' attempt to offer legal opinion and hearsay fact evidence disguised as expert testimony – and, to do so without providing supporting materials. For example, the Regard Report repeatedly states that Defendants, as a matter of fact, have adhered to self-defined "best practices" in various ways, including through undisclosed statistical testing to construct a confidence level. Yet, the factual basis for these conclusions remains undisclosed such that this "best practices" testimony is doubly tainted: by the infringement on the Court's functions and by the non-disclosure and failure to comply with the Rules of Evidence. Accordingly, any such testimony should be stricken and further testimony of this nature precluded.

**B.** **The Defendants Failed to Lay a Foundation for Admissibility of Mr. Regard's Chart Under F.R.E. 1006**

Mr. Regard's chart should also be precluded from admission as evidence because Defendants have also failed to lay a proper foundation for admission under F.R.E. 1006. To admit a chart as a summary under F.R.E. 1006, a party must establish that the original records (1) would be admissible into evidence; (2) are so voluminous or bulky that it would inconvenient for the trier of fact to examine them; and (3) have been provided for examination by the other party. *See* Fed. R. Evid. 1006.[2] Defendants have done none of the above, and therefore, Mr. Regard's chart cannot be admitted into evidence under F.R.E. 1006.

First, Defendants have failed to establish that the records underlying Mr. Regard's chart are admissible. By his own testimony, Mr. Regard relied upon hearsay evidence to create his chart. The chart consists of information culled from the documents that he reviewed and his "conversations with individual defendants." (Tr. at 96:11-13). This is hearsay evidence for which Defendants have failed to establish any exceptions. Because Defendants have not established that any facts underlying Mr. Regard's chart are admissible, the chart is inadmissible under F.R.E. 1006. *See U.S. v. Oros*, 578 F.3d 703, 708 (7th Cir. 2009) (Federal Rule of Evidence 1006 "is not an end around to introducing evidence that would otherwise be inadmissible; therefore in applying this rule, we require the proponent of the summary to demonstrate that the underlying records are accurate and would be admissible as evidence.").

Second, Defendants have presented no testimony that the records underlying Mr. Regard's chart are so "voluminous" such that they "cannot conveniently be examined in court . . . ." Fed. R. Evid. 1006.

---

[2] F.R.E. 1006 states:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at [a] reasonable time and place. The court may order that they be produced in court.

Third, Defendants have failed to provide Plaintiffs with the documents underlying Mr. Regard's chart. (Mogin Decl., ¶ 3 ). Without the opportunity to examine the underlying facts, Plaintiffs are deprived of any meaningful ability to assess the accuracy of Mr. Regard's chart. For this reason, too, Mr. Regard's chart is inadmissible under F.R.E. 1006. S*ee Peabody Coal Co. v. Dir., Office of Workers' Comp. Programs*, 165 F.3d 1126, 1128 (7th Cir. 1999) (noting opposing party must have opportunity to review materials).

In sum, Defendants have not established that the original records underlying Mr. Regard's chart: (1) would be admissible into evidence; (2) are so voluminous or bulky that it would be inconvenient for the trier of fact to examine them; and (3) have been provided for examination by the other party within a reasonable time. Accordingly, the chart is not admissible into evidence.

## III.    **CONCLUSION**

For the foregoing reasons, the Court should preclude Mr. Regard from testifying as to the facts underlying the non-GP Defendants' validation and testing processes and preclude Mr. Regard's chart Defense Exhibit 4 from being admitted into evidence, and strike the relevant portions of the Regard Report.

Dated: March 23, 2012                              Respectfully submitted,

                                                   /s/Daniel J. Mogin
                                                   Daniel J. Mogin
                                                   THE MOGIN LAW FIRM, P.C.
                                                   707 Broadway, Suite 1000
                                                   San Diego, CA 92101
                                                   Tel:    (619) 687-6611
                                                   Fax:    (619)687-6610

Michael J. Freed
Steven A. Kanner
Robert J. Wozniak
FREED KANNER LONDON
& MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Tel:    (224) 632-4500
Fax:    (224) 632-4521

*Interim Co-Lead Class Counsel*

W. Joseph Bruckner
Brian D. Clark
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
Tel:    (612) 339-6900
Fax:    (612) 339-0981

Walter W. Noss
SCOTT+SCOTT LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Tel.    (619) 233-4565
Fax:    (619) 233-0508

*Class Counsel*