**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| KLEEN PRODUCTS LLC, individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>    vs.<br><br>PACKAGING CORPORATION OF AMERICA, et al.,<br><br>              Defendants. | Case No. 1:10-cv-05711<br><br>Judge Milton I. Shadur<br><br>Magistrate Judge Nan R. Nolan |

**DECLARATION OF DANIEL J. MOGIN**

I, Daniel J. Mogin, pursuant to 28 U.S.C. §1746, declare:

    1.    I am an attorney duly licensed by the State of California. I am co-lead counsel for the Plaintiffs in the above-captioned action. I provide this Declaration in support of Plaintiffs' Motion to Preclude Defendants' Expert Witness from Testifying about Defendants' Testing and Validation Processes and to Preclude Exhibit from Being Admitted into Evidence. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto under oath.

    2.    Attached hereto as Exhibit 1 is a true and correct copy of my letter of March 6, 2012 to Defendants requesting documents and information relating to the February 21, 2012 hearing and the upcoming March 28, 2012 hearing.

    3.    While Defendants have produced a variety of information in response to the March 6, 2012 request, they have not produced the documents underlying the numerical presentation contained in the chart prepared by their expert witness Dan Regard and marked as

Defendants' Exhibit 4 at the February 21 hearing (the same chart is also attached as Exhibit D to the Report of Daniel L. Regard submitted on March 21, 2012).

4. Attached hereto as Exhibit 2 is a true and correct of copy of the March 21, 2012 letter from Britt Miller, counsel for Temple-Inland, to me.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 23, 2012 in San Diego, California.

        */s/ Daniel J. Mogin*
        Daniel J. Mogin
        THE MOGIN LAW FIRM, P.C.
        707 Broadway, Suite 1000
        San Diego, CA 92101
        Tel:   (619) 687-6611
        Fax:  (619) 687-6610

# EXHIBIT 1



March 6, 2012

**Via E-mail and U.S. Mail**

TO: DEFENSE COUNSEL ON THE ATTACHED LIST

    Re:    Containerboard Products Antitrust Litigation:
             *Kleen Products, et al. v. Packaging Corporation of America, et al.*;
             Case No. 10-CV-5711 (ND. Ill.)

Counsel:

Plaintiffs request that you provide the documents described or relied upon by Defendants' witnesses at the February 21, 2012, evidentiary hearing, including:

1. Documentation about the Georgia Pacific ("GP") search term development process that Mr. Brown testified was readily available, including:

    a. Documentation regarding the initial set of search terms received in mid-May from International Paper (2/21/2012 Evidentiary Hearing Transcript ("Trans.") at 129:3-131:7, 144:18-145:14)

    b. Documentation of the specific steps taken to cull data from GP's five test custodians, including number of documents from each custodian before and after application of domain filters, which domain filters were applied, what software (including version) was used to apply those filters, and results of any evaluations done of the accuracy of those filters. (Trans. at 175:18-177:12)

    c. Documentation of hit counts per term/query and number of documents returned (Trans. at 129:21-23, 160:8-10)

    d. Copies of any reports provided by Clearwell, including stemming reports or reports from the topics feature (Trans. at 130:21-131:7)

    e. Documentation regarding GP's mid-June 2011 "validation" process (Trans. 131:8-132:17, 147:22-148:4)

    f. Documentation regarding the modifications made to GP's search strings in June or July 2011, including the "validation" process after the search strings were modified to include what set of documents the modified search strings were applied to, what search strings were used to produce hit sets and null sets for use of the topics function, which search strings were used to produce the null sets,

00033207.}

      what process was used for sampling from the null sets (Trans. at 133:3-134:5, 148:9-149:25)

   g. Documentation linking search strings to specific Requests for Production (Trans. at 150:2-7, 155:2-12)

   h. Documentation describing the modifications made to search strings based on Plaintiffs' September 14, 2011 letter, including documentation of the "validation" process for Defendants' revised search strings based on Plaintiffs' September 14 letter to include what set of documents the modified search strings were applied to, what search strings were used to produce hit sets and null sets for use of the topics function, which search strings were used to produce the null sets, what process was used for sampling from the null set (Trans. at 134:12-135:23)

   i. Documentation regarding the number and background of reviewers of sample documents, any evaluation of the inter-reviewer constituency and what reviewers knew about the behavior of the system on these sample documents

   j. Documentation describing the "validation" process for the November 2011 set of search terms (Trans. at 135:24-137:3, 178:3-12)

   k. Documentation relied upon for determining random sample(s)

   l. Documentation relied upon concerning the creation or testing of the null set

   m. Documentation of the steps taken by any Defendant to cull their ESI corpus prior to using Defendants' Boolean search strings, including the filtering of emails with certain domain names (Trans. at 175:18-177:12)

