**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KLEEN PRODUCTS LLC, *et al.*, ) <br> ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> PACKAGING CORPORATION OF ) <br> AMERICA, *et al.*, ) <br> ) <br> Defendants. ) <br> ) | Case No. 1:10-cv-05711 <br><br> Hon. Milton I. Shadur <br><br> Hon. Nan R. Nolan |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PRECLUDE
DEFENDANTS' EXPERT WITNESS FROM TESTIFYING ABOUT DEFENDANTS'
TESTING AND VALIDATION PROCESSES AND TO PRECLUDE EXHIBIT FROM
BEING ADMITTED INTO EVIDENCE**

Plaintiffs seek to prevent the Court from hearing testimony that is central to the issue before this Court – the reasonableness of Defendants' search methodology – and specifically seek to "preclude Mr. Regard from testifying as to the facts underlying the non-Georgia Pacific Defendants' testing and validation processes." Motion, p. 2. Plaintiffs' motion is based on the false premise that they have not been provided with the documents upon which Mr. Regard relied in reaching his opinion that "[t]he search methodologies used by [non-GP] Defendants in this case were consistent with my experience and my understanding of best practices." Regard Report, p. 2. In fact, as promised at the end of the February 21, 2012 hearing, the non-GP Defendants on March 21 – a week before the March 28 hearing date – provided plaintiffs with Mr. Regard's complete report, along with a comprehensive list of documents relied on by Mr. Regard in reaching his opinions (Exhibit B to the Report); **all** of which have been made available to the Plaintiffs. These documents set out each non-GP Defendant's validation process and data,

which are then reflected on Exhibit D to Mr. Regard's report (marked as Defendants' Exhibit 4 at the February 21 hearing).

The hearing being conducted by this Court is not a trial on the merits of any issue in this case. It is a discovery hearing requested by Defendants and intended to resolve the issue of search methodology so that Defendants can move forward with producing their electronically-stored documents, over a year and a half after Plaintiffs filed their Complaint. It is entirely appropriate for an expert to set forth the facts on which he is relying in rendering his opinions, and Plaintiffs concede in their Motion that an expert is permitted to rely on evidence that may not be admissible at trial under the Federal Rules of Evidence. There are no jurors to protect in this evidentiary hearing. *See Peabody Coal Co. v. Dir., Office of Workers' Comp. Programs*, 165 F. 3d 1126, 1128-29 (7th Cir. 1999) ("[t]he rules of evidence are primarily designed to protect jurors, viewed as naive or inexperienced factfinders, from being muddled or inflamed by misleading, prejudicial, unreliable, confusing, or repetitious evidence"). The Court has made clear it wants to hear from the parties' experts on this issue.

For all of these reasons, Defendants respectfully request that Plaintiffs' motion be denied and the hearing scheduled for March 28 move forward as planned.

**ARGUMENT**

**I.     Plaintiffs Have Been Provided With All Documents Relied On By Mr. Regard In Evaluating The Non-GP Defendants' Validation Processes**

Plaintiffs' primary basis for their Motion is the argument that "[the non-GP] Defendants have failed to produce documents underlying their testing and validation processes, specifically any documents evidencing the numerical presentation concerning [the non-GP] Defendants' testing and validation set forth in Mr. Regard's chart." Motion, p. 2. Plaintiffs' argument appears to be based on the false premise that each of the non-GP Defendants exchanged scores of

documents with Mr. Regard. They did not. Instead, with respect to each non-GP Defendant, Mr. Regard (1) reviewed correspondence exchanged with Plaintiffs in response to Plaintiffs' Fed. R. Civ. P. 30(b)(6) notices; (2) reviewed correspondence exchanged with Plaintiffs describing each non-GP Defendant's individualized search string and use of stemming/wildcards; (3) reviewed the March 21, 2012 correspondence described below; and (4) interviewed each non-GP Defendant's counsel and/or ESI vendors on several occasions to discuss and understand their validation processes. All documents in the first three categories have been produced to Plaintiffs; with respect to the latter, there are no non-privileged documents memorializing these conversations, and the substance of them is summarized in Mr. Regard's report and Exhibit. Defendants have not withheld from Plaintiffs any documents relied on by Mr. Regard in formulating his opinion on the adequacy of the non-GP Defendants' search methodology.

