Exhibit A

MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

March 21, 2012

**Britt M. Miller**
Direct Tel +1 312 701 8663
Direct Fax +1 312 706 8763
bmiller@mayerbrown.com

**BY E-MAIL**

Mr. Daniel J. Mogin
THE MOGIN LAW FIRM, P.C.
707 Broadway, Suite 1000
San Diego, CA 92101

Re:   *Kleen Products, et al. v. Packaging Corp. of*
      *America, et al.*, Case No. 10-CV-5711 (N.D. Ill.)

Dear Dan:

I write in response to your March 6, 2012 letter to defense counsel in the above-referenced matter seeking "documents described or relied upon by Defendants' witnesses at the February 21, 2012, evidentiary hearing." As other defendants have stated in their respective responses to your letter, Temple-Inland Inc. ("Temple-Inland") does not believe that either Judge Shadur or Magistrate Judge Nolan anticipated, much less authorized, the sort of "discovery about discovery" that your letter attempts to engage in. Nonetheless, in the spirit of cooperation, the below describes the non-privileged responsive information Temple-Inland has within its possession, custody, or control. To be clear, by providing the below information, Temple-Inland does not waive its rights to object to these and any other requests plaintiffs may make regarding the materials and testimony proffered by Defendants during the course of the evidentiary hearing, and specifically does not waive any applicable privileges including but not limited to the attorney-client privilege and the work product doctrine.

***Request No. 1:*** As the 14 requests set forth in the first paragraph are addressed, for the most part, to counsel for Georgia-Pacific ("GP"), Temple-Inland has no responsive information to provide. To the extent paragraph 1.m. can be read to seek information from Temple-Inland, however, we respond as follows. Temple-Inland used Lexis Nexis LAW PreDiscovery software version 5.9.25 to filter operating system, program, and application files out of its document collection using the National Institute of Standards and Technology NSRL MD5 hash database (deNist) and to globally de-duplicate across the population of documents to be used for testing. Temple-Inland did not filter out any domain names. To date, Temple-Inland has spent more than $500,000 for the consulting, processing, hosting, and production services provided by its third party technology vendor; it also already has invested over 8500 hours of contract attorney review time (plus significant time by Mayer Brown attorneys) and its review of potentially responsive documents is not complete.

***Request No. 2:*** Your second request seeks documentation "describing" modifications to Temple-Inland's search terms. As detailed in the other Defendants' submissions to you on this issue and Defendants' submissions to the Court, Defendants sent their proposed list of search

Mayer Brown LLP

Mr. Daniel J. Mogin
March 21, 2012
Page 2

terms to plaintiffs on August 5, 2011. On September 14, 2011, plaintiffs tendered their response. On October 20, 2011, counsel for GP, on behalf of all Defendants, provided plaintiffs with a revised set of search terms that attempted to address the issues raised by plaintiffs in their September 14, 2011 letter. Temple-Inland then revised those search terms to address Temple-Inland-specific issues and constructed a stemming report to show how certain of the terms would be stemmed in performing the actual search for documents. Temple-Inland's list of search terms, as well as a redline comparing Temple-Inland's search terms to GP's search terms and Temple-Inland's stemming report was emailed to plaintiffs' counsel, including yourself, on December 13, 2011.

**_Request No. 3:_** Plaintiffs' Request No. 3 seeks any "documentation referred to or relied upon in connection with Defendants' Evidentiary Hearing Exhibit No. 4 ("Exhibit 4"). Temple-Inland does not have any non-privileged documents within its possession, custody, or control responsive to this request. We nonetheless respond as follows. Temple-Inland retained Scarab Consulting ("Scarab") as its outside ESI vendor in connection with the instant litigation. Scarab, working with Temple-Inland's outside counsel Mayer Brown LLP ("Mayer Brown"), created an ESI sampling, testing, and validation methodology in order to identify the corpus of Temple-Inland documents responsive to the plaintiffs' document requests, the results of which are outlined below.

At the outset, Mayer Brown, working with Temple-Inland, identified five "key" custodians[1] from Temple-Inland's list of relevant custodians (*see* B. Miller August 11, 2011 Letter) whose ESI would be used in the validation process. Those custodians' ESI for the period January 1, 2000 through December 31, 2010 was then collected and, as noted above, de-duplicated using LAW software (Version 5.9). The de-duplicated results—183,757 documents—were then ingested into Clearwell software (Version 6.5.19.1) and indexed. Scarab then applied the Temple-Inland search terms (*see* B. Miller December 13, 2011 Letter) to the entire de-duplicated population, resulting in 55,115 document hits (30% of the population). Scarab determined that in order to validate the null set of 128,642 documents to a minimum of a 95% confidence level, a statistical sample of 500 randomly chosen documents was appropriate. After using Clearwell's random document selection function to create the null random sample,[2] Mayer Brown attorneys reviewed the sample set to determine if there were any "false negatives"—*i.e.*, documents that were responsive to plaintiffs' document requests but not captured by the search strings. Of the 500 randomly chosen documents, Mayer Brown determined that 7—or 1.4%—were responsive to plaintiffs' requests for production.

---

[1]     "Key custodians" were those individuals who had decision-making responsibility for the manufacture or sale of linerboard, corrugated medium, containerboard, and corrugated products.

[2]     According to Clearwell, its "randomizer" function is provided by Java 6 and is s a linear congruential pseudorandom number generator, as defined by D. H. Lehmer and described by Donald E. Knuth in The Art of Computer Programming, Volume 3: Seminumerical Algorithms, section 3.2.1.

Mayer Brown LLP

Mr. Daniel J. Mogin
March 21, 2012
Page 3

As an additional step beyond the review of randomly chosen documents from the null set, Temple-Inland used Clearwell's "Topics" analytics function in order to further analyze Temple-Inland's null set. The Clearwell tool automatically generated 1,283 "topics" from the 128,642 null set documents. Mayer Brown attorneys then reviewed the list of "topics" and selected eleven that appeared to be potentially relevant. Those eleven topics included 351 documents that were subsequently reviewed by Mayer Brown attorneys; none were identified as responsive.

**_Request No. 4:_** This request generally seeks documents related to the February 21, 2012 testimony of Dan Regard. As a general matter, Temple-Inland has no non-privileged documents within its possession, custody, or control responsive to this request. That said, we would expect that Mr. Regard will be providing information regarding the information sought by plaintiffs' request as part of his March 21, 2012 submission to the Court. Specifically, Temple-Inland has provided Mr. Regard with copies of the following Temple-Inland-specific documents: (1) B. Miller's August 11, 2011 Letter to plaintiffs' counsel, (2) B. Miller's November 18, 2011 Letter to plaintiffs' counsel, (3) S. Neuwirth's November 22, 2011 letter to plaintiffs' counsel, (4) plaintiffs' December 2, 2011 Letter and Exhibits, (5) B. Miller's December 13, 2011 letter to plaintiffs' counsel attaching Temple-Inland's search terms and stemming report, (6) Temple-Inland's January 10, 2012 Rule 30(b)(6) Letter, (7) plaintiffs' January 23, 2012 response to the January 10, 2012 letter, and (8) and the transcripts (and exhibits) of the depositions of Marc Kobren and Shawn Dunn, Temple-Inland's 30(b)(6) corporate designees with respect to plaintiffs' November 2011 deposition notice.

**_Request No. 5:_** Request No. 5 seeks "a more complete disclosure of Mr. Regard's expected testimony." Magistrate Judge Nolan did not "require" any specific disclosures to be made prior to the February 21, 2012 Hearing. Rather, as discussed at the February 9, 2012 status hearing, submission of any preliminary expert reports (or similar materials) was optional. In any event, as stated in during the February 21 hearing and reiterated in Andy Marovitz's letter of March 13, 2012, Defendants, including Temple-Inland, intend to serve, no later than today, additional materials regarding Mr. Regard's opinions in this matter.

Sincerely,

_Britt M. Miller_

Britt M. Miller

cc:     Michael Freed (via email)
        Steven Kanner (via email)
        Defense Counsel (via email)

Exhibit B



**FOLEY & LARDNER LLP**

ATTORNEYS AT LAW

321 NORTH CLARK STREET
SUITE 2800
CHICAGO, ILLINOIS 60654
312.832.4500 TEL
312.832.4700 FAX
foley.com

WRITER'S DIRECT LINE
312.832.4557
jlee@foley.com EMAIL

CLIENT/MATTER NUMBER
075825-0127

March 21, 2012

<u>VIA E-MAIL</u>

Mr. Daniel Mogin
The Mogin Law Firm, P.C.
707 Broadway, Suite 1000
San Diego, CA 92101

        Re:    Containerboard Antitrust Litigation

Dear Dan:

        This is in response to your letter dated March 6, 2012, requesting documentation related to a number of topics on Defendants' document production process and the witnesses at the February 21, 2012 evidentiary hearing. Although we do not believe that discovery on the discovery was contemplated by the current hearing process, IP is providing these written responses to your requests in an attempt to provide more detail on our document review process. IP reserves all objections to your requests, and nothing provided herein should be deemed a waiver of the attorney-client privilege or the work product doctrine.

