```
 1   TRANSCRIBED FROM DIGITAL RECORDING

 2                    IN THE UNITED STATES DISTRICT COURT
                         NORTHERN DISTRICT OF ILLINOIS
 3                            EASTERN DIVISION

 4   KLEEN PRODUCTS, LLC, et al.,      )  Docket No. 10 C 5711
                                       )
 5                      Plaintiffs,    )
                                       )
 6             v.                      )  Chicago, Illinois
                                       )  January 17, 2012
 7   PACKAGING CORPORATION OF AMERICA,)  9:32 o'clock a.m.
     et al.,                           )
 8                                     )
                        Defendants.    )
 9
                      TRANSCRIPT OF PROCEEDINGS - STATUS
10                    BEFORE THE HONORABLE NAN R. NOLAN

11   APPEARANCES:

12   For the Plaintiffs:        FREED KANNER LONDON & MILLEN, by
                                MR. MICHAEL JERRY FREED
13                              MR. STEVEN A. KANNER
                                2201 Waukegan Road
14                              Suite 130
                                Bannockburn, Illinois 60015
15
                                THE MOGIN LAW FIRM, by
16                              MR. DANIEL JAY MOGIN
                                707 Broadway
17                              Suite 1000
                                San Diego, California 92101
18                              (appearing via speaker-phone)

19   For Defendant International  EIMER STAHL, by
     Paper:                      MR. NATHAN P. EIMER
20                              224 South Michigan Avenue
                                Suite 1100
21                              Chicago, Illinois 60604

22                     ALEXANDRA ROTH, CSR, RPR
                         Official Court Reporter
23              219 South Dearborn Street, Room 1224
                       Chicago, Illinois 60604
24                        (312) 408-5038

25   NOTE:  Please notify of correct speaker identification.
```

```
 1  APPEARANCES:   (Continued)

 2                              FOLEY & LARDNER, by
                                MR. JAMES T. McKEOWN
 3                              777 East Wisconsin Avenue
                                Milwaukee, Wisconsin 53202
 4
    For Defendant Georgia       QUINN EMANUEL URQUHART &
 5  Pacific:                    SULLIVAN, by
                                MR. STEPHEN R. NEUWIRTH
 6                              51 Madison Avenue
                                22nd Floor
 7                              New York, New York 10010

 8                              FIGLIULO & SILVERMAN, by
                                MR. JAMES R. FIGLIULO
 9                              Ten South LaSalle Street
                                Suite 3600
10                              Chicago, Illinois 60603

11  For Defendants Cascades     K&L GATES, by
    and Norampac:               MR. SCOTT M. MENDEL
12                              70 West Madison Street
                                Suite 3100
13                              Chicago, Illinois 60602

14  For Defendant Packaging     KIRKLAND & ELLIS, by
    Corporation:                MR. BARACK S. ECHOLS
15                              300 North LaSalle Street
                                Chicago, Illinois 60654
16
    For Defendant Rock          WINSTON & STRAWN, by
17  Tenn:                       MR. JOSEPH SIDERS
                                MR. R. MARK McCAREINS
18                              35 West Wacker Drive
                                Chicago, Illinois 60601
19
    For Defendant Temple-       MAYER BROWN, by
20  Inland:                     MS. BRITT MARIE MILLER
                                71 South Wacker Drive
21                              Chicago, Illinois 60606

22  For Defendant Weyerhaeuser: McDERMOT WILL & EMERY, by
                                MS. RACHEL V. LEWIS
23                              227 West Monroe Street
                                Chicago, Illinois 60606
24                              (appearing via speaker-phone)

25
```

1    (Proceedings had in open court:)

2    THE CLERK:  10 C 5711, Kleen Products versus Packaging

3  Corporation.

4    THE COURT:  Okay.  Let's --

5    MR.   :  Thank you.

6    THE COURT:  Let's do bride side, groom side.  This is

7  too confusing for me.

8    So plaintiffs are the brides.  Okay.

9    MR. FREED:  As the first bride, your Honor, Michael

10  Freed, plaintiffs.  I apologize to the Court --

11    THE COURT:  It's okay.  Don't worry.  Because if

12  you -- if everybody starts giving speeches, we'll never get --

13  it's fine.  We're very glad you are here.  Glad to have you,

14  Mr. Freed.

15    MR. FREED:  My partner Steven Kanner is with me.

16    THE COURT:  Hi, Mr. Kanner.  Okay.

17    Is there a plaintiffs' lawyer on the phone?  Is there

18  somebody else on the phone?  Okay.  And will you identify

19  yourself.

