## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

KLEEN PRODUCTS LLC, individually and
on behalf of all others similarly situated,

                         Plaintiffs,

        vs.

PACKAGING CORPORATION OF
AMERICA, et al.,

                         Defendants.

Case No. 1:10-cv-05711

Judge Milton I. Shadur

Magistrate Judge Nan R. Nolan

**Public Redacted Version**

## PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO PRODUCE DOCUMENTS AND DATA FROM ALL REASONABLY ACCESSIBLE SOURCES

Federal Rules of Civil Procedure 26 and 34 require Defendants to preserve and search *all* potential sources reasonably likely to include information responsive to Plaintiffs' document requests. With respect to electronically stored information ("ESI"), while there is some variation among each Defendant's search and collection efforts, every Defendant has agreed to search "main active servers" that are "maintained at centralized corporate locations," but no Defendant has agreed to search for responsive archived documents "except under extraordinary circumstances." *See, e.g., id* & Defs.' Dec. 13, 2011 Position Statement (Dkt. #267) at 12-13. Additionally, no Defendant has conclusively established that a variety of other potential sources of responsive documents, including archived ESI, are "not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). Because Defendants refuse to search as required by the Federal Rules, Plaintiffs bring this motion to compel Defendants to search *all sources of potentially responsive non-duplicative ESI. See, e.g.,* Definitions 11 and 13 in

Plaintiffs' First Set of Requests for Production of Documents (identifying sources). Some examples of additional sources likely to contain responsive ESI include: archived data (including backup tapes) that potentially include non-duplicative responsive information not stored on active servers, electronic data interchange ("EDI") transmissions, non-corporate email accounts used for business purposes, home or non-corporate computers used for business purposes, smart phones (*e.g.*, iPhone and Blackberry) or other devices capable of sending email that do not fully synchronize with corporate servers.

## I.  FACTUAL BACKGROUND

Plaintiffs incorporate by reference the Factual Background portion of their companion motion regarding the temporal scope of discovery. With respect to the scope of discovery in this litigation, Plaintiffs have been steadfast in their request that Defendants fully comply with their obligation to search all reasonably likely sources. *See, e.g.*, Pls.' Dec. 13, 2011 Position Statement (Dkt. #266) at 16. Defendants have agreed, among things, to search "main active servers" at their "centralized corporate locations," but refuse to search for responsive archived documents except under undefined "extraordinary circumstances."

In short, Defendants' position throughout the meet and confer process has been that Plaintiffs should accept the scope of each Defendant's search, review each Defendant's document production, and then raise any concerns about additional data sources at some later date. Plaintiffs submit that such an approach is neither efficient nor reasonable; even a trusting litigant needs to verify. Within the broad scope of discovery allowed under the Federal Rules of Civil Procedure, Rule 34(a)(1)(A) provides for the production of "any designated documents or electronically stored information . . . stored in any medium from which information may be

obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form."

With respect to email, Defendants have aggressive destruction (or auto-delete) policies. *See* Ex. A hereto (charts depicting email and backup policies for most Defendants) . The effect of such policies is illustrated in the ESI produced to date by Defendants; there is relatively little email from the early years of the more narrow relevant time period Defendants propose and significant gaps from month to month and year to year, varying by custodian. *See* Ex. B hereto (charts showing volume of email produced by Defendants to date) and Ex. C hereto (charts showing emails received by a Georgia-Pacific custodian).[1] With the exception of a limited category of "transactional data," Defendants have asserted that they have no obligation to search data stored on ancillary or retired servers, or backup tapes. Defendants' approach does not comply with their obligations under the Federal Rules of Civil Procedure, a shortcoming that is compounded by Defendants' history, as noted by Judge Shadur: "[f]rom the 1930s onward the containerboard industry has been subject to extensive antitrust litigation and other charges of unfair competition." Dkt. #193 at 7. It is further compounded by Defendants' alleged fraudulent concealment of the conspiracy and their actions to avoid detection:

> As a result of their exposure to prior antitrust lawsuits, Defendants have taken steps to conceal their anticompetitive communications with one another. For example, at the American Forest & Paper Association's 128th Annual Paper Week held in New York City in April 2005, Defendants attended a seminar entitled "Are You Vulnerable to Lawsuits?" aimed at reducing vulnerability to antitrust litigation. Because the Defendants have received training on how to avoid getting caught communicating with one another regarding price and output decisions, the amount of conspiratorial evidence that can be obtained from public sources and without access to internal records and testimony is highly limited.

---

[1] As the Court knows, many Defendants continue to produce documents on a rolling basis and Plaintiffs are in the process of reviewing the ESI productions that most Defendants began producing in mid-April.

CAC ¶ 63.  Under such circumstances, Defendants' refusal to search all sources of potentially responsive ESI is unjustified.   Plaintiffs are not required to merely accept Defendants' assertions about the limits of their information systems. "A court – and more importantly, a litigant – is not required to simply accept whatever information management practices a party may have. A practice may be unreasonable, given responsibilities to third parties. While a party may design its information management practices to suit its business purposes, one of those business purposes must be accountability to third parties." *Phillip Adams v Dell,* 621 F. Supp. 2d 1173, 1193 (D. Utah 2009).  Here, Defendants' refusal to search, in light of their information management policies adopted and their antitrust history cannot be condoned.







## II.    ARGUMENT

It has long been recognized that "in complex antitrust litigation . . . motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot." *Poller v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464, 473 (1962). "Broad discovery is permitted because direct evidence of an anticompetitive conspiracy is often difficult to obtain, and the existence of a conspiracy frequently can be established only through circumstantial evidence, such as business documents and other records." *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 U.S. Dist. LEXIS 29160, at *8 (E.D. Pa. Oct. 29, 2004).

