```
 1                 IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3
     KLEEN PRODUCTS, LLC, et al.,        )   Docket No. 10 C 5711
 4                                       )
                        Plaintiffs,      )
 5                                       )
              vs.                        )
 6                                       )
     PACKAGING CORPORATION OF AMERICA,   )   Chicago, Illinois
 7   et al.,                             )   July 13, 2012
                                         )   10:00 o'clock a.m.
 8                      Defendants.      )

 9
                       TRANSCRIPT OF PROCEEDINGS
10       BEFORE THE HONORABLE MAGISTRATE JUDGE NAN R. NOLAN
                            VOLUME 1-A
11

12   APPEARANCES:

13
     For the Plaintiffs:        THE MOGIN LAW FIRM
14                              BY:  MR. DANIEL J. MOGIN
                                707 Broadway, Suite 1000
15                              San Diego, CA  92101
                                (619) 687-6611
16
                                FREED KANNER LONDON & MILLEN LLC
17                              BY:  MR. MICHAEL J. FREED
                                MR. ROBERT J. WOZNIAK
18                              2201 Waukegan Road, Suite 130
                                Bannockburn, IL  60015
19                              (224) 632-4500

20                              SCOTT & SCOTT
                                BY:  MR. WALTER W. NOSS
21                              707 Broadway, Suite 1000
                                San Diego, CA  92101
22                              (619) 233-4565

23
     Court Reporter:            MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
24                              Official Court Reporter
                                219 S. Dearborn Street, Suite 1854-B
25                              Chicago, Illinois  60604
                                (312) 435-5639
```

```
 1   APPEARANCES CONTINUED:

 2   For the Plaintiffs          GRANT & EISENHOFER
     (Cont'd)                    BY:  MR. ROBERT G. EISLER
 3                               123 Justison Street, 7th Floor
                                 Wilmington, DE   19801
 4                               (302) 622-7030

 5                               BERGER & MONTAGUE, P.C.
                                 BY:  MR. CHARLES PEARSALL GOODWIN
 6                               1622 Locust Street
                                 Philadelphia, PA  19103
 7                               (215) 875-3000

 8                               LOCKRIDGE GRINDAL NAUEN PLLP
                                 BY:  MR. BRIAN D. CLARK
 9                               100 Washington Avenue S.
                                 Minneapolis, MN  55401
10                               (612) 239-6900

11                               MILLER LAW LLC
                                 BY:  MR. MATTHEW E. VAN TINE
12                               115 South LaSalle Street
                                 Suite 2910
13                               Chicago, IL  60603
                                 (312) 332-3400
14

15   For Defendant Packaging     KIRKLAND & ELLIS LLP
     Corporation of America:     BY:  MR. LEONID FELLER
16                               300 North LaSalle Street
                                 Chicago, IL  60654
17                               (312) 862-3144

18
     For Defendant              FOLEY & LARDNER LLP
19   International Paper:        BY:   MR. JAMES T. McKEOWN
                                       MR. NATHAN EIMER
20                                     MR. TRENT M. JOHNSON
                                 777 East Wisconsin Avenue
21                               Milwaukee, WI   53202
                                 (414) 297-5530
22

23                               EIMER STAHL LLP
                                 BY:  MR. NATHAN P. EIMER
24                               224 South Michigan Ave., Suite 1100
                                 Chicago, IL  60604
25                               (312) 660-7600
```

APPEARANCES CONTINUED:

| | |
|---|---|
| For Defendant<br>Temple-Inland: | MAYER BROWN LLP<br>BY:   MR. ANDREW S. MAROVITZ<br>        MS. BRITT M. MILLER<br>71 South Wacker Drive<br>Chicago, IL  60606<br>(312) 782-0600 |
| For Defendant<br>Cascades and Norampac: | K & L GATES LLP<br>BY:   MS. LAUREN NORRIS<br>70 West Madison Street, Suite 3100<br>Chicago, IL  60602<br>(312) 372-1121 |
| For Defendant<br>Georgia-Pacific: | QUINN EMANUEL URQUHART &<br>SULLIVAN LLP<br>BY:   MR. STEPHEN R. NEUWIRTH<br>51 Madison Avenue, 22nd Floor<br>New York, NY  10010<br>212-849-7000 |
| | GEORGIA-PACIFIC<br>BY:   MS. MARY K. McLEMORE<br>133 Peachtree Street, N.E.<br>P.O. Box 105605<br>Atlanta, GA  30348<br>(404) 652-4598 |
| For Defendant<br>RockTenn CP, LLC: | WINSTON & STRAWN LLP<br>BY:   MR. MICHAEL MAYER<br>        MR. JOSEPH L. SIDERS<br>35 West Wacker Drive<br>Chicago, IL  60601<br>(312) 558-5902 |
| For Defendant<br>Wayerhaeuser Company: | McDERMOTT WILL & EMERY LLP<br>BY:   MS. JENNIFER A. SMULIN DIVER<br>227 West Monroe Street, Suite 4400<br>Chicago, IL  60606 |

| | |
|---|---|
| 10:11:22 | 1 |
| 10:11:22 | 2 |
| 10:11:28 | 3 |
| 10:11:32 | 4 |
| 10:11:34 | 5 |
| 10:11:36 | 6 |
| 10:11:40 | 7 |
| 10:11:44 | 8 |
| 10:11:50 | 9 |
| 10:11:50 | 10 |
| 10:11:52 | 11 |
| 10:11:54 | 12 |
| 10:11:58 | 13 |
| 10:12:02 | 14 |
| 10:12:04 | 15 |
| 10:12:06 | 16 |
| 10:12:10 | 17 |
| 10:12:20 | 18 |
| 10:12:24 | 19 |
| 10:12:26 | 20 |
| 10:12:26 | 21 |
| 10:12:28 | 22 |
| 10:12:32 | 23 |
| 10:12:38 | 24 |
| 10:12:46 | 25 |

1  (The following proceedings were had in open court:)

2       THE COURT:  Good morning, everyone.

3       THE CLERK:  10 C 5711, Kleen Products v. Packaging

4  Corporation of America.

5       THE COURT:  Good morning.  This is a case that was

6  referred from Judge Shadur for discovery supervision, so let's

7  begin with our plaintiffs, and we will have the plaintiffs

8  identify -- Mr. Mogin, will you introduce your team?

9       MR. MOGIN:  I will.  Good morning, your Honor.

10      THE COURT:  Good morning.

11      MR. MOGIN:  Dan Mogin for the plaintiffs, Michael

12  Freed for the plaintiffs, Robert Wozniak for the plaintiffs,

13  Chuck Goodwin for the plaintiffs, Robert Eisner for the

14  plaintiffs, and we have in the back Walter Noss, Brian Clark,

15  and Matt Van Tine.

16      THE COURT:  Okay.  Wow.

17      Mr. Goodwin, tell us who your -- who people

18  concentrate on too, that helps me, which defendant.

19      MR. MOGIN:  I'm sorry.  Mr. Eisner concentrates on

20  PCA.

21      THE COURT:  Okay.

22      MR. MOGIN:  Mr. Goodwin on Georgia-Pacific, and

23  Mr. Clark on RockTenn, and Mr. Van Tine on Temple-Inland.

24      THE COURT:  Thank you.

25      And each of our seven defendants, we will have you

10:12:50　1　introduce yourselves individually with either if you have a

10:12:54　2　corporate representative with you or a co-counsel. We will

10:12:58　3　start with Mr. Neuwirth.

10:13:08　4　　　　　MR. NEUWIRTH:  Good morning, your Honor; Steven

10:13:10　5　Neuwirth for defendant Georgia-Pacific, and I am pleased to be

10:13:14　6　joined today by Mary McLemore from Georgia-Pacific.

10:13:18　7　　　　　THE COURT:  Okay.  Thank you.  Welcome, Ms. McLemore.

10:13:22　8　　　　　MS. McLEMORE:  Good morning, your Honor.

10:13:24　9　　　　　MR. McKEOWN:  Good morning, your Honor; James McKeown

10:13:24　10　for International Paper.  With me today are my co-counsel,

10:13:28　11　Nathan Eimer from Eimer Stahl and my colleague, Trent Johnson,

10:13:30　12　from Foley & Lardner.

10:13:30　13　　　　　THE COURT:  Good.  Good morning, gentlemen.

10:13:34　14　　　　　MS. DIVER:  Good morning, your Honor; Jennifer Diver

10:13:40　15　for Weyerhaeuser Company.

10:13:42　16　　　　　THE COURT:  Thank you, Ms. Diver.

10:13:08　17　　　　　MR. FELLER:  Good morning, your Honor; Leonid Feller

10:13:46　18　for Packaging Corporation of America.

10:13:48　19　　　　　THE COURT:  Okay.  Thank you, Mr. Feller.

10:13:48　20　　　　　MR. MAYER:  Good morning, your Honor; Mike Mayer and

10:13:50　21　Joe Siders on behalf of RockTenn CP, LLC.  I believe last time

10:13:52　22　Mr. McCareins said he wasn't going to be able to make it

10:13:56　23　today.

10:13:56　24　　　　　THE COURT:  He did.  I don't know how we will go on

10:13:58　25　without him.

| | |
|---|---|
| 10:14:02 | 1 |
| 10:14:06 | 2 |
| 10:14:08 | 3 |
| 10:14:14 | 4 |
| 10:14:14 | 5 |
| 10:13:08 | 6 |
| 10:14:18 | 7 |
| 10:14:20 | 8 |
| 10:14:24 | 9 |
| 10:14:26 | 10 |

1    MR. MAYER:  We have Mr. Siders here.

2    THE COURT:  Okay.  Mr. Mayer and Mr. Siders from

3 Winston for -- but remind me, you're RockTenn?

4    MR. MAYER:  Correct, your Honor.

5    THE COURT:  Okay.  Thank you.

6    MR. MAROVITZ:  Good morning, your Honor; Andy

7 Marovitz and Britt Miller for Temple-Inland.

8    THE COURT:  Thank you.  Ms. Miller, hello.

9    MS. MILLER:  Good morning, your Honor.

10    THE COURT:  Okay.

11    MS. NORRIS:  Good morning, your Honor; Laurie Norris

12 for Scott Mendel.  Scott Mendel mentioned that he won't be

13 here today.

14    THE COURT:  Right.  Good.

15    We have Ms. Cox, who just got a fabulous new job with

16 our newest -- one of our newest district court judges, but she

17 missed you so much she left Judge Tharp and she came back

18 today, and she knows you all well.

19    And we still have this photo of you.  You have seen

20 this photo, right?  Didn't you see the photo?  Where is the

21 photo?

22    THE CLERK:  It's in the brown binder to the right.

23    THE COURT:  The temporary reporter from last time,

24 she gave -- she found on the Internet every one of your

25 photos, just so you know, you all photograph very well.  So

10:15:14   1   she said, Judge, just in case you need, here's like -- so I

10:15:20   2   said, Well, it looks like all the old mug shots from my old

10:15:24   3   life.

10:15:26   4        Well, welcome, everyone, today.  We have the day set

10:15:30   5   aside, if needed, to have a working status here.

10:15:38   6        The first thing that I wanted to say since our last

10:15:40   7   status -- since the last status on June 22nd, we attempted to

10:15:56   8   summarize what I thought were discussions that we had had

10:16:00   9   during the day.  I don't even know if I -- we did this without

10:16:04  10   the transcript too.

10:16:06  11        So in an effort to keep our level of cooperation

10:16:12  12   going, and which part of level of cooperation is also trying

10:16:18  13   to come up with creative ideas without a rule book on how to

10:16:24  14   do it, so we sent to you three proposals.

10:16:30  15        I want to emphasize to you, I have -- on this, I have

10:16:36  16   a horse in the race here called cooperation.  None of these

10:16:40  17   three -- I was throwing them out as a means to open

10:16:48  18   discussion, so please do not think the judge thinks we should

10:16:50  19   be doing one of the three.  And I think it really served the

10:16:56  20   purpose because I was very glad to see your responses.  I

10:16:58  21   think it kind of helped phrase what the issues were.

10:17:02  22        So in today, I have received a consolidated

10:17:08  23   plaintiffs' response to these three and other issues they had,

10:17:14  24   and then I received a status report from each of the

10:17:20  25   defendants, and they are very helpful because in my effort to

10:17:24   1   give individual determination to each person, I am glad to get

10:17:28   2   that.

10:17:30   3          So yesterday Mr. Neuwirth, I thought in the same

10:17:40   4   spirit, sent a defendants' proposed order.  I just want to

10:17:44   5   reassure -- we didn't write back to you, Mr. Mogin -- I

10:17:50   6   basically took it as like a suggested agenda.  That's all I

10:17:54   7   took it as.  And so, I mean, I thought it was -- Chris and I

10:17:58   8   have come up with an agenda for today.  When I need the

10:18:04   9   lawyers to help me write a draft order, I will ask them to

10:18:06  10   help me write a draft order, but I was very glad to see -- I

10:18:10  11   thought it was like a last-minute sort of here you go.  So it

10:18:16  12   meant nothing more than that to me, and I hope that satisfies

10:18:22  13   any concern you have.  Does it?

10:18:26  14          MR. MOGIN:  I appreciate the court's comments, your

10:18:28  15   Honor.

10:18:28  16          THE COURT:  Okay.  Now, in throwing those three ideas

10:18:38  17   out as a way to get going, I think two things came back.  We

10:18:46  18   could look at the defendants' seven status reports, and we

10:18:50  19   could look at the plaintiffs' status report as a reaction to

10:18:52  20   the court's June 22nd order.

10:18:56  21          I think the one thing that is -- and each of the

10:19:02  22   defendants are in different positions -- some of them, mostly

10:19:04  23   the smaller ones, I think, are making more progress, and I

10:19:10  24   don't want to do anything here today to interfere with that

10:19:12  25   progress, and anything I am going to say, I am going to tell

10:19:16    1    you if it works for your client, it works, okay.

10:19:22    2        But I would say all seven defendants said, This has

10:19:28    3    been interesting, we have made a lot of progress, probably as

10:19:34    4    lawyers you have learned a lot trying to do discovery in this

10:19:38    5    fashion, but now it has come to a point, we are interested in

10:19:46    6    further cooperation if we can get global resolution is the

10:19:52    7    word all seven used.  We need some global resolutions of some

10:19:58    8    of the issues that have been recurring issues that we are

10:20:02    9    working on.

10:20:04    10       I think the plaintiff helped us in his report because

10:20:10    11   I think the plaintiff is saying more in general, I want to

10:20:20    12   keep cooperating, but he hasn't said that the cooperation is

10:20:28    13   in exchange for final resolution of the issues.  So I think

10:20:32    14   that these status reports have at least helped me crystallize

10:20:38    15   where the parties are.  And, Mr. Feller, I am very glad you

10:20:42    16   are shaking your head agreeing with me because of all the

10:20:44    17   status reports, I thought yours was probably the most helpful

10:20:50    18   because it was so concrete.

10:20:56    19       So here's what Chris and I want to suggest today.  We

10:21:00    20   have three major topics, I think, global resolution of

10:21:08    21   discovery issues, and with Mr. Feller's help, we are going to

10:21:12    22   talk about that.

10:21:16    23       Number two is what issues lend themselves to

10:21:20    24   sampling.

10:21:22    25       And three, what are we going to do about these

10:21:28  1  requests to produce.

10:21:28  2        On the global resolution of discovery issues, I think
10:21:36  3  we should have a little chat for a few minutes, and I think I
10:21:40  4  should -- I think the defendants ought to go to the jury room
10:21:46  5  next to me, talk for 45 minutes, I think the plaintiffs ought
10:21:50  6  to stay here after this discussion, and we ought to come back
10:21:54  7  and we ought to decide if there are some global resolution of
10:21:58  8  issues, if I understand what you are talking about, and we
10:22:02  9  decide as much as possible whether or not we can come up with
10:22:12  10  some resolution. We do almost the same thing with the
10:22:16  11  sampling. I am catching, and I know you're -- particularly
10:22:22  12  Mr. McKeown, is like knee deep into sampling that he's been
10:22:28  13  doing. I think some issues lend themselves to sampling. And
10:22:32  14  then, you know, as much as we can push off, we are going to
10:22:36  15  talk about the requests to produce, but there is a good
10:22:40  16  likelihood.

10:22:42  17        Now, the question is, at every step of the way, is it
10:22:48  18  time to start briefing and let's set the briefing; or should
10:22:52  19  we continue on in this fashion.

10:22:56  20        And then the fourth thing I'm hoping today is I have
10:22:58  21  a number of days available between now and my demise on
10:23:06  22  September 30th, we are going to pick the days today. And they
10:23:10  23  can be individual conferences or joint conferences, given you
10:23:14  24  go back to the office and talk about it too. But I am hoping
10:23:18  25  by the end of the day, we have a plan.

10:23:24  1    Any comment to that suggestion?  Does that sound like
10:23:30  2  something you could do?
10:23:30  3    MR. NEUWIRTH:  Just one question.  As indicated in
10:23:32  4  the submission that we had made to the court, for a variety of
10:23:36  5  reasons, I am only able to stay today --
10:23:40  6    THE COURT:  4:00 o'clock.  3:30?
10:23:42  7    MR. NEUWIRTH:  Actually, even a little earlier.  I am
10:23:46  8  actually scheduled for a 2:30 flight, although -- I don't know
10:23:50  9  if what you talked about requires the whole day or whether
10:23:54 10  it's something we could -- I think we can assume we can
10:23:56 11  accomplish the agenda today in about three hours, but we may
10:24:00 12  be wrong.
10:24:00 13    THE COURT:  All right.
10:24:02 14    MR. NEUWIRTH:  But I was just going to suggest that I
10:24:04 15  think the defendants, as reflected in what we submitted to you
10:24:06 16  yesterday, have given a lot of thought to the types of issues
10:24:12 17  that may lend themselves to some global resolution, and I was
10:24:16 18  just going to suggest that maybe we don't need as long as 45
10:24:18 19  minutes.  You may have something you want to do in the
10:24:22 20  interim, but it may be possible that we could at least deal
10:24:24 21  with that part of the agenda a little more quickly.
10:24:26 22    THE COURT:  I have nothing, but I want the plaintiffs
10:24:28 23  to hear -- I mean, I just thought maybe it would go quicker if
10:24:34 24  you had a private caucus.  I know that you met this morning.
10:24:40 25  Maybe you could read my mind and you have had your private

| | | |
|---|---|---|
| 10:24:44 | 1 | caucus already. |
| 10:24:44 | 2 | MR. NEUWIRTH: Well, I think we tried, and I think |
| 10:24:46 | 3 | your reference to the proposed order we sent as an agenda type |
| 10:24:50 | 4 | document is accurate because what we tried to do there, after |
| 10:24:58 | 5 | a lot of thought and work, was to come up with a set of |
| 10:25:00 | 6 | suggestions, which is really all they are, suggestions for |
| 10:25:04 | 7 | discussion, about how we might bring issues that we have been |
| 10:25:08 | 8 | working with you and the plaintiffs on throughout this year to |
| 10:25:12 | 9 | at least some interim resolution to try to take advantage of |
| 10:25:16 | 10 | what we can do with you while you are on the bench and also |
| 10:25:20 | 11 | set up a framework for moving forward. |
| 10:25:22 | 12 | And each of the issues, what we tried to do was come |
| 10:25:24 | 13 | up with something that defined, as best as we could, and, |
| 10:25:28 | 14 | again, without the benefit of your input, where we are, and |
| 10:25:34 | 15 | also a resolution process that would be relatively quick if |
| 10:25:36 | 16 | issues couldn't be resolved. Certainly, we assumed we would |
| 10:25:40 | 17 | have a discussion with you and the plaintiffs, but it was |
| 10:25:42 | 18 | meant to be a starting point to that discussion. |
| 10:25:44 | 19 | THE COURT: That's the way I took it. Okay. |
| 10:25:46 | 20 | All right. So you actually physically want to leave |
| 10:25:48 | 21 | at 2:00? |
| 10:25:58 | 22 | 12:00? |
| 10:25:58 | 23 | MR. NEUWIRTH: If I could leave at 1:00, that would |
| 10:26:00 | 24 | be great. |
| 10:26:02 | 25 | THE COURT: Well, they can cover for you too. I |

10:26:04   1    mean, that's the other thing. We have dragged an awful lot of

10:26:06   2    lawyers here, and I was happy to start, I think your

10:26:12   3    priorities are straight in your life, but we can -- and you

10:26:16   4    can get the transcript.

10:26:16   5         MR. NEUWIRTH: Just so you know, your Honor, it's not

10:26:18   6    disrespect for the court. I observe a Jewish Sabbath --

10:26:24   7         THE COURT: No, I know, and I heard that I kept you

10:26:26   8    here on other Fridays. I was very glad to have that

10:26:30   9    information.

10:26:32   10        MR. NEUWIRTH: Thank you.

10:26:32   11        THE COURT: So we will do what we can do, and you

10:26:40   12    have such great co-counsel, and your client is here too, so

10:26:44   13    she can also speak up. We will let her speak today.

10:26:48   14        Okay. To that, Mr. Mogin, is there anything you want

10:26:52   15    to say to Mr. Neuwirth's comment there? Are you leaving at

10:27:00   16    any time?

10:27:00   17        MR. MOGIN: I am not leaving.

10:27:00   18        THE COURT: Are you going shopping?

10:27:02   19        MR. MOGIN: My flight is not until 6:30, so we are

10:27:04   20    fine, your Honor.

10:27:10   21        THE COURT: All right. This is going to be from

10:27:14   22    Mr. Feller; we are going to hear from Mr. Feller just in a

10:27:16   23    moment to get us started with this. But Mr. Feller started

10:27:22   24    out with nine issues. The only way I disagree -- not

10:27:26   25    disagree, but the only thing I would change from Mr. Feller's

10:27:28  1    points are I think the fundamental issue here is search

10:27:38  2    methodology, and a number of the issues are related to search

10:27:42  3    methodology.  And before anybody leaves today, I need to put

10:27:48  4    on the record some statements about search methodology.

10:28:00  5        My informal finding on search methodology -- and I

10:28:02  6    don't want somebody to look at this record and say, Well, why

10:28:06  7    the heck was the judge having litigation holds, matching --

10:28:14  8    null set dictionary, what did these things have to do with

10:28:18  9    search methodology?  So I want to say something before we

10:28:24  10   begin on at least where I am on the search methodology.

10:28:30  11       I think another issue I saw was transactional data.

10:28:34  12   Another issue, what I heard the defendants saying is global

10:28:40  13   resolution.  Another would be -- another would be time frames,

10:28:50  14   time period.  I am taking RPDs, I am taking the requests to

10:28:54  15   produce, out of this.  That's a separate discussion.  And so I

10:29:02  16   think they are not just isolated issues.  I think what I am

10:29:08  17   trying to get us to talk about are overreaching topics.

10:29:12  18       Now, Mr. Feller, you made a very compelling argument

10:29:18  19   on you're willing to do -- you give, in fact, two examples,

10:29:22  20   you stick your neck out, and you give two examples of what

10:29:30  21   you're willing to do if you have a global resolution.  Tell me

10:29:34  22   what you mean by that.

10:29:34  23       MR. FELLER:  That's exactly right, your Honor.  I

10:29:36  24   think the frustration and the difficulty from PCA's

10:29:44  25   standpoint, I think I generally speak for defendants here, is

10:29:48  1  that we have been in a process with plaintiffs of negotiating

10:29:52  2  individual issue by individual issue that plaintiffs have

10:29:54  3  raised, and they're obviously entitled to raise any issues

10:29:58  4  they want, without any linkage between the issues in terms of

10:30:06  5  negotiations.  And so from at least my standpoint, on each and

10:30:14  6  every single one of these issues, it seems to me I am

10:30:16  7  essentially negotiating against myself.

10:30:18  8           THE COURT:  Okay.

10:30:20  9           MR. FELLER:  Plaintiffs say, We'd like a data

10:30:24  10  dictionary.  And I say okay.  And then we start talking about,

10:30:28  11  Well, should that include a null set or not, and we are

10:30:32  12  talking about the data dictionary.  And that's it.  And then,

10:30:34  13  by the way, we give them the data dictionary and nothing comes

10:30:38  14  out of that and nothing is resolved.  And these were, in the

10:30:40  15  status report, meant to be examples only.  But, for example, I

10:30:48  16  think PCA has said, I think other defendants have said, We are

10:30:50  17  willing to work with you on time period, but the consequence

10:30:54  18  of that is we are going back further in time, there is many

10:30:58  19  more documents to go through, and so, you know, perhaps a

10:31:02  20  tradeoff there is that you agree on backup tapes, that we

10:31:06  21  don't have to go back on backup tapes.

10:31:10  22           You know, again, there's any number of linkages.  We

10:31:14  23  think many of these issues are related, and that you could

10:31:16  24  come to a global resolution on them.  And so that is -- you

10:31:22  25  know, I think to make further progress in the negotiations,

10:31:26　1　that is the sort of dialog we have to have in terms of what

10:31:30　2　plaintiffs are willing to give for some of their demands.  I

10:31:34　3　mean, I think that's how negotiations generally work.

10:31:36　4　　　　To date, and I think Mr. Mogin has been very candid

10:31:40　5　standing up in court and saying this, he is just not willing

10:31:42　6　to do that.  And if that's the case, I think as your Honor

10:31:46　7　said, I think certainly for PCA, and, again, hopefully I speak

10:31:50　8　for defendants, our priority is hopefully not your demise, but

10:31:54　9　before you step down, to get closure, if we are going to do it

10:32:00　10　issue by issue, let's figure out what we need to brief issue

10:32:04　11　by issue and get it done so that everyone, plaintiffs and

10:32:06　12　defendants, have certainty, and now after close to two years,

10:32:10　13　we can start to move on to the substance of this case rather

10:32:12　14　than, you know, what I call discovery about discovery, which I

10:32:18　15　think, you know, hopefully we can move past at this point.

10:32:20　16　　　　THE COURT:  So your two examples, so that Mr. Mogin

10:32:26　17　has something concrete to at least, you know, kind of chew on

10:32:32　18　over here, the first one was -- the first one was defendants

10:32:40　19　provide null set data dictionary with plaintiffs' assurance

10:32:46　20　that this would resolve their concern about search term

10:32:48　21　validation.

10:32:50　22　　　　MR. FELLER:  Yes.  So that's one --

10:32:52　23　　　　THE COURT:  Or if somebody had a suggestion.  I mean,

10:32:56　24　that's the latest suggestion we have had on the table.

10:33:00　25　　　　MR. FELLER:  And I take that from you, the court.

