1    <u>TRANSCRIBED FROM DIGITAL RECORDING</u>

2         IN THE UNITED STATES DISTRICT COURT
       FOR THE NORTHERN DISTRICT OF ILLINOIS
3                  EASTERN DIVISION

4
KLEEN PRODUCTS LLC, et al.,          )
5                                    )
                    Plaintiffs,      )
6    -vs-                            )  Case No. 10 C 5711
                                     )
7    PACKAGING CORPORATION OF        )  Chicago, Illinois
     AMERICA, et al.,                )  February 9, 2012
8                                    )  11:05 a.m.
                    Defendants.      )
9

10                 TRANSCRIPT OF PROCEEDINGS
      BEFORE THE HONORABLE NAN R. NOLAN, MAGISTRATE JUDGE
11
     APPEARANCES:
12
     For the Plaintiffs
13   Via speakerphone:      MR. DANIEL J. MOGIN
                            The Mogin Law Firm
14                          707 Broadway
                            Suite 1000
15                          San Diego, CA  92101
                            (619) 687-6611
16
                            MR. STEVEN A. KANNER
17                          MR. ROBERT J. WOZNIAK
                            MR. MICHAEL J. FREED
18                          Freed Kanner London & Millen, LLC
                            2201 Waukegan Road
19                          Suite 130
                            Bannockburn, IL  60015
20                          (224) 632-4500

21   Transcriber:

22             KATHLEEN M. FENNELL, CSR, RPR, RMR, FCRR
                     Official Court Reporter
23                 United States District Court
            219 South Dearborn Street, Suite 2144-A
24                  Chicago, Illinois  60604
                   Telephone:  (312) 435-5569
25             e-mail:  kathyfennell@earthlink.net

```
 1   APPEARANCES:   (Continued)

 2   For Packaging
     Corporation of
 3   America:              MR. LEONID FELLER
     Via speakerphone      Kirkland & Ellis LP
 4                         300 North LaSalle Street
                           Chicago, IL  60654
 5                         (312) 862-2000

 6
     For International
 7   Paper:                MR. NATHAN P. EIMER
                           Eimer Stahl LLP
 8                         224 south Michigan Avenue
                           Suite 1100
 9                         Chicago, IL  60604
                           (312) 660-7600
10
     For Georgia Pacific:  MR. STEPHEN R. NEUWIRTH
11                         Quinn Emanuel Urquhart & Sullivan, LLP
                           51 Madison Avenue
12                         22nd Floor
                           New York, NY  10010
13                         (212) 849-7000

14   For Temple-Inland:    MS. BRITT M. MILLER
                           Mayer Brown LLP
15                         71 South Wacker Drive
                           Chicago, IL  60606
16                         (312) 782-0600

17   For RockTenn:         MR. R. MARK MCCAREINS
                           Winston & Strawn, LLP
18                         35 West Wacker Drive
                           Chicago, IL  60601
19                         (312) 558-5600

20

21

22

23

24

25
```

1     (Proceedings heard in open court:)

2         THE CLERK:  10 C 5711, Kleen Products versus

3  Packaging Corporation.

4         THE COURT:  Okay.  This is Nan Nolan, I'm the

5  Magistrate Judge.  Judge Shadur referred the case to us for an

6  evidentiary hearing and for discovery, and based upon a phone

7  call I had with two of the lawyers yesterday and some recent

8  pleadings, we decided we need a procedural status today.

9         So for Kleen Products?  On the phone.

10        MR. MOGIN:  Yes, your Honor, on behalf of Kleen

11  Products, Dan Mogin.

12        THE COURT:  Is it L-O-G -- M-O --

13        MR. MOGIN:  M-O-G-I-N.

14        THE COURT:  Thank you, Mr. Mogin.  Are you on a

15  speaker phone?  It's kind of -- it's kind of blanking out.

16        MR. MOGIN:  No, your Honor, I'm not.

17        THE COURT:  Oh, you're not.  Okay, well, good.

18        Anybody else for the plaintiffs on the phone?

19        MR. KANNER:  Good morning, your Honor.  Steve Kanner

20  and Robert Wozniak on the phone here --

21        THE COURT:  Okay.

22        MR. KANNER:  -- on behalf of plaintiffs, and I

23  believe your Court has been advised that Michael Freed is

24  currently on a hearing or in a hearing before Judge Gettleman,

25  and as soon as that's concluded, he will be heading directly

 1 | to your courtroom.

