```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF ILLINOIS
                   EASTERN DIVISION

KLEEN PRODUCTS LLC, et al.,     )  No. 10 C 5711
                                )
                   Plaintiffs,  )  Chicago, Illinois
                                )  October 15, 2012
                                )  9:30 o'clock a.m.
   -vs-                         )
                                )
PACKAGING CORPORATION OF        )
AMERICA, et al.,                )
                                )
                   Defendants.  )

              TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE MILTON I. SHADUR

APPEARANCES:

For the Plaintiffs:     FREED KANNER LONDON & MILLEN LLC
                        2201 Waukegan Road
                        Suite 130
                        Bannockburn Illinois 60015
                        BY:  MR. MICHAEL J. FREED
                             MR. ROBERT J. WOZNIAK
                                and
                        THE MOGIN LAW FIRM
                        707 Broadway
                        Suite 1000
                        San Diego, California 92101
                        BY:  MR. DANIEL J. MOGIN

For Defendant           KIRKLAND & ELLIS LLP
Packaging Corporation   300 North LaSalle Street
of America:             Chicago Illinois 60654
                        BY:  MR. LEONID FELLER




Court Reporter:         ROSEMARY SCARPELLI
                        219 South Dearborn Street
                        Room 2304A
                        Chicago, Illinois  60604
                        (312) 435-5815
```

```
 1    APPEARANCES: (Continued)

 2    For International        FOLEY & LARDNER
      Paper:                   777 West Wisconsin Avenue
 3                             Milwaukee, Wisconson 53202
                               BY:  MR. JAMES T. McKEOWN
 4
      For Norampac             K&L GATES LLP
 5    and Cascades:            70 West Madison Street
                               Suite 3100
 6                             Chicago Illinois 60602
                               BY:  MR. SCOTT M. MENDEL
 7
      For Weyerhaeuser         McDERMOTT WILL & EMERY
 8    Company:                 227 West Monroe Street
                               Suite 4400
 9                             Chicago Illinois 60606
                               BY:  MS. JENNIFER A. SMULIN DIVER
10
      For Georgia Pacific LLC: QUINN EMANUEL URQUHART & SULLIVAN
11                             51 Madison Avenue
                               New York, New York 10010
12                             BY:  MR. MARC L. GREENWALD
                                       and
13                             FIGLIULO & SILVERMAN
                               Ten South LaSalle Street
14                             Suite 3600
                               Chicago, Illinois 60603
15                             BY:  MR. JAMES R. FIGLIULO

16    For Temple-Inland, Inc.: MAYER BROWN LLP
                               71 South Wacker Drive
17                             Chicago, Illinois 60606
                               BY:  MS. BRITT M. MILLER
18
      For RockTenn CP, LLC:    WINSTON & STRAWN
19                             35 West Wacker Drive
                               Chicago, Illinois 60601
20                             BY:  MR. R. MARK McCAREINS

21

22

23

24

25
```

1  THE CLERK: Okay. Now 10 C 5711, Kleen Products
2  versus Packaging Corporation.
3  MR. FREED: Good morning, your Honor, Michael
4  Freed, Dan Mogin and Robert Wozniak for the plaintiffs.
5  MR. EIMER: Good morning, your Honor, Nate Eimer on
6  behalf of defendant International Paper.
7  MS. MILLER: Good morning, your Honor, Britt Miller
8  on behalf of defendant Temple-Inland.
9  MS. DIVER: Good morning, Jennifer Diver on behalf
10 of defendant Weyerhaeuser Company.
11 MR. McCAREINS: Good morning, your Honor, Mark
12 McCareins on behalf of RockTenn.
13 MR. MENDEL: Scott Mendel for Cascades and
14 Norampac.
15 MR. FELLER: Good morning, your Honor, Leonid
16 Feller on behalf of Packaging Corporation of America.
17 MR. McKEOWN: Good morning, your Honor, James
18 McKeown on behalf of International Paper.
19 MR. FIGLIULO: Good morning, your Honor, Jim
20 Figliulo on behalf of Georgia Pacific.
21 MR. CARLINSKY: Good morning, your Honor, Michael
22 Carlinsky from Quinn Emanuel on behalf of Georgia Pacific.
23 THE COURT: Good morning. Well, I guess I should
24 take some credit for enriching the legal profession this
25 morning, although that is really not the purpose of my having

