```
 1                 IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3
     KLEEN PRODUCTS, LLC, et al.,        )   Docket No. 10 C 5711
 4                                        )
                      Plaintiffs,         )
 5                                        )
              vs.                         )
 6                                        )
     PACKAGING CORPORATION OF AMERICA,    )   Chicago, Illinois
 7   et al.,                              )   August 9, 2012
                                          )   10:00 o'clock a.m.
 8                    Defendants.         )

 9
              TRANSCRIPT OF PROCEEDINGS - TELEPHONE CONFERENCE
10        BEFORE THE HONORABLE MAGISTRATE JUDGE NAN R. NOLAN

11
     APPEARANCES:
12

13   For the Plaintiffs:        THE MOGIN LAW FIRM
                                 BY:   MR. DANIEL J. MOGIN
14                               707 Broadway, Suite 1000
                                 San Diego, CA  92101
15                               (619) 687-6611

16                               FREED KANNER LONDON & MILLEN LLC
                                 BY:   MR. MICHAEL J. FREED
17                               MR. ROBERT J. WOZNIAK
                                 2201 Waukegan Road, Suite 130
18                               Bannockburn, IL  60015
                                 (224) 632-4500
19

20                               GUSTAFSON GLUEK PLLC
                                 BY:   MR. DANIEL C. HEDLUND
21                               650 Northstar East
                                 Minneapolis, MN 55402
22                               (612) 333-8844

23
     Court Reporter:            MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
24                              Official Court Reporter
                                219 S. Dearborn Street, Suite 1854-B
25                              Chicago, Illinois  60604
                                (312) 435-5639
```

APPEARANCES CONTINUED:

For the Plaintiffs          BERGER & MONTAGUE, P.C.
(Cont'd):                   BY:  MR. CHARLES PEARSALL GOODWIN
                            1622 Locust Street
                            Philadelphia, PA  19103
                            (215) 875-3000


                            MILLER LAW LLC
                            BY:  MR. MATTHEW E. VAN TINE
                            115 South LaSalle Street
                            Suite 2910
                            Chicago, IL  60603
                            (312) 332-3400

For Defendant Packaging     KIRKLAND & ELLIS LLP
Corporation of America:     BY:   MR. LEONID FELLER
                                  MR. BARACK S. ECHOLS
                            300 North LaSalle Street
                            Chicago, IL  60654
                            (312) 862-3144

For Defendant               FOLEY & LARDNER LLP
International Paper:         BY:  MR. JAMES T. McKEOWN
                            777 East Wisconsin Avenue
                            Milwaukee, WI  53202
                            (414) 297-5530


                            EIMER STAHL LLP
                            BY:  MR. NATHAN P. EIMER
                            224 South Michigan Ave., Suite 1100
                            Chicago, IL  60604
                            (312) 660-7600

For Defendant               MAYER BROWN LLP
Temple-Inland:              BY:  MS. BRITT M. MILLER
                            71 South Wacker Drive
                            Chicago, IL  60606
                            (312) 782-0600

```
1   APPEARANCES CONTINUED:

2
    For Defendant                K & L GATES LLP
3   Cascades and Norampac:       BY:  MR. SCOTT M. MENDEL
                                  70 West Madison Street, Suite 3100
4                                 Chicago, IL  60602
                                  (312) 372-1121
5

6
    For Defendant                QUINN EMANUEL URQUHART &
7   Georgia-Pacific:             SULLIVAN LLP
                                  BY:  MR. STEPHEN R. NEUWIRTH
8                                 51 Madison Avenue, 22nd Floor
                                  New York, NY  10010
9                                 212-849-7000

10

11  For Defendant                WINSTON & STRAWN LLP
    RockTenn CP, LLC:            BY:  MR. MICHAEL MAYER
12                                    MR. R. MARK McCAREINS
                                  35 West Wacker Drive
13                                Chicago, IL  60601
                                  (312) 558-5902
14

15  For Defendant                McDERMOTT WILL & EMERY LLP
    Wayerhaeuser Company:        BY:  MS. JENNIFER A. SMULIN DIVER
16                                227 West Monroe Street, Suite 4400
                                  Chicago, IL  60606
17

18

19

20

21

22

23

24

25
```

02:40:08   1   (The following proceedings were had in open court:)

02:40:08   2   THE COURT: Hi, everyone. We are on the telephone in

02:40:10   3   the courtroom. I know you just gave all of your names to

02:40:14   4   Carolyn. Particularly here, since we don't have video, since

02:40:28   5   you are not like our prisoners with video conferencing, you

02:40:32   6   are going to have to say your name before you speak.

02:40:36   7   So Carolyn has a roll call. I think there are 22

02:40:38   8   people, right, on the phone, something like that. And this is

02:40:44   9   a referral from Judge Shadur. We are having this telephone

02:40:46   10   status based upon two orders that we entered on July 18th and

02:40:54   11   July 26th. It's to touch base and see if some of our motions

02:41:02   12   are on track and to get reports on your meet and confer.

02:41:08   13   Okay. So the first one is, plaintiffs, we received

02:41:14   14   your motion regarding temporal scope, and are we going to

02:41:22   15   receive the defendants' tomorrow?

02:41:28   16   Who is speaking for the defendant? Let me just ask

02:41:30   17   that. Who is speaking for the defendants?

02:41:34   18   MR. McCAREINS: Judge, it's Mark McCareins. I am not

02:41:38   19   -- because I am at an airport, so I am going to be on mute for

02:41:40   20   most of the time. I am going to be more silent than normal,

02:41:44   21   so that explains it.

02:41:44   22   THE COURT: Okay.

02:41:44   23   MR. McCAREINS: I have a flight to catch in 45

02:41:46   24   minutes, so my partner, Mike Mayer, will pick up if you go

02:41:52   25   that far. It's not going to be me taking the lead today.

| | | |
|---|---|---|
| 02:41:52 | 1 | THE COURT:  Okay. |
| 02:41:52 | 2 | MS. MILLER:  Your Honor, this is Britt Miller, |
| 02:41:56 | 3 | counsel for Temple-Inland. |
| 02:41:56 | 4 | THE COURT:  Yes. |
| 02:41:58 | 5 | MS. MILLER:  On this particular issue, I can speak. |
| 02:42:00 | 6 | Yes, we will be filing tomorrow per your Honor's schedule.  I |
| 02:42:04 | 7 | have one -- on that same point, I have one administrative |
| 02:42:06 | 8 | matter, and that is we -- like plaintiffs, we will be seeking |
| 02:42:12 | 9 | to file our response to the -- responses to the two motions |
| 02:42:16 | 10 | under seal.  I am happy to do the paperwork and file the |
| 02:42:18 | 11 | motion.  I am also happy to save your Honor the paperwork if |
| 02:42:22 | 12 | your Honor is inclined to simply enter a minute order |
| 02:42:26 | 13 | indicating that we have permission to file under seal. |
| 02:42:28 | 14 | THE COURT:  Yes.  And I am glad you said that.  I |
| 02:42:30 | 15 | received the plaintiffs' motion today, and we will grant their |
| 02:42:36 | 16 | motion, and we will grant your motion to file it under seal. |
| 02:42:40 | 17 | MS. MILLER:  So I do not need to file the paperwork |
| 02:42:42 | 18 | then, your Honor? |
| 02:42:44 | 19 | THE COURT:  Plaintiffs, does she need to file a |
| 02:42:46 | 20 | separate motion? |
| 02:42:48 | 21 | MR. WOZNIAK:  This is Robert Wozniak.  We did only |
| 02:42:54 | 22 | because that's how Chris had instructed us to proceed last |
| 02:42:56 | 23 | time.  I personally don't have a problem.  If you prefer not |
| 02:43:00 | 24 | to receive the paper and just enter the order, that's fine |
| 02:43:04 | 25 | with me. |

02:43:04  1      THE COURT:  Hold on one minute.  Lynette, we can't
02:43:04  2  have an order for all of these.  They have to file a separate
02:43:14  3  motion for each?
02:43:14  4      THE CLERK:  Yes, they have to file one under seal,
02:43:16  5  and then there is the public version, the redacted version.
02:43:16  6      THE COURT:  No, they know that, but do they need a
02:43:24  7  separate motion?
02:43:24  8      THE CLERK:  No.
02:43:26  9      THE COURT:  Ms. Miller, we don't need a separate
02:43:28  10  motion, but, obviously, we need separate pleadings.  And this
02:43:32  11  docket could become very heavy.  I think that if we have an
02:43:36  12  agreement going forward, since this is really our first motion
02:43:44  13  in nine months, that we will make a finding of the need for it
02:43:50  14  that there may be proprietary information contained, then I
02:44:00  15  don't think you have to file a separate motion.  If I find out
02:44:02  16  you do, I will let you know, but I don't think we need a
02:44:04  17  separate motion if we have an agreement that that's how we are
02:44:08  18  going to be treating this.
02:44:10  19      MS. MILLER:  Thank you, your Honor.  Then we will
02:44:12  20  file under seal and we will file a public redacted version.
02:44:16  21      THE COURT:  Okay.  And the same thing for the
02:44:16  22  plaintiffs.
02:44:18  23      MR. MOGIN:  Very good, your Honor.
02:44:20  24      THE COURT:  On the temporal scope, this is a motion
02:44:24  25  that we also have a reply is due.  We anticipated when we sent

02:44:30   1   this that that motion would just be done on the papers, and
02:44:36   2   that reply is due August 24th.  Do you think you're going to
02:44:42   3   be able to make that?  This is just kind of a status check.
02:44:44   4   As you are right now, do you think you will be able to make
02:44:48   5   that deadline?
02:44:50   6          MR. MOGIN:  Your Honor, Dan Mogin speaking.  I think
02:44:54   7   there is a slight bit of -- at least on my part, I had thought
02:44:58   8   that what we were going to do was after the defendant filed
02:45:04   9   their motion because it was likely to be heavily factual in
02:45:12  10   terms of their documentation of --
02:45:14  11          THE COURT:  You're kind of going in and out, Dan, a
02:45:18  12   little bit.
02:45:18  13          MR. MOGIN:  Let me change phones a little bit.
02:45:22  14          THE COURT:  Good.
02:45:22  15          MR. MOGIN:  I will try and be better.
02:45:24  16          THE COURT:  Okay.  Thank you.
02:45:30  17          MR. MOGIN:  Is this better, your Honor?
02:45:32  18          THE COURT:  Yes, much better.  Thank you.
02:45:34  19          MR. MOGIN:  What I was trying to say is my
02:45:36  20   recollection is that when we discussed the temporal scope
02:45:40  21   motion, that it was anticipated that the defendant's motions
02:45:44  22   would be particularly -- their oppositions, rather, would be
02:45:48  23   particularly factual because they were going to curtail their
02:45:52  24   claims of burden.
02:45:54  25          THE COURT:  Right.

02:45:54   1    MR. MOGIN:  And that while we had scheduled in I
02:45:56   2  think it was the 24th as a sort of hold-the-date --
02:46:02   3    THE COURT:  Right.
02:46:02   4    MR. MOGIN:  -- situation, that the plan was actually
02:46:06   5  that the plaintiffs would have some time to review the motion,
02:46:08   6  and then we would report to the court and advise whatever
02:46:12   7  schedule was necessary at that time.
02:46:16   8    THE COURT:  Okay.  You know, having reviewed your
02:46:24   9  motion, it is really going to require seven very specific or
02:46:28  10  some kind of very specific responses.  So that's fine with me.
02:46:34  11    We do have down August 24th for reply, but I am
02:46:40  12  certainly -- I want to see what we get tomorrow, and then we
02:46:44  13  will probably know a little bit more after that.
02:46:46  14    MS. MILLER:  Typically, your Honor -- again, this is
02:46:50  15  Britt Miller for Temple-Inland -- defendants will be filing a
02:46:54  16  combined response.  We didn't -- as well as there will be some
02:47:00  17  attachments to that that go to specific issues as to each
02:47:04  18  defendant, but we will be filing it as one submission.
02:47:08  19    THE COURT:  Okay.  That's good.
02:47:10  20    MS. MILLER:  The main brief will -- we don't expect
02:47:16  21  will exceed the page limits that are in place, but obviously
02:47:18  22  there will be small submissions specific to each defendant
02:47:22  23  that are attached.  We want to make sure that you don't have
02:47:26  24  an objection and we need to file a motion for a formal
02:47:28  25  extension of page limits.  We are happy to do so, but the main

02:47:32  1    submission will not exceed the page limit.

02:47:34  2            THE COURT:  Okay.  That's good to hear.

02:47:38  3            All right.  So, Mr. Mogin, we will work with you on

02:47:40  4    that.  Let's see what we get tomorrow.  Okay?  I actually

02:47:46  5    didn't need -- even though you are going to be off in a much

02:47:52  6    more wonderful place, we may need another telephone status

02:47:54  7    anyway.  So let's not worry about that right now.  We have

02:47:58  8    plenty of other things to worry about.

02:48:00  9            Okay.  So that was our -- that is the -- all right.

02:48:12  10   Then that's one motion.  Then the second motion is plaintiffs'

02:48:18  11   motion to compel documents, to produce documents and data from

02:48:26  12   all -- oh, no, I'm sorry.  Yeah, to produce documents from all

02:48:30  13   reasonably accessible sources.  And on that, we are also

02:48:38  14   getting tomorrow, correct, your response to that?

02:48:44  15           MS. MILLER:  Your Honor, this is Britt Miller for

02:48:46  16   Temple-Inland again.  When I spoke a moment ago and said a

02:48:50  17   combined response, it will be responsive to -- defendants'

02:48:54  18   response will be responsive to both.

02:48:56  19           THE COURT:  Oh, to both.

02:48:58  20           MS. MILLER:  For time period and data sources will be

02:49:02  21   addressed in the same submission.

02:49:04  22           THE COURT:  Right.  And the temporal scope is

02:49:06  23   obviously -- that's not as -- we don't think it's as factually

02:49:12  24   separate.  Okay.

02:49:16  25           And on the reasonably accessible sources, this is

02:49:22　1　what we have set the status for because I think probably

02:49:28　2　pretty wisely, we have set at the moment an in-person status

02:49:34　3　on August 29th, correct?  And Mr. Mogin would be back by then?

02:49:42　4　　　　　MR. MOGIN:  He would be, your Honor, extremely

02:49:48　5　jet-lagged.  I will bring you a coconut or a lei.

02:49:52　6　　　　　THE COURT:  Right.  And on August 29th, if we needed

02:49:56　7　either more information or specifics or Chris and I are trying

02:50:02　8　to plow through and figure out what goes to what person or

02:50:06　9　what defendant, but we are not going to be able to tell that

02:50:12　10　until we get our hands on the response, which is why I'm also

02:50:18　11　saying we might have to have a -- if we are going to have any

02:50:22　12　kind of either argument on the 29th, if we are going to have

02:50:26　13　more detail on the 29th, I'd like to be able to tell you what

02:50:30　14　we need.

02:50:32　15　　　　　So until I see what the response is, I think --

02:50:40　16　because we had the status the day before these items are due,

02:50:46　17　which wasn't the best planning on my part, I am kind of

02:50:52　18　talking without having all the facts.

02:50:56　19　　　　　All right.  So those are the only two that we have

02:51:00　20　briefing on.

02:51:02　21　　　　　Then we have five or six issues that parties are

02:51:06　22　still working on meet and confers on, and you were going to

02:51:12　23　let me know if you think the meet-and-confer process is

02:51:18　24　working and therefore not set the briefing or if, in fact, we

02:51:24　25　have to resort to briefing on any of these issues.

02:51:30  1      So, number one, I've got down, and not in any

02:51:36  2   particular order, but I just happen to have down are the

02:51:40  3   parties -- the plaintiffs will make a request for additional

02:51:42  4   custodians to individual defendants.  That was by 7/27.

02:51:50  5   Defendants will respond to the request by August 3rd.  And

02:51:54  6   then plaintiffs shall file any motion to compel by August

02:52:02  7   10th.

02:52:02  8      So here's a perfect time to ask.  Mr. Mogin, or

02:52:06  9   anyone else, Mr. Wozniak, what happened with those meet and

02:52:10 10   confers, and are you planning to file any motions tomorrow on

02:52:14 11   this issue?

02:52:16 12      MR. MOGIN:  Yes, your Honor, we are planning to file

02:52:18 13   motions tomorrow.

02:52:24 14      THE COURT:  All right.

02:52:24 15      MR. MOGIN:  We have had very extensive meet and

02:52:30 16   confers that have taken place this week between the defendants

02:52:32 17   and the various plaintiffs' attorneys assigned to (inaudible)

02:52:42 18   defendants.  We have reached resolution with a number of

02:52:44 19   defendants, we are very close to resolution with another

02:52:50 20   defendant, and then there is a group of defendants that it

02:52:54 21   appears that motions to compel will be necessary.

02:52:56 22      THE COURT:  All right.  And then we have that

02:52:58 23   briefing set up that defendant -- that plaintiffs shall file

02:53:04 24   any motion to compel for additional custodians by August 10th,

02:53:10 25   which is tomorrow, and you will tell us who is at issue, and

| | |
|---|---|
| 02:53:14 | 1 |
| 02:53:22 | 2 |
| 02:53:26 | 3 |
| 02:53:38 | 4 |
| 02:53:40 | 5 |
| 02:53:44 | 6 |
| 02:53:48 | 7 |
| 02:53:48 | 8 |
| 02:53:52 | 9 |
| 02:53:56 | 10 |
| 02:54:00 | 11 |
| 02:54:02 | 12 |
| 02:54:04 | 13 |
| 02:54:06 | 14 |
| 02:54:06 | 15 |
| 02:54:10 | 16 |
| 02:54:14 | 17 |
| 02:54:14 | 18 |
| 02:54:18 | 19 |
| 02:54:20 | 20 |
| 02:54:26 | 21 |
| 02:54:32 | 22 |
| 02:54:36 | 23 |
| 02:54:38 | 24 |
| 02:54:38 | 25 |

1  then defendants' responses to that motion are due August 17th.

2      Do you know, defendants, who are going to have to

3  file these responses, and does August 17th still work for you?

4      MR. McKEOWN:  Your Honor, this is Jim McKeown on

5  behalf of International Paper.  To the extent that we need to

6  file any response, August 17th is fine.

7      THE COURT:  Thank you.

8      MR. NEUWIRTH:  Steve Neuwirth.  To the extent that

9  Georgia-Pacific is required to file a response, assuming there

10  is nothing unexpected in the papers, the 17th will work for

11  us.

12      MR. McCAREINS:  Mark McCareins for RockTenn.  We are

13  in the same boat.

14      THE COURT:  Good.

15      MS. MILLER:  Britt Miller for Temple-Inland.  Us as

16  well.  To the extent we are required to file a response, we

17  will do so on the 17th.

18      THE COURT:  Do you think those are the four folks who

19  are going to be the object of your motion?

20      MR. MOGIN:  Yes, as well -- let me put it kind of as

21  delicately as I can.  Some of the people who spoke I would

22  suggest may be in the middle category where there is still a

23  possibility for resolution.

24      THE COURT:  Good.

25      MR. MOGIN:  Some of the people who spoke, I think

02:54:42　1　that the likelihood of resolution is very small.

02:54:44　2　　　　　THE COURT:  Okay.

02:54:44　3　　　　　MR. MOGIN:  There is one party who hasn't spoken up,

02:54:46　4　and that was Cascades and Norampac, and it seems likely that

02:54:54　5　they will be in the category that will need to respond.

02:54:58　6　　　　　THE COURT:  Okay.  And even after you get Mr. Mogin's

02:55:02　7　motion tomorrow, if you can still resolve it, that's great

02:55:08　8　too.  We set these dates only because of my desire -- I mean,

02:55:14　9　we set these dates in hope that I could get as much done by

02:55:20　10　September 30th.  It is in no way to discourage you from

02:55:24　11　continuing to talk.  Okay?  Even if you just narrow it down a

02:55:28　12　little bit, it helps.  It certainly helps us, and I think it

02:55:32　13　helps you.

