**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KLEEN PRODUCTS LLC, et al. individually and on behalf of all those similarly situated, | |
| Plaintiff, | Civil Case No. 1:10-cv-05711 |
| v. | Hon. Harry D. Leinenweber |
| PACKAGING CORPORATION OF AMERICA, et al, | |
| Defendants. | |

**PLAINTIFFS' STATUS CONFERENCE REPORT**

Plaintiffs respectfully submit this report for the Court's consideration in advance of the status conference scheduled for February 19, 2014 at 9:00 a.m.

**A. Production of Documents and Transactional Data**

The Scheduling Order entered on February 19, 2013 (ECF 461) required that "Defendants [] substantially complete their production of transactional data, privilege logs, and other documents responsive to plaintiffs' outstanding discovery requests [] by April 1, 2013." *Id*., ¶ 1. There have been multiple productions of both transactional data and documents since that date, including one as recently as February 8, 2014.

With respect to transactional data responsive to Plaintiffs' First Request for Production of Documents (served in May 2011), all Defendants made at least an initial production by April 1, 2013. Defendants produced extracts (prepared for this case) from various internal databases, which Plaintiffs' economic experts catalogued and assessed, identifying various areas that

required follow up, *e.g.*, clarifying the meaning of certain data fields and evaluating the completeness of the data. Since April 1, 2013, the parties have engaged in a lengthy meet and confer process, primarily via the exchange of written questions and answers. While Defendants have generally been responsive, the process requires lengthy analysis to identify and log necessary information, formulate follow-up questions and obtain supplemental data as necessary. As a result of this process, certain data-related questions remain unanswered one year after entry of the initial scheduling order. While the process is ongoing, Plaintiffs are hopeful that it is close to resolution.

As to other documents responsive to Plaintiffs' First Request for Production of Documents, Defendants continued to make supplemental productions after April 1, 2013. On February 8, 2014, Plaintiffs received over 5,000 pages of documents from Defendant RockTenn that had previously been designated as privileged. Plaintiffs are still awaiting production of certain French language documents from Defendants Cascades Canada ULC and Norampac Holdings U.S., Inc., but are otherwise unaware of any additional documents that Defendants intend to produce in response to the First Request for Production.

On December 23, 2014, Plaintiffs served a Second Request for Production of Documents seeking additional documents relating to Defendants' sales, purchases or trades of Containerboard Products. All Defendants provided written responses and objections to the second set of requests by January 31, 2014. Plaintiffs assessed those responses and intend to seek follow up meet-and-confer discussions with Defendants.

B. **Depositions**

Since August 2013, Plaintiffs have noticed a total of 28 depositions of Defendants' corporate designees or individual fact witnesses, 14 of which have been completed.[1]  All parties also took an initial deposition of Mark Wilde of Deutsche Bank in November.  Plaintiffs will be noticing additional depositions of both Defendants and non-parties in coming weeks.

On January 23, 2014, Defendants deposed Paul Bremner, Chief Financial Officer of named Plaintiff Chandler Packaging, Inc.  This was Defendants' third and presumably final deposition of Chandler Packaging.  On January 31, 2014, Defendants served a Fed. R. Civ. P. 30(b)(6) deposition notice on all other named Plaintiffs.  Plaintiffs are working to secure available dates and locations for those depositions.

On December 31, 2013, Defendant Georgia-Pacific issued a deposition subpoena to third party RISI, Inc., publisher of various price benchmarks, including the Pulp & Paper Week (PPW) index, which is widely used by all Defendants in pricing of Containerboard Products.  Plaintiffs previously served a document subpoena on RISI in September 2011.  RISI is continuing to produce responsive documents, even as recently as February 13, 2014.  Plaintiffs served a deposition subpoena on RISI on January 20, 2014, and are currently discussing deposition timing and logistics with both RISI and Georgia-Pacific.  RISI is proposing to designate a single witness to testify as to all topics included in the subpoenas served by both Georgia-Pacific and Plaintiffs. The witness will sit for a single deposition of seven (7) hours.  Georgia-Pacific's position is that the seven hours should be split evenly, with Plaintiffs and Defendants each getting 3.5 hours to question the RISI witness.   Plaintiffs do not believe this is reasonable given the breadth of their

---

[1] Certain corporate designee depositions involved multiple witnesses on multiple dates.  In addition, Plaintiffs also took corporate designee depositions in 2012 on matters relating to organizational structure, document/data retention and electronically stored information.

document and deposition subpoenas. While Plaintiffs are hopeful that an agreement can be reached with RISI and Georgia-Pacific, motion practice may be necessary to either extend the overall time of the RISI deposition or to require a second RISI deposition if Plaintiffs are not provided sufficient time to question the witness.

This is the second time Georgia-Pacific has issued a deposition subpoena to a third party and sought to (1) set a deposition date before that third party has completed producing documents pursuant to outstanding subpoenas issued by Plaintiffs and (2) restrict Plaintiffs' questioning time. On the prior occasion, Georgia-Pacific's questioning of the witness consumed approximately 45 minutes of the entire deposition time. While Plaintiffs appreciate Georgia-Pacific's right to prepare its defense, that right should not be used to interfere with Plaintiffs' legitimate discovery efforts.

