**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KLEEN PRODUCTS LLC, *et al.*, individually and on behalf of all those similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:10-cv-05711 |
| v. | ) ) | Hon. Harry D. Leinenweber |
| PACKAGING CORPORATION OF AMERICA, *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED
SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, APPOINTMENT OF
CLASS COUNSEL FOR THE SETTLEMENT CLASS, AUTHORIZATION TO
DISSEMINATE NOTICE TO SETTLEMENT CLASS, AND SETTING A
<u>HEARING ON FINAL SETTLEMENT APPROVAL</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 3

        A.      Procedural History of the Litigation ...................................................... 3
        B.      Summary of Plaintiffs' Allegations ....................................................... 3
        C.      The State of the Record at the Time the Settlement was Reached ........ 4

III.    SUMMARY OF THE SETTLEMENT AGREEMENT ....................................... 5

        A.      Release, Discharge, and Covenant Not to Sue ...................................... 5
        B.      Settlement Amount ................................................................................ 6
        C.      Cooperation ........................................................................................... 6
        D.      Notice .................................................................................................... 7
        E.      Stipulation to Class Certification .......................................................... 7

IV.     STANDARDS APPLICABLE TO DETERMINING WHETHER THE
        SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AS TO THE
        SETTLEMENT CLASS ...................................................................................... 8

        A.      Governing Standards ............................................................................. 8
        B.      The Settlement is Fair and Resulted from Arm's Length Negotiations ............... 10

V.      THE PROPOSED  NOTICE TO THE CLASS .................................................. 12

VI.     CERTIFICATION OF THE SETTLEMENT CLASS ...................................... 14

        A.      The Requirements of Rule 23(a) are Satisfied .................................... 14
                1.      Numerosity ................................................................................ 15
                2.      Common Questions of Law and Fact ......................................... 16
                3.      Typicality ................................................................................... 17
                4.      Adequacy .................................................................................... 18
        B.      The Requirements of Rule 23(b)(3) are Satisfied ................................ 19

VII.    THE REQUESTED PROCEDURES AND TIMETABLE ............................... 21

VIII.   CONCLUSION .................................................................................................. 22

i

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................ 14

*Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305 (7th Cir. 1980) .............................. 8, 9, 10

*Cotton v. Hinton*, 559 F. 2d 1326 (5th Cir. 1977) .......................................................... 9

*E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F. 2d 884 (7th Cir. 1985) ........................ 8

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ..................................................... 12

*Felzen v. Andreas*, 134 F. 3d 873 (7th Cir. 1998) .......................................................... 8

*Goldsmith v. Tech. Solutions Co.*, No. 92-C-4374, 1995 U.S. Dist. Lexis 15093 (N.D. Ill. October 10, 1995) ....................................................................................................... 10

*Hanrahan v. Britt*, 174 F.R.D. 356 (E.D. Pa. 1997) ..................................................... 11

*Holden v. Burlington Northern, Inc.*, 665 F. Supp. 1398 (D. Minn. 1987) ..................... 9

*In re Aftermarket Filters Antitrust Litig.*, No. 08-CV-4883, Dkt. No. 1036 (N.D. Ill Nov. 8, 2012) ....................................................................................................................... 13

*In re Community Bank of Northern Virginia & Guaranty Nat'l Bank of Tallahassee Second Mortgage Loan Litig.*, 418 F. 3d 277 (3d Cir. 2005) ...................................... 14

*In re Corrugated Container Antitrust Litig.*, 643 F. 2d 195 (5th Cir. 1981) .................. 9

*In re Fine Paper Antitrust Litig.*, 82 F.R.D. 143 (E.D. Pa. 1979) ................................ 15

*In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472 (W.D. Pa. 1999) .............................. 15

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liability Litig.*, 55 F. 3d 768 (3d Cir. 1995) .............................................................................................................. 18

*In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374 (S.D.N.Y. 1996) .................... 20

*In re Linerboard Antitrust Litig.*, 203 F.R.D. 197 (E.D. Pa. 2001) ............................ 16

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631 (E.D. Pa. 2003) ...................... 11

*In re Lithotripsy Antitrust Litig.*, No. 98 C 8394, 2000 U.S. Dist. LEXIS 8143 (N.D. Ill. June 12, 2000) ............................................................................................. 12

*In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379 (D. Md. 1983) ............................. 10

*In re Montgomery County Real Estate Antitrust Litig.*, 83 F.R.D. 305 (D. Md. 1979) ................. 9

*In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99 (S.D.N.Y 1997).......................... 9

*In re Natural Gas Commodities Litig.*, 231 F.R.D. 171 (S.D.N.Y. 2005) .................................... 20

*In re Plastic Cutlery Antitrust Litig.*, No. 96-CV-728, 1998 U.S. Dist. Lexis 3628
 (E.D. Pa. Mar. 20, 1998) ........................................................................................ 15, 17

*In re Prudential Ins. Co. America Sales Litig.*, 148 F. 3d 283 (3d Cir. 1998)................. 12, 16-18

*In re Sumitomo Copper Litig.*, 189 F.R.D. 274 (S.D.N.Y. 1999).................................................. 20

*In re Sumitomo Copper Litig.*, 182 F.R.D. 85 (S.D.N.Y. 1998).................................................. 19

*In re Traffic Executive Assoc.-Eastern R.R.*, 627 F. 2d 631 (2d Cir. 1980) ................................ 9

*In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002).................................. 9, 13

