**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KLEEN PRODUCTS LLC, *et al.*, individually and on behalf of all those similarly situated, ) ) ) ) | |
| Plaintiffs, ) | Case No. 1:10-cv-05711 |
| ) | |
| v. ) | Hon. Harry D. Leinenweber |
| ) | |
| PACKAGING CORPORATION OF AMERICA, *et al.*, ) ) ) | |
| Defendants. ) | |

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT**

**Table of Contents**

I. INTRODUCTION ................................................................................................. 1

II. BACKGROUND .................................................................................................. 2

    A. Summary of Plaintiffs' Allegations .............................................................. 2

    B. Procedural History of the Litigation ............................................................. 2

III. THE SETTLEMENT ........................................................................................... 4

    A. Negotiations and Terms of the Settlement Agreement ................................. 4

    B. Release, Discharge, and Covenant Not to Sue .............................................. 5

    C. Cooperation ................................................................................................... 6

    D. Notice of the Proposed Settlement ................................................................ 6

IV. ARGUMENT ....................................................................................................... 7

    A. The Proposed Settlement is Fair, Reasonable, and Adequate,
       and Should be Finally Approved by The Court ........................................... 7

       1. The Standard for Approval ...................................................................... 7

       2. The Settlement is an Excellent Result for the Class .............................. 10

       3. The Settlement Eliminates PCA From the Case .................................... 12

       4. Objections to Final Approval of the Settlement and Requests
          for Exclusion ........................................................................................ 12

       5. The Settlement was Negotiated at Arm's-Length and is Not Collusive ...... 13

       6. The Settlement was Negotiated by Experienced and Informed Counsel
          for the Class ......................................................................................... 14

       7. Class Counsel Developed Extensive Factual Information ..................... 15

V. CONCLUSION ................................................................................................... 15

i

**Table of Authorities**

**Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 07 CV 2898,
    2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ...................................................................... 13

*Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305
    (7th Cir. 1980) ............................................................................................................ 8, 10

*Bell Atl. Corp. v. Bolger*, 2 F.3d 1034 (3d Cir. 1993) ......................................................... 11

*Carson v. Am. Brands Inc.*, 450 U.S. 79 (1981) ................................................................... 9

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ............................................ 9

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ................................................................. 8

*Depoister v. Mary M. Holloway Found.*, 36 F.3d 582 (7th Cir. 1994) ................................ 8

*E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884 (7th Cir. 1985) ........................... 7, 9

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ................................................................. 8

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ........................................ 9

*Goldsmith v. Tech. Solutions Co.*, No. 92-C-4374, 1995 WL 17009594
    (N.D. Ill. Oct. 10, 1995) ................................................................................................. 14

*Hanrahan v. Britt*, 174 F.R.D. 356 (E.D. Pa. 1997) .......................................................... 14

*In re AT&T Mobility Wireless Data Services Sales Tax Litig.*,
    789 F. Supp. 2d 935 (7th Cir. 2006) ......................................................................... 10, 11

*In re Corrugated Containerboard Antitrust Litig. (II)*, 659 F.2d 1322 (5th Cir. 1981) ...... 9

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*,
    733 F. Supp. 2d 997 (E.D. Wisc. 2010) ......................................................................... 11

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631 (E.D. Pa. 2003) ........................... 14

*In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379 (D. Md. 1983) ............ 13, 14

*In re Packaged Ice Antitrust Litig.*, 08-MD-01952, 2010 WL 3070161
    (E.D. Mich. Aug. 2, 2010) .............................................................................................. 11

*In re Packaged Ice Antitrust Litig.*, 08-MD-01952, 2011 WL 717519
  (E.D. Mich. Feb. 22 2011) .................................................................................... 11

*In re Processed Egg Products Antitrust Litig.*, 284 F.R.D. 278 (E.D. Pa. 2012) .............. 11

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v.
  Gen. Motors Corp.,* 497 F.3d 615 (6th Cir. 2007) .............................................. 9

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) ..........................................................7, 8, 10, 12

*Redman v. RadioShack Corp.*, 11-C-6741, 2014 WL 497438
  (N.D. Ill. Feb. 7, 2014) ...................................................................................... 7, 10

