**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KLEEN PRODUCTS LLC, *et al.*, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>INTERNATIONAL PAPER, *et al.*,<br><br>    Defendants. | Civil Case No. 1:10-cv-05711<br><br>Hon. Harry D. Leinenweber<br><br>**PUBLIC VERSION — REDACTED** |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE THE REPLY EXPERT REPORT OF DR. DOUGLAS ZONA AND NEW ANALYSES IN THE REPLY EXPERT REPORT OF DR. MARK DWYER**

## I. INTRODUCTION

As this Court recognized, "rebuttal" by an expert that improperly offers *new* analyses should be stricken. Tr. of 1/20/15 Hearing at 9:22-23 ("Tr.") (Exhibit A). Yet with their class certification reply brief [Dkt. No. 826] ("Reply"), Plaintiffs offer a new econometric expert—Dr. J. Douglas Zona—who supplies new analyses regarding ███████████████. Indeed, *Plaintiffs themselves admit* Zona's analyses are new, ███████████████ to those offered by Dr. Mark Dwyer ███████████████ as a part of their class certification motion [Dkt. No. 658] ("Motion"). Reply at 39; Zona Reply Rep. [Dkt. No. 826-4] ¶¶ 31-32. In addition, Dwyer himself offers a 94-page "reply" report—nearly four times longer than his original. This report also introduces entirely new analyses, including ███████████████. *See* Dwyer Reply Rep. [Dkt. No. 826-3] ¶¶ 104, 138-44. Thus, rather than merely attempting to ███████████████ (Reply at 5), Plaintiffs have introduced a brand-new expert and new analyses from their original expert. This extensive new empirical work goes well beyond rebuttal and should be stricken.[1]

Plaintiffs' failure to previously disclose Zona and Dwyer's new analyses violates this Court's Third Amended Scheduling Order [Dkt. No. 733] ("SO"). The SO provides that Plaintiffs "*shall disclose their class certification experts, including expert reports and supporting materials*" not later than June 11, 2014. SO ¶ 1 (emphasis added). Plaintiffs admit that the SO

---

[1] Plaintiffs' other expert economist, Dr. Michael Harris, also offers some entirely new analyses in a 62-page "reply" report. *See, e.g.*, Harris Reply Rep. [Dkt. No. 826-2] ¶ 71, Table 4 (offering a new analysis of ███████████████); *id.* ¶ 74 (offering a new analysis about ███████████████). *See* Defs' Mem. in Opp. to Class Certification [Dkt. No. 763] ("Opp.") at 9, 27-28. To streamline the issues before the Court, Defendants are not seeking to strike Harris' new analyses in the present motion.

does not contemplate reply expert reports at all (*see* Tr. at 6:21-23), much less the introduction of an entirely new expert (like Zona). And it is *not* "very common" for a new expert to offer "rebuttal," as Plaintiffs claim (*id.* at 5:24-6:5); in fact, this is a "highly unusual maneuver" that courts have rejected. *Oracle Am., Inc. v. Google Inc.*, Civ. No. 10-03561WHA, 2011 WL 5572835, at *4 (N.D. Cal. Nov. 15, 2011). Nor is "rebuttal" a "time to change methodologies to account for noted deficiencies," as Plaintiffs attempt to do here. *Bowman v. Int'l Bus. Mach. Corp.*, No. 1:11-cv-0593-RLY-TAB, 2013 WL 1857192, at *7 (S.D. Ind. May 2, 2013). Zona and Dwyer's new analyses—employing methodologies completely different from Dwyer's original ones—are not rebuttal.

Allowing Plaintiffs to submit the new analyses offered by Zona and Dwyer on reply would effectively restart the entire class certification process, as such a quantum shift in methodology would require Defendants to be accorded a full opportunity to respond. This would push the remainder of the schedule out accordingly—imposing significant cost, burden, and delay. On the other hand, Plaintiffs will not be prejudiced by an order striking Zona, when their original econometrician (Dwyer) offers his own 94-page reply on the same subjects. Nor will they be prejudiced by an order striking Dwyer's new ▮▮▮▮▮ analyses, when Plaintiffs themselves assert ▮▮▮▮▮ Reply at 5.

