# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| KLEEN PRODUCTS LLC, *et al*., individually and on behalf of all those similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:10-cv-05711 |
| v. | ) ) | Hon. Harry D. Leinenweber |
| INTERNATIONAL PAPER, *et al*., | ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AUTHORIZATION TO DISSEMINATE NOTICE TO SETTLEMENT CLASS, AND SETTING A <u>HEARING ON FINAL SETTLEMENT APPROVAL</u>**

## **TABLE CONTENTS**

I.     INTRODUCTION ................................................................................................. 1

II.    BACKGROUND .................................................................................................. 3

     A.     Procedural History of the Litigation ........................................................ 3
     B.     Summary of Plaintiffs' Allegations .......................................................... 4
     C.     The State of the Record at the Time the Settlement was Reached ........................ 4

III.    SUMMARY OF THE SETTLEMENT AGREEMENT ...................................................... 6

     A.     Release, Discharge, and Covenant Not to Sue ........................................... 6
     B.     Settlement Amount .............................................................................. 7
     C.     Cooperation ......................................................................................... 7
     D.     Mediation ............................................................................................ 8
     E.     Notice ................................................................................................. 8
     F.     Stipulation to Class Certification .......................................................... 9

IV.    STANDARDS APPLICABLE TO DETERMINING WHETHER THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AS TO THE SETTLEMENT CLASS ............................................................................................ 10

     A.     Governing Standards ............................................................................ 10
     B.     The Settlement is Fair and Resulted from Arm's Length Negotiations ............... 12

V.    THE PROPOSED  NOTICE TO THE CLASS ................................................................ 14

VI.    CERTIFICATION OF THE SETTLEMENT CLASS ......................................................... 16

     A.     The Requirements of Rule 23(a) are Satisfied ....................................... 177
            1.     Numerosity .............................................................................. 17
            2.     Common Questions of Law and Fact ........................................... 18
            3.     Typicality ................................................................................ 19
            4.     Adequacy ................................................................................ 20
     B.     The Requirements of Rule 23(b)(3) are Satisfied ................................... 21

VII.    THE REQUESTED PROCEDURES AND TIMETABLE ...................................................... 23

VIII.    CONCLUSION ..................................................................................................... 24

## <u>TABLE OF AUTHORITES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ..................................................... 16, 18, 20

*Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305 (7th Cir. 1980) .......................................... 10, 11, 12

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977).......................................................................... 10

*E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884 (7th Cir. 1985) ....................................... 10

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974).................................................................... 14

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)......................................................................... 10

*Goldsmith v. Tech. Solutions Co.*, No. 92-C-4374, 1995 WL 17009594
    (N.D. Ill. October 10, 1995) ................................................................................................ 12

*Hanrahan v. Britt*, 174 F.R.D. 356 (E.D. Pa. 1997) .................................................................... 12

*In re Aftermarket Filters Antitrust Litig.*, No. 08-CV-4883, Dkt. No. 1036
    (N.D. Ill. November 8, 2012) ............................................................................................. 15

*In re AT&T Mobility Wireless Data Servs. Sales Litig.,* 270 F.R.D. 330 (N.D. Ill. 2010) .......... 13

*In re Community Bank of Northern Virginia & Guaranty Nat'l Bank of Tallahassee Second*
    *Mortgage Loan Litig.*, 418 F.3d 277 (3d Cir. 2005) ................................................................. 16

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981) ................................. 11

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig EPDM*, 256 F.R.D. 82
    (D. Conn. 2009)................................................................................................................... 22

*In re Fine Paper Antitrust Litig.*, 82 F.R.D. 143 (E.D. Pa. 1979) ................................................ 17

*In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472 (W.D. Pa. 1999) ............................................. 18

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768
    (3d Cir. 1995) ...................................................................................................................... 20

*In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374 (S.D.N.Y. 1996).................................... 22

*In re Linerboard Antitrust Litig.*, 203 F.R.D. 197 (E.D. Pa. 2001) ............................................. 18

*In re Linerboard Antitrust Litig.*, 292 F.Supp. 2d 631 (E.D. Pa. 2003)....................................... 12

*In re Lithotripsy Antitrust Litig.*, No. 98 C 8394, 2000 WL 765086
(N.D. Ill. June 12, 2000)..........................................................................................15

*In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F.Supp. 1379 (D. Md. 1983) .......................11, 12

*In re Montgomery County Real Estate Antitrust Litig.*, 83 F.R.D. 305 (D. Md. 1979) ...............11

*In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99 (S.D.N.Y 1997).........................11

*In re Natural Gas Commodities Litig.*, 231 F.R.D. 171 (S.D.N.Y. 2005) ....................................22

*In re Plastic Cutlery Antitrust Litig.*, No. 96-CV-728, 1998 WL 135703
(E.D. Pa. Mar. 20, 1998) ....................................................................................17, 20

*In re Prudential Ins. Co. America Sales Litig.*, 148 F.3d 283 (3d Cir. 1998)............ 15, 18, 19, 20

*In re Sumitomo Copper Litig.*, 189 F.R.D. 274 (S.D.N.Y. 1999) ..................................................22

*In re Sumitomo Copper Litig.*, 182 F.R.D. 85 (S.D.N.Y. 1998) ....................................................21

*In re Traffic Executive Assoc.-Eastern R.R*, 627 F.2d 631 (2d Cir. 1980) ..................................11

*In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002)..................................11, 15

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)............................................19

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996)............................................................................10, 11

*J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.*, 225 F.R.D. 208 (S.D. Ohio 2003) ...........................22

*Jerry Enters. of Gloucester County v. Allied Bev. Group, L.L.C.*, 178 F.R.D. 437
(D.N.J. 1998) ......................................................................................................17, 19