2. Documentation describing the modifications made by the other Defendants to their search strings, including any based on Plaintiffs' September 14, 2011 letter, including values of all configuration settings, stemming options, thesauri, and any other options that affect the interpretation of search strings and any iterative process and testing used in modifying these search strings, including what sets of documents were used during such iterative processes and intermediate versions of queries used.

3. Any documentation referred to or relied upon in connection with Defendants' Evidentiary Hearing Exhibit No. 4 ("Exhibit 4"); including but in no way limited to:

   a. Documents for each Defendant showing the process used to collect documents for testing

   b. Documents describing each of the following terms used in Exhibit 4:

      (i) Collected (for Testing)
      (ii) Hits
      (iii) Null Set

00033207.}

Defense Counsel
March 6, 2012
Page 3

    (iv) Test Set
    (v) Test Set Responsive

  c. Documentation supporting each of the numbers or calculations, including the confidence level and underlying testing, reported in the lower portion of the Exhibit including the total number of documents from the custodian and locations collected, the total number of documents to which query strings were applied, the size of the hit set and null set for each custodian and location, how families were accounted for in counts, the formula used to produce the sample size, the software and procedure used to choose the sample, and the formula used to compute confidence intervals.

  d. Documentation about the following subjects referred to in Defendants' Exhibit 4:

    (i) Number of Custodians (including the process for selection)
    (ii) Search Terms used to collect documents,
    (iii) Other methods used to collect documents
    (iv) Tools used to select or collect documents

  e. Documents included in the "test sets" used to "validate" Defendants' search methodology and Defendants' determination of whether such documents were responsive or not responsive, including documents described as "Test Set" and "Test Responsive" in Defendants' Exhibit 4.

  f. Any documentation of the other "validation" processes referred to, directly or indirectly, in Exhibit 4.

4. With respect to the prior testimony of Mr. Regard, Plaintiffs request:

  a. Documents showing the dates of any identification, collection or search including, but in no way limited to, any referred to directly or indirectly in Exhibit 4 or Mr. Regard's testimony (Trans. at 80:23-81:2, 88:9-13, 138:13-15)

  b. Documents constituting "the facts elicited during [Mr. Regard's] interviews and that [he] culled from the documents that [he] reviewed that related to the issues that are contained on Exhibit 4" including the sources of all quantitative information presented in the Exhibit (Trans. at 96:16-20)

  c. Documents relied on by Mr. Regard concerning the null set testing conducted by Defendants (Trans. at 100:24-101:5)

  d. Documents describing how precision was estimated in drawing the "perimeter" (Trans. at 104:15-21).

5. With respect to further testimony of Mr. Regard, Plaintiffs request a more complete disclosure of Mr. Regard's expected testimony than was provided in Defendants' letter of February 16, 2012, which referred only to: (a) "testing and validation of the search terms

00033207.}

Defense Counsel
March 6, 2012
Page 4

    by defendants other than Georgia-Pacific"; (b) certain aspects of the metadata fields required of Defendants and, (c) the burdens associated with potential restoration of back-up tapes. In contrast, during the hearing Mr. Regard testified that he had reached the following opinions in this case:

    (i) The search methodologies used by the Defendants in this case were consistent with his experience and understanding of best practices

    (ii) The custodial centric approach that the Defendants used to identify key players and documents within their organizations is also consistent with his prior experience and with best practices

    (iii) The manner in which ESI has been produced by the Defendants in this case is sufficiently robust to provide the receiving parties significantly equivalent access to those documents as the Defendants had in the usual course of business.

    (iv) The manner in which the Defendants have handled the process for considering offline media is consistent with best practices

    (Items 1-4 are referred to at Trans. 80:20-81:9).

    (v) The Plaintiffs' content based search methodology offered in this case was not demonstrably superior to the search methodology used by Defendants. (Trans. at 121:2-123:20).