Further, Plaintiffs sent their letter with the supplemental ESI information requests on March 6. Mr. Regard had, of course, already seen materials filed by Defendants in various submissions, and he had seen the various correspondence on search terms and stemming reports previously provided to the Plaintiffs. In order to provide the information Plaintiffs sought in their March 6 letter, each non-GP Defendant prepared a thorough written response to Plaintiffs' requests. In written correspondence dated March 21 (attached hereto as Exs. A-F), each non-GP Defendant described in detail the processes and procedures undertaken (i) to develop individualized search terms specific to each company; (ii) to de-duplicate their ESI; (iii) to apply the individualized search terms to their ESI collection, resulting in a set of hits and in a null set; (iv) to select a statistically significant sample from their null set, and (v) to review their sample for any "false negatives." Plaintiffs' motion offers no suggestion as to what specific information

the non-GP Defendants' failed to provide that is necessary to the cross-examination of Mr. Regard.

To the extent Plaintiffs seek documents concerning the non-GP Defendants' validation processes that were *not* provided to Mr. Regard, and that were not considered by him in formulating his conclusions, Plaintiffs offer no authority entitling them to such broad discovery. And Defendants are unaware of any. All of the non-GP Defendants have produced the documents relied upon by Mr. Regard, and have even *created* additional documents (i.e., the March 21 letters) to try and satisfy Plaintiffs' information requests.[1] Plaintiffs' allegations are baseless and their Motion should be denied.

## II. The Court May Properly Consider Mr. Regard's Testimony And His Chart On The Defendants' Validation Process

Plaintiffs also complain that the non-GP Defendants are trying to introduce hearsay evidence through Mr. Regard's testimony. Motion, p. 1. But Mr. Regard has been tendered as an expert in the field of ESI. 2/21/12 Tr. p. 86. He has offered his expert opinion that the non-GP Defendants' search methodologies "were consistent with [his] experience and [his] understanding of best practices." 2/21/12 Tr. p. 80; Regard Report, p. 2. Mr. Regard is entitled to testify as to the facts upon which his opinion is based. Those facts include the non-GP Defendants' validation processes and results. That these processes and results were based in part on interviews and are described in letters from counsel does not in any way render Mr. Regard's testimony inappropriate or inadmissible. The Seventh Circuit has made clear that "an expert is not limited to relying on admissible evidence in forming his opinion. That would be a crippling

---

[1] The Court should compare Defendants' substantial disclosures on the issue of search methodology to Plaintiffs' less-than-one-page response to Defendants' earlier request to Plaintiffs for information as to Plaintiffs' document search and collection efforts, attached hereto as Ex. H.

limitation because experts don't characteristically base their expert judgments on legally admissible evidence; the rules of evidence are not intended for the guidance of experts." *Boim v. Holy Land Found. For Relief & Dev.*, 549 F.3d 685, 704 (7th Cir. 2008) (en banc) (internal citations omitted). Rule 703 expressly permits an expert to rely on information that is not admissible and, in appropriate circumstances, the Rule even allows such information to be disclosed to a jury if it would help the jury evaluate the expert's opinion.

Moreover, the Rules of Evidence are not intended to be strictly applied to a discovery hearing like this. This hearing is to assist the Court in resolving a threshold discovery issue. 2/21/12 Tr. p. 12. None of the cases cited by Plaintiffs arise in the context of a discovery hearing.[2] Again, there is no jury to protect here. *See Peabody Coal*, 165 F. 3d at 1128-1129. This Court is very experienced in receiving expert testimony and giving it the weight to which it is entitled. Indeed, this Court has expressed the desire to receive all of the expert testimony, to be efficient as possible in receiving that evidence, and then give the parties an opportunity to file post-hearing briefs. 2/9/12 Tr. pp. 11:19-22; 17:14-20.