        1.    The requests set forth in Request No. 1 (other than 1.m.) appear directed solely to Georgia Pacific ("GP"). With respect to No. 1.m., any "steps taken by [IP] to cull [its] ESI corpus prior to using Defendants' Boolean search strings," IP used Clearwell v. 6.6 processing to filter operating system, program and application files using the National Institute of Standards and Technology NSRL MD5 hash database (deNIST) and globally de-duplicated all of the ESI. In addition, IP enlisted the services of Setec Investigations to cull Auburn Server data for non-user generated file types prior to Clearwell processing. Lastly, IP worked with Clearwell senior systems engineers to identify additional program files for supplemental filtering. To date, IP has spent more than $700,000 for the hosting, consulting and processing charges from the third party technology vendor, and this includes none of the expense for the more than 15,000 hours of contract attorney review time.

        2.    Request No. 2 seeks additional information related to modifications made to IP's search terms (the "Search Terms"), which were provided to Plaintiffs on February 6, 2012. As previously discussed in the submissions, Defendants sent a list of proposed search terms to Plaintiffs on August 5, 2011. In response to Plaintiffs' September 14, 2011 letter, GP sent to Plaintiffs on October 20, 2011, a revised set of search terms along with a stemming report that incorporated additional search strings aimed at addressing the concerns raised in Plaintiffs' September 14, 2011 letter. IP revised and augmented the search terms list until it was satisfied, through its testing protocol (outlined in response to Request No. 3 below), that the Search Terms were sufficiently tailored to capture IP's potentially responsive documents. That list was provided to Plaintiffs,

BOSTON        JACKSONVILLE      MILWAUKEE      SAN DIEGO        SILICON VALLEY
BRUSSELS      LOS ANGELES       NEW YORK       SAN DIEGO/DEL MAR   TALLAHASSEE
CHICAGO       MADISON          ORLANDO        SAN FRANCISCO     TAMPA
DETROIT        MIAMI            SACRAMENTO    SHANGHAI        TOKYO
                                                           WASHINGTON, D.C.

**▪▪FOLEY**

FOLEY & LARDNER LLP

Mr. Daniel Mogin
March 21, 2012
Page 2

together with IP's stemming report (showing those stems included and those excluded from the search) on February 6. A copy of a comparison between the GP search terms and IP's Search Terms is attached hereto as Exhibit A.

        3.      Request No. 3 seeks "any documentation referred to or relied upon in connection with Defendants' Evidentiary Hearing Exhibit No. 4." IP applied the Search Terms to the Named Custodians' ESI (as defined in IP's First Supplement to the 30(b)(6) Response, dated February 6, 2012; the "30(b)(6) Supplement"). This Corpus consisted of a total of 918,145 documents. Out of that Corpus, a total of 151,604 documents contained a "hit" from the Search Terms, while the remaining documents (a total of 766,541) did not contain a "hit" from the Search Terms. IP then employed the randomizing function in Clearwell v. 6.6[1] to pull a random sample of 665 documents and their attachments from the "Null Set," i.e. documents within the Corpus that were *not* hit by search terms, without regard for Custodian, source or type of ESI (the "Null Set Sample," or what is referred to in Exhibit 4 as the "Test Set"), to determine whether they contained any arguably responsive documents, as defined by IP's June 6, 2011 responses to Plaintiffs' requests for production (as amended by subsequent meet-and-confers among the parties). IP utilized a standard sample size calculator, developed by Creative Research Systems, to determine that 665 documents would provide a statistically significant sample. Enclosed with this letter is a copy of the Creative Research Systems webpage explaining the methodology for determining the size of the sample.

        IP used six (6) attorneys from Counsel on Call to review the Null Set Sample to determine how many documents, if any, were responsive, even though they did not contain a hit from the Search Terms. Five of the reviewers reviewed 111 documents each, while the sixth reviewer reviewed 110 documents. IP's Null Set testing also included a quality control review by outside counsel of every fifth document in the Null Set Sample. IP's results were that only 19 documents (2.857%) of the 665 documents in the Null Set Sample were arguably responsive (what is referred to in Exhibit 4 as "Test Set Responsive"). One of the 19 documents was also privileged, and would thus not be produced in any event. Based upon these results, IP can state with a 99% level of confidence that less than 2.9% (with a confidence interval of +/- 5%) of the documents that are not being captured by the Search Terms are responsive to Plaintiffs' RFPs.

        4.      Request No. 4 seeks, generally, documents referred to or relied upon by Mr. Regard in connection with his February 21, 2012 testimony. We expect that Mayer Brown will provide any further information on this issue on March 21 per the schedule set while we were in court on February 21. As to IP specifically, Mr. Regard has received copies of IP's 30(b)(6) Response, IP's 30(b)(6) Supplemental Responses, IP's February 9, 2012 letter to Jeff Sprung regarding IP's 30(b)(6) Deposition Topics, and the transcripts (and exhibits) of the depositions of David Orr and Mary Stiffler, IP's 30(b)(6) corporate designees.

---

     [1] The random number generator is provided by Java 6 and is described as a linear congruential pseudorandom number generator, as defined by D. H. Lehmer and described by Donald E. Knuth in *The Art of Computer Programming, Volume 3: Seminumerical Algorithms*, section 3.2.1.



FOLEY & LARDNER LLP

Mr. Daniel Mogin
March 21, 2012
Page 3

Very truly yours,

Joanne Lee

cc:    Michael Freed (via email)
       Steven Kanner (via email)
       Nathan Eimer (via email)
       Andrew Marovitz (via email)
       James T. McKeown (via email)