20    MR. MOGIN:  Good morning, your Honor.  This is Dan

21  Mogin on behalf of plaintiff as well.

22    THE COURT:  Okay.  Hi.  Thank you, sir.  Okay.

23    Anybody else for the plaintiff?  Okay.

24    So since this is my first time up, I'd like to know

25  which lawyers go with what defendant, or which defendants, I

1    should say.

2              MR. EIMER:  Nate Eimer on behalf of International

3    Paper.  And if it would help, I have a roster that Ms. Miller

4    --

5              THE COURT:  Oh, well, thank you.

6              Thanks, Ms. Miller.  Ms. Miller has been helping me

7    for the past several years in another case.  So this is very

8    helpful.  Okay.

9              So, all right.  So you are Mr. Eimer.

10             MR. EIMER:  Yes.

11             THE COURT:  Of Eimer Stahl.  Are you from Chicago?

12             MR. EIMER:  Yes.

13             THE COURT:  Okay.  And who do you have with you?

14   Anybody with you?

15             MR. EIMER:  Mr. --

16             MR. McKEOWN:  I, your Honor, Jim McKeown.

17             THE COURT:  Hi, Mr. McKeown.  Okay.

18             So we've got -- all right.  Then who's next?

19             MR. NEUWIRTH:  Steven Neuwirth, your Honor, for

20   defendant Georgia Pacific.

21             THE COURT:  For Georgia Pacific.

22             MR. NEUWIRTH:  Mr. Figliulo who's also here

23   (inaudible).

24             THE COURT:  Okay.  Hi, Mr. Figliulo.  How are you?

25   Good.

1          And -- and are you with Georgia Pacific also?

2          MR. FIGLIULO:  Yes, we're both with Georgia Pacific.

3          THE COURT:  Both, okay.  Good.  All right.

4          And who's next?

5          MR. MENDEL:  Scott Mendel for Cascades and Norampac.

6          THE COURT:  Okay.  And you -- now, I have down here

7    you're Cascades -- Cascades Canada.

8          MR. MENDEL:  Yes.

9          THE COURT:  And Nor -- are those two separate

10   defendants?

11         MR. MENDEL:  They are affiliated (inaudible).

12         THE COURT:  Okay.  Thank you, Mr. Mendel.  Are you

13   from Chicago also?  Okay.  Good.

14         All right.  Packaging Corporation of America?

15         MR. ECHOLS:  Good morning, your Honor.  Barack Echols

16   (inaudible) Packaging Corporation.

17         THE COURT:  Hi, Mr. Echols.  And are you from Chicago?

18         MR. ECHOLS:  Yes.

19         THE COURT:  Okay.  From Kirkland.

20         And then we have Winston.  We have Mr. Siders I saw.

21   Hi, Mr. Siders.  How are you?

22         MR. SIDERS:  Good.  How are you?

23         THE COURT:  Good.  Thank you.

24         MR. McCAREINS:  I'm Marc McCareins.  I'm with Winston.

25   I was going to turn it over to Mr. Siders.

1      THE COURT:  Good.  That's a good move.  Yeah,

2  definitely.  That's a really good move.  Yes.  I also have Mr.

3  Siders.  Mr. Siders knows me.  I know Mr. Siders.  That's true.

4      But not as well as Ms. Miller, who --

5      MS. MILLER:  Good morning, your Honor.  Britt Miller

6  on behalf of Temple-Inland.

7      THE COURT:  Okay.  And is it Rachel Lewis that's on

8  the phone?  No.

9      MS. LEWIS:  Yes, your Honor, Rachel Lewis for

10 Weyerhaeuser Company.

11     THE COURT:  Okay.  Hi, Ms. Lewis.  And which office --

12 you're in -- you're with McDermott but not here in Chicago?

13     MS. LEWIS:  Yes, I am in Washington, D.C. office.

14     THE COURT:  Oh, good.  Okay.  Nice to have you on the

15 phone.  Okay.