Defendants have suggested that expanding their search for responsive documents to archived ESI or other sources not already searched would be burdensome, but longstanding case

law holds that burden in an antitrust case "is less weighty a consideration than in other cases." *See United States v. IBM Corp.*, 66 F.R.D. 186, 189 (S.D.N.Y. 1974) (internal citations omitted). Moreover, Defendants have yet to articulate any actual burden that would result from searching sources other than "main active servers." Whether a discovery burden is "undue" is determined relative to the stakes in the litigation. This is a major case, the stakes are exceedingly large (many billions of dollars of Containerboard Products were purchased by Class members during the Class Period), and collusion in the containerboard industry has significant public policy and law enforcement implications—all of which weigh in favor of Defendants searching for and producing responsive information regardless of where it may reside.

Rule 26(b)(1) permits discovery on "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Discovery is not limited only to those specific issues raised in the pleadings, nor must litigants "prove a prima facie case to justify a request which appears reasonably calculated to lead to the discovery of admissible evidence." *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 573 (D. Kan. 2009). Particularly broad discovery is allowed in antitrust cases because courts recognize that direct evidence is rare and that conspiracies are often established by circumstantial evidence. *See, e.g., In re Auto. Refinishing Paint Antitrust Litig.*, 2004 U.S. Dist. LEXIS 29160, at *8; *United States v. Dentsply Int'l., Inc.*, No. 99-5, 2000 WL 654286, *5 (D. Del. May 10, 2000) (noting "broad discovery may be needed to uncover evidence of invidious design, pattern, or intent") (internal quotations and citation omitted); *Callahan v. A.E.V. Inc.*, 947 F. Supp. 175, 179 (W.D. Pa. 1996) ("[d]iscovery in an antitrust case is necessarily broad because allegations involve improper business conduct. Such conduct is generally covert and must be gleaned from records, conduct, and business

relationships.") (citations omitted); *see also New Park Entm't, LLC v. Elec. Factory Concerts, Inc.*, No. Civ. A. 98-775, 2000 WL 62315, *3 (E.D. Pa. Jan. 13, 2000); *In re Auto. Refinishing Paint*, 2004 U.S. Dist. LEXIS 29160, at *9.

As the party resisting discovery, Defendants have the burden of establishing undue burden by specific facts. *See* In *re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 361-62 (N.D. Ill. 2005) (party must provide affirmative proof in the form of affidavits or record evidence to demonstrate undue burden); *Urethane*, 261 F.R.D. at 573; *Peskoff v. Faber*, 240 F.R.D. 26, 31 (D.D.C. 2007). *Johnson & Johnston v. R.E. Serv. Co.*, No. C 03-2549, 2004 U.S. Dist. LEXIS 26973, *5 (N.D. Cal. Nov. 2, 2004) (party "must state specific facts in support of [their burden] objection."). The party claiming undue burden must also demonstrate that the burden is disproportionate to the claims at stake in the litigation. *In re Brand Name Prescription Drugs Antitrust Litig.*, MDL No. 997, 1995 U.S. Dist. LEXIS 8281, *6-*7 (N.D. Ill. Jun. 13, 1995). "[W]hether production of documents is unduly burdensome or expensive turns primarily on whether it is kept in an accessible or inaccessible format." *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 318 (S.D.N.Y. 2003).

Unless there is some undue burden or cost established, Defendants' are required to search *all* depositories of ESI. *See Peskoff v. Faber*, 240 F.R.D. 26, 31 (D.D.C. 2007) (holding that defendant must "conduct a search of all depositories of electronic information in which one may reasonably expect to find all emails" related to key individual, not just his personal email account); *Oppenheimer*, 437 U.S. at 351 (stating that a party's obligation is to search for and produce information regarding "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case").

Rule 34 does not permit Defendants to refuse to search for and produce responsive information. *See, e.g., New Park Entm't,* 2000 WL 62315, *3. As Plaintiffs' expert Timothy Hanners testified at the February 21, 2012 evidentiary hearing before the Court, Defendants have entirely failed to explore backup media for ESI, which is routinely searched in litigation because of the high likelihood of containing non-duplicative responsive information. *See* Feb. 21, 2012 Hearing Transcript at 218-21. Mr. Hanners also testified that archived data (such as backup tapes) can generally be accessed and catalogued at a relatively low cost. *See id.* at 219-20. In light of the email volumes produced to date, Defendants should be required to search any backup tapes that may contain non-duplicative responsive emails from earlier portions of the relevant discovery period (regardless of whether the temporal scope for Conduct Requests begins in January 1, 2002 or January 1, 2004). At minimum, one or more Defendant should be required to search a sample of any such backup tapes.

## III.    **CONCLUSION**

For the foregoing, Plaintiffs respectfully request that the Court compel Defendants to search *all* reasonably accessible sources that potentially contain non-duplicative responsive documents or data, including backup tapes.


Dated: July 27, 2012                                          Respectfully submitted,

                                                             */s/ Michael J. Freed*
                                                             Michael J. Freed
                                                             Steven A. Kanner
                                                             Robert J. Wozniak
                                                             FREED KANNER LONDON
                                                             & MILLEN LLC
                                                             2201 Waukegan Road, Suite 130
                                                             Bannockburn, IL 60015
                                                             Tel:    (224) 632-4500
                                                             Fax:    (224) 632-4521


10

Daniel J. Mogin
THE MOGIN LAW FIRM, P.C.
707 Broadway, Suite 1000
San Diego, CA 92101
Tel:    (619) 687-6611
Fax:    (619)687-6610

*Interim Co-Lead Class Counsel*


Walter W. Noss
SCOTT+SCOTT LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Tel.    (619) 233-4565
Fax:    (619) 233-0508

*Class Counsel*