10:33:06    1    THE COURT:  Right, I know.  And here I am sitting up
10:33:10    2  here throwing things out.
10:33:10    3    MR. FELLER:  Yes.
10:33:10    4    THE COURT:  Or -- if you took that from me, but if
10:33:20    5  there was another suggestion for a verification, then that
10:33:22    6  would close the subject on verification.
10:33:24    7    MR. FELLER:  Absolutely, your Honor.  And there's
10:33:26    8  actually a third example, and, again, here's sort of the
10:33:32    9  problem, and, again, just as an example, and I know we don't
10:33:36   10  want to deal with RPDs, necessarily, but we have also said we
10:33:40   11  are perfectly happy to give the IP sort of document that IP
10:33:44   12  provided if that resolves the parsing issue.
10:33:46   13    THE COURT:  Right.  Mr. Mogin said no to that.
10:33:48   14    MR. FELLER:  Right, so, but then --
10:33:48   15    THE COURT:  That's the reason, I think.  And that's
10:33:52   16  why we are going to hear from people here today.  I read
10:33:54   17  Mr. Mogin's response that was clear -- I don't think he has
10:33:58   18  said no to other things.  He hasn't had a chance to say
10:34:02   19  anything.  He said, no, that it could not be an alternative.
10:34:08   20  It might narrow it, it might bring you closer, but he is not
10:34:12   21  accepting it as an alternative.  So then, given time, giving
10:34:20   22  -- you know, I feel like I know much more about the case than
10:34:22   23  the new judge that's going to be coming on, that's why I am
10:34:26   24  saying I think probably the requests to produce are probably
10:34:30   25  ready for briefing, unfortunately.

| | | |
|---|---|---|
| 10:34:34 | 1 | MR. FELLER:  And, your Honor -- |
| 10:34:34 | 2 | THE COURT:  But I am open to doing anything here to |
| 10:34:38 | 3 | pull some of the other issues off if you get the kind of |
| 10:34:44 | 4 | closure. |
| 10:34:44 | 5 | MR. FELLER:  Exactly. |
| 10:34:44 | 6 | THE COURT:  Now, you mean closure issue by issue, |
| 10:34:48 | 7 | though, you are not talking that they have to agree to |
| 10:34:50 | 8 | everything or you want to go to briefing, do you? |
| 10:34:58 | 9 | MR. FELLER:  No, no, no, your Honor.  I think -- no. |
| 10:35:00 | 10 | And I think maybe to modify a little bit of what you said at |
| 10:35:04 | 11 | the outset, which is certainly search terms is a key issue.  I |
| 10:35:08 | 12 | think the other sort of global category or bucket you could |
| 10:35:14 | 13 | put things in is, you know, the corpus of documents that are |
| 10:35:18 | 14 | going to be reviewed, and I think all sorts of things fall |
| 10:35:22 | 15 | under that:  custodians, time period, backup tapes, all sorts |
| 10:35:26 | 16 | of issues. |
| 10:35:28 | 17 | And so, no, do I think, you know, we are going to |
| 10:35:30 | 18 | walk out of here with a global resolution on every discovery |
| 10:35:34 | 19 | issue and never raise it again?  No, but I think what the |
| 10:35:36 | 20 | court has called phase one versus phase two, I think what we |
| 10:35:42 | 21 | would like is to, you know, get pretty close to being done on |
| 10:35:46 | 22 | phase one, which is to say defendants have made their |
| 10:35:52 | 23 | production, defendants are open to additional search terms, |
| 10:35:54 | 24 | defendants are open to additional custodians, defendants are |
| 10:35:58 | 25 | open to talking about time period and transactional fields, |

| | | |
|---|---|---|
| 10:36:02 | 1 | but, again, those issues need to be resolved together at least |
| 10:36:06 | 2 | for phase one, and then whatever the standard is, whether it's |
| 10:36:12 | 3 | good cause or reasonable -- whatever it may be, if you need to |
| 10:36:16 | 4 | come back at some point when you have been through our |
| 10:36:18 | 5 | production and we need to talk about discrete issues, that's |
| 10:36:20 | 6 | fine, we are open to that. |
| 10:36:22 | 7 | THE COURT:  Any defendant just dying to say anything |
| 10:36:26 | 8 | else, or has Mr. Feller as an opening kind of spoken for you? |
| 10:36:30 | 9 | Anybody want to say anything specific? |
| 10:36:38 | 10 | All right.  Mr. Mogin, your reaction? |
| 10:36:44 | 11 | MR. MOGIN:  Well, a couple things, your Honor, if you |
| 10:36:46 | 12 | wouldn't mind.  You said that you were going to make some |
| 10:36:50 | 13 | comments regarding search methodology. |
| 10:36:52 | 14 | THE COURT:  Would you like me to? |
| 10:36:54 | 15 | MR. MOGIN:  No.  In fact, I wanted to remind the |
| 10:36:56 | 16 | court that we have not finished the hearing with respect to |
| 10:36:58 | 17 | search methodology. |
| 10:37:00 | 18 | THE COURT:  Well, no.  That's why I am going to make |
| 10:37:02 | 19 | some comments. |
| 10:37:02 | 20 | MR. MOGIN:  Okay.  Our linguist has not testified yet |
| 10:37:06 | 21 | with respect to Boolean search and the particulars of the |
| 10:37:12 | 22 | Boolean search, nor have we finished with our |
| 10:37:16 | 23 | cross-examination of Mr. Regard.  So if we are going to reopen |
| 10:37:20 | 24 | the search methodology issues, of course, that would be the |
| 10:37:22 | 25 | first thing that we would have to consider.  But I want to |

10:37:28   1   talk about that a little bit.

10:37:30   2        And I think that in order to understand where we are

10:37:34   3   and how we move forward, I think it's important to talk about

10:37:36   4   context.  And in that regard, I think the first thing to talk

10:37:42   5   about is what happened at the close of the hearing and what

10:37:46   6   were the instructions that your Honor gave to the parties.

10:37:50   7   You did not just give those instructions to the plaintiffs,

10:37:52   8   you gave those instructions to the parties.  And the

10:37:56   9   instructions that you gave were essentially work with your

10:37:58  10   experts and see if you can come up with a methodology within

10:38:02  11   the Boolean construct that you can be comfortable with.  Tweak

10:38:10  12   it.  That's what you said.  And the plaintiffs, in fact, did

10:38:14  13   that, your Honor, at considerable expense, working with our

10:38:16  14   expert, Dr. Lewis, and others, and we did come up with a

10:38:20  15   proposal that would work within the Boolean context.

10:38:24  16        But the defendants did not respond.  The defendants

10:38:26  17   did not come forward with their own proposal.  Rather, their

10:38:30  18   response was the same response that you have been hearing and

10:38:32  19   that we, the plaintiffs, have been hearing for nigh on a year

10:38:38  20   and a half.  And that response was, Take the documents that we

10:38:40  21   are going to give you, review them, and get back to us.

10:38:46  22        At the same time, your Honor, I think it's ironic to

10:38:50  23   note that it was the defendants who then raised the issue

10:38:54  24   about parsing and whether there had been some waiver due to

10:38:58  25   the lapse of time.

10:38:58    1    THE COURT:  Well, I took care of that.  Don't worry.

10:39:00    2    MR. MOGIN:  But the point being, your Honor, is that

10:39:04    3    I think the defendants are speaking with what is expedient for

10:39:12    4    their position at the moment, and I think that in order to

10:39:14    5    understand why the plaintiffs are so frustrated with the

10:39:16    6    process, if you will, is because of context.  And the first

10:39:20    7    thing in context that I want to bring to your attention is

10:39:24    8    something about the time frame here.

10:39:28    9    The first thing about the time frame to recall, your

10:39:30    10    Honor, is that it was August of 2011 and our first status

10:39:36    11    report, joint status report, to Judge Shadur where we

10:39:42    12    identified a number of issues.  And this was a joint status

10:39:46    13    report, the defendants signed off on it, and we identified

10:39:50    14    these as common issues that we would try to resolve before

10:39:54    15    turning to the individual issues.

10:39:56    16    And the common issues at that time that were

10:40:00    17    discussed was ESI search methodology, which at the time was

10:40:04    18    phrased as we were asking for subject matter searches, and

10:40:12    19    whereas the defendants were proposing the custodians and

10:40:14    20    Boolean search.

10:40:16    21    Now, at that time, of course, your Honor, we hadn't

10:40:18    22    seen their search terms, and we knew nothing of their actual

10:40:26    23    search methodology as it was going to be applied.  In other

10:40:28    24    words, we had none of the information of the type that's in

10:40:32    25    that IP letter that we will talk about in a moment.  The only

10:40:36   1   custodians at that point that were under discussion were the

10:40:40   2   custodians that were unilaterally put forward by the

10:40:42   3   defendants in Ms. Miller's letter of August of 2011, the 138

10:40:50   4   there.

10:40:52   5        The other thing that we discussed at that time with

10:40:56   6   Judge Shadur in August was the scope of the search.  That is,

10:41:00   7   the sources, backup tapes, non-server media, et cetera, et

10:41:06   8   cetera, and then, most importantly, relevant time period.

10:41:10   9   Now, that's August and that's the joint report.

10:41:14   10        As things were progressing and as we were preparing a

10:41:18   11   joint report -- and by the way, your Honor, we said at that

10:41:22   12   time to Judge Shadur that we thought that motion practice

10:41:24   13   might be required in order to resolve these things.

10:41:28   14        After that, there was a next status conference that

10:41:30   15   was scheduled for November 15th, but the defendants asked us

10:41:34   16   to please take that off the calendar and meet with them, which

10:41:40   17   we did, at which time they began to explain some of the search

10:41:44   18   methodology was the GP testing of protocol that you heard

10:41:48   19   about during the hearings.  We weren't satisfied at that

10:41:56   20   point.  The defendants at that point also asked rather than do

10:41:58   21   the 30(b)(6) depositions that had been scheduled at that point

10:42:02   22   in time, they could send us letters.  And we said, You can

10:42:06   23   send us letters, but, of course, it's without prejudice, and

10:42:08   24   that was quite clear, notwithstanding what transpired

10:42:12   25   thereafter.

10:42:14　1　　　　　So what did we tell Judge Shadur in December 15th

10:42:18　2　were the issues?  We then said that the issues were, again,

10:42:22　3　the ESI search methodology, we talked about using predictive

10:42:30　4　coding, we talked about random sampling of the documents, we

10:42:36　5　also talked about, again, the scope of searches, what were the

10:42:38　6　sources, and, again, the relevant time periods.

10:42:42　7　　　　　We also at that time talked about indexes and

10:42:44　8　organization of the documents.  If you go back and you look at

10:42:48　9　the transcript, you will see there is a lengthy colloquy with

10:42:52　10　Judge Shadur about indexes and organization and his feelings

10:42:56　11　about that, which were fairly specific, that he thought the

10:43:02　12　defendants were required to index or to organize.

10:43:06　13　　　　　THE COURT:  He also said in that same transcript he

10:43:10　14　is not familiar with electronic discovery, and his talking

10:43:14　15　about indexing was in a paper case, Mr. Mogin.  I mean, he has

10:43:20　16　more experience than anybody in the building, I couldn't agree

10:43:22　17　with you more, but in that same frame, in that same -- that

10:43:28　18　was the day he decided to send it to me, he said, I don't know

10:43:32　19　nothing about electronic discovery.

10:43:38　20　　　　　MR. MOGIN:  I respectfully disagree, your Honor.  He

10:43:40　21　did that, I thought, in the context of discussing the search

10:43:42　22　methodology and sources.  With respect to indexes, I think the

10:43:48　23　review of the transcript will show something different.  I

10:43:50　24　respectfully disagree with your interpretation of that.

10:43:54　25　　　　　Be that as it may, your Honor, he did then make the

10:43:58  1  referral.  The referral was actually somewhat broader than the

10:44:04  2  referral that was referenced in the transcript.  And on

10:44:06  3  February the 6th, the plaintiffs, gave you our first

10:44:12  4  submission.  And we told you at that point in time that the

10:44:14  5  issues for us were the search method that was CBAA versus

10:44:22  6  Boolean and custodial searches, which is department searches

10:44:24  7  or unit searches.  We said that the scope of search -- that

10:44:28  8  is, the sources -- was also important for us.  We said again

10:44:32  9  that the time period was important and that indexing and

10:44:36  10  organization was important.

10:44:38  11         The defendants, as you recall, were quite adamant

10:44:42  12  that, oh, no, the hearing only had to do with search

10:44:44  13  methodology, and the papers will bear that out.

10:44:48  14         We then, again, your Honor, if I can refer you to the

10:44:52  15  13th of February, again we talked about collection,

10:44:56  16  preservation, what's going to be the corpus, how are we going

10:45:00  17  to match up corporate functions with sources, with custodians,

10:45:04  18  et cetera.  We talked about time period.  We talked about

10:45:08  19  organizations.  Subsequently, we talked about trade

10:45:12  20  associations.  We have talked about all of the many parsing

10:45:16  21  issues.  We have talked about the enumerable individual

10:45:20  22  issues.  But in point in fact, what isn't yet resolved or,

10:45:26  23  from what I can tell listening to the defendants and reading

10:45:28  24  their submissions, time period, indexing and organization,

10:45:34  25  what's going to be the proper corpus, from what sources.

| | | |
|---|---|---|
| 10:45:40 | 1 | But what has happened is, at your Honor's request, |
| 10:45:44 | 2 | the plaintiffs have, for the time being, suspended their |
| 10:45:48 | 3 | pursuit of a more robust electronic search using more modern |
| 10:45:54 | 4 | tools than the defendants, in fact, used.  We have suspended |
| 10:45:58 | 5 | that.  And we gave you a proposal, which was never responded |
| 10:46:02 | 6 | to in that respect. |
| 10:46:06 | 7 | So I don't know precisely then what's meant by global |
| 10:46:12 | 8 | resolution in the context that the defendants are talking |
| 10:46:16 | 9 | about because to us, your Honor, it sounds like what the |
| 10:46:22 | 10 | defendants want to do is get to an issue, quote, resolve it, |
| 10:46:26 | 11 | and then close the door.  There's no going back, et cetera. |
| 10:46:30 | 12 | THE COURT:  That isn't what they said. |
| 10:46:32 | 13 | MR. MOGIN:  Well, that's how plaintiffs -- |
| 10:46:32 | 14 | THE COURT:  That isn't what they said. |
| 10:46:34 | 15 | MR. MOGIN:  Respectfully, your Honor, that's how the |
| 10:46:36 | 16 | plaintiffs perceive it. |
| 10:46:38 | 17 | And so where are we?  Well, the plaintiffs have an |
| 10:46:46 | 18 | obligation to the class and to our clients. |
| 10:46:52 | 19 | THE COURT:  I'm sorry? |
| 10:46:52 | 20 | MR. MOGIN:  We have an obligation to the class and |
| 10:46:54 | 21 | our clients, and our obligation, of course, can't be divorced |
| 10:46:58 | 22 | from our burden of proof.  We have the burden of proof with |
| 10:47:00 | 23 | respect to not just the case in its totality, but we're |
| 10:47:04 | 24 | obviously going to bear most of the burden of proof on these |
| 10:47:08 | 25 | discovery issues. |

| | | |
|---|---|---|
| 10:47:08 | 1 | So the defendants have come forward to you with all |
| 10:47:12 | 2 | sorts of ideas about how the plaintiffs can compromise, how |
| 10:47:16 | 3 | the plaintiffs can back off.  Well, I have said repeatedly to |
| 10:47:22 | 4 | the court and to the defendants that we can't negotiate |
| 10:47:28 | 5 | without a willing negotiating partner, and a willing |
| 10:47:30 | 6 | negotiating partner is not one who acts unilaterally.  The |
| 10:47:36 | 7 | search methodology, the search terms, that was unilateral. |
| 10:47:40 | 8 | THE COURT:  No, that was court imposed.  I'm sorry. |
| 10:47:46 | 9 | You can say it was unilateral in the beginning. |
| 10:47:50 | 10 | MR. MOGIN:  I am referring to the defendants.  What |
| 10:47:52 | 11 | the defendants actually did, your Honor, was not court |
| 10:47:56 | 12 | imposed. |
| 10:47:56 | 13 | THE COURT:  Well, it was -- if the chronology, you |
| 10:48:02 | 14 | know -- it began as -- you know, it began as the defendants |
| 10:48:06 | 15 | picked the original search terms.  And as I understood it, by |
| 10:48:12 | 16 | September, they asked you for input on search terms. |
| 10:48:16 | 17 | MR. MOGIN:  And got it twice and ignored it once. |
| 10:48:18 | 18 | THE COURT:  Okay. |
| 10:48:20 | 19 | MR. MOGIN:  Completely ignored it once. |
| 10:48:22 | 20 | THE COURT:  Okay.  But, I mean, I agree with you when |
| 10:48:26 | 21 | they began their process, they picked the original terms |
| 10:48:30 | 22 | because they were the producing party, and then they asked you |
| 10:48:36 | 23 | for input, but I truthfully, if you're telling me they have |
| 10:48:40 | 24 | never listened to you or you've made other suggestions, I am |
| 10:48:44 | 25 | very surprised at that. |

10:48:46    1    MR. MOGIN:  Well, I can point to it in the record,
10:48:48    2    your Honor.  After their search terms came out, we sent them a
10:48:56    3    letter saying, Well, wait a minute, you haven't dealt with
10:49:00    4    these particular issues which are apparent from the face of
10:49:04    5    the RPDs.
10:49:04    6        THE COURT:  Well --
10:49:06    7        MR. MOGIN:  Excuse me.  Let me finish, if you would,
10:49:08    8    please.
10:49:08    9        And then they did some modification of the search
10:49:16   10    term.  Now, I want to point out that every time we sent them a
10:49:20   11    letter, we said we are not suggesting that we're agreeing to
10:49:22   12    this methodology.
10:49:24   13        THE COURT:  I understand that, and that's my fault,
10:49:26   14    not theirs.
10:49:26   15        MR. MOGIN:  And then in November --
10:49:28   16        THE COURT:  That is my fault.  Okay?
10:49:30   17        MR. MOGIN:  And then in November, after we saw the
10:49:32   18    second iteration of their search terms, we sent them yet again
10:49:38   19    another letter, and as the hearings have revealed, none of the
10:49:40   20    suggestions from that letter were incorporated.  And what we
10:49:44   21    also learned in the hearings was that the search methodology
10:49:48   22    that was used was not used on all of the requests, we learned
10:49:56   23    that there was no ability to link or the ability had been lost
10:50:00   24    to link search requests -- search terms to particular
10:50:08   25    requests, and, ultimately, it wasn't until a few weeks ago

10:50:12    1    when IP gave us the letter, which, as I said, I commend them

10:50:20    2    for the transparency, but to us -- we gave them an exhibit

10:50:24    3    that we attached to our status conference statement today, to

10:50:28    4    us that just shows in very clear fashion that the requests

10:50:34    5    that we submitted are, in large part, not the requests that

10:50:40    6    the defendants have responded to.

10:50:42    7            So why they would love to come before your Honor and

10:50:46    8    tell you that eight million pages or 10 million pages or this

10:50:50    9    page count or that page count, in point of fact, what we are

10:50:52   10    seeking -- what the plaintiffs are seeking are the documents

10:50:54   11    that we have requested so that we can ultimately meet our

10:50:58   12    burdens of proof.

10:51:02   13            The point being, your Honor, that -- well, let me go

10:51:10   14    on.  The defendants have asked that, Why don't you just take

10:51:14   15    all of our documents --

10:51:16   16            THE COURT:  Take all your what?

10:51:16   17            MR. MOGIN:  Take all of our documents, review the

10:51:20   18    documents, and then we will have a discussion.  Now, that's

10:51:22   19    the very first thing that they put on the table, your Honor,

10:51:26   20    when in February, they ignored your order to tweak the Boolean

10:51:34   21    and came forward and said, We are going to produce our

10:51:38   22    documents.  That's what they said.  The plaintiffs can look at

10:51:40   23    them, and then we will be very open to this and that and the

10:51:44   24    other thing.

10:51:44   25            THE COURT:  In certain cases.  You shouldn't be this

10:51:46  1   sarcastic.

10:51:48  2         MR. MOGIN:  I don't mean to be sarcastic, your Honor.

10:51:50  3   I'm being serious.

10:51:52  4         THE COURT:  In certain cases, an early review, if you

10:51:54  5   didn't have seven defendants, okay, an early review might be

10:52:00  6   one method of verification because if nothing else I have

10:52:04  7   learned from this case, and I am going to tell you in a few

10:52:08  8   minutes, is we are on -- you know, maiden territory here

10:52:16  9   legally; not in the e-world.  But in the case law on one of

10:52:24  10  the two prongs of what you have been saying since February is,

10:52:34  11  I believe -- well, you finish.  You finish, and then I will

10:52:38  12  talk.  You finish.

10:52:40  13        I mean, I do hear you, Mr. Mogin.  I hear you loud

10:52:42  14  and clear.  And you're right, I never made a formal ruling on

10:52:48  15  the search method in this case.  That is not their fault.

10:52:52  16  Okay?  That is not their fault.

10:52:54  17        MR. MOGIN:  I am not suggesting that it was.

10:52:56  18        THE COURT:  I told you -- I told you what -- which

10:53:00  19  way I was, quote, unquote, leaning so you know what -- you

10:53:04  20  know how I'm leaning.  I made that perfectly clear.  But I've

10:53:10  21  never told you in a coherent fashion because what I have been

10:53:18  22  trying to do is you said there are two problems with Boolean

10:53:22  23  search, and all of these things that we have been trying to do

10:53:28  24  since February were to help correct your problems with Boolean

10:53:34  25  search.

10:53:34   1    MR. MOGIN:  Your Honor, let me get back to that,

10:53:36   2  please.  The point is, yes, you did ask for certain things,

10:53:40   3  but one of the things that you did ask for at the conclusion

10:53:44   4  of the hearing --

10:53:44   5    THE COURT:  Was a way to verify.

10:53:46   6    MR. MOGIN:  No, it wasn't.  You asked us, rather,

10:53:50   7  your Honor, if we could -- verification was included, that you

10:53:54   8  asked if there was a way to tweak, as you put it, the Boolean

10:54:00   9  methodology, quote, Can you get together with your experts,

10:54:02   10  with Dr. Lewis and Mr. Regard, and tweak this so that you can

10:54:06   11  use the Boolean construct.  I believe that's close to a

10:54:10   12  verbatim quote, your Honor.  And we did that, but the

10:54:14   13  defendants never did.

10:54:16   14    What the defendants came forward with is, their

10:54:18   15  proposal, We're going to produce all the documents that were

10:54:22   16  the result of our unverified search methodology, and the

10:54:26   17  plaintiffs can go through them, and if they have things that

10:54:30   18  they think should be added, we will be very open to adding

10:54:34   19  them.

10:54:36   20    Now, I'm not being sarcastic, your Honor, but one of

10:54:44   21  the things, one example of being very open to having them, was

10:54:46   22  Mr. Hannan, and yet we had to go through and get an order and

10:54:50   23  basically spent half a day in mediation.  I don't really

10:54:52   24  consider that to be, quote, very open.  That's just an indicia

10:54:58   25  of what the process will be if we continue down this road.

10:55:00  1    So --

10:55:02  2    THE COURT:  All right.

10:55:02  3    MR. MOGIN:  -- what's my point to all this, your

10:55:04  4  Honor?  My point to all this is that the plaintiffs have put

10:55:12  5  on the table for a long time a number of issues, and it seems

10:55:14  6  like the issues have not been addressed in recent hearings.

10:55:20  7  Parsing is one issue that has to be addressed, and we're

10:55:24  8  ready, willing, and able to do that.  We will do it in the

10:55:28  9  most efficient way.  I continue to believe that IP-type

10:55:32  10  letters from the other defendants that are as candid as IP was

10:55:38  11  and as transparent as IP was will certainly assist the court

10:55:42  12  with respect to that aspect of the case.  But the time period

10:55:46  13  has to be resolved.  Indexing and organization needs to be

10:55:52  14  resolved.

10:55:54  15    THE COURT:  So you're actually -- okay.  Now, let me

10:56:00  16  take a deep breath here.  This is exactly what I mean.  You

10:56:06  17  guys take a deep breath, okay, because Mr. Mogin I think is

10:56:10  18  just saying he is willing to do McKeown kind of letters with

10:56:20  19  each of you.  I would think if you were up at the podium, you

10:56:24  20  would say, Okay, most of you have said, I'll do McKeown kind

10:56:28  21  of letters if you are going to drop phase one requests to

10:56:34  22  produce.  Whether it's me, Judge Martin, or Judge Rowland,

10:56:38  23  whoever the heck it is, or Judge Shadur, whatever the heck

10:56:42  24  Judge Shadur does, they have said they will do McKeown letters

10:56:48  25  -- all I'm trying to do, Mr. Mogin, here today is to get

10:56:52  1  better communication here.  They're saying they're going to do

10:56:56  2  it if you say affirmatively on the spot that as far as round

10:57:00  3  one goes of the requests to produce, Nolan, you don't have to

10:57:04  4  write an opinion on this, we will do McKeown's letters.  But

10:57:10  5  they need you to say that's the end.

10:57:12  6      MR. MOGIN:  You mean once I have those letters, I

10:57:16  7  can't move to compel?

10:57:16  8      THE COURT:  You cannot go back and do a full-fledged

10:57:22  9  briefing of the 92 if they go through all the work and they do

10:57:24  10  what Jim did -- what I understand they mean, they have got to

10:57:36  11  have closure on -- not that you can't come back and say, Hey,

10:57:42  12  I need more information on da, da, da, da, da, but that's one

10:57:48  13  issue on round one request to produce is finished.

10:57:52  14      MR. MOGIN:  Does that mean that I cannot move to

10:57:54  15  compel based upon the deficiencies that are exposed by those

10:57:58  16  letters?

10:58:00  17      THE COURT:  All right.  Answer.  What does that mean?

10:58:00  18      MR. NEUWIRTH:  And I think --

10:58:06  19      THE COURT:  What does that mean?  Just answer that

10:58:08  20  question.  Can he move to compel -- well, wait.  You know

10:58:12  21  what?  Let's ask Mr. McKeown, because he's done it.

10:58:22  22      MR. McKEOWN:  Your Honor, I can only speak for

10:58:24  23  International Paper, not for any of the other defendants.

10:58:26  24      THE COURT:  All right.

10:58:26  25      MR. McKEOWN:  From our perspective, the intention of

10:58:30    1    the letter was to crystallize any issue, try to satisfy the

10:58:32    2    plaintiffs --

10:58:34    3            THE COURT:  Hang on.  Are you guys listening to what

10:58:38    4    Mr. McKeown is saying?  He is telling you what his intention

10:58:40    5    was.

10:58:42    6            MR. McKEOWN:  We wanted to crystallize the issues, we

10:58:44    7    wanted to identify when you look across the categories defined

10:58:48    8    by the plaintiffs the broad spectrum of documents that were

10:58:52    9    being produced so that we could then identify if there were

10:58:54    10   specific issues that Mr. Mogin and I would have to discuss

10:58:56    11   further.  We wanted to very much narrow those issues, and we

10:59:00    12   wanted this to move it from talking about 92 requests to

10:59:04    13   perhaps we are going to talk about five or six requests that

10:59:08    14   we are going to have to fight about.

10:59:10    15           THE COURT:  And then you would go back or if he

10:59:12    16   needed to move to compel five or six, you are not going to

10:59:16    17   say, Hey, this was a quid pro quo.

10:59:18    18           MR. McKEOWN:  No, we are not.

10:59:20    19           THE COURT:  You are not going to go back to 92

10:59:22    20   requests, so how does that -- how does that strike you?

10:59:26    21           MR. MOGIN:  Well, in point of fact, your Honor, 92

10:59:28    22   requests is the universe of the requests, 30 or 35 of which

10:59:32    23   were transactional.  Only 60 -- 55 or 60 had to do with

10:59:36    24   conduct.