 2 | THE COURT:  Right.  And we're sorry we couldn't

 3 | accommodate Mr. Freed's schedule, but I think when you hear

 4 | the way we're going to proceed, it will be okay, and we'll be

 5 | glad to see him when he gets here, okay?

 6 | MR. KANNER:  Thank you very much.

 7 | THE COURT:  Now, we have seven defendants, and, look,

 8 | let me see my order here.  All right, so, no, I didn't bring

 9 | that right one.

10 | So counsel for International Paper is Mr. Eimer and

11 | you're here.  Good morning, Mr. Eimer.

12 | Okay.  Packaging Corporation of America.

13 | MR. FELLER:  Good morning, your Honor, Leonid Feller.

14 | THE COURT:  Thank you.  Okay.

15 | Cascades Canada?

16 | MS. MILLER:  Yes, Cascades could not be here --

17 | THE COURT:  But you're standing in for them.  Good.

18 | MS. MILLER:  -- on behalf of them.

19 | THE COURT:  Thank you.

20 | International Paper Company?

21 | MS. MILLER:  That's Mr. Eimer.

22 | MR. EIMER:  Mr. Eimer.

23 | THE COURT:  Normac Holdings.

24 | MS. MILLER:  Norampac, and that's also Cascades.

25 | We're here speaking on their behalf.

1        THE COURT:  Thank you.  And Weyerhaeuser Company.

2        MR. EIMER:  I believe they also couldn't be on the

3  phone as well, and we're also authorized to speak on their

4  behalf.

5        THE COURT:  Thank you.  Georgia Pacific.

6        MR. NEUWIRTH:  Good morning, your Honor.  This is

7  Stephen Neuwirth from Quinn Emanuel on the phone.

8        THE COURT:  Okay.  Thank you, sir.

9        Temple-Inland?

10        MS. MILLER:  Britt Miller on behalf of Temple-Inland.

11        THE COURT:  And RockTenn.

12        MR. McCAREINS:  Mark McCareins from Winston & Strawn

13  on behalf of RockTenn.

14        THE COURT:  Thank you, sir.

15        Okay.  So first of all, I guess my first statement is

16  somewhat of an apology or an explanation of what happened

17  yesterday.

18        On Tuesday, today's Thursday, on Tuesday of this

19  week, we received memos in support of the evidentiary hearing

20  from both sides.  As Chris and I were -- Chris -- this is

21  Chris Campbell, my -- one of my permanent clerks who will be

22  working on the case.

23        As we were going through it, it appeared that our

24  evidentiary hearing, which is scheduled for a week from

25  Tuesday, it appears that you folks intend to call five

1    experts.  Right prior to yesterday the hearing or currently
2    the hearing is scheduled from 10:00 o'clock to no specific
3    time.

4          This is literally what happened.  I said to Chris,
5    don't you think maybe we ought to call one person from each
6    side and see if we should start the hearing at 9:00?  I would
7    never have had any kind of a status without including
8    everybody if it was anything other than a ministerial call,
9    and that was the full intention and I have a couple other
10   ministerial issues for today.

11         Within three minutes into the call, the lawyers being
12   the wonderful lawyers they are, they cannot help themself
13   here, we were into substantive issues.  We're going back to
14   where I was yesterday.

15         It appeared to me four of the five experts are not
16   from Chicago.  You're paying lots of money to have these
17   people here, and I wanted to make sure that we are allowing
18   them sufficient time to help us in this evidentiary hearing.

19         So we're going to go back to, and I'll explain to you
20   the way that I see the hearing, and I would like to start the
21   hearing at 9:00 o'clock.

22         Is there any objection to starting the hearing at
23   9:00 o'clock?

24         MS. MILLER:  No, your Honor.

25         MR. MOGIN:  Not from plaintiffs, your Honor.

1    THE COURT:  All right.  You will have -- the

2 plaintiffs will have from 9:00 o'clock till 12:30.

3    We will take an hour break for lunch.

4    From 1:30 to 5:00 o'clock, the defendants will have

5 their time, okay?