1  called you in. I want to thank all of you for having come in
2  for this status hearing. As you might guess, it was of
3  course occasioned by the lengthy opinion that was issued by
4  Nan Nolan, which I think was her last major project before --
5  to the regret of my colleagues and myself -- things led to
6  her deciding to retire from our Court.
7      Don't misunderstand that expression of regret.
8  Mary Rowland, who is right over here and whom I would
9  introduce to you en masse, is going to be taking over not
10 only as Nan's successor but she, I can assure you, is
11 extraordinarily able. All of us on our Court joined in
12 deciding for her to be our -- one of our two newest
13 Magistrate Judges. I asked her to join us today, not only so
14 you could meet her but also I know that you will find working
15 with her is going to be presenting a smooth transition.
16     I should add, by the way, that Nan's clerk has
17 joined Mary so that -- and I know that all of you know that
18 clerk is familiar as well.
19     Now, with that said, why don't you all sit down so
20 I can talk to you? And then we will hear whatever else may
21 be presented.
22     I am not sure how many of you have been involved in
23 other cases on my calendar. There are a lot of familiar
24 faces here, but over the years I would think that people have
25 become no doubt aware that the handling of this case is

1  uniquely different from my otherwise universal practice.
2  Each of us on our District Court has a different kind of
3  approach, a different manner of handling his or her own
4  calendar management.  I often say that we are sort of like
5  separate solar systems, separate solar systems not only in
6  those terms but also because we never get the privilege of
7  observing what our colleagues do, so we don't learn from our
8  colleagues, regrettably.
9           Now that set a variance in this instance that
10 extends to the way in which we involve our first-rate cadre
11 of Magistrate Judges.  Some of my colleagues, in a pattern
12 that goes back at least as far as Pren Marshall, when Pren
13 adopted a practice of both early and comprehensive referral
14 to Magistrate Judges basically for health reasons, as chance
15 would have it.  But he found that very appropriate, and that
16 means sort of a automatic turnover of the entire supervision
17 of the preparation of discovery and all corollary matters.
18          And I know a lot of my colleagues do that as well.
19 I shouldn't say "a lot."  I really don't know how many do for
20 the reason I just mentioned, but I can tell you that by
21 contrast I operate essentially on a hands-on basis.  So what
22 I do is conduct regular status hearings, keeping track of the
23 discovery process, deciding discovery disputes myself, except
24 for a small matter -- small number of matters -- when I think
25 that, all things considered, it could be better to refer the

1  matter to a Magistrate Judge.
2  But from the very beginning, after I dealt with the
3  initial motion that sought to trash the then group of
4  complaints that have merged into one, my sense was that this
5  one, both the nature and scope of the action, called for the
6  much closer and continuous exercise of oversight than I could
7  provide at all while I was managing my inventory, let me put
8  it that way.
9  As you probably know, I was the first judge on our
10  Court to have opted, when I took senior status, to maintain
11  and continue to maintain a full calendar, both civil and
12  criminal. Old habits die hard. I suddenly realized I had
13  been doing that for 20 years. But you know life is great
14  when it passes quickly when you are having fun, you know.
15  As you may or may not be aware of this, I think
16  that our Court publishes averages. So I won't tell you the
17  secret about what my calendar consists of, but the average is
18  somewhere in the upper two-hundreds. It is lower than it was
19  when I first joined the Court, but it is close to 300 I think
20  in terms of average, and that is on the civil side. And of
21  course each of us has somewhere in the range of 35 to 40
22  criminal cases on our calendars.
23  Well, as you know, to return to our case,
24  Magistrate Judge Nolan performed what in a non-chauvinistic
25  sense I will refer to as yeo-person service -- that is