02:55:32　14　　　　　So on that, we have opening briefs and responses.

02:55:38　15　Chris put down -- Chris isn't here today, but we put down no

02:55:42　16　replies shall be filed.  If we find out after reading them

02:55:46　17　that we need something, we will let you know.  Okay?

02:55:52　18　　　　　Next thing that you were attempting to work on

02:55:56　19　together that we didn't want to -- was the Georgia-Pacific.

02:56:06　20　You were working on the interrogatories served on

02:56:12　21　Georgia-Pacific.  Has that been resolved?

02:56:18　22　　　　　MR. NEUWIRTH:  Your Honor, this is Steve Neuwirth for

02:56:20　23　Georgia-Pacific.  The matter has not been resolved, and,

02:56:24　24　unfortunately, we believe that a motion for a protective order

02:56:26　25　is necessary.  As you will recall at the last status

02:56:30 1 conference, counsel for plaintiffs had suggested to the court

02:56:34 2 that at the then upcoming 30(b)(6) deposition of

02:56:44 3 Georgia-Pacific scheduled for August 1st, they hoped to be

02:56:46 4 able to obtain information that would render further pursuit

02:56:50 5 of this interrogatory unnecessary in whole or at least in

02:56:58 6 large part, and I believe at the conclusion of the conference,

02:57:00 7 you specifically asked for a report on how that had proceeded.

02:57:06 8 Georgia-Pacific produced a witness on August 1st who

02:57:12 9 I believe the record will show was extremely well informed and

02:57:16 10 able to answer any questions that he was asked about any of

02:57:20 11 the topics related to the subject matter of the interrogatory.

02:57:26 12 When there was still very substantial time left at the

02:57:30 13 deposition, the plaintiffs indicated that they were ready to

02:57:32 14 end the deposition, and we stated that the witness was

02:57:36 15 available to answer any more questions, and we had to assume

02:57:40 16 that if the deposition was ending, they had achieved anything

02:57:44 17 they needed to be able to withdraw the interrogatory.  We were

02:57:48 18 told that was not the case, and we told the plaintiffs to keep

02:57:52 19 asking whatever questions they had to ask.  The witness was

02:57:54 20 there and available.

02:57:56 21 There was some additional questioning, but when there

02:57:58 22 was still time left, the plaintiffs ended the deposition.  And

02:58:04 23 when we asked the next day if the interrogatory was now going

02:58:06 24 to be withdrawn, we were told that it was not going to be.

02:58:12 25 And in addition to the fact that this interrogatory,

02:58:18    1    as you will recall, was the response that the plaintiffs had

02:58:22    2    to Georgia-Pacific's voluntary act of compromise in making

02:58:26    3    available its list of almost 400 litigation hold recipients,

02:58:32    4    the response of the plaintiffs was to serve an interrogatory

02:58:36    5    which asked very -- you know, at least four very difficult

02:58:40    6    questions about each of these 400 people, including a

02:58:44    7    description of all their job responsibilities for the last

02:58:46    8    eight years, a description of everybody they reported to for

02:58:52    9    the last eight years and their titles, and everybody who

02:58:52    10   reported to them for the last eight years and their titles,

02:58:58    11   and other information.  And, you know, this is obviously

02:59:02    12   extremely burdensome and we think a wholly inappropriate

02:59:04    13   response to that act by Georgia-Pacific following the

02:59:10    14   conference with your Honor to try to come up with a way to

02:59:12    15   deal with the absence of organizational charts at the company.

02:59:18    16        In addition, Georgia-Pacific had previously answered

02:59:24    17   interrogatories that were served by plaintiffs on

02:59:26    18   organizational issues, and when Georgia-Pacific in the

02:59:28    19   compromise answered these interrogatories, they were told in

02:59:32    20   writing by the plaintiffs that there would be no further

02:59:34    21   interrogatories on these types of organizational issues.

02:59:38    22        And lastly, we believe that the interrogatory as

02:59:42    23   structured asking at least four questions that have to be

02:59:46    24   separately answered for 400 individuals overtly violates the

02:59:52    25   limitations on interrogatories in the federal rules and the

02:59:54   1    case law that has interpreted what it means to have more than

02:59:58   2    one interrogatory.

03:00:00   3         And so for all of these reasons and with tremendous

03:00:04   4    frustration that this is where our good-faith efforts have

03:00:08   5    ended us up, we would respectfully ask for permission from

03:00:14   6    your Honor to move for a protective order.

03:00:18   7         MR. GOODWIN:  Your Honor, may I respond?  This is

03:00:18   8    Charles Goodwin.  Yes, during the deposition -- actually, let

03:00:24   9    me back up further.  I am sure your Honor remembers, and

03:00:24  10    throughout the litigation, Georgia-Pacific has represented

03:00:28  11    that it does not have job descriptions for its employees.

03:00:30  12    Well, during the deposition of Georgia-Pacific's 30(b)(6)

03:00:36  13    representative, we learned that, in fact, Georgia-Pacific

03:00:40  14    prepares job descriptions for its employees annually and

03:00:44  15    apparently throughout the company.

03:00:46  16         I mean, I'm not going to belabor the court with

03:00:52  17    specific plaintiffs where GP had represented that it didn't

03:00:56  18    have job descriptions.  And until we learned this fact,

03:01:00  19    plaintiffs were going to cope with the rather cursory

03:01:06  20    descriptions of individual's jobs that the deponent was able

03:01:10  21    to give, but it seems to me that our interrogatory can be

03:01:16  22    handily answered by a production that would run one, maybe two

03:01:18  23    boxes worth of documents in terms of pages.

03:01:22  24         Back in the old paper world, if you will forgive me,

03:01:26  25    I guess I am old fashioned, I am not here to argue the motion

03:01:28   1   today, we will do that on the papers, but this interrogatory

03:01:34   2   is hardly burdensome.  It can be handily answered by a small

03:01:40   3   production of paper.  It should be relatively easy for

03:01:46   4   Georgia-Pacific to put together.  There is really no reason

03:01:50   5   for this.  If they prefer to answer and have us move -- well,

03:01:54   6   I guess it's actually better for them to move since they

03:01:58   7   are --

03:01:58   8           THE COURT:  No, I think Mr. Marovitz summarized what

03:02:04   9   happened with this, so I think that because this was a very

03:02:08   10   specific series of events that led up to this, and I want to

03:02:12   11   make sure -- I'm actually happy you are filing the motion.  I

03:02:16   12   want to make sure that it is clear for the future on how this

03:02:22   13   happened because it was a work in progress by a judge that was

03:02:26   14   trying to figure out a method here; you know, trying to figure

03:02:36   15   out a method that could be fair to both sides.

03:02:44   16           So, Mr. Neuwirth, will you file that -- can you file

03:02:46   17   it within seven days?

03:02:50   18           MR. NEUWIRTH:  We can file it by Tuesday, your Honor.

03:02:52   19           THE COURT:  Tuesday.  Okay.

03:02:52   20           So would you like seven days -- so Tuesday is --

03:02:58   21   Lynette, Tuesday is the 14th.

03:03:00   22           THE CLERK:  14th.

03:03:02   23           THE COURT:  Would seven days work for you,

03:03:06   24   Mr. Goodwin?

03:03:08   25           MR. GOODWIN:  I believe so.  If the court will just

03:03:10 1  forgive me, I am scanning my calendar here, and I think that

03:03:14 2  should be fine.

03:03:16 3        THE COURT:  Okay.  21st.  And we probably should --

03:03:20 4  on this one, because it will just be simpler just to deal with

03:03:24 5  it, let's give you a short reply.

03:03:28 6        I don't want you to attach the whole 30(b)(6).  Okay?

03:03:32 7  I mean, I know that the 30(b)(6) got -- you know, was in there

03:03:38 8  as maybe a way to ask -- I don't want to be plowing over the

03:03:42 9  30(b)(6).  The 400 requests that came from that meet and

03:03:48 10  confer to me is a bigger issue than what was asked at the

03:03:52 11  30(b)(6), so I don't want to review the whole record.  Okay?

03:03:56 12        MR. GOODWIN:  Your Honor, if I may, I am leaving that

03:04:00 13  characterization.  We are not scheduling argument here.  We

03:04:04 14  are talking about whether or not to have a motion.  That

03:04:06 15  characterization is kind of outside of the ballpark, really.

03:04:12 16  It is literally true while being totally misleading, and I am

03:04:14 17  not going to go into this here.

03:04:18 18        THE COURT:  It sounds like you got some good stuff

03:04:20 19  out of it anyway, so that was what the function of the

03:04:22 20  30(b)(6) was.

03:04:24 21        Mr. Neuwirth, give you seven days for reply on that

03:04:30 22  one.  Okay?

03:04:30 23        MR. NEUWIRTH:  Sure, thank you.

03:04:30 24        THE COURT:  And that will be the --

03:04:32 25        MR. NEUWIRTH:  21st.

| | | |
|---|---|---|
| 03:04:34 | 1 | THE COURT:  No, 14 -- |
| 03:04:36 | 2 | MR. NEUWIRTH:  28th, you're correct. |
| 03:04:38 | 3 | THE COURT:  28th. |
| 03:04:40 | 4 | MR. NEUWIRTH:  Yes. |
| 03:04:40 | 5 | THE COURT:  Then we will just rule by mail. |
| 03:04:42 | 6 | MR. NEUWIRTH:  In fact, your Honor, if it's not a |
| 03:04:44 | 7 | problem, because of a conflict I have, we can file our |
| 03:04:48 | 8 | response on the 27th. |
| 03:04:48 | 9 | THE COURT:  Good.  Even better. |
| 03:04:50 | 10 | All right.  Then that was one motion. |
| 03:04:56 | 11 | Another area that you were trying to -- and let's |
| 03:05:00 | 12 | just continue on with you, Mr. Neuwirth, were the James Hannon |
| 03:05:04 | 13 | documents. |
| 03:05:06 | 14 | MR. NEUWIRTH:  Yes. |
| 03:05:08 | 15 | THE COURT:  And these were documents, and you were to |
| 03:05:10 | 16 | advise the status of producing these documents. |
| 03:05:14 | 17 | MR. NEUWIRTH:  And they have been produced. |
| 03:05:24 | 18 | MR. McKEOWN:  As of today. |
| 03:05:24 | 19 | THE COURT:  Pardon me? |
| 03:05:24 | 20 | MR. McKEOWN:  As of -- was it today or yesterday they |
| 03:05:24 | 21 | were produced? |
| 03:05:26 | 22 | THE COURT:  Okay. |
| 03:05:26 | 23 | MR. NEUWIRTH:  Your Honor, I can assure you that |
| 03:05:28 | 24 | Georgia-Pacific worked in good faith to make the production as |
| 03:05:32 | 25 | promptly as practicable, which it did, and yesterday was |

| | | |
|---|---|---|
| 03:05:38 | 1 | really the date when the materials were ready.  It was not -- |
| 03:05:44 | 2 | obviously we were trying to get it done as quickly as possible |
| 03:05:46 | 3 | before today's conference, but yesterday was when it was |
| 03:05:50 | 4 | ready. |
| 03:05:50 | 5 | THE COURT:  Good.  Okay. |
| 03:05:52 | 6 | MR. MOGIN:  Your Honor, a point of housekeeping on |
| 03:05:54 | 7 | that respect, if I may. |
| 03:05:56 | 8 | THE COURT:  Yes.  Who is this? |
| 03:05:58 | 9 | MR. MOGIN:  This is Mr. Mogin. |
| 03:06:00 | 10 | THE COURT:  Okay. |
| 03:06:00 | 11 | MR. MOGIN:  I wonder if anybody else has had trouble |
| 03:06:04 | 12 | accessing those documents or whether that's a problem that's |
| 03:06:10 | 13 | unique to my firm? |
| 03:06:12 | 14 | THE COURT:  You mean the format or what, Dan? |
| 03:06:14 | 15 | MR. MOGIN:  Yes, your Honor.  The way the production |
| 03:06:18 | 16 | was made, it was put on what's called a propriety entity site |
| 03:06:24 | 17 | or something like that where we get a password and we go in |
| 03:06:28 | 18 | and download the documents.  And we have had -- we have been |
| 03:06:32 | 19 | unable to do so.  We worked with the technical people at KPMG, |
| 03:06:38 | 20 | and they basically threw this back to us.  And I was wondering |
| 03:06:42 | 21 | if it was truly a problem that was unique to us or others. |
| 03:06:46 | 22 | THE COURT:  Mr. Neuwirth, could you have your IT |
| 03:06:50 | 23 | people talk to their IT people and just see?  I mean, this |
| 03:06:54 | 24 | isn't really -- it's like a format problem more than you |
| 03:06:56 | 25 | disagreeing on turning over the documents.  Can you try to |

| | | |
|---|---|---|
| 03:07:00 | 1 | figure that out? |
| 03:07:02 | 2 | MR. NEUWIRTH:  Of course.  The documents have been |
| 03:07:02 | 3 | turned over to allow Mr. Mogin to see them, so nobody is |
| 03:07:06 | 4 | looking to impede that in any way, and I will be happy to do |
| 03:07:08 | 5 | what I can to facilitate his access. |
| 03:07:12 | 6 | THE COURT:  Good. |
| 03:07:12 | 7 | MR. MOGIN:  Thank you. |
| 03:07:14 | 8 | THE COURT:  Then if the two of you run into a problem |
| 03:07:16 | 9 | on that issue, Chris will be back Monday.  Chris is actually |
| 03:07:18 | 10 | very good at formatting.  Give him a call.  Okay? |
| 03:07:22 | 11 | MR. MOGIN:  Sure. |
| 03:07:24 | 12 | THE COURT:  Okay.  Here is another one that I have |
| 03:07:32 | 13 | down that you were working, everyone was, on transactional |
| 03:07:36 | 14 | data request.  This was another one that we put off briefing |
| 03:07:40 | 15 | on hoping that you were going to be able to maybe resolve. |
| 03:07:46 | 16 | Who can speak to this? |
| 03:07:48 | 17 | MR. MOGIN:  Mr. Mogin, your Honor.  I had made a |
| 03:07:52 | 18 | commitment to Mr. McKeown that I would give him a response |
| 03:07:56 | 19 | before taking off on my trip. |
| 03:08:00 | 20 | THE COURT:  Dan, you're fading in and out again.  Is |
| 03:08:02 | 21 | there anything else you can -- are you on speaker or anything? |
| 03:08:08 | 22 | I don't know what the problem is. |
| 03:08:08 | 23 | MR. MOGIN:  No, I am speaking right into the |
| 03:08:10 | 24 | receiver, your Honor. |
| 03:08:10 | 25 | THE COURT:  Okay.  Now that sounded better. |

| | | |
|---|---|---|
| 03:08:16 | 1 | MR. MOGIN:  Is this better, your Honor? |
| 03:08:18 | 2 | THE COURT:  Yeah. |
| 03:08:18 | 3 | MR. MOGIN:  Okay.  I have committed to Mr. McKeown |
| 03:08:22 | 4 | that I would give him a response to his most recent |
| 03:08:26 | 5 | communication before I left for the trip, and we sent that out |
| 03:08:32 | 6 | yesterday.  The status, however, is that the plaintiffs still |
| 03:08:40 | 7 | lack certain information to be able to fully comprehend the |
| 03:08:46 | 8 | proposal.  We have been through the proposal based on the |
| 03:08:48 | 9 | information that we do have with our experts, and without the |
| 03:08:56 | 10 | additional information that we are seeking, we are unable to |
| 03:09:02 | 11 | give an up or down answer to the defendants' proposal to |
| 03:09:06 | 12 | provide extracts rather than providing the native database. |
| 03:09:14 | 13 | To put some more detail on it, each of the defendants |
| 03:09:18 | 14 | were supposed to provide us with information specific to the |
| 03:09:26 | 15 | data fields that they could provide.  Two of the defendants |
| 03:09:28 | 16 | provided it to us just last week, and, unfortunately, it was |
| 03:09:34 | 17 | after our experts had met, so we were missing that |
| 03:09:36 | 18 | information.  And then there were a number of things that we |
| 03:09:40 | 19 | had requested that Mr. McKeown indicated the defendants were |
| 03:09:44 | 20 | working on getting together, but we haven't received them. |
| 03:09:48 | 21 | Those were exemplars so that we could get a better |
| 03:09:52 | 22 | understanding of what precisely the defendants were proposing. |
| 03:09:58 | 23 | And so we've responded to him, told him what our concerns are, |
| 03:10:04 | 24 | and I guess at this point, the ball is in their court.  I have |
| 03:10:06 | 25 | designated my co-counsel to move the ball forward in my |

03:10:14   1   absence.

03:10:20   2          THE COURT:  So, defendants, do you need more time?

03:10:24   3          MR. McKEOWN:  Your Honor, this is Jim McKeown.  On

03:10:26   4   the transactional data field issue, I think we continue to

03:10:30   5   have some disagreements with the plaintiffs about what is

03:10:32   6   needed or appropriate.  It strikes me that it might be

03:10:36   7   appropriate for us to try to continue to meet and confer with

03:10:42   8   these topics with plaintiffs.  As Mr. Mogin said, we sent a

03:10:46   9   letter yesterday.  And perhaps this is a topic that if we are

03:10:50  10   going to have an in-person status in late August, that it be

03:10:56  11   put on the agenda for that.

03:10:58  12          THE COURT:  Okay.  Here is a little bit more updated

03:11:02  13   news too I want to give you.  Something like this that's not

03:11:08  14   -- you know, that's an issue with a little bit more time, with

03:11:12  15   vacations, and with everything else might be able to be worked

03:11:18  16   out.  I don't want to do unnecessary briefing here.

03:11:22  17          Chris has been hired by Mary Roland to be her law

03:11:28  18   clerk, so one of the things that I think is very good for you,

03:11:34  19   and I am hoping that Mary Roland will be taking over my

03:11:40  20   calendar, that's not written in stone yet, but you're going to

03:11:46  21   have consistency with Chris here.  So I think that should give

03:11:50  22   you a little bit of comfort.  And if it is Mary Roland, she

03:11:54  23   was the head of the Seventh Circuit pilot on our whole

03:11:58  24   education program for the last three years.  She's very

03:12:00  25   knowledgeable in e-discovery.

03:12:04   1    So if a little bit more time may avert another

03:12:12   2  motion, it's not going to hurt anything down the road, and we

03:12:14   3  can put our efforts in things that are fully ready to be

03:12:18   4  briefed, okay?

03:12:20   5    So I think, Mr. McKeown, that's a good idea.  On the

03:12:24   6  transactional, let's give you a couple more weeks, and when

03:12:28   7  you come in at the end of August, we can set briefing.  And if

03:12:30   8  Nolan can't do it, then it just rolls over to Roland.  Okay?

03:12:36   9  I mean, does that seem to make logical sense then?

03:12:40  10    MR. MOGIN:  Yes, your Honor.

03:12:42  11    THE COURT:  If anybody else wants to say anything,

03:12:44  12  you know, you could jump in.

03:12:46  13    We have a couple other issues here too.

03:12:50  14    The next one really relates to IP, so Mr. McKeown,

03:12:54  15  while you are on the floor, you and Mr. Mogin can let me know

03:13:00  16  what's happening.  And so the record is clear -- I want to say

03:13:08  17  this the correct way -- the court has determined that the most

03:13:10  18  efficient use of the court and parties' time is to address --

03:13:16  19  this is for the requests for production -- issues in stages.