### C. Interrogatories

On August 9, 2013, Plaintiffs served a Second Set of Interrogatories on all Defendants. By early October 2013, all Defendants had served initial responses. Plaintiffs met and conferred with Defendants via written communication and a telephonic meet and confer regarding the sufficiency of their responses, focusing on three interrogatories that seek information pertaining to meetings and communications with other producers of Containerboard Products, price increases and communications with non-Defendant producers of Containerboard Products or various other third parties regarding pricing of Containerboard Products.[2] Plaintiffs propounded

---

[2] Plaintiffs met and conferred globally with all Defendants regarding Interrogatories 5-7 of Plaintiffs' Second Set of Interrogatories, while reserving the right to address responses to the remaining interrogatories on an individual basis. Interrogatories 5-7 are germane to Plaintiffs' case, and request that Defendants:

> **Interrogatory No. 5**: describe meetings and communications between Defendants and any producer of Containerboard Products relating to price, pricing, price increase announcements, terms and conditions of sales, margins

these interrogatories rather than demanding that Defendants search for and provide back-up tape information responsive to Plaintiffs' document requests.[3]

Defendants' initial responses relied on Fed. R. Civ. P. 33(d) in lieu of providing narrative responses, and instructed Plaintiffs to search through their previous document productions without adequately describing the documents which contained answers to the discovery requests. Defendants ultimately agreed to provide supplemental responses to the three interrogatories in question by December 20, 2013, with the exception of PCA, who provided supplemental responses on January 31, 2014.[4]

Upon review of Defendants' supplemental interrogatory responses, Plaintiffs identified through written correspondence and a second telephonic meet and confer discussion what they believe to be continuing common deficiencies among the responses, including improper reliance on Fed. R. Civ. P. 33(d) and a failure to identify all responsive meetings and communications. It is also unclear whether or to what extent Defendants interviewed relevant personnel or relied

---

or market share, production, inventory, operating rates, weeks of supply, customers, auctions, bidding events, or sales;

**Interrogatory No. 6**: describe instances in which Defendants or other producers of Containerboard Products instituted price increases for Containerboard Products; and

**Interrogatory No. 7**: identify any producer of Containerboard Products, employee of investment banking, commercial banking or financial services firms, or industry analyst from whom Defendants have received information relating to Containerboard Products prices, comparison of prices, or sales, and to describe the communication.

[3] Defendants' document productions contain significant gaps due to their aggressive document destruction policies.

[4] Georgia-Pacific initially declined to provide a signed party verification for its supplemental interrogatory responses, contending that the additional information was based entirely on a review of documents by counsel and could not be fairly verified by a business person. After the parties met and conferred, counsel for Georgia-Pacific sent Plaintiffs draft language for a proposed verification on February 7, 2014. Plaintiffs do not believe the proposed language suffices under Fed. R. Civ. P. 33.

exclusively on a review of previously produced documents by counsel. Plaintiffs' concerns with Defendants' interrogatory responses remain unresolved at the present time.

Plaintiffs value the informal resolution of discovery disputes and believe that, in most cases, the meet and confer process can produce sufficient resolutions of such disputes and differences. However, Plaintiffs are concerned that, in this case, the duration of the meet and confer process may not comport with the existing litigation schedule and, if further prolonged, could adversely affect Plaintiffs' ability to comply with the Court's deadlines for class certification, trial, and other matters.

### D. Discovery Disputes Pending

Two fully briefed discovery motions are currently before the Court and ready to be decided: Plaintiffs' motion to compel Defendant RockTenn to amend its privilege log and produce certain documents[5] and Plaintiffs' motion to compel further production of documents from non-party Deutsche Bank.[6] In addition, Plaintiffs are aware that Defendant Temple-Inland recently filed a motion to compel in the Northern District of Georgia seeking to enforce a document subpoena served on Pratt Industries, a non-Defendant producer of Containerboard Products.

---

[5] As noted above, on February 8, 2014, Plaintiffs received a production from RockTenn of certain document previously designated as privileged. RockTenn also advised Plaintiffs that it will soon be producing a revised privilege log. Notwithstanding these recent actions, Plaintiffs believe the motion to compel should be decided.

[6] Plaintiffs are aware that Deutsche Bank is requesting oral argument on Plaintiffs' motion to compel. Plaintiffs advised counsel for Deutsche Bank that the Court's general practice is not to hear oral argument, but are not opposed to the request.

Dated: February 14, 2014

*/s/ Michael J. Freed*
Michael J. Freed
Robert J. Wozniak
FREED KANNER LONDON
& MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Tel. (224) 632-4500

Daniel J. Mogin
THE MOGIN LAW FIRM, P.C.
707 Broadway, Suite 1000
San Diego, CA 92101
Tel. (619) 687-6611

*Interim Co-Lead Class Counsel*