*In re Warfarin Sodium Antitrust Litig.*, 391 F. 3d 516 (3d Cir. 2004)......................................... 16

*Isby v. Bayh*, 75 F. 3d 1191 (7th Cir. 1996).......................................................................... 8, 10

*J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.*, 225 F.R.D. 208 (S.D. Ohio 2003) .......................... 20

*Jerry Enters. of Gloucester County v. Allied Bev. Group, L.L.C.*, 178 F.R.D. 437
 (D.N.J. 1998).................................................................................................................... 15

*Keele v. Wexler*, 149 F. 3d 589 (7th Cir. 1998) ......................................................................... 17

*Levitan v. McCoy*, No. 00-C-5096, 2003 U.S. Dist. Lexis 5078 (N.D. Ill. 2003) ...................... 15

*Mandujano v. Basic Vegetable Prods., Inc.*, 541 F. 2d 832 (9th Cir. 1976)................................ 12

*Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001) ................................................... 12

*McLaughlin v. Am. Tobacco Co.*, 522 F. 3d 215 (2d Cir. 2008) ................................................. 19

*Mendoza v. Tucson School District*, 623 F. 2d 1338 (9th Cir. 1980............................................ 12

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)............................................ 12

*Southeast Mo. Hosp. v. C.R. Bard, Inc.*, No. 1:07-cv-0031 TCM, 2008 WL 4372741
 (E.D. Mo. Sept. 22, 2008) ............................................................................................... 17

*Uhl v. Thoroughbred Tech. & Telecomms, Inc.*, 309 F. 3d 978, 986 (7th Cir. 2002 .................... 10

**Federal Rules**

Fed. R. Civ. Pro. 23 .............................................................................. *passim*

**Other Authorities**

2 NEWBERG ON CLASS ACTIONS, §11.24 (3d ed. 1992 ........................................... 9, 10

C.A. Wright, A. Miller & N. Kane, FEDERAL PRACTICE AND PROCEDURE ................................. 15

Manual For Complex Litigation (Fourth) § 21.632 (2004) ........................................... 9

## I.      INTRODUCTION

This Motion is brought on behalf of Plaintiff Class Representatives[1] ("Plaintiffs") who have entered into a Settlement Agreement (the "Settlement Agreement") (a true and correct copy of which is attached hereto as Exhibit A) with Defendant Packaging Corporation of America ("PCA").  Plaintiffs' Co-Lead Counsel have executed the Settlement Agreement on behalf of Plaintiff Class Representatives individually and on behalf of a proposed class of persons and entities that purchased Containerboard Products[2] in the United States directly from one or more of the Defendants[3] in this Action.   The Settlement Class includes those that bought Containerboard Products between February 15, 2004 and November 8, 2010.[4]

Pursuant to the Settlement Agreement, PCA has agreed to pay Plaintiffs the sum of Seventeen-Million-Six-Hundred-Thousand Dollars ($17,600,000) (Settlement Agreement ¶ 15). PCA will also pay up to $100,000 in costs of notice and administration.  (Settlement Agreement

---

[1] Kleen Products LLC, R.P.R. Enterprises, Inc., Mighty Pac, Inc., Ferraro Foods, Inc., Ferraro Foods of North Carolina, LLC, Distributors Packaging Group, LLC, RHE Hatco, Inc., and Chandler Packaging, Inc.

[2] "Containerboard Products" is defined in the Consolidated Amended Complaint filed November 8, 2010, (Dkt. No. 65) ("CAC") as "includ[ing] linerboard, corrugated medium, corrugated sheets and corrugated products including corrugated boxes and other corrugated containers."

[3] The Defendants are Georgia-Pacific LLC ("GP"); Packaging Corporation of America ("PCA"); International Paper Company ("IP"); Cascades Canada, Inc./Norampac Holdings U.S., Inc. ("Norampac"); Weyerhaeuser Company ("Weyerhaeuser"); Temple-Inland, Inc. ("TIN"); and RockTenn CP, LLC (formerly known as Smurfit-Stone Container Corporation ("Smurfit")). On May 27, 2011, Smurfit was acquired by Rock-Tenn Company.  To effect the acquisition, Smurfit was merged into a subsidiary of Rock-Tenn Company.  The surviving entity from the merger became RockTenn CP, LLC ("RockTenn"), a limited liability company and wholly owned subsidiary of Rock-Tenn Company.  On June 16, 2011, the Court allowed RockTenn to be substituted as a defendant in place of Smurfit (Dkt. No. 205).

[4] The CAC alleges a Class Period "from at least as early as August 2005 until the Present."  On April 16, 2014, plaintiffs filed a motion to amend the complaint to allege a class period between February 15, 2004 and November 8, 2010.

¶ 18(b)). PCA has agreed to cooperate with the Plaintiffs in their ongoing litigation of the action. (Settlement Agreement ¶23). Thus, this Settlement represents a substantial "ice-breaker" in a major case.

Plaintiffs move the Court to grant preliminary approval of the Settlement Agreement and, in connection therewith, to enter an order that, among other things:

1. Finds the Settlement Agreement to be sufficiently fair, reasonable, and adequate to warrant dissemination of notice of the Settlement Agreement to the Settlement Class;

2. Certifies a Settlement Class;

3. Appoints the undersigned as Class Counsel for the Settlement Class ("Class Counsel");

4. Approves the Notice Plan including the forms of individual mail notice and published "summary notice" of the Settlement Agreement, attached hereto as Exhibits B and C, and directs the implementation of the Settlement Agreement for the Settlement Class accordingly, including:

   A. Setting the date for the Settlement Class to move for final approval of the Settlement Agreement;

   B. Setting the date for members of the Settlement Class to exclude themselves (*i.e.*, opt out) from the Settlement Class and Settlement Agreement;

   C. Setting the date for Settlement Class members to object to the Settlement Agreement or any related petitions;

   D. Setting the date for any reply papers in further support of the Settlement Agreement; and

   E. Setting the date, time, and place for a hearing on final approval of the Settlement Agreement and any related petitions (the "Fairness Hearing").