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002) ....................................... 10

*Shy v. Navistar Int'l Corp.*, No. C-3-92-333, 1993 WL 1318607
  (S.D. Ohio May 27, 1993) .................................................................................. 11

*Synfuel Tech., Inc. v. DHL Express, Inc*., 463 F.3d 646 (7th Cir. 2006) ............................ 11

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978 (7th Cir. 2002) ................. 7

**Rules and Statutes**

Fed. R. Civ. P. 23(e) .................................................................................................... 7

15 U.S.C. § 1 ............................................................................................................. 12

28 U.S.C. § 1651 ......................................................................................................... 7

28 U.S.C. § 1715(b) .................................................................................................. 13

**Other Authorities**

*Moore's Fed. Prac.* ....................................................................................................... 9

*Wright & Miller, Fed. Prac. & Proc.* .......................................................................... 9

I.  INTRODUCTION

Plaintiffs entered into a Settlement Agreement with Defendant Packaging Corporation of America, pursuant to which PCA agreed to pay Seventeen-Million-Six-Hundred-Thousand Dollars ($17,600,000) to the Settlement Class, and to pay up to One-Hundred-Thousand Dollars ($100,000) in costs of notice and administration. All of the settlement amount was placed into escrow and is earning interest. Pursuant to the Settlement, PCA also agreed to provide valuable cooperation to Plaintiffs.

Class Counsel on behalf of Plaintiff Class Representatives,[1] executed the Settlement Agreement on behalf of a class of direct purchasers of Containerboard Products[2] in the United States from one or more of the Defendants[3] in this Action between February 15, 2004 and November 8, 2010.[4] The PCA Settlement Class was certified and the Settlement was preliminarily approved by the Court on May 6, 2014 (Dkt. No. 634).

---

[1] Kleen Products LLC, R.P.R. Enterprises, Inc., Mighty Pac, Inc., Ferraro Foods, Inc., Ferraro Foods of North Carolina, LLC, MTM Packaging Solutions of Texas, LLC, RHE Hatco, Inc., and Chandler Packaging, Inc.

[2] "Containerboard Products" is defined in the Consolidated Amended Complaint filed November 8, 2010, (Dkt. No. 65) ("CAC") as "includ[ing] linerboard, corrugated medium, corrugated sheets and corrugated products including corrugated boxes and other corrugated containers."

[3] The Defendants are Georgia-Pacific LLC ("GP"); Packaging Corporation of America ("PCA"); International Paper Company ("IP"); Cascades Canada, Inc./Norampac Holdings U.S., Inc. ("Norampac"); Weyerhaeuser Company ("Weyerhaeuser"); Temple-Inland, Inc. ("TIN"); and RockTenn CP, LLC (formerly known as Smurfit-Stone Container Corporation ("Smurfit")). On May 27, 2011, Smurfit was acquired by Rock-Tenn Company. To effect the acquisition, Smurfit was merged into a subsidiary of Rock-Tenn Company. The surviving entity from the merger became RockTenn CP, LLC ("RockTenn"), a limited liability company and wholly owned subsidiary of Rock-Tenn Company. On June 16, 2011, the Court allowed RockTenn to be substituted as a defendant in place of Smurfit (Dkt. No. 205).

[4] The CAC alleges a Class Period "from at least as early as August 2005 until the Present." On April 16, 2014, Plaintiffs filed a motion to amend the CAC to allege a class period between February 15, 2004 and November 8, 2010.

The Settlement is the result of extensive arm's-length and spirited negotiations by experienced and informed counsel on both sides. Class Counsel entered into the Settlement based upon their review and analysis of an extensive amount of documents produced in the case, consultations with experts, evidentiary hearings, and the testimony obtained through many depositions; their consideration of the potential factual and legal risks and rewards; the costs to the Class and delays from continued litigation; and consideration of the gains of the immediate and certain benefits to the Class from the Settlement. Based on the foregoing, Class Counsel believe the Settlement is fair, adequate, and reasonable and warrants the Court's final approval.