In short, Plaintiffs' untimely introduction of an entirely new expert and new empirical analyses is "a clear-cut form of sandbagging" that is "simply unfair." *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 501 (N.D. Cal. 2008) (striking new regression analyses offered by plaintiffs' expert on reply). Rather than open the door for continuous rounds of expert opinions, depositions, and briefing, the Court should strike Zona's reply report in its entirety and

the new analyses in Dwyer's reply report, and conduct an evidentiary hearing on the expert methodologies submitted by Dwyer and Harris in June.[2]

## II. BACKGROUND

### A. The Court's Scheduling Order

The Court's SO—which the parties negotiated and the Court approved—detailed the schedule for each sequential phase of the case: first, class certification (June to December 2014, ¶¶ 1-5); followed by merits and summary judgment (February to December 2015, ¶¶ 6-10); and finally, if necessary, trial (ready by May 2, 2016, ¶ 10).

With respect to class certification, the SO and the Stipulation and Order Regarding Expert Discovery [Dkt. No. 229] ("Expert Stip") provided an orderly process that required Plaintiffs to file their Motion and "*disclose their class certification experts, including expert reports and supporting materials*, by June 11, 2014." SO ¶ 1 (emphasis added). Defendants were required to depose Plaintiffs' experts after approximately 45 days of analyzing their expert

---

[2] While Plaintiffs express "surprise[]" that Defendants have not sought to add months of delay and significant expense by taking Zona's deposition, they object to an evidentiary hearing in which their experts are cross-examined on the grounds that it would be "incredibly expensive [and] time consuming." Tr. 6:6-8; 12:12-14. As Defendants previously explained, that is precisely what courts in this District have provided for, and what the Seventh Circuit expects, in large commercial cases where disputed expert testimony is at the heart of class certification. *See* Defs' Status Conf. Report [Dkt. No. 836] at 2 (Jan. 16, 2015) (citing evidentiary hearing ordered by Judge Zagel in *In re Steel Antitrust Litig.*, No. 08 C 5214 (N.D. Ill.) that included examination of the parties' experts); *see also Parko v. Shell Oil Co.*, 739 F.3d 1083, 1086 (7th Cir. 2014) (reversing grant of class certification and explaining that "[t]he judge should have investigated the realism of the plaintiffs' injury and damage model in light of the defendants' counterarguments, and to that end should have taken evidence"). Indeed, while Plaintiffs point to *In re Polyurethane Foam Antitrust Litig.*, No. 1:10-md-02196-JZ (N.D. Ohio)—a case not from this Circuit—as one "that did not include unnecessary cross-examination of the experts by counsel," they fail to note that the experts there were questioned *by the court* at a live hearing. Response to Defs' Status Conf. Report [Dkt. No. 837] at 2 (Jan. 19, 2015). Particularly by striking Zona, and the new analyses in Dwyer's reply, the Court could conduct an efficient and effective evidentiary hearing (as Judge Zagel recently did in *In re Steel Antitrust Litig.*) that allows the parties and the Court to question the experts.

reports and the back-up underlying their empirical work. SO ¶ 2; Expert Stip. ¶ 3 (back-up includes data and "all input and output files, along with the appropriate computer programs"). Defendants' class certification opposition brief and expert disclosures were then due on September 19, 2014. SO ¶ 3.

Finally, the Court ordered that "Plaintiffs' reply in support of their motion for class certification shall be filed by December 19, 2014." SO ¶ 5. The SO contains no provision allowing for new "reply" expert reports by Plaintiffs. Nor is there any provision allowing Defendants to depose Plaintiffs' experts regarding a "reply," to submit further expert reports responding to "replies," or to submit a sur-reply brief—all of which would be necessary if new expert opinions were allowed on reply. Thus, if the SO allows for any form of expert "reply" report, it must be limited to rebutting criticisms of Plaintiffs' *original* methodologies; a reply report cannot offer entirely *new* work. Any other rule would lead to an indefinite sequence of replies, sur-replies, and sur-sur-replies (and the expense and delay they would create).