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) .............................................................................19

*Kohen v. Pacific Inv. Management Co. LLC*, 244 F.R.D. 469 (N.D. Ill. 2007) ...........................22

*Levitan v. McCoy*, No. 00-C-5096, 2003 WL 1720047 (N.D. Ill. 2003)......................................17

*Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832 (9th Cir. 1976)................................14

*Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001) ....................................................15

*McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008) ...................................................22

*Mendoza v. Tucson School District*, 623 F.2d 1338 (9th Cir. 1980) ...........................................14

iii

*Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80 (D. Conn. 2010) ...................................................... 22

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)............................................. 14

*Paper Sys. Inc. v. Nippon Paper Indus. C. Ltd.*, 281 F.3d 629 (7th Cir. 2002) ............................. 13

*Southeast Mo. Hosp. v. C.R. Bard, Inc.*, No. 1:07-cv-0031 TCM, 2008 WL 4372741
   (E.D. Mo. Sept. 22, 2008) .......................................................................................................... 19

*Uhl v. Thoroughbred Tech. & Telecomms, Inc.*, 309 F. 3d 978, 986 (7th Cir. 2002).................... 11

**Federal Rules**

Fed. R. Civ. Pro. 23 ......................................................................................................... *passim*

**Other Authorities**

2 NEWBERG ON CLASS ACTIONS, §11.24 (3d ed. 1992) ......................................................... 11, 12

C.A. Wright, A. Miller & N. Kane, FEDERAL PRACTICE AND PROCEDURE ................................. 17

Manual For Complex Litigation (Fourth) § 21.632 (2004) ......................................................... 10

## I. INTRODUCTION

This Motion is brought on behalf of Plaintiff Class Representatives[1] ("Plaintiffs") for preliminary approval of a settlement agreement (the "Settlement Agreement") (a true and correct copy of which is attached hereto as Exhibit A) between Plaintiffs and Defendants Cascades Canada, ULC and its subsidiary Norampac Holdings U.S., Inc. (collectively, "Norampac")[2]. Plaintiffs' Co-Lead Counsel have executed the Settlement Agreement on behalf of Plaintiff Class Representatives individually and on behalf of a proposed class of persons and entities that purchased Containerboard Products[3] in the United States directly from one or more of the Defendants[4] in this Action. The Settlement Class includes direct purchasers of Containerboard Products from any of the Defendants in this litigation from February 15, 2004 through November 8, 2010.[5]

---

[1] Kleen Products LLC, R.P.R. Enterprises, Inc., Mighty Pac, Inc., Ferraro Foods, Inc., Ferraro Foods of North Carolina, LLC, MTM Packaging Solutions of Texas, LLC, RHE Hatco, Inc., and Chandler Packaging, Inc.

[2] In Plaintiffs' prior pleadings Norampac may also have been referred to as Cascades Canada, Inc./Norampac Holdings U.S., Inc.

[3] "Containerboard Products" is defined in the Consolidated Amended Complaint filed November 8, 2010, (Dkt. No. 65) ("CAC") as "includ[ing] linerboard, corrugated medium, corrugated sheets and corrugated products including corrugated boxes and other corrugated containers."

[4] The Defendants are Georgia-Pacific LLC ("GP"); International Paper Company ("IP"); Norampac; Weyerhaeuser Company ("Weyerhaeuser"); Temple-Inland, Inc. ("TIN"); and RockTenn CP, LLC (formerly known as Smurfit-Stone Container Corporation ("Smurfit")). On May 27, 2011, Smurfit was acquired by RockTenn Company. To effect the acquisition, Smurfit was merged into a subsidiary of RockTenn Company. The surviving entity from the merger became RockTenn CP, LLC ("RockTenn"), a limited liability company and wholly owned subsidiary of RockTenn Company. On June 16, 2011, the Court allowed RockTenn to be substituted as a defendant in place of Smurfit (Dkt. No. 205). A settlement was previously reached with Defendant Packaging Corporation of America ("PCA") in the amount of $17,600,000. Final approval of the PCA settlement was granted on September 9, 2014.

[5] The CAC alleges a Class Period "from at least as early as February 15, 2004 through November 8, 2010."

Pursuant to the Settlement Agreement, Norampac has agreed to pay Plaintiffs the sum of Four Million Eight Hundred Thousand Dollars ($4,800,000). (Settlement Agreement ¶ 16). Norampac will deposit this sum into escrow within seven (7) days after preliminary approval of the Settlement. Once deposited, the funds will be invested in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Money Market Fund or a bank account insured by the FDIC up to the guaranteed FDIC limit. (Settlement Agreement ¶ 17). In addition, the Settlement Agreement requires Norampac to provide certain cooperation to assist Class Counsel in the continued prosecution of this case against the remaining Defendants. (Settlement Agreement ¶ 24).

Plaintiffs move the Court to grant preliminary approval of the Settlement Agreement and, in connection therewith, to enter an order that, among other things:

1. Finds the Settlement Agreement to be sufficiently fair, reasonable, and adequate to warrant dissemination of notice of the Settlement Agreement to the Settlement Class;

2. Conditionally certifies a Settlement Class;

3. Approves the Notice Plan including the forms of individual mail notice and published "summary notice" of the Settlement Agreement, attached hereto as Exhibits B and C, and directs the implementation of the Settlement Agreement for the Settlement Class accordingly, including:

   A. Setting the date for the Settlement Class to move for final approval of the Settlement Agreement;

   B. Setting the date for members of the Settlement Class to exclude themselves (*i.e.*, opt out) from the Settlement Class and Settlement Agreement;

   C. Setting the date for Settlement Class members to object to the Settlement Agreement or any related petitions;

2

D.  Setting the date for any reply papers in further support of the Settlement Agreement; and

E.  Setting the date, time, and place for a hearing on final approval of the Settlement Agreement and any related petitions (the "Fairness Hearing").