Of Mr. Regard's five opinions, only iii, above, regarding "the usual course of business" in connection to metadata was referenced in Defendants' February 16 letter. Plaintiffs, therefore, have not been given the disclosures required by Mag. Judge Nolan prior to the hearing or during Mr. Regard's testimony to this point.

Plaintiffs request that Defendants provide the information requested above within 7 days of this letter in order to avoid unnecessary delay in preparation for the second evidentiary hearing scheduled for March 28, 2012. If defendants are unwilling to comply with this request, please let us know immediately. Please feel free to contact us if you have any questions.

                      Very truly yours,

                      THE MOGIN LAW FIRM, P.C.

                      Daniel J. Mogin

cc:    Mike Freed
        Steve Kanner
        Bob Wozniak

00033207.}

# EXHIBIT 2

# MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

March 21, 2012

**Britt M. Miller**
Direct Tel +1 312 701 8663
Direct Fax +1 312 706 8763
bmiller@mayerbrown.com

<u>By E-Mail</u>

Mr. Daniel J. Mogin
The Mogin Law Firm, P.C.
707 Broadway, Suite 1000
San Diego, CA 92101

Re: *Kleen Products, et al. v. Packaging Corp. of America, et al.*, Case No. 10-CV-5711 (N.D. Ill.)

Dear Dan:

I write in response to your March 6, 2012 letter to defense counsel in the above-referenced matter seeking "documents described or relied upon by Defendants' witnesses at the February 21, 2012, evidentiary hearing." As other defendants have stated in their respective responses to your letter, Temple-Inland Inc. ("Temple-Inland") does not believe that either Judge Shadur or Magistrate Judge Nolan anticipated, much less authorized, the sort of "discovery about discovery" that your letter attempts to engage in. Nonetheless, in the spirit of cooperation, the below describes the non-privileged responsive information Temple-Inland has within its possession, custody, or control. To be clear, by providing the below information, Temple-Inland does not waive its rights to object to these and any other requests plaintiffs may make regarding the materials and testimony proffered by Defendants during the course of the evidentiary hearing, and specifically does not waive any applicable privileges including but not limited to the attorney-client privilege and the work product doctrine.

***Request No. 1:*** As the 14 requests set forth in the first paragraph are addressed, for the most part, to counsel for Georgia-Pacific ("GP"), Temple-Inland has no responsive information to provide. To the extent paragraph 1.m. can be read to seek information from Temple-Inland, however, we respond as follows. Temple-Inland used Lexis Nexis LAW PreDiscovery software version 5.9.25 to filter operating system, program, and application files out of its document collection using the National Institute of Standards and Technology NSRL MD5 hash database (deNist) and to globally de-duplicate across the population of documents to be used for testing. Temple-Inland did not filter out any domain names. To date, Temple-Inland has spent more than $500,000 for the consulting, processing, hosting, and production services provided by its third party technology vendor; it also already has invested over 8500 hours of contract attorney review time (plus significant time by Mayer Brown attorneys) and its review of potentially responsive documents is not complete.

***Request No. 2:*** Your second request seeks documentation "describing" modifications to Temple-Inland's search terms. As detailed in the other Defendants' submissions to you on this issue and Defendants' submissions to the Court, Defendants sent their proposed list of search

Mr. Daniel J. Mogin
March 21, 2012
Page 2

terms to plaintiffs on August 5, 2011. On September 14, 2011, plaintiffs tendered their response. On October 20, 2011, counsel for GP, on behalf of all Defendants, provided plaintiffs with a revised set of search terms that attempted to address the issues raised by plaintiffs in their September 14, 2011 letter. Temple-Inland then revised those search terms to address Temple-Inland-specific issues and constructed a stemming report to show how certain of the terms would be stemmed in performing the actual search for documents. Temple-Inland's list of search terms, as well as a redline comparing Temple-Inland's search terms to GP's search terms and Temple-Inland's stemming report was emailed to plaintiffs' counsel, including yourself, on December 13, 2011.

***Request No. 3:*** Plaintiffs' Request No. 3 seeks any "documentation referred to or relied upon in connection with Defendants' Evidentiary Hearing Exhibit No. 4 ("Exhibit 4"). Temple-Inland does not have any non-privileged documents within its possession, custody, or control responsive to this request. We nonetheless respond as follows. Temple-Inland retained Scarab Consulting ("Scarab") as its outside ESI vendor in connection with the instant litigation. Scarab, working with Temple-Inland's outside counsel Mayer Brown LLP ("Mayer Brown"), created an ESI sampling, testing, and validation methodology in order to identify the corpus of Temple-Inland documents responsive to the plaintiffs' document requests, the results of which are outlined below.