For this same reason, the Court may consider Mr. Regard's chart (Exhibit D to Mr. Regard's Report and Defendants' Exhibit 4). As the Court recognized at the February 21 hearing, the chart is simply an outline of Mr. Regard's testimony; it is to assist him in recalling the various data and test results for each non-GP Defendant and summarizes the relevant facts he gleaned from his interviews of Defendants' counsel and ESI professionals and review of the

---

[2] It is not at all unusual in discovery disputes for counsel to set forth in correspondence the basis for their respective positions on the disputed issue. And courts often rely on such correspondence in resolving the discovery dispute. If courts insisted on strict application of the Rules of Evidence and the submission of admissible evidence to resolve discovery disputes, litigation would be never-ending and the costs to the parties and the courts would skyrocket. However, if the Court believes it necessary, Defendants will submit declarations from their ESI vendors regarding their validation processes.

relevant correspondence. 2/21/12 Tr. p. 98. The Court noted that Mr. Regard is permitted to say on the stand what he did (*id*.), and the chart is an aid to him, the Court, and the Plaintiffs in understanding the information that he relied on. Having the data in black and white, in one spot, makes it easier for the Court and the Plaintiffs to comprehend, instead of having Mr. Regard simply recite the data orally. *See Minebea Co., Ltd. v. Papst*, 231 F.R.D. 1, *3 (D.D.C. 2005) (Expert's summary exhibits are admissible as demonstrative or pedagogical exhibits designed to summarize the expert's testimony. "This is a bench trial, after all, and there is no good reason for the Court not to consider these exhibits as a kind of road map prepared by the expert to assist the Court in evaluating his report and testimony.") Plaintiffs have had ample opportunity to absorb the information, which is the reason the Court continued Mr. Regard's examination on the chart from February 21 to March 28. 2/21/12 Tr. p. 105.

It is ironic that Plaintiffs now argue that the Court should prevent Mr. Regard from testifying as to the specific facts upon which he relied in reaching his conclusions. At the initial hearing, Plaintiffs complained that they had not had a sufficient opportunity to review those facts, including in particular the information underlying Defendants' Exhibit 4. Defendants have now provided that information – including direct testimony from Mr. Regard during the first hearing day explaining the Temple-Inland column in Defendants' Exhibit 4, Mr. Regard's written report and exhibits thereto, and letters from each Defendant. In striking contrast, the written report of Plaintiffs' expert, Dr. Lewis, submitted on February 16 in advance of the initial hearing date, merely set forth a series of general principles without a word on how those principles apply here, or about what facts Dr. Lewis was even considering in connection with the opinions he would offer. At bottom, Plaintiffs are suggesting that this Court should rely on the unsubstantiated assertions of Plaintiffs' experts, while precluding Mr. Regard from offering

testimony about the facts upon which his opinions are based. Plaintiffs' argument is unreasonable and legally baseless, and the Court should hear the full testimony of Mr. Regard at the March 28 hearing.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that Plaintiffs' motion to exclude or limit Mr. Regard's testimony and Defendants' Exhibit 4 be denied.

Dated: March 27, 2012

Respectfully submitted,

*/s/ Nathan P. Eimer*
Nathan P. Eimer
EIMER STAHL LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604-2516
(312) 660-7600
neimer@eimerstahl.com

Counsel for INTERNATIONAL PAPER COMPANY, *and for purposes of this submission only, on behalf of Defendants* PACKAGING CORPORATION OF AMERICA; CASCADES CANADA, INC.; INTERNATIONAL PAPER COMPANY; NORAMPAC HOLDINGS U.S. INC.; WEYERHAEUSER COMPANY; GEORGIA PACIFIC LLC; TEMPLE-INLAND INC.; and ROCKTENN CP, LLC

**CERTIFICATE OF SERVICE**

The undersigned certifies that on March 27, 2012, a true and correct copy of the foregoing **Defendants' Opposition to Plaintiffs' Motion to Preclude Defendants' Expert Witness from Testifying About Defendants' Testing and Validation Processes and to Preclude Exhibit From Being Admitted Into Evidence** was electronically filed with the Clerk of the Court for the Northern District of Illinois using the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                                /s/ *Nathan P. Eimer*
                                                Nathan P. Eimer
                                                An Attorney for Defendant International Paper Company