Exhibit A

| IP/GP Search Term Comparison | | |
|---|---|---|
| **String No.** | **GP Search** | **IP Search** |
| 01 | "ipaper.com" OR "cascades.com" OR "domtar.com" OR "norampac.com" OR "packagingcorp.com" OR "smurfit.com" OR "templeinland.com" OR "weyerhaeuser.com" | [all domain gp.com][or all domain gapac.com][or all domain cascades.com][or all domain domtar.com][or all domain norampac.com][or all domain packagingcorp.com][or all domain smurfit.com][or all domain templeinland.com][or all domain weyerhaeuser.com][or all domain rocktenn.com] |
| 01.1 | (weyerhaeuser OR "weyco" OR "wy" OR "temple-inland" OR "temple inland" OR "temple" OR "inland" OR "ti" OR "smurfit-stone" OR "smurfit" OR "sscc" OR "pca" OR "packaging corporation of america" OR "international paper" OR "ipaper" OR "intl paper" OR "ip" OR "norampac" OR "np" OR "cascades" OR "cas" OR domtar OR "IP" OR "DTC" OR "TIN" OR "WY" OR "UFS" OR "NP" OR "cas.to") w/10 (phone OR telephone OR fax OR facsimile OR email OR e-mail OR "e-mailed" OR <e-mail> OR call OR meet OR mtg OR contact OR "talk to" OR "talked to" OR spoken OR voicemail OR "voice mail" OR vm OR sms OR message OR mms OR text OR communicate OR discuss) | [Any Text: (weyerhaeuser OR weyerhaeuser OR weyco OR wy OR temple OR inland OR ti OR smurfit OR sscc OR pca OR "packaging corporation of america" OR "georgia pacific" OR gp OR gapac OR norampac OR np OR cascades OR cas OR domtar OR dtc OR tin OR sscq OR rkt OR ufs OR "cas.to" OR "rock tenn" OR rocktenn OR "rock tn" OR rocktn) w/10 (phone OR telephone OR fax OR facsimile OR email OR "e-mail" OR call OR meet OR mtg OR contact OR talk OR spoke OR voicemail OR "voice mail" OR vm OR sms OR message OR mms OR text OR communicate OR discuss)] |
| 01.2 | (phone OR telephone OR fax OR facsimile OR email OR "e-mail" OR "e-mailed" OR call OR meet OR mtg OR contact OR "talk to" OR "talked to" OR spoken OR SMS OR MMS OR voicemail OR "voice mail" OR vm OR text OR communicate OR discuss) w/10 (liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR ctb OR cb OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR <white-top> OR wt OR (kraft w/1 (liner OR linerboard))) w/10 (price* OR sale OR trade OR swap OR demand OR cost OR distribute OR logistics OR capacity OR output OR production OR supply OR inventory OR "operating rate" OR "utilization rate")) | [Any Text: ((phone OR telephone OR fax OR facsimile OR email OR "e-mail" OR call OR meet OR mtg OR contact OR talk OR spoke OR sms OR mms OR voicemail OR "voice mail" OR vm OR text OR communicate OR discuss) w/10 (liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR cb OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR wt OR kraft OR ctrb OR ipg OR cbpr OR readyfill OR cta OR britetop OR "brite top" OR boxusa OR "box usa" OR brown OR preprint OR "pre print")) w/10 (price OR sale OR trade OR swap OR demand OR cost OR distribute OR logistics OR capacity OR output OR production OR supply OR inventory OR "operating rate" OR "utilization rate")] |
| 02 | "fba" OR "fibre box association" OR "af&pa" OR "afpa" OR "american forest & paper association" OR "icca" OR "international corrugated case association" OR "cpa" OR "corrugated packaging alliance" OR "cpaat" OR "corrugated packaging alliance action team" OR "pima" OR "paper industry management association" OR "association of independent corrugated converters" OR "AICC" OR "RISI" OR WCO OR "world containerboard organ*" | [Any Text: "fba" OR "fibre box" OR fibrebox OR "af&pa" OR afpa OR "american forest & paper association" OR icca OR "international corrugated case association" OR cpa OR "corrugated packaging alliance" OR cpaat OR pima OR "paper industry management association" OR "association of independent corrugated converters" OR aicc OR risi OR wco OR "world containerboard organization"] |
| 03 | (substitute OR alternative) w/5 (box OR container OR corrugated) | [Any Text: (substitute OR alternative) w/5 (box OR readyfill OR cta OR britetop OR "brite top" OR boxusa OR "box usa" OR brown OR preprint OR "pre print") OR container OR corrugated)] |
| 04 | [eliminated search string due to redundancy] | [eliminated search string due to redundancy] |
| 05 | (rationalize OR clos* OR shut* OR idle OR suspen* OR "start up" OR <start-up> OR resum* OR restart) w/25 (mill OR plant OR machine OR Toledo OR "Cedar Springs" OR Brewton OR Monticello OR "Big Island") | [Any Text: (rationalize OR close OR shut OR idle OR suspend OR "start up" OR "start-up" OR resume OR restart) w/25 (mill OR plant OR machine OR mansfield OR pineville OR prattville OR savannah OR "terre haute" OR vicksburg OR madison OR pensacola OR valliant OR "cedar river" OR "pine hill" OR "red river" OR albany OR springfield OR henderson OR groveton OR hueneme)] |
| 06 | downtime OR slowback OR (slow w/2 back) OR downdays OR (down w/10 (days OR hours)) OR (("shutdown" OR "slowdown") w/25 ("fixed costs" OR "variable costs")) OR "s&op" OR "sop" OR "tonnage balance" OR "pov" OR ((lose OR loose) w/5 (hour OR day)) OR (machine w/25 restrict) OR "production profile" | [Any Text: downtime OR "down time" OR dt OR loo OR slowback OR "slow back" OR downdays OR (down w/10 (days OR hours)) w/25 (("shutdown" OR "slowdown") w/25 ("fixed costs" OR "variable costs")) OR "s&op" OR sop OR "tonnage balance" OR pov OR ((lose OR loose) w/5 (hour OR day)) OR (machine w/25 restrict) OR "production profile"] |
| 06.1 | ((increase OR decrease OR low OR high OR change OR expan* OR maximize OR restrict OR reduc* OR curt* OR weekly OR monthly OR actual OR "week of" OR "month of") w/10 (capacity OR output OR produc* OR supply OR supplies OR inventory OR "operating rate" OR "utilization rate")) w/10 (liner OR linerboard OR LB OR medium OR med OR containerboard OR CTB OR CB OR box* OR container OR corrugated OR sheet* OR "white top" OR "white-top" OR WT OR (kraft w/1 (liner OR linerboard))) | [Any Text: ((increase OR decrease OR low OR high OR change OR expand OR expansion OR expanding OR maximize OR restrict OR reduce OR reduction OR curtail OR weekly OR monthly OR actual OR "week of" OR "month of") w/10 (capacity OR output OR produce OR production OR produced OR supply OR inventory OR "operating rate" OR "utilization rate")) w/10 (liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR cb OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR wt OR kraft OR readyfill OR cta OR britetop OR "brite top" OR boxusa OR "box usa" OR brown OR preprint OR "pre print" OR ctrb OR ipg OR cbpr)] |
| 07 | (pric* w/5 (analyze OR analysis OR evaluate OR assess OR study OR consider)) w/25 (liner OR linerboard OR LB OR medium OR med OR containerboard OR CTB OR CB OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR WT OR (kraft w/1 (liner OR linerboard))) | [Any Text: (price w/5 (analyze OR analysis OR evaluate OR assess OR study OR consider)) w/25 (liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR cb OR ctbr OR ipg OR cbpr OR box OR readyfill OR cta OR britetop OR "brite top" OR boxusa OR "box usa" OR brown OR preprint OR "pre print" OR container OR corrugated OR sheet OR "white top" OR "white-top" OR wt OR dlk OR (kraft w/1 (liner OR linerboard))))] |

*Terms in red represent substantive changes, green represent proper name substitutions, and yellow represent changes to Boolean syntax, which do not alter the substance.