16     So I received this.  I agree with Judge Shadur's

17 complimenting you.  You have all -- you all get A pluses for

18 your cooperation efforts and all of the efforts that you've

19 spent doing basically the last six months.

20     Has someone been designated to be our spokes person

21 for today?

22     MR. EIMER:  I think Mr. Neuwirth and I will be the

23 defendant.

24     THE COURT:  Okay.  And it looked to me that you would

25 like a hearing.  It looks like Judge Shadur thinks we should

7

1   have a hearing.  And the scope of the hearing is only search

2   methodology.  Or is it broader than that?

3           MR. FREED:  Well, Michael Freed for the plaintiffs,

4   your Honor.  It's a little broader than that.  There are four

5   issues.  But obviously, if you read the transcript, search

6   methodology was one which was most discussed.

7           But there is a question about indices for defendants'

8   production.  Judge Shadur had a few comments which he made in

9   the transcript concerning that.  There is the temporal scope

10  issue, the time period, which is also up for discussion, as

11  well as defendants' accessing servers which may have

12  information which is relevant in discovery, but may not be

13  currently in use or may be remote or -- so there is the server

14  issue as well.

15          Those -- those are the core issues which are before

16  your Honor now, which were before Judge Shadur.

17          THE COURT:  Right.

18          MR. NEUWIRTH:  Your Honor, Steven Neuwirth, Georgia

19  Pacific, at the defendants.

20          As I think is reflected in Judge Shadur's comments,

21  that conference that we had, the first two issues that were

22  mentioned, the ESI procedures and the related issue of whether

23  when producing the ESI the defendants indexed the documents

24  (inaudible) requested by the plaintiffs, really are the issues

25  that are at the core of all of this.  I think Judge Shadur

1   correctly noted that the other two issues mentioned by Mr.

2   (inaudible) really flow from the first two issues.

3        And so we would respectfully suggest that the hearing

4   focuses on the first two, and we can get guidance from the

5   Court on those issues.  The other issues, as Judge Shadur

6   noted, we think would follow.

7        THE COURT:  I am at least familiar with different

8   types of search methodology and have helped people in the past,

9   Mr. Siders being one of them.  We had quite a search.  We

10  didn't have what type of search.  But then we did have to do

11  quite a bit of work on the words themselves.  It was a word

12  search case.

13       Can you -- can somebody tell me what this indices

14  issue is?  I don't -- I'm really not familiar with it.

15       MR. FREED:  Sure, your Honor, actually it was

16  addressed in the transcript.  But when defendants made the

17  production, which to date probably exceeds over a million

18  pages --

19       THE COURT:  Hard copy pages.

20       MR. FREED:  Hard copy, yes.

21       THE COURT:  Are these basically e-mails?

22       MR. NEUWIRTH:  It would translate perhaps into that.

23  But it was produced electronically.

24       THE COURT:  Okay.

25       MR. FREED:  They -- they did the production without

1    any indication of what document relates to what request for

2    production.  So essentially, if you do equate this to a room

3    full of documents, we would have very little, if any,

4    information or access as to what they think is responsive to

5    what we tried to make very carefully crafted requests for

6    production.

7         During discussions with defendants, they asked us if

8    maybe it would be useful if we tried to come up with a list of

9    categories to which their production could be responsive.  And

10   that was not a successful way to charge to address the issue

11   either.

12        So we are asking that they do some sort of

13   identification of what of these electronically produced hard

14   copies is responsive to what it is that we have asked for.

15        THE COURT:  So --

16        MR. FREED:  We've not had any success.

17        THE COURT:  All right.

18        MR. NEUWIRTH:  Your Honor, I think that the defendants

19   have a slightly different perspective on what the issue is.

20   Without judging it, we would note that we do think that what

21   the plaintiffs are asking for here is really unprecedented.  I

22   think there is a lot of case law that your Honor is probably

23   familiar with objecting the types of things that we think the

24   plaintiffs are asking for here.  And -- and this is a case

25   where there is metadata that is --

1   THE COURT:  Now, that's different.  See, what -- what

2   I heard Mr. Freed just say is, he issued requests document --

3   he issued document requests to produce documents.  And your

4   answer to his request to produce documents were to give him

5   hundreds of thousands of pages without a specific number to a

6   particular document request.