10:59:40    25           Yes, of course I am not going to go back on the

| | | |
|---|---|---|
| 10:59:42 | 1 | totality of those 50 or 60, but I think that it's -- I would |
| 10:59:46 | 2 | love it if we could narrow it to four or five. |
| 10:59:48 | 3 | THE COURT:  Right. |
| 10:59:48 | 4 | MR. MOGIN:  But I don't know that that's going to |
| 10:59:50 | 5 | happen in light of the breadth of the -- |
| 10:59:56 | 6 | THE COURT:  Request. |
| 10:59:56 | 7 | MR. MOGIN:  No, in light of the breadth of the |
| 11:00:00 | 8 | elimination, in our view, and I think we demonstrated this to |
| 11:00:04 | 9 | you at a past status conference statement, arbitrary |
| 11:00:08 | 10 | elimination of categories of documents without any linkage to |
| 11:00:12 | 11 | the actual objections that supposedly justified them. |
| 11:00:20 | 12 | So I do think, and as I have said before, I think |
| 11:00:22 | 13 | that the transparency is helpful to us, it's helpful to the |
| 11:00:26 | 14 | court, it may be helpful in resolving the issues.  But I |
| 11:00:30 | 15 | cannot say, as I stand here today, that it means that I will |
| 11:00:34 | 16 | limit my motion to compel to five requests -- |
| 11:00:40 | 17 | THE COURT:  Right.  I wouldn't ask you to do that. |
| 11:00:44 | 18 | Okay? |
| 11:00:44 | 19 | MR. MOGIN:  As you read, however, the status |
| 11:00:46 | 20 | conference statements, some of the other defendants have said, |
| 11:00:48 | 21 | Okay, we will give you the letters, but that's it.  And as we |
| 11:00:52 | 22 | perceive it, that means another closing of the door that can't |
| 11:00:56 | 23 | be reopened. |
| 11:00:56 | 24 | THE COURT:  All right.  Okay.  Okay.  So now we have |
| 11:01:00 | 25 | -- okay.  This could be a little bit of our caucus here.  All |

11:01:06  1  right.

11:01:06  2      See, I actually thought -- Mr. Mogin, I actually

11:01:10  3  thought the other part -- I mean, I thought we were heading

11:01:12  4  towards briefing on the requests to produce.  I mean, that's

11:01:20  5  sort of where -- when I came out on the bench today, I thought

11:01:26  6  that was it; I thought that was more loggerheads on the

11:01:28  7  requests to produce than this other stuff that we have been,

11:01:32  8  you know, working on.  So this is very enlightening to me.  I

11:01:40  9  didn't know that there was hope for that.

11:01:42  10      Now, whether or not -- everybody is just so sick of

11:01:46  11  this process because what is the elephant in the middle of the

11:01:50  12  room is that if somebody were going to write the story,

11:01:54  13  cooperation is very hard.  Actually, in some ways, it's easier

11:02:04  14  to do it the old-fashioned way.  I think, very bluntly, there

11:02:08  15  is a level of, you know, kind of frustration here too.

11:02:10  16      MR. MOGIN:  I think I would say it differently, your

11:02:12  17  Honor.  I think if there had been more cooperation up front,

11:02:16  18  then we wouldn't find ourselves in this situation where now --

11:02:18  19      THE COURT:  I don't know how you say that --

11:02:20  20      MR. MOGIN:  -- we're having to use the old tools.

11:02:22  21      THE COURT:  Well, I don't know how you say that.  I

11:02:22  22  mean, even if we sort of failed at it, I thought everybody

11:02:26  23  tried really hard.

11:02:28  24      MR. MOGIN:  I'm referring to the period of time

11:02:30  25  before your Honor was involved.

| | |
|---|---|
| 11:02:32 | 1 |
| 11:02:38 | 2 |
| 11:02:40 | 3 |
| 11:02:40 | 4 |
| 11:02:44 | 5 |
| 11:02:48 | 6 |
| 11:02:50 | 7 |
| 11:03:02 | 8 |
| 11:03:04 | 9 |
| 11:03:10 | 10 |
| 11:03:20 | 11 |
| 11:03:22 | 12 |
| 11:03:28 | 13 |
| 11:03:34 | 14 |
| 11:03:40 | 15 |
| 11:03:46 | 16 |
| 11:03:54 | 17 |
| 11:03:56 | 18 |
| 11:04:02 | 19 |
| 11:04:06 | 20 |
| 11:04:14 | 21 |
| 11:04:20 | 22 |
| 11:04:22 | 23 |
| 11:04:28 | 24 |
| 11:04:30 | 25 |

THE COURT:  Well, I don't -- you know.  So anyway --

MR. MOGIN:  And now let's talk about litigation holds for a minute.

THE COURT:  No, I want to talk about search for a minute because I want to tell you what I think about the search.  Okay?

So I received the case, and it was being written about all over the country.  The judge in Chicago is going to decide, is predictive coding, computer assisted, whatever you want to call it, a preferable method of search than Boolean search.  I mean, that's what the outsiders were saying about it.  And what we had, what I was presented with, because it wasn't a law school test, or it wasn't an article on a blog, it was real-life situation where the defendants had been in the case for one year prior, they had been working on motions to dismiss, the producing parties among themselves, among seven of them, this is the other thing that's different than other cases, there were seven defendants, seven separate ESI systems, and they made an agreement themselves that they were going to use a Boolean method.  They hired their tech people, they hired their computer people, and it sounds like, for me, Mr. Mogin, from the early letters, they did not consult with you on the method, nor is there any requirement that they consult you on the method.

MR. MOGIN:  And to the extent that we were consulted,

11:04:32   1   your Honor, at that time, we were using a different

11:04:34   2   phraseology, but we asked that they use, A, advanced

11:04:40   3   analytics, and, B, that they provide us with random samples so

11:04:44   4   that we could narrow the discovery process.

11:04:48   5        THE COURT:  Right.  And as I have said several times

11:04:50   6   before, Judge Shadur ruled -- the final ruling on the motion

11:04:56   7   to dismiss was April, and I believe, according to the letters,

11:05:00   8   in approximately September, probably sooner over the summer,

11:05:06   9   but there was certainly communication, particularly with

11:05:10   10  Ms. Miller, there was, you know, communication.  But I think

11:05:12   11  the real tell us what search terms you'd like, there was

11:05:18   12  really an invitation to you to start search terms.

11:05:20   13       MR. MOGIN:  Let me correct that, your Honor.  In

11:05:24   14  point of fact, there was a meet and confer that I believe took

11:05:28   15  place in May of 2011, and I believe it was either shortly

11:05:36   16  before or shortly after the RPDs had actually issued, but it

11:05:42   17  was after the motion to dismiss, and it was after Judge Shadur

11:05:44   18  had denied the motion to stay discovery pending the motion to

11:05:48   19  dismiss.  And we at that time were talking about our concerns

11:05:56   20  about the use of a Boolean technology.  And the defendants

11:06:02   21  said, Well, we will search -- we will develop search terms and

11:06:06   22  send them to you, and we will get them to you in about a

11:06:12   23  month, June, mid June.  And that was tied with some other

11:06:14   24  things, including exemplars.  It wasn't random samples at that

11:06:24   25  point.  It was simply asking for some exemplars and some other

11:06:26    1    things.  It wasn't in June that we got them.  It was after

11:06:28    2    several inquiries they finally showed up without any input

11:06:32    3    from us, without seeing samples, in August.

11:06:36    4          Had we gotten right on it, what that meant is that

11:06:42    5    this is efficient based on the face of the RPDs.  You have a

11:06:44    6    number of search terms that don't even attempt to reach the

11:06:48    7    defined terms or many of the RPDs.  Again, that was with our

11:06:54    8    full reservation of thought.

11:06:58    9          So I think it's important, your Honor, that you

11:07:00   10    understand how early and how often we have said this to the

11:07:04   11    defendants, so it's not a situation of cooperation breaking

11:07:10   12    down or not starting or us not attempting to influence the

11:07:14   13    process until August.  That simply is not true.  And, in fact,

11:07:20   14    even before the motions to dismiss were heard, in December of

11:07:24   15    2010, Mr. Neuwirth and I had a loud discussion in the hallway

11:07:32   16    outside of Judge Shadur's courtroom --

11:07:34   17          THE COURT:  I believe that.

11:07:36   18          MR. MOGIN:  -- where we said --

11:07:38   19          THE COURT:  I believe that.

11:07:38   20          MR. MOGIN:  -- where we said flat out --

11:07:40   21          THE COURT:  You said you had a loud discussion.

11:07:48   22          MR. MOGIN:  Well, I heard a loud voice.  That's true.

11:07:50   23          THE COURT:  It's okay, Mr. Mogin.  Come on.

11:07:56   24          MR. FREED:  May I add something, your Honor, to the

11:07:58   25    discussion?

11:07:58  1          THE COURT:  Yes.

11:08:04  2          MR. FREED:  Thank you.

11:08:04  3          From my perspective, your Honor, which maybe is a

11:08:06  4  little bit different than what you've heard today.  To a very

11:08:08  5  great extent, we are arguing about something where I think the

11:08:10  6  ship has sailed.

11:08:12  7          THE COURT:  Yes.

11:08:12  8          MR. FREED:  Defendants have done what they did, and

11:08:14  9  we were -- and I'm going to try in every way to say I'm not

11:08:18  10  trying to find fault in any of my comments; I am trying to put

11:08:20  11  my comments in perspective -- we were not able to change their

11:08:24  12  mind about what they should do.

11:08:26  13          THE COURT:  Or mine.

11:08:28  14          MR. FREED:  Or yours.

11:08:30  15          So now we're here where there is a very large corpus

11:08:32  16  of documents, seven or eight million pages, we're told, and

11:08:38  17  they are not willing to modify the way they approached their

11:08:44  18  search, and they have said to us, Look at what we have offered

11:08:48  19  you and then come back to us.  And they have said that this

11:08:54  20  will create certain efficiencies because now you will know

11:08:58  21  when you have reviewed all these documents what problems you

11:09:00  22  may realize, and then we will be more effective and productive

11:09:04  23  if you do that.

11:09:06  24          So I would say we're really dealing in parallel

11:09:12  25  universes.  That's one universe.

11:09:12    1    There is another universe out there, however, which
11:09:16    2    has been deferred and for the first time is obliquely
11:09:24    3    mentioned by Mr. Feller.  We have issue of time frame.  For
11:09:26    4    the first time, I heard Mr. Feller obliquely state maybe he
11:09:28    5    would introduce time frame into these global resolutions.  We
11:09:34    6    have the issue of sources.  We have the issue of whether or
11:09:36    7    not they are going to search at the national or regional sales
11:09:38    8    manager level, are they going to search at the plant manager
11:09:42    9    level, how are we going to deal with the parsing.  They have
11:09:44   10    offered certain lit hold information but, in certain
11:09:52   11    instances, conditioned it on us waiving the argument that they
11:09:56   12    didn't distribute their lit hold notices sufficiently broadly.
11:10:00   13    Why we should waive that in order to get the identity of
11:10:04   14    people who -- to whom they sent their lit hold on, I don't
11:10:06   15    understand.  And the other conditions on custodians.
11:10:10   16         None of that is going to be advanced.  Not one of the
11:10:12   17    items I just mentioned is going to be advanced by us looking
11:10:16   18    at their documents because at the end of the day, this is not
11:10:20   19    to be argumentative.  These are our issues, and we are going
11:10:22   20    to raise them again.
11:10:24   21         THE COURT:  I think that's true.
11:10:26   22         MR. FREED:  So why don't we just brief those issues
11:10:30   23    and get that decision so that when we get to the point where
11:10:34   24    we have looked at their corpus of documents, we can know at
11:10:38   25    that point when we raise our other issues what it is that, if

11:10:42   1   anything, they have to do in addition to what they have done?

11:10:44   2       We are not going to reach agreement, I don't believe.

11:10:48   3   I hope I am wrong, but I think it's pretty clear after all the

11:10:50   4   sessions, we are not going to agree on time frames except for

11:10:54   5   some tradeoff which we are not going to accept to --

11:10:56   6       THE COURT:  Well, that's the first time anybody has

11:10:58   7   said it in a clear way.

11:11:00   8       MR. FREED:  But I think it's true.  I'm just sitting

11:11:02   9   here listening to the whole thing not so much as a plaintiff's

11:11:06  10   lawyer but trying to observe the dynamics of what's going on

11:11:08  11   here.

11:11:08  12       We are not going to agree to sources, I don't

11:11:10  13   believe, except for some tradeoff, which we are not going to

11:11:12  14   accept.  They have never indicated any willingness to discuss

11:11:16  15   production for national regional sales managers except on a

11:11:20  16   sample basis, but we gave you 23 cases where we have

11:11:22  17   demonstrated in actual case decisions where that's relevant to

11:11:28  18   the determination of a conspiracy.

11:11:32  19       So I'm saying, okay, you win because time has worked

11:11:36  20   to your benefit.  We will look at your documents.  We will

11:11:42  21   come back at whatever period of time it takes us to go through

11:11:44  22   those documents, and we will tell you what it is in those

11:11:48  23   documents that we think leads us to believe that there is an

11:11:50  24   insufficiency of the way you utilized your search terms and

11:11:54  25   the way you approached your search.  But why not just get it

11:11:58  1    done?  These other what I call the parallel universe, these

11:12:02  2    discrete issues where there's not going to be any movement or

11:12:06  3    resolution because we are not going to trade off in any

11:12:08  4    meaningful way --

11:12:10  5        THE COURT:  Now, wait.  I mean, as somebody who has

11:12:14  6    sat here for 14 years, I have done thousands of discovery

11:12:20  7    disputes.  People trade off all the time.

11:12:22  8        MR. FREED:  They do, your Honor.

11:12:22  9        THE COURT:  Whether they call it -- you know, there's

11:12:26  10   something kind of, you know, grungy about the term "tradeoff,"

11:12:32  11   but that's what -- you know, now we call it cooperation, but,

11:12:36  12   you know, truthfully, what people have been doing for a long,

11:12:40  13   long time is you're making a deal because if you had to fight

11:12:42  14   out every single issue, you would be charging your client ten

11:12:50  15   times the amount of money, it would take so much longer to do

11:12:54  16   it, so, I mean --

11:12:56  17       MR. FREED:  We can -- I'm sorry.  I didn't mean to

11:13:00  18   speak over you.

11:13:00  19       THE COURT:  I mean, why I said I thought it would be

11:13:04  20   a good idea is -- you know, I am not arguing with you.  I

11:13:08  21   think it is time to brief some issues.  What I was -- it was a

11:13:14  22   Hail Mary pass here.  Are there some things that we could

11:13:18  23   resolve, trade off, not have to brief?

11:13:22  24       MR. FREED:  I think on very discrete levels, yes.

11:13:24  25   For example, I picked an issue that Mr. Feller raised, which

11:13:28  1   is we will give you the lit hold -- identity of the people who

11:13:30  2   got the lit hold, but only if you waive as a condition that

11:13:36  3   you will not seek to argue that his client didn't sufficiently

11:13:44  4   send out the lit hold notice to a number of people.  Maybe we

11:13:48  5   can resolve that.  I think he's wrong.  I would hope you would

11:13:50  6   see that he is wrong and we can resolve that.  If not, maybe

11:13:52  7   we can't resolve that.

11:13:54  8          But some of these other fundamental issues, you can't

11:13:58  9   -- and I say this respectfully.  If we believe that for

11:14:00  10  purposes of class certification and conspiracy proof, we have

11:14:04  11  to have data from a certain time period.  It's not being

11:14:10  12  argumentative or obstreperous for us to say we can't trade

11:14:16  13  that off against a resolution of the search term issue along

11:14:20  14  the lines that Mr. Mogin has been exploring with Mr. McKeown.

11:14:24  15  It isn't that we won't try to resolve issues, but that's not a

11:14:28  16  tradeoff.

11:14:28  17          THE COURT:  Okay.  Well, then that's good to know.  I

11:14:32  18  mean, that's what I was trying to say --

11:14:34  19          MR. FREED:  And I am trying to crystallize it in that

11:14:38  20  respect.

11:14:38  21          THE COURT:  Right

11:14:38  22          MR. FREED:  I think, in all candor, that the issues

11:14:42  23  that I've identified, and I will be happy to enumerate them,

11:14:46  24  aren't issues we could trade off on a wholesale basis for -- I

11:14:48  25  would hope that we could continue to go forward with

11:14:50   1   Mr. McKeown and the other defendants on the kind of disclosure

11:14:56   2   which Mr. McKeown has made that Mr. Mogin has said several

11:15:00   3   times has been transparent and helpful but not necessarily

11:15:02   4   from our perspective dispositive.  I wouldn't try to shut that

11:15:06   5   down at all.  But if there are these five, six, seven issues

11:15:10   6   which I don't think are going to get resolved through the kind

11:15:14   7   of cooperation that you're talking about, won't it advance

11:15:22   8   things just to see are we right or are they right on these

11:15:26   9   issues?  It's not because we are so anxious to --

11:15:28   10  THE COURT:  Here.  We are going to do -- we are going

11:15:30   11  to have a little caucus in a minute because I want everybody's

11:15:36   12  blood pressure to go down, and -- but I want to say -- I

11:15:40   13  didn't get to say what I had about search.

11:15:44   14  MR. FREED:  Can I sit down, your Honor?

11:15:46   15  THE COURT:  Yes.

11:15:46   16  MR. MOGIN:  Your Honor, before you do so, if I might,

11:15:50   17  please, please.  Just a moment ago, you made a comment in

11:15:54   18  response to something that Mr. Freed said.  We have,

11:15:56   19  plaintiffs, had failed to persuade you with respect to search

11:16:00   20  methodology.  Well, your Honor, I think it would be unfair for

11:16:04   21  you to make further statements like that, quite frankly, in

11:16:10   22  light of the fact that the hearing remains open.  The evidence

11:16:12   23  is not --

11:16:12   24  THE COURT:  I am not going to tell --

11:16:14   25  MR. MOGIN:  Our evidence is not in, and you also

11:16:16   1   promised us that there would be post-hearing briefing, which

11:16:20   2   obviously hasn't happened.

11:16:28   3          THE COURT:  All right.  One thing I do want to put

11:16:32   4   into context, to use your word, Mr. Mogin.  Let's put this in

11:16:36   5   context.

11:16:36   6          When we ended the hearing at my request, okay, two

11:16:44   7   things were clear to me about your problems with Boolean

11:16:54   8   search.  One was the scope of the Boolean search is what I

11:16:58   9   would call was it took the form of -- because a Boolean search

11:17:04  10   is primarily based on custodians, and you felt that not just

11:17:10  11   because the defendants had chosen Boolean search, but the way

11:17:16  12   they perceived the case, that you were having a problem with

11:17:22  13   too narrow of a custodian base.  Okay?  And I heard you loud

11:17:28  14   and clear.  That's what you were saying at the time.

11:17:30  15          The second problem that you interpreted while you

11:17:34  16   were arguing that a computer assisted was a better method was

11:17:40  17   that it was either easier to verify or more accurately

11:17:48  18   verifiable that the search was hitting the responsive

11:17:50  19   documents.  So one went to the scope, and I would call the

11:17:54  20   second problem, for want of another word, verification.

11:18:00  21          So in my mind, which I have not said until today,

11:18:06  22   because I had never had to deal with this, and trying to be

11:18:14  23   fair to both sides, I am the one that suggested most of the

11:18:18  24   methods to how to broaden the scope, and I have identified six

11:18:26  25   ways in which the defendants have broadened the scope.  So a

11:18:36    1    lot of the time that maybe now we look back in hindsight and

11:18:42    2    say we wasted or didn't work was trying to address your issue

11:18:46    3    last February of two problems with Boolean search.  So the

11:18:54    4    first way that they did it is they voluntarily gave you,

11:19:04    5    quote, unquote, more custodians.  Were they right, were they

11:19:06    6    wrong, I don't know, but it was voluntary.

11:19:08    7            The second way was this kind of cockamamie notion I

11:19:14    8    had, well, whoever decided to do the litigation hold, they

11:19:20    9    must be important people, so let's give all the names of the

11:19:24   10    litigation holds, because I want some context here.  It isn't

11:19:28   11    like we were just off on some lark here.  I was trying to

11:19:32   12    address your concern that the custodian base wasn't broad

11:19:38   13    enough.  I wasn't either agreeing with you, I wasn't agreeing

11:19:42   14    with them.  I heard a fairness issue, and I said, Okay, so

11:19:46   15    let's try that.  Okay?  We will do litigation hold.  Names on

11:19:54   16    litigation hold.

11:19:54   17            And then, because I hadn't thought it out, what the

11:19:58   18    consequences could mean, we did kind of, you know, I guess

11:20:02   19    we'd call them orders to try to say, Well, that doesn't mean

11:20:08   20    full discovery of the names.  Okay.

11:20:12   21            Then the next thing we did was then we got into the

11:20:22   22    other thing you told us about, predictive coding, which I had

11:20:26   23    never heard of before, is that you could do departmental

11:20:30   24    searches.  I don't know really what that truly means.

11:20:36   25            So then in order to broaden the Boolean search, the

11:20:42  1  plaintiffs have, and particularly Mr. McKeown, has been trying

11:20:48  2  to come up with some sampling ideas of other departments other

11:20:54  3  than the executive.  So there was an expansion of departments.

11:21:02  4  It may not be exactly what you wanted, but there was

11:21:08  5  expansion.

11:21:10  6       Then organizational charts.  I thought organizational

11:21:38  7  charts was going to expand the base.

11:21:42  8       All right.  So that was under scope.  Okay?  I agree

11:21:48  9  with you we have not come up, although we have been floating

11:21:54  10  around three or four ways to -- even though no case has ever

11:22:04  11  required it, verification, a method of verification, because,

11:22:10  12  as I said to you before, I thought the more interesting issue

11:22:14  13  that's come out of this hearing is regardless of the method,

11:22:18  14  it probably is -- as Judge Grimm and Judge Facciola have said,

11:22:24  15  it's important to know it's accurate, but I thought that was

11:22:28  16  an ongoing process is what I thought.

11:22:32  17       So I just want this record -- so we don't look like

11:22:36  18  we're some dysfunctional group down here that is just trying

11:22:40  19  all these ideas willy-nilly, they were a response to your -- I

11:22:48  20  took you very seriously that you had some problems with

11:22:54  21  Boolean search.  Okay?  Now, your issue that you want to go

11:22:56  22  back to the hearing, this is the first time you have said

11:23:00  23  that, I mean clearly to me today, that you want to go back to

11:23:04  24  the hearing and the second -- and the issue on the briefs.

11:23:10  25  And, I mean, I guess I am now confronted with that directly.

11:23:16  1    So I am not going to rule on search at the moment. I

11:23:20  2  am telling you what my context was and what I thought the last

11:23:26  3  six months of our work was about.

11:23:28  4    MR. MOGIN: That isn't what I was saying, your Honor.

11:23:30  5    THE COURT: And I purposely have not said to you,

11:23:32  6  Withdraw your motion, because you have to do as a plaintiffs'

11:23:38  7  lawyer whatever you need to do to protect your record. I am

11:23:42  8  not trying to put you in that place where I am saying to you,

11:23:50  9  Dan, give up your issue.

11:23:52  10    MR. MOGIN: I understand that, your Honor. And what

11:23:54  11  I was talking about, resumption of the hearing, as you recall

11:23:58  12  from the proposed order that came in at 3:00 o'clock

11:24:02  13  yesterday, Mr. Feller, he asked for particularized findings.

11:24:08  14  I understand you are not going to make them.

11:24:10  15    And then you said a little earlier that you wanted to

11:24:12  16  have some statements about search methodology.

11:24:16  17    All I was saying is that the plaintiffs, okay,

11:24:20  18  through this process, in the interest of cooperation, in the

11:24:24  19  interest of trying to get something done, it's important that

11:24:28  20  everybody understand what we believe to be the huge

11:24:32  21  compromise, huge compromise, unmet at this point, that the

11:24:36  22  plaintiffs have made in suspending for as long as we have

11:24:40  23  those hearings because, your Honor, we believe quite firmly

11:24:46  24  that if those hearings do resume, what we will show you is

11:24:50  25  that the basis for your request for suspension, which was

11:24:56  1   Sedona principle number 6, doesn't or shouldn't apply in this

11:25:00  2   case.

11:25:02  3       So that's all I was trying to say, your Honor, with

11:25:06  4   respect to those hearings, although if there are going to be

11:25:12  5   findings made with respect to search methodology, then

11:25:18  6   obviously we want the hearings to resume.  If the defendants

11:25:22  7   can accept this compromise and we start to see some serious

11:25:24  8   movement on their part or more serious movement than we have

11:25:26  9   seen to this point and we get to a resolution of these issues,

11:25:30  10  then we will accept that.

11:25:30  11       THE COURT:  Mr. McKeown?

11:25:36  12       MR. McKEOWN:  Your Honor, if I may.  There are a

11:25:38  13  couple things I'd like to respond to, in part to Mr. Mogin, in

11:25:42  14  part to Mr. Freed.

11:25:44  15       I think there has been a lot more done by the

11:25:46  16  defendants than has been recognized or appreciated by the

11:25:52  17  plaintiffs.  For example, there was a comment by Mr. Freed

11:25:58  18  that we haven't given sales managers, national and regional

11:26:04  19  sales managers.  If I could pass these up.

11:26:08  20       THE COURT:  Thank you.

11:26:12  21       MR. McKEOWN:  This is the attachment to Ms. Miller's

11:26:18  22  letter from August 11 of 2011 when the custodians were first

11:26:22  23  disclosed, and what we have done is we have highlighted on

11:26:26  24  this the various individuals here who were in the sales

11:26:30  25  function.  So you can see that Mr. Andranea (phonetic) was the

11:26:34  1    vice president and general manager of commercial and national

11:26:38  2    accounts, and there is a description that talks about him in

11:26:40  3    national sales.  Rebecca DuPuey (phonetic) was the pricing

11:26:44  4    manager.  Kathy Halligan (phonetic) was the domestic sales

11:26:48  5    manager.  We go on to the next page, at the top of the next

11:26:50  6    page, we have two area VPs and general managers in sales.

11:26:54  7         So a lot of these types of documents and these types

11:26:56  8    of custodians are included, and it is a broader search and a

11:27:02  9    broader collection of documents than what has been perceived

11:27:06  10   as just this custodian approach.  We have not only done the

11:27:08  11   emails and the My Docs and the hard docs from the various

11:27:12  12   custodians that we have listed, and we are now up to 49

11:27:16  13   people, but we ran scripts on the computers to see what shared

11:27:20  14   drives these folks had access to, what SharePoints they had,

11:27:24  15   and then we looked in there amongst those SharePoints and

11:27:28  16   shared drives in terms of which of those might potentially

11:27:32  17   have responsive documents, and we looked at them even if the

11:27:34  18   documents that were being pulled from there were not created

11:27:38  19   by these custodians.

11:27:38  20        So there are the equivalent of departmental files.

11:27:42  21   We have looked at finance drive, we looked at the Auburn

11:27:44  22   server.  A lot of this is laid out in our 30(b)(6) letter.

11:27:48  23   There was discussion about how the defendants wanted to put

11:27:50  24   off the 30(b)(6) depositions.  That's true.  We wanted to

11:27:54  25   satisfy as much as we could by letters, and you've seen the

11:27:56    1    letters we did, but we also put up witnesses for that.

11:28:00    2         And since the hearing, I think we have continued

11:28:04    3    consistent with how we have perceived the urging of the court

11:28:08    4    to try to move this forward and cooperate.  And, you know,

11:28:12    5    along the things we have done is at one point, we gave in

11:28:14    6    early May for our various search strings that IP used how many

11:28:20    7    documents were hit by each search string.

11:28:22    8         THE COURT:  Right.