6    Now --

7    MR. MOGIN:  Your Honor, I'm sorry to interrupt.

8    THE COURT:  Tell me who this is.

9    MR. MOGIN:  I'm sorry, this is Dan Mogin speaking for

10 the plaintiff, and Mr. Neuwirth can correct me if I'm wrong,

11 but we had had a conference call at your suggestion amongst

12 the lawyers, precisely on the order of proceeding.  And while

13 we did do exactly what you just did, divide the time

14 equally --

15    THE COURT:  Right.

16    MR. MOGIN:  -- we had agreed defendants would go

17 first.

18    THE COURT:  Oh, okay, well, that's fine with me.  I

19 mean, whatever you want to do is fine with me, and it may be

20 people's plane schedules.  That's fine.

21    So defendants will go first, okay, in the morning,

22 and the -- and, you know, that doesn't mean burden, okay?

23 Who's going first at this hearing, I don't want that to have

24 any legal implication; but we will put the defendants' experts

25 on in the morning, plaintiff in the afternoon, okay?

1    Now, here's what I think, and this is what I did say

2    to the lawyers yesterday.  There are four issues, and how we

3    began -- four issues that both of you identify as disputed

4    issues kind of to do the background.  There may be others,

5    but -- and the first one, from reading Judge Shadur and the

6    main thrust of why the case was referred here, was there is a

7    dispute on what type of search methodology should be used.

8    The defendants would prefer to use a word search, and the

9    plaintiffs would like to use concept searching.

10    Then there are three other preliminary issues, and

11    this is where we started getting all far afield yesterday.  I

12    was very candid.  While I intellectually understand the

13    difference between a word search and a concept searching, I

14    think this is going to be at least one of the first cases

15    where the judge would pick the search.  So I don't have much

16    legal precedent.

17    So I thought experts maybe could help me in trying to

18    solve this kind of unique issue here.

19    The other three issues, if you want to take part of

20    your time and ask the expert while they're on the stand, I am

21    not going to get into prioritizing.  You're among the best

22    lawyers I've ever had in front of me.  You decide how you want

23    to use your time.

24    And if you want to ask them on -- I mean, the other

25    issues are location of search, I guess that means active,

1  backup tapes, indices and duration.

2  If you think an expert actually tells us or tells a

3  judge what the judge needs to know on those issues and you

4  want to ask a couple questions during your time, that's up to

5  you, okay?

6  So I'm not cutting anybody off, but I am cutting you

7  off after three-and-a-half hours, so ...

8  Then procedurally, I also want to say I'm trying to

9  get a larger courtroom, and so you should look for a minute

10  order if we can get a larger courtroom.

11  Now, are your experts either going to have PowerPoint

12  or exhibits or documents?  I can't imagine an expert that goes

13  anywhere without his laptop.

14  MS. MILLER:  And we had understood your Honor's order

15  to say that we needed to provide them by the 16th and provide

16  extra copies.

17  THE COURT:  Well, that wasn't the question.  How are

18  we going to show them?

19  MR. WOZNIAK:  Your Honor, Robert Wozniak from Freed

20  Kanner London & Millen.

21  I spoke briefly, at the suggestion of Chris Campbell,

22  to Joe Novack, I believe it is.

23  THE COURT:  Yes, yes.

24  MR. WOZNIAK:  And advised at least one of our

25  experts, and I assume probably both, would be bringing a

1    laptop and want to show some kind of presentation.  And as of

2    now based on your current courtroom, he was planning on

3    bringing in just a very large --

4            THE COURT:  Screen.

5            MR. WOZNIAK:  -- flat-screen monitor.

6            THE COURT:  Right, right.

7            MR. WOZNIAK:  A 55-inch plasma, I believe.

8            THE COURT:  So --

9            MR. WOZNIAK:  Now, I don't know if that would be

10   sufficient based on whatever larger courtroom you get, but --

11           THE COURT:  Right.  Well, you did your homework.

12   Thank you.

13           So a couple of the courtrooms we're going to try, the

14   newer courtrooms in the building have built-in E-material, so

15   we'll see if we get one of those.

16           Otherwise, is it Mr. Wozniak?  We'll let you know, or

17   we'll let Joe know, okay?

18           MR. WOZNIAK:  Okay.

19           THE COURT:  So that -- I have more though.

20           I also, in this call yesterday, the two lawyers that

21   were on the phone did think it might be helpful to, if the

22   experts have a preliminary report, I know this is very early

23   in the case, if you wanted to, you could give us a copy of the

24   preliminary report.