1  distinct from yeoman service -- calling the disputed issues
2  as she saw them, and I think also substantially resolving a
3  good many disputed issues so that they are no longer
4  disputed.
5      Now I have certainly read and reviewed carefully
6  her memorandum opinion and order. And I am of course not
7  going to deal with it at this point. As you know I just
8  received motions from defendants, a big box of papers and
9  then Mike Freed's most recent submission of a redacted
10 version just for my information that challenged a lot of
11 aspects of the report.
12     But in doing that and reading through the thing I
13 was struck, among other things, by something I spotted here
14 down at the bottom of Page 37 which says -- this was in
15 connection with Nan's treatment of backup tapes. She said,
16 "There is no discovery cutoff date in this case and
17 plaintiffs are only 20 percent complete with their first
18 level review of defendants' documents."
19     Can I hear from both sides' counsel as to whether
20 that is really a fair prognosis or what?
21     MR. FREED: Michael Freed for the plaintiffs, your
22 Honor. While we don't have the exact figures because it is a
23 constantly moving --
24     THE COURT: I know.
25     MR. FREED: -- volume of documents, it is pretty

1  accurate. And while I think the suggestion may be that it is
2  smaller than you might have expected at this point, but we
3  think that there has been about eight or nine million pages
4  of documents. And we have been reviewing them assiduously.
5      THE COURT: I am not -- don't misunderstand, I am
6  not asking this from a critical point of view. It is just
7  kind -- it is really a factual inquiry.
8      MR. FREED: Well, it --
9      THE COURT: So what you are saying is that that
10 sounds about right.
11     MR. FREED: It does, your Honor. We actually
12 discussed it. Mr. Wozniak from our firm has been keeping
13 tabs the best he can. But there are three or four phases of
14 the document review. First they have to get loaded. Then
15 they have to be analyzed. Then reviewed.
16     THE COURT: Yes.
17     MR. FREED: So we think in terms of actual
18 production and actual review that is about right at this
19 point.
20     THE COURT: Do defendants have a similar handle on
21 the thing? Does that sound something like --
22     MR. EIMER: Your Honor, Nate Eimer. I am not sure.
23 We don't know where the plaintiffs are in reviewing their
24 documents. We would have hoped they would have been much
25 further along at this point, and we would have hoped that

1  there would be a discovery cutoff date as well at this point.
2  But I think that is correct, we are where we are.
3          THE COURT: Well, let me ask both sides for your
4  thoughts on a different subject. As experience has told us
5  -- and I go back now to the period when I was in practice as
6  well as since I have been on the Court -- most cases such as
7  this ultimately end up getting settled rather than tried.
8  Most not all. I think that years ago Thurman Arnold wrote a
9  book in which he likened the process to the mating dance of
10 birds on the South Sea Islands, in which he said everybody
11 knows where you are going to end up, but you have got to go
12 through the motions anyway. And that -- I think that is
13 realistic.
14         So it sounds to me as though what we are -- even
15 though there is always a good deal of bloodletting on both
16 sides that precedes that, what we are talking about is that
17 either in terms of trial or in terms of the potential for
18 settlement in which a judge might play a meaningful part,
19 that we are talking about several years. Is that fair on
20 both sides?
21         That I think I can ask both sides. You don't know
22 where they are, but you know not only what you provided, but
23 you also know what is being sought of you in terms of further
24 matters on several aspects as which the Magistrate Judge said
25 no. Is that right?

1     MR. FREED: That is exactly it. In our view that
2  is exactly right, your Honor. We also discussed that and
3  that was our best estimate, was two years for the whole
4  process to play out.
5     MR. EIMER: Yeah, I am not sure I disagree with the
6  process either. They obviously need more time to review the
7  documents. They have to digest them. And we are going to
8  have an extensive deposition program, I assume. And so I
9  can't imagine it is less than 18 months. My guess is it
10 would be something closer to the two years Mr. Freed talked
11 about.
12    THE COURT: Yes. Thank you.
13    Well, as you might guess, those are things to which
14 I have given a good deal of thought in terms of what
15 certainly remains to be done beyond the Magistrate Judge's
16 opinion, including in the first instance need for a judicial
17 ruling on the objections to the motion. Now all of you who
18 practice regularly in this District know that, as I said, I
19 am the first senior judge to have stuck with a full civil and
20 criminal calendar. And I don't contemplate changing that so
21 long as I certainly remain capable of doing it, nor do I
22 contemplate emulating some of my former colleagues who, out
23 of justifiable resentment of the Congressional intransigence
24 that forces all of us to continue to maintain our vows of
25 poverty -- voluntarily, I guess -- you know, a lot of us have