03:13:22  20  And what we ordered is that International Paper would take the

03:13:24  21  lead and that you shall revise -- we ordered this back on the

03:13:32  22  18th, and I'm assuming you are going to tell me you are in the

03:13:36  23  process of it or you've done it -- shall revise its responses

03:13:38  24  to incorporate the information in the chart that was

03:13:42  25  previously prepared, and you were to endeavor to serve its

03:13:54　1　revised RFP's by July 23rd.  So did that happen?

03:13:58　2　　　　MR. McKEOWN:  Yes, your Honor.  We served the revised

03:14:02　3　responses actually three days earlier, on Friday, July 20th.

03:14:06　4　And then I believe at our last telephonic status conference on

03:14:10　5　the 4th, it was left that the plaintiffs were going to get

03:14:12　6　back to us at the end of this week in terms of which ones they

03:14:16　7　still had disagreements with.

03:14:18　8　　　　THE COURT:  Okay.  Mr. Mogin, I know you have a ton

03:14:22　9　on your plate before you're going out the door, but can you

03:14:24　10　tell us where you are in deciding on the sufficiency of IP's

03:14:32　11　responses?

03:14:34　12　　　　MR. MOGIN:  Your Honor, my apologies.  I had hoped

03:14:36　13　that Jeff Baum (phonetic), who had been handling this, would

03:14:46　14　be here able to join us today so that he could give a direct

03:14:46　15　report.  And I am a little bit out of the loop on this myself.

03:14:50　16　I will say that I am not -- I am a little surprised by the

03:14:58　17　deadline tomorrow.

03:15:00　18　　　　THE COURT:  Well, am I wrong?  Maybe I am

03:15:04　19　misspeaking.

03:15:04　20　　　　MR. MOGIN:  You didn't say it.

03:15:08　21　　　　THE COURT:  Oh, Mr. McKeown said it, right.

03:15:10　22　　　　MR. McKEOWN:  I thought that in our last conversation

03:15:12　23　with the court that you were going to be back to us by the end

03:15:16　24　of this week if there was an issue.  My conversations with

03:15:20　25　Mr. Sprung had been it was obviously a very lengthy document,

03:15:24 1 your Honor, and I believe we discussed this the last time we

03:15:28 2 had a telephonic conference. And they needed more time to

03:15:32 3 look at it, study it. And as of now, we have not had a

03:15:36 4 follow-up meet and confer because Mr. Sprung was still doing

03:15:40 5 it.

03:15:40 6 I mean, what I might suggest if we are going to get

03:15:42 7 this moving and decided before the end of September is we

03:15:48 8 could have the briefing schedule start on the 24th of August

03:15:52 9 if we don't have some agreement by then, and then I think your

03:15:56 10 prior order had set out two-week response, two-week reply.

03:16:04 11 THE COURT: On this particular issue you think that

03:16:06 12 we put -- hold on. Just one minute.

03:16:18 13 The only thing I see, Mr. McKeown, was that we would

03:16:22 14 get a status update today. I don't have any further briefing

03:16:26 15 after that.

03:16:32 16 MR. McKEOWN: I have on the order of July 18th, the

03:16:38 17 very bottom of the page, it starts at the end of -- it starts

03:16:38 18 at the end of the last three lines and continues on to the

03:16:42 19 second page as it prints out on my copy.

03:16:44 20 THE COURT: Oh, two weeks. Okay. Well, particularly

03:16:50 21 since Mr. Sprung isn't on the phone, if nothing else, I will

03:16:54 22 have -- Chris and you and I and Mr. Sprung will have a

03:16:58 23 conversation without everybody else if we have to set this up.

03:17:04 24 This is going to be a major brief. And since we're using you

03:17:08 25 as kind of the guinea pig for everybody else, other people

03:17:14 1 might have some thoughts on this too.

03:17:24 2 So I do think if we are going to set the briefing,

03:17:28 3 then we will have a separate conversation on this. Since

03:17:32 4 Mr. Sprung is not here, I mean, it's not fair --

03:17:34 5 MR. McKEOWN: I understand, your Honor.

03:17:34 6 THE COURT: -- it's not fair to him without getting

03:17:36 7 his input.

03:17:36 8 So, Mr. Mogin, we'd be doing that without --

03:17:42 9 Mr. Sprung is in charge of this part of the case; is that

03:17:44 10 correct?

03:17:44 11 MR. MOGIN: He's got the laboring oar.

03:17:50 12 THE COURT: Mr. Freed, if you want to jump on that

03:17:52 13 phone call if we have to have it.

03:17:54 14 MR. FREED: Yes, your Honor. Thank you. This is

03:17:56 15 Michael Freed. I was going to suggest that I participate

03:18:00 16 since Mr. Mogin will be away.

03:18:00 17 THE COURT: Right. Right. So why don't -- Jim, next

03:18:08 18 week, why don't you talk to Mr. Sprung, Chris will be back

03:18:10 19 next Monday, and if we need to have a conference, we can

03:18:14 20 easily set something up if you really think full-fledged

03:18:20 21 briefing should start on this.

03:18:20 22 MR. McCAREINS: Your Honor, I'm sorry to interrupt.

03:18:26 23 Mark McCareins for RockTenn. I am being asked to get on a

03:18:26 24 plane, so I am going to turn whatever is left to Mr. Mayer.

03:18:30 25 Thank you.

03:18:30  1    THE COURT:  Thanks for participating.  Have a good

03:18:32  2  trip.

03:18:38  3    MR. McKEOWN:  Your Honor, we'd be happy to do that.

03:18:40  4  Alternatively, I think the court suggested earlier that after

03:18:42  5  you see the briefs that are being filed tomorrow, you might be

03:18:44  6  scheduling a telephonic conference.

03:18:44  7    THE COURT:  Right.  Right.

03:18:48  8    MR. McKEOWN:  So we could cover it at that time, so

03:18:50  9  whatever suits your schedule better.

03:18:58  10    THE COURT:  Right.  Okay.  So I guess the big

03:19:12  11  question while we have Mr. Mogin on here, what I should have

03:19:16  12  actually started with, have you entered into a stipulation

03:19:20  13  regarding the search methodology and the need for the

03:19:22  14  September hearing to resume the hearing?

03:19:28  15    MR. FREED:  Your Honor, Michael Freed.  If I may

03:19:32  16  address this?

03:19:32  17    THE COURT:  Sure.

03:19:34  18    MR. FREED:  (Inaudible.)

03:19:34  19    THE COURT:  Wait, wait.  Hold on.  Now we are getting

03:19:46  20  an echo.

03:19:46  21    MR. FREED:  I'm sorry, Judge.  Is it any better now?

03:19:48  22    THE COURT:  Yes, it's much better.  Thank you.

03:19:50  23    MR. FREED:  Sorry.  We did draft a stipulation which

03:19:52  24  we sent to the defendants.  It essentially set forth the fact

03:19:54  25  that we would agree to not insist on CBAA or predictive coding

03:20:04  1  with respect to the defendants' production in response to the

03:20:08  2  first request and that one of the conditions of that is that

03:20:10  3  we reserved all of our rights and objections and we thought

03:20:14  4  that was what had been discussed and was the understanding.

03:20:18  5       Defendants' response came in with two variations.

03:20:22  6  One was they wanted our agreement regarding the coding of any

03:20:28  7  future discovery in the case, not just be limited to the first

03:20:30  8  request for production.  And the second point defendants

03:20:36  9  raised, and this may sound like I'm characterizing it, but I

03:20:40  10 don't have any other way to say it, is they want to put in

03:20:44  11 some language to the effect that they had done everything that

03:20:48  12 could be expected to be required of them to get to the point

03:20:50  13 which we are at, and we felt that kind of language was

03:20:54  14 inappropriate.

03:20:54  15       We felt that, more importantly, the first point is we

03:20:58  16 want to know the future of discovery of the case.  We don't

03:21:02  17 know the future of the way courts are going to be looking at

03:21:08  18 Boolean searches compared to predictive coding.  And while we

03:21:10  19 certainly are not insisting that at any future production that

03:21:16  20 defendants switch over, we simply don't feel that we are in a

03:21:18  21 position to make that determination now, nor do we think it's

03:21:20  22 appropriate for defendants to demand that because it's really

03:21:24  23 in the nature of an advisory opinion that they are asking your

03:21:28  24 Honor to render since we won't agree to it.

03:21:32  25       So I don't see either of these being the kind of

03:21:36　1　issues which would cause the stipulation idea to fail, but we

03:21:40　2　think both of these conditions the defendants have are simply

03:21:42　3　not appropriate.

03:21:50　4　　　　　MR. NEUWIRTH:  Your Honor, this is Steve Neuwirth.

03:21:52　5　And if we are at a point where your Honor would like to hear

03:21:56　6　from the defendants, I am authorized to speak, although we

03:22:02　7　don't want to interrupt anything you might have been planning

03:22:06　8　to say at this point.

03:22:06　9　　　　　THE COURT:  No, I wasn't planning to say anything, so

03:22:08　10　go ahead.

03:22:10　11　　　　　MR. NEUWIRTH:  Okay.  I think that the defendants

03:22:14　12　would characterize their proposal a little differently than

03:22:18　13　Mr. Freed did, although, again, I think this is really fairly

03:22:24　14　a circumstance where we are dealing with a proposal from the

03:22:28　15　plaintiffs.  But the defendants believe that we had the

03:22:32　16　hearing that we did before your Honor to address whether the

03:22:38　17　type of technology and approach that the plaintiffs were

03:22:46　18　proposing was appropriate to use in this case.  It's true that

03:22:52　19　there was -- that there's been a document request made so far,

03:22:56　20　but I think everybody understands that a new set of document

03:23:04　21　requests can be served on October 2nd.

03:23:08　22　　　　　And I think that the only thing the defendants

03:23:10　23　assumed was appropriate here was for the stipulation to cover

03:23:16　24　the subject matter of the hearing; namely, whether in this

03:23:20　25　litigation, defendants will be obligated to use the type of

03:23:26    1   technology that plaintiffs proposed.  And we had not
03:23:32    2   understood that question which was the subject matter of the
03:23:36    3   hearing and the briefing and everything else was in any way an
03:23:40    4   advisory opinion and deals specifically with the exact
03:23:42    5   technology that was presented to your Honor for consideration.
03:23:50    6   And certainly plaintiffs believe that another subject matter
03:23:54    7   of the hearing was whether what they had done thus far was
03:24:00    8   appropriate or at least satisfactory under the standards.
03:24:06    9           The defendants were very prepared to expressly say
03:24:14   10   that nothing in this type of stipulation would in any way
03:24:18   11   preclude the plaintiffs at a later time from suggesting that
03:24:22   12   some other new approach, which may not have been available at
03:24:28   13   the time of the hearing, ought to be considered in the case
03:24:32   14   for any subsequent subject matter and subsequent document
03:24:38   15   collection.  But, you know, I think that we thought that what
03:24:42   16   we were doing was well within the purview --
03:24:46   17           THE COURT:  Mr. Neuwirth, did you suggest that
03:24:48   18   specific language to the plaintiffs?
03:24:50   19           MR. NEUWIRTH:  Yes.  In fact, the proposal that I
03:24:56   20   believe Mr. McKeown initially sent over expressly had the
03:24:58   21   language that said in either exact words or substance that
03:25:06   22   nothing in the stipulation was meant to preclude the
03:25:08   23   plaintiffs at that later date from suggesting that some new
03:25:14   24   technology that was not the subject matter of the hearing be
03:25:20   25   applied to collections or requests that had not already been

03:25:24  1   undertaken.

03:25:26  2          THE COURT:  All right.  Can you stop right there?

03:25:28  3          All right.  Mr. Freed, that seems to come very close

03:25:34  4   to what you were talking about as far as future productions.

03:25:42  5          MR. FREED:  The later draft that was sent to us was

03:25:48  6   sent by Mr. Marovitz, and it did not contain the language, at

03:25:52  7   least in my judgment, that Mr. Neuwirth is speaking about.

03:25:58  8          THE COURT:  Okay.

03:26:04  9          MR. FREED:  And the real question is, does the

03:26:06  10  agreement -- because we agreed to forestall our request for

03:26:10  11  the review through the predictive coding.

03:26:14  12         THE COURT:  Right.

03:26:14  13         MR. FREED:  Subsequently, we agreed to forestall any

03:26:18  14  hearing on the basis of a stipulation which would protect our

03:26:22  15  position.  We understood at all times that what was up before

03:26:28  16  the court was the document that had been collected and

03:26:30  17  reviewed by the defendant in response to the first request for

03:26:34  18  production.  We are not saying that they have to agree that we

03:26:36  19  can raise that in the future.  We are simply saying we don't

03:26:40  20  want a condition that says we can't raise it in the future.

03:26:44  21         THE COURT:  But that's -- unless I am

03:26:46  22  misunderstanding, now, I don't have any draft in front of me,

03:26:54  23  but it sounds like what Mr. Neuwirth just told me is that they

03:27:02  24  had some language in there about future productions and that

03:27:08  25  that might -- that did not -- it either didn't say that their

03:27:16   1    -- it did not preclude producing -- yes?

03:27:28   2         MR. FREED: I don't mean to interrupt. I think I see

03:27:30   3    what you are saying. I will be happy to go back if we want to

03:27:34   4    put this off for a short period of time and re-review what has

03:27:38   5    been submitted to us. But what Mr. McKeown said has really

03:27:42   6    not been what we have been working off of. The very last

03:27:48   7    draft that we received from Andy Marovitz is the one I am

03:27:52   8    speaking about. If I am mistaken, I would be more than happy

03:27:58   9    to admit it and say it's not a problem, but I don't

03:27:58  10    remember -- and I looked at it very closely -- that there was

03:28:02  11    anything in there which gave us that protection.

03:28:06  12         MR. NEUWIRTH: Let me -- I'm sorry, Mr. Freed. I

03:28:08  13    didn't mean to cut you off.

03:28:10  14         MR. FREED: No, that's it.

03:28:12  15         MR. NEUWIRTH: I was going to make two points. I

03:28:14  16    think what may have happened here is that the language that

03:28:18  17    had been in Mr. McKeown's originally transmitted draft was

03:28:22  18    either edited out or defendants perceived that it was being

03:28:26  19    edited out, and it may not have made its way back into the

03:28:30  20    draft that Mr. Marovitz had sent back, which was an effort to

03:28:34  21    try to see if we could reach some sort of reasonable

03:28:40  22    compromise.

03:28:40  23         Just so that there is no misunderstanding, what I had

03:28:44  24    intended to convey was that the defendants have understood

03:28:50  25    that the hearings before your Honor were for the purpose of

03:28:52  1  determining whether in this case the defendants are going to
03:29:00  2  be required to use the specific approaches and technologies
03:29:04  3  that were presented to your Honor at the hearing.  And
03:29:10  4  defendants are assuming that the stipulation would address
03:29:14  5  that question, say, in this case, the defendants are not
03:29:20  6  required to use those specific technologies and that as to the
03:29:24  7  first corpus of documents that were collected in the first
03:29:28  8  production that was done in response to these requests, what
03:29:32  9  defendants did satisfied the governing standards.

03:29:38  10      And then we were going to say, I think we did say in
03:29:42  11  the draft expressly, as to any future document requests that
03:29:46  12  the plaintiffs may make and as to any future collections of
03:29:52  13  documents beyond this initial corpus that was already
03:29:54  14  collected, nobody is foreclosed from arguing that some new
03:30:00  15  technology that may be developed that was not the subject of
03:30:04  16  the hearing before the court should be used.  And all sides,
03:30:08  17  all parties respect the right to either argue in favor of that
03:30:12  18  or to argue against it.  But certainly we would not expect
03:30:16  19  your Honor to say anything about a technology that was not
03:30:20  20  before the court at the time.

03:30:22  21      So we thought that this was responsive, and that is
03:30:26  22  what led to the goal -- the draft that Mr. McKeown had
03:30:30  23  originally transmitted with I think very express language to
03:30:34  24  that effect.

03:30:34  25      MR. FREED:  Michael Freed, your Honor.  I think I see

03:30:38 1   three things.  Number one, the language which Mr. McKeown put

03:30:42 2   into a fire draft did not survive, so there was no reason for

03:30:46 3   plaintiffs to believe that it was included.

03:30:48 4          THE COURT:  Right.

03:30:48 5          MR. FREED:  Two more points.  I've heard Mr. Neuwirth

03:30:54 6   a second time is he is saying, number one, he believes a

03:30:56 7   stipulation should refer to the entire case, not just the

03:31:00 8   first request for production; and, number two, it should be

03:31:04 9   some new technology, which I presume he means something more

03:31:08 10  than CBAA or predictive coding.

03:31:10 11         MR. NEUWIRTH:  Something different from what was

03:31:12 12  presented.

03:31:14 13         MR. FREED:  Okay.  We are not prepared to reach a

03:31:16 14  stipulation on that basis, and this would even be an

03:31:26 15  impediment because we thought we were going to move this ahead

03:31:28 16  tremendously by avoiding the hearing.  And just saying if it

03:31:32 17  arises in the future, we all start at ground zero, and

03:31:36 18  obviously everybody would take a position (inaudible) --

03:31:48 19         THE COURT:  Mr. Freed, hang on one minute.  The last

03:31:50 20  minute or so was kind of cracked again.

03:31:54 21         MR. FREED:  You know, it may be the way I am holding

03:31:58 22  it.  I am on a cellular phone.  I do apologize.

03:32:02 23         MR. NEUWIRTH:  The one concern, your Honor, is that

03:32:04 24  when Mr. Freed speaks about going back to ground zero, I am

03:32:08 25  sure you can understand why that is such a concern to the

03:32:10  1  defendants because --

03:32:12  2           THE COURT:  Right.

03:32:12  3           MR. NEUWIRTH:  -- the resources that were invested in

03:32:16  4  presenting all of this to your Honor, and your Honor was very

03:32:18  5  educated and had the benefit of hearing live witnesses, the

03:32:24  6  notion that after that, as Mr. Freed literally just said, is

03:32:28  7  once you are gone, if this comes up that defendants want to

03:32:30  8  suggest again that predictive coding be used, the exact same

03:32:34  9  thing that was before your Honor, we start at ground zero, we

03:32:36  10  thought the whole point of the stipulation was to avoid that,

03:32:38  11  and a stipulation that would let us go back to ground zero

03:32:46  12  seems to be the opposite of what court efficiency and

03:32:48  13  reasonable response to all that's been done would call for.

03:32:54  14           MR. MOGIN:  Your Honor, Dan Mogin.  May I interject

03:32:56  15  something, please?

03:32:58  16           THE COURT:  Yes.

03:32:58  17           MR. MOGIN:  When Mr. Neuwirth speaks in terms of "the

03:33:02  18  case," as I said before, antitrust cases tend to last a long

03:33:08  19  time.

03:33:08  20           THE COURT:  Right.

03:33:10  21           MR. MOGIN:  And so since he'd like to speak in

03:33:12  22  hypotheticals, let's speak in the hypothetical that it's four

03:33:16  23  years from now, and plaintiffs want to serve another document

03:33:22  24  request.  And four years, predictive coding is the accepted

03:33:28  25  state of the art because the technology has advanced.