5. Staying as to PCA all matters arising under the cases consolidated in this Court under *Kleen Products LLC et al. v. Packaging Corporation of America, et al.*, Case No. 1:10-cv-05711 (N.D. Ill.) except as provided for in the Settlement Agreement.

2

At the Fairness Hearing, Plaintiffs' Co-Lead Counsel will request entry of a final order and judgment ("Final Order") dismissing PCA and retaining jurisdiction for the implementation and enforcement of the Settlement Agreement.

## II. BACKGROUND

### A. <u>Procedural History of the Litigation</u>

This litigation was commenced on September 9, 2010, with the filing of a class action lawsuit by Kleen Products, LLC, on behalf of all direct purchasers of Containerboard Products in the United States. Plaintiffs filed the CAC on November 8, 2010.

On January 14, 2011, Defendants filed motions to dismiss. On January 20, 2011, the Court appointed Freed Kanner London & Millen LLC and The Mogin Law Firm, P.C. to serve as Interim Co-Lead Counsel for the Proposed Class. Defendants moved to dismiss the CAC on January 14, 2011. On April 8, 2011, the Court entered a Memorandum Opinion and Order denying Defendants' motions (Dkt. No. 193). On May 2, 2011, Defendants filed their Answers denying all material allegations (Dkt. Nos. 194-200).

### B. <u>Summary of Plaintiffs' Allegations</u>

This is an antitrust class action filed against the largest manufacturers of Containerboard Products in North America. Plaintiffs allege that Defendants engaged in an agreement, combination, or conspiracy to fix, raise, elevate, maintain, or stabilize prices of Containerboard Products sold in the United States. The CAC further alleges that the U.S. containerboard industry was susceptible to price fixing and has a history of anticompetitive conduct and acts of concealment. The Defendants have denied these allegations.

3

### C.    The State of the Record at the Time the Settlement was Reached

Following denial of Defendants' motions to dismiss, the parties commenced extensive discovery efforts.  The procedural background of the case through November 2012 is set forth in detail in Joint Status Report No. 4, submitted by the parties on December 5, 2012 (Dkt. No. 439). On January 9, 2013, the Court entered an Order (Dkt. No. 449) addressing Plaintiffs' objections to the September 12, 2012 Opinion and Order of the Magistrate Judge and the applicable time periods for document and data discovery.  Since that time, Defendants have continued to produce additional documents and data (the latest production coming as recently as March 25, 2014) and have had numerous communications addressing various aspects of Defendants' transactional sales data.  In addition, Plaintiffs have served both interrogatories and additional document requests and both Plaintiffs and Defendants began taking merits-related depositions.

To date, Defendants and various third parties have produced, and Plaintiffs have reviewed, approximately 1.8 million documents - predominantly ESI - believed to constitute well in excess of 25 million page equivalents (excluding transactional sales data).  Since August 2013, Plaintiffs have conducted over 25 depositions of Defendants and depositions of both Defendants and third parties are on-going.  Plaintiffs also produced approximately 65,000 pages of documents to Defendants and there have been four depositions of Plaintiff Class Representatives witnesses with five more depositions scheduled to take place in the next month.  The extensive discovery among the parties has led to certain disputes, two of which are the subject of motions to compel pending before the Court.  Plaintiffs will be moving for class certification in early June 2014.

Ultimately, a trier of fact will evaluate the positions of the parties with respect to the evidence in the case.  For purposes of this Motion, however, it is sufficient to note that the

Settlement Agreement has been entered into on the basis of a record that, while not yet complete, is well-developed.

## III.  SUMMARY OF THE SETTLEMENT AGREEMENT

In pertinent part the Settlement Agreement provides:

### A.  <u>Release, Discharge, and Covenant Not to Sue</u>

The Settlement Agreement provides for all Plaintiffs (and all "Releasors" as defined in the Settlement Agreement at ¶ 5) to release and discharge PCA upon the Settlement Agreement becoming final as defined in the Settlement Agreement at ¶ 10.  The release and discharge language in the Settlement Agreement is as follows:

> In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final as set out in Paragraph 10 of this Agreement, and in consideration of payment of the Settlement Amount, as specified in Paragraph 15 of this Agreement, into the Settlement Fund, and for other valuable consideration, Releasors shall be deemed to have, and by operation of the Final Order and Judgment shall have, fully, completely, finally, and forever released, acquitted, and discharged the PCA Releasees from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may have on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated, asserted or unasserted, whether in law, in equity, or otherwise, claims, injuries, damages, whenever and however incurred (whether actual, punitive, treble, compensatory, or otherwise), liabilities of any kind, including costs, fees, penalties, or losses of any kind or nature, and the consequences thereof in any way arising out of or relating in any way to any act or omission of the PCA Releasees (or any of them) concerning the manufacture, supply, distribution, sale or pricing of Containerboard Products up to the date this Agreement becomes final, as defined in Paragraph 10, including but not limited to any conduct alleged, and causes of action asserted or that could have been or could still be alleged or asserted, in any class action complaints filed in this or related Actions, including those arising under any federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, or trade practice law, (the "Released Claims").  Released Claims shall not preclude Plaintiffs from pursuing any and all claims against other defendants for the sale of Containerboard

Products by those defendants, or their coconspirators, which contain PCA's Containerboard Products. Releasors shall not, after the date of this Agreement, seek to establish liability against any PCA Releasee based, in whole or in part, upon any of the Released Claims or conduct at issue in the Released Claims. Nothing in this Agreement shall be construed to release any other claims, including but not limited to the claims for product defect or personal injury.