## II. BACKGROUND

### A. Summary of Plaintiffs' Allegations

Plaintiffs allege that Defendants, the largest manufacturers of Containerboard Products in North America, engaged in an agreement, combination, or conspiracy to fix, raise, elevate, maintain, or stabilize prices of Containerboard Products sold in the United States by means of coordinated supply restrictions and collusive, lockstep price increase announcements. The CAC further alleges that the U.S. containerboard industry has a history of anticompetitive conduct and acts of concealment.

### B. Procedural History of the Litigation

This litigation was commenced on September 9, 2010, with the filing of a class action lawsuit by Kleen Products, LLC, on behalf of all direct purchasers of Containerboard Products in the United States. Plaintiffs filed the CAC on November 8, 2010.

On January 14, 2011, Defendants filed motions to dismiss. On January 20, 2011, the Court appointed Freed Kanner London & Millen LLC and The Mogin Law Firm, P.C. to serve as Interim Co-Lead Counsel for the Proposed Class. On April 8, 2011, the Court entered a Memorandum Opinion and Order denying Defendants' motions to dismiss (Dkt. No. 193). On May 2, 2011, Defendants filed their Answers denying all material allegations (Dkt. Nos. 194-200). On April 16, 2014, Plaintiffs moved for leave to file amendments to the CAC, which the Court allowed. Defendants (other than PCA) then answered the Amended CAC on June 4, 2014.

Following denial of Defendants' initial motions to dismiss, the parties commenced extensive discovery efforts. The procedural background of the case through November 2012 is set forth in detail in Joint Status Report No. 4, submitted by the parties on December 5, 2012 (Dkt. No. 439). On January 9, 2013, the Court entered an Order (Dkt. No. 449) addressing Plaintiffs' objections to the September 12, 2012 Opinion and Order of the Magistrate Judge and the applicable time periods for document and data discovery. Since that time, Defendants have continued to produce documents and data. In addition, the parties have served interrogatories, additional document requests, and requests for admission. Both Plaintiffs and Defendants have also taken merits-related depositions.

To date, Defendants and various third parties have produced for review by Plaintiffs approximately 1.8 million documents, believed to constitute more than 25 million page equivalents (excluding transactional sales data). Plaintiffs have reviewed millions of pages of documents, subpoenaed documents and testimony from numerous third parties, and conducted over 50 depositions of Defendants and third parties relating

to both class certification and the merits of Plaintiffs' allegations. With a fact discovery deadline of December 1, 2014, merits depositions of both Defendants and third parties are on-going. Plaintiffs also produced documents in response to Defendants' requests and there have been 12 depositions of Plaintiff witnesses, with additional depositions scheduled to take place. On June 11, 2014, Plaintiffs filed a motion for class certification (Dkt. No. 657) together with extensive supporting material, including the reports of two experts.[5] Defendants completed depositions of both of Plaintiffs' class certification experts. Numerous motions to compel have been filed. In addition, the parties participated in two days of evidentiary hearings and numerous status conferences relating to Defendants' document productions and destruction policies.

Ultimately, a trier of fact will evaluate the positions of the parties with respect to the evidence in the case. For purposes of this Motion, however, it is sufficient to note that the Settlement Agreement has been entered into on the basis of a record that, while still progressing, is extremely well-developed.

## III. THE SETTLEMENT

### A. Negotiations and Terms of the Settlement Agreement

On May 6, 2014, the Court entered an Order (Dkt. No. 634) preliminarily approving the settlement with PCA, conditionally certifying the settlement class, appointing class counsel for the settlement class approving the notice plan, and setting a final approval hearing. Since then, PCA has paid $17,600,000 which has been deposited into an escrow account at Huntington Bank. All interest earned on the monies in escrow has been accruing for the benefit of the Settlement Fund (as described more fully in ¶¶

---

[5] The Class definition and Class Period alleged in the amendments to the CAC and the motion for class certification are identical to the Class definition and Class Period for the certified PCA Settlement Class.

15-16 of the Settlement Agreement). PCA also paid $100,000 in costs of notice and administration.