**B.    Plaintiffs' Class Certification Motion And Defendants' Opposition**

Plaintiffs filed their Motion and supporting expert reports from Dwyer [Dkt. No. 658-4] and Harris [Dkt. No. 658-2] on June 11, 2014. Plaintiffs relied on Dwyer's . Mot. at 1-2, 49 (stating ); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 818 (7th Cir. 2012) (plaintiffs must demonstrate that "antitrust impact is capable of proof at trial through evidence that is common to the class") (citation omitted).

After production of Dwyer's back-up data, Defendants' counsel and their experts spent weeks processing the data, recreating his models, exploring his assumptions, and otherwise

preparing for his deposition. Defendants then deposed Dwyer, ███████████████

████████████████████████████████████ Dwyer Dep. [Opp. Ex. 3] at 28:13-15.

Based on Dwyer's deposition—and extensive work by Defendants' experts—Defendants were able to unpack the assumptions and implications of Dwyer's ███████████ models, exposing significant flaws. These flaws were detailed in Defendants' opposition brief and two supporting expert reports by Drs. Dennis Carlton [Dkt. No. 759] and Janusz Ordover [Dkt. No. 758], which were filed on September 19, 2014. SO ¶ 3. The flaws included: ██████

████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
██████████████████████████████████

### C. Plaintiffs' Reply Brief And Expert "Reply" Reports

On December 19, 2014, Plaintiffs filed a 70-page reply brief and three expert reports collectively totaling about 200 pages—one each from their previously disclosed experts (Harris and Dwyer), and one from their brand-new expert (Zona). Zona is offered as ███████

████████████████████████████████████████████████████. *Compare* Mot. at 4 n.4 (████████████████████████████████████████), *with* Reply at 39 n.147 (████████████████████████████████████████). Plaintiffs do not attempt to explain why Dwyer's initial report, much less his 94-page reply, cannot stand on its own.

On reply, both Dwyer and Zona offer new ██████ models that are not rebuttal; instead, they ████████████████████████████████████████████████████████████████████

██████████████████████████████. Dwyer refers to ████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████ Reply at 5. Zona employs ████████████████████████████ ████████████████████ Zona Reply Rep. ¶¶ 39-40; Reply at 46. Both new ██████ analyses are ████████████████████████████████████████████. See Zona Reply Rep. ¶¶ 39-40; Dwyer Reply Rep. ¶¶ 138-44.

Dwyer also ████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████. Opp. at 32-35. To do so, he ██████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████. See Opp. at 33 & n.27. Specifically, ██████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████ Dwyer Reply Rep. ¶ 98.[3]

Zona's report also ████████████████████████████ ████████████████████████████████████ See Reply at 54; Zona Reply Rep. ¶¶ 31-

---

[3] Even so, this new ████████ analysis does nothing to solve the core problem ██████ ████████████████████████████████████████████████████ ████████████████████████████████████████ See Dwyer Dep. at 207:3-208:6. ████████████████████████████████████ ████████████████████████████████ Dwyer Reply Rep. ¶ 98 ( ████████████████████████████).

46. As Zona details, these new ▓▓▓ models—▓▓▓. *Id.* ¶¶ 31-46. Plaintiffs offer no explanation for why the new ▓▓▓ and new ▓▓▓ are introduced for the first time on reply. Nor do they explain why Dwyer was incapable of running them in June—or, for that matter, why Zona rather than Dwyer offered the new models in December. As with the original reports of Plaintiffs' experts, it would require several months for Defendants to analyze Zona's back-up material to unpack his new models, depose Zona on his methodologies and assumptions, and expose any flaws in those methodologies to the Court.[4]

### III. ARGUMENT

**A. Legal Background**

"A party must make [expert] disclosures at the times and in the sequence the court orders." Fed. R. Civ. P. 26(a)(2)(D). An expert witness's initial report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them" together with "the facts or data considered by the witness in forming them" and "any exhibits that will be used to summarize or support them." Fed. R. Civ. P. 26(a)(2)(B)(i)-(iii).