4.  Staying as to Norampac all matters arising under the cases consolidated in this Court under *Kleen Products, LLC et al. v. International Paper, et al.*, Case No. 1:10-cv-05711 (N.D. Ill.) except as provided for in the Settlement Agreement.

At the Fairness Hearing, Plaintiffs' Co-Lead Counsel will request entry of a final order and judgment ("Final Order") dismissing Norampac and retaining jurisdiction for the implementation and enforcement of the Settlement Agreement.

## II.  BACKGROUND

### A.  <u>Procedural History of the Litigation</u>

This litigation was commenced on September 9, 2010, with the filing of a class action lawsuit by Kleen Products, LLC, on behalf of all direct purchasers of Containerboard Products in the United States.  Plaintiffs filed the CAC on November 8, 2010.

On January 14, 2011, Defendants filed motions to dismiss.  On January 20, 2011, the Court appointed Freed Kanner London & Millen LLC and The Mogin Law Firm, P.C. to serve as Interim Co-Lead Counsel for the Proposed Class.  On April 8, 2011, the Court entered a Memorandum Opinion and Order denying Defendants' motions (Dkt. No. 193).  On May 2, 2011, Defendants filed their Answers denying all material allegations (Dkt. Nos. 194-200). On April 16, 2014, Plaintiffs filed their motion for leave to amend the CAC (Dkt. No. 622). The amendments did not change or add a new claim or legal theory to this case, but merely amended the Class Period commencement date to February 15, 2004. The Court granted Plaintiffs' amendments to the CAC on May 13, 2014 (Dkt No. 642). The Court granted final approval of this case's first settlement with Defendant PCA on September 3, 2014. On October 23, 2014

3

Plaintiffs filed a second motion for leave to amend the CAC (Dkt. No. 777). The amendments clarified that Plaintiffs are seeking to hold Defendant RockTenn, formerly known as Smurfit-Stone, liable for Smurfit-Stone's post-bankruptcy conduct, and added allegations regarding the acquisitions by Defendant International Paper of Defendants Weyerhaeuser and Temple-Inland. The Court granted Plaintiffs' amendments to the CAC on November 19, 2014 (Dkt. No. 806).

**B.      Summary of Plaintiffs' Allegations**

This is an antitrust class action filed against the largest manufacturers of Containerboard Products in North America. Plaintiffs allege that Defendants engaged in an agreement, combination, or conspiracy to fix, raise, elevate, maintain, or stabilize prices of Containerboard Products sold in the United States. The CAC further alleges that the U.S. containerboard industry was susceptible to price fixing and has a history of anticompetitive conduct and acts of concealment. The Defendants have denied these allegations.

**C.      The State of the Record at the Time the Settlement was Reached**

Following denial of Defendants' motions to dismiss, the parties commenced extensive discovery efforts. The procedural background of the case through November 2012 is set forth in detail in Joint Status Report No. 4, submitted by the parties on December 5, 2012 (Dkt. No. 439). On January 9, 2013, the Court entered an Order (Dkt. No. 449) addressing Plaintiffs' objections to the September 12, 2012 Opinion and Order of the Magistrate Judge and the applicable time periods for document and data discovery. Since that time, Defendants and Plaintiffs have produced documents and data and have had numerous communications addressing various aspects of their respective document productions. In addition, both Plaintiffs and Defendants have served both interrogatories and additional document requests and both Plaintiffs and Defendants began taking merits-related depositions.

To date, Defendants and various third parties have produced, and Plaintiffs have reviewed, approximately 1.8 million documents - predominantly ESI - believed to constitute well in excess of 25 million page equivalents (excluding transactional sales data). Since August 2013, Plaintiffs have conducted over 85 depositions of Defendants and third parties. Plaintiffs also produced approximately 65,000 pages of documents to Defendants and there have been depositions of all Plaintiff Class Representatives. The extensive discovery among the parties led to certain unresolved issues which required rulings by the Court. While the discovery cutoff occurred on December 1, 2014, by agreement of the parties there is still some ongoing discovery and a few depositions to be completed.

Plaintiffs filed a motion seeking class certification on June 11, 2014. Defendants filed their opposition to class certification on September 19, 2014, and Plaintiffs filed their reply pleadings in support of class certification on December 19, 2014. At this point, class certification briefing is complete. The class which Plaintiffs seek to certify is identical to the PCA settlement class recently certified by this Court in granting final approval to a $17.6 million settlement on September 3, 2014. There are two motions presently pending before the court pertaining to class certification.

Pursuant to the case management schedule, dispositive motions are to be filed by September 1, 2015, and briefing is to close on December 17, 2015. The case is set for trial on May 2, 2016.

Ultimately, a trier of fact will evaluate the positions of the parties with respect to the evidence in the case. For purposes of this Motion, however, it is sufficient to note that the Settlement Agreement has been entered into on the basis of a record that is extremely well-developed.