At the outset, Mayer Brown, working with Temple-Inland, identified five "key" custodians[1] from Temple-Inland's list of relevant custodians (*see* B. Miller August 11, 2011 Letter) whose ESI would be used in the validation process. Those custodians' ESI for the period January 1, 2000 through December 31, 2010 was then collected and, as noted above, de-duplicated using LAW software (Version 5.9). The de-duplicated results—183,757 documents—were then ingested into Clearwell software (Version 6.5.19.1) and indexed. Scarab then applied the Temple-Inland search terms (*see* B. Miller December 13, 2011 Letter) to the entire de-duplicated population, resulting in 55,115 document hits (30% of the population). Scarab determined that in order to validate the null set of 128,642 documents to a minimum of a 95% confidence level, a statistical sample of 500 randomly chosen documents was appropriate. After using Clearwell's random document selection function to create the null random sample,[2] Mayer Brown attorneys reviewed the sample set to determine if there were any "false negatives"—*i.e.*, documents that were responsive to plaintiffs' document requests but not captured by the search strings. Of the 500 randomly chosen documents, Mayer Brown determined that 7—or 1.4%—were responsive to plaintiffs' requests for production.

---

[1] "Key custodians" were those individuals who had decision-making responsibility for the manufacture or sale of linerboard, corrugated medium, containerboard, and corrugated products.

[2] According to Clearwell, its "randomizer" function is provided by Java 6 and is s a linear congruential pseudorandom number generator, as defined by D. H. Lehmer and described by Donald E. Knuth in The Art of Computer Programming, Volume 3: Seminumerical Algorithms, section 3.2.1.

Mr. Daniel J. Mogin
March 21, 2012
Page 3

As an additional step beyond the review of randomly chosen documents from the null set, Temple-Inland used Clearwell's "Topics" analytics function in order to further analyze Temple-Inland's null set. The Clearwell tool automatically generated 1,283 "topics" from the 128,642 null set documents. Mayer Brown attorneys then reviewed the list of "topics" and selected eleven that appeared to be potentially relevant. Those eleven topics included 351 documents that were subsequently reviewed by Mayer Brown attorneys; none were identified as responsive.

***Request No. 4:*** This request generally seeks documents related to the February 21, 2012 testimony of Dan Regard. As a general matter, Temple-Inland has no non-privileged documents within its possession, custody, or control responsive to this request. That said, we would expect that Mr. Regard will be providing information regarding the information sought by plaintiffs' request as part of his March 21, 2012 submission to the Court. Specifically, Temple-Inland has provided Mr. Regard with copies of the following Temple-Inland-specific documents: (1) B. Miller's August 11, 2011 Letter to plaintiffs' counsel, (2) B. Miller's November 18, 2011 Letter to plaintiffs' counsel, (3) S. Neuwirth's November 22, 2011 letter to plaintiffs' counsel, (4) plaintiffs' December 2, 2011 Letter and Exhibits, (5) B. Miller's December 13, 2011 letter to plaintiffs' counsel attaching Temple-Inland's search terms and stemming report, (6) Temple-Inland's January 10, 2012 Rule 30(b)(6) Letter, (7) plaintiffs' January 23, 2012 response to the January 10, 2012 letter, and (8) and the transcripts (and exhibits) of the depositions of Marc Kobren and Shawn Dunn, Temple-Inland's 30(b)(6) corporate designees with respect to plaintiffs' November 2011 deposition notice.

***Request No. 5:*** Request No. 5 seeks "a more complete disclosure of Mr. Regard's expected testimony." Magistrate Judge Nolan did not "require" any specific disclosures to be made prior to the February 21, 2012 Hearing. Rather, as discussed at the February 9, 2012 status hearing, submission of any preliminary expert reports (or similar materials) was optional. In any event, as stated in during the February 21 hearing and reiterated in Andy Marovitz's letter of March 13, 2012, Defendants, including Temple-Inland, intend to serve, no later than today, additional materials regarding Mr. Regard's opinions in this matter.

Sincerely,

*Britt M. Miller*

Britt M. Miller

cc: Michael Freed (via email)
      Steven Kanner (via email)
      Defense Counsel (via email)