Exhibit A

| | IP/GP Search Term Comparison | |
|---|---|---|
| **String No.** | **GP Search** | **IP Search** |
| 08 | (pric* w/5 (increase OR decrease OR raise OR low OR high OR declin* OR change OR discount OR rebate OR offset OR reduc* OR project* OR agree* OR cost OR demand OR ton OR negotiate OR commission OR actual OR current OR monthly OR weekly OR "week of" OR "month of")) w/25 (liner OR linerboard OR LB OR medium OR med OR containerboard OR CTB OR CB OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR WT OR *(kraft w/1 (liner OR linerboard))* | [Any Text: (price w/5 (increase OR decrease OR raise OR low OR high OR decline OR change OR discount OR rebate OR offset OR reduce OR reduction OR project OR agree OR cost OR demand OR ton OR negotiate OR commission OR actual OR current OR monthly OR weekly OR "week of" OR "month of")) w/25 (liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR ctrb OR cb OR **ipg OR cbpr** OR box OR **readyfill OR cta OR britetop OR "brite top" OR boxusa OR "box usa" OR brown OR preprint OR "pre print"** OR container OR corrugated OR sheet OR "white top" OR "white-top" OR wt OR **kraft OR dlk**)] |
| 8.1 | ((profit OR margin OR sale OR revenue OR EPS OR EBITDA) w/5 (increase OR decrease OR raise OR low OR high OR change OR discount OR rebate OR offset OR reduc* OR "cost" OR demand OR ton)) w/15 (liner OR linerboard OR LB OR medium OR med OR containerboard OR CTB OR CB OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR WT OR *(kraft w/1 (liner OR linerboard))* | [Any Text: ((profit OR margin OR sale OR revenue OR eps OR ebitda) w/5 (increase OR decrease OR raise OR low OR high OR change OR discount OR rebate OR offset OR reduce OR reduction OR project OR cost OR demand OR ton)) w/15 (liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR cb OR container OR corrugated OR sheet OR "white top" OR "white-top" OR wt OR **kraft OR ctrb OR ipg OR cbpr** OR box OR **readyfill OR cta OR britetop OR "brite top" OR boxusa OR "box usa" OR brown OR** **"pre print"**] |
| 8.2 | (cost w/5 (increase OR decrease OR raise OR low OR high OR decline OR change OR discount OR offset OR reduc* OR project OR agree* OR negotiate OR ton)) w/15 (liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR cb OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR wt OR *(kraft w/1 (liner OR linerboard))* | [Any Text: (cost w/5 (increase OR decrease OR raise OR low OR high OR decline OR change OR discount OR offset OR reduce OR reduction OR project OR agree OR negotiate OR ton)) w/15 (liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR cb OR **ctrb OR ipg OR cbpr** OR **readyfill OR cta OR britetop OR "brite top" OR boxusa OR "box usa" OR brown OR preprint OR "pre print"** OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR wt OR **dlk OR kraft**)] |
| 09 | *("elasticity of demand" OR "demand elasticity" OR "price elasticity" OR "inelasticity of demand" OR "inelastic demand")* AND (liner OR linerboard OR LB OR medium OR med OR containerboard OR CTB OR CB OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR WT OR *(kraft w/1 (liner OR linerboard))* | [Any Text: **(elasticity OR inelasticity)** AND (liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR cb OR **ctrb OR ipg OR cbpr OR readyfill OR britetop OR "brite top" OR cta OR boxusa OR "box usa" OR brown OR preprint OR "pre print"** OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR wt OR **dlk OR kraft**)] |
| 09.1 | demand w/10 (liner OR linerboard OR LB OR medium OR med OR containerboard OR CTB OR CB OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR <white-top> OR WT OR *(kraft w/1 (liner OR linerboard))* | [Any Text: demand w/10 (liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR cb OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR wt OR **ctrb OR ipg OR cbpr OR readyfill OR britetop OR "brite top" OR cta OR boxusa OR "box usa" OR brown OR preprint OR "pre print" OR dlk OR kraft**)] |
| 10 | (((discipline OR leader* OR follow) w/5 (pric* OR industry OR supply OR production OR capacity OR output OR inventory)) OR (price w/2 match)) AND (liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR cb OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR <white-top> OR wt OR *(kraft w/1 (liner OR linerboard))* AND (weyerhaeuser OR "weyco" OR "wy" OR *"temple-inland" OR "temple inland"* OR "temple" OR "inland" OR "ti" OR "smurfit-stone" OR "smurfit" OR "sscc" OR "pca" OR "packaging corporation of america" OR "international paper" OR "ipaper" OR "intl paper" OR "ip" OR norampac OR "np" OR "cascades" OR "cas" OR domtar OR "ip" OR "dtc" OR "tin" OR "wy" OR "ufs" OR "np" OR "cas.to") | [Any Text: (((discipline OR leader OR follow) w/5 (price OR industry OR supply OR production OR capacity OR output OR inventory)) OR (price w/2 match)) AND (liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR cb OR **ctrb OR ipg OR cbpr OR readyfill OR cta OR britetop OR "brite top" OR boxusa OR "box usa" OR brown OR preprint OR "pre print"** OR box OR container OR corrugated OR sheet OR "white top" OR "white-top" OR wt OR **dlk OR kraft** OR weyerhaeuser OR **weyerhauser** OR weyco OR wy OR *temple OR inland* OR ti OR smurfit OR sscc OR pca OR "packaging corporation of america" OR gp OR "georgia pacific" OR norampac OR np OR cascades OR cas OR domtar OR dtc OR tin OR wy OR ufs OR np OR "cas.to" OR **"rock tenn" OR rocktenn OR "rock tn" OR rocktn**)] |
| 11 | (weyerhaeuser OR "weyco" OR "wy" OR *"temple-inland" OR "temple inland"* OR temple OR inland OR "ti" OR *"smurfit-stone"* OR smurfit OR "sscc" OR "pca" OR "packaging corporation of america" OR *"international paper" OR "ipaper" OR "intl paper" OR "ip"* OR noram pac OR "np" OR cascades OR "cas" OR pkg OR tin OR cas.to OR wy OR ufs OR DTC)) w/25 ("market share" OR <m/s> OR pric* OR compet* OR monitor* OR "antitrust" OR "anti-trust" OR illegal OR unlawful OR conspir* OR "downtime" OR "slow back" OR "slowback" OR "slow-back" OR capacity OR output OR production OR supply OR supplies OR inventor* OR "operating rate" OR "utilization rate") | [Any Text: (weyerhaeuser OR **weyerhauser** OR weyco OR wy OR *temple OR inland* OR ti OR *smurfit* OR sscc OR pca OR "packaging corporation of america" OR **gp OR "georgia pacific"** OR norampac OR np OR cascades OR cas OR pkg OR tin OR cas.to OR ufs OR dtc OR **"rock tenn" OR rocktenn OR "rock tn" OR rocktn**) w/25 ("market share" OR "m/s" OR price OR compete OR monitor OR antitrust OR "anti-trust" OR illegal OR unlawful OR conspire OR downtime OR "slow back" OR slowback OR "slow-back" OR capacity OR output OR production OR supply OR inventory "operating rate" OR "utilization rate")] |
| 12 | (weyerhaeuser OR "weyco" OR "wy" OR *"temple-inland" OR "temple inland"* OR "temple" OR "inland" OR "ti" OR *"smurfit-stone"* OR "smurfit" OR "sscc" OR "pca" OR "packaging corporation of america" OR *"international paper" OR "ipaper" OR "intl paper" OR "ip"* OR "norampac" OR "np" OR "cascades" OR "cas" OR pkg OR tin OR cas.to OR *wy* OR ufs OR dtc) w/5 ("press release" OR statement OR announce OR report) | [Any Text: (weyerhaeuser OR **weyerhauser** OR weyco OR wy OR *temple OR inland* OR smurfit OR sscc OR pca OR "packaging corporation of america" OR **gp** OR *"georgia pacific"* OR norampac OR np OR cascades OR cas OR pkg OR tin OR cas.to OR ufs OR **sscco OR rkt** OR dtc OR **"rock tenn" OR rocktenn OR "rock tn" OR rocktn**) w/5 ("press release" OR statement OR announce OR report)] |
| 13 | kleen OR ("rpr" w/2 enterprises) OR ("r.p.r." w/2 enterprises) OR "mighty pac" OR ferraro OR "distributors packaging" OR "hatco" OR "chandler packaging" OR topsy* | [Any Text: kleen OR ("rpr" w/2 enterprises) OR ("r.p.r." w/2 enterprises) OR "mighty pac" OR ferraro OR "distributors packaging" OR "hatco" OR "chandler packaging" OR topsy] |
| 14 | Complain* w/10 (pric* OR term OR condition OR refus* OR fail* OR supply) | [Any Text: complaint w/10 (price OR term OR condition OR refuse OR fail OR supply)] |

*Terms in red represent substantive changes, green represent proper name substitutions, and yellow represent changes to Boolean syntax, which do not alter the substance.    Page 2

Exhibit A

| | IP/GP Search Term Comparison | |
|---|---|---|
| String No. | GP Search | IP Search |
| 15 | (budget OR projection OR estimate OR forecast OR trend* OR outlook) w/10 (liner OR linerboard OR LB OR medium OR med OR containerboard OR CTB OR CB OR box OR container OR corrugated OR sheet* OR "white top" OR "white-top" OR WT OR (kraft w/1 (liner OR linerboard))) | [Any Text: (budget OR projection OR estimate OR forecast OR trend OR outlook) w/10 (liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR cb OR box OR ctrb OR ipg OR cbpr OR readyfill OR cta OR britetop OR "brite top" OR boxusa OR "box usa" OR brown OR preprint OR "pre print" OR container OR corrugated OR sheet OR "white top" OR "white-top" OR wt OR dlk OR kraft)] |
| 16 | (price w/3 increase) w/10 ("pass through" OR "pass-through" OR fail OR "fell flat" OR stick) | [Any Text: (price w/3 increase) w/10 ("pass through" OR "pass-through" OR fail OR "fell flat" OR stick)] |
| 17 | (((economy OR economic OR demand) w/5 (downturn OR tank OR collapse)) OR recession*) w/25 (containerboard OR liner OR linerboard OR medium OR corrugated OR box OR sheet OR (kraft w/1 (liner OR linerboard))) | [Any Text: (((economy OR economic OR demand) w/5 (downturn OR tank OR collapse)) OR recession) w/25 (containerboard OR liner OR linerboard OR medium OR corrugated OR box OR sheet OR kraft OR lb OR med OR ctb OR cb OR ctrb OR ipg OR cbpr OR readyfill OR cta OR britetop OR "brite top" OR boxusa OR "box usa" OR brown OR preprint OR "pre print" OR container OR "white top" OR "white-top" OR wt OR dlk)] |
| 18 | N/A | [Any Text: trade w/10 (balance OR inbalance)] |
| 19 | N/A | [Any Text: "gp.com" OR "cascades.com" OR "domtar.com" OR "norampac.com" OR "packagingcorp.com" OR "smurfit.com" OR "templeinland.com" OR "weyerhaeuser.com" OR "gapac.com" OR "rocktenn.com"] |
| 20 | N/A | [DocType: Calendar Item][Any Text: weyerhaeuser OR weyerhauser OR weyco OR wy OR temple OR inland OR ti OR smurfit OR sscc OR pca OR "packaging corporation of america" OR "georgia  pacific" OR gp OR gapac OR norampac OR np OR cascades OR cas OR domtar OR dtc OR tin OR ssccq OR rkt OR ufs OR "cas.to" OR "rock tenn" OR rocktenn OR "rock tn" OR rocktn OR liner OR linerboard OR lb OR medium OR med OR containerboard OR ctb OR ctrb OR cb OR ipg OR cbpr OR box OR readyfill OR cta OR britetop OR "brite top" OR boxusa OR "box usa" OR brown OR preprint OR "pre print" OR container OR corrugated OR sheet OR "white top" OR "white-top" OR wt OR kraft OR dlk OR price OR sale OR trade OR swap OR demand OR cost OR distribute OR logistics OR capacity OR output OR production OR supply OR inventory OR "operating rate" OR "utilization rate" OR downturn OR tank OR collapse OR "trend-line" OR "trend line" OR trendline OR "pass through" OR "pass-through" OR fail OR "fell flat" OR stick] |
| 21 | N/A | [Any Text: ("trend line" OR "trend-line" OR trendline) w/10 price] |

Go to Navigation Go to Content
Creative Research Systems Client Login

Your Complete Survey System Software Solution

- Home
- About
  - Reviews/Comments
  - Client List
  - Testimonials
  - Case Studies
- Products
  - Editions
  - Modules
  - Price/Ordering
- Services
  - Web Survey Hosting
  - Training Workshop
  - Data Processing
- Downloads
  - Survey Templates
  - Update Version 10.0
  - Update Version 9.5
  - Update Version 9.0
  - Update Version 8.1
- Research Aids
  - Sample Size Calculator
  - Sample Size Formula
  - Significance
  - Survey Design
  - Correlation
- Location & Hours
  - International Distributors
  - Interviewing Companies
- Contact Us
- Free Quote

[ Search field ] Search

Get Your Free Consultation!