7   Is -- now, physically -- I just want to know

8   physically, not metadata, not content, not was it correct.  Was

9   this a document request?

10   MR. NEUWIRTH:  It was -- it was over 90 document

11   requests --

12   THE COURT:  Okay.

13   MR. NEUWIRTH:  -- if -- which overlapped.  Any of the

14   documents involved multiple topics, the type of business

15   planning documents, that (inaudible) requested here.  Many of

16   them are 40, 50 pages long, arguably are responsive to half the

17   requests at a time.

18   And the problem, your Honor, is that as I think a lot

19   of the Courts have recognized, it would be unduly burdensome

20   for defendants producing the ESI to have to figure out and

21   identify which of all of these more than 90 requests of

22   documents are responsive to your (inaudible).  The alternative

23   proposal that the plaintiffs gave us was to come up with over

24   29 categories that they've identified, which in effect asked

25   the defendants to do a document review for the plaintiff and

1    organize documents by these categories, which also overlap.

2           So the problem that we encountered is that either of

3    the alternatives that the plaintiffs have come up with would

4    create unmanageable burden for the defendants.  And we had

5    thought that the search term protocol you -- would enable the

6    plaintiffs, if they chose to, to apply the search terms and

7    full documents that are responsive.

8           THE COURT:  So the 29 categories, are those by search

9    terms?

10          MR. NEUWIRTH:  No.  The 29 categories are subject

11   matters that the plaintiffs have come up with, essentially are

12   asking the defendants to do the document review for the

13   plaintiffs.  And -- and we think there is a -- a different

14   recollection on the part of the defendants about what the

15   discussions were.  That's not really our concern right now.

16   But the reality is that the 29 categories would be asking us to

17   do something, A, that's unprecedented, but either we really

18   don't think we could go without thousands if not more hours of

19   work.

20          MR. FREED:  They -- we refer to Rule 34(b), which

21   talks about it and which Judge Shadur correctly noted is

22   mandatory that we are entitled to a index or a reference to the

23   part of our discovery request for production to which they are

24   responding.  The Judge indicated predisposition to grant us

25   that motion.  But he certainly didn't rule, and I'm not

1    suggesting he did.

2              THE COURT:  Well, I mean -- I mean if there -- one of

3    their objections is burdensomeness.  I guess, if we're going to

4    have experts on the stand for what type of methodology to use,

5    the -- the expert would also be talking about the burden.  So

6    they seem to go hand in hand.

7              I'm asking, though, a different question.  And maybe

8    I'm not saying it too clearly.  Was this million dollars un --

9    I mean, according to you, kind of an unspecified receipt of

10   documents?  Were they supposed to answer the interrogatories

11   too or just the dock -- no, wait.  Okay.

12             MS. MILLER:  (Inaudible) the interrogatories, these

13   are just document requests, your Honor.

14             THE COURT:  Okay.  So it -- so it doesn't answer

15   interrogatories.

16             MR. NEUWIRTH:  Your Honor, we --

17             THE COURT:  Did you get them on a rolling production?

18   Or was it done all together?

19             MR. FREED:  I would say several rolling productions,

20   but --

21             THE COURT:  And did you call them up when you got the

22   first one and say, hey, we need an index?

23             MR. FREED:  Yes.  There has been -- we can establish

24   for the Court the consistent -- consistency of our request for

25   the production of an index.  Mostly it's been in writing

1  because in this case it seems that with all the defendants

2  involved, that it's -- it's better not -- not to make a record

3  formally but just to have a record of what was said so that

4  each party is --

5         THE COURT:  Now --

6         MR. FREED:  -- (inaudible) back.

7         THE COURT:  -- when you say -- so each of the five

8  companies --

9         MR.   :  Six.

10        THE COURT:  Six.  Each of the six companies that this

11 million -- supposed loosely, this large -- so that is from all

12 six companies?

13        MR. NEUWIRTH:  Yes.

14        MR. FREED:  And -- and I'm not positive it's a

15 million. I believe --

16        THE COURT:  Can you tell which company the documents

17 come from?  So they've got -- so there is some kind of index

18 already.

19        MS. MILLER:  Basically all of our documents, so each

20 (inaudible) defendant, and everyone has produced them and

21 Court's rules in the ordinary course of business.

22        MR. EIMER:  Each defendant produced separately.  Each

23 defendant numbered its own documents.  Each defendant produced

24 metadata with the document, so that it can be reviewed just as

25 the (inaudible) protocol required us to do.