11:28:24    9         MR. McKEOWN:  We have given, as you know, the lit

11:28:26   10    hold list with the custodians; we have also given more org

11:28:30   11    charts, including a listing of the various plant managers; we

11:28:34   12    have given more on the sources of the documents folks have

11:28:36   13    had; and, of course, you have seen the letter from June 18th.

11:28:40   14    We are trying to narrow the issues.  There are some issues

11:28:42   15    that Mr. Freed may be correct, we just need to brief.

11:28:46   16         THE COURT:  Right.

11:28:48   17         MR. McKEOWN:  If their position on parsing is we have

11:28:50   18    to go back and re-review all the documents that we have

11:28:54   19    already reviewed with contract attorneys, then we may as well

11:28:56   20    just brief that, but we would like to get it to a spot where

11:28:58   21    we have discrete issues that need to be teed up.  And I just

11:29:04   22    didn't want to leave the impression that we haven't included

11:29:06   23    sales folks and we haven't included a lot of files that would

11:29:10   24    be departmental files.

11:29:12   25         MR. FREED:  Just briefly in response.  I am not going

| | | |
|---|---|---|
| 11:29:14 | 1 | to dispute anything which Mr. McKeown said, although I can't |
| 11:29:18 | 2 | recall whether the documents were produced for the people |
| 11:29:20 | 3 | identified.  If he says they were, I won't dispute that. |
| 11:29:24 | 4 | In talking about defendants' positions, in a sense, |
| 11:29:28 | 5 | to make it coherent, you have to speak globally.  So last time |
| 11:29:34 | 6 | we were here, Mr. McCareins was arguing strongly that the |
| 11:29:36 | 7 | plant manager level is not appropriate.  He was in the line of |
| 11:29:40 | 8 | work case which we were in, and I was one of the leads for the |
| 11:29:42 | 9 | sub class, but the plant manager's discovery did take place. |
| 11:29:48 | 10 | And then Mr. Marovitz argued about, Well, we have |
| 11:29:52 | 11 | salespeople listed, your Honor, but they are at the executive |
| 11:29:56 | 12 | level, so we made the effort to show, well, we need it at a |
| 11:29:58 | 13 | lower level, we need it at the national and regional. |
| 11:30:02 | 14 | So, yeah, there may be exceptions to what I'm saying |
| 11:30:04 | 15 | on a global basis, but all defendants, trust me, have not |
| 11:30:10 | 16 | taken the same position on all issues.  There are certain |
| 11:30:14 | 17 | issues which, to the best of my knowledge, they have all taken |
| 11:30:16 | 18 | the same position, and that is time and scope, although maybe |
| 11:30:20 | 19 | scope there's been some give.  But to get this resolved among |
| 11:30:28 | 20 | all the defendants, I think it's got to be briefed because |
| 11:30:32 | 21 | they're digging in either collectively or individually in |
| 11:30:36 | 22 | areas where if we get what Mr. McKeown says we're getting, |
| 11:30:40 | 23 | it's fine, but if we're not getting it from Temple or RockTenn |
| 11:30:46 | 24 | or PCA, it still doesn't resolve the problem. |
| 11:30:48 | 25 | THE COURT:  You keep going back to the requests to |

11:30:50    1    produce, and I think I said at 10:05, you know, we will put it

11:30:54    2    off because, I mean, I am trying to read what's actually being

11:30:58    3    said and what's not being said, sort of the direct and the

11:31:02    4    indirect.  It seems like that's the hardest issue.

11:31:04    5            MR. FREED:  Yes.

11:31:06    6            THE COURT:  So I couldn't agree with you more.  I

11:31:08    7    mean, I think we -- I only diverted from what Mr. Mogin said

11:31:12    8    because it sounded like he was opening the door again that he

11:31:16    9    was saying, Well, if they would all do what Mr. McKeown did,

11:31:20   10    so I wanted to pursue it while you're here.

11:31:22   11            MR. FREED:  And that's fine, and I am -- look, if we

11:31:24   12    come away today with nothing more, and I hope we can do more,

11:31:28   13    with the understanding of, okay, this is what needs to be

11:31:32   14    briefed and this is what we hope you will continue to try to

11:31:34   15    reach resolution on, I think that's constructive.  I mean, I

11:31:38   16    don't consider that a defeat.

11:31:38   17            THE COURT:  I agree.

11:31:38   18            MR. FREED:  If we reach a point where it is obvious

11:31:42   19    that there's issues which either for some or all of the

11:31:46   20    defendants cannot be resolved, if we say, fine, we now

11:31:48   21    understand after all these good-faith efforts that this is it.

11:31:52   22            So I want to make -- there may be instances where I

11:31:56   23    will say something or Mr. Mogin will say something on a more

11:32:00   24    global basis and one defendant will stand up and say, Yes, but

11:32:02   25    we've done this, but we're talking about them as a group

11:32:04 1   because we're dealing with them as a group.

11:32:08 2       THE COURT:  Right.  And you have a different approach
11:32:10 3   than Mr. Mogin has.

11:32:10 4       MR. FREED:  We do.

11:32:12 5       THE COURT:  You do.  You do.  So that also is like a
11:32:16 6   factor here.

11:32:18 7       Yes.  Since we began with you, do you have a
11:32:20 8   brainstorm here to help us out?

11:32:36 9       MR. FELLER:  Your Honor, I have two discrete issues
11:32:40 10  that I just need to bring up so the record is clear, and if I
11:32:42 11  may hand up to the court.

11:32:44 12      Your Honor, the Linerboard case has come up --

11:32:48 13      THE COURT:  Is this the Zagel case?  No.

11:32:50 14      MR. FELLER:  No, your Honor.  This is, in some
11:32:52 15  respects, the prior version of this litigation involving a
11:32:54 16  number of the defendants involved in this case.  It's what --
11:32:58 17  the reason I'm coming up now is that Mr. Freed just mentioned
11:33:04 18  it came up at the prior hearing.  It was an antitrust case
11:33:08 19  involving a number of the containerboard manufacturers at
11:33:14 20  issue in this case or are defendants in this case.

11:33:14 21      And the reason Linerboard has come up on a number of
11:33:18 22  prior occasions here is with respect to whether or not in that
11:33:28 23  case whether there was discovery at the mill and box plant
11:33:34 24  level and what the scope of that discovery is.  And it goes
11:33:38 25  much more broadly into the custodian issue.  And what we have

11:33:42    1    here, the documents, just to make it clear for the record,

11:33:48    2    there was a meet and confer in that case on November 15th of

11:33:54    3    2000, actually, almost 11 years to the day that we had a meet

11:33:58    4    and confer in this case in Mr. Eimer's offices.  But there was

11:34:02    5    the issue, the exact same issue, of whether or not we were

11:34:08    6    going to have in the first instance document discovery at the

11:34:14    7    mill and box plant level came up at that meet and confer.  And

11:34:18    8    there is first a memorandum dated November 16th, 2000, from

11:34:24    9    plaintiffs' counsel, Mr. Twersky to defense counsel, and then

11:34:30   10    a confirming letter from defense counsel at Kirkland & Ellis

11:34:34   11    on November 27, 2000.  And it makes very clear that document

11:34:38   12    discovery in the Linerboard case, an antitrust case involving

11:34:42   13    the containerboard industry, you couldn't get much more

11:34:46   14    analogous than what we have here, was limited to, quote,

11:34:48   15    defendants would search their headquarters and regional

11:34:52   16    offices, "regional offices" being, as we see in the November

11:34:56   17    27th, 2000, letter, if appropriate, depending on the structure

11:35:00   18    of the company.  So not meaning mills or box plant.  It's just

11:35:04   19    a function of how your corporate headquarters works.

11:35:08   20            Your Honor, the point is not that it may not be that

11:35:16   21    there is a particular sales representative that -- a mid-level

11:35:22   22    or a lower-level person that becomes relevant, a person at a

11:35:26   23    mill that becomes relevant, a person at a box plant that

11:35:28   24    becomes relevant.  That's possible.  As plaintiffs have

11:35:32   25    pointed out, in the Linerboard case, as a result of documents

11:35:36  1    collected from headquarters, as we have done in this case,

11:35:42  2    someone is identified and may need to be deposed and was in

11:35:46  3    the Linerboard case in a discrete handful of instances.

11:35:50  4          But on the custodian issue, what defendants have said

11:35:56  5    time and time again is that where we start, given the

11:36:02  6    allegations in this case, is at the headquarters level, is at

11:36:08  7    senior management.  And if subsequent to that individuals are

11:36:12  8    identified that needed to be added as custodians or that need

11:36:16  9    to be deposed, then that is the appropriate time to have those

11:36:20  10   discussions.

11:36:20  11         To echo Mr. McKeown, your Honor, I went back and

11:36:28  12   looked at our 30(b)(6) letter.  At page 2, PCA identified 14

11:36:46  13   custodians at its senior management level.  Six of the 14,

11:36:52  14   almost half, and it's highlighted on page 2 and 3, are sales

11:36:58  15   and marketing, folks with sales and marketing functions.  And

11:37:06  16   so the idea, again, that defendants haven't included those

11:37:12  17   folks, certainly in IP's case, certainly in PCA's case, and I

11:37:16  18   know this to be true for all defendants, those folks are

11:37:18  19   represented the appropriate way to get folks in the middle or

11:37:22  20   down the chain, to the extent they ever become relevant, is to

11:37:24  21   identify them, you know, through the discovery that's been

11:37:28  22   made available.

11:37:30  23         The last issue, again, because Mr. Freed raised it

11:37:34  24   with respect to PCA's position on the legal hold.  Your Honor,

11:37:38  25   in my experience, the only time that litigation holds come up,

11:37:44  1  the only reason it becomes an issue, is when there's some

11:37:48  2  question of spoliation in the case.  Right?  That's why they

11:37:52  3  come up, because a party comes and says, Your Honor, we

11:37:56  4  haven't gotten something, there is some issue, there's

11:37:58  5  documents we expected, we didn't get them.  Maybe the

11:38:02  6  documents were destroyed, maybe they were displaced, who

11:38:04  7  knows, we need to find out what happened with the litigation

11:38:06  8  hold.  That's how it comes up.

11:38:08  9          Here it's coming up in a totally different context.

11:38:12  10  Here it's coming up, as the court said, to help plaintiffs --

11:38:16  11          THE COURT:  Well, to increase potential -- to

11:38:20  12  increase the scope.

11:38:22  13          MR. FELLER:  Absolutely.  To increase the scope, to

11:38:24  14  help plaintiffs identify custodians, but it is part of a

11:38:28  15  negotiated, helpful process.

11:38:28  16          And so what PCA has said is, Okay, we are perfectly

11:38:34  17  willing to give you our legal hold subject to, you know, no

11:38:38  18  waiver of privilege and those sorts of things, but you can't

11:38:42  19  use it as a gotcha six months or two years from now to say

11:38:48  20  that some middle-level manager didn't get, you know, a

11:38:54  21  litigation hold, that you're going to use it for the purpose

11:38:56  22  that we have talked about, which is to help you identify

11:39:00  23  custodians.  And, you know, I am perfectly willing to do that

11:39:04  24  if that's helpful, but, again, it's another example of -- you

11:39:08  25  know, for us of an issue where plaintiffs ask for something,

11:39:12  1   we say we will give it to them subject to using it for the

11:39:16  2   purpose for which it was intended. And so far, plaintiffs

11:39:18  3   have said they are not willing to agree to that.

11:39:20  4          So since it was raised, I wanted to make that clear

11:39:22  5   for the record. I appreciate that, your Honor.

11:39:24  6          THE COURT: Here's what I think. I think it is worth

11:39:26  7   it before everybody -- you know, before we just do the regular

11:39:30  8   old thing and set this down, I think we should take a half

11:39:36  9   hour, 45 minutes, what do you think you need, and I want to

11:39:42  10  see everyone take a deep breath and see if there are some

11:39:48  11  issues that we can carve out that can -- that parties can

11:39:56  12  still -- this isn't either/or. We are not giving up -- I

11:40:00  13  mean, I don't think this is either/or. We are trying to

11:40:02  14  figure out if there are discrete issues that we -- or large

11:40:08  15  areas of issues that people want to continue to try to work

11:40:12  16  on, or what do you think is ripe for briefing.

11:40:18  17         And Mr. Mogin, I want you to talk to your folks,

11:40:24  18  those issues, plus this is your issue and your issue alone,

11:40:28  19  are you really telling me you want to, it is going to be your

11:40:34  20  request, that I resume the hearing; or if you want to have a

11:40:42  21  -- you know, or do you want to do briefing on the issue,

11:40:46  22  because that seems to be like an -- you know, like a quicker

11:40:50  23  use of time or whatever you want; or do you want a stipulation

11:40:56  24  from the defendants that you have preserved your issue. I

11:41:00  25  mean, we could even set a time for you to argue it.

11:41:04  1    I mean, do you really want to brief it, or are you

11:41:08  2  trying to preserve your record for the appeal -- you know, for

11:41:16  3  an appeal.  I don't know, you know, and if it's too much to

11:41:20  4  decide in 45 minutes, you can let us know on that particular

11:41:26  5  issue.  That is not their issue.  One thing we can agree on,

11:41:30  6  they don't want to go back to the hearing on this opening.

11:41:34  7    So that's your issue.  So you said something about

11:41:36  8  going back to the hearing.  Was that really -- do you really

11:41:40  9  want to go back to the hearing, or do you want to really do

11:41:44  10 briefing on it, do you want to set it down for oral argument.

11:41:50  11 So you will talk about that in the 45 minutes.

11:41:54  12    And I think what we should do, I want you -- I hope

11:42:00  13 somebody has been taking notes here, and you guys, you use

11:42:04  14 Judge Moran's jury room?

11:42:10  15    MR. McKEOWN:  Yes, your Honor.

11:42:10  16    THE COURT:  Half hour, 45 minutes, what do you think?

11:42:14  17    MR. McKEOWN:  Half hour.

11:42:16  18    THE COURT:  Half hour.  Okay.  Let's do a half hour,

11:42:16  19 and you come back, and you let me know.  And then if we are

11:42:22  20 going to do briefing, Chris and I have some idea.  It's going

11:42:26  21 to have to be a pretty quick kind of turnaround, but let us

11:42:30  22 know what issues we have got.

11:42:32  23    One thing I wanted to tell you is you probably know

11:42:36  24 who the two new magistrate judges are:  Danny Martin, who is a

11:42:40  25 staff attorney at the Federal Defender; and Mary Rowland, who

11:42:46    1    is a plaintiff's -- I guess her firm is kind of associated

11:42:50    2    more as a plaintiff's civil rights but complex litigation

11:43:00    3    firm.  But Judge Holderman has not decided who is getting what

11:43:04    4    caseload yet, so you basically don't know who your new judge

11:43:08    5    is.

11:43:10    6          If, in fact, you think there is any -- and here's

11:43:16    7    another thought too -- there's any purpose in our meeting, I

11:43:22    8    do have a number of days, I mean, if you want to do some of

11:43:26    9    this by oral argument too, we get briefs, do oral argument,

11:43:32    10   whatever is going to be the quickest to help you so we can get

11:43:34    11   finished by September 30th, I have a number of days we can

11:43:38    12   also do that.  Okay?

11:43:40    13         So you guys go talk down the hall.  Plaintiffs, you

11:43:42    14   have the courtroom.

11:43:44    15               MR. FREED:  Thank you, your Honor.

11:43:46    16               MR. McKEOWN:  Thank you, your Honor.

11:43:46    17               THE COURT:  12:15, Chris and I will come back out.

11:43:50    18   We will figure out lunch from there.  Thank you.

11:43:54    19      (Short break.)

12:48:00    20               THE COURT:  We are back on the record in Kleen

12:48:04    21   Products, 10 C 5711.

12:48:08    22         So the lawyers had an opportunity to have individual

12:48:12    23   caucuses and, if appropriate, joint caucuses.

12:48:18    24         So what do you have to report?

12:48:22    25               MR. EIMER:  Good afternoon, your Honor.  Dave Eimer

12:48:24   1   on behalf of International Paper.

12:48:26   2           MR. FREED: And Michael Freed, your Honor, for

12:48:26   3   plaintiffs.

12:48:28   4           THE COURT: Thank you.

12:48:30   5           MR. EIMER: Well, I am not sure that we quite got to

12:48:34   6   the point I had hoped in terms of having a package before you

12:48:36   7   to resolve it, but maybe we can work it out while we are

12:48:40   8   standing here.

12:48:40   9           THE COURT: Okay.

12:48:42   10           MR. EIMER: So I think we agree with Mr. Freed that

12:48:42   11   it's time to put certain matters before the court and have

12:48:46   12   them resolved.

12:48:48   13           THE COURT: Okay.

12:48:48   14           MR. EIMER: What we tried to do is to agree on what

12:48:50   15   it is to be resolved, and I think we didn't quite get there,

12:48:56   16   but a briefing schedule could do that.

12:48:58   17           I think we both agree that the defendants and I think

12:49:02   18   the plaintiffs would like the court to resolve whether the

12:49:06   19   defendants used an appropriate methodology, a reasonable and

12:49:10   20   fair methodology, for searching for their documents. It's not

12:49:14   21   the validation issue but only whether or not we need to be

12:49:18   22   compelled to use concept-based searching or whatever the

12:49:22   23   plaintiffs would like to refer to it as.

12:49:24   24           MR. FREED: Actually, I'm sorry Mr. Eimer started

12:49:26   25   with that one because I don't think that was an area where we

12:49:30    1    had agreement because this gets back to what was discussed

12:49:34    2    earlier, to do that, do we really want to resume the hearing.

12:49:36    3    And I think that that -- there's only so much I think your

12:49:40    4    Honor is going to be able to do before you leave the bench,

12:49:44    5    and I think that would be the exception as well as the rule.

12:49:46    6        So I appreciate their desire to get that issue

12:49:50    7    resolved, but I don't see how briefing is going to do it

12:49:54    8    because our brief would say, Well, we think we need to resume

12:49:56    9    the hearing.

12:49:58    10        MR. EIMER:  Well, the need for resumption of the

12:50:00    11    hearing is fine with us.  We believe the court has invested a

12:50:02    12    huge amount of time in this, established a record, and heard

12:50:02    13    the witnesses, and if that's still going to be hanging over

12:50:06    14    our heads, we would like this court to resolve it before your

12:50:10    15    Honor leaves the bench.

12:50:10    16        THE COURT:  Right.

12:50:10    17        MR. MOGIN:  If that's how we're going to go, your

12:50:14    18    Honor, and you had said I had a week or so to consider going

12:50:18    19    back into the hearings, one of the things that I do think

12:50:22    20    needs to be considered within that context is the issue that

12:50:24    21    we started with in the hearings and then got deferred, which

12:50:26    22    is the propriety of the collection of preservation effort.  I

12:50:32    23    don't think that you could talk about search methodology

12:50:34    24    without that context.

12:50:36    25        THE COURT:  And who was going to tell us about that?

12:50:38 1 Who was the witness that was going to tell us that?

12:50:42 2 MR. MOGIN: Well, there was some discussion by

12:50:46 3 Mr. Regard. You had some discussion from some of the other

12:50:50 4 defendant witnesses, and you had some discussion --

12:50:54 5 THE COURT: See, my recollection is you only had the

12:50:58 6 cross of Dan Regard, and then you wanted to call the linguist,

12:51:00 7 and Dr. Lewis had been on there quite a while already, but,

12:51:04 8 you know, you wanted to finish up Dr. Lewis.

12:51:08 9 MR. MOGIN: We had not completed Mr. Regard's

12:51:10 10 cross-examination.

12:51:10 11 THE COURT: No, I know. I know.

12:51:12 12 MR. MOGIN: And we were going to call Ms. Tenny.

12:51:14 13 THE COURT: Right.

12:51:14 14 MR. MOGIN: But right now with respect to collection

12:51:18 15 and preservation, the only issue -- the only evidence, I

12:51:22 16 believe, and I am sure I'll be corrected if I'm wrong, is the

12:51:26 17 is evidence that was uncontested from Mr. Hanner. The

12:51:32 18 defendant chose not to cross-examine Mr. Hanner or to present

12:51:38 19 any evidence on that issue.

12:51:42 20 MR. EIMER: The appropriateness of the collection and

12:51:42 21 preservation is unrelated to the methodology that's used. If

12:51:46 22 it was inappropriate, it's inappropriate for both. If it's

12:51:48 23 appropriate, it's appropriate for both. So we are just trying

12:51:50 24 to find out whether we had to use concept-based searching or

12:51:54 25 not. That's the simple issue. And I think the only thing

12:51:58  1  that had to be done to complete that were the things your

12:52:00  2  Honor outlined, the continued cross-examination of our

12:52:04  3  witnesses and then their linguist.

12:52:06  4  THE COURT:  Let's go on to issue number two.

12:52:08  5  MR. FREED:  I wish he hadn't chosen the first one

12:52:12  6  because I think we made more progress than that suggests.

12:52:14  7  MR. EIMER:  We both agree that the time period should

12:52:16  8  be briefed.

12:52:16  9  THE COURT:  Okay.

12:52:18  10  MR. EIMER:  As well as we think, the defendants

12:52:20  11  think, the issue of backup tapes is related because I think

12:52:24  12  one interplays with the other, as your Honor mentioned before,

12:52:26  13  where we can show more flexibility on time period depending on

12:52:30  14  what happens with backup tapes.  And Mr. Freed correctly says

12:52:34  15  there may be other electronic media besides backup tapes, but

12:52:38  16  that's my shorthand for it.

12:52:38  17  MR. FREED:  But I would suggest separate briefs on

12:52:40  18  that because we don't see them as related issues, and they can

12:52:44  19  respond any way they wish, but we would like to just do a

12:52:50  20  separate briefing for those, separate opening brief.

12:52:52  21  THE COURT:  Okay.

12:52:52  22  MR. EIMER:  We will talk a little bit about briefing

12:52:54  23  schedule in a moment, but that's a different one.

12:52:58  24  We had proposed -- and I thought we had agreement on

12:53:00  25  this, maybe we don't.  There was some discussion about

12:53:02   1   resolving the indexing question and moving forward on the

12:53:06   2   parsing question by having each defendant, to the extent

12:53:10   3   necessary, amend its formal responses to requests for

12:53:14   4   production to reflect what was actually searched for. We are

12:53:20   5   prepared to do that. I thought we had agreement on that.

12:53:22   6   Mr. Mogin wants instead something else. So I don't think we

12:53:26   7   have agreement on how to resolve the indexing question.

12:53:32   8          THE COURT: You're willing -- I think that might help

12:53:34   9   us if I knew what you actually have answered because we were

12:53:38   10   working on something from a year ago.

12:53:42   11          MR. EIMER: Right.

12:53:42   12          THE COURT: I mean, that's going to be hard for me to

12:53:46   13   do with 92 times seven.

12:53:48   14          MR. EIMER: Right.

12:53:52   15          THE COURT: So whether or not you agree, that could

12:53:54   16   be just helpful to the court.

12:53:58   17          MR. EIMER: And it essentially is the IP chart, and

12:54:02   18   the IP chart we think can be translated to the individual

12:54:06   19   requests. If the court wishes us to do that as an aid to the

12:54:10   20   court, we will be glad to do that as an aid to the court.

12:54:12   21          MR. MOGIN: Your Honor, the only thing that I wanted

12:54:14   22   to point out is the distinction between what was searched for,

12:54:18   23   which is what the defendants are proposing to do in their

12:54:20   24   response, and what was produced, what was, in fact, produced.

12:54:24   25   So the indexing issue goes to what was, in fact, produced, not

| | |
|---|---|
| 12:54:30 | 1 |
| 12:54:32 | 2 |
| 12:54:36 | 3 |
| 12:54:44 | 4 |
| 12:54:52 | 5 |
| 12:54:56 | 6 |
| 12:55:02 | 7 |
| 12:55:08 | 8 |
| 12:55:12 | 9 |
| 12:55:18 | 10 |
| 12:55:18 | 11 |
| 12:55:22 | 12 |
| 12:55:26 | 13 |
| 12:55:30 | 14 |
| 12:55:32 | 15 |
| 12:55:34 | 16 |
| 12:55:36 | 17 |
| 12:55:40 | 18 |
| 12:55:42 | 19 |
| 12:55:48 | 20 |
| 12:55:50 | 21 |
| 12:55:54 | 22 |
| 12:55:54 | 23 |
| 12:55:56 | 24 |
| 12:56:00 | 25 |

necessarily what was searched for.

THE COURT:  Why aren't we calling this a rolling on the request to produce that were issued?  I don't understand why.  I know indexing is part of it.  But the question of the -- you know, let's just say Judge Shadur had ruled a year ago or was asked to rule on the request to produce.  I mean, indexing is part of it, but there are 92 requests that I imagined your opening brief, you have the burden on it, you're going to say these are insufficient answers, correct?

MR. MOGIN:  Yes, your Honor, but we don't want to do this -- the whole point of our argument here is that we don't want to do that in a vacuum.  In other words, let's talk about what's really been produced since the production seems to be over the dam at this point.

THE COURT:  All right.

MR. MOGIN:  That's water over the dam.  So let's talk about what's actually been produced so they can say, for example, in response to RPD No. 3, we searched for the following, A, B, C, and we have produced items, 1, 2, and 3, signed --

THE COURT:  Isn't that what you're saying you do?

MR. EIMER:  No.

MR. McKEOWN:  No, your Honor.  The chart that was designed to show what it was that we searched for, if it was found, the contract lawyers then marked those documents as

12:56:04   1   responsive, but they didn't keep a checklist that says, This

12:56:06   2   one is going to this request, that one is going to that

12:56:10   3   request. We looked at things in the entirety. If they were

12:56:12   4   responsive to any of the categories, they were marked

12:56:14   5   responsive and moved on.

12:56:16   6          And so what our chart does and what we would propose

12:56:20   7   to do amending the request for production is to state more

12:56:24   8   clearly, if that would help the plaintiffs, take what's in our

12:56:28   9   chart, essentially, and put it into the formal requests. If,

12:56:30   10  for example -- you know, there may be eight categories in one

12:56:36   11  type of request. We may have found documents for seven but

12:56:42   12  not for the eighth. But we are not going to go through our

12:56:46   13  million-plus pages of documents to try to sort them like that.

12:56:48   14         MR. EIMER: That's a huge undertaking the plaintiffs

12:56:50   15  can do as well as we can.

12:56:52   16         THE COURT: I thought what the court was doing was

12:57:00   17  saying -- see, I thought Mr. Mogin and Mr. Freed would be

12:57:12   18  saying they did not completely answer No. 3. I mean, we know

12:57:18   19  everybody answered somewhat. Okay?

12:57:20   20         Here was the request. The request said, Tell me all

12:57:32   21  people, and you guys came back on the people and said, we're

12:57:40   22  giving you the executives and the people who report to the

12:57:42   23  executives. I thought my job would be to say, Was that too

12:57:48   24  broad to begin with, or if I say, You don't have to -- I mean,

12:57:50   25  the way I look at it is I have to almost say, It's too broad,

12:57:54 1 here's what you got to give them. I mean, I could say it's

12:57:58 2 too broad, period. I could say -- I guess a judge could say,

12:58:06 3 I am not going to give you everything, but I will give you X.

12:58:10 4 MR. EIMER: Right.

12:58:10 5 THE COURT: I mean, what am I doing?

12:58:12 6 MR. EIMER: We are addressing that. That's what we

12:58:14 7 are addressing, exactly that.