25           I mean, this was all just being said without even

1    thinking of any ramifications, so I don't know whether or not

2    people want to do that.  You can talk among yourselves; but if

3    you wanted to provide it with whatever kind of assurance that

4    everybody understood it was preliminary and couldn't be used

5    at any other point.  But if they had any -- I cannot stress

6    enough how interested we are in knowing how their work applies

7    to this case.

8              This is not a Law Review article on what is the

9    better method.  This is how will their -- the method that they

10   are suggesting aid you and your clients in this case.  So

11   that's what we're -- I mean, I need to know basics, some

12   basics on how you're going to do it, why they're choosing to

13   do it, what are the proportionality burden, yada-yada, why

14   they're picking it, but how it applies to this antitrust case.

15             MR. EIMER:  Your Honor, why don't I pick up your

16   suggestion, which is that we talk to the plaintiffs' counsel

17   and see what we can agree to file in advance and --

18             THE COURT:  Well, the other thing, though, is -- let

19   me look at this -- okay.  You're going to have every

20   opportunity to file post-hearing briefs, materials.  The

21   lawyers can come back for oral argument if you want.  I'm

22   trying to be efficient on that day.

23             MR. EIMER:  Okay.

24             THE COURT:  And that was my concern is how can we

25   get, you know, three, four, five, six people on.

1          Defendants, I have a question for you.   I want your

2    clients to know that at every step of the way, we are going to

3    give individual consideration to multi-parties.  I do and I

4    know Judge Shadur does.

5          At this particular hearing, I am hoping you are going

6    to designate a person who is going to ask, or if you're going

7    to put on your experts, different people are going to put on

8    one expert and that there will not be too much duplication.

9          Again, I can't order you not to do it, but I think it

10   would be more efficient and if somebody hears something and

11   they want to jump up, even if somebody's the lead counsel,

12   they have permission to do that.

13          MR. EIMER:  Your Honor, we are coordinating.  I think

14   there will be one lawyer who has responsibility for direct and

15   cross-examination --

16          THE COURT:  Right.  But if you do have something that

17   applies to your clients or your clients' system, I want you to

18   know you can certainly -- and I'm not going to -- on the

19   briefing, the post-briefing, any individual considerations

20   will certainly be taken into consideration, okay?

21          MR. EIMER:  Well, I think where the individual issues

22   come up are not with respect to these five witnesses.  They

23   come up more with the internal computer systems of the

24   individual defendants --

25          THE COURT:  Right.

1     MR. EIMER:  -- which will not be part of the

2  testimony taken here.  It will be for another time.

3     THE COURT:  Right.  Well, good.

4     MR. MOGIN:  I apologize, your Honor.  Mr. Eimer faded

5  out, and I just simply couldn't hear what he said.

6     THE COURT:  Okay.  We'll ask him to say it again.

7     MR. EIMER:  I'll repeat it again.  Sorry.

8     What I was saying was that the individual issues that

9  would cause, you know, the breakdown of the joint defense

10  effort in the sense really come up with respect to the burden

11  and the specifics of each particular defendant's computer

12  system, and that will be the subject of evidence or testimony

13  put in by the individual defendants at another time, but not

14  at this hearing.

15     These experts are across the board -- excuse me --

16  dealing with search methodology as the question is being

17  presented.

18     THE COURT:  Okay.

19     MR. MOGIN:  Just to be perfectly clear, your Honor,

20  we do intend to go the other direction.

21     THE COURT:  What is -- what do you mean?

22     MR. MOGIN:  In other words, as Mr. Eimer says they're

23  not going to be putting on evidence of that particular type.

24  We do intend, through our computer forensic expert, to put on

25  certain evidence of that type.

1           THE COURT: That's fine. That's what I'm saying to

2 you is you've got your three-and-a-half hours, and as far as I

3 can see, I'm -- I was clear yesterday. I think this is your

4 three-and-a-half hours to put your experts on and you put them

5 on as you choose to do it, okay?

6           MR. MOGIN: Understood, your Honor. Thank you.

7           I just have one further question about the schedule

8 that you've proposed.

9           THE COURT: Uh-huh, sure.

10           MR. MOGIN: Does the three-and-a-half hours include

11 time for each party to engage in cross?

12           THE COURT: Yes.

13           MR. MOGIN: And do you envision the cross and the

14 direct be equally divided as well?