1   -- and I say that in relation even to the youngsters who are
2   in the practice, not like you people. And so I don't
3   contemplate any change in that.
4   　　　　　But with that said, I think that -- and I have come
5   to believe that it is obvious from the expected answers that
6   I had anticipated and that you have given to me, that there
7   is no realistic prospect that I am going to see this one to
8   the end of the case either way, that is, settlement or -- or
9   trial.
10  　　　　　And certainly what would I think be inappropriate
11  would be for me to be making interlocutory rulings that a
12  judge who will ultimately see the case to the end could and
13  should take a fresh look at. Whenever we get cases, you
14  know, by reassignment, the first responsibility of the Court,
15  although there is a lot of language that says, well, you stay
16  with the thing unless you find some important reason not to,
17  the point is that each us who is responsible I think has an
18  absolute obligation to make sure that you agree with whatever
19  has gone before.
20  　　　　　So it strikes me, having seen what Nan did, that
21  this is both an obvious and quite appropriate watershed for
22  consideration of her opinion, and the objections moving
23  forward from there seems to me to call for a change of judge.
24  Magistrate Judge Rowland has, as I told you, retained the
25  same law clerk who is familiar with the case and to you, and

1  so a new District Judge is not going to be, as I think of it,
2  less well-equipped than I to engage in the ultimate
3  oversight.
4      So with regret, because I don't do this very often,
5  I am going to exercise the prerogative that senior judges
6  have under Section 294(b) to withdraw from the case and
7  transmit files and save some file space to whatever new judge
8  is going to end up with the case.
9      Now I have said my -- I have said my say.  I am not
10 sure that it calls for anything on the part of -- on the part
11 of counsel be -- first because you can't compel me to do
12 otherwise, but more importantly because I think it is fair to
13 say that the legal issues that I have dealt with in
14 connection with the case -- which some new judge, by the way,
15 might disagree with -- but the legal issues that I have dealt
16 with are not that dense as a thicket so that a new judge is
17 going to be handicapped to any extent at all.  Because
18 basically you have been living with the Magistrate Judge all
19 this time frame, it does not seem to me that judicial economy
20 is particularly to be served by retention.
21     So unless somebody has something to say other than
22 good-bye, I am not sure that there is any particular comment
23 that is called for.  But I wanted all of you to understand
24 the reasons for my decision, which frankly I had not
25 anticipated until I received this very thorough 40-page

1  opinion that gave me a good handle on where the lawsuit
2  stood.
3       So anyway, that is my take. So you will be getting
4  an order. It gets -- goes up to the Executive Committee,
5  gets reassigned at random. I wish all of you good luck. I
6  also wish particular good luck to my successor. And then you
7  will be in a position -- I am of course I am transmitting,
8  apart from everything else, my files, the motion, and I would
9  leave it to the new judge also to set the schedule for
10 response to the objections.
11      Now the way that is going to work is that -- Sandy,
12 how -- it should take only a day, right, two days?
13      All right. So what I would suggest is that you
14 call whenever you get the information as to the new judge,
15 call the judge's chambers, see about setting the thing up
16 basically on a motion call simply for purposes of
17 establishing a schedule, which is the next step. Okay?
18      Thank you all. Thank you. Thank you.
19      MR. FREED: Your Honor, from the plaintiffs I'd
20 just like to tell you it has been a pleasure to appear before
21 you. We are sorry that you won't be handling the case, but
22 we appreciate all you have done.
23      THE COURT: Well, kind words will get you noplace,
24 you know.
25      MR. FREED: I am not trying to get any place

1 because you are not going to continue.

2 THE COURT: Like when I used to practice law and I
3 got nice comments from clients, my standard response was that
4 "Kind words are harder to come by in the practice than fees,
5 so they are more welcome when they do come." But yes.

6 MR. EIMER: Your Honor, let me add mine as well.
7 As your Honor knows, I have been in front of you longer than
8 you have been on senior status.

9 THE COURT: I know.

10 MR. EIMER: I won't even go back and say how long,
11 but I appreciate being in front of you always and will be
12 disappointed not to be here.

13 THE COURT: Thank you. Thank you all.

14 (Which were all the proceedings heard.)

15 CERTIFICATE

16 I certify that the foregoing is a correct transcript
17 from the record of proceedings in the above-entitled matter.

19 s/Rosemary Scarpelli/          Date: October 17, 2012