03:33:32  1    Under Mr. Neuwirth's formulation, we, the plaintiffs,
03:33:36  2  would be precluded from seeking to have used predictive coding
03:33:46  3  at that time because, quote, it would be the same technology.
03:33:50  4    MR. NEUWIRTH:  No, it wouldn't be the same
03:33:52  5  technology.
03:33:52  6    MR. MOGIN:  Excuse me.  A Model T is the same
03:33:58  7  technology -- that is, an automobile -- as a 2012 Ferrari.
03:34:04  8  Are we talking about the same thing?
03:34:10  9    They are seeking -- in that instance, clearly they
03:34:14  10  are seeking an advisory opinion.  Our undertaking that we will
03:34:20  11  not raise the issue again with respect to that which it first
03:34:26  12  attached, the first request for production of documents, the
03:34:32  13  idea that we would in a month and a half send out another
03:34:38  14  round of document requests and make a similar demand is
03:34:44  15  insulting and ludicrous.  But there's no reason that we should
03:34:52  16  be forever precluded from using the best available technology.
03:34:54  17    THE COURT:  But you're talking over each other, I
03:35:00  18  think -- I actually think you're too good of lawyers.  This is
03:35:02  19  one time the court is going to say you are too good at this.
03:35:08  20    I think we need a stipulation for dummies here.  I
03:35:12  21  think the first part of the stipulation, okay, says something
03:35:18  22  like, The plaintiffs withdraw their objection to the first
03:35:26  23  production based upon Boolean search or something like the
03:35:34  24  Boolean search method, that you are withdrawing your objection
03:35:42  25  to the method itself, not to the search itself, okay, but to

03:35:50   1   the method that was raised in -- there isn't even a motion on

03:35:54   2   this.  Then, to me, that stops the need for the evidentiary

03:36:00   3   hearing.  That explains why we are not going ahead with the

03:36:06   4   evidentiary hearing.  I thought inherent in that if a year

03:36:12   5   from now when you have reviewed the documents and you want to,

03:36:16   6   quote, unquote, like you could in any other case, say, Hey,

03:36:22   7   there is a problem, we didn't get, you know, document 27, 28,

03:36:30   8   29, I thought inherent in that, of course, you could bring

03:36:32   9   that up.  That's not going back to the method itself.  I

03:36:40   10  thought you were preserving the ability to object.

03:36:44   11        Then because antitrust cases do go on five years, in

03:36:50   12  production -- suppose it goes to the Seventh Circuit in the

03:36:52   13  middle, who the heck knows what the heck is going to happen,

03:36:56   14  and there has to be another document production.  I would

03:36:58   15  think this time are, for the future, you would both agree to

03:37:04   16  do a meaningful meet and confer.  If you ever had to do

03:37:08   17  another major production, you would first agree to try to

03:37:12   18  agree on what the method would be and that you then would

03:37:20   19  discuss with each other, maybe you would agree to what the

03:37:24   20  method is, and if you couldn't, you'd come to the court at

03:37:28   21  that time.  It is not a redo of what we have done.  But that's

03:37:34   22  what I thought you were doing.

03:37:36   23        Any reaction to that?

03:37:48   24        MR. FREED:  That's what I thought we were doing too.

03:37:50   25        THE COURT:  To me, you were specifically withdrawing

03:37:52  1  your objection to the use of the Boolean search on the

03:37:54  2  documents that have been produced or in the process of being

03:37:58  3  produced.

03:37:58  4       You're not saying it was good, bad, indifferent; all

03:38:02  5  you're doing is withdrawing your objection.

03:38:06  6       Now, somebody react to me.  What's the matter with --

03:38:10  7  that goes to what's been done already and that I am just

03:38:14  8  making this up as I am sitting there, but a future, if there

03:38:20  9  are future searches, something like what I threw out there,

03:38:26  10  would that be something you could work on, in 25 words or

03:38:34  11  less?

03:38:36  12       MR. NEUWIRTH:  I think that the concept that you

03:38:36  13  described is the concept that defendants have been trying to

03:38:42  14  achieve with the following caveat, which I believe is not

03:38:46  15  inconsistent with what your Honor said, and so "caveat" may

03:38:52  16  not even be the right word.

03:38:54  17       Your Honor described a scenario where at some point

03:38:56  18  in the not immediate future, things had developed and there is

03:39:04  19  a request -- a new request that is made, your example after,

03:39:08  20  let's say, a remand from the Seventh Circuit --

03:39:12  21       THE COURT:  Right.

03:39:12  22       MR. NEUWIRTH:  -- which could be years off and many

03:39:16  23  legal developments away, and I don't believe that the

03:39:20  24  defendants are concerned about a scenario way down the road.

03:39:24  25  And I also think that the defendants had always intended

03:39:26    1    language in that original draft from Mr. McKeown to clearly

03:39:32    2    say that a 2008 Ford with a different engine and different

03:39:38    3    wheels is not the same thing as 1995 Ford.  I don't think

03:39:44    4    anybody is suggesting that technology can't evolve, and we may

03:39:52    5    get to a point in the future where there is something new that

03:39:54    6    makes sense to use.

03:39:56    7            But the big gap, the big hole that is left that we

03:39:58    8    think that your proposed order might also be intended to

03:40:02    9    address is the short-term future where we are talking about

03:40:08   10    the exact same approach that was presented to your Honor using

03:40:14   11    a 1996 Ford again, the exact same car, on a set of document

03:40:20   12    requests that is not triggered by some development three years

03:40:26   13    down the road but that is triggered by either, you know, the

03:40:30   14    desire to reintroduce the idea of the methodology that the

03:40:36   15    plaintiffs had proposed or that is an effort to expand a scope

03:40:40   16    of discovery beyond where we were at this time.  And what the

03:40:46   17    defendants are concerned about is that gap -- and we have

03:40:52   18    tried to come up with language that struck a balance so that

03:40:54   19    what you described would occur exactly as you described it,

03:40:58   20    that if in the future there are new requests seeking different

03:41:04   21    documents to be collected and there is some new technology

03:41:08   22    available to use, it's fair game, of course, but what we want

03:41:12   23    to avoid is that four months from now --

03:41:14   24            THE COURT:  Right, right.

03:41:16   25            MR. NEUWIRTH:  -- after we have had this long process

| | |
|---|---|
| 03:41:20 | 1 |
| 03:41:24 | 2 |
| 03:41:26 | 3 |
| 03:41:28 | 4 |
| 03:41:28 | 5 |
| 03:41:30 | 6 |
| 03:41:34 | 7 |
| 03:41:38 | 8 |
| 03:41:40 | 9 |
| 03:41:40 | 10 |
| 03:41:42 | 11 |
| 03:41:44 | 12 |
| 03:41:46 | 13 |
| 03:41:48 | 14 |
| 03:41:52 | 15 |
| 03:41:56 | 16 |
| 03:42:02 | 17 |
| 03:42:04 | 18 |
| 03:42:12 | 19 |
| 03:42:20 | 20 |
| 03:42:22 | 21 |
| 03:42:28 | 22 |
| 03:42:34 | 23 |
| 03:42:38 | 24 |
| 03:42:42 | 25 |

1  with you that we are back at ground zero on the exact same

2  thing that we spent all this time with you about.

3      MR. McKEOWN:  Your Honor, this is Jim McKeown.  If I

4  could add just one more point from our concern, which is it's

5  not just the documents that are produced, because obviously

6  the documents that are produced have been produced.  They

7  don't need to be searched again.  But there was a large

8  selection of documents that were collected to which search

9  terms were applied.

10      THE COURT:  Right.

11      MR. McKEOWN:  And it's that entire group that we

12  shouldn't have to go back again.

13      It's a different question if four years from now

14  somebody says, You searched through the end of 2010, we are

15  four years later and some development says search 2011.

16  That's entirely different than what we did before.

17      THE COURT:  Okay.  So this discussion, at least, so

18  it's more the interim phase here.  I sort of thought the

19  stipulation could have the A being what is either produced or

20  in the process of being produced, that's A, what applies to

21  that.  Then there seems to be what you're concerned about is

22  this interim or, you know, next year or so.  And then future,

23  I think you kind of agree on the -- or you could agree on the

24  future if you had it language-wise.

25      Mr. Mogin, do you have any like little secret agendas

03:42:46    1    a year from now?  I mean, I don't know what you can say to
03:42:48    2    assure somebody.
03:42:50    3              MR. MOGIN:  I don't know what I can say either, your
03:42:52    4    Honor.  I don't have any secret agenda.  I am not particularly
03:42:58    5    anxious to go through this again.
03:42:58    6              THE COURT:  You are fading away.
03:43:00    7              MR. MOGIN:  I said I am not particularly anxious to
03:43:02    8    go through this process again.  It's time consuming, it's very
03:43:08    9    expensive, and I think that the defendants fear that the
03:43:14   10    plaintiffs would do that.  It's just not well founded.  We
03:43:18   11    have done nothing in the case that would indicate that that's
03:43:22   12    how we operate.
03:43:32   13              MR. NEUWIRTH:  Your Honor, can I make a suggestion?
03:43:32   14    This is Mr. Neuwirth.
03:43:32   15              THE COUR:  Yes.
03:43:34   16              MR. NEUWIRTH:  Given the helpful comment that
03:43:36   17    Mr. Mogin made, I would propose that you give the parties a
03:43:40   18    few days to see if together we can come up with a proposal
03:43:44   19    that would work off of the framework you described and also
03:43:48   20    build in something to address the statements that Mr. Mogin
03:43:54   21    just made, and, you know, perhaps we can get back to you.  And
03:44:00   22    I -- you know, I know that Mr. McKeown and Mr. Marovitz and
03:44:02   23    other defense counsel had been very involved in this, and I
03:44:08   24    think we can work with Mr. Freed and Mr. Mogin to the extent
03:44:12   25    he's available to try to come up with something that reflects

| | | |
|---|---|---|
| 03:44:14 | 1 | the substance of today's discussion with your Honor. |
| 03:44:20 | 2 | THE COURT:  Yes.  And I think you're going to have -- |
| 03:44:24 | 3 | you know I don't want to go back to the hearing, but, you |
| 03:44:28 | 4 | know, that's like personal.  Okay? |
| 03:44:32 | 5 | But you're not going to be able to get -- here's the |
| 03:44:40 | 6 | basic thing I've learned as a judge.  Don't try to get more |
| 03:44:44 | 7 | out of an agreement, a settlement, a stipulation than you ever |
| 03:44:52 | 8 | could if we went full fledged at the hearing.  All I can rule |
| 03:44:56 | 9 | on is what is in front of me. |
| 03:45:00 | 10 | I am hoping with this stipulation, it's going to give |
| 03:45:04 | 11 | you a little bit more comfort, but is it going to be a hundred |
| 03:45:08 | 12 | percent in the future?  No, but the hearing wouldn't give you |
| 03:45:12 | 13 | that either, either side. |
| 03:45:18 | 14 | MR. MOGIN:  Your Honor, Dan Mogin -- |
| 03:45:20 | 15 | THE COURT:  What I am trying to say to you is I would |
| 03:45:22 | 16 | think you would want to keep it -- you want to try to |
| 03:45:26 | 17 | incorporate what both -- what all sides' concerns are, but |
| 03:45:34 | 18 | don't try to get it a hundred percent perfect or it's not |
| 03:45:36 | 19 | going to work.  You have a very fair judge who could help you |
| 03:45:42 | 20 | out with that. |
| 03:45:46 | 21 | MR. MOGIN:  Your Honor? |
| 03:45:46 | 22 | THE COURT:  Yes. |
| 03:45:48 | 23 | MR. MOGIN:  It's Dan Mogin.  I appreciate everything |
| 03:45:50 | 24 | you just said.  I heard it loud and clear.  If you could |
| 03:45:54 | 25 | indulge me for a minute, I am getting an urgent personal call |

03:46:02  1  from a physician, and I will be right back, and you can

03:46:02  2  continue without me.

03:46:02  3          THE COURT:  Go do your personal urgent.  I think we

03:46:06  4  need to see something on paper, and Mr. Neuwirth, and

03:46:10  5  Mr. Freed, Mr. Wozniak, if you want to send it to me and

03:46:14  6  Chris, we will also help you tweak it if we can a little bit.

03:46:18  7  Okay?

03:46:20  8          MR. FREED:  That's a good idea.  Michael Freed, your

03:46:22  9  Honor.  Let us take another crack at it.

03:46:24  10          THE COURT:  Yes.  Right.

03:46:26  11          MR. FREED:  If we reach a point where we are really

03:46:28  12  down to some very discrete issues, then maybe the court's

03:46:32  13  guidance would be very helpful.

03:46:32  14          THE COURT:  Right.  And I am more than happy to do

03:46:36  15  it.  You know, I have the two -- we should pick one day or the

03:46:38  16  other, but I still have it blocked off if, God forbid, we had

03:46:44  17  to go back to it, but I think you're actually very close here.

03:46:48  18  Just don't try to make it too much, or that's not going to

03:46:56  19  work.  And as I say, I couldn't give you that kind of

03:47:00  20  guarantee at the hearing anyway.  Okay?

03:47:04  21          So we will await your draft.

03:47:06  22          Let me see.  That was search methodology.

03:47:10  23          The RFP and indexing, we might do -- we might have

03:47:18  24  just another -- we will either have an IP and Mr. Freed call

03:47:26  25  and Mr. Sprung, or we may turn that in to everyone call.

| | | |
|---|---|---|
| 03:47:30 | 1 | Data sources we are set on with some kind of follow |
| 03:47:38 | 2 | -- we are meeting August 29th here, right? |
| 03:47:42 | 3 | MR. MOGIN:  Right. |
| 03:47:42 | 4 | THE COURT:  We are sticking to that date. |
| 03:47:44 | 5 | Now, one of the things I did notice is that August |
| 03:47:46 | 6 | 29th is the Thursday before Labor Day, and then we do have you |
| 03:47:52 | 7 | set for the day after Labor Day, but I am still hoping either |
| 03:47:58 | 8 | the Tuesday or Wednesday. |
| 03:48:00 | 9 | And Ms. Miller, Mr. Regard is available both days? |
| 03:48:04 | 10 | MS. MILLER:  Yes, your Honor.  Mr. Regard is holding |
| 03:48:08 | 11 | both days, the 4th and the 5th. |
| 03:48:10 | 12 | THE COURT:  Why don't we pick one or the other. |
| 03:48:12 | 13 | Somebody flip a coin.  I mean, I am hoping we are not going to |
| 03:48:16 | 14 | need it, but if we need it, at least let's pick one or the |
| 03:48:22 | 15 | other. |
| 03:48:24 | 16 | MR. McKEOWN:  Your Honor, this is Jim McKeown.  I |
| 03:48:28 | 17 | believe that Mr. Mogin was the first given Labor Day.  We |
| 03:48:30 | 18 | asked that it be -- |
| 03:48:30 | 19 | THE COURT:  Oh, Wednesday.  Let's do Wednesday. |
| 03:48:34 | 20 | MR. McKEOWN:  We don't have an objection to that. |
| 03:48:36 | 21 | THE COURT:  All right.  So if we need to do it, it |
| 03:48:36 | 22 | would be Wednesday, not Tuesday.  Okay. |
| 03:48:50 | 23 | Well, how do you feel about another -- Mr. Mogin will |
| 03:48:50 | 24 | be gone, but everybody else, how about another telephone |
| 03:48:52 | 25 | status, because I do think this is helpful, and it's not |

| | | |
|---|---|---|
| 03:48:58 | 1 | dragging everybody here.  Would you be interested in that? |
| 03:49:04 | 2 | MR. FREED:  Sure, your Honor.  Michael Freed.  I |
| 03:49:08 | 3 | think to set a date would be useful. |
| 03:49:10 | 4 | THE COURT:  What about Tuesday, August 21st? |
| 03:49:20 | 5 | MR. FREED:  Fine for me. |
| 03:49:20 | 6 | MR. NEUWIRTH:  That's fine for me. |
| 03:49:20 | 7 | THE COURT:  I can do it in the afternoon.  I have |
| 03:49:22 | 8 | plenty of time.  Chris will send a little agenda out.  And by |
| 03:49:28 | 9 | that time, you will have some language on the evidentiary |
| 03:49:32 | 10 | hearing so we'd know more on that.  Hopefully IP will know |
| 03:49:38 | 11 | more on the request to produce.  I will have looked at more |
| 03:49:42 | 12 | briefs, so I may know what we are doing on that. |
| 03:49:46 | 13 | Are there any new issues?  I also hadn't even asked |
| 03:49:50 | 14 | if we had any new issues. |
| 03:49:58 | 15 | MR. FREED:  No. |
| 03:49:58 | 16 | THE COURT:  No? |
| 03:50:00 | 17 | And I will have at least a little portion of the |
| 03:50:06 | 18 | Georgia-Pacific interrogatories.  Hopefully, you will have |
| 03:50:08 | 19 | gotten the Jim Hannon disk opened by that time. |
| 03:50:18 | 20 | And the custodians.  What did we do -- you're still |
| 03:50:22 | 21 | trying to work that out, or did we set a briefing on the |
| 03:50:24 | 22 | custodians? |
| 03:50:26 | 23 | MS. MILLER:  Your Honor, Britt Miller.  You had |
| 03:50:30 | 24 | already set -- there is an existing briefing schedule for the |
| 03:50:34 | 25 | custodian issues.  Plaintiffs are to file by tomorrow, and |

03:50:36   1   defendants who need to respond are filing on the 17th, and
03:50:40   2   there is no reply.
03:50:42   3            THE COURT:  Okay.  Then let's set Tuesday, August
03:50:50   4   21st.  If we did 1:30 Chicago time, that's 2:00 o'clock for --
03:50:56   5   or 2:30 for our friends from New York.  Is that okay?
           6            MR. NEUWIRTH:  Yes, your Honor.
           7            MR. FELLER:  Your Honor, is there any chance we could
           8   start at 1:00?
           9            THE COURT:  Yes.  Yes.
          10            THE COURT REPORTER:  Who is that?
          11            THE COURT:  Who suggested 1:00 o'clock?
03:51:16  12            MR. FELLER:  I'm sorry, your Honor.  Leonid Feller
03:51:16  13   for PCA.
03:51:18  14            THE COURT:  Mr. Feller, that's a good idea.  Let's
03:51:18  15   start at 1:00 o'clock.
03:51:22  16            MR. FELLER:  Thank you.
03:51:22  17            THE COURT:  I am going to try to get Ms. Cox or some
03:51:26  18   other court reporter because it really helps when we have the
03:51:28  19   court reporter here.  My taping system goes in and out.
03:51:30  20            Ms. Miller, would you help me out here today?  Chris
03:51:34  21   isn't here.  Lynette, poor Lynette trying to keep track of all
03:51:38  22   these motions and junk.  Will you send us over just in an
03:51:44  23   email that you send to everybody what I said datewise where we
03:51:50  24   are at, because I am talking and trying to write at the same
03:51:56  25   time?

03:51:56   1     MS. MILLER:  Yes, your Honor.  I would be happy to do

03:51:56   2   so.

03:51:58   3     THE COURT:  Thank you.

03:51:58   4     Anybody have anything else that we should wind up?

03:52:04   5     MR. McKEOWN:  Jim McKeown.  Just one other item.  I

03:52:08   6   think currently, the August 29th hearing was the one in which

03:52:10   7   we were going to discuss whether any replies and time for

03:52:14   8   replies (inaudible) for the brief.  If we are meeting on the

03:52:18   9   21st, we are going to file our response tomorrow, that would

03:52:20  10   give the plaintiff 11 days.  Perhaps we could move up what we

03:52:24  11   are going to do as to replies to the 21st rather than the

03:52:28  12   29th.

03:52:30  13     THE COURT:  So you're suggesting that the -- well, if

03:52:34  14   we had the seven-day -- I'm sorry.  I am just kind of -- I

03:52:40  15   think you're making a good suggestion, but I don't know what

03:52:44  16   it is.  Tell me what it is.

03:52:48  17     MR. McKEOWN:  Your Honor, I think that the purpose

03:52:50  18   for the hearing on the 29th, one of the purposes originally,

03:52:54  19   was by that date the plaintiff would say how much time they

03:52:58  20   needed for the reply on the date of the first brief.  Rather

03:53:00  21   than wait until the 29th, given that your Honor is retiring at

03:53:02  22   the end of September, perhaps if plaintiffs could tell us on

03:53:06  23   the 21st what they anticipate for a briefing schedule, that

03:53:10  24   would save a week for everyone.

03:53:12  25     THE COURT:  Well, I actually think -- that's fine,

03:53:18  1  but I actually think the 29th may be an oral argument on the

03:53:22  2  data sources, so -- because when I read everything today, this

03:53:28  3  is really fact specific here, and if I am going to try to be

03:53:34  4  fair to each of your systems, I think we will make some

03:53:42  5  progress.