(Settlement Agreement at ¶ 12.)

### B.     Settlement Amount

In settlement of the Action PCA shall pay Seventeen-Million-Six-Hundred-Thousand Dollars ($17,600,000) (the "Settlement Amount"), which will be deposited into an escrow account within thirty (30) days of the execution of the Settlement Agreement, to be administered in accordance with the provisions of the Settlement Agreement. (As described more fully in ¶¶ 15-16 of the Settlement Agreement.)

### C.     Cooperation

In return for the Release and Discharge provided herein, PCA agrees to provide certain Cooperation to Plaintiffs in the prosecution of this Action, subject to certain limitations specified in the Settlement Agreement. The Cooperation will include: (i) production of any outstanding discovery; (ii) delivery of all non-privileged materials provided by PCA to any expert or consultant engaged in conjunction with this Action; (iii) production of such witnesses as are reasonably necessary to fully explain and authenticate any documents produced; (iv) production up to three such persons and witnesses, including PCA's current executives, as may be reasonably necessary for meetings with Class Counsel to provide a complete and truthful description of facts known to PCA that are relevant to the Action; and (v) production for depositions prior to class certification and testimony hearings or trial up to two persons within the control of PCA, whom Class Counsel have cause to believe may have knowledge of facts

related to Plaintiffs' claims as alleged in the CAC or the then-operative complaint. (As described more fully in ¶¶ 23-27.)

**D.** **Notice**

Class Counsel propose to provide notice to the Settlement Class both by mail and by publication. Individual Notice (the "Mail Notice") will be sent via first class mail to all entities within the Settlement Class that are identifiable through reasonable effort, including through Defendants' sales records and through Plaintiffs' independent investigation. *See* proposed Mail Notice attached hereto as Exhibit B. Counsel for Plaintiffs also propose that summary notice be made by publication in the national edition of *The Wall Street Journal* ("Summary Notice"). *See* proposed Summary Notice, attached hereto as Exhibit C. The Settlement Administrator will also establish a website that includes the notices and other important documents.

The Settlement Agreement also provides that PCA will pay up to a maximum of One-Hundred-Thousand Dollars ($100,000) towards the cost of notice at the later of (i) ten (10) business days after preliminary approval of the settlement or (ii) ten (10) business days after the Settlement Administrator presents an estimate of the costs of notice. In addition, a portion of the Settlement Fund may also be applied to payment of administration costs related to the giving of notice. (As described more fully in ¶ 18.)

**E.** **Stipulation to Class Certification**

The Settlement Agreement contemplates that for settlement purposes only, the requirements of Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure are satisfied, subject to Court approval, and that the following Settlement Class shall be certified for settlement purposes as to PCA as defined in Plaintiffs' CAC or, if that complaint is amended,

whichever "Class" and "Class Period" definition(s) is broadest between the CAC and the operative complaint at the time this agreement is presented for preliminary approval:

> All persons who purchased Containerboard Products directly from any of the Defendants or subsidiaries or affiliates for use or delivery in the United States.

> Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from this Class are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

(Settlement Agreement at ¶¶ 1 and 9(a)).

The CAC alleges a class period "from at least as early as August 2005 until the Present." The Mail and Summary Notices state that the Settlement Class Period is February 15, 2004 to November 8, 2010.[5]

## IV.   STANDARDS APPLICABLE TO DETERMINING WHETHER THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AS TO THE SETTLEMENT CLASS

### A.   <u>Governing Standards</u>

There is an overriding public interest in settling litigation, and this is particularly true in class actions. *See Isby v. Bayh*, 75 F. 3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F. 2d 884, 888-89 (7th Cir. 1985), *cert. denied*, 478 U.S. 1004 (1986) (noting that there is a general policy favoring voluntary settlements of class action disputes); *Armstrong v. Bd. of Sch. Dirs.*, 616 F. 2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."), *overruled on other grounds*, *Felzen v. Andreas*, 134 F. 3d 873 (7th Cir. 1998). Class action settlements minimize the

---

[5] See, e.g. Mail Notice, Exhibit B hereto at p. 3.

litigation expenses of the parties and reduce the strain such litigation imposes upon already scarce judicial resources. *Armstrong*, 616 F. 2d at 313 (*citing Cotton v. Hinton*, 559 F. 2d 1326, 1331 (5th Cir. 1977)).  However, a class action may be settled only with court approval.  And, before the court may give that approval, all class members must be given notice of the proposed settlement in the manner the court directs. Fed. R. Civ. P. 23(e).

Generally, before directing that notice be given to the class members, the court makes a preliminary evaluation of the proposed class action settlement.  Manual For Complex Litigation (Fourth) § 21.632 (2004) explains:

> Review of a proposed class action settlement generally involves two hearings.
> First counsel submit the proposed terms of settlement and the judge makes a
> preliminary fairness evaluation . . . If the case is presented for both class
> certification and settlement approval, the certification hearing and preliminary
> fairness evaluation can usually be combined . . . The Judge must make a
> preliminary determination on the fairness, reasonableness and adequacy of the
> settlement terms and must direct the preparation of notice of the . . . proposed
> settlement, and the date of the [formal Rule 23(e)] fairness hearing.