### B. Release, Discharge, and Covenant Not to Sue

The Settlement Agreement provides that upon the Settlement Agreement becoming final, as defined in the Settlement Agreement at ¶ 10, all Plaintiffs (and all "Releasors" as defined in the Settlement Agreement at ¶ 5) shall release and discharge PCA in accordance with the following release and discharge language in the Settlement Agreement:

> In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final as set out in Paragraph 10 of this Agreement, and in consideration of payment of the Settlement Amount, as specified in Paragraph 15 of this Agreement, into the Settlement Fund, and for other valuable consideration, Releasors shall be deemed to have, and by operation of the Final Order and Judgment shall have, fully, completely, finally, and forever released, acquitted, and discharged the PCA Releasees from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may have on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated, asserted or unasserted, whether in law, in equity, or otherwise, claims, injuries, damages, whenever and however incurred (whether actual, punitive, treble, compensatory, or otherwise), liabilities of any kind, including costs, fees, penalties, or losses of any kind or nature, and the consequences thereof in any way arising out of or relating in any way to any act or omission of the PCA Releasees (or any of them) concerning the manufacture, supply, distribution, sale or pricing of Containerboard Products up to the date this Agreement becomes final, as defined in Paragraph 10, including but not limited to any conduct alleged, and causes of action asserted or that could have been or could still be alleged or asserted, in any class action complaints filed in this or related Actions, including those arising under any federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, or trade practice law, (the "Released Claims"). Released Claims shall not preclude Plaintiffs from pursuing any and all claims against other defendants for the sale of Containerboard Products by those defendants, or their coconspirators, which contain PCA's Containerboard Products. Releasors shall not, after the date of this Agreement,

5

seek to establish liability against any PCA Releasee based, in whole or in part, upon any of the Released Claims or conduct at issue in the Released Claims. Nothing in this Agreement shall be construed to release any other claims, including but not limited to the claims for product defect or personal injury.

(Settlement Agreement at ¶ 12.)

### C. Cooperation

Pursuant to the Settlement Agreement, PCA agreed to provide the following cooperation to Plaintiffs in the prosecution of this Action: (i) produce any discovery outstanding at the date of execution of the Settlement Agreement; (ii) deliver to Plaintiffs all non-privileged materials provided by PCA to any expert or consultant engaged in connection with this Action; (iii) produce such witnesses as are reasonably necessary to fully explain and authenticate any documents produced; (iv) produce up to three such persons and witnesses, including PCA's current executives, as may be reasonably necessary for meetings with Class Counsel to provide a complete and truthful description of facts known to PCA that are relevant to the Action; and (v) prior to class certification or trial, make available for deposition two persons within the control of PCA, whom Class Counsel have cause to believe may have knowledge of facts related to Plaintiffs' claims as alleged in the CAC or the then-operative complaint (as described more fully in ¶¶ 23-27).

### D. Notice of the Proposed Settlement

The order of preliminary approval ordered that, on or before June 20, 2014, class members were to be provided with mail notice and publication notice related to the Settlement. As set forth in paragraphs 2 and 3 of the Freed Declaration and Exhibits 1 and 2 to the Freed Declaration these obligations have been met. A list of direct purchasers was derived from customer lists compiled by the Settlement Administrator, Rust

6

Consulting, Inc. ("Rust"), from information provided by Defendants. Rust then mailed the notice in the approved form to direct purchasers on a timely basis. *See* Exhibits 1 and 1-A to the Freed Declaration. In addition, the summary notice was published in *The Wall Street Journal* on June 6, 2014. *See* Exhibit 2 to the Freed Declaration. The Settlement Administrator has also created a website, www.containerboardproductscase.com, where Class Members can view the notice and other related documents. *See* Exhibits 1 and 1-B to the Freed Declaration. Further, the Settlement Administrator has established an interactive voice response system, accessible through a toll-free number, to provide information to class members seeking information about the settlement. *See* Exhibit 1 to the Freed Declaration.