When otherwise permitted, a party may submit expert rebuttal testimony if it is "intended *solely* to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii) (emphasis added). "The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party." *Peals v.*

---

[4] At the January 20, 2015 hearing, Plaintiffs claimed that Defendants "have not asked for [Zona's] work" and to take his deposition. Tr. 6:6-8. In fact, Plaintiffs previously had sent Zona's back-up to Defendants, and, as described at the hearing and above, Defendants concluded from just a preliminary review that Zona had engaged in entirely new, non-rebuttal work that should be stricken. Defendants should not be forced into a potentially endless process of analyzing and responding to successive waves of new experts and new analyses that would only serve to burden the Court and the parties. *See* Tr. 9:14-19.

*Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th Cir. 2008) (citation omitted). "Similar to reply briefs, advocates cannot advance new arguments for the first time in a reply expert report." *Sloan Valve Co. v. Zurn Indus., Inc.*, No. 10-C-204, 2013 WL 3147349, at *1 (N.D. Ill. June 19, 2013). Thus, a reply report cannot offer "additional support" or "change . . . methodolog[ies]." *Bowman*, 2013 WL 1857192, at *6 (experts' reply reports "improperly provide additional support and at times completely change their methodology.").

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The sanction of exclusion is thus automatic and mandatory unless the party to be sanctioned can show that its violation of Rule 26(a) was either justified or harmless." *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996).

**B.     Introduction Of Zona And Dwyer's New Analyses On Reply Is Improper**

Notwithstanding what Plaintiffs have told the Court, offering a new expert on reply is far from "very common." Tr. 6:4-5. In *Oracle*, for example, the court rejected Oracle's "highly unusual maneuver" of introducing a wholly new expert under the guise of "rebuttal." 2011 WL 5572835, at *4. As here, the "issue presented [was] whether a new expert who did not serve any opening report may nonetheless make a reply submission attacking the opposition reports served by the other side." *Id.* at *2. "[T]he answer is no." *Id.* Finding that "[a]ny reasonable reading of the case management scheduling order counsels against what Oracle is now trying to do," the court further explained:

> A party with the burden of proof on an issue should not be allowed to secretly prepare an army of "rebuttal" experts to attack the opposition reports like Odysseus and the Greeks springing forth from their wooden hideout in Troy. If they were allowed to do so, their work would not be subject to a direct response from any opposing expert. This immunity, combined with the element of surprise, would be unfair. Moreover, the late

addition of new experts would frustrate case-management objectives by complicating the task of planning and preparing the case for trial.

*Id.* at *3; *see also In re Asbestos Prods. Liab. Litig.*, Nos. 09-cv-74351x, 09-cv-74410, 2012 WL 661673, at *4 (E.D. Pa. Feb. 8, 2012) (striking new expert offered to rebut defendant's experts because "[t]o allow inclusion of [the new expert's] report would damage the Defendant's ability to respond to this expert and slow the orderly administration of justice").

Nor is it proper to introduce new analyses through an expert's reply, even if those new analyses are couched as "rebuttal." *See In re Florida Cement and Concrete Antitrust Litig.*, 278 F.R.D. 674, 683 (S.D. Fla. 2012) ("Plaintiffs attempt to introduce the regression and correlation analyses by couching them as evidence responding to Dr. Ordover's Report. Nonetheless, these new regressions and correlation analyses clearly exceed what can reasonably be called 'rebuttal evidence.'") (internal quotation marks and citation omitted); *see also In re: High-Tech Employee Antitrust Litig.*, No. 11-CV-02509, 2014 WL 1351040, at *12 (N.D. Cal. April 4, 2014) (striking new analyses in reply expert report); *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, No. 2:06-CV-00225-PMP, 2008 WL 3179315, at *11 (D. Nev. June 20, 2008) (striking expert declaration submitted with reply in support of class certification where the "declaration reflects a new analysis which was not part of his initial report"). Despite Plaintiffs' efforts to couch them in such terms, Zona's and Dwyer's new ████████ analyses and models are not offered to "rebut" the criticisms of the methodologies Dwyer used in his June report. To the contrary, they are new models using entirely new methodologies. For example, Dwyer's ████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████. Plaintiffs should be held to their original methodologies, and attempts to abandon them

in favor of new models on reply should be stricken. *See, e.g.*, *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. at 501 (striking five new regressions in expert's reply report).