## III.     SUMMARY OF THE SETTLEMENT AGREEMENT

In pertinent part the Settlement Agreement provides:

### A.     <u>Release, Discharge, and Covenant Not to Sue</u>

The Settlement Agreement provides for all Plaintiffs (and all "Releasors" as defined in the Settlement Agreement at ¶ 5) to release and discharge Norampac upon the Settlement Agreement becoming final as defined in the Settlement Agreement at ¶ 11.  The release and discharge language in the Settlement Agreement is as follows:

> In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final as set out in Paragraph 11 of this Agreement, and in consideration of payment of the Settlement Amount, as specified in Paragraph 16 of this Agreement, into the settlement Fund, and for other valuable consideration, Releasors shall be deemed to have, and by operation of the Final Order and Judgment shall have, fully, completely, finally, and forever released, acquitted, and discharged the Norampac Releasees from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may have on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated, asserted or unasserted, whether in law, in equity, or otherwise claims, injuries, damages, whenever and however incurred (whether actual, punitive, treble, compensatory, or otherwise), liabilities of any kind, including costs, fees, penalties, or losses of any kind or nature, and the consequences thereof in any way arising out of or relating in any way to any act or omission of the Norampac Releasees (or any of them) concerning the manufacture, supply, distribution, sale or pricing of Containerboard Products up to the date this Agreement becomes final, as defined in Paragraph 11, including but not limited to any conduct alleged, and causes of action asserted or that could have been or could still be alleged or asserted, in any class action complaints filed in this or related Actions, including those arising under federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, or trade practice law, (the "Released Claims"). Releasors shall not, after the date of this Agreement, seek to establish liability against any Norampac Releasee based, in whole or in part, upon any of the Released Claims or conduct at issue in the Released Claims.  Nothing in this Agreement shall be construed to release any other claims, including but not limited to the claims for product defect or personal injury.

(Settlement Agreement at ¶ 13.)

### B.  Settlement Amount

In settlement of the Action Norampac shall pay Four Million Eight Hundred Thousand Dollars ($4,800,000) (the "Settlement Amount"), which will be deposited into an escrow account within seven (7) days after preliminary approval of the settlement, to be administered in accordance with the provisions of the Settlement Agreement.  (As described more fully in ¶¶ 16-17).

### C.  Cooperation

In return for the Release and Discharge provided herein, within twenty-one (21) days of execution of the Settlement Agreement, Norampac agrees to provide cooperation to Plaintiffs in the prosecution of this Action, subject to certain limitations specified in the Settlement Agreement.  The Cooperation will include: (i) providing Co-Lead Counsel with copies of all discovery (including among other things, all documents, interrogatories, request for admissions, etc.) that Norampac produces to any other party in this Action; (ii) providing to Co-Lead Counsel a certification regarding Norampac's compliance with its discovery obligations; (iii) making available for interview, not to exceed seven (7) hours in the aggregate, such persons as are most knowledgeable about its transactional data, excluding the data relating to Norampac's Thomson and Lancaster plants; (iv) providing Co-Lead Counsel with all non-privileged materials provided by Norampac to any expert or consultant engaged in conjunction with this Action that have not previously been produced to the Plaintiffs; (v) providing Co-Lead Counsel with a stipulation regarding the authentication of the Norampac documents specified therein and their status under FRE 803(6); (vi) producing for interview Charles Malo and Marc Andre Depin (Norampac has already satisfied this obligation); and (vii) upon reasonable notice, produce for testimony at trial

up to one person within the control of Norampac, whom Co-Lead Counsel have cause to believe may have knowledge of facts related to Plaintiffs' claims as alleged in the Plaintiffs' Consolidated Amended Complaint or the then operative complaint, selection of such persons to be subject to the consent of Norampac's counsel, which shall not be unreasonably withheld (Norampac agrees to bear reasonable travel expenses incurred by the witness). The parties and their counsel further agreed that any statements made by Norampac's counsel in connection with and/or as part of the settlement shall be protected by FRE 408, and shall in no event be discoverable by any person or treated as evidence of any kind, unless otherwise ordered by a Court. (As described more fully in ¶¶ 24 -28).

### D. **Mediation**

In reaching the Settlement which is being presented to the Court for preliminary approval, the parties engaged in mediation with Morton Denlow, a former Magistrate Judge of the United States District Court for the Northern District of Illinois. Prior to the mediation, each party submitted a statement of its position to Judge Denlow and the parties and Judge Denlow engaged in a full day mediation session before the Settlement Agreement was reached.

### E. **Notice**

Class Counsel propose to provide notice to the Settlement Class both by mail and by publication. Individual Notice (the "Mail Notice") will be sent via first class mail to all entities within the Settlement Class that are identifiable through reasonable effort, including through Defendants' sales records and through Plaintiffs' independent investigation. *See* proposed Mail Notice attached hereto as Exhibit B. Counsel for Plaintiffs also propose that summary notice be made by publication in the national edition of *The Wall Street Journal* ("Summary Notice"). *See* proposed Summary Notice, attached hereto as Exhibit C. The Settlement Administrator, Rust

Consulting Inc., will publish the notices and other important documents on the website https://containerboardproductscase.com/. In addition, a portion of the Settlement Fund may also be applied to payment of costs related to the giving of notice. (As described more fully in ¶ 19).

**F.** **Stipulation to Class Certification**

The Settlement Agreement contemplates that for settlement purposes only, the requirements of Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure are satisfied, subject to Court approval, and that the following Settlement Class shall be certified for settlement purposes as to Norampac as defined in Plaintiffs' Consolidated Amended Complaint, including the Amendments to the Complaint dated April 16, 2014 and filed on or about June 3, 2014 and those dated October 23, 2014 (collectively "CAC"); or if that Complaint is amended or superseded, whichever "Class" and "Class Period" definition(s) is broadest between the CAC and the operative complaint at the time this agreement is presented for preliminary approval:

> All persons who purchased Containerboard Products directly from any of the Defendants or their subsidiaries or affiliates for use or delivery in the United States from at least as early as February 15, 2004 through November 8, 2010.
>
> Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from this Class are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

(Settlement Agreement at ¶ 1 and CAC ¶ 28).

The Mail and Summary Notices state that the Settlement Class Period is February 15, 2004 through November 8, 2010.