# Sample Size Calculator

This Sample Size Calculator is presented as a public service of Creative Research Systems survey software. You can use it to determine how many people you need to interview in order to get results that reflect the target population as precisely as needed. You can also find the level of precision you have in an existing sample.

Before using the sample size calculator, there are two terms that you need to know. These are: **confidence interval** and **confidence level**. If you are not familiar with these terms, click here. To learn more about the factors that affect the size of confidence intervals, click here.

Enter your choices in a calculator below to find the sample size you need or the confidence interval you have. Leave the Population box blank, if the population is very large or unknown.

## Determine Sample Size

Confidence Level:   ⦿ 95%  ○ 99%

Confidence Interval: [          ]

Population: [          ]

[ Calculate ]     [ Clear ]

Sample size needed: [          ]

## Find Confidence Interval

Confidence Level:   ⦿ 95%  ○ 99%

Sample Size: [          ]

Population: [          ]

Percentage: [ 50       ]

[ Calculate ]     [ Clear ]

Confidence Interval: [          ]

# Sample Size Calculator Terms: Confidence Interval & Confidence Level

The **confidence interval** (also called margin of error) is the plus-or-minus figure usually reported in newspaper or television opinion poll results. For example, if you use a confidence interval of 4 and 47% percent of your sample picks an answer you can be "sure" that if you had asked the question of the entire relevant population between 43% (47-4) and 51% (47+4) would have picked that answer.

The **confidence level** tells you how sure you can be. It is expressed as a percentage and represents how often the true percentage of the population who would pick an answer lies within the confidence interval. The 95% confidence level means you can be 95% certain; the 99% confidence level means you can be 99% certain. Most researchers use the 95% confidence level.

When you put the confidence level and the confidence interval together, you can say that you are 95% sure that the true percentage of the population is between 43% and 51%. The wider the confidence interval you are willing to accept, the more certain you can be that the whole population answers would be within that range.

For example, if you asked a sample of 1000 people in a city which brand of cola they preferred, and 60% said Brand A, you can be very certain that between 40 and 80% of all the people in the city actually do prefer that brand, but you cannot be so sure that between 59 and 61% of the people in the city prefer the brand.

# Factors that Affect Confidence Intervals

There are three factors that determine the size of the confidence interval for a given confidence level:

- Sample size
- Percentage
- Population size

## Sample Size

The larger your sample size, the more sure you can be that their answers truly reflect the population. This indicates that for a given confidence level, the larger your sample size, the smaller your confidence interval. However, the relationship is not linear (i.e., doubling the sample size does not halve the confidence interval).

## Percentage

Your accuracy also depends on the percentage of your sample that picks a particular answer. If 99% of your sample said "Yes" and 1% said "No," the chances of error are remote, irrespective of sample size. However, if the percentages are 51% and 49% the chances of error are much greater. It is easier to be sure of extreme answers than of middle-of-the-road ones.

When determining the sample size needed for a given level of accuracy you must use the worst case percentage (50%). You should also use this percentage if you want to determine a general level of accuracy for a sample you already have. To determine the confidence interval for a specific answer your sample has given, you can use the percentage picking that answer and get a smaller interval.

## Population Size

How many people are there in the group your sample represents? This may be the number of people in a city you are studying, the number of people who buy new cars, etc. Often you may not know the exact population size. This is not a problem. The mathematics of probability proves the size of the population is irrelevant unless the size of the sample exceeds a few percent of the total population you are examining. This means that a sample of 500 people is equally useful in examining the opinions of a state of 15,000,000 as it would a city of 100,000. For this reason, The Survey System ignores the population size when it is "large" or unknown. Population size is only likely to be a factor when you work with a relatively small and known group of people (e.g., the members of an association).

The confidence interval calculations assume you have a genuine random sample of the relevant population. If your sample is not truly random, you cannot rely on the intervals. Non-random samples usually result from some flaw in the sampling procedure. An example of such a flaw is to only call people during the day and miss almost everyone who works. For most purposes, the non-working population cannot be assumed to accurately represent the entire (working and non-working) population.

Research Aids

Research Aids

- Sample Size Calculator
- Sample Size Formula
- Significance
- Survey Design
- Correlation



Select Language

 Gadgets powered by Google

# Associations

Home | About Us | Products | Services | Downloads | Research Aids | Location & Hours | Contact Us | Free Quote

Copyright © 2007-2010 Creative Research Systems, All Rights Reserved | Privacy Policy | Site Map

Exhibit C

# K&L|GATES

K&L Gates LLP
70 West Madison Street
Suite 3100
Chicago, IL 60602-4207

T 312.372.1121    www.klgates.com

March 21, 2012

Scott M. Mendel
D 312.807.4252
F 312.827.8131
scott.mendel@klgates.com

Daniel J. Mogin
The Mogin Law Firm
707 Broadway, Suite 1000
San Diego, CA 92101
Kleen Products, Plaintiff

Re:   *Kleen Products LLC et al. v. Packaging Corporation of America, et al.*, Case No.
      1:10-cv-05711

Dear Dan:

        This is in response to your letter dated March 6, 2012 as it relates to Cascades
Canada, ULC and Norampac Holdings U.S., Inc. ("Norampac").   Norampac reserves all
objections to your requests, and nothing in this letter should be deemed a waiver of the
attorney-client privilege or the work product doctrine.

        1.      With respect to Request 1.m., Norampac used Attenex Patterns Workbench v.
5.1 to filter operating system, program, and application files using the National Institute of
Standards and Technology NSRL MD5 hash database (deNIST).  Norampac also used
Attenex Patterns Workbench v. 5.1 to de-duplicate each of the Norampac Custodian's ESI.
Attenex Patterns Workbench v. 5.1 was also used to cull Norampac data for non-user-
generated file types, empty (zero-length) files, container files[1], and certain types of database
files.

        2.      With respect to Request No. 2, Norampac revised the search terms Georgia
Pacific sent to Plaintiffs on October 20, 2011 to include Norampac's mill names and
Norampac-specific reports.  The Norampac search terms list, which includes wildcards, was
provided to plaintiffs on December 13, 2011

---

[1] Attenex Patterns Workbench v. 5.1 processed and made ready for review the extracted contents of container
files, such as .ZIP, .RAR, and .PST files, but does not process and make ready for review the container files
themselves.

CI-9282589 v1

K&L|GATES

Daniel J. Mogin
March 21, 2012
Page 2

3.      With respect to Request No. 3, Norampac applied its search terms to the Norampac Custodians' ESI (as defined in Norampac's Rule 30(b)(6) Response dated January 11, 2012, at page 11, (c)(1)).  This consisted of a total of 330,429 documents.  Out of that total, 79,822 documents contained a "hit" from the search terms, while the remaining documents (a total of 250,607) did not contain a "hit" from the search terms (the "Null Set").  Norampac then employed the randomizing function in Attenex v. 5.1 to pull a random sample of 511 documents and their attachments (not including French language documents) from the Null Set to determine whether they contained any arguably responsive documents.  Norampac utilized a standard sample size calculator, developed by Creative Research Systems, to determine that 384 documents would provide a statistically significant sample.

Two K&L Gates attorneys reviewed the 511 documents to determine how many, if any, were responsive, even though they did not contain a hit from the search terms.  Only 17 (3.327%) of the 511 documents were arguably responsive.  Based upon these results, Norampac can state with a 95% level of confidence that less than 3.3% (with a margin of error of +/- 5%) of the documents that are not being captured by the search terms are responsive to Plaintiffs' RFPs.

Sincerely,

Scott Mendel /xm

Scott M. Mendel

cc:     Michael J. Freed

# Exhibit D

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

300 North LaSalle Street
Chicago, Illinois  60654

Leonid Feller
To Call Writer Directly:
(312) 862-2954
leonid.feller@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

March 21, 2012

**BY E-MAIL & FIRST CLASS MAIL**

Daniel J. Mogin
THE MOGIN LAW FIRM
707 Broadway, Suite 1000
San Diego, CA 92101

Re:     *Kleen Products LLC, et al. v. Packaging Corp. of America, et al.*,
          Case No. 10-CV-5711 (N.D. Ill.)