1    MR. FREED:  I think there was metadata.  They had that

2  metadata.  And each production, as the defendants are eager to

3  describe what they produced, each defendant will say that there

4  is no index, although we've asked for various forms of indices

5  which would be less labor intensive and less burdensome.  But

6  each of those requests has been met with a resounding no.

7    MR. NEUWIRTH:  Well, your Honor, we would just add

8  that what we've done is, each defendant has produced

9  separately.  And with limited exception, each production allows

10 the plaintiffs to see which custodians' files the documents

11 were produced.

12    THE COURT:  And they had -- and they know who all

13 these custodians are.  There is a -- there is a --

14    MR. EIMER:  Miller wrote a letter detailing every

15 defendant which custodians' files were (inaudible).

16    THE COURT:  And did you agree at the time frame before

17 you started all this?

18    MR. FREED:  Well, that's also an issue.  We have tried

19 to accommodate --

20    THE COURT:  Is everything preserved, whether or not

21 it's produced?

22    MR. NEUWIRTH:  Yes, everything has been preserved.

23    THE COURT:  Okay.  All right.

24    Okay.  Well, that's good.  Okay.  And you can give

25 us -- I don't mean a million copies, but you can kind of give

```
1   us Ms. Miller's -- she's good.  Isn't she?  She is very

2   thorough.  She is very thorough.

3           Okay.  All right.  Well, it does appear that at

4   least -- what I wanted to do is I just would like to do one

5   hearing.  And I'm relying upon you.  Judge Shadur -- I listen

6   to Judge Shadur as much as you all listen to Judge Shadur.  I

7   did as a lawyer.  I do as a Judge.  He's -- I liked his pen and

8   ink, his quill and ink.  He's -- he's a doll.

9           So do you think we should have a conference before the

10  hearing and then kind of work it out?  Do you think we need to

11  have it?  Or do you -- do you think we could streamline

12  anything if we had a conference?  Or do you want to just set it

13  down for the hearing?

14          MR. EIMER:  I think, your Honor, Mr. Freed and I

15  talked about the nature of the hearing.  I think we can go

16  right to the hearing.  I think we are close to agreeing on what

17  the hearing would look like, the time period.

18          THE COURT:  Okay.

19          MR. EIMER:  What the three hearing activities would

20  be.  I think we're -- if we --

21          THE COURT:  Okay.  What do you suggest then?  Or do

22  you want to -- can you tell me today, or you want to put it in

23  writing, whatever?  I mean, I think the most important thing

24  with this many people is to pick a date --

25          MR. EIMER:  Right (inaudible).
```

1    THE COURT:  -- which -- yeah.

2    MR. FREED:  We -- we were looking for a date towards

3 the end of February.  We had talked about an earlier date.  But

4 the logistics of --

5    THE COURT:  No, don't.  Don't talk about -- I'm on

6 criminal duty.  So don't.  Okay.

7    What do you think?  Whoever called told Lynette four

8 hours.  It's going to take us four hours to say everybody's

9 name.  So, I mean, I don't think four hours is enough.  I think

10 we should have a day.

11    MR. FREED:  We agree with that.  That was one of the

12 slight disagreements which we had.  We think a day would be

13 more prudent.

14    MR. NEUWIRTH:  Right.  A day would be fine.

15    THE COURT:  A whole day, yes.

16    MR. NEUWIRTH:  I think given the schedules that we've

17 compared for late February, if that fits the Court's calendar,

18 and we have some scheduling issues with experts that we'd like

19 to bring -- if we need to bring to the hearing.

20    I believe the date we know -- first available date is

21 February 21 that the plaintiffs can do that we can do.

22    (Brief pause.)

23    THE COURT:  Lynette, what would you think about

24 Wednesday, February 29?

25    MR. FREED:  That would be better.

1    MR. NEUWIRTH:  Unfortunately, your Honor, the experts

2  that are coming are -- told us the last date in February that

3  they are available is the 21st.  And I -- I will say for what

4  it's worth, certainly work (inaudible) the Court's needs, but

5  there is uncertainty hanging over this for the defendant.  If

6  there is any possibility (inaudible) --

7    THE COURT:  What about -- all right.  Friday the 17th?

8    MR. NEUWIRTH:  We've been told that the dates that the

9  experts are available are the 6th, the 13th and 21st.  We

10  understand the Court is closed on the 20th.  We're also

11  available.