12:58:14 8 MR. FREED: To point a finer point on it, your Honor,

12:58:20 9 what has happened a couple times --

12:58:20 10 THE COURT: Mr. Freed, what I am confused on, why you

12:58:22 11 keep saying indexing when it seems like indexing is what is

12:58:26 12 kind of like wagging the tail here. First we have to decide

12:58:30 13 the appropriateness of the 92.

12:58:34 14 MR. EIMER: Right.

12:58:36 15 MR. FREED: Well, I actually think there is a middle

12:58:36 16 ground which I would at least like to try to explain.

12:58:40 17 THE COURT: Good.

12:58:40 18 MR. FREED: A couple of times in the hearing, just to

12:58:42 19 illustrate the point, we have relied on the written words in

12:58:46 20 their responses which we object to the following, and we also

12:58:50 21 were aware, and this spills over into the parsing issue, that

12:58:54 22 they take the position that as long as they said they

12:58:58 23 objected, they didn't have to say what they were, in fact,

12:59:02 24 producing.

12:59:02 25 So we said, Look -- people stood up even though they

12:59:08　1　objected and said, Well, we objected, but here's the

12:59:10　2　documents, we responded.  And that caught us by surprise, and

12:59:12　3　it made it very difficult for us in doing our own analysis of

12:59:16　4　their documents.  So we said to them, Tell us what it is,

12:59:20　5　notwithstanding your objections, that you have produced.

12:59:24　6　　　　　THE COURT:  Actually produced.

12:59:24　7　　　　　MR. FREED:  Actually produced.

12:59:24　8　　　　　THE COURT:  Okay.

12:59:26　9　　　　　MR. FREED:  They said -- and we thought we had

12:59:28　10　agreement, but we didn't.  They said, No, we will tell you

12:59:30　11　what we actually searched for but not what we actually

12:59:34　12　produced because that would be too difficult.

12:59:36　13　　　　　So we were getting toward --

12:59:38　14　　　　　THE COURT:  I see.

12:59:40　15　　　　　MR. FREED:  -- a method of resolving the issue, but

12:59:42　16　there was a difference as to how far they needed to go.

12:59:46　17　　　　　MR. EIMER:  But the issue that the court is

12:59:48　18　addressing --

12:59:48　19　　　　　THE COURT:  That's interesting because I hadn't -- I

12:59:52　20　didn't realize that.

12:59:52　21　　　　　MR. EIMER:  But the issue the court is addressing,

12:59:56　22　which is looking at a request and seeing if it's too broad or

01:00:00　23　the whether our objection is adequate or not, what I believe

01:00:02　24　your Honor is going to look at is two-fold.  One is to what

01:00:06　25　extent are we objecting to that request.  And in looking at to

01:00:10  1  what extent we're objecting to it, your Honor, we think, would

01:00:10  2  look at what we searched for. Anything we searched for, we

01:00:14  3  produced. There is nothing we didn't search for we didn't

01:00:16  4  produce unless the documents didn't exist.

01:00:20  5        THE COURT: Now, wait. That's different than what

01:00:22  6  Mr. Mogin --

01:00:24  7        MR. EIMER: Exactly. That's my point.

01:00:24  8        THE COURT: Everything you searched for --

01:00:28  9        MR. EIMER: We produced if it existed. So there

01:00:30 10  could be a category of documents that didn't exist in our

01:00:32 11  files.

01:00:32 12        MR. FREED: If you thought it was responsive.

01:00:34 13        MR. McKEOWN: No. No. The chart was to define

01:00:36 14  responsiveness.

01:00:38 15        MR. FREED: Okay.

01:00:38 16        MR. EIMER: It's not that we searched for it and we

01:00:40 17  later decided we wouldn't produce it. Anything we searched

01:00:44 18  for, we produced if it existed. So the only that's missing

01:00:46 19  for them is things that didn't exist that aren't in our files.

01:00:50 20  So in dealing with whether or not the request is too broad or

01:00:54 21  not, I think what the court actually needs to look at is what

01:00:56 22  we agreed to produce if it existed, which is exactly what we

01:01:00 23  are telling the court and telling the plaintiffs.

01:01:02 24        THE COURT: Does that help clarify for you?

01:01:04 25        MR. MOGIN: It does, your Honor. But, remember, the

01:01:08  1    ultimate issue is not the propriety of the request.  The

01:01:12  2    ultimate issue here is was the response correct.  In other

01:01:14  3    words, are the objections justified.  Are the exclusions

01:01:16  4    justified.  Is the search, what they actually searched for, is

01:01:20  5    that justified.  And then, ultimately, did they produce as

01:01:24  6    they represented in their responses to the RPDs and is that

01:01:28  7    production sufficient.  So that's the linkage of the issues.

01:01:32  8           MR. EIMER:  The parsing issue, as I understand it,

01:01:34  9    and as I think everybody would understand it, is only about

01:01:38  10   the adequacy of our search and whether or not we have

01:01:42  11   correctly objected to a document request or not.  And your

01:01:44  12   Honor needs to decide whether it's too broad, whether our

01:01:46  13   objection is too broad.  And in doing that, it's about whether

01:01:50  14   or not we are correctly searching for the documents that they

01:01:56  15   are entitled to get, and to make that determination, your

01:01:58  16   Honor, we need to know what we are searching for.

01:02:00  17          THE COURT:  Mr. Neuwirth, yes, sir.

01:02:12  18          MR. NEUWIRTH:  Thank you, your Honor.  I actually --

01:02:14  19   as I said earlier, I need to leave.  I have been told by the

01:02:14  20   Chicago natives that if I don't leave now, I will not make my

01:02:18  21   plane.

01:02:18  22          Given where we are in the process, I don't know if

01:02:20  23   it's feasible, because it turns out Ms. McLemore also has to

01:02:26  24   leave now, I have a dial-in number.  If it's something that we

01:02:32  25   could use, we could listen, as best as we can.  We won't

01:02:32  1  disrupt the hearing, but if that's something that the court

01:02:34  2  can dial into just so we can listen, that would be great.  If

01:02:38  3  not, we understand.

01:02:38  4  My only parting remark, if I can make one, having

01:02:40  5  listened to this discussion, is that my understanding of the

01:02:44  6  issue here is that there was a concern on the part of the

01:02:48  7  plaintiffs that there was a disparity between what it was that

01:02:54  8  the defendants had said in their objections they were going to

01:02:58  9  produce and what they actually did produce.  And I believe

01:03:04  10  that that may be true in some instances because my

01:03:08  11  understanding is that some defendants advised the plaintiffs

01:03:12  12  that, in fact, even though they had objected to certain

01:03:16  13  things, they had got on and produced anyway.  And so my

01:03:20  14  understanding of what the plaintiffs want is that they would

01:03:24  15  like disparity to be corrected.

01:03:26  16  Now, I am not sure that every defendant would say

01:03:30  17  that there is such a disparity, but some may say that there

01:03:34  18  was.  And if what the plaintiffs are requesting is that that

01:03:38  19  disparity be resolved as a way to litigate the issue that

01:03:44  20  triggered the request for indexing, my understanding is that

01:03:46  21  the defendants would be willing to try to do that to the

01:03:50  22  extent that it's necessary to resolve those disparities.

01:03:54  23  That's my parting effort to reach a resolution.  I

01:03:58  24  will give this number --

01:03:58  25  THE COURT:  Have a safe trip.

01:04:00    1    MR. NEUWIRTH:  Thank you very much.

01:04:00    2    THE COURT:  This is interesting.

01:04:02    3    MR. NEUWIRTH:  And if the next hearing is not on a

01:04:04    4    Friday, that would be wonderful.

01:04:06    5    THE COURT:  Thank you.  We will make sure that it's

01:04:08    6    not.

01:04:10    7    MR. FREED:  Let me make a proposal which maybe will

01:04:12    8    get us halfway there, which is if defendants are willing to do

01:04:16    9    that anyway, to do it, and then we can pick up the discussion

01:04:18    10   further.

01:04:20    11   MR. EIMER:  I am fine with that as long as we set a

01:04:22    12   briefing schedule.

01:04:22    13   MR. FREED:  And that's okay too.

01:04:24    14   MR. EIMER:  For IP, we will do it and see if it

01:04:28    15   helps.

01:04:28    16   MR. FREED:  Maybe sometimes you actually see how they

01:04:30    17   responded.  It may help us crystallize our thoughts too.

01:04:36    18   MR. EIMER:  We will take the chart -- IP will take

01:04:38    19   the chart that we have already submitted to the plaintiffs and

01:04:40    20   to the court and translate that into formal objections, which

01:04:44    21   is what Mr. Mogin asked for, to the document requests so that

01:04:48    22   we can see what we actually produced and what we didn't --

01:04:52    23   what we actually searched for and what we didn't search for

01:04:54    24   under the document request.

01:04:56    25   At the same time, I think it's clear that these

01:04:58   1    issues need to be resolved by the court.  This doesn't help

01:05:00   2    them resolve it, fine.  So I think we should list then the

01:05:04   3    indexing issue and the parsing issue as issues that need to

01:05:08   4    get resolved by the court through motion practice.  If we can

01:05:14   5    resolve it before that or limit it in some way, great.  But if

01:05:16   6    not, I think we have spent enough time.  It's clear we are at

01:05:20   7    an impasse.  We can't even agree on this, apparently.  I think

01:05:22   8    we need to set it down for a briefing.

01:05:24   9          MR. MOGIN:  Your Honor, I would like to agree to what

01:05:26  10    Mr. Eimer proposed and what Mr. Neuwirth proposed.  The issue

01:05:30  11    is that Mr. Eimer doesn't really agree with what Mr. Neuwirth

01:05:34  12    just proposed.  So it's a two-step process.  The first is,

01:05:40  13    what did you actually search for.  That's the chart --

01:05:46  14          MR. FREED:  Notwithstanding what you said.

01:05:48  15          MR. MOGIN:  What you said.  And that's what Mr. Eimer

01:05:48  16    is talking about.

01:05:50  17          The second step is, that said, what did you actually

01:05:52  18    produce.  That's the second step that Mr. Neuwirth is talking

01:05:56  19    about.  We think both would be helpful, but if only one is

01:06:04  20    achievable, let's start with Mr. Eimer.  But that will not

01:06:08  21    resolve the parsing issue.  Whereas if we do both

01:06:12  22    simultaneously, then that will probably resolve a huge piece

01:06:16  23    of the parsing issue.

01:06:18  24          MR. EIMER:  It absolutely does resolve the parsing

01:06:20  25    issue.

01:06:20  1    THE COURT:  It does.

01:06:22  2    MR. EIMER:  It absolutely resolves the parsing issue

01:06:24  3  if we do -- if IP does what it said it would do.  The parsing

01:06:28  4  issue is solely about what the parties looked for.  That's

01:06:28  5  what it is.  It's got nothing to do with what was produced.

01:06:32  6  The question of production is whether we adequately complied

01:06:34  7  with what we said we would do in our objections and our

01:06:36  8  response to the document request.  If they want to bring a

01:06:38  9  motion to compel later that we didn't produce certain

01:06:42  10  categories of documents that we had agreed to produce, they

01:06:44  11  can do that after they review the documents.  That is not for

01:06:46  12  now.  What we are talking about now is did we properly object

01:06:50  13  and narrow their document requests by what we agreed to search

01:06:54  14  for.

01:06:56  15    THE COURT:  Has anyone else done what IP has done

01:06:58  16  that they could also -- would that help if somebody else has

01:07:02  17  done what IP has done?

01:07:04  18    MR. MOGIN:  Of course it would, your Honor, but

01:07:06  19  nobody has agreed to.

01:07:08  20    MR. NEUWIRTH:  And part of it, your Honor, this goes

01:07:10  21  back to the point before, we did the chart.  I think other

01:07:12  22  defendants, I don't want to speak for them, but other

01:07:14  23  defendants are hesitant to go through all the extra work if

01:07:18  24  it's not going to make any difference in trying to resolve the

01:07:20  25  issues.

01:07:20 1   THE COURT:  Other defendants, come up here just for a
01:07:22 2   second here.  One for each.  We don't need everybody.
01:07:28 3       So are you willing to -- Mr. Tenor, it's going to be
01:07:34 4   kind of push the briefing back a little tiny bit, but are you
01:07:42 5   willing -- when can you do this, Jim?  Are you going to take
01:07:46 6   the lead on this?  Are you giving them something first and
01:07:52 7   then they are taking a look at it?  Is that what this is?
01:07:56 8       MR. McKEOWN:  Well, I think they already have the
01:07:56 9   essence of it in our chart.
01:07:58 10      THE COURT:  Because that was attached yesterday.
01:08:00 11      MR. McKEOWN:  We will take the chart and translate it
01:08:02 12  into the more formal objections.  But the essence of what we
01:08:06 13  already did is already in the chart.
01:08:08 14      MR. EIMER:  So they know what we searched for.
01:08:10 15      THE COURT:  So how quickly can you get them there?
01:08:12 16      MR. McKEOWN:  One week, Mr. Johnson?  One week.
01:08:16 17      THE COURT:  Well, how long are you going to need to
01:08:20 18  get them a response back?
01:08:22 19      MR. MOGIN:  I wouldn't be responding, your Honor,
01:08:26 20  until after, of course, we have reviewed it, but that doesn't
01:08:28 21  get to the second issue of what was actually produced.
01:08:32 22      So if we have to go this route, I don't believe it's
01:08:34 23  particularly efficient.  I think the more efficient thing to
01:08:38 24  do is to resolve the parsing issue and the indexing issue at
01:08:42 25  the same time through the vehicle of the revised or amended,

01:08:46  1  if you will, formal response to the document production, and

01:08:50  2  then at that point, I think we may have resolved indexing, we

01:08:56  3  may have resolved a huge piece of the parsing puzzle, and to

01:09:00  4  the extent there have to be further motions to compel on

01:09:04  5  discrete issues, discrete RPDs, we will know precisely what

01:09:08  6  they are, and we can do it on a much more expedited basis than

01:09:14  7  otherwise required.

01:09:14  8        THE COURT:  So Proposal A on the table -- I am so

01:09:18  9  confused on this -- would be, Jim, Mr. McKeown and IP, would

01:09:24  10  be giving you the chart they already did.  You then would

01:09:28  11  analyze that, but that isn't really your first pick.  Your

01:09:34  12  first pick is actually each one of them tell you what did they

01:09:42  13  actually produced under each of the 92 answers.  Correct or

01:09:50  14  not?

01:09:50  15        MR. MOGIN:  Correct, except, your Honor, if they are

01:09:56  16  going to want some approval, court approval, of their search

01:09:58  17  methodology, then we have to have step one.

01:10:02  18        THE COURT:  So what you're saying is each of the

01:10:08  19  seven of them would have to do what Mr. McKeown has done.

01:10:12  20        MR. MOGIN:  And what Mr. Neuwirth agreed to do.

01:10:18  21        MR. McKEOWN:  I don't think he agreed to what you

01:10:20  22  think.

01:10:22  23        THE COURT:  Of course, I was interested -- I am

01:10:24  24  interested if there is a potential of not having to rule on

01:10:28  25  666.  So I was interested if there is a way around this.

01:10:34  1    MR. MOGIN:  So let me just explain one more time, if
01:10:36  2  I can, please, for clarifications purposes.
01:10:38  3    Assume that Mr. Eimer does all the things that he
01:10:42  4  said he was going to do, that tells us precisely what each
01:10:48  5  defendant searched for in response to each RPD.  That tells us
01:10:54  6  something about the production, but it doesn't get us where we
01:10:58  7  need to go with respect to the production.
01:11:00  8    Then the issue is, the open piece, is what did they
01:11:06  9  actually produce as a result of that search in terms of
01:11:12  10  categories of documents or something to that effect.  In other
01:11:14  11  words, your Honor, what we are trying to do with the second
01:11:18  12  step is close the gap, if there is any, for each RPD with
01:11:24  13  respect to any variance from what they said they searched for
01:11:26  14  and what they, in fact, actually produced.  If plaintiffs had
01:11:30  15  all that information and it was within a compliant Rule 34
01:11:36  16  document, we'd have resolved the indexing issue, we'd have
01:11:40  17  resolved, as I said, an enormous, an enormous percentage of
01:11:46  18  the parsing issue.  The necessity for motions to compel as to
01:11:50  19  any particular one is reduced, again, enormously.
01:11:56  20    THE COURT:  All right.  Two things.  Do the rest of
01:12:00  21  you have plans for the afternoon?  Because, truthfully, I
01:12:08  22  think the most complicated issue here briefing-wise, I
01:12:14  23  actually can deal with word search, I can deal with -- I
01:12:18  24  actually can deal with time scope.  Those are traditional.
01:12:24  25    If from the judge's standpoint I have to give

01:12:28  1  individual consideration to 92 requests to produce times

01:12:34  2  seven, because you all didn't answer it exactly the same, I

01:12:38  3  know there are some similarities and I know they are broken

01:12:42  4  down, if there would be -- if you went to lunch for an hour

01:12:48  5  and talked among yourselves, obviously, I am not trying to get

01:12:52  6  you all to agree, but if there is a way to do this

01:12:56  7  procedurally, maybe it's worth an hour right now rather than

01:13:00  8  just set down a straight old briefing is what I am saying.

01:13:06  9        Mr. Marovitz, you look like you could help me out.

01:13:14  10        MR. MAROVITZ:  I'm not sure I will, but -- go ahead.

01:13:16  11        THE COURT:  This is tricky.  This is like tricky

01:13:20  12  here.  What we can do is we can wait and see if Mr. McKeown's

01:13:24  13  method works, but then we have pushed back briefing two more

01:13:30  14  weeks into the September 30th is the problem.

01:13:32  15        MR. McKEOWN:  Your Honor, if I might, I think we have

01:13:34  16  some semantic issues here, but I want to make sure we are all

01:13:40  17  on the same page.  There is the question of what was searched

01:13:42  18  for --

01:13:42  19        THE COURT:  Right.

01:13:42  20        MR. McKEOWN:  -- and what the objections said.  There

01:13:44  21  is, at the end of the day, the question of what was physically

01:13:48  22  produced.

01:13:48  23        THE COURT:  Right.

01:13:48  24        MR. McKEOWN:  The original issue that we understood

01:13:54  25  with the parsing was that the plaintiffs were concerned that

01:13:58　1　we were saying, These were our objections but we actually

01:14:02　2　searched for and produced more than that.  And that then our

01:14:06　3　proposal, if it would resolve the indexing issue, would be, We

01:14:12　4　have given you the chart, the chart shows what we have

01:14:14　5　searched for, and if we found it, it was produced.

01:14:16　6　　　　THE COURT:  Produced, correct.

01:14:18　7　　　　MR. McKEOWN:  But it could be that there is a request

01:14:22　8　for which there is no document that is responsive, and we

01:14:24　9　don't have a way of identifying that in an easy manner.  We

01:14:28　10　can take our original objections and conform them to what's in

01:14:32　11　the chart to say, This is what we searched for and to the

01:14:36　12　extent that those documents existed, and for a number of the

01:14:40　13　categories, we may be able to say, Yeah, we know we have

01:14:42　14　these.  But there are some we just don't know.  But what we

01:14:46　15　can say is what we searched for and if it was found in this

01:14:50　16　grouping, it was produced.

01:14:52　17　　　　And our disconnect, I think, is that I believe what

01:14:54　18　Mr. Mogin is saying is he wants us to identify what is in

01:14:58　19　this --

01:15:02　20　　　　MR. MOGIN:  Right.

01:15:02　21　　　　MR. McKEOWN:  -- and what was not.

01:15:04　22　　　　THE COURT:  What I got out of the defendants' seven

01:15:08　23　responses yesterday, and particularly Mr. Feller's, were if

01:15:14　24　you guys would say they would each do what Mr. McKeown has

01:15:22　25　done and will do in the next week, if you will say we are not

01:15:28   1   doing an omnibus request to produce motion now, the tradeoff
01:15:36   2   is -- like it or not, the tradeoff is if they do these charts
01:15:44   3   and you have any questions in the future about the scope, you
01:15:52   4   are going to stop saying this motion to compel is out there.
01:15:58   5   Am I correct, defendants?  They will do what he did, not
01:16:02   6   saying that you can't ask for a specific request, but this
01:16:08   7   motion hanging over their head cannot exist.
01:16:10   8          Now, to me, that would seem like something you could
01:16:14   9   talk about for an hour over lunch.
01:16:16   10         MR. FREED:  Yeah.  I think that's very constructive.
01:16:18   11  Let me see -- it would help me to restate it to see if I
01:16:24   12  understand it.
01:16:24   13         If the other defendants agreed to do as Mr. McKeown
01:16:28   14  has done, probably skipping the middle step of the chart but
01:16:32   15  actually doing the formal response, saying what they object to
01:16:36   16  and what they don't object to so we don't have this
01:16:40   17  netherworld where they object but also produce, then we would
01:16:46   18  accept that at this time defer moving to get the actual
01:16:52   19  identification of what was produced, but we would still be
01:16:56   20  able to do that in the future.
01:17:06   21         MR. MAROVITZ:  Andy Marovitz.  That's exactly what we
01:17:08   22  want to avoid.  We want to have resolution of certain matters.
01:17:16   23  I believe that what Mr. Freed and what Mr. Mogin are arguing
01:17:20   24  for are slightly different.
01:17:22   25         THE COURT:  Maybe that's true.

01:17:24  1          MR. MAROVITZ:  If it will resolve matters for us to

01:17:30  2  put together the information like IP did and it will resolve,

01:17:32  3  as your Honor just said, an omnibus motion to compel with

01:17:38  4  modest exceptions for specific matters, we are interested in

01:17:44  5  that.  We are not interested, and I will speak for me,

01:17:48  6  Temple-Inland are not interested in doing what we did in the

01:17:50  7  depositions.  The reason I exercised this is I led the charge

01:17:54  8  on the deposition letter writing.  Back in the fall, I was at

01:17:58  9  the meeting present and I suggested, it was my recommendation,

01:18:02  10  that we avoid all of these depositions if we could by

01:18:06  11  providing the information in writing in advance in detail.

01:18:10  12  And I asked my partner, Ms. Miller, to do that, and she spent

01:18:14  13  a lot of time doing it, and I only did it when I was told

01:18:18  14  that, Yes, if what you have put in the letter is reasonably

01:18:22  15  responsive, we won't go ahead with the depositions.  And our

01:18:26  16  30(b)(6) deposition took two days.

01:18:28  17            So I am very interested in reaching finality on these

01:18:32  18  issues.  And this is going to be unpopular, but I am going to

01:18:36  19  say it anyway.  I do not believe that a hour lunch is going to

01:18:42  20  reach finality.  I think that we are best served by simply

01:18:44  21  teeing these up for briefs.  I only speak for myself.

01:18:48  22  Mr. McKeown and others may have a different view.  I just

01:18:50  23  think we are going to need the court's guidance.  I think all

01:18:54  24  the parties need the court's guidance on these issues so that

01:18:56  25  we can get them behind us and move forward.

01:19:02  1        MR. GOODWIN:  Your Honor, if I may address that

2  because I can talk in concrete terms about GP's written

3  responses to our discovery request.

4        THE COURT:  And since they're not here.

5        MR. GOODWIN:  I really do, but --

6        THE COURT:  If we can get them on the phone.

01:19:08  7        MR. GOODWIN:  I really don't think there's going to

01:19:10  8  be much -- there would be much disagreement here because I

01:19:14  9  actually think, you have seen the document we gave the court

01:19:18  10  during the meet and confer.  I have about 40 requests if I

01:19:20  11  look just at what GP has given me a written answer on that I

01:19:24  12  could potentially file a motion to compel on.  I think,

01:19:28  13  however, with some input from GP and some -- you know, you

01:19:32  14  made that objection, but did you ignore that objection when

01:19:36  15  you produced, what do you mean by this thing, that number

01:19:40  16  probably becomes less than a dozen.  And I think the court

01:19:44  17  suddenly is maybe resolving perhaps one global issue and maybe

01:19:50  18  five or six individual issues, and the burden on the court

01:19:54  19  becomes a lot less.

01:19:56  20        Not everyone in the room was present when we had that

01:20:00  21  meet and confer, but, you know, you had us very sincerely

01:20:06  22  saying, Well, you told us you are giving us this, and we need

01:20:10  23  more than you've told us you're giving.  And then Mr. Neuwirth

01:20:16  24  came forward and brought three boxes of documents to show how

01:20:16  25  fulsome his production had been on those very topics.

01:20:20    1    I don't want to move on something -- write a motion

01:20:22    2    to compel only get to get a response from GP saying, We gave

01:20:26    3    that to you. I want to file something that's a good use of

01:20:30    4    the court's time, a good use of my time, and a good use of his

01:20:34    5    time.

01:20:34    6    THE COURT: But one thing that we are in this weird

01:20:42    7    procedural posture because the requests to produce were

01:20:44    8    written a year ago, and as you guys love to -- you guys and

01:20:44    9    ladies love to say, you now have produced nine million pieces

01:20:48    10    of paper. Okay? So the landscape has changed from the time

01:20:54    11    it was written.

01:20:54    12    So, Mr. Marovitz, I walked out here at 10:00 o'clock,

01:20:58    13    and I didn't -- I thought some of the other issues were the

01:21:04    14    one that really still lent themselves to conversation. I

01:21:12    15    thought there was probably nothing to do with this request to

01:21:16    16    produce, but Chris and I put a gun to our head and got

01:21:20    17    Margaret in this too. I didn't know.

01:21:22    18    Now it seems like there is some room here because

01:21:28    19    there is a question between -- if the search and the

01:21:32    20    production is the same, we do now know that, at least from

01:21:36    21    Mr. McKeown, what he searched for. If it existed, he

01:21:40    22    produced. So that answers a big part of the question.

01:21:50    23    Where is it in the document that's the, quote

01:21:54    24    unquote, indexing, that's been an issue from -- that's like

01:21:58    25    separate. Then there is the scope of what they asked for, and

01:22:04 1 they call it parsing. I call it, you know, completeness of

01:22:08 2 the answer. Or, you know, you have -- they asked for A and

01:22:12 3 you gave them B. And am I going to require B, or am I going

01:22:20 4 to require A minus, basically.

01:22:26 5 MR. EIMER: Right. That's right.

01:22:28 6 MR. FREED: I know Mr. Marovitz won't agree, probably

01:22:32 7 won't agree with me, I don't see the disadvantage for them and

01:22:34 8 the other defendants doing what IP has done and at least

01:22:40 9 saying to us, Notwithstanding the objections we made, this is

01:22:42 10 what we produced, or stated another way --

01:22:46 11 THE COURT: They just said to you loud and clear,

01:22:48 12 Mr. Freed, they have spent enough time and enough money on

01:22:50 13 their client's sake and the one client walked out of the room.

01:22:54 14 They will do it if you will just say, This is one issue that's

01:23:02 15 off the table from now is an omnibus -- Mr. Marovitz doesn't

01:23:08 16 want to do this, but everybody else wants to do this, or

01:23:12 17 maybe, we don't have to do an omnibus request to permit with

01:23:18 18 the caveat that you -- if you're not happy with specific

01:23:22 19 answers or you discover stuff after you do the review, you can

01:23:26 20 go back to them, but you could go back to them anyway.

01:23:34 21 Some of them are shaking their head, they would agree

01:23:38 22 to that. Ms. Miller is just dying to do another motion here.

01:23:44 23 MR. MAROVITZ: I can't tell if Ms. Miller is looking

01:23:48 24 at me or you, Judge.