15           THE COURT: No, I'm not going to -- I'm not Judge

16 Posner. I'm not timing you. That's one of our appellate

17 judges who, when he's a trial judge, he times everybody. I'm

18 not doing that.

19           I don't know if somebody takes up the whole

20 three-and-a-half hours, I'm going to assume you're -- you're

21 adults. You're good lawyers. I mean, I'm saying this is what

22 I can offer you.

23           So I do think reasonableness here. I think

24 proportionality here. You can assume that Chris and I are

25 going to be so prepared, I -- I mean, we are going to be very

1   prepared, and what we are trying to figure out is to this case

2   and what we're actually kind of more like Jill come lately is

3   I feel like I'm actually more come lately to the facts of the

4   case than I do to ESI issues, okay?  Because I wasn't in the

5   case for the whole year with Judge Shadur.

6          And we're going to read all those.  We're going to

7   read antitrust.  I'm going to do everything I can so when you

8   walk in, you're going to be talking to somebody who's not as

9   wise as you are, but who is prepared for this.

10         I don't know if I answered your question, sir.

11         You don't know me at all.  The lawyers in Chicago

12  have a little bit better idea.  I want you to come in and do

13  your work.  And we'll have some questions ourselves, but we're

14  going to also modulate ourself, given the three-and-a-half

15  hours.

16         MR. MOGIN:  Fully understand, your Honor.  Thank you

17  for that explanation.

18         MR. EIMER:  Your Honor, in response to Mr. Mogin's

19  statement to the Court, I think I've made this clear, I just

20  want to say it again.  Some of our testimony or evidence on

21  the four issues, and really the ancillary three issues to me,

22  will not come through experts but through individual company

23  employees talking about their computer systems.

24         We're not proposing to put that evidence in on the --

25  (inaudible) --

1          THE COURT:  Right.

2          MR. EIMER:  -- because we already have enough to do

3     that day.

4          THE COURT:  But if you have, if predict -- okay.  If

5     concept searching, if there is a question that concept

6     searching or word search would have an effect on 1, 2, or 3,

7     rather than calling those people back again, then you might

8     want to ask that question.  That's what I'm saying.

9          MR. EIMER:  Absolutely.

10         THE COURT:  So if there is something where it's going

11    to help our post-hearing briefs or something, then that's why

12    I'm saying that's your call.

13         MR. EIMER:  Understood.  I think your Honor made it

14    very clear on the call yesterday you want us to get these

15    witnesses in and off in that day and then they're done and not

16    have to recall them, and we will do that.

17         THE COURT:  Right.

18         MR. EIMER:  That's understood.

19         THE COURT:  And it's going to be quite an effort to

20    be able to do that.

21         MR. EIMER:  Agreed.

22         THE COURT:  Oh, oh, my other thing.  I just in

23    complete disclosure here, not -- okay.  Complete disclosure,

24    Dan Regard and I did a panel at Georgetown about four years

25    ago.  Two years ago, Ken Withers got married in Washington,

1   and Dan Regard had a lovely party, post-wedding party at his

2   house, and I went to Dan Regard's house, okay?

3         It's not going to have an effect on anything, but

4   just so you know that I know who Dan Regard is.  I don't

5   know -- interestingly, I didn't know one of the other five.  I

6   don't know what that says, but any way -- hi, sir.

7         MR. FREED:  Good morning, your Honor.  Michael --

8         THE COURT:  Freed.  I'm so sorry we couldn't wait for

9   you, but this is a ministerial phone call.

10        MR. FREED:  (Inaudible).

11        THE COURT:  Right.  Thank you.

12        And we kind of just basically I said you ladies and

13  gentlemen (loud buzzing noise) I'm running it timewise, we're

14  starting at 9:00 o'clock.  9:00 to 12:30, defendants are going

15  first, not being their burden, this is just by choice.  And

16  1:30 to 5:00 o'clock, the plaintiffs will put on their

17  witnesses.  No time for argument, but we're going to do

18  post-hearing briefs, and the defendants will have every

19  opportunity to submit individual anything you want about your

20  client.

21        I'm hoping for the hearing the defendants will do --

22  designate someone, but if you can't help yourself, you can

23  jump up and ask a question, okay?

24        We're going to try to be in a bigger courtroom and

25  hopefully one with some IT material.