03:53:42  6      So are you suggesting that we set the reply brief

03:53:46  7  right now and then I'd have it fully briefed by the 29th?

03:53:52  8      MR. McKEOWN:  No, your Honor.  Just on the 21st that

03:53:54  9  one of our agenda items be that the court let us know

03:54:00  10  precisely what you want us to do --

03:54:00  11      THE COURT:  Okay.  I will.  But I am telling you that

03:54:02  12  I think in addition to any writing, I am probably also going

03:54:08  13  to need some oral argument or charts or something to help me

03:54:12  14  with this because it is so fact specific.  And even if you do

03:54:24  15  the -- I mean, even in the short amount that I read today, I

03:54:30  16  have a number of questions in the margins about how the

03:54:34  17  plaintiffs were describing your systems is what I am saying.

03:54:40  18  Okay?

03:54:40  19      I will have your reply and I will look at your reply

03:54:44  20  before the phone call on the 21st.  That would help, right?

03:54:50  21  And that will be top on the agenda on how we are going to

03:54:52  22  handle it.

03:54:52  23      Okay.  And then, once again, you know your case so

03:54:58  24  much better.  We are throwing these agenda items out just to

03:55:02  25  try to be helpful, but if you've got any ideas too, we still

03:55:06    1  have about 50 days left, so let's see what we can get done.

03:55:12    2         MS. MILLER:  Your Honor, we will provide a dial-in

03:55:16    3  for the 21st again.

03:55:16    4         THE COURT:  Thank you very much.

03:55:20    5         Then I still have held -- we have still held, just in

03:55:24    6  case, the date -- hold on.  I am looking at another one.

03:55:32    7  September 13th, in-person status, if needed.  I have still

03:55:40    8  reserved that.  Okay?  And that could be if we are down to

03:55:42    9  data sources and we need any meeting on data source, I mean, I

03:55:46   10  just want you to know, I am not saying you have to make

03:55:50   11  reservations, but I have reserved that date also.

03:55:54   12         MR. MOGIN:  Good.  Thank you, your Honor.

03:55:56   13         MS. MILLER:  Thank you, your Honor.

03:55:56   14         THE COURT:  Okay, everybody.  Have a good week.

03:55:58   15         Mr. Mogin, are you back?

03:56:00   16         MR. MOGIN:  I am back, your Honor.

03:56:00   17         THE COURT:  I hope you have a fabulous -- I love

03:56:04   18  Hawaii.  I am so jealous.

03:56:06   19         MR. MOGIN:  Thank you very much.

03:56:08   20         THE COURT:  So have a wonderful trip.  And we are

03:56:08   21  going to meet on the 29th.  Don't worry on the 21st.  You are

03:56:14   22  in great hands with all those helpful people you've got.

03:56:22   23         We will see you then on the 29th, and Chris will send

03:56:26   24  something out, an agenda, and add to it anything you want.

03:56:28   25         Probably, Mr. McKeown, we will probably be talking

03:56:38   1   about the request to produce in that August 21st.  We are

03:56:40   2   probably not going to do anything before that.  Okay?

03:56:44   3          MR. McCAREINS:  Thank you.

03:56:46   4          THE COURT:  All right, everybody.  Bye.

5     (Which were all the proceedings had in the above-entitled

6   cause on the day and date aforesaid.)

7     I certify that the foregoing is a correct transcript from
    the record of proceedings in the above-entitled matter.

8

9   _____        _____
    Carolyn R. Cox                      Date
    Official Court Reporter
10  Northern District of Illinois

11  /s/Carolyn R. Cox, CSR, RPR, CRR, FCRR

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## /

**/s/Carolyn** [1] - 51:11

## 1

**10010** [1] - 3:8
**10th** [2] - 11:7, 11:24
**11** [1] - 48:10
**1100** [1] - 2:18
**115** [1] - 2:6
**13th** [1] - 50:7
**14** [1] - 19:1
**14th** [2] - 17:21, 17:22
**1622** [1] - 2:3
**17th** [6] - 12:1, 12:3, 12:6, 12:10, 12:17, 47:1
**18th** [3] - 4:10, 24:22, 26:16
**19103** [1] - 2:3
**1995** [1] - 40:3
**1996** [1] - 40:11
**1:00** [3] - 47:8, 47:11, 47:15
**1:30** [1] - 47:4
**1st** [2] - 14:3, 14:8

## 2

**2008** [1] - 40:2
**2010** [1] - 41:14
**2011** [1] - 41:15
**2012** [1] - 37:7
**20th** [1] - 25:3
**212-849-7000** [1] - 3:9
**215** [1] - 2:4
**21st** [12] - 18:3, 18:25, 46:4, 47:4, 48:9, 48:11, 48:23, 49:8, 49:20, 50:3, 50:21, 51:1
**22** [1] - 4:7
**224** [1] - 2:18
**227** [1] - 3:16
**22nd** [1] - 3:8
**23rd** [1] - 25:1
**24th** [4] - 7:2, 8:2, 8:11, 26:8
**25** [1] - 39:10
**26th** [1] - 4:11
**27** [1] - 38:7
**27th** [1] - 19:8
**28** [1] - 38:7
**28th** [2] - 19:2, 19:3
**29** [1] - 38:8
**2910** [1] - 2:7
**297-5530** [1] - 2:15
**29th** [14] - 10:3, 10:6, 10:12, 10:13, 45:2, 45:6, 48:6, 48:12, 48:18, 48:21, 49:1, 49:7, 50:21, 50:23
**2:00** [1] - 47:4
**2:30** [1] - 47:5
**2nd** [1] - 30:21

## 3

**30(b)(6** [5] - 14:2, 16:12, 18:7, 18:11, 18:20
**30(b)(6)** [2] - 18:6, 18:9
**300** [1] - 2:11
**30th** [1] - 13:10
**3100** [1] - 3:3
**312** [6] - 2:8, 2:12, 2:19, 2:22, 3:4, 3:13
**332-3400** [1] - 2:8
**35** [1] - 3:12
**372-1121** [1] - 3:4
**3rd** [1] - 11:5

## 4

**400** [4] - 15:3, 15:6, 15:24, 18:9
**414** [1] - 2:15
**4400** [1] - 3:16
**45** [1] - 4:23
**4th** [2] - 25:5, 45:11

## 5

**50** [1] - 50:1
**51** [1] - 3:8
**53202** [1] - 2:15
**558-5902** [1] - 3:13
**5th** [1] - 45:11

## 6

**60601** [1] - 3:13
**60602** [1] - 3:4
**60603** [1] - 2:7
**60604** [1] - 2:18
**60606** [2] - 2:22, 3:16
**60654** [1] - 2:11
**660-7600** [1] - 2:19

## 7

**7/27** [1] - 11:4
**70** [1] - 3:3
**71** [1] - 2:21
**777** [1] - 2:14
**782-0600** [1] - 2:22

## 8

**862-3144** [1] - 2:12
**875-3000** [1] - 2:4

## A

**ability** [1] - 38:10
**able** [13] - 7:3, 7:4, 10:9, 10:13, 14:4, 14:10, 14:17, 16:20, 21:15, 22:7, 23:15, 25:14, 43:5
**above-entitled** [2] - 51:5, 51:7
**absence** [2] - 15:15, 23:1
**accepted** [1] - 36:24
**access** [1] - 21:5
**accessible** [2] - 9:13, 9:25
**accessing** [1] - 20:12
**achieve** [1] - 39:14
**achieved** [1] - 14:16
**act** [2] - 15:2, 15:13
**add** [2] - 41:4, 50:24
**addition** [3] - 14:25, 15:16, 49:12
**additional** [4] - 11:3, 11:24, 14:21, 22:10
**address** [6] - 24:18, 28:16, 30:16, 34:4, 40:9, 42:20
**addressed** [1] - 9:21
**administrative** [1] - 5:7
**admit** [1] - 33:9
**advanced** [1] - 36:25
**advise** [2] - 8:6, 19:16
**advisory** [3] - 29:23, 31:4, 37:10
**aforesaid** [1] - 51:6
**afternoon** [1] - 46:7
**agenda** [7] - 23:11, 42:4, 46:8, 49:9, 49:21, 49:24, 50:24
**agendas** [1] - 41:25
**ago** [1] - 9:16
**agree** [9] - 28:25, 29:24, 32:18, 38:15, 38:17, 38:18, 38:19, 41:23
**agreed** [2] - 32:10, 32:13
**agreement** [6] - 6:12, 6:17, 26:9, 29:6, 32:10, 43:7
**ahead** [3] - 30:10, 35:15, 38:3
**airport** [1] - 4:19
**allow** [1] - 21:3
**almost** [1] - 15:3
**alternatively** [1] - 28:4
**America** [1] - 2:10
**amount** [1] - 49:15
**Andy** [1] - 33:7
**annually** [1] - 16:14
**answer** [4] - 14:10, 14:15, 17:5, 22:11
**answered** [5] - 15:16, 15:19, 15:24, 16:22, 17:2
**anticipate** [1] - 48:23
**anticipated** [2] - 6:25, 7:21
**antitrust** [2] - 36:18, 38:11
**anxious** [2] - 42:5, 42:7
**anyway** [3] - 9:7, 18:19, 44:20
**apologies** [1] - 25:12
**apologize** [1] - 35:22
**APPEARANCES** [2] - 2:1, 3:1
**applied** [2] - 31:25, 41:9
**applies** [1] - 41:20
**appreciate** [1] - 43:23
**approach** [3] - 30:17, 31:12, 40:10
**approaches** [1] - 34:2
**appropriate** [7] - 23:6, 23:7, 29:22,

30:3, 30:18, 30:23, 31:8
**area** [1] - 19:11
**argue** [3] - 16:25, 34:17, 34:18
**arguing** [1] - 34:14
**argument** [4] - 10:12, 18:13, 49:1, 49:13
**arises** [1] - 35:17
**art** [1] - 36:25
**assigned** [1] - 11:17
**assume** [1] - 14:15
**assumed** [1] - 30:23
**assuming** [3] - 12:9, 24:22, 34:4
**assure** [2] - 19:23, 42:2
**attach** [1] - 18:6
**attached** [2] - 8:23, 37:12
**attachments** [1] - 8:17
**attempting** [1] - 13:18
**attorneys** [1] - 11:17
**August** [21] - 7:2, 8:11, 10:3, 10:6, 11:5, 11:6, 11:24, 12:1, 12:3, 12:6, 14:3, 14:8, 23:10, 24:7, 26:8, 45:2, 45:5, 46:4, 47:3, 48:6, 51:1
**authorized** [1] - 30:6
**automobile** [1] - 37:7
**available** [8] - 14:15, 14:20, 15:3, 31:12, 37:16, 40:22, 42:25, 45:9
**Ave** [1] - 2:18
**Avenue** [2] - 2:14, 3:8
**avert** [1] - 24:1
**avoid** [2] - 36:10, 40:23
**avoiding** [1] - 35:16
**await** [1] - 44:21

## B

**bad** [1] - 39:4
**balance** [1] - 40:18
**ball** [2] - 22:24, 22:25
**ballpark** [1] - 18:15
**BARACK** [1] - 2:10
**base** [1] - 4:11
**based** [4] - 4:10, 22:8, 37:23
**basic** [1] - 43:6
**basis** [2] - 32:14, 35:14
**Baum** [1] - 25:13
**become** [1] - 6:11
**behalf** [1] - 12:5
**belabor** [1] - 16:16
**believes** [1] - 35:6
**benefit** [1] - 36:5
**BERGER** [1] - 2:2
**best** [2] - 10:17, 37:16
**better** [12] - 7:15, 7:17, 7:18, 17:6, 19:9, 21:25, 22:1, 22:21, 28:9, 28:21, 28:22, 49:24
**between** [1] - 11:16
**beyond** [2] - 34:13, 40:16
**big** [3] - 28:10, 40:7
**bigger** [1] - 18:10
**bit** [12] - 7:7, 7:12, 7:13, 8:13, 13:12,

23:12, 23:14, 23:22, 24:1, 25:15, 43:11, 44:6
**blocked** [1] - 44:16
**boat** [1] - 12:13
**Boolean** [4] - 29:18, 37:23, 37:24, 39:1
**bottom** [1] - 26:17
**boxes** [1] - 16:23
**brief** [5] - 8:20, 26:24, 48:8, 48:20, 49:6
**briefed** [2] - 24:4, 49:7
**briefing** [15] - 10:20, 10:24, 10:25, 11:23, 21:14, 23:16, 24:7, 26:8, 26:14, 27:2, 27:21, 31:3, 46:21, 46:24, 48:23
**briefs** [3] - 13:14, 28:5, 46:12
**bring** [2] - 10:5, 38:8
**Britt** [5] - 5:2, 8:15, 9:15, 12:15, 46:23
**BRITT** [1] - 2:21
**BROWN** [1] - 2:20
**build** [1] - 42:20
**burden** [1] - 7:24
**burdensome** [2] - 15:12, 17:2
**BY** [9] - 2:2, 2:6, 2:10, 2:17, 2:21, 3:3, 3:7, 3:11, 3:15
**bye** [1] - 51:4

## C

**calendar** [2] - 18:1, 23:20
**car** [1] - 40:11
**Carolyn** [3] - 4:4, 4:7, 51:9
**Cascades** [2] - 3:3, 13:4
**case** [15] - 14:18, 16:1, 27:9, 29:7, 29:16, 30:18, 31:13, 34:1, 34:5, 35:7, 36:18, 38:6, 42:11, 49:23, 50:6
**cases** [2] - 36:18, 38:11
**catch** [1] - 4:23
**category** [2] - 12:22, 13:5
**caveat** [2] - 39:14, 39:15
**CBAA** [2] - 28:25, 35:10
**cellular** [1] - 35:22
**certain** [1] - 22:7
**certainly** [5] - 8:12, 13:12, 29:19, 31:6, 34:18
**certify** [1] - 51:7
**chance** [1] - 47:7
**change** [1] - 7:13
**characterization** [2] - 18:13, 18:15
**characterize** [1] - 30:12
**characterizing** [1] - 29:9
**charge** [1] - 27:9
**CHARLES** [1] - 2:2
**Charles** [1] - 16:8
**chart** [1] - 24:24
**charts** [2] - 15:15, 49:13
**check** [1] - 7:3
**Chicago** [8] - 2:7, 2:11, 2:18, 2:22, 3:4, 3:13, 3:16, 47:4
**Chris** [14] - 5:22, 10:7, 13:15, 21:9, 23:17, 23:21, 26:22, 27:18, 44:6, 46:8, 47:20, 50:23

**Circuit** [3] - 23:23, 38:12, 39:20
**circumstance** [1] - 30:14
**claims** [1] - 7:24
**clear** [3] - 17:12, 24:16, 43:24
**clearly** [2] - 37:9, 40:1
**clerk** [1] - 23:18
**CLERK** [3] - 6:4, 6:8, 17:22
**close** [3] - 11:19, 32:3, 44:17
**closely** [1] - 33:10
**co** [1] - 22:25
**co-counsel** [1] - 22:25
**coconut** [1] - 10:5
**coding** [8] - 28:25, 29:6, 29:18, 32:11, 35:10, 36:8, 36:24, 37:2
**coin** [1] - 45:13
**collected** [3] - 32:16, 34:7, 34:14, 40:21, 41:8
**collection** [1] - 31:15
**collections** [2] - 31:25, 34:12
**combined** [2] - 8:16, 9:17
**comfort** [2] - 23:22, 43:11
**comment** [1] - 42:16
**commitment** [1] - 21:18
**committed** [1] - 22:3
**communication** [1] - 22:5
**company** [2] - 15:15, 16:15
**Company** [1] - 3:15
**compared** [1] - 29:18
**compel** [4] - 9:11, 11:6, 11:21, 11:24
**comprehend** [1] - 22:7
**compromise** [3] - 15:2, 15:19, 33:22
**concept** [2] - 39:12, 39:13
**concern** [3] - 35:23, 35:25, 41:4
**concerned** [3] - 39:24, 40:17, 41:21
**concerns** [2] - 22:23, 43:17
**conclusion** [1] - 14:6
**condition** [1] - 32:20
**conditions** [2] - 29:2, 30:2
**confer** [6] - 4:12, 10:23, 18:10, 23:7, 26:4, 38:16
**conference** [8] - 14:1, 14:6, 15:14, 20:3, 25:4, 26:2, 27:19, 28:6
**conferencing** [1] - 4:5
**confers** [3] - 10:22, 11:10, 11:16
**conflict** [1] - 19:7
**consideration** [1] - 31:5
**considered** [1] - 31:13
**consistency** [1] - 23:21
**consuming** [1] - 42:8
**Cont'd** [1] - 2:2
**contain** [1] - 32:6
**contained** [1] - 6:14
**continue** [4] - 19:12, 23:4, 23:7, 44:2
**CONTINUED** [2] - 2:1, 3:1
**continues** [1] - 26:18
**continuing** [1] - 13:11
**conversation** [3] - 25:22, 26:23, 27:3
**conversations** [1] - 25:24
**convey** [1] - 33:24
**cope** [1] - 16:19

**copy** [1] - 26:19
**Corporation** [1] - 2:10
**corpus** [2] - 34:7, 34:13
**correct** [6] - 9:14, 10:3, 19:2, 24:17, 27:10, 51:7
**counsel** [4] - 5:3, 14:1, 22:25, 42:23
**couple** [2] - 24:6, 24:13
**COUR** [1] - 42:15
**course** [3] - 21:2, 38:8, 40:22
**Court** [1] - 51:9
**court** [19] - 4:1, 8:6, 14:1, 16:16, 17:25, 22:24, 24:17, 24:18, 25:23, 28:4, 32:16, 34:16, 34:20, 36:12, 37:19, 38:20, 47:18, 47:19, 49:9
**COURT** [118] - 4:2, 4:22, 5:1, 5:4, 5:14, 5:19, 6:1, 6:6, 6:9, 6:21, 6:24, 7:11, 7:14, 7:16, 7:18, 7:25, 8:3, 8:8, 8:19, 9:2, 9:19, 9:22, 10:6, 11:14, 11:22, 12:7, 12:14, 12:18, 12:24, 13:2, 13:6, 17:8, 17:19, 17:23, 18:3, 18:18, 18:24, 19:1, 19:3, 19:5, 19:9, 19:15, 19:19, 19:22, 20:5, 20:8, 20:10, 20:14, 20:22, 21:6, 21:8, 21:12, 21:20, 21:25, 22:2, 23:2, 23:12, 24:11, 25:8, 25:18, 25:21, 26:11, 26:20, 27:6, 27:12, 27:17, 28:1, 28:7, 28:10, 28:17, 28:19, 28:22, 30:9, 31:17, 32:2, 32:8, 32:12, 32:21, 35:4, 35:19, 36:2, 36:16, 36:20, 37:17, 38:25, 39:21, 40:24, 41:10, 41:17, 42:6, 43:2, 43:15, 43:22, 44:3, 44:10, 44:14, 45:4, 45:12, 45:19, 45:21, 46:4, 46:7, 46:16, 47:3, 47:9, 47:10, 47:11, 47:14, 47:17, 48:3, 48:13, 48:25, 49:11, 50:4, 50:14, 50:17, 50:20, 51:4
**court's** [1] - 44:12
**courtroom** [1] - 4:3
**courts** [1] - 29:17
**cover** [2] - 28:8, 30:23
**Cox** [3] - 47:17, 51:9, 51:11
**CP** [1] - 3:11
**crack** [1] - 44:9
**cracked** [1] - 35:20
**CRR** [1] - 51:11
**CSR** [1] - 51:11
**cursory** [1] - 16:19
**curtail** [1] - 7:23
**custodian** [1] - 46:25
**custodians** [4] - 11:4, 11:24, 46:20, 46:22
**cut** [1] - 33:13