*See also* 2 NEWBERG ON CLASS ACTIONS, §11.24 (3d ed. 1992); *Armstrong*, 616 F. 2d at 314;  *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002); *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y 1997).  A court's authorization to disseminate notice constitutes its recognition that the settlement is within the range of possible approval.  *See Armstrong*, 616 F. 2d at 309-310; *In re Corrugated Container Antitrust Litig.*, 643 F. 2d 195, 205 (5th Cir. 1981); *Holden v. Burlington Northern, Inc.*, 665 F. Supp. 1398, 1402 (D. Minn. 1987); *In re Montgomery County Real Estate Antitrust Litig.*, 83 F.R.D. 305, 313 (D. Md. 1979).  As one court has noted, approving dissemination of notice "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."  *In re Traffic Executive Assoc.-Eastern R.R.*, 627 F. 2d 631, 634 (2d Cir. 1980).

A proposed settlement falls within the "range of possible approval" under Rule 23(e) when it is conceivable that the proposed settlement will meet the standards applied for final approval. The standard for final approval of a class action settlement is whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e); *see Uhl v. Thoroughbred Tech. & Telecomms, Inc.*, 309 F. 3d 978, 986 (7th Cir. 2002); *Isby*, 75 F. 3d at 1198-99.

When authorizing the dissemination of notice, a court does not conduct a "definitive proceeding on the fairness of the proposed settlement, and the judge must be careful to make clear that the determination permitting notice to members of the class is not a finding that the settlement is fair, reasonable and adequate." *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (quoting *Montgomery County*, 83 F.R.D. at 315-16). That determination must await the final hearing where the fairness, reasonableness, and adequacy of the settlement are assessed under the factors set forth in *Armstrong*.[6]

## B. The Settlement is Fair and Resulted from Arm's Length Negotiations

The requirement that class action settlements be fair is designed to protect against collusion among the parties. *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. 2d at 1383. There is usually an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's length negotiations. *See* 2 NEWBERG ON CLASS ACTIONS, § 11.40 at 451 (2d ed. 1985); *Goldsmith v. Tech. Solutions Co.*, No. 92-C-4374, 1995 U.S. Dist. Lexis 15093, at *10 n.2 (N.D. Ill. October 10, 1995) ("it may be presumed that the agreement is fair and adequate where,

---

[6] The *Armstrong* factors that a court considers on a motion for final approval of a class settlement as fair, reasonable, and adequate include: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the defendants' ability to pay; (3) the complexity, length, and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of class members to the settlement; (7) the opinion of competent counsel; and (8) the stage of the proceedings and the amount of discovery completed. *Armstrong*, 616 F. 2d at 314.

as here, a proposed settlement is the product of arm's-length negotiations"). Settlements proposed by experienced counsel and which result from arm's length negotiations are entitled to deference from the court. *See*, *e.g.*, *id.* at *10 n.2; *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (*quoting Hanrahan v. Britt*, 174 F.R.D. 356, 366 (E.D. Pa. 1997)). The initial presumption in favor of such settlements reflects courts' understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness concerns of Rule 23(e).

The Settlement reached here is the product of intensive settlement negotiations. Importantly this Settlement is an "ice-breaker", the first in this major case. In addition to a monetary payment, the Settlement will provide additional benefits to the members of the class, including cooperation from PCA as provided in the Settlement Agreement. Further, the availability of funds for payment of expenses is a substantial benefit to the Class and, subject to Court approval, will provide Class Counsel with funds to continue to litigate this matter against well-funded, large corporations. The PCA Settlement will also avoid further discovery disputes and litigation relating to PCA and, significantly, will not disadvantage the full potential recovery for the Class under the antitrust laws in light of the facts that: (a) PCA's sales will remain in the litigation as part of the settlement and (b) under the provisions of Section 1 of the Sherman Act, 15 U.S.C. § 1, the remaining Defendants will continue to be jointly and severally liable for any judgment which may be entered in this litigation in favor of the Plaintiffs.

In sum, the Settlement Agreement: (1) provides substantial benefits to the class, (2) is the result of extensive good faith negotiations, (3) was entered into after extensive factual

11

investigation and legal analysis, and (4) in the opinion of experienced Class Counsel, is fair, reasonable, and adequate to the proposed Settlement Class. Accordingly Class Counsel believe that the Settlement Agreement is in the best interests of the Proposed Settlement Class Members and should be preliminarily approved by the Court for the purposes of sending notice of the Settlement to the Proposed Settlement Class.