## IV. ARGUMENT

### A. The Proposed Settlement is Fair, Reasonable, and Adequate, and Should be Finally Approved by The Court

#### 1. The Standard for Approval

The standard for final approval of a class action settlement is whether the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e); *see Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002); *Isby v. Bayh*, 75 F.3d 1191, 1198-99 (7th Cir. 1996). There is an overriding public interest in settling litigation, and this is particularly true in class actions. *See Isby*, 75 F.3d at 1196 ("Federal courts naturally favor the settlement of class action litigation."); *accord Redman v. RadioShack Corp.*, 11-C-6741, 2014 WL 497438, at *3 (N.D. Ill. Feb. 7, 2014); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985), *cert. denied*, 478 U.S. 1004 (1986) (noting that there is a general policy favoring voluntary settlements of class action disputes); *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*,

616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."), *overruled on other grounds*, *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Class action settlements minimize the litigation expenses of the parties and reduce the strain such litigation imposes upon already scarce judicial resources. *Armstrong*, 616 F.2d at 313 (*citing Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).

Evaluation and approval of the Settlement is committed to the sound discretion of the Court. The proper focus "is upon 'the general principles governing approval of class action settlements' and not upon the 'substantive law governing the claims asserted in the litigation.'" *Isby*, 75 F.3d at 1197, quoting *Armstrong*, 616 F.2d at 315. The Court has wide latitude in making this determination. There is "no requirement that an evidentiary hearing be conducted as a precondition to approving a settlement in a class action suit." *Depoister v. Mary M. Holloway Found.*, 36 F.3d 582, 586 (7th Cir. 1994). Therefore, the Court "may limit the fairness hearing to whatever is necessary to aid it in reaching an informed, just and reasoned decision" and should not resort to a full-blown trial on the merits. *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 635 (6th Cir. 2007) (internal quotation marks and citation omitted).

The Court's inquiry "is limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby*, 75 F.3d at 1196. Because the very point of compromise is to avoid determining unsettled issues and the waste and expense of litigation, the court does not "decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands Inc.*, 450 U.S. 79, 99 n.14 (1981). *See also*

*E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d at 889 (the district court is to "refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights"), *cert. denied*, 478 U.S. 1004 (1986); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2d Cir. 1974) (the trial court does not "have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute"); 7B Wright & Miller, FED. PRAC. & PROC. at § 1797.5 ("the court may not try disputed issues in the case since the whole purpose behind a compromise is to avoid a trial . . . . Rather the judge is restricted to determining whether the terms proposed are fair and reasonable.").

There is not just a particular amount that is reasonable in a case, but rather there is "a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (internal quotation marks and citation omitted). "A just result is often no more than an arbitrary point between competing notions of reasonableness." *In re Corrugated Containerboard Antitrust Litig. (II)*, 659 F.2d 1322, 1325 (5th Cir. 1981). Thus, "[i]t is neither required, nor is it possible for a court to determine that the settlement is the fairest possible resolution of the claims of every individual class member; rather, the settlement, taken as a whole, must be fair, adequate and reasonable." *Shy v. Navistar Int'l Corp.*, No. C-3-92-333, 1993 WL 1318607, at *2 (S.D. Ohio May 27, 1993). *See also* 5 MOORE'S FED. PRAC. at § 23.164[2] "a proposed settlement may be fair and adequate even though it amounts to only a fraction of the potential recovery in a fully litigated case").

In evaluating whether a proposed settlement is fair, reasonable, adequate, and should be granted final approval, the Seventh Circuit has established the following as appropriate considerations: (1) the strength of the case for plaintiffs, balanced against the amount offered in settlement; (2) the defendant's ability to pay; (3) the complexity, length, and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of class members to the settlement; (7) the opinion of competent counsel; and (8) the stage of the proceedings and the amount of discovery completed. *Armstrong*, 616 F.2d at 314. In this case, each of these factors supports final approval of the Settlement or in one instance is neutral.[6]

### 2. The Settlement is an Excellent Result for the Class

"[T]he first factor, the relative strength of plaintiffs' case on the merits as compared to what the defendants offer by way of settlement, is the most important consideration." *Isby,* 75 F.3d at 1199; *accord* Redman, 2014 WL 497438, at *3. To evaluate the settlement's fairness, a court must make some effort "estimating the range of possible outcomes and ascribing a probability to each point on the range." *Id*. (*citing Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284-85 (7th Cir. 2002)). "The uncertain nature of the legal issues implicated by proceeding to trial makes it difficult to calculate a precise probability of success." *In re AT&T Mobility Wireless Data Services Sales Tax Litig.,* 789 F. Supp. 2d 935, 963 (citing *Synfuel Tech., Inc. v. DHL Express, Inc.,* 463 F.3d 646, 653 (7th Cir. 2006)).