### 1. Zona's Report Should Be Stricken In Its Entirety

Zona's belated introduction to this case as a "rebuttal" expert is not only a "highly unusual maneuver," *Oracle,* 2011 WL 5572835, at *4, but it also violates the SO and Rule 26. Accordingly, his report should be stricken in its entirety.

The SO required Plaintiffs to "*disclose their class certification experts, including expert reports and supporting materials*, by June 11, 2014." SO ¶ 1 (emphasis added). Plaintiffs never sought to provide for the disclosure of new rebuttal experts, nor did they seek leave to modify the SO before filing Zona's report. Thus, the Zona report violates Rule 26(a)(2)(D)'s requirement that "[a] party must make [expert] disclosures at the times and in the sequence that the court orders." Moreover, as Plaintiffs and Zona admit, Zona claims to provide new and "alternative" methodologies for ███████████████████████████████████—making his reply report doubly improper. *See* Zona Reply Rep. ¶ 32 (███████████████████████████); *id.* ¶¶ 33-46 (█████████████████████████).

Plaintiffs claimed that introducing Zona on reply was necessary because they "had no way in the world of anticipating [Defendants'] challenges" to Dwyer's original work. Tr. 5:25-6:2. But Plaintiffs do not explain why Dwyer—also an econometrician—is incapable of rebutting those challenges himself. *See Oracle*, 2011 WL 5572835, at *3 (striking opinions offered by new expert on reply where there was no showing that previously disclosed experts "would have been unqualified to make the [brand-new expert's] reply points"). Indeed, Dwyer offers his own 94-page "reply" report purporting to do precisely that. Thus, the Court should not only strike Zona's new, ███████ models, but also his duplicative and unnecessary discussion purporting to vouch for the propriety of Dwyer's original █████ models. *See* Zona Reply Rep.

¶¶ 7-30; *see also Tunis Bros. Co. v. Ford Motor Co.*, 124 F.R.D. 95, 98 (E.D. Pa. 1989) (rejecting attempt to "have partisan experts appear to vouch for previous experts").

### 2. New Analyses In Dwyer's "Reply" Report Should Be Stricken

Dwyer's admittedly new empirical analyses also should be stricken because they go well beyond responding to criticisms of his original methodologies—*i.e.,* rebuttal. On the issue of ████████████████████████████████████████████████████. Reply at 4. ██ ████████████████████████████:

[5]

As set forth in more detail in Defendants' expert reports and in their opposition brief (*see* Opp. at 28-33), ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████.[6] Such models have been rejected for well over a decade,

---

[5] Despite denying that ████████████████████████████████████████████ ████████████████████████████████████████████ Reply at 5. Plaintiffs cite no case reconciling this argument with the clear holding in *Marshfield Clinic*. *See id.* ████████████████████ ████████████████; *see also* Reply, Table of Authorities (████████████████ ████████).

[6] *See* Dwyer Dep. at 252:4-11 ████████████████████████████████████████ ████████████████████████████████████████████████); *id.* at 253:17-

as illustrated by Judge Posner's decision in *Marshfield Clinic*. There, the Seventh Circuit held that "[s]tatistical studies that fail to correct for salient factors, not attributable to the defendant's misconduct, that may have caused the harm of which the plaintiff is complaining do not provide a rational basis for a judgment." *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 152 F.3d 588, 593 (7th Cir. 1998) (citations omitted). Accordingly, the court rejected a "worthless" model that ▮ "attribute[d] the entire difference between the prices" to the alleged antitrust violation, "with no correction for any other factor" that may have caused the price difference. *Id.*; *see also Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433-34 (2013) (rejecting an expert model that did not isolate the damage caused by the only viable theory of antitrust wrongdoing from other conduct and explaining that a model "must measure only those damages attributable" to the theory of wrongdoing and cannot include "damages that are not the result of the wrong.").