IV.  **STANDARDS APPLICABLE TO DETERMINING WHETHER THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AS TO THE SETTLEMENT CLASS**

A.  **Governing Standards**

There is an overriding public interest in settling litigation, and this is particularly true in class actions.  *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985), *cert. denied*, 478 U.S. 1004 (1986) (noting that there is a general policy favoring voluntary settlements of class action disputes); *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."), *overruled on other grounds, Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).  Class action settlements minimize the litigation expenses of the parties and reduce the strain such litigation imposes upon already scarce judicial resources. *Armstrong*, 616 F.2d at 313 (*citing Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).  However, a class action may be settled only with court approval.  And, before the court may give that approval, all class members must be given notice of the proposed settlement in the manner the court directs. Fed. R. Civ. P. 23(e).

Generally, before directing that notice be given to the class members, the court makes a preliminary evaluation of the proposed class action settlement.  Manual For Complex Litigation (Fourth) § 21.632 (2004) explains:

> Review of a proposed class action settlement generally involves two hearings. First counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation . . . If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined . . . The Judge must make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms and must direct the preparation of notice of the . . . proposed settlement, and the date of the [formal Rule 23(e)] fairness hearing.

*See also* 2 NEWBERG ON CLASS ACTIONS, §11.24 (3d ed. 1992); *Armstrong*, 616 F.2d at 314; *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002); *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y 1997). A court's authorization to disseminate notice constitutes its recognition that the settlement is within the range of possible approval. *See Armstrong*, 616 F.2d at 309-310; *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 205 (5th Cir. 1981). As one court has noted, approving dissemination of notice "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n-Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980).

A proposed settlement falls within the "range of possible approval" under Rule 23(e) when it is conceivable that the proposed settlement will meet the standards applied for final approval. The standard for final approval of a class action settlement is whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e); *see Uhl v. Thoroughbred Tech. & Telecomms, Inc.*, 309 F.3d 978, 986 (7th Cir. 2002); *Isby*, 75 F.3d at 1198-99.

When authorizing the dissemination of notice, a court does not conduct a "definitive proceeding on the fairness of the proposed settlement, and the judge must be careful to make clear that the determination permitting notice to members of the class is not a finding that the settlement is fair, reasonable and adequate." *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (quoting *In re Montgomery County Real Estate Antitrust Litig.*, 83 F.R.D. 305, 315-16 (D. Md. 1979)). That determination must await the final hearing where

11

the fairness, reasonableness, and adequacy of the settlement are assessed under the factors set forth in *Armstrong*.[6]

**B.      The Settlement is Fair and Resulted from Arm's Length Negotiations**

The requirement that class action settlements be fair is designed to protect against collusion among the parties.  *In re Mid-Atlantic Toyota Antitrust Litig.,* 564 F. Supp at 1383. There is usually an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's length negotiations.  *See* 2 Newberg on Class Actions, § 11.40 at 451 (2d ed. 1985); *Goldsmith v. Tech. Solutions Co.*, No. 92-C-4374, 1995 WL 17009594, at *3 n.2 (N.D. Ill. October 10, 1995) ("it may be presumed that the agreement is fair and adequate where, as here, a proposed settlement is the product of arm's-length negotiations").  Settlements proposed by experienced counsel and which result from arm's length negotiations are entitled to deference from the court. *See*, *e.g.*, *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (*quoting Hanrahan v. Britt*, 174 F.R.D. 356, 366 (E.D. Pa. 1997)). The initial presumption in favor of such settlements reflects courts' understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness concerns of Rule 23(e).  In making the determination as to whether the proposed  Settlement is fair, reasonable, and adequate, the Court necessarily will evaluate the judgment of the attorneys for the parties

---

[6]  The *Armstrong* factors that a court considers on a motion for final approval of a class settlement as fair, reasonable, and adequate include: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the defendants' ability to pay; (3) the complexity, length, and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of class members to the settlement; (7) the opinion of competent counsel; and (8) the stage of the proceedings and the amount of discovery completed.  *Armstrong*, 616 F. 2d at 314.

regarding the "strength of plaintiffs' case compared to the terms of the proposed settlement." *In re AT&T Mobility Wireless Data Servs. Sales Litig.,* 270 F.R.D. 330, 346 (N.D. Ill. 2010).

The Settlement reached here is the product of intensive settlement negotiations and was achieved during a mediation before former Magistrate Judge Morton Denlow. The amount of the settlement is substantial when viewed in the light of the fact that Norampac's sales represents only about 0.8% of the U.S. market for Containerboard Products, although it was substantially larger in Canada. The PCA settlement was for $17.6 million for about 7% of the U.S. market – nearly $2.5 million per percentage of the market. The Norampac settlement is approximately $5 million for less than one percent of the market which is more than double the PCA settlement on the basis of the percentage of the market. Further, like the PCA settlement, the Norampac Settlement does not affect the potential full recovery of damages for the Class under the antitrust laws in light of the facts that: (a) Norampac's sales will remain in the litigation as part of the settlement, and (b) under the provisions of Section 1 of the Sherman Act, 15 U.S.C. § 1, the remaining Defendants will continue to be jointly and severally liable for any judgment which may be entered in this litigation in favor of the Plaintiffs. *See Paper Sys. Inc. v. Nippon Paper Indus. C. Ltd.*, 281 F.3d 629, 632 (7th Cir. 2002) ("each member of a conspiracy is liable for all damages caused by the conspiracy's entire output").

Until this Settlement was entered into, Norampac energetically contested all aspects of the case. While Plaintiffs believe that their case is strong, any complex litigation matter is inherently costly and risky. This Settlement reduces this risk and provides the necessary funds and cooperation to fully continue litigating the case against the non-settling Defendants. In addition to a monetary payment, the Settlement will provide additional benefits to the members

of the class, including cooperation from Norampac as provided in the Settlement Agreement and discussed *supra* in the Cooperation section.