Dear Dan:

I write on behalf of Packaging Corporation of America ("PCA") to respond to your March 6, 2012 letter requesting further information and documents in connection with the February 21, 2012 ESI hearing.  Although PCA does not believe that the Court contemplated what amounts to a separate round of discovery concerning ESI processes, in the continued spirit of cooperation, PCA provides the following information.  PCA reserves all appropriate objections, including as to relevance, privilege, and attorney work-product.

1.      Request No. 1 appears to be aimed exclusively at GP.  To the extent that this request seeks information about PCA's culling of ESI prior to the application of search strings (*see* 1.m), PCA states that it worked through its outside vendor, Epiq Systems, Inc., to employ the e-datamatrix software to filter and cull out operating system, program, application, and other similar files using the NIST SHA-1 hash database.  The ESI corpus then was de-duped globally and across custodians using SHA-1.

2.      Request No. 2 seeks information concerning modifications to the list of search terms previously provided to plaintiffs.  My December 12, 2011 letter to Mike Freed and you provided PCA's search strings and wildcards and set forth the PCA-specific modifications to GP's search strings.  *See* Letter from L. Feller to M. Freed *et al.*, December 12, 2011.

3.      Request No. 3 seeks documents and information relating to Defendants' Exhibit 4, introduced at the February 21 hearing.  Except as discussed below, PCA is not in possession of any non-privileged "documentation" in connection with Exhibit 4.

Hong Kong      London      Los Angeles      Munich      New York      Palo Alto      San Francisco      Shanghai      Washington, D.C.

# KIRKLAND & ELLIS LLP

March 21, 201
Page 2

By way of further explanation, PCA described to Plaintiffs its document and ESI collection processes in my December 23, 2011 letter in connection with Plaintiffs' Fed.R.Civ.P. 30(b)(6) notice.  *See* Response No. 3, Letter from L. Feller to M. Freed *et al.*, December 23, 2011.  Following deduplication, PCA's potentially responsive ESI collection numbered 532,899 documents.[1]  PCA's search strings were applied to these documents, resulting in 49,926 documents hits (expanding to 62,332 documents including families).

Of the 532,899 documents, 470,567 did not hit on PCA's search strings and were not family members of such hits.  Because certain documents were batched together in container files, the null set used to create PCA's validation sample consisted of 339,889 documents.

PCA's ESI vendor, Epiq Systems, then generated a statistically significant sample from the null set using a perl script, resulting in a sample set of 665 documents used for PCA's validation.  PCA also examined family members of these 665 documents, resulting in a total review set of 899 documents.  Five Kirkland & Ellis attorneys reviewed the sample set and 32 of the 665 documents were determined to be responsive to plaintiffs' document requests.  3 of these 32 documents had family members, such that of the 899-document population, 35 documents either hit on search strings or were family members of such hits.

PCA's sample size and confidence level were generated using a commercially available statistical sampling calculator from Creative Research Systems (http://www.surveysystem.com/sscalc.htm).

4.      Request No. 4 seeks documents provided to Mr. Regard.  PCA provided Mr. Regard with copies of its search term and 30(b)(6) correspondence to plaintiffs.  PCA did not provide Mr. Regard with any other documents.

---

[1]      As to the applicable date range, these 532,899 documents either were undated or were dated between January 1, 2004 through November 8, 2010.  If documents outside this date range are included, PCA's total ESI document collection – including families and following deduplication – totals 616,126.

# KIRKLAND & ELLIS LLP

March 21, 201
Page 3

     5.    Request No. 5 requests a disclosure relating to Mr. Regard's testimony.  PCA understands that counsel for Temple-Inland is responding to this request on behalf of all defendants.

Sincerely,

Leonid Feller

LF /rl

Enclosure

cc:   Michael Freed (via e-mail)
       Steven Kanner (via e-mail)
       Defense Counsel (via e-mail)

Exhibit E

# WINSTON & STRAWN LLP

| | | |
|---|---|---|
| BEIJING | 35 WEST WACKER DRIVE | MOSCOW |
| CHARLOTTE | CHICAGO, IL 60601 | NEW YORK |
| CHICAGO | | NEWARK |
| GENEVA | +1 (312) 558-5600 | PARIS |
| HONG KONG | | SAN FRANCISCO |
| HOUSTON | FACSIMILE +1 (312) 558-5700 | SHANGHAI |
| LONDON | www.winston.com | WASHINGTON, DC |
| LOS ANGELES | | |

R. Mark McCareins
Partner
(312) 558-5902
RMcCareins@winston.com

March 21, 2012

**VIA E-MAIL**

Mr. Daniel J. Mogin
The Mogin Law Firm, P.C.
707 Broadway, Suite 1000
San Diego, CA  92101

> **Re:** *Kleen Products, et al. v. Packaging Corporation of America, et al.*
> Case No. 10-CV-5711 (ND. Ill.)

Dear Dan:

On behalf of RockTenn CP, LLC ("RockTenn") (formerly known as Smurfit-Stone Container Corporation ("SSCC")), I write in response to your March 6, 2012 letter to all Defendants, in which you requested various documents purportedly "described or relied upon by Defendants' witnesses at the February 21, 2012, evidentiary hearing." As an initial matter, I share the concerns expressed by other Defendants that the type of "discovery within discovery" that Plaintiffs are seeking here is improper. Notwithstanding that concern, RockTenn is providing responses to your various requests in the spirit of cooperation called for by Judge Nolan. However, by responding below, RockTenn does not waive any of its objections to Plaintiffs' requests or the attorney-client privilege, work product doctrine, or any other applicable privilege.

Request No. 1 seeks, among other things, "[d]ocumentation about the Georgia-Pacific ("GP") search term development process that Mr. Brown testified was readily available." The only request within Request No. 1 that is applicable to RockTenn is Request No. 1.m – seeking "[d]ocumentation of the steps taken by any Defendants to cull their ESI corpus prior to using Defendants' Boolean search terms." RockTenn does not have any non-privileged responsive documents in its possession. However, RockTenn used NeedleFinder 4.3, a proprietary software tool of Equivalent Data ("EQD"), RockTenn's ESI consultant, to cull the data before applying the search terms sent by RockTenn to Plaintiffs. Using NeedleFinder, EQD filtered operating system files by comparing the MD5 hash code of each file loaded into NeedleFinder against the hash database maintained by the National Institute of Standards and Technology (available at www.nsrl.nist.gov) (i.e., "DNisted"). EQD also globally de-duplicated all of the ESI loaded into



NeedleFinder and culled any documents created before January 1, 2004 or after November 13, 2010.

Request No. 2 seeks, among other things, "[d]ocumentation describing the modifications made by the other Defendants to their search strings, including any based on Plaintiffs' September 14, 2011 letter." On October 20, 2011, Georgia-Pacific ("GP"), on behalf of all Defendants, sent a revised list of search terms to Plaintiffs. In that email, Defendants specifically noted that, "we have undertaken to assess which of Plaintiffs' proposed search terms (or categories of search terms) [from Plaintiffs' September 14, 2011 letter] might be legitimate additions to the search term list. As part of that process, extensive effort, time and resources were expended to test the possible search terms suggested by Plaintiffs." On December 13, 2011, RockTenn sent its search terms to Plaintiffs. RockTenn revised the search terms previously sent to Plaintiffs to capture documents and concepts that may not have been already captured by GP's search terms. RockTenn made those changes after an analysis of its own documents and the specific terminology used by its employees to describe relevant concepts. As explained in our December 13, 2011 letter, RockTenn expanded its search term list by using a "stemming" process, which extends a search to cover grammatical variations of a word. Since RockTenn did not limit the variations of the terms produced by the stemming process, RockTenn did not produce, and does not have in its possession, a separate "stemming report."

Request No. 3 seeks, among other things, "[a]ny documentation referred to or relied upon in connection with Defendants' Evidentiary Hearing Exhibit No. 4." RockTenn does not have any non-privileged responsive documents in its possession. However, EQD loaded into NeedleFinder the ESI from 13 current or former custodians at SSCC, which comprised approximately 301,341 electronic documents. EQD applied RockTenn's search terms against the corpus of 301,341 documents, and the search terms returned hits for 81,010 documents (including families, the total is 113,221). EQD then created a statistically significant and randomly selected sample of documents taken from the "null set", *i.e.* the set of 188,120 documents that did not return hits on the search terms. The sample consisted of 500 documents. Using a formula within Microsoft Excel ("=RAND()"), EQD randomly selected 500 documents for review. The 500 documents were then reviewed by attorneys at Winston & Strawn LLP, and it was determined that of the 500 randomly-selected documents, only 12 were potentially responsive (or 2.4%). One of those 12 was privileged, and thus would not be produced to Plaintiffs.