12    THE COURT:  What do -- what do we have the 21st?

13    (Inaudible.)

14    THE COURT:  Okay.  So let's give it -- let's give

15  these folks because there are more of them than there are in

16  the other case.  So sheer numbers alone, you (inaudible).

17    All right.  So the 21st, everybody can do the -- or

18  everybody will make themselves do it.

19    MS. MILLER:  We will make ourselves available, your

20  Honor.

21    THE COURT:  All right.  So let's work backwards right

22  now then.

23    MR. FREED:  Your Honor, if I may, and I apologize.

24    THE COURT:  Please, any suggestions you got.

25    MR. FREED:  This isn't a suggestion.  I just want to

1    sort of as a placeholder say that we have not cleared dates

2    with our experts.  We were thinking that perhaps the reverse,

3    that your Honor would give us the dates which you would be

4    available, and we would check with them.

5           So I certainly will do everything in my power to make

6    sure that our experts are available.  But there is the remote

7    possibility, and I just need to say it, we won't be able to do

8    a -- can get that date.

9           THE COURT:  All right.  Then you need --

10          MR. EIMER:  (Inaudible) March date just as that safety

11   valve.

12          THE COURT:  But they don't have their experts on

13   March.  What you're going to need to do is talk.  I am gone

14   from tomorrow until next Wednesday.  You can either call Chris

15   or Lynette on March dates.  And definitely I have March dates

16   open.  Okay?

17      (Inaudible.)

18          THE COURT:  Right.

19          MR. NEUWIRTH:  Can we for now hold the 21st?

20          THE COURT:  We are.  It's yours.

21      (Inaudible.)

22          THE COURT:  No, it is.  And I think they should go

23   back and do whatever because if everybody else -- if these --

24   are your people here in Chicago?  Who do you have?

25          MR. FREED:  There -- there are some people we have.

1  There is also some people we're talking to.

2          THE COURT:  Okay.

3          MR. FREED:  And that's the problem.

4          THE COURT:  All right.  All right.  Well, see what you

5  can do on -- better the -- just I can tell you in general, I

6  start criminal duty the 12th of March.  And then from that on

7  with Sedona and school break, I mean, we're -- we're talking

8  only the first 11 days or nine days in March anyway.

9          MR. EIMER:  Okay.  We'll fit it.

10          THE COURT:  Okay?  All right.

11          MR. FREED:  The only other item we had discussed is,

12  we thought it might be helpful to do a -- some sort of a pre-

13  submission for --

14          THE COURT:  Yes.

15          MR. FREED:  We've already -- and we thought those

16  might be simultaneous.

17          THE COURT:  Good, that's good.

18          MR. FREED:  Perhaps an opportunity for a brief

19  response simultaneously.

20          THE COURT:  Okay.  That's fine.

21          So let's go back from 2/21.  Chris and I -- I have

22  criminal duty in February.  I am pretty busy here, and I've got

23  another hearing set for next week.  So let's -- let's give

24  ourselves enough time.

25          When could you get your simultaneous briefs in?

1        MR. NEUWIRTH:  Whenever it's convenient for the Court.

2  Depends on how much time your Honor would like.

3        THE COURT:  Well, actually, so we are going to be on a

4  Tuesday, right?

5        MR. NEUWIRTH:  Yes.  I think we would like a couple of

6  days after the submission for reply, a reply or something or

7  something, but (inaudible) --

8        THE COURT:  Right.  All right.  How about if yours is

9  simultaneously Monday, February 6.  And by that Friday, the

10  10th, is that okay, Chris?

11    (Inaudible.)

12        THE COURT:  Or Monday the 13th.  Okay.

13        Okay.  And if there is any case law you want us to

14  take a look at, you mentioned something on indices, I really

15  don't -- I mean, I haven't really heard this -- I haven't

16  really heard the issue phrased like this before.  So if you got

17  any case law you'd like us to look at.

18        Is there going to be any Daubert challenge to these

19  experts?  Or are you both going to agree for purposes of this

20  hearing that they can testify?  Because, I mean, I don't want

21  to get here with everybody here if somebody is going to object.