01:23:48 25 THE COURT: Here is what my question is. Now almost

01:23:50 1 everybody except this group over here is from Chicago.  What

01:23:52 2 about taking 45 minutes now that -- and just come back?  I

01:23:58 3 want to give you my dates.  I have actually dates.  I felt sad

01:24:08 4 about this morning, actually, so now I am over my sad.  I

01:24:12 5 would like to see you come back, we will get Mr. Neuwirth in

01:24:16 6 the cab or the airport, wherever he is, talk about

01:24:20 7 particularly the request to produce.  We will have it

01:24:24 8 perfectly clear what the understanding is so there is no going

01:24:28 9 back on this.  And then is there any hope on any other

01:24:34 10 agreement.  I have days.  Some of our individual meetings went

01:24:40 11 better than others.  We could do some short individual if that

01:24:44 12 would help and not have to drag everybody through this, or we

01:24:50 13 could go back to oral argument.

01:24:52 14         This is the other thing I wanted to stress.  Because

01:24:54 15 of our time running out, we could do short motions on certain

01:24:58 16 issues, come in, oral argument, and I will rule.  If I have

01:25:08 17 your briefs -- if I have a short brief beforehand and then you

01:25:10 18 have an opportunity to answer back.  I am open to anything to

01:25:14 19 help get as much resolved as possible.

01:25:18 20         MR. FREED:  What about a short date, your Honor, and

01:25:20 21 then maybe a joint status report, which will at least give

01:25:24 22 us --

01:25:24 23         THE COURT:  Let's just do lunch at the moment.  We

01:25:26 24 are doing -- I am starving.  Can't you catch the old lady is

01:25:32 25 starving?

01:25:34  1      MR. EIMER:  You were going to give us the dates you
01:25:36  2  were available?
01:25:36  3      THE COURT:  I had tons of dates.
01:25:38  4      The first one is a week from Wednesday.  I just did
01:25:56  5  it.  I highlighted it.
01:26:02  6      That would help you to talk about it at lunch too.
01:26:06  7  Just one minute.  I just did one, and I highlighted every date
01:26:10  8  through September 28.
01:26:20  9      So that is Wednesday, September 25th.
01:26:26  10     MR. MOGIN:  July.
01:26:26  11     MR. EIMER:  July.
01:26:28  12     THE COURT:  July 25th.  The next -- then we are back
01:26:34  13  the week of August 6th.  So Wednesday, July 25th.  And I can
01:26:54  14  do Thursday, August 9th.  Then I can do Wednesday, August
01:27:00  15  15th.  Friday isn't good for Mr. Neuwirth, but I could do the
01:27:08  16  17th.
01:27:10  17     Then the next week, Tuesday, August 21st.  So that's
01:27:20  18  like one a week.  And then we get into the week of August
01:27:26  19  27th.  I have three days.  I have Monday, Tuesday, Wednesday.
01:27:30  20  After Labor Day, Tuesday.  The week after that finally it
01:27:34  21  starts to open up.  The week of September 10th I can do all
01:27:38  22  four days, five days.  No, four days, Tuesday through Friday.
01:27:42  23     MR. MOGIN:  Your Honor, with respect to some of those
01:27:44  24  dates --
01:27:44  25     THE COURT:  You do have a life, Mr. Mogin?  You have

| | | |
|---|---|---|
| 01:27:48 | 1 | a life outside of this? |
| 01:27:50 | 2 | MR. MOGIN: I'm trying. I have Ninth Circuit |
| 01:27:58 | 3 | conference the week of the 10th, and because of its location, |
| 01:28:04 | 4 | I'm taking an extra week. |
| 01:28:04 | 5 | THE COURT: Oh, you're going. That's right. And |
| 01:28:06 | 6 | you're in big trouble with -- not you, but your chief judge is |
| 01:28:06 | 7 | in big trouble. |
| 01:28:08 | 8 | MR. MOGIN: Fortunately, he has lifetime tenure. B, |
| 01:28:12 | 9 | my tenure is up on that committee. |
| 01:28:14 | 10 | THE COURT: So you are going to Hawaii the week of |
| 01:28:16 | 11 | August 6th -- |
| 01:28:18 | 12 | MR. MOGIN: No, the week of the 12th I'm out, and the |
| 01:28:22 | 13 | whole week of the 19th, I'm out. |
| 01:28:24 | 14 | MR. EIMER: Of August? |
| 01:28:26 | 15 | MR. MAROVITZ: Of August? |
| 01:28:26 | 16 | MR. MOGIN: Yes. |
| 01:28:26 | 17 | THE COURT: So you are going to talk about that. Any |
| 01:28:28 | 18 | other weeks of time people are gone? |
| 01:28:32 | 19 | MR. FREED: I am around the whole time other than |
| 01:28:34 | 20 | August 9th. |
| 01:28:34 | 21 | THE COURT: So you, you are as boring as I am. I am |
| 01:28:38 | 22 | going to Mississippi on that one week. How would you like to |
| 01:28:42 | 23 | go to Mississippi in August, 110 degrees per day? Mr. Mogin |
| 01:28:46 | 24 | has the better end of that one. |
| 01:28:50 | 25 | Go to lunch, and we will talk. That will give you |

01:28:54　1　some idea.

01:28:56　2　　　　　MR. EIMER:　Is there anything after September 14th?

01:28:58　3　　　　　THE COURT:　Yes, I do.　You can be here right to my

01:29:02　4　party.　You can leave here and go down to the party.

01:29:06　5　　　　　MR. EIMER:　We will be there.

01:29:08　6　　　　　MR. MOGIN:　You will rule, and depending on how you

01:29:14　7　rule will depend on who goes to the party.

01:29:16　8　　　　　MR. MAROVITZ:　Judge, very quickly, not a substantive

01:29:16　9　argument, I hope I can be released at 3:30.

01:29:20　10　　　　　THE COURT:　You can.　We are going to be finished.

01:29:22　11　　　　　MR. MAROVITZ:　That's great.　And, second, my only

01:29:24　12　point from before is we really need to have clarity on

01:29:26　13　whatever it is that is going to be decided.

01:29:28　14　　　　　THE COURT:　Come back at 2:15.　Go to Corner Bakery,

01:29:34　15　quick.　Bye.

01:29:34　16　　　　　We will call Mr. Neuwirth -- I'm going to call

01:29:38　17　Mr. Neuwirth on the phone and tell him we are going to call

01:29:40　18　him at 2:15 Chicago time.

01:29:50　19　　　　　MR. FELLER:　He won't be available.　His flight is at

01:29:52　20　2:30.

01:29:54　21　　　　　THE COURT:　Just as a courtesy, we will call him.

01:30:00　22　　　(The hearing was adjourned at 1:30 p.m. until 2:15 p.m. of

01:30:08　23　this same day and date.)

24

25

1    IN THE UNITED STATES DISTRICT COURT
     NORTHERN DISTRICT OF ILLINOIS
2            EASTERN DIVISION

3
     KLEEN PRODUCTS, LLC, et al.,          )    Docket No. 10 C 5711
4                                          )
                         Plaintiffs,       )
5                                          )
                vs.                        )
6                                          )
     PACKAGING CORPORATION OF AMERICA,     )    Chicago, Illinois
7    et al.,                               )    July 13, 2012
                                           )    2:15 o'clock p.m.
8                        Defendants.       )

9
                    TRANSCRIPT OF PROCEEDINGS
10      BEFORE THE HONORABLE MAGISTRATE JUDGE NAN R. NOLAN
                         VOLUME 1-B
11

12   APPEARANCES:

13
     For the Plaintiffs:          THE MOGIN LAW FIRM
14                                BY:  MR. DANIEL J. MOGIN
                                  707 Broadway, Suite 1000
15                                San Diego, CA  92101
                                  (619) 687-6611
16
                                  FREED KANNER LONDON & MILLEN LLC
17                                BY:  MR. MICHAEL J. FREED
                                  MR. ROBERT J. WOZNIAK
18                                2201 Waukegan Road, Suite 130
                                  Bannockburn, IL  60015
19                                (224) 632-4500

20                                SCOTT & SCOTT
                                  BY:  MR. WALTER W. NOSS
21                                707 Broadway, Suite 1000
                                  San Diego, CA  92101
22                                (619) 233-4565

23
     Court Reporter:              MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
24                                Official Court Reporter
                                  219 S. Dearborn Street, Suite 1854-B
25                                Chicago, Illinois  60604
                                  (312) 435-5639

```
 1  APPEARANCES CONTINUED:

 2  For the Plaintiffs          GRANT & EISENHOFER
    (Cont'd)                    BY:  MR. ROBERT G. EISLER
 3                              123 Justison Street, 7th Floor
                                Wilmington, DE   19801
 4                              (302) 622-7030

 5                              BERGER & MONTAGUE, P.C.
                                BY:  MR. CHARLES PEARSALL GOODWIN
 6                              1622 Locust Street
                                Philadelphia, PA  19103
 7                              (215) 875-3000

 8                              LOCKRIDGE GRINDAL NAUEN PLLP
                                BY:  MR. BRIAN D. CLARK
 9                              100 Washington Avenue S.
                                Minneapolis, MN  55401
10                              (612) 239-6900

11                              MILLER LAW LLC
                                BY:  MR. MATTHEW E. VAN TINE
12                              115 South LaSalle Street
                                Suite 2910
13                              Chicago, IL  60603
                                (312) 332-3400
14

15  For Defendant Packaging     KIRKLAND & ELLIS LLP
    Corporation of America:     BY:  MR. LEONID FELLER
16                              300 North LaSalle Street
                                Chicago, IL  60654
17                              (312) 862-3144

18
    For Defendant               FOLEY & LARDNER LLP
19  International Paper:         BY:   MR. JAMES T. McKEOWN
                                      MR. NATHAN EIMER
20                                    MR. TRENT M. JOHNSON
                                777 East Wisconsin Avenue
21                              Milwaukee, WI   53202
                                (414) 297-5530
22

23                              EIMER STAHL LLP
                                BY:  MR. NATHAN P. EIMER
24                              224 South Michigan Ave., Suite 1100
                                Chicago, IL  60604
25                              (312) 660-7600
```

1    APPEARANCES CONTINUED:

2    For Defendant                MAYER BROWN LLP
     Temple-Inland:               BY:  MR. ANDREW S. MAROVITZ
3                                      MS. BRITT M. MILLER
                                  71 South Wacker Drive
4                                 Chicago, IL  60606
                                  (312) 782-0600
5

6    For Defendant                K & L GATES LLP
     Cascades and Norampac:       BY:  MS. LAUREN NORRIS
7                                 70 West Madison Street, Suite 3100
                                  Chicago, IL  60602
8                                 (312) 372-1121

9
     For Defendant                QUINN EMANUEL URQUHART &
10   Georgia-Pacific:             SULLIVAN LLP
                                  BY:  MR. SAMI RASHID
11                                51 Madison Avenue, 22nd Floor
                                  New York, NY  10010
12                                (212) 849-7000

13
                                  GEORGIA-PACIFIC
14                                BY:  MS. MARY K. McLEMORE
                                  133 Peachtree Street, N.E.
15                                P.O. Box 105605
                                  Atlanta, GA  30348
16                                (404) 652-4598

17
     For Defendant                WINSTON & STRAWN LLP
18   RockTenn CP, LLC:            BY:  MR. MICHAEL MAYER
                                       MR. JOSEPH L. SIDERS
19                                35 West Wacker Drive
                                  Chicago, IL  60601
20                                (312) 558-5902

21
     For Defendant                McDERMOTT WILL & EMERY LLP
22   Wayerhaeuser Company:        BY:  MS. JENNIFER A. SMULIN DIVER
                                  227 West Monroe Street, Suite 4400
23                                Chicago, IL  60606

24

25

02:21:50   1   (The following proceedings were had in open court:)

02:21:50   2        THE COURT:  We are back on the record in Kleen,

02:21:54   3   10 C 5711.

02:21:54   4        I think we should do another roll call just so the

02:21:58   5   record is complete.  Mr. Mogin, will you -- we will get to you

02:22:02   6   in a moment, whoever is on the phone, but we are going to have

02:22:06   7   the plaintiffs introduce themselves first.  Are you there,

02:22:08   8   person on the phone?

02:22:10   9        MR. RASHID:  Yes, I am, your Honor.

02:22:12  10        THE COURT:  Good.  We will start with the plaintiffs.

02:22:14  11        MR. MOGIN:  For the plaintiffs, your Honor, Daniel

02:22:16  12   Mogin, Michael Freed, Robert Wozniak, Robert Eisler, Charles

02:22:24  13   Goodwin, Walter Noss, Brian Clark, Matt Van Tine.

02:22:30  14        THE COURT:  Thank you.  And for our defendants,

02:22:36  15   Georgia-Pacific usually goes first because they are listed

02:22:38  16   first, and Mr. Neuwirth had a plane to catch so he has an

02:22:44  17   associate on the phone.

02:22:44  18        Sir, we are in the courtroom and we are on the record

02:22:48  19   and we have a court reporter.  So would you state your name

02:22:52  20   for the record, please.

02:22:52  21        MR. RASHID:  Yes, it's Sami Rashid, R-a-s-h-i-d,

02:23:02  22   Quinn Emanuel, for Georgia-Pacific.

02:23:02  23        THE COURT:  All right.  Thank you.

02:23:06  24        Mr. McKeown, you can go next.

02:23:08  25        MR. McKEOWN:  James McKeown for International Paper.

02:23:12   1    THE COURT:  I'm sorry, Mr. McKeown, I keep calling

02:23:14   2    you Mr. McGowan.

02:23:14   3    MR. McKEOWN:  For International Paper.  Also Nate

02:23:16   4    Eimer and Trent Johnson.

02:23:18   5    THE COURT:  Thank you.

02:23:20   6    MS. DIVER:  Jennifer Diver for Weyerhaeuser Company.

02:23:20   7    THE COURT:  Thank you, Ms. Diver.

02:23:20   8    MR. FELLER:  Leonid Feller for Packaging Corporation.

02:23:20   9    THE COURT:  Okay.

02:23:28   10   MS. NORRIS:  Laura Norris for Norampac/Cascades.

02:23:28   11   THE COURT:  Thank you.

02:23:32   12   MR. MAROVITZ:  Andy Marovitz and Britt Miller for

02:23:32   13   Temple-Inland.

02:23:32   14   THE COURT:  Okay.

02:23:34   15   MR. MAYER:  Mike Mayer and Joe Siders for RockTenn

02:23:36   16   CP.

02:23:36   17   THE COURT:  Thank you.  Thank you, Mr. Siders.

02:23:38   18   Is that it?  Okay.  Good.

02:23:42   19   So we took a little lunch break to see.  The parties

02:23:48   20   have been working hard to see if we can resolve what should be

02:23:54   21   briefed or what doesn't need to be briefed.  So let me -- we

02:24:00   22   were talking about how to handle the requests to produce.

02:24:04   23   MR. EIMER:  Good afternoon, your Honor.  Nate Eimer.

02:24:06   24   Thank you for the chance to get something to eat.  I am always

02:24:10   25   happy to go down to 2.

02:24:12　1　　　　　We, the defendants, talked among ourselves about the

02:24:16　2　dilemma of the court having to deal with seven times 92, which

02:24:20　3　seems like a big number if you multiply it out.

02:24:20　4　　　　　THE COURT:  Right.

02:24:22　5　　　　　MR. EIMER:  I don't think it will be 92, ultimately

02:24:24　6　anyway, but in any event, we had a proposal that we have given

02:24:28　7　to Mr. Mogin and Mr. Freed which I think should alleviate a

02:24:32　8　lot of the burden and make this a lot easier to do.

02:24:34　9　　　　　Since IP has been the one that has already produced

02:24:38　10　the now infamous chart about a month ago --

02:24:40　11　　　　　THE COURT:  Right.

02:24:40　12　　　　　MR. EIMER:  -- and has already said it was willing

02:24:42　13　within a week to convert that chart into a revised objections

02:24:48　14　to the RFPs, we suggest that IP be the model for a motion to

02:24:54　15　compel against IP with respect to the 92 requests for whatever

02:24:58　16　they think is objectionable.  In that way, the court will have

02:25:04　17　only to resolve the RFPs against IP at this point.

02:25:08　18　　　　　I think your Honor's ruling, to the extent that you

02:25:12　19　need to rule on anything, and hopefully there wouldn't be a

02:25:14　20　need, but after we produce the chart in the form that they

02:25:18　21　want.  But to the extent we do produce, there is a motion to

02:25:22　22　compel, and your Honor does have a ruling, I think the other

02:25:24　23　defendants I think then will know exactly what we need to do,

02:25:26　24　and we can be guided with that ruling without you having to do

02:25:30　25　it seven times over.

| | | |
|---|---|---|
| 02:25:30 | 1 | THE COURT:  Okay. |
| 02:25:32 | 2 | MR. EIMER:  To the extent there are variations |
| 02:25:34 | 3 | between our responses and theirs, I think they can be guided |
| 02:25:38 | 4 | as to how you dealt with ours, or at least there will be some |
| 02:25:42 | 5 | limited number of additional issues that can be submitted |
| 02:25:44 | 6 | probably to a different judge, but I think your Honor won't |
| 02:25:46 | 7 | have to deal with it. |
| 02:25:46 | 8 | THE COURT:  Okay. |
| 02:25:48 | 9 | MR. EIMER:  So I think that makes it a lot more |
| 02:25:50 | 10 | doable -- |
| 02:25:50 | 11 | THE COURT:  Manageable. |
| 02:25:52 | 12 | MR. EIMER:  -- in the time frame that we have. |
| 02:25:54 | 13 | THE COURT:  Let's see what the plaintiffs feel about |
| 02:25:56 | 14 | that. |
| 02:25:58 | 15 | MR. RASHID:  Your Honor, I hate to interrupt.  I can |
| 02:26:02 | 16 | hear you clearly.  It's hard for me to hear counsel speaking. |
| 02:26:06 | 17 | THE COURT:  Good for telling us.  Did you hear the |
| 02:26:08 | 18 | proposal, though? |
| 02:26:10 | 19 | MR. RASHID:  I did.  At points it cut out, but I |
| 02:26:12 | 20 | understood the general -- |
| 02:26:14 | 21 | THE COURT:  You don't have to do any work.  That's |
| 02:26:14 | 22 | the most important thing is that Mr. Neuwirth did not get on |
| 02:26:20 | 23 | the plane and we dump everything on him because he wasn't |
| 02:26:24 | 24 | here.  Okay? |
| 02:26:24 | 25 | MR. RASHID:  Okay. |

02:26:26    1    THE COURT:  Now we are going to hear what Mr. Mogin

02:26:28    2    thinks for the plaintiffs about this test case.

02:26:32    3    MR. MOGIN:  Well, your Honor, we don't think it would

02:26:36    4    be a very representative test case.  There is a reason that IP

02:26:38    5    has been as transparent as it has, and that's because IP is

02:26:44    6    one of the least -- no.  IP is not as egregious in our view as

02:26:50    7    the others with respect to this parsing issue.

02:26:52    8    We also think it would be more efficient to do this,

02:26:56    9    this particular task, perhaps the rules can be better guidance

02:27:02   10    than for some of our other tasks.  And what the defendants

02:27:06   11    should do is they should file formal responses that

02:27:12   12    incorporate what they're actually doing so that the court

02:27:14   13    knows as to each defendant, and then if we need to make

02:27:18   14    motions to compel after that, we will make motions to compel,

02:27:24   15    we will do it rather quickly, and we will do it against those

02:27:28   16    defendants that we need to.

02:27:30   17    So it may be, for example, and I am just pulling

02:27:34   18    numbers out of a hat here, suppose that IP has done a pretty

02:27:36   19    good job on No. 5 but that GP hasn't.  When IP has done a

02:27:44   20    pretty bad job on No. 7 and GP has done a pretty good job, the

02:27:48   21    exemplars won't guide you in any particular way in that

02:27:52   22    respect.  So we think it would be more efficient to have the

02:27:56   23    defendants do what it is that we are talking about.

02:27:58   24    THE COURT:  So when you say a formal response that

02:28:04   25    you want each one to do, do you want them to do Mr. McKeown's

02:28:08   1   chart?  Is that what a formal response is?

02:28:12   2          MR. MOGIN:  As a revised 30(b) -- Rule 34(b)

02:28:18   3   response.

02:28:22   4          THE COURT:  And then what do we do when I get these

02:28:24   5   six revised responses?  What do I do with those?

02:28:28   6          MR. MOGIN:  You don't do anything at that point.  We,

02:28:30   7   plaintiffs, review them and see what's the battleground going

02:28:36   8   to be, where does the battleground need to be, what do we

02:28:40   9   actually have to fight over.

02:28:40   10          THE COURT:  So they don't have to do a chart.  What

02:28:44   11   you're suggesting is they're going to tell you and, if need

02:28:52   12   be, the court what, in fact, they -- this seems to be the

02:29:00   13   discussion, is it what you produced or what you searched?

02:29:04   14          MR. MOGIN:  We are willing to take it one step at a

02:29:08   15   time and just focus on search for the time being, so it would

02:29:12   16   be precisely what IP did as a formal response.

02:29:18   17          THE COURT:  Did you guys talk about that at lunch?

02:29:20   18          MR. EIMER:  We did not because the defendants hadn't

02:29:26   19   heard from Mr. Mogin that that would be acceptable, and I also

02:29:28   20   think it will slow the process down.

02:29:30   21          I think it will be very instructive if Mr. Mogin

02:29:34   22   concludes that the response that IP gave to request 5, for

02:29:38   23   instance, was adequate.  I think that would be a substantial

02:29:42   24   guide to the other defendants as to what they should do.  And

02:29:44   25   if he concludes that the response we gave to request 7 was

02:29:48  1  inadequate and he moves against it, your Honor's ruling will

02:29:52  2  be instructive to the others.  So I continue to think that in

02:29:56  3  the interest of efficiency for the court --

02:29:58  4          THE COURT:  Right.

02:29:58  5          MR. EIMER:  -- and moving this thing along in the

02:30:02  6  time frame we have, picking one of us, and we have never been

02:30:04  7  praised for doing anything until today, and I am glad we are

02:30:08  8  now becoming model citizens along with Mr. McCareins.  Maybe

02:30:12  9  not quite the status he is.  He got an A plus, I think.  But

02:30:16  10  now that -- you know, I think there are obvious deficiencies

02:30:20  11  that he is seemingly aware of.  I think bringing those before

02:30:22  12  the court and getting them resolved, along with the things

02:30:26  13  that he has overlooked and things that are satisfactory is a

02:30:28  14  substantial movement forward so that people have some sense of

02:30:30  15  where they stand.

02:30:30  16          MR. MOGIN:  Your Honor, in point in fact, this piece

02:30:36  17  of discussion was really the last thing that should be on the

02:30:40  18  agenda, as Mr. Freed said when he made his remarks.  What we

02:30:46  19  are talking about now are really individualized issues as

02:30:50  20  opposed to the common issues that we set out back in August to

02:30:54  21  try to resolve, the common issues being time period, sources,

02:30:58  22  search method, and organization, whether you call that

02:31:04  23  indexing or something else.

02:31:08  24          And what I had attempted to do when we were having

02:31:12  25  the discussion earlier was to see if there wasn't a method

02:31:14  1   that we could resolve the parsing issue and the indexing issue

02:31:20  2   at once.  Apparently, that's not going to be feasible.

02:31:24  3          But, in any event, I do think that all of the

02:31:26  4   defendants have an obligation under Rule 34 to do what we are

02:31:32  5   asking anyway.  And as you previously noted, your Honor,

02:31:34  6   that's what's really going to narrow the scope of the issues

02:31:38  7   for you.

02:31:40  8          MR. EIMER:  We are not suggesting that the other

02:31:40  9   issues don't get addressed when we're asked how we're going

02:31:42  10  to --

02:31:42  11         THE COURT:  Right, timing-wise.  Yours is kind of a

02:31:44  12  timing --

02:31:46  13         MR. EIMER:  Well, we would do the others at the same

02:31:48  14  time as well.  Your Honor asked about the RFPs, and I am

02:31:50  15  suggesting that the RFPs can be dealt with efficiently now by

02:31:56  16  just teeing up IP and just have us do it, I think we should

02:31:56  17  get to the time period under the same schedule.  I think we

02:31:58  18  should get to all of the issues that everyone wants to resolve

02:32:02  19  under essentially the same schedule.

02:32:04  20         The only thing that I think is a little bit different

02:32:06  21  is the methodology issue.  If the plaintiffs are still

02:32:10  22  insisting on a hearing or if your Honor thinks we need a

02:32:12  23  hearing or to continue the hearing, then I think we need to

02:32:16  24  find a hearing date within the schedule.  But everything else

02:32:18  25  --

02:32:18   1      THE COURT:  All right.  So I understand the request

02:32:22   2  to produce issue, so let's talk about the other issue.  I

02:32:24   3  mean, I do agree, let's talk about the other issue.

02:32:28   4      So what else do you think is teed up for briefing?

02:32:32   5      MR. EIMER:  I think the number of the custodians, who

02:32:38   6  were the appropriate custodians.  We have been going back and

02:32:42   7  forth.  I think the plaintiffs should make a selection.  We

02:32:44   8  have given them -- as your Honor has done, we have given them

02:32:46   9  a lot of information through the hold order list --

02:32:50   10      THE COURT:  Is this search, or is this custodian?  I

02:32:54   11  mean, what's our broad topic here?

02:32:56   12      MR. EIMER:  I think the topic is what custodians need

02:33:02   13  to be searched, so that's the question that the plaintiffs

02:33:04   14  keep raising.  I think we all have varying numbers of people

02:33:08   15  that we have searched.  I think that is individualized by

02:33:12   16  defendant.  I think they should go through each defendant and

02:33:14   17  notify the defendant what custodians they believe should be

02:33:18   18  searched, and we can either agree to add those additional

02:33:20   19  custodians or not; or by title, we talked about doing it by

02:33:24   20  title, for instance, if they want to do that since they have

02:33:26   21  titles of people.

02:33:28   22      And then if we disagree about adding custodians, they

02:33:30   23  can file a motion to compel that these additional people need

02:33:32   24  to be added.  I think we are ready to do that.

02:33:36   25      THE COURT:  Have you discussed that at lunch?

| | | |
|---|---|---|
| 02:33:38 | 1 | MR. EIMER:  We did a bit. |
| 02:33:40 | 2 | THE COURT:  You did. |
| 02:33:40 | 3 | MR. MOGIN:  No, we had discussed it before lunch, but |
| 02:33:42 | 4 | we had discussed it for sure.  And I think that as a proposal, |
| 02:33:46 | 5 | since it's without prejudice to our position to assert other |
| 02:33:50 | 6 | people, I'm not disturbed by it, but to the extent that our |
| 02:33:56 | 7 | judgment about who should be additional custodians is informed |
| 02:34:00 | 8 | by who is on the lit hold and who is within an organizational |
| 02:34:02 | 9 | chart.  And to the extent that those are still issues, which |
| 02:34:08 | 10 | we are trying to resolve, once those are behind us, I am |
| 02:34:12 | 11 | amenable to that. |
| 02:34:14 | 12 | MR. EIMER:  I think we've solved the issue of the lit |
| 02:34:16 | 13 | hold.  I think there was some discussion. |
| 02:34:16 | 14 | MR. MOGIN:  Well -- |
| 02:34:16 | 15 | MR. EIMER:  -- and I think that he will now have |
| 02:34:18 | 16 | access to the lit holds from all of the defendants along with |
| 02:34:22 | 17 | the titles of the people on the lit hold. |
| 02:34:24 | 18 | MR. MOGIN:  I could be mistaken.  I think some of my |
| 02:34:26 | 19 | colleagues who have responsibility for individual defendants |
| 02:34:28 | 20 | are also going on ongoing discussions about organizational |
| 02:34:34 | 21 | charts. |
| 02:34:36 | 22 | MR. MAROVITZ:  Temple-Inland is in a different |
| 02:34:38 | 23 | position on the lit hold, so I want the record to be clear -- |
| 02:34:42 | 24 | MR. EIMER:  Only because they sent it to everybody in |
| 02:34:44 | 25 | the company. |

02:34:48 1    MR. MAROVITZ:  We have talked about this before,

02:34:50 2  Judge.