1    MS. MILLER:  Your Honor?

2    THE COURT:  Yes, Ms. Miller.

3    MS. MILLER:  Do you want -- per Chris's prior e-mail,

4  do you want to see any exhibits and whatnot prior to the

5  hearing?  Or just for us to bring them with us.

6    THE COURT:  Well, we're closed on Monday, so we

7  didn't know -- see, we have -- Monday is our federal holiday,

8  so if we were going to get anything -- well, I don't -- I

9  mean, is it possible to get it Friday?

10   I mean, do you want to look at it or not or should we

11 just look at it -- it's pretty hard to listen and be reading

12 at the same time though.  I mean, if we had them Friday --

13   MR. EIMER:  Why don't we try, your Honor, to submit

14 things.

15   THE COURT:  Yeah.

16   MR. EIMER:  Would Friday be okay?  Get it to you

17 Friday or Thursday.

18   THE COURT:  Thursday night.

19   MR. EIMER:  Thursday night.

20   THE COURT:  Then maybe -- because actually Friday is

21 a pretty open day for me, and I could kind of look.

22   MR. EIMER:  We'll try and do what we can and if

23 not --

24   THE COURT:  And if you don't have them, of course,

25 you can bring them on Tuesday.

1     MR. EIMER:  There may be some supplemental ones that
2  we may have.
3     THE COURT:  Does that work for people on the phone?
4     MR. MOGIN:  I think so, your Honor.  I believe -- I
5  couldn't quite hear, but I believe you asked us if we present
6  any exhibits that we intend to offer in evidence by Thursday.
7     THE COURT:  Thursday night because we're closed,
8  Monday is Presidents' Day, so if Chris and I were going to
9  look at them over the weekend, that would be good, or Friday,
10  okay?
11     MR. MOGIN:  Very good.
12     THE COURT:  And I do, if any emergencies come up,
13  you're allowed to, you know, either send an e-mail or call
14  Chris if we need to have an emergency status.  You don't have
15  to worry on the three-day notice, okay?
16     MR. EIMER:  The parties have a joint though --
17  simultaneous, I guess is the word, simultaneous submission due
18  on Monday.  My preference and I think is to focus those
19  submissions on the evidence we expect to go in on the 21st.
20     THE COURT:  That would be very helpful.  Does that
21  work for you, Mr. Mogin?
22     MR. MOGIN:  I don't quite know yet, your Honor.
23     THE COURT:  Okay.
24     MR. MOGIN:  I'm not sure that I fully grasped what
25  Mr. Eimer was suggesting.  Perhaps if I speak to him.

1            THE COURT:  That probably would help, right?

2            MR. EIMER:  Glad to explain it, your Honor.

3            THE COURT:  And then if it works for you, you do the

4    same thing.  If it doesn't, you'll give us something else.

5    Okay, all right.

6            Sure.

7            MR. FREED:  In terms of the three hours allocated --

8            THE COURT:  Three-and-a-half.

9            MR. FREED:  Three-and-a-half, will there be any

10   cross-examination?

11           THE COURT:  Yes.

12           MR. FREED:  There will be.

13           THE COURT:  There is, and I don't want to time you,

14   okay?  I am not going to time you.

15           I'm assuming, you know, if you get to the issue of

16   how does this apply to the case, which is my main thing I'm

17   hoping the experts are going to talk to us about.

18           Then the cross will help clarify whatever people's

19   positions are.

20           Now, this is in the -- what's going to really happen.

21           MR. EIMER:  We'll play it by ear.

22           THE COURT:  We're going to try for the one day, okay?

23   We're really trying here, too.

24           MS. MILLER:  Thank you.

25           MR. EIMER:  Thank you, your Honor.

1          THE COURT:  Bye everybody.

2          See you a week from Tuesday.  Thank you.   Bye-bye.

3          MR. MOGIN:  Thank you, your Honor.

4          MR. KANNER:  Thank you.

5          MR. WOZNIAK:  Thank you, your Honor.

6      (Which were all the proceedings heard.)

7                 CERTIFICATE

8     I certify that the foregoing is a correct transcript from

9  the digital recording of proceedings in the above-entitled

10  matter to the best of my ability, given the limitations of

11  using a digital-recording system.

12

13  */s/Kathleen M. Fennell*              *February 10, 2012*

14  _____     _____
Kathleen M. Fennell            Date

15  Official Court Reporter

16

17

18

19

20

21

22

23

24

25