**D**

**Dan** [7] - 7:6, 7:11, 20:14, 21:20, 36:14, 43:14, 43:23
**data** [9] - 9:11, 9:20, 21:14, 22:15, 23:4, 45:1, 49:2, 50:9
**database** [1] - 22:12
**Date** [1] - 51:9
**date** [10] - 8:2, 20:1, 31:23, 45:4, 46:3, 48:19, 48:20, 50:6, 50:11, 51:6

**dates** [2] - 13:8, 13:9
**datewise** [1] - 47:23
**days** [10] - 17:17, 17:20, 17:23, 18:21, 25:3, 42:18, 45:9, 45:11, 48:10, 50:1
**deadline** [2] - 7:5, 25:17
**deal** [2] - 15:15, 18:4
**dealing** [1] - 30:14
**deals** [1] - 31:4
**decided** [1] - 26:7
**deciding** [1] - 25:10
**Defendant** [7] - 2:9, 2:13, 2:20, 3:2, 3:6, 3:11, 3:15
**defendant** [8] - 4:16, 7:8, 8:18, 8:22, 10:9, 11:20, 11:23, 32:17
**defendant's** [1] - 7:21
**defendants** [39] - 4:17, 8:15, 11:4, 11:5, 11:16, 11:18, 11:19, 11:20, 12:2, 22:13, 22:15, 22:19, 22:22, 23:2, 28:24, 29:8, 29:20, 29:22, 30:2, 30:6, 30:11, 30:15, 30:22, 30:25, 31:9, 33:18, 33:24, 34:1, 34:4, 34:5, 34:9, 36:1, 36:7, 39:13, 39:24, 39:25, 40:17, 42:9, 47:1
**defendants'** [6] - 4:15, 9:17, 12:1, 22:11, 29:1, 29:5
**defense** [1] - 42:23
**delicately** [1] - 12:21
**demand** [2] - 29:22, 37:14
**deponent** [1] - 16:20
**deposition** [7] - 14:2, 14:13, 14:14, 14:16, 14:22, 16:8, 16:12
**described** [5] - 39:13, 39:17, 40:19, 42:19
**describing** [1] - 49:17
**description** [2] - 15:7, 15:8
**descriptions** [4] - 16:11, 16:14, 16:18, 16:20
**designated** [1] - 22:25
**desire** [2] - 13:8, 40:14
**detail** [2] - 10:13, 22:13
**determination** [1] - 29:21
**determined** [1] - 24:17
**determining** [1] - 34:1
**developed** [2] - 34:15, 39:18
**development** [2] - 40:12, 41:15
**developments** [1] - 39:23
**dial** [1] - 50:2
**dial-in** [1] - 50:2
**different** [6] - 35:11, 40:2, 40:20, 41:13, 41:16
**differently** [1] - 30:12
**difficult** [1] - 15:5
**direct** [1] - 25:14
**disagreeing** [1] - 20:25
**disagreements** [2] - 23:5, 25:7
**discourage** [1] - 13:10
**discovery** [4] - 23:25, 29:7, 29:16, 40:16
**discrete** [1] - 44:12
**discuss** [2] - 38:19, 48:7
**discussed** [3] - 7:20, 26:1, 29:4
**discussion** [2] - 41:17, 43:1

**disk** [1] - 46:19
**District** [1] - 51:10
**DIVER** [1] - 3:15
**docket** [1] - 6:11
**document** [11] - 25:25, 30:19, 30:20, 31:14, 32:16, 34:11, 36:23, 37:14, 38:7, 38:14, 40:11
**documentation** [1] - 7:10
**documents** [20] - 9:11, 9:12, 16:23, 19:13, 19:15, 19:16, 20:12, 20:18, 20:25, 21:2, 34:7, 34:13, 37:12, 38:5, 39:2, 40:21, 41:5, 41:6, 41:8
**done** [12] - 7:1, 13:9, 20:2, 24:23, 29:11, 31:7, 34:8, 36:13, 38:21, 39:7, 42:11, 50:1
**door** [1] - 25:9
**down** [9] - 8:11, 11:1, 11:2, 13:11, 13:15, 21:13, 22:11, 24:2, 39:24, 40:13, 44:12, 50:8
**download** [1] - 20:18
**draft** [11] - 28:23, 32:5, 32:22, 33:7, 33:17, 33:20, 34:11, 34:22, 35:2, 40:1, 44:21
**dragging** [1] - 46:1
**Drive** [2] - 2:21, 3:12
**due** [4] - 6:25, 7:2, 10:16, 12:1
**dummies** [1] - 37:20
**during** [2] - 16:8, 16:12

**E**

**e-discovery** [1] - 23:25
**easily** [1] - 27:20
**East** [1] - 2:14
**easy** [1] - 17:3
**echo** [1] - 28:20
**ECHOLS** [1] - 2:10
**edited** [2] - 33:18, 33:19
**educated** [1] - 36:5
**education** [1] - 23:24
**effect** [2] - 29:11, 34:24
**efficiency** [1] - 36:12
**efficient** [1] - 24:18
**effort** [2] - 33:20, 40:15
**efforts** [2] - 16:4, 24:3
**eight** [3] - 15:8, 15:9, 15:10
**EIMER** [2] - 2:17, 2:17
**either** [14] - 10:7, 10:12, 29:25, 31:21, 32:25, 33:18, 34:17, 40:13, 41:19, 42:3, 43:13, 44:24, 45:7
**ELLIS** [1] - 2:9
**email** [1] - 47:23
**EMANUEL** [1] - 3:6
**EMERY** [1] - 3:15
**employees** [2] - 16:11, 16:14
**end** [9] - 14:14, 24:7, 25:6, 25:23, 26:7, 26:17, 26:18, 41:14, 48:22
**endeavor** [1] - 24:25
**ended** [2] - 14:22, 16:5
**ending** [1] - 14:16

**engine** [1] - 40:2
**enter** [2] - 5:12, 5:24
**entered** [2] - 4:10, 28:12
**entire** [2] - 35:7, 41:11
**entirely** [1] - 41:16
**entitled** [2] - 51:5, 51:7
**entity** [1] - 20:16
**essentially** [1] - 28:24
**events** [1] - 17:10
**evidentiary** [3] - 38:2, 38:4, 46:9
**evolve** [1] - 40:4
**exact** [6] - 31:4, 31:21, 36:8, 40:10, 40:11, 41:1
**exactly** [1] - 40:19
**example** [1] - 39:19
**exceed** [2] - 8:21, 9:1
**excuse** [1] - 37:6
**exemplars** [1] - 22:21
**existing** [1] - 46:24
**expand** [1] - 40:15
**expect** [2] - 8:20, 34:18
**expected** [1] - 29:12
**expensive** [1] - 42:9
**experts** [2] - 22:9, 22:17
**explains** [2] - 4:21, 38:3
**express** [1] - 34:23
**expressly** [3] - 31:9, 31:20, 34:11
**extension** [1] - 8:25
**extensive** [1] - 11:15
**extent** [4] - 12:5, 12:8, 12:16, 42:24
**extracts** [1] - 22:12
**extremely** [3] - 10:4, 14:9, 15:12

### F

**fabulous** [1] - 50:17
**facilitate** [1] - 21:5
**fact** [9] - 10:24, 14:25, 16:13, 16:18, 19:6, 28:24, 31:19, 49:3, 49:14
**facts** [1] - 10:18
**factual** [2] - 7:9, 7:23
**factually** [1] - 9:23
**fading** [2] - 21:20, 42:6
**fail** [1] - 30:1
**fair** [6] - 17:15, 27:4, 27:6, 40:22, 43:19, 49:4
**fairly** [1] - 30:13
**faith** [2] - 16:4, 19:24
**far** [4] - 4:25, 30:19, 31:7, 32:4
**fashioned** [1] - 16:25
**favor** [1] - 34:17
**FCRR** [1] - 51:11
**fear** [1] - 42:9
**federal** [1] - 15:25
**Feller** [2] - 47:12, 47:14
**FELLER** [4] - 2:10, 47:7, 47:12, 47:16
**felt** [2] - 29:13, 29:15
**Ferrari** [1] - 37:7
**few** [1] - 42:18
**field** [1] - 23:4

**fields** [1] - 22:15
**figure** [4] - 10:8, 17:14, 21:1
**file** [26] - 5:9, 5:10, 5:13, 5:16, 5:17, 5:19, 6:2, 6:4, 6:15, 6:20, 8:24, 11:6, 11:10, 11:12, 11:23, 12:3, 12:6, 12:9, 12:16, 17:16, 17:18, 19:7, 46:25, 48:9
**filed** [3] - 7:8, 13:16, 28:5
**filing** [5] - 5:6, 8:15, 8:18, 17:11, 47:1
**fine** [7] - 5:24, 8:10, 12:6, 18:2, 46:5, 46:6, 48:25
**fire** [1] - 35:2
**firm** [1] - 20:13
**first** [16] - 4:13, 6:12, 29:2, 29:7, 29:15, 32:17, 34:7, 35:8, 37:11, 37:12, 37:21, 37:22, 38:17, 45:17, 48:20
**five** [2] - 10:21, 38:11
**fledged** [2] - 27:20, 43:8
**flight** [1] - 4:23
**flip** [1] - 45:13
**floor** [1] - 24:15
**Floor** [1] - 3:8
**FOLEY** [1] - 2:13
**folks** [1] - 12:18
**follow** [2] - 26:4, 45:1
**follow-up** [1] - 26:4
**following** [3] - 4:1, 15:13, 39:14
**forbid** [1] - 44:16
**Ford** [3] - 40:2, 40:3, 40:11
**foreclosed** [1] - 34:14
**foregoing** [1] - 51:7
**forestall** [2] - 32:10, 32:13
**forever** [1] - 37:16
**forgive** [2] - 16:24, 18:1
**formal** [1] - 8:24
**format** [2] - 20:14, 20:24
**formatting** [1] - 21:10
**formulation** [1] - 37:1
**forth** [1] - 28:24
**forward** [2] - 6:12, 22:25
**founded** [1] - 42:10
**four** [8] - 12:18, 15:5, 15:23, 36:22, 36:24, 40:23, 41:13, 41:15
**framework** [1] - 42:19
**freed** [10] - 27:12, 30:13, 32:3, 33:12, 35:19, 35:24, 36:6, 42:24, 44:5, 44:24
**FREED** [20] - 27:14, 28:15, 28:18, 28:21, 28:23, 32:5, 32:9, 32:13, 33:2, 33:14, 34:25, 35:5, 35:13, 35:21, 38:24, 44:8, 44:11, 46:2, 46:5, 46:15
**Freed** [5] - 27:15, 28:15, 34:25, 44:8, 46:2
**Friday** [1] - 25:3
**friends** [1] - 47:5
**front** [2] - 32:22, 43:9
**frustration** [1] - 16:4
**full** [2] - 27:20, 43:8
**full-fledged** [1] - 27:20
**fully** [2] - 22:7, 24:3, 49:7
**function** [1] - 18:19
**future** [22] - 17:12, 29:7, 29:16, 29:17, 29:19, 32:4, 32:19, 32:20, 32:24, 34:11,

34:12, 35:17, 38:15, 39:8, 39:9, 39:18, 40:5, 40:9, 40:20, 41:22, 41:24, 43:12

### G

**game** [1] - 40:22
**gap** [2] - 40:7, 40:17
**GATES** [1] - 3:2
**Georgia** [17] - 3:7, 12:9, 13:19, 13:21, 13:23, 14:3, 14:8, 15:2, 15:13, 15:16, 15:18, 16:10, 16:12, 16:13, 17:4, 19:24, 46:18
**Georgia-Pacific** [15] - 3:7, 12:9, 13:19, 13:21, 13:23, 14:3, 14:8, 15:13, 15:16, 15:18, 16:10, 16:13, 17:4, 19:24, 46:18
**Georgia-Pacific's** [2] - 15:2, 16:12
**given** [3] - 42:16, 45:17, 48:21
**glad** [1] - 5:14
**goal** [1] - 34:22
**God** [1] - 44:16
**good-faith** [1] - 16:4
**GOODWIN** [4] - 2:2, 16:7, 17:25, 18:12
**Goodwin** [2] - 16:8, 17:24
**governing** [1] - 34:9
**GP** [1] - 16:17
**grant** [2] - 5:15, 5:16
**great** [2] - 13:7, 50:22
**ground** [5] - 35:17, 35:24, 36:9, 36:11, 41:1
**group** [2] - 11:20, 41:11
**guarantee** [1] - 44:20
**guess** [4] - 16:25, 17:6, 22:24, 28:10
**guidance** [1] - 44:13
**guinea** [1] - 26:25

### H

**half** [1] - 37:13
**handily** [2] - 16:22, 17:2
**handle** [1] - 49:22
**handling** [1] - 25:13
**hands** [2] - 10:10, 50:22
**hang** [1] - 35:19
**Hannon** [2] - 19:12, 46:19
**happy** [10] - 5:10, 5:11, 8:25, 17:11, 21:4, 28:3, 33:3, 33:8, 44:14, 48:1
**hardly** [1] - 17:2
**Hawaii** [1] - 50:18
**head** [1] - 23:23
**hear** [2] - 9:2, 30:5
**heard** [2] - 35:5, 43:24
**hearing** [22] - 28:14, 30:16, 30:24, 31:3, 31:7, 31:13, 31:24, 32:14, 34:3, 34:16, 35:16, 36:5, 38:3, 38:4, 43:3, 43:8, 43:12, 44:20, 46:10, 48:6, 48:18
**hearings** [1] - 33:25
**heavily** [1] - 7:9
**heavy** [1] - 6:11
**heck** [2] - 38:13
**held** [1] - 50:5

**help** [5] - 43:19, 44:6, 47:20, 49:13, 49:20
**helpful** [5] - 42:16, 44:13, 45:25, 49:25, 50:22
**helps** [4] - 13:12, 13:13, 47:18
**hi** [1] - 4:2
**hired** [1] - 23:17
**hold** [6] - 6:1, 8:2, 15:3, 26:12, 28:19, 50:6
**hold-the-date** [1] - 8:2
**holding** [2] - 35:21, 45:10
**hole** [1] - 40:7
**Honor** [76] - 5:2, 5:11, 5:12, 5:18, 6:19, 6:23, 7:6, 7:17, 8:14, 9:15, 10:4, 11:12, 12:4, 13:22, 15:14, 16:6, 16:7, 16:9, 17:18, 18:12, 19:6, 19:23, 20:6, 20:15, 21:17, 21:24, 22:1, 23:3, 24:10, 25:2, 25:12, 26:1, 27:5, 27:14, 27:22, 28:3, 28:15, 29:24, 30:4, 30:5, 30:16, 31:5, 33:25, 34:3, 34:19, 34:25, 35:23, 36:4, 36:9, 36:14, 39:15, 39:17, 40:10, 41:3, 42:4, 42:13, 43:1, 43:14, 43:21, 44:9, 45:10, 45:16, 46:2, 46:23, 47:6, 47:7, 47:12, 48:1, 48:17, 48:21, 49:8, 50:2, 50:12, 50:13, 50:16
**Honor's** [1] - 5:6
**hope** [2] - 13:9, 50:17
**hoped** [2] - 14:3, 25:12
**hopefully** [2] - 46:10, 46:18
**hoping** [5] - 21:15, 23:19, 43:10, 45:7, 45:13
**housekeeping** [1] - 20:6
**hundred** [2] - 43:11, 43:18
**hurt** [1] - 24:2
**hypothetical** [1] - 36:22
**hypotheticals** [1] - 36:22

**I**

**idea** [6] - 24:5, 30:1, 37:13, 40:14, 44:8, 47:14
**ideas** [1] - 49:25
**IL** [7] - 2:7, 2:11, 2:18, 2:22, 3:4, 3:13, 3:16
**Illinois** [1] - 51:10
**immediate** [1] - 39:18
**impede** [1] - 21:4
**impediment** [1] - 35:15
**importantly** [1] - 29:15
**in-person** [3] - 10:2, 23:10, 50:7
**inappropriate** [2] - 15:12, 29:14
**inaudible** [4] - 11:17, 28:18, 35:18, 48:8
**inclined** [1] - 5:12
**included** [1] - 35:3
**including** [1] - 15:6
**inconsistent** [1] - 39:15
**incorporate** [2] - 24:24, 43:17
**indexing** [1] - 44:23
**indicate** [1] - 42:11

**indicated** [2] - 14:13, 22:19
**indicating** [1] - 5:13
**indifferent** [1] - 39:4
**individual** [1] - 11:4
**individual's** [1] - 16:20
**individuals** [1] - 15:24
**indulge** [1] - 43:25
**information** [10] - 6:14, 10:7, 14:4, 15:11, 22:7, 22:9, 22:10, 22:14, 22:18, 24:24
**informed** [1] - 14:9
**inherent** [1] - 38:4, 38:8
**initial** [1] - 34:13
**Inland** [5] - 2:21, 5:3, 8:15, 9:16, 12:15
**input** [1] - 27:7
**insist** [1] - 28:25
**insisting** [1] - 29:19
**instance** [1] - 37:9
**instructed** [1] - 5:22
**insulting** [1] - 37:15
**intended** [3] - 33:24, 39:25, 40:8
**interested** [1] - 46:1
**interim** [2] - 41:18, 41:22
**interject** [1] - 36:14
**International** [3] - 2:14, 12:5, 24:20
**interpreted** [1] - 16:1
**interrogatories** [6] - 13:20, 15:17, 15:19, 15:21, 15:25, 46:18
**interrogatory** [10] - 14:5, 14:11, 14:17, 14:23, 14:25, 15:4, 15:22, 16:2, 16:21, 17:1
**interrupt** [3] - 27:22, 30:7, 33:2
**invested** [1] - 36:3
**involved** [1] - 42:23
**IP** [3] - 24:14, 44:24, 46:10
**IP's** [1] - 25:10
**issue** [10] - 5:5, 11:11, 11:25, 18:10, 21:9, 23:4, 23:14, 25:24, 26:11, 37:11
**issues** [12] - 8:17, 10:21, 10:25, 15:18, 15:21, 24:13, 24:19, 30:1, 44:12, 46:13, 46:14, 46:25
**IT** [2] - 20:22, 20:23
**item** [1] - 48:5
**items** [3] - 10:16, 49:9, 49:24
**itself** [3] - 37:25, 38:9

**J**

**James** [1] - 19:12
**JAMES** [1] - 2:14
**jealous** [1] - 50:18
**Jeff** [1] - 25:13
**JENNIFER** [1] - 3:15
**jet** [1] - 10:5
**jet-lagged** [1] - 10:5
**Jim** [7] - 12:4, 23:3, 27:17, 41:3, 45:16, 46:19, 48:5
**job** [4] - 15:7, 16:11, 16:14, 16:18
**jobs** [1] - 16:20
**join** [1] - 25:14

**Judge** [2] - 4:9, 28:21
**judge** [4] - 4:18, 17:13, 43:6, 43:19
**judgment** [1] - 32:7
**July** [5] - 4:10, 4:11, 25:1, 25:3, 26:16
**jump** [2] - 24:12, 27:12
**junk** [1] - 47:22

**K**

**keep** [3] - 14:18, 43:16, 47:21
**kind** [15] - 7:3, 7:11, 8:10, 10:12, 10:17, 12:20, 18:15, 26:25, 29:13, 29:25, 35:20, 41:23, 44:19, 45:1, 48:14
**KIRKLAND** [1] - 2:9
**knowledgeable** [1] - 23:25
**knows** [1] - 38:13
**KPMG** [1] - 20:19