## V.     THE PROPOSED  NOTICE TO THE CLASS

Federal Rule of Civil Procedure 23(e)(1) provides that "[t]he Court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  While the Court has discretion as to the form and content of the notice, the notice must meet certain due process requirements. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 172-177 (1974). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the [settlement] and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Notice must be given, moreover, "in a form and manner that does not systematically leave an identifiable group without notice." *Mendoza v. Tucson School District*, 623 F. 2d 1338, 1351 (9th Cir. 1980) (quoting *Mandujano v. Basic Vegetable Prods., Inc.*, 541 F. 2d 832, 853 (9th Cir. 1976)). The content of the notice "may consist of a very general description of the proposed settlement" and should provide a fair recital of its terms. *Id.*

The content and proposed method of dissemination of notice in this case fulfill the requirements of Rule 23(e)(1) and due process.  *See generally In re Prudential Ins. Co. America Sales Litig.*, 148 F. 3d 283, 326-27 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999); *Mangone v. First USA Bank*, 206 F.R.D. 222, 233-234 (S.D. Ill. 2001); *In re Lithotripsy Antitrust Litig.*, No. 98 C 8394, 2000 U.S. Dist. LEXIS 8143, at *6 (N.D. Ill. June 12, 2000); *In re Warfarin*

*Sodium Antitrust Litig.*, 212 F.R.D. at 252-53. Plaintiffs propose sending the Mail Notice via first class mail, postage pre-paid, to all entities identified as potential members of the Class that are identifiable through reasonable effort, including through Defendants' sales records and through Plaintiffs' independent investigation. In addition, the Summary Notice will be published once in the national edition of *The Wall Street Journal*. *See, e.g.*, *In re Aftermarket Filters Antitrust Litig.*, No. 08-CV-4883, Dkt. No. 1036 (N.D. Ill Nov. 8, 2012) (Order granting preliminary approval and authorizing notice by First Class Mail and publication in *The Wall Street Journal*). The Summary Notice will explain how additional information, including a copy of the Settlement Notice, can be obtained by a Class member.

The proposed notice will apprise Class Members of the material terms of the Settlement Agreement and outline the available procedures and related deadlines. These include how a Class Member may exclude itself from the Settlement Class or object to the Settlement Agreement's terms.

The notices will also inform Class Members of the date and place of the Hearing at which the Court will consider final approval of the Settlement Agreement and the applications. Further, the Mail Notice will advise the Class Members that Class Counsel intend to use the Settlement Fund: (a) to pay for reasonable expenses associated with the costs of giving notice; (b) administration of the Settlement Fund; and (c) subject to Court approval, for payment of interim expenses incurred by Class Counsel for prosecution of the Action on behalf of the Class against non-settling Defendants. Finally, the Mail Notice will advise Class Members that Co-Lead Counsel endorse the Settlement.

The Settlement Administrator will also establish a website that includes the notices and other important documents.

## VI.    CERTIFICATION OF THE SETTLEMENT CLASS

Before the Court can authorize notice to the Class Members, the Court must first determine that the Class should be certified for settlement purposes.    Rule 23 permits certification of a class action for settlement purposes.  *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).  Certification of a settlement class must satisfy each requirement set forth in Rule 23(a), as well as at least one of the separate provisions of Rule 23(b). *Id.* at 613-14.  *See also In re Community Bank of Northern Virginia & Guaranty Nat'l Bank of Tallahassee Second Mortgage Loan Litig.*, 418 F. 3d 277, 299 (3d Cir. 2005) ("certification of classes for settlement purposes only [is] consistent with Fed. R. Civ. P. 23, provided that the district court engages in a Rule 23(a) and (b) inquiry").  As demonstrated below, this action meets all of the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3) for settlement purposes.

### A.    <u>The Requirements of Rule 23(a) are Satisfied</u>

Rule 23(a) permits an action to be maintained as a class action if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.    Fed. R. Civ. P. 23(a).    Here, the Class numbers in the thousands; the issues with respect to the unlawfulness of Defendants' actions under Sherman Act § 1 are common to the claims of all members of the Class; the claims of the Plaintiffs arise from the same factual matrix and are based on the same legal theory as the claims of all Class Members and thus are typical of the claims of the Class Members; and the Plaintiffs and their counsel, who have extensive experience in class action and antitrust litigation, will fairly and adequately represent the Class.

14

### 1. Numerosity

"There is no magic number which satisfies the numerosity requirement, and plaintiffs do not have to allege the precise number or identity of the class members." *In re Plastic Cutlery Antitrust Litig.*, No. 96-CV-728, 1998 U.S. Dist. Lexis 3628, at *7 (E.D. Pa. Mar. 20, 1998); *see also Levitan v. McCoy*, No. 00-C-5096, 2003 U.S. Dist. Lexis 5078, *8-*9 (N.D. Ill. 2003). The requirement that joinder be impracticable does not mean that joinder is impossible, but "that it is extremely difficult or inconvenient to join all members of the class." *Levitan*, 2003 U.S. Dist. Lexis 5078, at *10 (quoting C.A. Wright, A. Miller & N. Kane, FEDERAL PRACTICE AND PROCEDURE, § 1762 at 159 (2d ed. 1986)); *see also In re Fine Paper Antitrust Litig.*, 82 F.R.D. 143, 149 (E.D. Pa. 1979). Joinder is impracticable where, for example, there is "significant geographical distribution among the class members." *Id.* at 149-150; *see also Jerry Enters. of Gloucester County v. Allied Bev. Group, L.L.C.*, 178 F.R.D. 437, 442 (D.N.J. 1998); *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 477 (W.D. Pa. 1999).

Here, the data produced by PCA and information Plaintiffs' Counsel have developed show that Class Members number in the many thousands. The relevant commerce is many billions of dollars. Further, there is significant geographic dispersion among Class Members. The Class Representatives themselves are located in California, Illinois, Minnesota, Missouri, New Jersey, North Carolina, and Texas. Clearly, joinder of the numerous and geographically scattered Class Members is impracticable.

The Class thus satisfies Rule 23(a)(1).