---

[6] Settling Defendant PCA's ability to fund the Settlement is neutral, since PCA clearly has the ability to pay a judgment in this case.

Unlike many antitrust class actions, this case does not follow an indictment or other governmental proceeding. Nevertheless, Plaintiffs believe their case to be strong on the merits. As a result, Plaintiffs have achieved a $17,600,000 settlement with PCA. This Settlement represents a substantial "ice-breaker" (*i.e.*, first settlement in a multi-defendant case). It is well-accepted that the first "ice-breaker" settlement can benefit the class by "increase[ing] the likelihood of future settlements." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003); *accord In re Processed Egg Products Antitrust Litig.*, 284 F.R.D. 278, 305 (E.D. Pa. 2012); *In re Packaged Ice Antitrust Litig.*, 08-MD-01952, 2011 WL 717519, at *10 (E.D. Mich. Feb. 22 2011). Further, subject to Court approval, the Settlement will provide Class Counsel with funds to litigate the matter against well-funded, large corporations, which is a substantial benefit to Class Members.

In addition to the monetary gains from the Settlement, PCA has agreed to provide cooperation to Plaintiffs in the continuing prosecution of this action (*see* section C. Cooperation *supra*). This cooperation will be useful to the Class in litigation against the remaining non-settling Defendants. *See In re Packaged Ice Antitrust Litig.*, 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010) ("Courts approving partial settlements in antitrust class actions recognize the significant value of cooperation."); *In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d 997, 1009 (E.D. Wisc. 2010) (recognizing the value of such provisions); *Bell Atl. Corp. v. Bolger*, 2 F.3d. 1034, 1311 (3d Cir. 1993) ("Despite the difficulties they pose to measurement, non-pecuniary benefits . . . may support a settlement.").

It is particularly significant that these benefits have been achieved without any disadvantage to the full potential recovery for the Class because: (a) PCA's sales will remain in the litigation as part of the Settlement and (b) under Section 1 of the Sherman Act, 15 U.S.C. § 1, the remaining Defendants will continue to be jointly and severally liable for any judgment which may be entered in favor of the Plaintiffs.

### 3. The Settlement Eliminates PCA From the Case

In determining the fairness of a settlement, courts also consider "the likely complexity, length and expense of the ligation." *Isby*, 75 F.3d at 1196. The Settlement with PCA removes a well-represented adversary from this case, thereby eliminating contested additional discovery, detailed expert studies and related discovery, contested class certification issues, motions for summary judgment or partial summary judgment, and trial.

### 4. Objections to Final Approval of the Settlement and Requests for Exclusion

As described above, Class Members were notified of the Settlement by direct mailing and publication notice in *The Wall Street Journal*. Further, communications with Class Members were facilitated by the creation of the website www.containerboardproductscase.com and a toll-free telephone hotline (1-888-764-8864). *See* Exhibit 1 to the Freed Declaration. Rust Consulting mailed 158,711 notices to potential Class Members by first-class mail.

Out of more than 150,000 entities that were sent mail notice, there were only two objectors to the Settlement. One objection, filed by Midwest Box Company, has been withdrawn which leaves only a single objector, StandFast Packaging Products, LLC. But this objector is a self-acknowledged indirect purchaser and its complaint is that it will be

12

unable to participate in the direct purchaser Settlement with PCA. As an indirect purchaser, this objector has no standing to object to the Settlement, which means that there is not a single valid objector to the Settlement. There have also been forty (40) requests for exclusion from the Settlement, a remarkably small number in light of the more than 150,000 mailed notices. *See* Exhibit 1-C to the Freed Declaration. A number of these requests were filed by Canadian purchasers that are almost certainly not within the Class definition. And other opt-outs were filed by entities on the basis of their religious beliefs having nothing to do with the merits of the Settlement. Regardless of the reason, the number of opt-outs and the amount of Class Member's purchases represented by them is insignificant.