Dwyer also offered a methodology for ▮ ▮ Dwyer Dep. at 43:4-14; 121:4-25; 138:17-140:22. But, in fact, Dwyer ▮. *See* Opp. at 49-54. For example, ▮ ▮ ▮ ▮ *Id.* at 50-51.

Instead of simply *responding* to criticisms of his original work, Dwyer attempts to *redo* that work. Dwyer offers what he calls ▮ Dwyer Reply Rep. ¶ 138. Plaintiffs describe this as ▮ 254:3 (▮); *see also* Harris Dep. [Opp. Ex. 2] at 332:18-22 ▮.

███████████████████████████████████████████████████████████

███ (Reply at 5), demonstrating unequivocally that Dwyer is not defending his original methodology from criticism but rather is employing an entirely *new* one. *See Bowman*, 2013 WL 1857192, at *7 (explaining a "rebuttal report is not the time to change methodologies to account for noted deficiencies; instead, it is to respond to criticisms of such methodologies").

In fact, Dwyer offers a number of admittedly new analyses aimed at ████████████ ███████ in his 94-page reply. For example, Dwyer conducts a ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ (*see* Dwyer Dep. 95:5-7, 17-25). Dwyer also ████████████████████████ ████████████████████████████████████████████████ *See* Dwyer Reply Rep. ¶¶ 149-151. None of these new analyses is "truly a rebuttal" (Tr. 9:22-23) and therefore should be stricken by the Court.

## C. Defendants Would Be Significantly Prejudiced By Zona And Dwyer's New Analyses

The prejudice to Defendants from Plaintiffs' untimely introduction of Zona and Dwyer's new analyses is significant. While Plaintiffs suggested (*see* Tr. at 6:6-8) that any harm to Defendants could be cured by Defendants simply taking Zona's deposition, this ignores the entire point of the SO—to provide an orderly process for this case to proceed to its conclusion.

Were the Court to amend the SO to allow for discovery of Zona as a "reply" expert, it would require at least 30-45 days of preparation, followed by his deposition, followed by the need for a sur-reply brief by Defendants and sur-reply expert reports. As with Zona, Dwyer's new analyses would require a complete do-over. In essence, the Court would be re-starting the class certification process, making it far more complex and time-consuming than necessary with a new expert and new models using new methodologies. In turn, restarting class certification

would require a delay in the merits phase and trial while the class certification briefing is redone. Otherwise, Defendants and their experts would be unfairly forced into double-duty— analyzing and responding to Plaintiffs' experts' new opinions on class certification issues at the same time that they are analyzing Plaintiffs' merits expert reports, SO ¶ 7 (to be disclosed by February 4), deposing Plaintiffs' merits experts, *id.* (within 60 days of disclosure), preparing their own expert reports, *id.* ¶ 8 (to be disclosed by May 4), defending their own experts' depositions, *id.* (within 60 days of disclosure), and preparing their dispositive motions, *id.* ¶ 9 (due September 1).

Thus, "indulgence of [P]laintiffs' tactics would contribute to further delay, expense, and complication in an already long, expensive, and complicated lawsuit." *Nelson v. Ipalco Enterprises, Inc.*, No. IP-02477CHK, 2005 WL 1924332, at *8 (S.D. Ind. Aug. 11, 2005) (striking a new expert opinion couched as rebuttal "in an effort to evade the clear and substantial violation of the scheduling order"). At the same time, Plaintiffs will suffer no prejudice if Zona is stricken. Plaintiffs already have an econometric expert—Dwyer—with the same qualifications opining on the same subjects as Zona. There is *nothing* in Zona's reply report that Dwyer could not have said himself. *See Oracle*, 2011 WL 5572835, at *3 (striking introduction of new expert on reply where there was no "issue raised by [the] opposition reports whose rebuttal might require or be enhanced by some specialty of" the new expert).