In sum, the Settlement Agreement: (1) provides substantial benefits to the class, (2) is the result of extensive good faith negotiations and was reached under the auspices of a very experienced and well-regarded mediator, (3) was entered into after extensive factual investigation and legal analysis, and (4) in the opinion of experienced Class Counsel, is fair, reasonable, and adequate to the proposed Settlement Class. Accordingly Class Counsel believe that the Settlement Agreement is in the best interests of the Proposed Settlement Class Members and should be preliminarily approved by the Court for the purposes of sending notice of the Settlement to the Proposed Settlement Class.[7]

## V.     THE PROPOSED  NOTICE TO THE CLASS

Federal Rule of Civil Procedure 23(e)(1) provides that "[t]he Court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  While the Court has discretion as to the form and content of the notice, the notice must meet certain due process requirements.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 172-177 (1974). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the [settlement] and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Notice must be given, moreover, "in a form and manner that does not systematically leave an identifiable group without notice." *Mendoza v. Tucson School District*, 623 F.2d 1338, 1351 (9th Cir. 1980) (quoting *Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 853 (9th Cir. 1976)). The content of the notice "may

---

[7] Class Counsel are not seeking fees from the Norampac Settlement at this time.

consist of a very general description of the proposed settlement" and should provide a fair recital of its terms. *Id.*

The content and proposed method of dissemination of notice in this case fulfill the requirements of Rule 23(e)(1) and due process. *See generally In re Prudential Ins. Co. America Sales Litig.*, 148 F.3d 283, 326-27 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999); *Mangone v. First USA Bank*, 206 F.R.D. 222, 233-234 (S.D. Ill. 2001); *In re Lithotripsy Antitrust Litig.*, No. 98 C 8394, 2000 WL 765086, at *1 (N.D. Ill. June 12, 2000); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. at 252-53. Plaintiffs propose sending the Mail Notice via first class mail, postage pre-paid, to all entities identified as potential members of the Class that are identifiable through reasonable effort, including through Defendants' sales records and through Plaintiffs' independent investigation. In addition, the Summary Notice will be published once in the national edition of *The Wall Street Journal*. *See, e.g.*, this Court's Order Preliminary Approving the PCA Settlement, Dkt. No. 634 (authorizing notice by First Class Mail and publication in *The Wall Street Journal*); *In re Aftermarket Filters Antitrust Litig.*, No. 08-CV-4883, Dkt. No. 1036 (N.D. Ill Nov. 8, 2012) (Order granting preliminary approval and authorizing notice by First Class Mail and publication in *The Wall Street Journal*). The Summary Notice will explain how additional information, including a copy of the Settlement Notice, can be obtained by a Class member.

The proposed notice will apprise Class Members of the material terms of the Settlement Agreement and outline the available procedures and related deadlines. These include the method for a Class Member to exclude itself from the Settlement Class or object to the terms of Settlement Agreement.

Further, the Mail Notice will advise the Class Members that Class Counsel may use the Settlement Fund: (a) to pay for reasonable expenses associated with the costs of giving notice and administration of the Settlement Fund; and (b) subject to Court approval, for payment of interim expenses incurred by Class Counsel for prosecution of the Action on behalf of the Class against non-settling Defendants. The Mail Notice will also advise Class Members that Co-Lead Counsel endorse the Settlement.

The notices will also inform Class Members of the date and place of the hearing at which the Court will consider final approval of the Settlement Agreement. Finally, the Settlement Administrator, Rust Consulting Inc. will provide the notices and other important documents on the website https://containerboardproductscase.com.

## VI.    CERTIFICATION OF THE SETTLEMENT CLASS

Before the Court can authorize notice to the Class Members, the Court must first determine that the Class should be certified for settlement purposes. Rule 23 permits certification of a class action for settlement purposes. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). Certification of a settlement class must satisfy each requirement set forth in Rule 23(a), as well as at least one of the separate provisions of Rule 23(b). *Id.* at 613-14. *See also In re Community Bank of Northern Virginia & Guaranty Nat'l Bank of Tallahassee Second Mortgage Loan Litig.*, 418 F.3d 277, 299 (3d Cir. 2005) ("certification of classes for settlement purposes only [is] consistent with Fed. R. Civ. P. 23, provided that the district court engages in a Rule 23(a) and (b) inquiry"). As demonstrated below, this action meets all of the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3) for settlement purposes.

### A.     <u>The Requirements of Rule 23(a) are Satisfied</u>

Rule 23(a) permits an action to be maintained as a class action if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Here, the Class numbers in the thousands; the issues with respect to the unlawfulness of Defendants' actions under Sherman Act § 1 are common to the claims of all members of the Class; the claims of the Plaintiffs arise from the same factual matrix and are based on the same legal theory as the claims of all Class Members and thus are typical of the claims of the Class Members; and the Plaintiffs and their counsel, who have extensive experience in class action and antitrust litigation, will fairly and adequately represent the Class.

### 1.     Numerosity

"There is no magic number which satisfies the numerosity requirement, and plaintiffs do not have to allege the precise number or identity of the class members." *In re Plastic Cutlery Antitrust Litig.*, No. 96-CV-728, 1998 WL 135703, at *2 (E.D. Pa. Mar. 20, 1998); *see also Levitan v. McCoy*, No. 00-C-5096, 2003 WL 1720047, at *3 (N.D. Ill. 2003). The requirement that joinder be impracticable does not mean that joinder is impossible, but "that it is extremely difficult or inconvenient to join all members of the class." *Levitan*, 2003 WL 1720047 at *3 (quoting C.A. Wright, A. Miller & N. Kane, FEDERAL PRACTICE AND PROCEDURE, § 1762 at 159 (2d ed. 1986)); *see also In re Fine Paper Antitrust Litig.*, 82 F.R.D. 143, 149 (E.D. Pa. 1979). Joinder is impracticable where, for example, there is "significant geographical distribution among the class members." *Id.* at 149-150; *see also Jerry Enters. of Gloucester County v. Allied*

*Bev. Group, L.L.C.*, 178 F.R.D. 437, 442 (D.N.J. 1998); *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 477 (W.D. Pa. 1999).