Request No. 4 seeks various documents relating to the prior testimony of Mr. Regard during the February 21, 2012 evidentiary hearing before Judge Nolan. I understand that Mayer Brown, on behalf of all Defendants, will provide the majority of the non-privileged information that is responsive to Request No. 4. With respect to RockTenn specifically, Mr. Regard was provided with a copy of RockTenn's 9-page response letter to Plaintiffs' Notice of Rule 30(b)(6) Deposition, and corresponding exhibits, which you already received. RockTenn does not have any additional, non-privileged responsive documents in its possession.

WINSTON
&STRAWN
LLP

March 21, 2012
Page 3

Request No. 5 seeks a more complete disclosure of Mr. Regard's anticipated testimony. As with Request No. 4, I understand that Mayer Brown, on behalf of all Defendants, will provide information that is responsive to Request No. 5. RockTenn does not have any additional, non-privileged responsive documents in its possession.

Sincerely,

*R. Mark McCareins* /js

R. Mark McCareins

cc:   Michael Freed (via e-mail)
      Steven Kanner (via e-mail)
      Defense Counsel (via e-mail)

Exhibit F

# McDermott
# Will&Emery

Boston  Brussels  Chicago  Düsseldorf  Houston  London  Los Angeles  Miami  Milan
Munich  New York  Orange County  Paris  Rome  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Rachael V. Lewis
Associate
rlewis@mwe.com
+1 202 756-8709

March 21, 2012

VIA E-MAIL

Daniel J. Mogin
The Mogin Law Firm, P.C.
707 Broadway, Suite 1000
San Diego, CA 92101

Re:     *Kleen Products LLC, et al. v. Packaging Corporation of America, et al.,*
        Case No. 1:10-cv-05711

Dear Dan:

We write in response to your March 6, 2012 letter to all Defendants requesting documentation purportedly "described or relied upon by Defendants' witnesses at the February 21, 2012, evidentiary hearing." We do not believe that discovery on the discovery was contemplated by the current hearing process, however, in the spirit of cooperation, Weyerhaeuser is providing written responses to your requests. Weyerhaeuser reserves all objections to your requests, and our below responses should not be deemed a waiver of the attorney-client privilege, the work product doctrine, or any other applicable privilege.

1.      **Request No. 1.** With the exception of Request 1.m., the requests set forth in Request 1 appear solely directed to Defendant Georgia Pacific. Weyerhaeuser does not possess any responsive, non-privileged "documentation of the steps taken by any Defendant to cull their ESI corpus prior to using Defendants' Boolean search strings." Weyerhaeuser's ESI vendor, Advanced Discovery, used Clearwell version 6.1 to filter program files using the National Institute of Standards and Technology (NIST) database that Clearwell accesses. Weyerhaeuser also worked with Advanced Discovery to identify additional program files for supplemental filtering. Lastly, Clearwell automatically globally de-duplicated the entire ESI database.

2.      **Request No. 2.** Request 2 seeks "documentation describing the modifications made by the other Defendants to their search strings, including any based on Plaintiffs' September 14, 2011 letter." Defendants sent a list of proposed search terms to plaintiffs on August 5, 2011, and in response to plaintiffs' September 14, 2011 letter, Defendant Georgia Pacific sent a revised set of search strings and stemming report to plaintiffs on October 20, 2011. On December 15, 2011, Weyerhaeuser sent its search strings to plaintiffs. These search strings contained Weyerhaeuser-specific modifications intended to capture documents that may not have been captured by Georgia Pacific's terms. Weyerhaeuser modified the search strings based on an analysis of its

U.S. practice conducted through McDermott Will & Emery LLP.

600 Thirteenth Street, N.W. Washington D.C. 20005-3096  Telephone: +1 202 756 8000  Facsimile: +1 202 756 8087  www.mwe.com

Daniel J. Mogin
March 21, 2012
Page 2

own documents and specific terminology used by the company and its employees. Moreover, prior to Georgia Pacific sending the revised search strings on October 20, 2011, Weyerhaeuser ran its version of the initial August 5, 2011 terms through the Relativity ESI database and began review of the documents hit by these terms. Weyerhaeuser included these strings on the chart provided to plaintiffs on December 15, 2011. As explained in our December 15, 2011 letter, Weyerhaeuser also added wildcards to the majority of the search strings. Since Weyerhaeuser included these wildcards in the chart previously sent to plaintiffs and did not limit the variations of the words produced by using wildcards, Weyerhaeuser did not produce, and does not possess, a separate "stemming report." Lastly, Weyerhaeuser ran the search string "starttime AND endtime" through the ESI of three custodians, who had senior management roles in the containerboard business, to capture their Microsoft Exchange calendar appointment notices ("calendar terms").

**3.** **Request No. 3.** Request No. 3 seeks "any documentation referred to or relied upon in connection with Defendants' Evidentiary Hearing Exhibit No. 4." Weyerhaeuser does not possess any responsive, non-privileged documents relating to this Request. Advanced Discovery loaded ESI collected from 8 Weyerhaeuser employees into the Relativity review platform. The ESI corpus consisted of 611,395 documents. Out of this corpus, 140,031 documents "hit" upon the Weyerhaeuser search terms and calendar terms, whereas 471,364 documents did not "hit" upon these terms (the "null set"). Advanced Discovery created a statistically significant, randomly selected sample of 1,000 documents pulled from the null set using Relativity's "Create Random Sample Set" script.[1] Two McDermott Will & Emery attorneys then each reviewed 500 of these documents, and they determined that of the 1,000 randomly selected documents, only 30 documents, or 3.0%, possessed potentially responsive content. McDermott Will & Emery attorneys deemed one of these documents to be privileged, and thus, that privileged document will not be produced.

**4.** **Request No. 4.** Request No. 4 seeks documents related to the "prior testimony of Mr. Regard" at the February 21, 2012 hearing. We understand that Mayer Brown, on behalf of all defendants, will provide additional, non-privileged information responsive to this Request. With respect to Weyerhaeuser specifically, Mr. Regard has received copies of Weyerhaeuser's 30(b)(6) correspondence with plaintiffs, including Weyerhaeuser letters dated November 30, 2011, January 31, 2012, February 10, 2012, and March 13, 2012, and the deposition transcript of Ryan Wasell, Weyerhaeuser's 30(b)(6) corporate designee.

**5.** **Request No. 5.** Request No. 5 seeks "a more complete disclosure of Mr. Regard's expected testimony." As with Request No. 4, we understand that Mayer Brown, on behalf of all defendants, will provide information responsive to this Request.

---

[1] kCura, the company that engineers Relativity, wrote the "Create Random Sample Set" script.

Daniel J. Mogin
March 21, 2012
Page 3


Sincerely,

Rachael V. Lewis


cc:     Michael J. Freed
        Steven A. Kanner
        Defense Counsel

Exhibit G

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7165**

WRITER'S INTERNET ADDRESS
**stephenneuwirth@quinnemanuel.com**

March 21, 2012

**VIA ELECTRONIC MAIL**

Daniel J. Mogin
The Mogin Law Firm, P.C.
707 Broadway, Suite 1000
San Diego, CA 92101

Re:  *Kleen Products LLC et al. v. Packaging Corporation of America, et al.,* No. 10-cv 05711

Dear Dan:

I am writing on behalf of Georgia-Pacific LLC ("GPLLC") in response to your March 6 letter informally requesting the production of certain documents in advance of the resumption of the evidentiary hearing on March 28, 2012.  As reflected in your letter and as confirmed by our subsequent communications, GPLLC understands that only requests 1(a)-(l) are directed to GPLLC.

In addition to the detailed information that GPLLC has already provided Plaintiffs about its search term development process (in both written form and through testimony at the February 21, 2012 hearing), and although we do not believe that discovery was contemplated by the current hearing process, GPLLC is providing written responses below and producing the accompanying zip file which contains non-privileged documents responsive to your requests.

In responding to your requests, GPLLC has not endeavored to create documents, as opposed to producing pre-existing records that are responsive to any request.  GPLLC reserves all objections to your requests and nothing provided herein should be deemed a waiver of the attorney-client privilege, joint defense privilege or the work product doctrine even though certain documents being produced were denominated as privileged when created.  As reflected in the March 19, 2012 letter sent by from Andy Marowitz on behalf of all Defendants, GPLLC does not intend to produce the underlying documents in the case or documents from the null set samples in response to your letter.

**quinn emanuel urquhart & sullivan, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
CHICAGO | 500 West Madison Street, Suite 2450, Chicago, Illinois 60661 | TEL 312-705-7400 FAX 312-705-7401
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 (0) 20 7653-2000 FAX +44 (0) 20 7653-2100
TOKYO | NBF Hibiya Bldg., 25F, 1-1-7 Uchisaiwai-cho, Chiyoda-ku, Tokyo 100-0011, Japan | TEL +81 (0) 3 5510-1711 FAX +81 (0) 3 5510-1712
MANNHEIM | Erzbergerstraße 5, 68165 Mannheim, Germany | TEL +49 (0) 621 43298-6000 FAX +49 (0) 621 43298-6100

Daniel J. Mogin
March 21, 2012

Given the manageable number of non-privileged documents that were located in response to
your request, the accompanying zip file is organized into folders corresponding to your requests.
While each document is only contained in one folder, some of the documents produced are
responsive to more than one request. The documents being produced have been designated
Confidential under the terms of the Protective Order and should be treated accordingly.