22  I don't -- I want you to let the other side know and let us

23  know if there is --

24        MR. NEUWIRTH:  We have --

25        THE COURT:  -- any challenge.

1          MR. NEUWIRTH:  Plaintiffs haven't disclosed their

2    experts to us.  We've disclosed at least two of our experts, or

3    one of them.

4          THE COURT:  How many -- how many experts?

5          MR. NEUWIRTH:  We have two, perhaps three.

6          THE COURT:  Defendants might have -- and do they all

7    agree?  I mean, that would help.

8          MR. NEUWIRTH:  I hope so.  I hope so.

9          THE COURT:  I mean if --

10         MS. MILLER:  Yes.

11         THE COURT:  Okay.  All right.

12         MR. FREED:  We're likely to have two.

13         THE COURT:  Do we need any equipment?  Are they going

14   to show us anything?  Are they going to show a search, if

15   they're going to -- if they are, then you need to call Joe

16   Novak and get the material up here.

17         And I think, Lynette, we need -- I want to get a court

18   reporter.  Okay.  Because I think -- and maybe even Judge

19   Shadur's court reporter, if that person would be around,

20   because --

21         MS. MILLER:  We'll arrange for --

22         THE COURT:  Yeah.  No, I mean, we should, we should do

23   it, though.  We'll -- we'll get a real live person.  Okay?

24   So --

25         MR. NEUWIRTH:  One other thing.  I wonder if we can

1   set some reasonable limits to the submissions to the Court so

2   you're not burdened --

3              THE COURT:  Please.

4              MR. NEUWIRTH:  How about 15 and five?

5              THE COURT:  I think that's great.  Okay?

6              And I think we should start at 10:00.  Okay?  So if we

7   do have any -- all right.  So this is 2/21.

8              And I don't think we need a status before that then

9   with all of this set up.  Okay.  So please check with your

10  people immediately and get on the phone with Chris or Lynette

11  if it really is impossible.  And then they'll give a date.

12  Okay?

13             MR. NEUWIRTH:  Thank you so much.

14             THE COURT:  Nice to have you all on board.  Thank you.

15             Oh, hold on now.  On telephone person, are you going

16  to be here for the hearing?

17             MR. MOGIN:  Yes, your Honor, I will be.

18             THE COURT:  Okay.  Where is your office again?

19             MR. MOGIN:  San Diego.

20             THE COURT:  Okay.  Thank you.

21             MR.   :  Wonder why he would come for this.

22             THE COURT:  Yeah, right, right.  We would like to go

23  to San Diego and have the hearing, but I don't think we can do

24  that.  So -- okay.

25             MR. MOGIN:  Will be happy to accommodate.

1           THE COURT:  Okay.  Did you say -- and then isn't there

2  a lady from McDermott, too?  Okay.  And are you coming, miss?

3           MS. LEWIS:  Yes, your Honor, I plan to attend.

4           THE COURT:  Okay.  And those two dates, you know, we

5  kind of forgot about you.  I'm sorry.  Do those dates work for

6  you, both of you, too?

7           MS. LEWIS:  Yes, they do.

8           THE COURT:  And, sir?

9           MR. MOGIN:  Yes, your Honor.  We'll -- we'll work

10  around.

11           THE COURT:  Okay.  Yes.

12           MR. EIMER:  I have a question.  I've just been

13  reminded that we have a lot of coordinating to do.  And on the

14  reply, can we have until the 13th to file?

15           THE COURT:  That's what Chris said, yeah, to that

16  Monday.  Okay.  Yeah, to that Monday.  Okay?  Thank you.

17           MS. MILLER:  Thank you, your Honor.

18           THE COURT:  Nice to see you all again.  Bye-bye.

19      (Which were all the proceedings had at the hearing of the

20       within cause on the day and date hereof.)

21

22

23

24

25

1                          CERTIFICATE

2            I HEREBY CERTIFY that the foregoing is a true, correct

3    and complete transcript of the proceedings had at the hearing

4    of the aforementioned cause on the day and date hereof.

5

6    /s/Alexandra Roth                        1/18/2012

7    Official Court Reporter                       Date
     U.S. District Court
8    Northern District of Illinois
     Eastern Division

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25