02:34:50 3    MR. RASHID:  Your Honor, sorry to interrupt again.

02:34:50 4  This is Mr. Rashid from Quinn Emanuel.  If defense counsel

02:34:56 5  could just speak up a little bit more.  I can hear your Honor

02:34:58 6  perfectly well, I can hear Mr. Mogin and plaintiffs' counsel

02:35:02 7  perfectly well, but I am still having trouble picking up.

02:35:04 8    THE COURT:  Okay.  Thank you for letting us know

02:35:08 9  that.

02:35:08 10    MR. FREED:  So I think the suggestion is okay --

02:35:10 11  Michael Freed.  I think the suggestion is okay, but I think we

02:35:12 12  need to sort of get all of the available source material we

02:35:14 13  can before we make that suggestion as to additional

02:35:18 14  custodians.

02:35:20 15    MR. EIMER:  We agree with that.

02:35:22 16    THE COURT:  That's too early.  That doesn't -- who is

02:35:28 17  this?  Who just joined the conference?

02:35:34 18    MS. McLEMORE:  Judge, it's Mary McLemore from

02:35:36 19  Georgia-Pacific.

02:35:36 20    THE COURT:  Oh, hi, Ms. McLemore.

02:35:36 21    MS. McLEMORE:  Hello.

02:35:38 22    THE COURT:  Are you at the airport?

02:35:40 23    MS. McLEMORE:  I am at the airport, and I missed the

02:35:44 24  early flight, so I am now waiting for the next one.

02:35:46 25    THE COURT:  That's good for us.  You can join us.

02:35:48 1   Good.  There is a gentleman, Mr. Rashid is on the phone also.

02:35:54 2           MS. McLEMORE:  Okay.  Thank you.  I am going to put

02:35:58 3   you guys on mute so you don't have to hear the background

02:36:02 4   noise.

02:36:02 5           THE COURT:  We will go back in a minute.  We have

02:36:04 6   done two different proposals on the request to produce.  We

02:36:08 7   will circle back to that.  We will let you know that in a

02:36:10 8   minute.  No decision was made.

02:36:12 9           Now we are talking about what the second issue is,

02:36:16 10  and it was -- Mr. Eimer began by saying what custodians have

02:36:24 11  to be searched, and now we are hearing from Mr. Freed whether

02:36:30 12  this issue is actually revved up to go now or we need to do

02:36:32 13  this a couple months from now.  Am I right, Mr. Freed?

02:36:38 14          MR. FREED:  You are, your Honor.  I would say it's

02:36:40 15  right in between.  We should be able to tee it up or reach

02:36:42 16  resolution faster than a couple of months, but it's not quite

02:36:46 17  ready yet.

02:36:46 18          MR. EIMER:  I think this should be within the time

02:36:48 19  frame that your Honor is here.  I don't see us needing any

02:36:52 20  more time than that.

02:36:52 21          THE COURT:  Tell me what the plaintiffs want to do,

02:36:54 22  tell me what you need to do in order so that you can say, Here

02:36:58 23  is what we need.

02:36:58 24          MR. FREED:  Just resolve any outstanding issues about

02:37:02 25  organizational chart production because some defendants say

02:37:04  1    they don't have organizational charts so we are getting the

02:37:08  2    information in a different way.  Some say that they have given

02:37:12  3    us organizational charts, and they are probably right, but

02:37:14  4    because of this problem we were having about what they

02:37:18  5    objected but produced, so we just need to get to all the

02:37:20  6    source material.  Once we have done that, we will do what he

02:37:24  7    suggests, give him the names of some additional custodians.

02:37:28  8    And we did that recently with Mr. Hannan.  We worked that out

02:37:32  9    in court that way.

02:37:34  10         THE COURT:  So the way this motion would go, you

02:37:38  11   would make a demand on each of the defendants, if need be.

02:37:42  12         MR. FREED:  Yes.

02:37:42  13         THE COURT:  And say, Mr. Eimer, here are the 20 more

02:37:48  14   custodians.  Mr. Eimer might say, Here you go.

02:37:52  15         MR. FREED:  Yeah.

02:37:52  16         THE COURT:  Or he may say, I'm giving you five, I'm

02:37:54  17   not giving you 15.

02:37:56  18         MR. FREED:  Precisely.  And we will get to that

02:38:00  19   pretty soon.

02:38:02  20         THE COURT:  That's fine, and then we can put

02:38:04  21   something in place.  But that's a good head's up for us that

02:38:06  22   that may be coming.

02:38:08  23         MR. EIMER:  Right.

02:38:08  24         THE COURT:  Next issue?

02:38:08  25         MR. EIMER:  I think we should set a schedule for that

02:38:12  1  so we can keep it within your Honor's time frame.  And I don't

02:38:16  2  think either of us disagree about having a schedule.  We may

02:38:18  3  not agree on what it is, but I think we both agree that this

02:38:22  4  can be done in the near term.

02:38:22  5      THE COURT:  Well, I think part of it is, I mean, the

02:38:24  6  opening -- I know how to set the schedule.  I can set the

02:38:28  7  schedule, but I don't know when the plaintiffs will know

02:38:32  8  because they're still -- how many more -- I mean, what time do

02:38:36  9  you think you need in order to do this?

02:38:38  10      MR. EISNER:  If we could hammer out the issue of the

02:38:50  11  litigation holds in the beginning of next week, hopefully.

02:38:50  12      MR. EIMER:  Right.

02:38:52  13      MR. EISNER:  So two weeks.

02:38:54  14      MR. EIMER:  So two weeks, they will have the demand

02:38:56  15  to us.

02:38:56  16      THE COURT:  Fourteen days.  So, Chris, 14 days from

02:39:00  17  today, plaintiffs' demand -- not demand, but list of

02:39:12  18  additional custodians.

02:39:12  19      MR. EIMER:  Then we'd like a week to respond and then

02:39:16  20  they can file their motion.

02:39:16  21      THE COURT:  What would the week be, Chris?

02:39:22  22      MR. CAMPBELL:  August 3rd.

02:39:36  23      THE COURT:  And defendants one week to respond, and

02:39:40  24  then defendants are going to file --

02:39:44  25      MR. EIMER:  Plaintiffs would file a motion to compel,

02:39:46    1    and I think Mr. Freed and I just discussed August 10th for his

02:39:50    2    motion.

02:39:50    3         THE COURT: Okay. And one week for your response,

02:39:52    4    how about that?

02:39:54    5         MR. EIMER: That's fine.

02:39:54    6         THE COURT: 8/17. Okay.

02:39:58    7         And if somebody says, Let's do it without replies

02:40:02    8    unless something is so outrageous that you need to file a

02:40:06    9    reply.

02:40:06   10         MR. EIMER: We'd like to cut the number down.

02:40:10   11         MR. FREED: I would say on this issue, I don't think

02:40:10   12    a reply --

02:40:12   13         THE COURT: I don't think so either. This is very

02:40:14   14    doable. This gives us 30 days. So that's good. I like that.

02:40:20   15         MR. EIMER: The other issue that I think we both

02:40:22   16    agree needs to be teed up is the time period.

02:40:24   17         THE COURT: Yes. Now, here's what -- okay. I have

02:40:30   18    been faking it out here on the time period. Are we talking

02:40:34   19    about -- I was under the impression that the dispute was --

02:40:44   20    there was a dispute -- this comes up in the requests to

02:40:48   21    produce. The plaintiffs for certain data want to go back to

02:40:54   22    2000, right?

02:40:56   23         MR. EIMER: Right.

02:40:56   24         THE COURT: Is that transactional data, or is that --

02:41:00   25    what is it?

02:41:00  1    MR. McKEOWN:  Your Honor, I believe that the -- back

02:41:06  2  to 2000, the issue there is for the transactional data as

02:41:08  3  distinguished from the conduct where the plaintiffs would like

02:41:12  4  us to go back to January 1st, 2003, and the defendants have

02:41:16  5  already agreed to go back to January 1, 2004.

02:41:20  6    MR. MOGIN:  The original request, your Honor, was for

02:41:24  7  January 1, 2002, so the 2003 was an accommodation.

02:41:28  8    THE COURT:  Okay.  Do you both agree transactional to

02:41:32  9  2000?

02:41:34  10    MR. McKEOWN:  I don't believe so.  I think that's

02:41:34  11  still an issue as well.

02:41:36  12    THE COURT:  Okay.

02:41:38  13    MR. FREED:  On that, your Honor, we can file --

02:41:40  14  because some of these were briefed all the way back to Judge

02:41:44  15  Shadur.

02:41:44  16    THE COURT:  Right.

02:41:44  17    MR. FREED:  Or at least partially briefed.

02:41:46  18    THE COURT:  Right.

02:41:46  19    MR. FREED:  So on this one, we can certainly get a

02:41:50  20  brief on file if the court sets a briefing schedule within two

02:41:54  21  weeks.

02:41:54  22    THE COURT:  Good.  All right.  Two weeks from today.

02:41:56  23    MR. CAMPBELL:  That's the 27th.

02:41:58  24    THE COURT:  27th.  Okay.

02:42:00  25    Are you fellows -- or ladies and gentlemen, are you

02:42:04  1   going to file one brief with individual sections?  Are you

02:42:10  2   filing -- have you talked about that?  Are you filing seven

02:42:16  3   separate on something like this issue?  Not on all issues.

02:42:22  4            MR. EIMER:  I think we would try to consolidate it,

02:42:26  5   but there may be individual issues as we address it, and we

02:42:28  6   will have to deal with that in a separate section within the

02:42:30  7   same brief, if we could.

02:42:32  8            THE COURT:  Don't you think that might be easier?

02:42:34  9            MR. EIMER:  Yes.

02:42:34  10           THE COURT:  And just each put your -- and then they

02:42:36  11  can deal with all -- then they'd have all seven together.

02:42:40  12           MR. FREED:  So on this one, we would want a reply

02:42:42  13  because of that.

02:42:44  14           THE COURT:  Yes, I agree.  I agree.

02:42:50  15           I want to say this in general because I haven't -- if

02:42:56  16  burdensomeness and cost is a real issue, which I know you

02:43:02  17  would only raise it if it is, or on this if it's active or

02:43:06  18  inactive or whatever the heck it might be, you have to give

02:43:12  19  specific -- I am very strict on burdensomeness.  If you are

02:43:18  20  going to allege burdensomeness, I need to know what that

02:43:22  21  means.  Okay?

02:43:22  22           MR. EIMER:  Fair enough.

02:43:24  23           THE COURT:  Very concrete.

02:43:26  24           MR. EIMER:  Thank you.  Could we have two weeks to

02:43:28  25  respond to that?

02:43:28  1    THE COURT:  So you are going to take two weeks to do

02:43:30  2  it?  Okay.

02:43:32  3    Chris, what was the date on the plaintiffs' brief on

02:43:34  4  timing?

02:43:36  5    MR. CAMPBELL:  Plaintiffs' motion 7/27.

02:43:38  6    THE COURT:  And defendants'?

02:43:40  7    MR. CAMPBELL:  That would be August 10th.

02:43:42  8    THE COURT:  August 10th.

02:43:44  9    MR. MOGIN:  Your Honor, if defendants are going to be

02:43:46  10  putting in detailed information about burden, we will

02:43:48  11  obviously need a reply.

02:43:48  12    THE COURT:  You will.

02:43:50  13    MR. MOGIN:  And we may -- I hate to use the D word,

02:43:52  14  but...

02:43:54  15    THE COURT:  What?

02:43:54  16    MR. MOGIN:  Some form of discovery verification of

02:43:58  17  whatever facts they put in might be required.  I don't know

02:44:00  18  what they are going to put in at this point.

02:44:04  19    MR. EIMER:  Why don't we address that if need be

02:44:06  20  later?

02:44:06  21    THE COURT:  I have burden all the time.  I mean,

02:44:08  22  that's why I want it completed.  Sometimes people put

02:44:16  23  affidavits in.  You can throw somebody's case out on an

02:44:18  24  affidavit, you should certainly be able to do other things on

02:44:22  25  an affidavit.

02:44:22   1        If it isn't, we will deal with it when we get to it.

02:44:24   2  Okay?

02:44:24   3        MR. EIMER:  Fair enough.

02:44:26   4        THE COURT:  Two weeks?  Do you want two weeks to

02:44:28   5  reply?

02:44:28   6        MR. FREED:  Yes.

02:44:28   7        THE COURT:  That's fine.  That's fine.

02:44:32   8        August what?

02:44:34   9        MR. CAMPBELL:  24.

02:44:34  10        THE COURT:  August 24th.  You got it.

02:44:36  11        Telephone, can you hear me on these dates?  Chris is

02:44:40  12  going to do a written order too.  Okay.

02:44:46  13        MR. RASHID:  I got it.

02:44:48  14        THE COURT:  Feel free to pipe up if you need any

02:44:50  15  clarification.  Okay?

02:44:52  16        MR. RASHID:  Thank you, your Honor.

02:44:52  17        THE COURT:  Good.  Two issues.

02:44:54  18        MR. EIMER:  We're rolling.

02:44:56  19        THE COURT:  We are on a roll.  Keep going, Mr. Eimer.

02:44:58  20        MR. EIMER:  I think we just agreed to the next one.

02:45:00  21  We have different names for it, but I hope that -- I call it

02:45:02  22  backup tapes and other electronic media, Mr. Freed calls it

02:45:04  23  data sources, I think; but the idea is we need to search

02:45:08  24  backup tapes and other electronic media that are, we think,

02:45:14  25  inaccessible or not readily accessible.

02:45:16  1    THE COURT:  On this one.  Okay.  Now, are you really

02:45:26  2  ready to do this?  I mean, this is your burden on this one,

02:45:34  3  the plaintiffs' burden, if they are.

02:45:36  4    Now, other media, I don't think this should come in

02:45:38  5  the same motion.

02:45:42  6    MR. EIMER:  Well, I agree with you.

02:45:42  7    THE COURT:  Because not readily accessible is their

02:45:48  8  burden.

02:45:50  9    MR. EIMER:  Right.  And to me, it's only not readily

02:45:52  10  accessible.  That's the issue here.

02:45:54  11    So I called it backup tapes, he had it other sources,

02:45:56  12  but to me it's the backup tape issue.

02:45:58  13    MR. MOGIN:  I'm sorry, your Honor.  Isn't it their

02:46:02  14  burden to establish that something isn't readily accessible?

02:46:04  15    THE COURT:  No.  It's yours to show -- I mean, that's

02:46:06  16  what I believe is.  If you make a request upon them and they

02:46:12  17  say it's on a backup tape -- now, people call this different

02:46:16  18  things.  You know, is it archived, is it whatever.  Then the

02:46:20  19  burden is on you, the burden is on the moving party I believe

02:46:28  20  clearly under the rule to establish your need for it, that

02:46:34  21  there isn't anyplace else you could get it.

02:46:38  22    The only reason I am saying that -- I am not making

02:46:42  23  any NRA ruling, is do you have enough information right now to

02:46:44  24  make that request is what I am saying.

02:46:48  25    MR. MOGIN:  I think I misunderstood what you were

02:46:50  1    saying.  It's their burden to demonstrate that something is

02:46:52  2    not readily accessible.  It's our burden to demonstrate some

02:46:56  3    form of need.  I think that's what you just said.

02:46:58  4         THE COURT:  Well, it's need and all the other

02:47:02  5    factors.  I mean, all they have to do is say it's on a backup

02:47:06  6    tape.  I mean, they say -- if they were to say, All of our

02:47:12  7    material from 2000 is on backup tape.  I don't know how this

02:47:18  8    is going to come up.  It usually comes up in specific context.

02:47:22  9    I mean, it's not -- I mean, Mr. McKeown, have you ever seen

02:47:26  10   this like theoretically come up?

02:47:28  11        MR. McKEOWN:  I am not sure that I have, your Honor.

02:47:30  12        THE COURT:  I mean, it usually comes up in a -- we

02:47:38  13   want the dates to go back to 2000, and each of you have got

02:47:42  14   different systems on what's on active data and what's on

02:47:48  15   backup data.

02:47:48  16        MR. EIMER:  Right.

02:47:50  17        THE COURT.  So that's why their responses may be

02:47:52  18   different on the timing.

02:47:56  19        MR. McKEOWN:  It is related, your Honor, to the

02:47:58  20   question earlier on the timing scope, as you were saying.  But

02:48:00  21   to the extent both are custodians --

02:48:02  22        THE COURT:  And correct me -- you are not going to

02:48:04  23   insult me.  Correct me if I'm wrong.  I think once you say

02:48:06  24   it's on the backup tapes, then it's on them to show it is then

02:48:12  25   -- it is their burden.  I will pull it off the rule.

02:48:16  1          MR. EIMER:  We agree.

02:48:16  2          THE COURT:  It's your burden to show why you need it,

02:48:20  3  why you can't get it anywhere else.  Charles is going to help

02:48:28  4  us out.

02:48:28  5          MR. GOODWIN:  I just have the text of the rule of --

02:48:32  6          THE COURT:  Okay.  Good.  Read it to us.

02:48:34  7          MR. MOGIN:  A party may not provide discovery of

02:48:38  8  electronically-stored information from sources that the party

02:48:40  9  identifies is not reasonably accessible because of undue

02:48:42  10  burden or cost.

02:48:44  11          THE COURT:  Okay.

02:48:46  12          MR. MOGIN:  On a motion to compel discovery or for a

02:48:48  13  protective order, the party from whom discovery is sought must

02:48:52  14  show that the information is not reasonably accessible because

02:48:56  15  of undue burden or cost.  If that showing is made, the court

02:49:00  16  may nonetheless order discovery from such sources if the

02:49:02  17  requesting party shows good cause, considering the limitations

02:49:06  18  of Rule 26(b)(2)(c), the court may specify conditions for

02:49:12  19  discovery.

02:49:14  20          And just so that it's clear, I was reading from Rule

02:49:30  21  26(b)(2)(b), specific limitations on electronically-stored

02:49:32  22  information

02:49:34  23          THE COURT:  And this is the first time we have come

02:49:34  24  up with the not reasonably accessible.  We haven't had this

02:49:40  25  issue in the case.

02:49:40   1         MR. EIMER: Right.

02:49:42   2         THE COURT: So I am glad it came up because this

02:49:46   3 is -- now, here's a real meet and confer. I mean, before you

02:49:52   4 start down the road on time scope, you need a quick meet and

02:49:56   5 confer because if this is all on backup tapes or something,

02:49:58   6 you don't want to be briefing the whole darn issue until you

02:50:04   7 first talk about what's there.

02:50:08   8         MR. EIMER: Right. I think --

02:50:10   9         THE COURT: I think you've got time to do that in

02:50:14  10 between here.

02:50:14  11         MR. EIMER: Well, they have had some discovery

02:50:16  12 already of our systems through the 30(b)(6) and the letters

02:50:20  13 that were written.

02:50:20  14         THE COURT: That's true.

02:50:22  15         MR. EIMER: They are a long way into our systems

02:50:24  16 already. They understand our systems. I think there was some

02:50:26  17 discussion whether we would produce additional transactions,

02:50:30  18 anything that were still ongoing. What I suggest, your Honor,

02:50:30  19 is we go into the same briefing schedule we had for time

02:50:34  20 period, which puts the plaintiffs two weeks out.

02:50:36  21         THE COURT: Okay.

02:50:36  22         MR. EIMER: If there's some discussion we can have in

02:50:38  23 that period, we would be glad to resolve as much as we can.

02:50:42  24         MR. FREED: I would only ask on this one that we be

02:50:46  25 given an extra week on the reply because it's they come up

02:50:50   1   with the detailed -- we have already again briefed this --

02:50:52   2           THE COURT:  You say same briefing schedule.

02:50:54   3           MR. FREED:  Two, two, three.

02:50:58   4           THE COURT:  Two, two -- three?

02:50:58   5           MR. FREED:  Yes, because on this one, we are going to

02:51:00   6   be responding perhaps to seven different positions.

02:51:06   7           THE COURT:  You may not.  It may not even be

02:51:10   8   unreasonably accessible.

02:51:12   9           MR. FREED:  You're right.

02:51:12   10          THE COURT:  But this is going to flesh out what's on

02:51:14   11  backup tapes.

02:51:14   12          MR. FREED:  Yes.

02:51:16   13          THE COURT:  This is going flesh out the overarching

02:51:20   14  issue of what's on backup tapes.

02:51:22   15          MR. MOGIN:  May I make a suggestion, please, your

02:51:24   16  Honor?

02:51:24   17          THE COURT:  Yes.

02:51:24   18          MR. MOGIN:  With respect to this motion, after the

02:51:26   19  defendants file their response, perhaps before the plaintiffs

02:51:30   20  charge off and do a reply, we should have a conference with

02:51:32   21  the court.

02:51:34   22          THE COURT:  I think so too.  I think this would be a

02:51:36   23  great one to have a conference on.

02:51:38   24          MR. EIMER:  That's fine.

02:51:38   25          MR. MOGIN:  It may prove to be, your Honor, that we

02:51:40   1   are incapable of litigating the motion until defendants have,

02:51:44   2   in fact, pleaded their productions, and that's an issue that

02:51:48   3   we won't know until they file it.

02:51:50   4           THE COURT:  And we see what the heck it is, whether

02:51:52   5   it's worth it or not.

02:51:54   6           MR. EIMER:  I think we should keep the briefing

02:51:54   7   schedule in place.

02:51:56   8           THE COURT:  Yes.

02:51:56   9           MR. EIMER:  But having a conference --

02:51:58   10           THE COURT:  I want to have a conference in between

02:52:00   11   here anyway.

02:52:02   12           Chris, what's our dates on this one?

02:52:08   13           MR. CAMPBELL:  Plaintiffs' motion is July 27th.

02:52:10   14   Response is August 10th.

02:52:12   15           THE COURT:  Mr. Mogin was saying after the response.

02:52:20   16           MR. MOGIN:  But then I have my 12th through 24th time

02:52:24   17   period.

02:52:24   18           THE COURT:  All right.  But that's okay.  We can hold

02:52:26   19   off -- we could just hold off on the reply until after the

02:52:30   20   conference.  Okay.  I think that's a good idea.

02:52:36   21           Let's just keep going with these issues.  I don't

02:52:38   22   want to get off these issues.

02:52:42   23           MR. EIMER:  Your Honor, Mr. Marovitz, in the interest

02:52:44   24   of efficiency and reducing a lot of paper we submit, was

02:52:46   25   wondering whether when we respond on the 10th, could we submit

02:52:48  1  a consolidated paper with the time period brief and the

02:52:48  2  backup --

02:52:52  3  MR. MAROVITZ:  If it's efficient.  If it makes sense.

02:52:56  4  MR. EIMER:  I haven't thought about this brief,

02:52:56  5  but --

02:52:58  6  MR. MAROVITZ:  There are some relationships between

02:52:58  7  the two issues, so it may be most efficient for us just to put

02:53:02  8  them all together.  It may not be.

02:53:06  9  THE COURT:  Well, we were looking -- Chris came from

02:53:08  10  Mr. Mogin's neck of the woods, so when we thought we were

02:53:12  11  going to have this horrendous request to produce in -- the

02:53:16  12  Central District of California has this consolidated way they

02:53:18  13  do motions where parties -- a court gets one document, and

02:53:26  14  that even has plaintiff and then defendants' response.

02:53:32  15  And so we were -- so we are kind of -- we are not

02:53:34  16  doing that because, fortunately, you saved me from 600-plus

02:53:40  17  requests to produce at the moment.

02:53:42  18  But, yes, so you can experiment with that, whatever

02:53:48  19  is kind of working for you, cutting down extra repetition.

02:53:54  20  MR. EIMER:  Exactly.

02:53:54  21  THE COURT:  If you want to do one on the law, if

02:53:58  22  somebody would take the law and say, Here's the law we're

02:54:02  23  relying on, that will help all of us.

02:54:04  24  MR. EIMER:  Okay.

02:54:04  25  THE COURT:  And if you can't, in fairness to your

02:54:06    1    client, then you have my permission to file a separate one.

02:54:10    2    Okay?

02:54:10    3          MR. EIMER:  We are going to try to put it together as

02:54:12    4    much as we can.

02:54:12    5          THE COURT:  Do you guys have any problem with that,

02:54:14    6    if they try to consolidate it?

02:54:16    7          MR. FREED:  No, no, if it turns into a consolidated

02:54:20    8    brief of 60 pages, and I don't know if it will won't, we might

02:54:26    9    ask for --

02:54:26   10          THE COURT:  You don't have to worry.  That's not an

02:54:28   11    issue.

02:54:28   12          MR. EIMER:  It's not to increase our page limit.

02:54:30   13          THE COURT:  Right, but it just might be easier.

02:54:32   14          MR. EIMER:  Right.

02:54:34   15          Then the next issue we had was the indexing issue, to

02:54:36   16    see whether we are required to index the documents that we

02:54:40   17    actually produce and trace them back to the request.

02:54:46   18          THE COURT:  Now, they have quite a motion.  They have

02:54:48   19    a motion I looked at not too long ago.  Isn't that one

02:54:50   20    pending?

02:54:52   21          MR. EIMER:  I don't think so?

02:54:56   22          MR. CAMPBELL:  No.

02:54:56   23          THE COURT:  It was in the status report.

02:54:58   24          MR. EIMER:  It was in the status report.

02:55:00   25          THE COURT:  It was in the status report to Judge

02:55:02  1   Shadur.

02:55:02  2        MR. EIMER:  So I think they should formalize it now

02:55:06  3   into a motion.  I am glad to do it under the same briefing

02:55:08  4   schedule we have for time period.

02:55:08  5        MR. MOGIN:  We'd like to see the revised Rule 34

02:55:14  6   responses before we know whether we have to go to that next

02:55:16  7   step.

02:55:18  8        MR. EIMER:  You have the IP --

02:55:20  9        THE COURT:  I haven't decided yet.  I haven't decided

02:55:24  10  on whether we are going to start with Mr. McKeown's -- would

02:55:36  11  you need for the index -- I mean the indexing -- here's a

02:55:42  12  question I have.  Indexing issue, even if each of them exactly

02:55:50  13  did Mr. McKeown's, which nobody has agreed to do, which is not

02:55:54  14  on the table at the moment, do you need indexing of Mr.

02:55:58  15  McKeown's?

02:56:00  16       MR. MOGIN:  I don't know the answer to that, your

02:56:00  17  Honor.

02:56:02  18       THE COURT:  Okay.  So really the indexing motion,

02:56:08  19  until I decide -- I think we can't set this today.  Chris can

02:56:14  20  send you a briefing -- I mean, I have to decide if plaintiffs

02:56:18  21  want me to not just do Mr. McKeown's, they want me to order

02:56:22  22  each of the defendants to submit --

02:56:32  23       MR. EIMER:  I believe, your Honor, that it's

02:56:34  24  basically a legal question.  If you are going to order, for

02:56:36  25  instance, IP to index its documents, I think the result is

02:56:40  1   going to be the same for everybody.