**L**

**Labor** [3] - 45:6, 45:7, 45:17
**laboring** [1] - 27:11
**lack** [1] - 22:7
**lagged** [1] - 10:5
**language** [3] - 29:11, 29:13, 31:18, 31:21, 32:6, 32:24, 33:16, 34:23, 35:1, 40:1, 40:18, 41:24, 46:9
**language-wise** [1] - 41:24
**LARDNER** [1] - 2:13
**large** [2] - 14:6, 41:7
**LaSalle** [2] - 2:6, 2:11
**last** [14] - 5:22, 13:25, 15:7, 15:9, 15:10, 22:16, 23:24, 25:4, 25:22, 26:1, 26:18, 33:6, 35:19, 36:18
**lastly** [1] - 15:22
**late** [1] - 23:10
**law** [2] - 16:1, 23:17
**LAW** [1] - 2:5
**lawyers** [1] - 37:18
**lead** [2] - 4:25, 24:21
**learned** [3] - 16:13, 16:18, 43:6
**least** [9] - 7:7, 14:5, 15:5, 15:23, 31:8, 32:7, 41:17, 45:14, 46:17
**leaving** [1] - 18:12
**led** [2] - 17:10, 34:22
**left** [7] - 14:12, 14:22, 22:5, 25:5, 27:24, 40:7, 50:1
**legal** [1] - 39:23
**lei** [1] - 10:5
**lengthy** [1] - 25:25
**Leonid** [1] - 47:12
**LEONID** [1] - 2:10
**less** [1] - 39:11
**letter** [1] - 23:9
**likelihood** [1] - 13:1
**likely** [2] - 7:9, 13:4
**limit** [1] - 9:1
**limitations** [1] - 15:25
**limited** [1] - 29:7

**limits** [2] - 8:21, 8:25
**lines** [1] - 26:18
**list** [1] - 15:3
**literally** [2] - 18:16, 36:6
**litigation** [3] - 15:3, 16:10, 30:25
**live** [1] - 36:5
**LLC** [2] - 2:5, 3:11
**LLP** [8] - 2:9, 2:13, 2:17, 2:20, 3:2, 3:7, 3:11, 3:15
**Locust** [1] - 2:3
**logical** [1] - 24:9
**look** [2] - 26:3, 49:19
**looked** [2] - 33:10, 46:11
**looking** [3] - 21:4, 29:17, 50:6
**loop** [1] - 25:15
**loud** [1] - 43:24
**love** [1] - 50:17
**ludicrous** [1] - 37:15
**Lynette** [4] - 6:1, 17:21, 47:21

## M

**Madison** [2] - 3:3, 3:8
**mail** [1] - 19:5
**main** [2] - 8:20, 8:25
**major** [2] - 26:24, 38:17
**margins** [1] - 49:16
**MARK** [1] - 3:12
**Mark** [3] - 4:18, 12:12, 27:23
**Marovitz** [5] - 17:8, 32:6, 33:7, 33:20, 42:22
**Mary** [3] - 23:17, 23:19, 23:22
**materials** [1] - 20:1
**matter** [10] - 5:8, 13:23, 14:11, 30:24, 31:2, 31:6, 31:14, 31:24, 39:6, 51:7
**MATTHEW** [1] - 2:6
**Mayer** [2] - 4:24, 27:24
**MAYER** [2] - 2:20, 3:11
**McCareins** [9] - 3:12, 4:18, 4:23, 12:12, 27:22, 27:23, 51:3
**McDERMOTT** [1] - 3:15
**McKeown** [37] - 2:14, 12:4, 19:18, 19:20, 21:18, 22:3, 22:19, 23:3, 24:5, 24:14, 25:2, 25:21, 25:22, 26:13, 26:16, 27:5, 28:3, 28:8, 31:20, 33:5, 34:22, 35:1, 40:1, 41:3, 41:11, 42:22, 45:16, 45:20, 48:5, 48:17, 49:8, 50:25
**McKeown's** [1] - 33:17
**mean** [14] - 13:8, 16:16, 18:7, 20:14, 20:23, 24:9, 26:6, 27:4, 33:2, 33:13, 42:1, 45:13, 49:15, 50:9
**meaningful** [1] - 38:16
**means** [2] - 16:1, 35:9
**meant** [1] - 31:22
**meet** [10] - 4:12, 10:22, 10:23, 11:9, 11:15, 18:9, 23:7, 26:4, 38:16, 50:21
**meet-and-confer** [1] - 10:23
**meeting** [3] - 45:2, 48:8, 50:9
**MENDEL** [1] - 3:3
**met** [1] - 22:17

**method** [8] - 17:14, 17:15, 37:24, 37:25, 38:1, 38:9, 38:18, 38:20
**methodology** [3] - 28:13, 40:14, 44:22
**MICHAEL** [1] - 3:11
**Michael** [5] - 27:15, 28:15, 34:25, 44:8, 46:2
**Michigan** [1] - 2:18
**middle** [2] - 12:22, 38:13
**might** [11] - 10:11, 23:6, 23:15, 26:6, 27:1, 28:5, 30:7, 32:25, 40:8, 44:23
**Mike** [1] - 4:24
**MILLER** [12] - 2:5, 2:21, 5:2, 5:5, 5:17, 6:19, 8:14, 8:20, 9:15, 9:20, 12:15, 45:10, 46:23, 48:1, 50:2, 50:13
**Miller** [8] - 5:2, 6:9, 8:15, 9:15, 12:15, 45:9, 46:23, 47:20
**Milwaukee** [1] - 2:15
**minute** [6] - 5:12, 6:1, 26:12, 35:19, 35:20, 43:25
**minutes** [1] - 4:24
**misleading** [1] - 18:16
**missing** [1] - 22:17
**misspeaking** [1] - 25:19
**mistaken** [1] - 33:8
**misunderstanding** [2] - 32:22, 33:23
**Model** [1] - 37:6
**MOGIN** [41] - 6:23, 7:6, 7:13, 7:15, 7:17, 7:19, 8:1, 8:4, 10:4, 11:12, 11:15, 12:20, 12:25, 13:3, 20:6, 20:9, 20:11, 20:15, 21:7, 21:11, 21:17, 21:23, 22:1, 22:3, 24:10, 25:12, 25:20, 27:11, 36:14, 36:17, 36:21, 37:6, 42:3, 42:7, 43:14, 43:21, 43:23, 45:3, 50:12, 50:16, 50:19
**Mogin** [23] - 7:6, 9:3, 10:3, 11:8, 20:9, 21:3, 21:17, 23:8, 24:15, 25:8, 27:8, 27:16, 28:11, 36:14, 41:25, 42:17, 42:20, 42:24, 43:14, 43:23, 45:17, 45:23, 50:15
**Mogin's** [1] - 13:6
**moment** [2] - 9:16, 10:2
**Monday** [2] - 21:9, 27:19
**Monroe** [1] - 3:16
**MONTAGUE** [1] - 2:2
**month** [1] - 37:13
**months** [2] - 6:13, 40:23
**most** [3] - 4:20, 22:4, 24:17
**motion** [34] - 4:14, 5:11, 5:15, 5:16, 5:20, 6:3, 6:7, 6:10, 6:12, 6:15, 6:17, 6:24, 7:1, 7:9, 7:21, 8:5, 8:9, 8:24, 9:10, 9:11, 11:6, 11:24, 12:1, 12:19, 13:7, 13:24, 16:25, 17:11, 18:14, 19:10, 24:2, 38:1
**motions** [7] - 4:11, 5:9, 7:21, 11:10, 11:13, 11:21, 47:22
**move** [6] - 16:6, 17:5, 17:6, 22:25, 35:15, 48:10
**moving** [1] - 26:7
**MR** [125] - 2:2, 2:6, 2:14, 2:17, 3:3, 3:7, 3:11, 3:12, 4:18, 4:23, 5:21, 7:6, 7:13, 7:15, 7:17, 7:19, 8:1, 8:4, 10:4, 11:12, 11:15, 12:4, 12:8, 12:12, 12:20, 12:25,

13:3, 13:22, 16:7, 17:18, 17:25, 18:12, 18:23, 18:25, 19:2, 19:4, 19:6, 19:14, 19:17, 19:18, 19:20, 19:23, 20:6, 20:9, 20:11, 20:15, 21:2, 21:7, 21:11, 21:17, 21:23, 22:1, 22:3, 23:3, 24:10, 25:2, 25:12, 25:20, 25:22, 26:16, 27:5, 27:11, 27:14, 27:22, 28:3, 28:8, 28:15, 28:18, 28:21, 28:23, 30:4, 30:11, 31:19, 32:5, 32:9, 32:13, 33:2, 33:12, 33:14, 33:15, 34:25, 35:5, 35:11, 35:13, 35:21, 35:23, 36:3, 36:14, 36:17, 36:21, 37:4, 37:6, 38:24, 39:12, 39:22, 40:25, 41:3, 41:11, 42:3, 42:7, 42:13, 42:16, 43:14, 43:21, 43:23, 44:8, 44:11, 45:3, 45:16, 45:20, 46:2, 46:5, 46:6, 46:15, 47:6, 47:7, 47:12, 47:16, 48:5, 48:17, 49:8, 50:12, 50:16, 50:19, 51:3
**MS** [16] - 2:21, 3:15, 5:2, 5:5, 5:17, 6:19, 8:14, 8:20, 9:15, 9:20, 12:15, 45:10, 46:23, 48:1, 50:2, 50:13
**mute** [1] - 4:19

## N

**name** [1] - 4:6
**namely** [1] - 30:24
**names** [1] - 4:3
**narrow** [1] - 13:11
**NATHAN** [1] - 2:17
**native** [1] - 22:12
**nature** [1] - 29:23
**necessary** [3] - 8:7, 11:21, 13:25
**need** [27] - 5:17, 5:19, 6:6, 6:9, 6:10, 6:13, 6:16, 8:24, 9:5, 9:6, 10:14, 12:5, 13:5, 13:17, 23:2, 27:19, 28:13, 37:20, 38:2, 41:7, 44:4, 45:14, 45:21, 47:1, 49:13, 50:9
**needed** [6] - 10:6, 14:17, 23:6, 26:2, 48:20, 50:7
**Neuwirth** [14] - 12:8, 13:22, 17:16, 18:21, 19:12, 20:22, 30:4, 31:17, 32:7, 32:23, 35:5, 36:17, 42:14, 44:4
**NEUWIRTH** [29] - 3:7, 12:8, 13:22, 17:18, 18:23, 18:25, 19:2, 19:4, 19:6, 19:14, 19:17, 19:23, 21:2, 30:4, 30:11, 31:19, 33:12, 33:15, 35:11, 35:23, 36:3, 37:4, 39:12, 39:22, 40:25, 42:13, 42:16, 46:6, 47:6
**Neuwirth's** [1] - 37:1
**New** [2] - 3:8, 47:5
**new** [11] - 30:20, 31:12, 31:23, 34:14, 35:9, 39:19, 40:5, 40:20, 40:21, 46:13, 46:14
**news** [1] - 23:13
**next** [6] - 13:18, 14:23, 24:14, 27:17, 27:19, 41:22
**nine** [1] - 6:13
**nobody** [2] - 21:3, 34:14
**Nolan** [1] - 24:8
**Norampac** [2] - 3:3, 13:4
**normal** [1] - 4:20

**North** [1] - 2:11
**Northern** [1] - 51:10
**nothing** [5] - 12:10, 26:21, 31:10, 31:22, 42:11
**notice** [1] - 45:5
**notion** [1] - 36:6
**number** [7] - 11:1, 11:18, 22:18, 35:1, 35:6, 35:8, 49:16
**NY** [1] - 3:8

## O

**o'clock** [3] - 47:4, 47:11, 47:15
**oar** [1] - 27:11
**object** [2] - 12:19, 38:10
**objection** [6] - 8:24, 37:22, 37:24, 39:1, 39:5, 45:20
**objections** [1] - 29:3
**obligated** [1] - 30:25
**obtain** [1] - 14:4
**obviously** [8] - 6:10, 8:21, 9:23, 15:11, 20:2, 25:25, 35:18, 41:5
**occur** [1] - 40:19
**October** [1] - 30:21
**Official** [1] - 51:9
**old** [2] - 16:24, 16:25
**once** [2] - 36:7, 49:23
**one** [37] - 4:13, 5:7, 6:1, 6:4, 8:18, 9:10, 11:1, 13:3, 16:2, 16:22, 18:4, 18:22, 19:10, 21:12, 21:14, 23:18, 24:14, 26:12, 29:2, 29:6, 33:7, 35:1, 35:6, 35:19, 35:23, 37:19, 41:4, 44:15, 45:5, 45:12, 45:14, 48:5, 48:6, 48:18, 49:9, 50:6
**ones** [1] - 25:6
**open** [1] - 4:1
**opened** [1] - 46:19
**opening** [1] - 13:14
**operate** [1] - 42:12
**opinion** [3] - 29:23, 31:4, 37:10
**opposite** [1] - 36:12
**oppositions** [1] - 7:22
**oral** [2] - 49:1, 49:13
**order** [9] - 5:12, 5:24, 6:2, 11:2, 13:24, 16:6, 26:10, 26:16, 40:8
**ordered** [2] - 24:20, 24:21
**orders** [1] - 4:10
**organizational** [3] - 15:15, 15:18, 15:21
**original** [1] - 40:1
**originally** [3] - 33:17, 34:23, 48:18
**ought** [1] - 31:13
**outside** [1] - 18:15
**overtly** [1] - 15:24

## P

**P.C** [1] - 2:2
**PA** [1] - 2:3
**Pacific** [15] - 3:7, 12:9, 13:19, 13:21, 13:23, 14:3, 14:8, 15:13, 15:16, 15:18, 16:10, 16:13, 17:4, 19:24, 46:18
**Pacific's** [2] - 15:2, 16:12
**Packaging** [1] - 2:9
**page** [5] - 8:21, 8:25, 9:1, 26:17, 26:19
**pages** [1] - 16:23
**Paper** [3] - 2:14, 12:5, 24:20
**paper** [4] - 5:24, 16:24, 17:3, 44:4
**papers** [3] - 7:1, 12:10, 17:1
**paperwork** [3] - 5:10, 5:11, 5:17
**pardon** [1] - 19:19
**part** [5] - 7:7, 10:17, 14:6, 27:9, 37:21
**participate** [1] - 27:9
**participating** [1] - 28:1
**particular** [3] - 5:5, 11:2, 26:11
**particularly** [6] - 4:4, 7:22, 7:23, 26:20, 42:4, 42:7
**parties** [4] - 10:21, 11:3, 34:17, 42:17
**parties'** [1] - 24:18
**partner** [1] - 4:24
**party** [1] - 13:3
**password** [1] - 20:17
**PCA** [1] - 47:13
**PEARSALL** [1] - 2:2
**people** [9] - 4:8, 12:21, 12:25, 15:6, 20:19, 20:23, 26:25, 50:22
**per** [1] - 5:6
**perceived** [1] - 33:18
**percent** [2] - 43:12, 43:18
**perfect** [2] - 11:8, 43:18
**perhaps** [4] - 23:9, 42:21, 48:10, 48:22
**period** [2] - 9:20, 33:4
**permission** [2] - 5:13, 16:5
**person** [4] - 10:2, 10:8, 23:10, 50:7
**personal** [3] - 43:4, 43:25, 44:3
**personally** [1] - 5:23
**phase** [1] - 41:18
**Philadelphia** [1] - 2:3
**phone** [5] - 4:8, 26:21, 27:13, 35:22, 49:20
**phones** [1] - 7:13
**phonetic** [1] - 25:13
**physician** [1] - 44:1
**pick** [4] - 4:24, 44:15, 45:12, 45:14
**pig** [1] - 26:25
**pilot** [1] - 23:23
**place** [3] - 8:21, 9:6, 11:16
**plaintiff** [2] - 48:10, 48:19
**Plaintiffs** [1] - 2:2
**plaintiffs** [39] - 4:13, 5:8, 5:19, 6:22, 8:5, 11:3, 11:6, 11:23, 14:1, 14:13, 14:18, 14:22, 15:1, 15:4, 15:17, 15:20, 16:17, 16:19, 22:6, 23:5, 23:8, 25:5, 30:15, 30:17, 31:1, 31:6, 31:11, 31:18, 31:23, 34:12, 35:3, 36:23, 37:1, 37:22, 40:15, 42:10, 46:25, 48:22, 49:17
**plaintiffs'** [3] - 5:15, 9:10, 11:17
**plan** [1] - 8:4
**plane** [1] - 27:24
**planning** [5] - 10:17, 11:10, 11:12, 30:7, 30:9
**plate** [1] - 25:9
**pleadings** [1] - 6:10
**plenty** [2] - 9:8, 46:8
**plow** [1] - 10:8
**plowing** [1] - 18:8
**point** [13] - 5:7, 20:6, 22:24, 29:8, 29:12, 29:15, 30:5, 30:8, 36:10, 39:17, 40:5, 41:4, 44:11
**points** [2] - 33:15, 35:5
**poor** [1] - 47:21
**portion** [1] - 46:17
**position** [3] - 29:21, 32:15, 35:18
**possibility** [1] - 12:23
**possible** [1] - 20:2
**practicable** [1] - 19:25
**precisely** [2] - 22:22, 49:10
**preclude** [1] - 31:11, 31:22, 33:1
**precluded** [2] - 37:2, 37:16
**predictive** [7] - 28:25, 29:18, 32:11, 35:10, 36:8, 36:24, 37:2
**prefer** [2] - 5:23, 17:5
**prepared** [3] - 24:25, 31:9, 35:13
**prepares** [1] - 16:14
**presented** [4] - 31:5, 34:3, 35:12, 40:10
**presenting** [1] - 36:4
**preserving** [1] - 38:10
**presume** [1] - 35:9
**pretty** [1] - 10:2
**previously** [2] - 15:16, 24:25
**prints** [1] - 26:19
**prisoners** [1] - 4:5
**problem** [9] - 5:23, 19:7, 20:12, 20:21, 20:24, 21:8, 21:22, 33:9, 38:7
**proceed** [1] - 5:22
**proceeded** [1] - 14:7
**proceedings** [3] - 4:1, 51:5, 51:7
**process** [6] - 10:23, 24:23, 39:2, 40:25, 41:20, 42:8
**produce** [4] - 9:11, 9:12, 46:11, 51:1
**produced** [10] - 14:8, 19:17, 19:21, 39:2, 39:3, 41:5, 41:6, 41:19, 41:20
**producing** [2] - 19:16, 33:1
**production** [16] - 16:22, 17:3, 19:24, 20:15, 24:19, 29:1, 29:8, 29:19, 32:18, 34:8, 35:8, 37:12, 37:23, 38:12, 38:14, 38:17
**productions** [2] - 32:4, 32:24
**program** [1] - 23:24
**progress** [2] - 17:13, 49:5
**promptly** [1] - 19:25
**proposal** [7] - 22:8, 22:11, 30:12, 30:14, 31:19, 42:18
**propose** [1] - 42:17
**proposed** [3] - 31:1, 40:8, 40:15
**proposing** [2] - 22:22, 30:18
**proprietary** [1] - 6:14
**propriety** [1] - 20:16
**protect** [1] - 32:14
**protection** [1] - 33:11
**protective** [2] - 13:24, 16:6

**provide** [4] - 22:12, 22:14, 22:15, 50:2
**provided** [1] - 22:16
**providing** [1] - 22:12
**public** [2] - 6:5, 6:20
**purpose** [2] - 33:25, 48:17
**purposes** [1] - 48:18
**pursuit** [1] - 14:4
**purview** [1] - 31:16
**put** [13] - 12:20, 13:15, 17:4, 20:16, 21:14, 22:13, 23:11, 24:3, 26:12, 29:10, 33:4, 35:1

## Q

**questioning** [1] - 14:21
**questions** [6] - 14:10, 14:15, 14:19, 15:6, 15:23, 49:16
**quickly** [1] - 20:2
**QUINN** [1] - 3:6
**quote** [2] - 37:3, 38:6