### 2. Common Questions of Law and Fact

The commonality requirement "is easily met because it may be fulfilled by a single common issue." *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 205 (E.D. Pa. 2001); *see also In re Prudential*, 148 F.3d at 310 (commonality satisfied if named plaintiffs share at least one question of fact or law with prospective class). Here, there are numerous legal and factual issues common to members of the Class. These include, among others:

1. Whether Defendants participated in an unlawful conspiracy to fix, raise, maintain, and/or stabilize prices and allocate customers for Containerboard Products in violation of Sherman Act § 1;

2. The duration and extent of the unlawful conspiracy;

3. Whether the Defendants' conduct constitutes a violation of Sherman Act § 1, or is within the ambit of the common law doctrines of restitution, disgorgement, and unjust enrichment;

4. Whether Defendants' conduct in fact caused the Class's damages arising from their purchases of Containerboard Products;

5. The appropriate measure of the Class's damages; and

6. Whether the Class is entitled to injunctive and other equitable relief.

In antitrust cases such as this, courts have consistently held that claims for violations of the Sherman Act involve common questions that meet the requirements of Rule 23(a)(2). *See, e.g., Amchem Prods.,* 521 U.S. at 609, 625 (recognizing that "Rule 23(a)(2)'s 'commonality' requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions" and concluding that "[p]redominance is a test readily met in certain cases alleging . . . violations of antitrust laws"); *In re Warfarin Sodium Antitrust Litig.*, 391 F. 3d 516, 528-29 (3d Cir. 2004) (where defendant "engaged in a broad-based campaign, in violation of federal and state consumer fraud and antitrust laws . . . allegations naturally raise several question of law and fact common to the

16

entire class"); *Southeast Mo. Hosp. v. C.R. Bard, Inc.*, No. 1:07-cv-0031 TCM, 2008 WL 4372741, at *6 (E.D. Mo. Sept. 22, 2008) (common questions of law or fact may be found in antitrust case by scrutinizing conduct of defendant).

Accordingly, the Class satisfies Rule 23(a)(2).

### 3.    Typicality

Typicality under Rule 23(a)(3) does not mean that the claims of the plaintiff and the putative class members have to be identical. *See In re Prudential*, 148 F. 3d at 311 (neither the commonality nor the typicality requirement mandates that the claims be identical). Rather, a "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler*, 149 F. 3d 589, 595 (7th Cir. 1998).

Here, the claims of the proposed class representative Plaintiffs are typical because they arise from the same events or course of conduct and are based on the same antitrust claims of other Class Members — namely Defendants' alleged participation in an unlawful conspiracy to fix, raise, maintain, and/or stabilize prices for Containerboard Products purchased in the United States. *See Jerry Enters.*, 178 F.R.D. at 442 (typicality met where claim arises from the same event or course of conduct that gives rise to the claims of the class members). All members of the Class, including the class representative Plaintiffs, seek redress for the alleged overcharges they paid as a result of their having purchased Containerboard Products at supra-competitive prices that were allegedly artificially inflated by Defendants' alleged collusion. Because these are the same elements that both Plaintiffs and the other Class Members would have to prove separately if they bought individual actions, the typicality requirement of Rule 23(a)(3) is satisfied. *See In re Plastic Cutlery Antitrust Litig.*, 1998 U.S. Dist. Lexis 3628, at *11.

17

4.      **Adequacy**

It is well established that named plaintiffs satisfy the adequacy requirements when they retain adequate counsel and do not have interests antagonistic to those of the class. *See In re Prudential*, 148 F. 3d at 312 (quoting *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liability Litig.*, 55 F. 3d 768, 800 (3d Cir. 1995) (testing qualifications of counsel)) and *Amchem Prods.*, 521 U.S. at 625 (uncovering conflicts of interest)).

Plaintiffs here are represented by experienced counsel thoroughly familiar with class and antitrust litigation. Class Counsel appointed by the Court have served in leadership roles in numerous major antitrust and other class actions in courts throughout the United States.[7]  In addition, there are no conflicts between the Plaintiffs and the members of the Class concerning the subject matter of this litigation. The Plaintiffs all purchased Containerboard Products, whose prices were affected by Defendants' conduct. The same is true of the Class Members, and thus, the Class representatives' interest in proving liability and damages is entirely aligned with that of Class Members. In addition, there are no conflicts between the Plaintiffs and the members of the Class concerning the subject matter of this litigation.

Class Counsel have diligently represented the interests of the Class in this litigation and will continue to do so. Accordingly, the requirements of Rule 23(a)(4), as well as the requirements of Rule 23(g)[8] relating to qualifications of class counsel, have been satisfied.

---

[7]  *See* the firm biographies of Plaintiffs' Interim Class Counsel submitted in connection with the motion to appoint lead counsel (Dkt. No. 100).

[8]  Fed. R. Civ. P. 23(g)(1) provides that "[u]nless a statute provides otherwise, a court that certifies a class must appoint class counsel."  Rule 23(g)(4) provides that "[a]n attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class."  Rule 23(g)(1)(A) provides that "[i]n appointing class counsel, the court (i) must consider: the work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, counsel's knowledge of the applicable law, and the

**B.**   **The Requirements of Rule 23(b)(3) are Satisfied**

Once it is determined that the proposed class satisfies Rule 23(a), a class should be certified under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, because questions of law or fact common to the Class clearly predominate over any individualized questions, and a class action is manifestly the superior method of adjudicating this controversy, the requirements of Rule 23(b)(3) are satisfied, and the Class should be certified.