This exceptionally small number of objections and opt-outs attests to the fairness of the Settlement, particularly since most of the Class Members are businesses and have the necessary resources and counsel to fully vet the Settlement. *See Am. Int'l Grp., Inc. V ACE INA Holdings, Inc.*, 07 CV 2898, 2012 WL 651727, at *6 (N.D. Ill. Feb. 28, 2012), appeal dismissed, 710 F.3d 754 (7th Cir. 2013) (noting that a lack of opposition is particularly meaningful where class members include sophisticated companies).

In addition to the foregoing, counsel for PCA has advised class counsel that it has complied with 28 U.S.C. § 1715(b), by providing notice of the Settlement to the appropriate Federal and State officials on a timely basis. *See* Exhibit 3 to the Freed Declaration.

     5.    **The Settlement was Negotiated at Arm's-Length and is Not Collusive**

The requirement that class action settlements be fair is designed to protect against collusion among the parties. *See In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp.

13

1379, 1383 (D. Md. 1983) (on preliminary approval). When negotiated at arm's-length a proposed settlement is presumptively fair and reasonable. *See Goldsmith v. Tech. Solutions Co.*, No. 92-C-4374, 1995 WL 17009594, at *3 n.2 (N.D. Ill. Oct. 10, 1995). Thus, a settlement proposed by experienced counsel as the result of arm's-length negotiations is entitled to deference by the court. *See, e.g., Goldsmith*, 1995 WL 17009594, at *3 n.2; *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." (*quoting Hanrahan v. Britt*, 174 F.R.D. 356, 366 (E.D. Pa. 1997)). The initial presumption in favor of such a settlement reflects courts' understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness concerns of Rule 23(e).

The negotiations leading to the Settlement were adversarial, yet professional. Counsel for both parties are highly experienced litigators who have negotiated numerous class action and other antitrust settlements before the present Settlement was achieved. This factor strongly supports approval of the Settlement.

### 6. The Settlement was Negotiated by Experienced and Informed Counsel for the Class

The Class Counsel who negotiated the Settlement are highly experienced antitrust and class action lawyers.[7] These attorneys have served as lead or co-lead counsel in numerous other class cases around the country and as executive committee members in many more. They have achieved major settlement recoveries in the many cases they have

---

[7] *See* the firm biographies of Interim Class Counsel submitted in connection with the motion to appoint lead counsel (Dkt. No. 100).

led. Their credentials were known to the Court when they were appointed by the Court as Interim Co-Lead Counsel for the Class.

In reaching the Settlement, these experienced counsel took into account the numerous legal issues presented by this case and evaluated both the strengths and the various risks presented by these issues.

### 7. Class Counsel Developed Extensive Factual Information

As mentioned above, Plaintiffs have reviewed millions of pages of documents and have taken many depositions. Plaintiffs have also submitted a motion for class certification supported by two experts' reports and substantial material in support of these reports. Thus, in negotiating the Settlement, Class Counsel were well informed about the factual, economic, and legal issues of the case.

## V. Conclusion

For all of the reasons stated in Plaintiffs' Motion for Preliminary Approval, (Dkt. No. 618), which is incorporated herein by reference, and for the additional reasons stated herein, Plaintiffs seek the Court's final approval of the PCA Settlement. Prior to the final approval hearing, Plaintiffs' counsel will submit a form of Final Order and Judgment for the Court's consideration.

Dated: August 20, 2014

Daniel J. Mogin
THE MOGIN LAW FIRM, P.C.
707 Broadway, Ste. 1000
San Diego, CA 92101
Tel: (619) 687-6611
Email: dmogin@moginlaw.com

Respectfully submitted,
*/s/ Michael J. Freed*
Michael J. Freed
Robert J. Wozniak
FREED KANNER LONDON & MILLEN LLC
2201 Waukegan Road, Ste. 130
Bannockburn, IL 60015
Tel: (224) 632-4500
Email: mfreed@fklmlaw.com

*Interim Co-Lead Class Counsel*

15