Nor would Plaintiffs be prejudiced if the Court excludes Dwyer's new analyses. For example, despite citing no case law to support their position—or distinguishing Seventh Circuit case law to the contrary—Plaintiffs are emphatic that ████████████████████████████████████████████████████████████████████████████. Reply at 5. Plaintiffs

are not harmed by being required to defend that position, instead of hedging their bets by offering new ███████ analyses under the guise of "rebuttal."

## IV.   CONCLUSION

For the reasons set forth above, the Court should strike the "reply" report of Zona in its entirety and the new analyses in Dwyer's "reply" report, specifically Dwyer's new ███████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████. As required by the SO and Rule 26(a), Plaintiffs must satisfy their class certification burden based on the empirical analyses in Dwyer's original report and the remainder of his "reply."

<div style="display:flex">

DATED:  January 27, 2015

/s/ *James T. McKeown*
Nathan P. Eimer
Susan M. Razzano
EIMER STAHL LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604-2516
Telephone: (312) 660-7600
Facsimile: (312) 698-1718
neimer@eimerstahl.com
srazzano@eimerstahl.com

James T. McKeown
Brett H. Ludwig
Trent M. Johnson
FOLEY & LARDNER LLP
777 East Wisconsin Ave.
Milwaukee, WI 53202
Telephone: (414) 271-2400
Facsimile: (414) 297-4900
jmckeown@foley.com
bludwig@foley.com
tjohnston@foley.com

Joanne Lee
FOLEY & LARDNER LLP
321 N. Clark. St., Ste. 2800
Chicago, IL 60654
Telephone: (312) 832-4500
Facsimile: (312) 832-4700
jlee@foley.com

*Counsel for International Paper Company*

</div>

Respectfully submitted,

/s/ *Ryan A. Shores*
D. Bruce Hoffman
Ryan A. Shores
HUNTON & WILLIAMS LLP
2200 Pennsylvania Avenue, NW
Washington DC 20037-1701
Tel: (202) 955-1500
Fax: (202) 778-2201
bhoffman@hunton.com
rshores@hunton.com

James R. Figliulo
FIGLIULO & SILVERMAN, P.C.
10 South LaSalle Street, Suite 3600
Chicago, Illinois 60603
Tel.: (312) 251-4600
Fax: (312) 251-4610
jfigliulo@fslegal.com

*Attorneys for Georgia-Pacific LLC*

/s/ *Britt M. Miller*
Andrew S. Marovitz
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
amarovitz@mayerbrown.com
bmiller@mayerbrown.com

*Counsel for Temple-Inland Inc.*

/s/ *Matthias A. Lydon*
Matthias A. Lydon
James F. Herbison
Michael P. Mayer
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
mlydon@winston.com
mmayer@winston.com
jherbison@winston.com

*Attorneys for RockTenn CP, LLC*

/s/ *David Marx, Jr.*
David Marx, Jr.
Stephen Y. Wu
Michelle S. Lowery
MCDERMOTT WILL & EMERY LLP
227 W. Monroe Street, Suite 4400
Chicago, Illinois 60606
Telephone: (312) 372-2000
Facsimile: (312) 984-7700
dmarx@mwe.com
swu@mwe.com
mslowery@mwe.com

Megan Morley
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001
Telephone: (202) 756-8000
Facsimile: (202) 756-8087
mmorley@mwe.com

*Counsel for Weyerhaeuser Company*

# CERTIFICATE OF SERVICE

      I, Britt M. Miller, an attorney, hereby certify that on January 28, 2015, I caused a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE THE REPLY EXPERT REPORT OF DR. DOUGLAS ZONA AND NEW ANALYSES IN THE REPLY EXPERT REPORT OF DR. MARK DWYER – REDACTED VERSION**, to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

      /s/ *Britt M. Miller*
Andrew S. Marovitz
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
amarovitz@mayerbrown.com
bmiller@mayerbrown.com