Here, the data produced by Norampac and information Plaintiffs' Counsel have developed show that Class Members number in the many thousands. The relevant commerce is many billions of dollars. Further, there is significant geographic dispersion among Class Members. The Class Representatives themselves are located in California, Illinois, Minnesota, Missouri, New Jersey, North Carolina, and Texas. Clearly, joinder of the numerous and geographically scattered Class Members is impracticable.

The Class thus satisfies Rule 23(a)(1).

## 2. Common Questions of Law and Fact

The commonality requirement "is easily met because it may be fulfilled by a single common issue." *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 205 (E.D. Pa. 2001); *see also In re Prudential*, 148 F.3d at 310 (commonality satisfied if named plaintiffs share at least one question of fact or law with prospective class). Here, there are numerous legal and factual issues common to members of the Class. These include, among others:

1. Whether Defendants participated in an unlawful conspiracy to fix, raise, maintain, and/or stabilize prices and allocate customers for Containerboard Products in violation of Sherman Act § 1;

2. The duration and extent of the unlawful conspiracy;

3. Whether Defendants' conduct in fact caused the Class's damages arising from their purchases of Containerboard Products; and

4. The appropriate measure of the Class's damages.

In antitrust cases such as this, courts have consistently held that claims for violations of the Sherman Act involve common questions that meet the requirements of Rule 23(a)(2). *See, e.g.*, *Amchem Prods.*, 521 U.S. at 609, 625 (recognizing that "Rule 23(a)(2)'s 'commonality'

18

requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement

that questions common to the class 'predominate over' other questions" and concluding that

"[p]redominance is a test readily met in certain cases alleging . . . violations of antitrust laws");

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528-29 (3d Cir. 2004) (where defendant

"engaged in a broad-based campaign, in violation of federal and state consumer fraud and

antitrust laws . . . allegations naturally raise several question of law and fact common to the

entire class"); *Southeast Mo. Hosp. v. C.R. Bard, Inc.*, No. 1:07-cv-0031 TCM, 2008 WL

4372741, at *6 (E.D. Mo. Sept. 22, 2008) (common questions of law or fact may be found in

antitrust case by scrutinizing conduct of defendant).

Accordingly, the Class satisfies Rule 23(a)(2).

### 3. Typicality

Typicality under Rule 23(a)(3) does not mean that the claims of the plaintiff and the

putative class members have to be identical. *See In re Prudential*, 148 F.3d at 311 (neither the

commonality nor the typicality requirement mandates that the claims be identical). Rather, a

"plaintiff's claim is typical if it arises from the same event or practice or course of conduct that

gives rise to the claims of other class members and his or her claims are based on the same legal

theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998).

Here, the claims of the proposed class representative Plaintiffs are typical because they

arise from the same events or course of conduct and are based on the same antitrust claims of

other Class Members — namely Defendants' alleged participation in an unlawful conspiracy to

fix, raise, maintain, and/or stabilize prices for Containerboard Products purchased in the United

States. *See Jerry Enters.*, 178 F.R.D. at 442 (typicality met where claim arises from the same

event or course of conduct that gives rise to the claims of the class members). All members of

the Class, including the class representative Plaintiffs, seek redress for the alleged overcharges they paid as a result of their having purchased Containerboard Products at supra-competitive prices that were allegedly artificially inflated by Defendants' alleged collusion. Because these are the same elements that both Plaintiffs and the other Class Members would have to prove separately if they bought individual actions, the typicality requirement of Rule 23(a)(3) is satisfied. *See In re Plastic Cutlery Antitrust Litig.*, 1998 WL 135703, at *4.

### 4. Adequacy

It is well established that named plaintiffs satisfy the adequacy requirements when they retain adequate counsel and do not have interests antagonistic to those of the class. *See In re Prudential*, 148 F.3d at 312 (quoting *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 800 (3d Cir. 1995) (testing qualifications of counsel)) and *Amchem Prods.*, 521 U.S. at 625 (uncovering conflicts of interest)).

Plaintiffs here are represented by experienced counsel thoroughly familiar with class action and antitrust litigation. Class Counsel appointed by the Court have served in leadership roles in numerous major antitrust and other class actions in courts throughout the United States.[8] In addition, there are no conflicts between the Plaintiffs and the members of the Class concerning the subject matter of this litigation. The Plaintiffs all purchased Containerboard Products, whose prices were affected by Defendants' conduct. The same is true of the Class Members, and thus, the Class representatives' interest in proving liability and damages is entirely aligned with that of Class Members. In addition, there are no conflicts between the Plaintiffs and the members of the Class concerning the subject matter of this litigation.

---

[8] *See* the firm biographies of Plaintiffs' Class Counsel submitted in connection with the motion to appoint lead counsel (Dkt. No. 100).

Class Counsel have diligently represented the interests of the Class in this litigation and will continue to do so. Accordingly, the requirements of Rule 23(a)(4), as well as the requirements of Rule 23(g)[9] relating to qualifications of class counsel, have been satisfied.

**B.      The Requirements of Rule 23(b)(3) are Satisfied**

Once it is determined that the proposed class satisfies Rule 23(a), a class should be certified under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, because questions of law or fact common to the Class clearly predominate over any individualized questions, and a class action is manifestly the superior method of adjudicating this controversy, the requirements of Rule 23(b)(3) are satisfied, and the Class should be certified.