Request 1(a): *See* document production accompanying this letter.

Request 1(b): As Mr. Brown testified to at the February 21, 2012 hearing, no website domain
filters were applied to data loaded into Clearwell for search term testing and development. *See*
Feb. 21 Hearing Transcript ("Tr.") at 177 ("[I]n this particular case [domain filtering] was not
done.") Accordingly, GPLLC will not be providing further information or any documentation in
response to this request.

Request 1(c): *See* document production accompanying this letter.

Request 1(d): Plaintiffs have had GPLLC's stemming report for the past 5 months. *See* E-mail
from Sami H. Rashid to Douglas A. Millen, dated October 20, 2011. In addition, Mr. Brown
testified that Clearwell's Topics analytical functionality was used throughout the search term
development process. *See* Tr. 130-31, 133. Counsel on Call utilized this functionality, which
was constantly running on Clearwell, contemporaneously with search term development via their
computers, and no physical or electronic copies of any Topics reports were generated during the
search term development process. Accordingly, GPLLC will not be providing further
information or any documentation in response to this request.

Request 1(e): GPLLC does not have any non-privileged responsive documents in its possession,
custody or control which detail the mid-June 2011 validation process. GPLLC has, however,
already provided Plaintiffs with information concerning that validation process. Mr. Brown
testified that 27 documents (4.1%) of the 660 documents randomly selected to comprise the
statistically significant null set (which was based on a 99% confidence level with a margin of
error of +/- 5%) were determined to be arguably responsive to Plaintiffs' document requests.
*See* Tr. 132, 181; *see also* Nov. 22, 2011 Letter from Stephen R. Neuwirth, at 3. This provision
of information more than adequately allows Plaintiffs to understand the validation process.[1]

Request 1(f): *See* document production accompanying this letter. *See also* response to Request
1(k) below. GPLLC does not have any non-privileged responsive documents in its possession,

---

[1] Please note that the validation testing figures set forth in documents contained in 1(c) folder of the
accompanying zip file reflect preliminary validation testing that was undertaken but not relied upon because the
search strings were still being developed and because it was determined that there was a syntax error in one of the
search strings used in the creation of the Combined Composite Set.

Daniel J. Mogin
March 21, 2012

custody or control which detail the July 2011 validation process. GPLLC has, however, already provided Plaintiffs with information concerning that validation process. For example, as Mr. Brown testified to, GPLLC performed two separate validations in July 2011 – one yielding an error rate of 4.7% and one yielding an error rate of 4.1%. *See* Tr. 133-134. Specifically, in one validation, 31 documents (4.7%) of the 660 documents randomly selected to comprise the statistically significant null set (which was based on a 99% confidence level with a margin of error of +/- 5%) were determined to be arguably responsive to Plaintiffs' document requests. In a separate validation, 27 documents (4.1%) in a different set of 660 documents randomly selected to comprise the statistically significant null set (again based on a 99% confidence level with a margin of error of +/- 5%) were determined to be arguably responsive to Plaintiffs' document requests.

Request 1(g): *See* document production accompanying this letter (specifically, documents contained in the 1(c) folder of the accompanying zip file).

Request 1(h): *See* document production accompanying this letter. *See also* response to Request 1(k) below.

Request 1(i): Mr. Brown has already provided detailed testimony concerning the review process, including the number of reviewers, and the team's use of Clearwell. *See, e.g.*, Tr. 146, 169-171, 175, 179. It is not clear what additional "background" information Plaintiffs are seeking, but GPLLC has more than adequately provided information that will allow Plaintiffs to understand the process undertaken to develop and test search terms for this litigation. Accordingly, GPLLC will not be providing further information or any documentation in response to this request.

Request 1(j): While your request refers to a "November 2011 set of search terms," GPLLC provided Plaintiffs with a final set of search terms (and stemming report) in October 2011. *See* E-mail from Sami H. Rashid to Douglas A. Millen, dated October 20, 2011. GPLLC does not have any non-privileged responsive documents in its possession, custody or control which detail the October 2011 validation process. GPLLC has, however, already provided Plaintiffs with information concerning that validation process. As Mr. Brown testified to, the October 2011 null set validation yielded an error rate of 4.2%. *See* Tr. 135; *see also* Nov. 22, 2011 Letter from Stephen R. Neuwirth, at 5. Specifically, 28 documents[2] (4.2%) of the 660 documents randomly selected to comprise the statistically significant null set (which was based on a 99% confidence level with a margin of error of +/- 5%) were determined to be arguably responsive to Plaintiffs' document requests. This final validation was performed against a null set consisting of the ESI of the four key testing custodians identified by GPLLC, and did not include the ESI of the fifth control custodian. *See* Tr. 146. Of the 83,544 documents comprising the testing corpus

---

[2] Of the 28 documents, one document was determined to be privileged.

Daniel J. Mogin
March 21, 2012

for the October 2011 validation, 20,333 documents were "hit" by the search terms, leaving the remaining 63,211 documents as the null set.

Request 1(k): As both Mr. Koch and Mr. Brown testified to at the February 21 hearing, GPLLC employed the randomizing function in Clearwell to pull random samples. *See* Tr. 63-64; 179-180. Mr. Brown also testified GPLLC utilized a standard sample size calculator, developed by Raosoft (http://www.raosoft.com/samplesize.html), to determine the sizes of the statistically significant samples that would be generated by Clearwell's randomizing function. *See id.* at 180. This information more than adequately allows Plaintiffs to understand the process that was used to determine random samples during the search term development process. Accordingly, GPLLC will not be providing further information or any documentation in response to this request.

Request 1(l): The request for documentation "relied upon" for the creation and testing of the null set is duplicative of other requests as well as overly broad and ambiguous. The request sweeps in background materials that Plaintiffs either created or obviously possess – such as Plaintiffs' Complaint, Plaintiffs' document requests, and GPLLC's responses to those document requests – that were reviewed throughout the search term development process. *See, e.g.*, Tr. 170; Nov. 22, 2011 Letter from Stephen R. Neuwirth, at 2. In addition, the request can be read to sweep in every other type of documentation sought from GPLLC in your March 6 letter, as well underlying documents in the case and documents from the null set samples. Accordingly, GPLLC will not be providing further information or any documentation in response to this request.

Very truly yours,

*Steve R. Neuwirth / SHR*

Stephen R. Neuwirth

cc:    Michael Freed (via email)
       Steven Kanner (via email)
       Defense Counsel (via email)

Attachment

4

Exhibit H



FREED  KANNER  LONDON & MILLEN LLC

direct dial: 224.632.4501
mfreed@fklmlaw.com

February 15, 2012

**<u>Via Electronic Mail</u>**
Nathan P. Eimer
Eimer Stahl LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL  60604-2516

Re: *Kleen Products LLC, et al. v. Packaging Corp. of America, et al.*, No. 1:10-cv-05711

Dear Nate:

I write in response to your letter of February 9, 2012 in which you request information about the steps undertaken by each named Plaintiff to identify and produce material responsive to Defendants' requests for production.  As a preliminary matter, I note that certain Defendants are asserting privilege with respect to some preservation, collection and search issues.  Having said that, and without disclosing any protected attorney work-product, the steps taken by each named Plaintiff are described below.

First, as to each named Plaintiff, subject matter searches (based on business function) were conducted.  These searches encompassed all sources, electronic (ESI) or otherwise, identified as containing potentially relevant material.

For paper documents, all potentially relevant material was collected and reviewed for responsiveness and privilege before being produced to Defendants.  To the best of our knowledge, production of responsive paper documents is complete at this time.

For ESI, relevant files were imaged by information technology specialists and sent initially to Plaintiffs' ESI vendor for processing and de-duplication pursuant to the Stipulated Agreement Regarding Electronically Stored Information and Other Tangible Items.  The de-duplicated ESI was then sent to an analytics vendor retained by Plaintiffs where it now resides.  Some initial CBAA techniques have been applied to this data set, but the process is by no means complete.  Plaintiffs are prepared to apply additional CBAA techniques pending the outcome of the February 21 evidentiary hearing.

With respect to the identity of specific document custodians, please see Plaintiffs' Rule 26 Initial Disclosures dated February 11, 2011.  At least some potentially relevant material was gathered from sources not identified in those Initial Disclosures (*e.g.*, files of former employees).  We are working to confirm such additional sources and will provide you any pertinent supplemental information as soon as practicable.

Sincerely,

*/s/ Michael J. Freed*

Michael J. Freed