02:56:40  2            THE COURT:  But they are saying they might not need

02:56:42  3   it.

02:56:44  4            MR. EIMER:  That's what I am saying.  If we give them

02:56:46  5   the index and that resolves the indexing issue as to IP, I

02:56:50  6   think it would resolve it to everybody if they agree to do the

02:56:52  7   same thing we do.

02:56:54  8            So if he answers that question in the affirmative,

02:56:56  9   Yes, it resolves indexing and we are done, that's fine.  If it

02:57:00  10  doesn't, then let him file a motion against IP and hear legal

02:57:04  11  ruling, we will essentially decide it for everybody.

02:57:08  12           MR. MOGIN:  To quote the defendants, your Honor, why

02:57:10  13  should we do this on a theoretical basis?  Let's see what

02:57:12  14  actually exists.

02:57:14  15           THE COURT:  No.  This is -- I mean, is Mr. McKeown --

02:57:20  16  is Jim giving you anything new that he didn't give you?  Are

02:57:26  17  you giving them something different than you've given them

02:57:30  18  already?

02:57:30  19           MR. McKEOWN:  Well, the one item that we agreed to

02:57:32  20  earlier today, your Honor, was to take that information and

02:57:36  21  transform it into modified responses to the formal requests

02:57:40  22  and our objections.

02:57:42  23           MR. EIMER:  But it's the same information.

02:57:44  24           MR. McKEOWN:  It's the same information.

02:57:46  25           MR. EIMER:  We are glad to do it, and we are glad to

02:57:50　1　do it in a week.  It's not going to take very long.

02:57:52　2　　　THE COURT:  Right.  So you need to see it before you

02:57:54　3　can answer if you are going to still need indexing.

02:57:58　4　　　MR. FREED:  But here is the rub.  The IP reformatting

02:58:04　5　will be done, your Honor may rule, the understanding is let's

02:58:08　6　say you agree with us that there should be some further

02:58:12　7　disclosure, the others will be guided by it, but we will now

02:58:16　8　be starting off with their version, and it just seems to me

02:58:20　9　that that's really not an efficient way to do it.  We should

02:58:24　10　have all the versions in front of us for one time.

02:58:28　11　　　MR. McKEOWN:  Except that if it's going to be

02:58:30　12　efficient to do them and it's gathered by one; otherwise, what

02:58:36　13　you're suggesting is there are going to be seven different

02:58:40　14　decisions the first time.  And at least I think there will be

02:58:42　15　some guidance, even if you don't think it's complete across

02:58:46　16　all defendants, to have the issue teed up first.

02:58:48　17　　　MR. EIMER:  Well, and the plaintiffs' position was as

02:58:50　18　a matter of law under the federal rules, because we didn't

02:58:50　19　produce in the ordinary course, as they say, which we think we

02:58:54　20　did, they are entitled to an index as a matter of law under

02:58:58　21　the rules.  Well, either they are or they aren't.

02:59:00　22　　　THE COURT:  So you think it is ready.

02:59:02　23　　　MR. EIMER:  I think it is ready.  I don't see what

02:59:04　24　needs to be done.  If they want our index -- our responses,

02:59:06　25　that's fine.  We are glad to give them our responses.  But I

02:59:10 1  would do it on the same schedule we have again for everything

02:59:12 2  else.  They can file their brief on the 27th, that's two weeks

02:59:16 3  from now.  They can write their brief.  They have a very

02:59:20 4  simple legal motion.  They have essentially keyed it up in

02:59:22 5  front of Judge Shadur.  It hasn't changed.

02:59:26 6          MR. FREED:  We thought we were doing --

02:59:28 7          THE COURT:  I know.

02:59:28 8          MR. FREED:  -- them a favor.

02:59:28 9          THE COURT:  I thought so too.

02:59:30 10          MR. FREED:  But if they want to do it on the basis of

02:59:36 11  the formalistic law with respect to indexing, we are prepared

02:59:40 12  to do that.  We think the law is very strongly on our side on

02:59:44 13  that.  We thought there might be a pragmatic way to avoid it

02:59:48 14  if we could make progress --

02:59:48 15          MR. EIMER:  We tried to do that, and we were prepared

02:59:50 16  to do that.  That's why we were redoing our responses.  If

02:59:54 17  that satisfies, then that's fine.

02:59:56 18          THE COURT:  I need to talk to Chris, frankly, on the

02:59:58 19  first issue.  So we will give -- we will decide the timing of

03:00:04 20  the indexing.  It's not going to be far off.

03:00:08 21          MR. FREED:  That's fine.

03:00:08 22          MR. EIMER:  Thank you, your Honor.

03:00:10 23          THE COURT:  Indexing for us is coupled into the first

03:00:14 24  issue.

03:00:16 25          MR. EIMER:  And then the last issue I have on my list

03:00:20 1   is in the scope of RFP, you and Chris are going to work on it

03:00:24 2   later and notify us, right?

03:00:26 3           THE COURT:  Right, I am.

03:00:26 4           MR. EIMER:  The last issue I have on my list is the

03:00:28 5   search methodology question.  So is the methodology we use,

03:00:32 6   not that our search is perfect and our production is great,

03:00:36 7   but, Judge, is it reasonable -- is it a reasonable methodology

03:00:38 8   to use Boolean searches, or do we have to use concept-based

03:00:44 9   searching?

03:00:44 10           THE COURT:  So you are not saying -- wait.  You're

03:00:50 11   saying is the search methodology that was used in this case

03:00:54 12   reasonable?

03:00:56 13           MR. EIMER:  Yes.  I am not saying that the search is

03:01:00 14   perfect and that we don't have to search other places or even

03:01:04 15   that our terms are the best terms we should have used.  The

03:01:08 16   search terms might be modified.  We are not asking that.  The

03:01:12 17   plaintiffs have said that in this case, we should use

03:01:14 18   concept-based searching.  Either they withdraw that concept

03:01:18 19   and say, We will work with Boolean searching, or we'd like it

03:01:22 20   decided now that Boolean searching in this case is a

03:01:24 21   reasonable method for searching because we don't want to have

03:01:28 22   to redo this a year from now or who knows when when somebody

03:01:32 23   decides they want to raise it again.

03:01:34 24           So your Honor has already heard some testimony on

03:01:38 25   this.  That may be enough for the court.  Plaintiffs' counsel

03:01:40  1  seemed to say they want to take some more evidence in.  We'd

03:01:44  2  like to do that and get that done.

03:01:48  3         THE COURT:  Mr. Mogin, you are the one that raised

03:01:54  4  this issue, so what way do you and your fellow lawyers think

03:02:00  5  this should be teed up?

03:02:02  6         MR. MOGIN:  If what the defendants are asking for,

03:02:04  7  your Honor, is some sort of finding or some sort of order that

03:02:08  8  their search was reasonable, whatever the parameters of that

03:02:14  9  are, I am a little uncertain, but whatever the parameters of

03:02:18  10 that are, you know, they're the ones that requested the

03:02:22  11 evidentiary hearing, so I don't know how we can get to that

03:02:26  12 finding without going to the trouble of completing the

03:02:30  13 evidentiary hearing.  And what we will argue at the conclusion

03:02:34  14 of the evidentiary hearing that notwithstanding Sedona 6 or

03:02:38  15 other principles of that nature since that isn't exactly the

03:02:42  16 law, we would -- that this case and defendants' actual

03:02:48  17 methodology that was used is noncompliant and requires a

03:02:56  18 deviation from that principle.

03:03:00  19        MR. EIMER:  We are prepared to do that.  We looked at

03:03:02  20 your Honor's schedule, and we think that a hearing can be held

03:03:04  21 on September 4th.  We would propose that to finish the hearing

03:03:08  22 and then a short briefing schedule.

03:03:22  23        THE COURT:  Can't we take one of those August dates?

03:03:26  24        MR. EIMER:  I'd like to, but I think we have problems

03:03:28  25 the witness who needs to be cross-examined.

03:03:30　1　　　　THE COURT:  Who is it, Dan Regard?  He can't get

03:03:32　2　here?

03:03:32　3　　　　MR. MAROVITZ:  He is available during the weeks that

03:03:34　4　Mr. Mogin is out.

03:03:36　5　　　　MR. EIMER:  Right.  There's two weeks that Mr. Mogin

03:03:38　6　is on vacation in August, assuming he wants to block those

03:03:40　7　out.

03:03:42　8　　　　THE COURT:  I am sure he does.

03:03:42　9　　　　What about that last week in August?

03:03:52　10　　　　MS. MILLER:  He has a conflicting obligation, your

03:03:54　11　Honor.

03:03:54　12　　　　MR. MOGIN:  Your Honor, I would have to check with

03:03:58　13　Dr. Tenny.

03:03:58　14　　　　THE COURT:  I am -- this is so hard on the court

03:04:04　15　reporter, this is so hard on everybody.

03:04:06　16　　　　MR. EIMER:  Understood.  We don't want to have to do

03:04:10　17　this over again.

03:04:10　18　　　　THE COURT:  No, I don't either.  I don't either.

03:04:12　19　This time we are starting at 7:00 o'clock in the morning.  I

03:04:16　20　mean, we are also putting time limits on people because what

03:04:20　21　happened before.  And we are going to have oral argument

03:04:24　22　after, maybe no briefing, we are going to have oral argument,

03:04:28　23　and I can't do much else other than that.

03:04:32　24　　　　MR. EIMER:  Right.  We are fine.

03:04:32　25　　　　THE COURT:  You can do prehearing briefing, we can --

03:04:40   1       MR. EIMER:  We are glad to do prehearing briefing.

03:04:42   2  Essentially, the evidence is in, from our perspective.

03:04:44   3       THE COURT:  So September 4th works with you.

03:04:46   4       Oh, you don't know when Mr. Tenny and Dr. Lewis.  You

03:04:56   5  have to go call them.

03:04:56   6       MR. EIMER:  If they can come in on another day in

03:04:58   7  August, we'll do it in two steps.  That's fine.

03:05:00   8       THE COURT:  The last week in August, we could do

03:05:02   9  Dr. Lewis and Dr. Tenny.  I am willing to do that.

03:05:08  10       I don't need this in order.  I really do not need it

03:05:12  11  in order.

03:05:16  12       MR. MOGIN:  I agree.

03:05:16  13       THE COURT:  I would like to hold this issue to the

03:05:30  14  facts of this case.

03:05:30  15       MR. MOGIN:  Absolutely.

03:05:32  16       MR. EIMER:  Absolutely.

03:05:32  17       THE COURT:  That's what I would like to do.

03:05:34  18       MR. EIMER:  Right.  We don't need to satisfy the

03:05:38  19  blogosphere's desire to rule.

03:05:40  20       THE COURT:  We don't.

03:05:40  21       That last week in August, Mr. Mogin, I am free

03:05:44  22  Monday, Tuesday, and Wednesday.

03:05:48  23       MR. MOGIN:  I won't have much time to prepare, your

03:05:50  24  Honor, and I don't know what my witness' availability is.

03:05:56  25       MR. EIMER:  The last week in August is a month and a

03:05:58  1   half from now.

03:05:58  2       THE COURT:  Right.  At lunch, Chris and I talked.
03:06:22  3   You know, again, I don't -- and I am not saying this
03:06:28  4   cryptically, but if courts in the building use affidavits to
03:06:30  5   throw cases out, I don't know why here we couldn't have an
03:06:36  6   affidavit from Dr. Tenny.  Dr. Lewis lives right here in the
03:06:42  7   city.  He is like very simple.  In fact, he's come to most of
03:06:46  8   our hearings.  We could have him finish up.  And I know you
03:06:50  9   want to talk to Mr. Regard because you didn't ask him anything
03:06:54  10  substantive, so you need to cross-examine him on whatever
03:07:00  11  substantive part you want to talk to him about.

03:07:02  12      But we can start -- I mean, we can definitely start.
03:07:08  13  Dr. Lewis we can do any time you want.  We could do Dr. Lewis
03:07:14  14  next Wednesday, if you wanted.

03:07:16  15      MR. MOGIN:  If we could do this, your Honor.  Perhaps
03:07:18  16  next Wednesday, we could have a brief scheduling call?

03:07:20  17      THE COURT:  Sure.

03:07:22  18      MR. MOGIN:  That would give me time to speak to the
03:07:24  19  witnesses.

03:07:24  20      THE COURT:  Not this Wednesday.  A week from
03:07:26  21  Wednesday.

03:07:26  22      MR. MOGIN:  A week from Wednesday.

03:07:28  23      THE COURT:  That's a good idea.  And you can also
03:07:28  24  think if you literally -- if you are protecting your record,
03:07:42  25  if that's the reason you want to go through with the hearing,

03:07:48　1　if you could stipulate to some information, if you could file

03:07:52　2　affidavits, because I think the defendants say they don't want

03:07:56　3　to do this a second time, I don't want to do this a second

03:08:00　4　time.  This was a specific reason Judge Shadur sent it to me

03:08:04　5　was to conduct the hearing, so I feel like, you know -- the

03:08:10　6　one part, Mr. Mogin, you know, I knew you might want to go

03:08:14　7　back to the issue.  I did not think you would want to go back

03:08:18　8　to the hearing.  That I would have done earlier.

03:08:20　9　　　　　MR. MOGIN:  They are the ones that were asking for

03:08:22　10　the seal of approval, for lack of a better term, your Honor.

03:08:24　11　　　　　THE COURT:  Are you?

03:08:26　12　　　　　MR. EIMER:  No, we just don't want to have to redo

03:08:32　13　our search a year from now when Mr. Mogin raises it again.  So

03:08:32　14　if he is willing to sign off on what we did in terms of using

03:08:36　15　Boolean searches, not that the search was perfect, we don't

03:08:38　16　expect him to agree on that.  We just don't want to hear

03:08:40　17　anymore you should have used concept-based searching.  If

03:08:42　18　that's off the table, then we don't need anything.

03:08:44　19　　　　　THE COURT:  That's what I thought too, Mr. Mogin, is

03:08:48　20　-- or even if you say over your objection, I am finding -- I

03:08:54　21　mean, but -- that you cannot go back to it a year from now on

03:09:02　22　the quality of the choice, not -- you know, anybody can go

03:09:10　23　back to, Hey, we now found the smoking gun at the end of the

03:09:12　24　case, okay, whether this issue was even raised, you are not

03:09:18　25　precluded from that if something new comes up.  But in your

03:09:24   1   status report yesterday, it was one of the first things was

03:09:32   2   initially, Hey, this search is a problem. And I actually feel

03:09:38   3   like I have to redeem myself too, whatever that means with

03:09:42   4   Judge Shadur since he said, You're to decide this.

03:09:46   5        MR. MOGIN:  Recall, your Honor -- pun intended, I

03:09:50   6   guess -- that recall is, in fact, one of recall and

03:09:52   7   statistical validation were some of the issues that we were

03:10:00   8   discussing during the hearing. And you asked us, as I was

03:10:02   9   saying this morning, to put together something else, see if we

03:10:06   10  could do that within the Boolean construct. As we said this

03:10:10   11  morning, we never got a response on that except, We are not

03:10:12   12  interested.

03:10:14   13       THE COURT:  Well, I know, but that's different than

03:10:16   14  you tugging on my robe saying, Hey, Nolan, you haven't gone

03:10:22   15  back and done the validation is different than going back and

03:10:26   16  putting Dan Regard back on the stand again.

03:10:28   17       MR. MOGIN:  I am not the one who asked for the seal

03:10:30   18  of approval, your Honor. I am just saying if that's what the

03:10:34   19  defendants are asking for --

03:10:34   20       THE COURT:  Are you asking for a seal of approval?

03:10:38   21       MR. McKEOWN:  No, we are not asking for a seal of

03:10:40   22  approval. Our point is simply that we saw in the status

03:10:42   23  report from the plaintiff, we saw in the email yesterday the

03:10:44   24  suggestion that at some point down the road --

03:10:48   25       THE COURT:  Right.

03:10:48   1   MR. McKEOWN:  -- the plaintiffs may request us to go

03:10:50   2   back to predictive coding.  And if that were the case, if it

03:10:54   3   we're to come up in October --

03:10:56   4   THE COURT:  You'd rather have Nolan deciding that

03:11:00   5   than the new judge because I have spent -- no, because I have

03:11:02   6   spent one year intensively looking at the particular search in

03:11:08   7   this case.

03:11:10   8   MR. EIMER:  Exactly.

03:11:10   9   MR. McKEOWN:  And since there were witnesses at a

03:11:12   10   hearing --

03:11:14   11   THE COURT:  That I have observed.

03:11:14   12   MR. McKEOWN:  -- that you have observed, we might

03:11:16   13   have to go back and start from square one.

03:11:18   14   So all we really want is the plaintiffs to say they

03:11:20   15   are not going to come back and say they want content-based

03:11:24   16   analytics or predictive coding.  We can talk through the

03:11:26   17   process about what's satisfactory validation --

03:11:32   18   THE COURT:  I have been the one saying about

03:11:36   19   satisfactory.  I know what document you are talking about that

03:11:38   20   you didn't spend a lot of time preparing, okay, and we have

03:11:42   21   never gotten to really discuss that.  But if this is only

03:11:48   22   being done because we haven't gotten to the validation, I

03:11:52   23   don't know whether that really is worth having a hearing.

03:11:56   24   If you need to do this because you represent a class

03:12:00   25   and you need this issue for appeal, I am saying to you, could

03:12:04  1  you do the same thing on a stipulation or affidavit, or do you

03:12:06  2  really need the hearing.  That's all I am saying to you.

03:12:08  3       MR. MOGIN:  And please recall, your Honor, that this

03:12:10  4  morning you said you wouldn't put me on the spot to make a

03:12:14  5  decision about that today.  So that's one thing.  But with

03:12:16  6  respect --

03:12:18  7       THE COURT:  So we could have this on the telephone

03:12:20  8  call.

03:12:20  9       MR. MOGIN:  Yes.

03:12:20  10       THE COURT:  Because you need to talk to your people

03:12:22  11  too.  You need to talk to your people on when they can come.

03:12:26  12       MR. MOGIN:  Exactly.  With respect to the seal of

03:12:28  13  approval issue and yesterday, your Honor, it was the

03:12:32  14  defendants who submitted the proposed order --

03:12:34  15       THE COURT:  It was Mr. Neuwirth's first thing.  He

03:12:36  16  came out of the box, and I am -- which is the reason I said,

03:12:42  17  you know, I can write my own orders, but search methodology

03:12:46  18  was definitely --

03:12:50  19       MR. EIMER:  Because we needed to take it off the

03:12:52  20  table.

03:12:52  21       THE COURT:  Yes.

03:12:52  22       MR. EIMER:  Could we reserve September 4th in case

03:12:56  23  Mr. Mogin still wants a hearing?

03:12:56  24       THE COURT:  I think September 4th might not be a bad

03:13:00  25  day for us to do some cleanup stuff anyway.

03:13:02  1      MR. EIMER:  So let's keep it --

03:13:04  2      THE COURT:  Is that good?

03:13:06  3      MR. MOGIN:  No, your Honor, because I don't know the

03:13:08  4  witnesses' availability.

03:13:08  5      THE COURT:  No, what Mr. Eimer is saying, my schedule

03:13:12  6  fills up so much with settlement conferences, just hold until

03:13:18  7  we talk on the phone.  I think what he is saying is, Hold

03:13:20  8  September 4th for me.

03:13:22  9      MR. MOGIN:  All right.

03:13:22  10     THE COURT:  And I am telling you so you have enough

03:13:24  11  time on your other folks, I can squeeze them in.  If you

03:13:32  12  decide you want to have a hearing, we will squeeze Dr. Lewis

03:13:36  13  and we will squeeze Dr. Tenny.  But you think about it.

03:13:44  14  Obviously, for all of the sparring this morning, you guys have

03:13:50  15  a nice talk to each other on the telephone.

03:13:52  16     MR. EIMER:  We will.

03:13:52  17     THE COURT:  What do they say?  I dodged the bullet

03:14:00  18  here.

03:14:02  19     MR. EIMER:  We are trying to get the bullets out of

03:14:04  20  the way.

03:14:04  21     Your Honor, when you mentioned the phone conference,

03:14:06  22  is that the 25th of July for the phone conference?

03:14:08  23     THE COURT:  Yes.

03:14:10  24     MR. EIMER:  What time?

03:14:12  25     THE COURT:  I happen to have no conference that day.

03:14:14  1   Talk to your peeps.  Turn around, talk to your peeps.

03:14:22  2        Not 9:00 o'clock because I have court at 9:00

03:14:24  3   o'clock.

03:14:30  4        Morning or afternoon.

03:14:30  5        MR. EIMER:  I think morning is better.

03:14:32  6        THE COURT:  11:00 o'clock?

03:14:36  7        MR. EIMER:  That'd be fine.

03:14:36  8        MS. MILLER:  10:00.

03:14:38  9        THE COURT:  10:00?  10:00 Chicago time, but that

03:14:42  10  gives Mr. Mogin --

03:14:42  11       MS. MILLER:  10:30?

03:14:42  12       THE COURT:  10:30.  How about 10:30?

03:14:46  13       MR. RASHID:  I'm sorry, what was the time, your

03:14:46  14  Honor?

03:14:46  15       THE COURT:  10:30 Chicago time.

03:14:50  16       Most people can even step out if you're someplace and

03:14:54  17  need to -- you know, we are going to do it in the courtroom,

03:14:56  18  we will be on the record, and, hopefully, somebody will let me

03:15:06  19  know -- let Chris and I know if you have any agreements

03:15:06  20  beforehand.

03:15:06  21       Ms. Miller, will you set the number up for us?

03:15:06  22       MS. MILLER:  Yes.

03:15:10  23       THE COURT:  She will send us an email with the

03:15:12  24  number.  And if you kind of have a little semi bit of an

03:15:16  25  agenda too on what we are talking about, that will help.

03:15:20    1    MR. EIMER: We will do that. Thank you, your Honor.

03:15:22    2    THE COURT: We are going to put dates in today. I

03:15:26    3    can't hold indefinitely all the of the dates that I offered

03:15:30    4    you today, but if you are -- do you envision any more

03:15:42    5    conferences or -- why don't we say we will let people know --

03:15:50    6    MR. EIMER: Well, you mentioned somewhere in the

03:15:52    7    August time frame I think while we were briefing the time

03:15:58    8    issue, you talked about having a status in there somewhere?

03:16:00    9    THE COURT: Right. Yes.

03:16:02    10    MR. EIMER: I think that might not be a bad idea.

03:16:04    11    THE COURT: Which issue was that?

03:16:06    12    MR. EIMER: I think we were in the midst of briefing

03:16:08    13    the time period and the custodian issues.

03:16:16    14    THE COURT: Mr. Mogin, when do you get back?

03:16:18    15    MR. MOGIN: The 24th of August.

03:16:20    16    THE COURT: So that's on a Friday. How would you

03:16:26    17    like to come to Chicago the next week?

03:16:30    18    MR. MOGIN: If I have to, yes, your Honor.

03:16:32    19    MR. EIMER: We were thinking the 28th might be a

03:16:34    20    reasonable time, of August.

03:16:40    21    THE COURT: Could you do Wednesday instead?

03:16:46    22    MR. EIMER: Okay.

03:16:48    23    THE COURT: Can you do Wednesday?

03:16:50    24    MR. MOGIN: I can, your Honor, but can we start a

03:16:52    25    little later so that I am on a reasonable time schedule? I

03:16:56   1   will be adjusting from the Hawaiian time.

03:17:02   2          THE COURT:  That's true.  We could start at 11:00,

03:17:10   3   1:00.

03:17:10   4          MR. MOGIN:  1:00 would be better.

03:17:12   5          THE COURT:  1:00, August 29.  It's kind of

03:17:22   6   undesignated here, but we will kind of hold that.

03:17:26   7          I mean, I suppose we could turn that into Dr. Lewis

03:17:32   8   -- I mean, we can also since we have it reserved --

03:17:36   9          MR. EIMER:  Right.

03:17:38  10          THE COURT:  -- we could try to do something.

03:17:40  11          MR. EIMER:  We could try to take some of the other

03:17:42  12   testimony that day.

03:17:42  13          THE COURT:  If we had to.

03:17:46  14          They are clear.  They are not pushing for this court

03:17:50  15   to make a finding that either your search method is good or

03:17:58  16   bad.  You are not asking for that.  What you are asking for is

03:18:02  17   if Mr. Mogin is going to challenge the search methodology,

03:18:08  18   then you'd rather have it now than later.

03:18:12  19          MR. EIMER:  Exactly.

03:18:12  20          THE COURT:  Is that correct?

03:18:12  21          MR. EIMER:  That's exactly correct.

03:18:16  22          MR. MOGIN:  As I said, your Honor, if they are asking

03:18:18  23   for that order, they are asking for that finding, then I guess

03:18:22  24   that's correct.

03:18:22  25          THE COURT:  But they are not asking for it.

| | | |
|---|---|---|
| 03:18:24 | 1 | MR. MOGIN:  Well, they were in the proposed order. |
| 03:18:26 | 2 | THE COURT:  Well, Mr. Neuwirth phrased it like that. |
| 03:18:30 | 3 | But okay.  So you are going to think about it then, but you |
| 03:18:32 | 4 | cannot -- not that you cannot challenge -- it's not going back |
| 03:18:38 | 5 | to the basic if we had only done computer assisted, we |
| 03:18:44 | 6 | wouldn't be having the trouble we're having right now, okay, |
| 03:18:46 | 7 | because you can't go back.  I mean, that is going to be -- |
| 03:18:54 | 8 | that particular issue would be one of these things where we |
| 03:18:56 | 9 | are talking about a deal.  Okay?  You are not going to go back |
| 03:19:00 | 10 | a year from now and say, If you had used computer assisted, |
| 03:19:06 | 11 | you wouldn't be having or it's better than Boolean search. |
| 03:19:12 | 12 | MR. MOGIN:  What about if they had used proper search |
| 03:19:16 | 13 | terms, as the plaintiff suggested. |
| 03:19:16 | 14 | THE COURT:  What? |
| 03:19:16 | 15 | MR. MOGIN:  If they had used proper Boolean search |
| 03:19:22 | 16 | terms such as the ones plaintiffs suggested?  Is that part of |
| 03:19:26 | 17 | the mix? |
| 03:19:26 | 18 | THE COURT:  I don't know.  That's another question. |
| 03:19:28 | 19 | I don't know.  I don't know what we need to go back to the |
| 03:19:32 | 20 | hearing for for that.  That's more like -- |
| 03:19:36 | 21 | MR. EIMER:  That's not part of the hearing. |
| 03:19:38 | 22 | THE COURT:  Right. |
| 03:19:38 | 23 | Okay.  You are going to let me know a week from |
| 03:19:42 | 24 | Wednesday. |
| 03:19:42 | 25 | MR. EIMER:  Thank you, your Honor. |

03:19:42  1          THE COURT:   Anybody have any other issues?

03:19:44  2          Peace, everybody.   Have a great weekend.

3      (Which were all the proceedings had in the above-entitled

4   cause on the day and date aforesaid.)

5      I certify that the foregoing is a correct transcript from
   the record of proceedings in the above-entitled matter.

6

7   _____              _____
   Carolyn R. Cox                         Date
8   Official Court Reporter
   Northern District of Illinois

9   /s/Carolyn R. Cox, CSR, RPR, CRR, FCRR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25