## R

**raise** [3] - 32:19, 32:20, 37:11
**raised** [2] - 29:9, 38:1
**rather** [5] - 7:22, 16:19, 22:12, 48:11, 48:20
**re** [1] - 33:4
**re-review** [1] - 33:4
**reach** [3] - 33:21, 35:13, 44:11
**reached** [1] - 11:18
**react** [1] - 39:6
**reaction** [1] - 38:23
**read** [2] - 49:2, 49:15
**reading** [1] - 13:16
**ready** [4] - 14:13, 20:1, 20:4, 24:3
**real** [1] - 32:9
**really** [14] - 6:12, 8:9, 17:4, 18:15, 20:1, 20:24, 24:14, 27:20, 29:22, 30:13, 33:5, 44:11, 47:18, 49:3
**reason** [3] - 17:4, 35:2, 37:15
**reasonable** [2] - 33:21, 36:13
**reasonably** [2] - 9:13, 9:25
**reasons** [1] - 16:3
**receive** [2] - 4:15, 5:24
**received** [4] - 4:13, 5:15, 22:20, 33:7
**receiver** [1] - 21:24
**recent** [1] - 22:4
**recipients** [1] - 15:3
**recollection** [1] - 7:20
**record** [4] - 14:9, 18:11, 24:16, 51:7
**redacted** [2] - 6:5, 6:20
**redo** [1] - 38:21
**refer** [1] - 35:7
**referral** [1] - 4:9
**reflects** [1] - 42:25
**regard** [2] - 45:9, 45:10
**regarding** [3] - 4:14, 28:13, 29:6
**reintroduce** [1] - 40:14

**related** [1] - 14:11
**relates** [1] - 24:14
**relatively** [1] - 17:3
**remand** [1] - 39:20
**remember** [1] - 33:10
**remembers** [1] - 16:9
**render** [2] - 14:4, 29:24
**replies** [4] - 13:16, 48:7, 48:8, 48:11
**reply** [11] - 6:25, 7:2, 8:11, 18:5, 18:21, 26:10, 47:2, 48:20, 49:6, 49:19
**report** [3] - 8:6, 14:7, 25:15
**reported** [2] - 15:8, 15:10
**REPORTER** [1] - 47:10
**Reporter** [1] - 51:9
**reporter** [2] - 47:18, 47:19
**reports** [1] - 4:12
**representative** [1] - 16:13
**represented** [2] - 16:10, 16:17
**request** [15] - 11:3, 11:5, 21:14, 29:2, 29:8, 30:19, 32:10, 32:17, 35:8, 36:24, 37:12, 39:19, 46:11, 51:1
**requested** [1] - 22:19
**requests** [9] - 18:9, 24:19, 30:21, 31:25, 34:8, 34:11, 37:14, 40:12, 40:20
**require** [1] - 8:9
**required** [5] - 12:9, 12:16, 29:12, 34:2, 34:6
**reservations** [1] - 50:11
**reserved** [3] - 29:3, 50:8, 50:11
**resolution** [4] - 11:18, 11:19, 12:23, 13:1
**resolve** [2] - 13:7, 21:15
**resolved** [2] - 13:21, 13:23
**resort** [1] - 10:25
**resources** [1] - 36:3
**respect** [4] - 20:7, 29:1, 34:17, 37:11
**respectfully** [1] - 16:5
**respond** [4] - 11:5, 13:5, 16:7, 47:1
**responded** [1] - 22:23
**response** [23] - 5:9, 8:16, 9:14, 9:17, 9:18, 10:10, 10:15, 12:6, 12:9, 12:16, 15:1, 15:4, 15:13, 19:8, 21:18, 22:4, 26:10, 29:1, 29:5, 32:17, 34:8, 36:13, 48:9
**responses** [8] - 5:9, 8:10, 12:1, 12:3, 13:14, 24:23, 25:3, 25:11
**responsibilities** [1] - 15:7
**responsive** [3] - 9:17, 9:18, 34:21
**resume** [1] - 28:14
**retiring** [1] - 48:21
**review** [4] - 8:5, 18:11, 32:11, 33:4
**reviewed** [3] - 8:8, 32:17, 38:5
**revise** [2] - 24:21, 24:23
**revised** [2] - 25:1, 25:2
**RFP** [1] - 44:23
**RFP's** [1] - 25:1
**rights** [1] - 29:3
**road** [3] - 24:2, 39:24, 40:13
**Robert** [1] - 5:21
**RockTenn** [3] - 3:11, 12:12, 27:23
**Roland** [4] - 23:17, 23:19, 23:22, 24:8

**roll** [1] - 4:7
**rolls** [1] - 24:8
**round** [1] - 37:14
**RPR** [1] - 51:11
**rule** [2] - 19:5, 43:8
**rules** [1] - 15:25
**run** [2] - 16:22, 21:8

## S

**satisfactory** [1] - 31:8
**satisfied** [1] - 34:9
**save** [2] - 5:11, 48:24
**scanning** [1] - 18:1
**scenario** [2] - 39:17, 39:24
**schedule** [5] - 5:6, 8:7, 26:8, 28:9, 46:24, 48:23
**scheduled** [2] - 8:1, 14:3
**scheduling** [2] - 18:13, 28:6
**scope** [5] - 4:14, 6:24, 7:20, 9:22, 40:15
**SCOTT** [1] - 3:3
**seal** [5] - 5:10, 5:13, 5:16, 6:4, 6:20
**search** [8] - 28:13, 37:23, 37:24, 37:25, 39:1, 41:8, 41:15, 44:22
**searched** [2] - 41:7, 41:14
**searches** [1] - 29:18, 39:9
**second** [4] - 9:10, 26:19, 29:8, 35:6
**secret** [2] - 41:25, 42:4
**see** [17] - 4:11, 8:12, 9:4, 10:15, 20:23, 21:3, 26:13, 28:5, 29:25, 33:2, 33:21, 34:25, 42:18, 44:4, 44:22, 50:1, 50:23
**seeking** [6] - 5:8, 22:10, 37:2, 37:9, 37:10, 40:20
**seem** [1] - 24:9
**selection** [1] - 41:8
**send** [6] - 37:13, 44:5, 46:8, 47:22, 47:23, 50:23
**sense** [2] - 24:9, 40:6
**sent** [8] - 6:25, 22:5, 23:8, 28:24, 31:20, 32:5, 32:6, 33:20
**separate** [9] - 5:20, 6:2, 6:7, 6:9, 6:10, 6:15, 6:17, 9:24, 27:3
**separately** [1] - 15:24
**September** [5] - 13:10, 26:7, 28:14, 48:22, 50:7
**series** [1] - 17:10
**serve** [3] - 15:4, 24:25, 36:23
**served** [4] - 13:20, 15:17, 25:2, 30:21
**set** [21] - 10:1, 10:2, 10:24, 11:23, 13:8, 13:9, 24:7, 26:10, 26:23, 27:2, 27:20, 28:24, 30:20, 40:11, 45:1, 45:7, 46:3, 46:21, 46:24, 47:3, 49:6
**settlement** [1] - 43:7
**seven** [6] - 8:9, 17:17, 17:20, 17:23, 18:21, 48:14
**seven-day** [1] - 48:14
**Seventh** [3] - 23:23, 38:12, 39:20
**Shadur** [1] - 4:9
**shall** [5] - 11:6, 11:23, 13:16, 24:21,

24:23
**short** [4] - 18:5, 33:4, 40:9, 49:15
**short-term** [1] - 40:9
**show** [1] - 14:9
**side** [1] - 43:13
**sides** [2] - 17:15, 34:16
**sides'** [1] - 43:17
**silent** [1] - 4:20
**similar** [1] - 37:14
**simpler** [1] - 18:4
**simply** [4] - 5:12, 29:20, 30:2, 32:19
**site** [1] - 20:16
**sitting** [1] - 39:8
**situation** [1] - 8:4
**six** [1] - 10:21
**slight** [1] - 7:7
**small** [3] - 8:22, 13:1, 17:2
**SMULIN** [1] - 3:15
**sorry** [7] - 9:12, 27:22, 28:21, 28:23, 33:12, 47:12, 48:14
**sort** [3] - 8:2, 33:21, 41:18
**sound** [1] - 29:9
**sounded** [1] - 21:25
**sounds** [2] - 18:18, 32:23
**source** [1] - 50:9
**sources** [6] - 9:13, 9:20, 9:25, 45:1, 49:2, 50:9
**South** [3] - 2:6, 2:18, 2:21
**speaker** [1] - 21:21
**speaking** [6] - 4:16, 4:17, 7:6, 21:23, 32:7, 33:8
**speaks** [2] - 35:24, 36:17
**specific** [12] - 8:9, 8:10, 8:17, 8:22, 16:17, 17:10, 22:14, 31:18, 34:2, 34:6, 49:3, 49:14
**specifically** [3] - 14:7, 31:4, 38:25
**specifics** [1] - 10:7
**spent** [1] - 41:2
**spoken** [1] - 13:3
**Sprung** [1] - 25:25
**sprung** [7] - 26:4, 26:21, 26:22, 27:4, 27:9, 27:18, 44:25
**stages** [1] - 24:19
**STAHL** [1] - 2:17
**standards** [2] - 31:8, 34:9
**start** [6] - 26:8, 27:21, 35:17, 36:9, 47:8, 47:15
**started** [1] - 28:12
**starts** [2] - 26:17
**state** [1] - 36:25
**statements** [1] - 42:20
**status** [14] - 4:10, 7:3, 9:6, 10:1, 10:2, 10:16, 13:25, 19:16, 22:6, 23:10, 25:4, 26:14, 45:25, 50:7
**STEPHEN** [1] - 3:7
**Steve** [3] - 12:8, 13:22, 30:4
**sticking** [1] - 45:4
**still** [16] - 10:22, 12:3, 12:22, 13:7, 14:12, 14:22, 22:6, 25:7, 26:4, 44:16, 45:7, 46:20, 49:25, 50:5, 50:7
**stipulation** [17] - 28:12, 28:23, 30:1,

30:23, 31:10, 31:22, 32:14, 34:4, 35:7, 35:14, 36:10, 36:11, 37:20, 37:21, 41:19, 43:7, 43:10
**stone** [1] - 23:20
**stop** [1] - 32:2
**stops** [1] - 38:2
**STRAWN** [1] - 3:11
**Street** [5] - 2:3, 2:6, 2:11, 3:3, 3:16
**strikes** [1] - 23:6
**struck** [1] - 40:18
**structured** [1] - 15:23
**study** [1] - 26:3
**stuff** [1] - 18:18
**subject** [7] - 14:11, 30:24, 31:2, 31:6, 31:14, 31:24, 34:15
**submission** [3] - 8:18, 9:1, 9:21
**submissions** [1] - 8:22
**submitted** [1] - 33:5
**subsequent** [2] - 31:14
**subsequently** [1] - 32:13
**substance** [2] - 31:21, 43:1
**substantial** [1] - 14:12
**sufficiency** [1] - 25:10
**suggest** [5] - 12:22, 26:6, 27:15, 31:17, 36:8
**suggested** [3] - 14:1, 28:4, 47:11
**suggesting** [5] - 31:11, 31:23, 40:4, 48:13, 49:6
**suggestion** [2] - 42:13, 48:15
**Suite** [4] - 2:7, 2:18, 3:3, 3:16
**suits** [1] - 28:9
**SULLIVAN** [1] - 3:7
**summarized** [1] - 17:8
**suppose** [1] - 38:12
**supposed** [1] - 22:14
**surprised** [1] - 25:16
**survive** [1] - 35:2
**switch** [1] - 29:20
**system** [1] - 47:19
**systems** [2] - 49:4, 49:17

**T**

**taping** [1] - 47:19
**technical** [1] - 20:19
**technologies** [2] - 34:2, 34:6
**technology** [14] - 30:17, 31:1, 31:5, 31:24, 34:15, 34:19, 35:9, 36:25, 37:3, 37:5, 37:7, 37:16, 40:4, 40:21
**telephone** [4] - 4:2, 4:9, 9:6, 45:24
**telephonic** [3] - 25:4, 26:2, 28:6
**Temple** [5] - 2:21, 5:3, 8:15, 9:16, 12:15
**Temple-Inland** [5] - 2:21, 5:3, 8:15, 9:16, 12:15
**temporal** [4] - 4:14, 6:24, 7:20, 9:22
**tend** [1] - 36:18
**term** [1] - 40:9
**terms** [5] - 7:10, 16:23, 25:6, 36:17, 41:9

**THE** [122] - 4:2, 4:22, 5:1, 5:4, 5:14, 5:19, 6:1, 6:4, 6:6, 6:8, 6:9, 6:21, 6:24, 7:11, 7:14, 7:16, 7:18, 7:25, 8:3, 8:8, 8:19, 9:2, 9:19, 9:22, 10:6, 11:14, 11:22, 12:7, 12:14, 12:18, 12:24, 13:2, 13:6, 17:8, 17:19, 17:22, 17:23, 18:3, 18:18, 18:24, 19:1, 19:3, 19:5, 19:9, 19:15, 19:19, 19:22, 20:5, 20:8, 20:10, 20:14, 20:22, 21:6, 21:8, 21:12, 21:20, 21:25, 22:2, 23:2, 23:12, 24:11, 25:8, 25:18, 25:21, 26:11, 26:20, 27:6, 27:12, 27:17, 28:1, 28:7, 28:10, 28:17, 28:19, 28:22, 30:9, 31:17, 32:2, 32:8, 32:12, 32:21, 35:4, 35:19, 36:2, 36:16, 36:20, 37:17, 38:25, 39:21, 40:24, 41:10, 41:17, 42:6, 42:15, 43:2, 43:15, 43:22, 44:3, 44:10, 44:14, 45:4, 45:12, 45:19, 45:21, 46:4, 46:7, 46:16, 47:3, 47:9, 47:10, 47:11, 47:14, 47:17, 48:3, 48:13, 48:25, 49:11, 50:4, 50:14, 50:17, 50:20, 51:4
**therefore** [1] - 10:24
**thoughts** [1] - 27:1
**three** [5] - 23:24, 25:3, 26:18, 35:1, 40:12
**threw** [2] - 20:20, 39:9
**throughout** [2] - 16:10, 16:15
**throwing** [1] - 49:24
**Thursday** [1] - 45:6
**TINE** [1] - 2:6
**titles** [2] - 15:9, 15:10
**today** [4] - 4:25, 5:15, 13:15, 17:1, 19:18, 19:20, 25:14, 26:14, 47:20, 49:2, 49:15
**today's** [2] - 20:3, 43:1
**together** [4] - 13:19, 17:4, 22:20, 42:18
**tomorrow** [13] - 4:15, 5:6, 8:12, 9:4, 9:14, 11:10, 11:13, 11:25, 13:7, 25:17, 28:5, 46:25, 48:9
**ton** [1] - 25:8
**top** [1] - 49:21
**topic** [1] - 23:9
**topics** [2] - 14:11, 23:8
**totally** [1] - 18:16
**touch** [1] - 4:11
**track** [2] - 4:12, 47:21
**transactional** [3] - 21:13, 23:4, 24:6
**transcript** [1] - 51:7
**transmitted** [2] - 33:17, 34:23
**treating** [1] - 6:18
**tremendous** [1] - 16:3
**tremendously** [1] - 35:16
**tried** [1] - 40:18
**triggered** [2] - 40:12, 40:13
**trip** [4] - 21:19, 22:5, 28:2, 50:20
**trouble** [1] - 20:11
**true** [2] - 18:16, 30:18
**truly** [1] - 20:21
**try** [14] - 7:15, 15:14, 20:25, 23:7, 33:21, 38:17, 42:25, 43:6, 43:16, 43:18, 44:18, 47:17, 49:3, 49:25

**trying** [1] - 7:19, 10:7, 17:14, 19:11, 20:2, 39:13, 43:15, 46:21, 47:21, 47:24
**Tuesday** [8] - 17:18, 17:19, 17:20, 17:21, 45:8, 45:22, 46:4, 47:3
**turn** [2] - 27:24, 44:25
**turned** [1] - 21:3
**turning** [1] - 20:25
**tweak** [1] - 44:6
**two** [14] - 4:10, 5:9, 10:19, 16:22, 21:8, 22:15, 26:10, 26:20, 29:5, 33:15, 35:5, 35:8, 44:15
**two-week** [2] - 26:10
**type** [3] - 30:17, 30:25, 31:10
**types** [1] - 15:21
**typically** [1] - 8:14

## U

**unable** [2] - 20:19, 22:10
**under** [7] - 5:10, 5:13, 5:16, 6:4, 6:20, 31:8, 37:1
**understood** [3] - 31:2, 32:15, 33:24
**undertaken** [1] - 32:1
**undertaking** [1] - 37:10
**unexpected** [1] - 12:10
**unfortunately** [2] - 13:24, 22:16
**unique** [2] - 20:13, 20:21
**unless** [1] - 32:21
**unnecessary** [2] - 14:5, 23:16
**unquote** [1] - 38:6
**up** [20] - 4:24, 11:23, 13:3, 15:14, 16:5, 16:9, 17:10, 22:11, 26:4, 26:23, 27:20, 32:15, 36:7, 38:9, 39:8, 40:18, 42:18, 42:25, 48:4, 48:10
**upcoming** [1] - 14:2
**update** [1] - 26:14
**updated** [1] - 23:12
**urgent** [2] - 43:25, 44:3
**URQUHART** [1] - 3:6
**useful** [1] - 46:3

## V

**vacations** [1] - 23:15
**VAN** [1] - 2:6
**variations** [1] - 29:5
**various** [1] - 11:17
**version** [3] - 6:5, 6:20
**video** [2] - 4:4, 4:5
**violates** [1] - 15:24
**voluntary** [1] - 15:2

## W

**Wacker** [2] - 2:21, 3:12
**wait** [3] - 28:19, 48:21
**wants** [1] - 24:11
**Wayerhaeuser** [1] - 3:15
**Wednesday** [4] - 45:8, 45:19, 45:22

**week** [9] - 11:16, 22:16, 25:6, 25:24, 26:10, 27:18, 48:24, 50:14
**weeks** [2] - 24:6, 26:20
**West** [3] - 3:3, 3:12, 3:16
**wheels** [1] - 40:3
**whole** [5] - 14:5, 18:6, 18:11, 23:23, 36:10
**wholly** [1] - 15:12
**WI** [1] - 2:15
**WILL** [1] - 3:15
**wind** [1] - 48:4
**WINSTON** [1] - 3:11
**Wisconsin** [1] - 2:14
**wise** [1] - 41:24
**wisely** [1] - 10:2
**withdraw** [2] - 14:17, 37:22
**withdrawing** [3] - 37:24, 38:25, 39:5
**withdrawn** [1] - 14:24
**witness** [3] - 14:8, 14:14, 14:19
**witnesses** [1] - 36:5
**wonder** [1] - 20:11
**wonderful** [2] - 9:6, 50:20
**wondering** [1] - 20:20
**word** [1] - 39:16
**words** [2] - 31:21, 39:10
**world** [1] - 16:24
**worry** [3] - 9:7, 9:8, 50:21
**worth** [1] - 16:23
**WOZNIAK** [1] - 5:21
**Wozniak** [3] - 5:21, 11:9, 44:5
**write** [1] - 47:24
**writing** [2] - 15:20, 49:12
**written** [1] - 23:20

## Y

**year** [3] - 38:4, 41:22, 42:1
**years** [11] - 15:8, 15:9, 15:10, 23:24, 36:23, 36:24, 38:11, 39:22, 40:12, 41:13, 41:15
**yesterday** [5] - 19:20, 19:25, 20:3, 22:6, 23:9
**York** [2] - 3:8, 47:5

## Z

**zero** [5] - 35:17, 35:24, 36:9, 36:11, 41:1