Courts have repeatedly held that, in cases alleging antitrust violations, questions common to the members of the class will predominate over questions affecting only individual members. *In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 90-91 (S.D.N.Y. 1998) ("The common factual questions of the who, what, when, where, and how of the conspiracy, and the common legal questions of the application of the law . . . to the facts proven predominate over the individual questions of whether the conspiracy caused each class member some injury."). *See, e.g., McLaughlin v. Am. Tobacco Co.*, 522 F. 3d 215, 231 (2d Cir. 2008) ("[T]he fact that damages may have to be ascertained on an individual basis is not, standing alone, sufficient to defeat class certification."); *Menkes,* 2010 U.S. Dist. LEXIS 94184, at *36 ("The need to prove actual losses individually incurred by each class member does not defeat predominance because differences in the amount and recoverability of individual damages do not necessarily make class actions

---

resources counsel will commit to representing the class; (ii) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class; (iii) may direct potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney fees and nontaxable costs; and (iv) may make further orders in connection with the appointment."

unmanageable."); *EPDM*, 256 F.R.D. at 103 ("Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damages issues."); *In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374, 382 (S.D.N.Y. 1996) ("Courts have routinely held, however, that the need for individualized determinations of the putative class members' damages does not, without more, preclude certification of a class under Rule 23(b)(3)."); Moreover, the impact of the asserted antitrust violation, as well as the damages arising out of the misconduct, can be shown on a class-wide basis.

Finally, as numerous courts have held, a class action is a superior method of adjudicating multiple claims in cases like this one. Consequently, courts around the country have consistently certified class actions in such cases. *See, e.g., Kohen*, 244 F.R.D. at 480-81; *In re Natural Gas Commodities Litig.*, 231 F.R.D. 171, 185 (S.D.N.Y. 2005)*; J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.*, 225 F.R.D. 208, 220 (S.D. Ohio 2003); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 279, 284 (S.D.N.Y. 1999). Clearly, a class action is superior to other available methods for the fair and efficient adjudication of this controversy, given the prohibitive and wasteful expense of duplicative prosecution and trial of the claims of thousands of geographically dispersed Class Members on a non-class basis.

Accordingly, the *requirements* of Rule 23(b)(3), like those of Rule 23(a), are satisfied, and certification of the Class for purposes of settlement is appropriate.[9]

---

[9] In the Settlement Agreement, PCA has agreed not to oppose class certification for settlement purposes only. *See* Settlement Agreement at ¶¶ 1 and 9(a).

## VII.   THE REQUESTED PROCEDURES AND TIMETABLE

Class Counsel propose the following schedule to be reflected in the Court's order granting preliminary approval of the Settlement:

1. Within ten (10) days after the date of entry of the preliminary approval order Settlement Class Counsel shall designate a third-party Settlement Administrator to effectuate the Notice Plan and otherwise administer the Settlement.

2. Within forty-five (45) days after the date of entry of the preliminary approval order, the Mail Settlement Notice will be sent by first class mail to all potential Settlement Class members whom Class counsel have identified.

3. The Summary Notice is to be published once in the national edition of *The Wall Street Journal* commencing no later than thirty-five (35) days after the date of entry of the preliminary approval order, or as soon thereafter as is feasible.

4. Any requests for exclusion from the Settlement Class must be received by no later than forty-five (45) days after the date of the sending of the notice.

5. Any objections to the Settlement, requests to be heard at the final approval hearing, or entry of a separate appearance for a member of the Class must be filed with the Court and served on Class Counsel and counsel for PCA no later than forty-five (45) days after the date of the sending of the notice.

6. Class Counsel and/or PCA may file with the Court any additional papers in support of approval of the Settlement Agreement fourteen (14) days before the final approval hearing.

7. Class Counsel shall file with the Court a motion for final approval of the Settlement Agreement fourteen (14) days before the final approval hearing.

8. Class counsel shall file with the Court affidavit(s) or Declaration(s) of the person(s) under whose general direction the mailing and publication of the Notices were made, showing that mailing and publication were made in accordance with the Order seven (7) days before the final approval hearing.

9. The Court will hold the final approval hearing pursuant to Rule 23(e) of the Federal Rules of Civil Procedure at _____ a.m./p.m. on _____, 2014 at 219 S. Dearborn St., Courtroom 1941, Chicago, Illinois 60604.

In addition, submitted for the Court's consideration is a [Proposed] Preliminary Approval Order which is consistent with the requests made herein.

## VIII.   CONCLUSION

On the basis of the forgoing, Class Counsel for the Settlement Class respectfully requests that Plaintiffs' Motion for Settlement Class Certification, Appointment of Settlement Class Counsel, Preliminary Approval of Proposed Settlement, Authorization to Disseminate Notice, and Setting a Hearing on Final Settlement Approval be granted.


Dated: April 16, 2014                               Respectfully Submitted,

                                                    */s/ Michael J. Freed*
                                                    Michael J. Freed
                                                    Robert J. Wozniak
                                                    FREED KANNER LONDON & MILLEN LLC
                                                    2201 Waukegan Road, Ste. 130
                                                    Bannockburn, IL 60015
                                                    Tel: (224) 632-4500
                                                    Email: mfreed@fklmlaw.com

                                                    Daniel J. Mogin
                                                    THE MOGIN LAW FIRM, P.C.
                                                    707 Broadway, Ste. 1000
                                                    San Diego, CA 92101
                                                    Tel: (619) 687-6611
                                                    Email: dmogin@moginlaw.com


                                                    *Interim Co-Lead Class Counsel*