Courts have repeatedly held that, in cases alleging antitrust violations, questions common to the members of the class will predominate over questions affecting only individual members. *In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 90-91 (S.D.N.Y. 1998) ("The common factual questions of the who, what, when, where, and how of the conspiracy, and the common legal questions of the application of the law . . . to the facts proven predominate over the individual

---

[9] Fed. R. Civ. P. 23(g)(1) provides that "[u]nless a statute provides otherwise, a court that certifies a class must appoint class counsel." Rule 23(g)(4) provides that "[a]n attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class." Rule 23(g)(1)(A) provides that "[i]n appointing class counsel, the court (i) must consider: the work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class; (ii) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class; (iii) may direct potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney fees and nontaxable costs; and (iv) may make further orders in connection with the appointment."

questions of whether the conspiracy caused each class member some injury."). *See, e.g.,* *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008) ("[T]he fact that damages may have to be ascertained on an individual basis is not, standing alone, sufficient to defeat class certification."); *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 94 (D. Conn. 2010) ("The need to prove actual losses individually incurred by each class member does not defeat predominance because differences in the amount and recoverability of individual damages do not necessarily make class actions unmanageable."); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig EPDM*, 256 F.R.D. 82, 103 (D. Conn. 2009) ("Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damages issues."); *In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374, 382 (S.D.N.Y. 1996) ("Courts have routinely held, however, that the need for individualized determinations of the putative class members' damages does not, without more, preclude certification of a class under Rule 23(b)(3)."); Moreover, the impact of the asserted antitrust violation, as well as the damages arising out of the misconduct, can be shown on a class-wide basis.

Finally, as numerous courts have held, a class action is a superior method of adjudicating multiple claims in cases like this one. Consequently, courts around the country have consistently certified class actions in such cases. *See, e.g., Kohen*, 244 F.R.D. at 480-81; *In re Natural Gas Commodities Litig.*, 231 F.R.D. 171, 185 (S.D.N.Y. 2005)*; J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.*, 225 F.R.D. 208, 220 (S.D. Ohio 2003); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 279, 284 (S.D.N.Y. 1999). Clearly, a class action is superior to other available methods for the fair and efficient adjudication of this controversy, given the prohibitive and wasteful expense of duplicative prosecution and trial of the claims of thousands of geographically dispersed Class Members on a non-class basis.

Accordingly, the *requirements* of Rule 23(b)(3), like those of Rule 23(a), are satisfied, and certification of the Class for purposes of settlement is appropriate.[10]

## VII.   THE REQUESTED PROCEDURES AND TIMETABLE

Class Counsel propose the following schedule to be reflected in the Court's order granting preliminary approval of the Settlement:

1. Within ten (10) days after the date of entry of the preliminary approval order Settlement Class Counsel shall designate Rust Consulting Inc. as the third-party Settlement Administrator to effectuate the Notice Plan and otherwise administer the Settlement.

2. Within forty-five (45) days after the date of entry of the preliminary approval order, the Mail Settlement Notice will be sent by first class mail to all potential Settlement Class members whom Class Counsel have identified.

3. Within thirty-five (35) days after the date of entry of the preliminary approval order or as soon thereafter as is feasible the Summary Notice shall be published once in the national edition of *The Wall Street Journal*.

4. Any requests for exclusion from the Settlement Class must be received no later than forty-five (45) days after the date of the sending of the notice.

5. Any objections to the Settlement, requests to be heard at the final approval hearing, or entry of a separate appearance for a member of the Class must be filed with the Court and served on Class Counsel and counsel for Norampac no later than forty-five (45) days after the date of the sending of the notice.

6. Class Counsel and/or Norampac may file with the Court any additional papers in support of approval of the Settlement Agreement fourteen (14) days before the final approval hearing.

7. Class Counsel shall file with the Court a motion for final approval of the Settlement Agreement fourteen (14) days before the final approval hearing.

8. Class counsel shall file with the Court affidavit(s) or Declaration(s) of the person(s) under whose general direction the mailing and publication of the

---

[10] In the Settlement Agreement, Norampac has agreed not to oppose class certification for settlement purposes only. *See* Settlement Agreement at ¶¶ 1 and 10.

Notices were made, showing that mailing and publication were made in accordance with the Order seven (7) days before the final approval hearing.

9. The Court will hold the final approval hearing pursuant to Rule 23(e) of the Federal Rules of Civil Procedure at _____ a.m./p.m. on _____, 2015 at 219 S. Dearborn St., Courtroom 1941, Chicago, Illinois 60604.

Submitted herewith for the Court's consideration is a [Proposed] Preliminary Approval Order which is consistent with the requests made herein.

## VIII. CONCLUSION

On the basis of the forgoing, Class Counsel respectfully request that Plaintiffs' Motion for Preliminary Approval of Proposed Settlement, Certification of Settlement Class, Authorization to Disseminate Notice, and Setting a Hearing on Final Settlement Approval be granted.

Dated: February 12, 2015    Respectfully Submitted,

*/s/ Michael J. Freed*
Michael J. Freed
Robert J. Wozniak
FREED KANNER LONDON & MILLEN LLC
2201 Waukegan Road, Ste. 130
Bannockburn, IL 60015
Tel: (224) 632-4500
Email: mfreed@fklmlaw.com

Daniel J. Mogin
THE MOGIN LAW FIRM, P.C.
707 Broadway, Ste. 1000
San Diego, CA 92101
Tel: (619) 687-6611
Email: dmogin@moginlaw.com

*Interim Co-Lead Class Counsel*