**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KLEEN PRODUCTS LLC, *et al*., individually and on behalf of all those similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:10-cv-05711 |
| v. | ) ) | Hon. Harry D. Leinenweber |
| INTERNATIONAL PAPER, *et al*., | ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT**

**Table of Contents**

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT ..................... i

I.   INTRODUCTION ...........................................................................................1

II.  BACKGROUND ...........................................................................................3

    A.  Summary of Plaintiffs' Allegations ......................................................3

    B.  Procedural History of the Litigation ....................................................4

III. THE SETTLEMENT ......................................................................................5

    A.  Negotiations and Terms of the Settlement Agreement .........................5

    B.  Release, Discharge, and Covenant Not to Sue......................................6

    C.  Cooperation...........................................................................................7

    D.  Mediation ..............................................................................................8

    E.  Notice of the Proposed Settlement........................................................8

IV.  ARGUMENT..................................................................................................9

    A.  The Proposed Settlement is Fair, Reasonable, and Adequate, and Should be Finally Approved by The Court.......................................................................9

        1.  The Standard for Approval ............................................................9

        2.  The Settlement is an Excellent Result for the Class ....................12

        3.  The Settlement Eliminates Norampac From the Case ..................14

        4.  No Objections to Final Approval of the Settlement and Few Requests for Exclusion.......................................................................................................14

        5.  The Settlement was Negotiated at Arm's-Length and is Not Collusive.......15

        6.  The Settlement was Negotiated by Experienced and Informed Counsel for the Class........................................................................................................16

        7.  Class Counsel Developed Extensive Factual Information............................17

V.   Conclusion ..................................................................................................17

**Table of Authorities**

**Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 07 CV 2898,
2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ..................................................................15

*Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305
(7th Cir. 1980) ..............................................................................................9, 10, 12

*Bell Atl. Corp. v. Bolger*, 2 F.3d. 1034 (3d Cir. 1993) .......................................................13

*Carson v. Am. Brands Inc.*, 450 U.S. 79 (1981) ................................................................10

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) .........................................10

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) .................................................................9

*Depoister v. Mary M. Holloway Found.*, 36 F.3d 582 (7th Cir. 1994) ..............................10

*E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884 (7th Cir. 1985) .......................9, 10

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) .................................................................9

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) .....................................11

*Goldsmith v. Tech. Solutions Co.*, No. 92-C-4374, 1995 WL 17009594
(N.D. Ill. Oct. 10, 1995) ............................................................................................15

*Hanrahan v. Britt*, 174 F.R.D. 356 (E.D. Pa. 1997) ..........................................................16

*In re AT&T Mobility Wireless Data Services Sales Tax Litig.*,
789 F. Supp. 2d 935 (7th Cir. 2006) .........................................................................12

*In re Corrugated Containerboard Antitrust Litig. (II)*, 659 F.2d 1322 (5th Cir. 1981) ....11

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*,
733 F. Supp. 2d 997 (E.D. Wisc. 2010) ....................................................................13

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631 (E.D. Pa. 2003) ...........................16

*In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379 (D. Md. 1983) .................15

*In re Packaged Ice Antitrust Litig.*, 08-MD-01952, 2010 WL 3070161
    (E.D. Mich. Aug. 2, 2010) ...........................................................................13

*In re Packaged Ice Antitrust Litig.*, 08-MD-01952, 2011 WL 717519
    (E.D. Mich. Feb. 22 2011) ...........................................................................11

*In re Processed Egg Products Antitrust Litig.*, 284 F.R.D. 278 (E.D. Pa. 2012) .............11

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v.
    Gen. Motors Corp.,* 497 F.3d 615 (6th Cir. 2007) ...........................................10

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996).......................................................9, 10, 12, 14

*Paper Sys. Inc. v. Nippon Paper Indus. C. Ltd.*, 281 F.3d 629 (7th Cir. 2002) ................13

*Redman v. RadioShack Corp.*, 11-C-6741, 2014 WL 497438
    (N.D. Ill. Feb. 7, 2014) ..........................................................................9, 12

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002) ....................................12

*Shy v. Navistar Int'l Corp.*, No. C-3-92-333, 1993 WL 1318607
    (S.D. Ohio May 27, 1993) ...........................................................................11

*Synfuel Tech., Inc. v. DHL Express, Inc.*, 463 F.3d 646 (7th Cir. 2006) ...........................12

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978 (7th Cir. 2002).................9

**Rules and Statutes**

Fed. R. Civ. P. 23(e) .......................................................................................9

15 U.S.C. § 1 ...............................................................................................13

28 U.S.C. § 1715(b) .......................................................................................15

**Other Authorities**

*Moore's Fed. Prac.* .......................................................................................11

*Wright & Miller, Fed. Prac. & Proc.* .............................................................10

## I.    INTRODUCTION

Plaintiffs entered into a Settlement Agreement with Defendant Cascades Canada, ULC and its subsidiary Norampac Holdings U.S., Inc. (collectively, "Norampac"), pursuant to which Norampac agreed to pay Four Million Eight Hundred Thousand Dollars ($4,800,000) to the Settlement Class. All of the settlement amount was placed into escrow and is earning interest. Pursuant to the Settlement, Norampac also agreed to provide certain cooperation to Plaintiffs. Notably, Norampac is the smallest defendant in this case, representing less than 1% of the U.S. market, though due to its larger share of the Canadian market it is the sixth largest integrated producer of Containerboard Products in North America.

Class Counsel executed the Settlement Agreement on behalf of Plaintiff Class Representatives[1], and a class of direct purchasers of Containerboard Products[2] in the United States from one or more of the Defendants[3] in this Action between February 15,

---

[1] Kleen Products LLC, R.P.R. Enterprises, Inc., Mighty Pac, Inc., Ferraro Foods, Inc., Ferraro Foods of North Carolina, LLC, MTM Packaging Solutions of Texas, LLC, RHE Hatco, Inc., and Chandler Packaging, Inc.

[2] "Containerboard Products" is defined in the Consolidated Amended Complaint filed November 8, 2010, (Dkt. No. 65) ("CAC") as "includ[ing] linerboard, corrugated medium, corrugated sheets and corrugated products including corrugated boxes and other corrugated containers."

[3] The Defendants are Georgia-Pacific ("GP"); Packaging Corporation of America ("PCA"); International Paper Company ("IP"); Cascades Canada, ULC/Norampac Holdings U.S., Inc. ("Norampac"); Weyerhaeuser Company ("Weyerhaeuser"); Temple-Inland, Inc. ("TIN"); and RockTenn CP, LLC (formerly known as Smurfit-Stone Container Corporation ("Smurfit")). On May 27, 2011, Smurfit was acquired by Rock-Tenn Company. To effect the acquisition, Smurfit was merged into a subsidiary of Rock-TennCompany. The surviving entity from the merger became RockTenn CP, LLC ("RockTenn"), a limited liability company and wholly owned subsidiary of Rock-Tenn Company. On June 16, 2011, the Court allowed RockTenn to be substituted as a defendant in place of Smurfit (Dkt. No. 205).

2004 and November 8, 2010.[4] On February 17, 2015 the Court entered an order conditionally certifying the Norampac Settlement Class and preliminarily approving the settlement. (Dkt. No. 864).

The Settlement is the result of extensive arm's-length and spirited negotiations by experienced and informed counsel on both sides. Class Counsel had numerous conversations with Norampac regarding settlement, ultimately entering into the Settlement as a result of a mediation conducted by former Magistrate Judge Morton Denlow. In reaching the Settlement, Class Counsel took into consideration an extensive amount of documents produced in the case; expert testimony; the testimony obtained through many depositions; consideration of the potential factual and legal risks and rewards; the costs to the Class and delays from continued litigation; and the immediate and certain benefits to the Class from the Settlement. Based on the foregoing, Class Counsel believe the Settlement is fair, adequate, and reasonable and warrants the Court's final approval.

The Norampac settlement is the second settlement reached between the parties in this litigation. On September 3, 2014, the Court entered an Order granting Plaintiffs' Motion for Final Approval of the Settlement between Plaintiffs and Defendant PCA in the amount of $17,600,000. (Dkt. No. 734).

In accordance with the provisions of the order preliminarily approving the settlement, Notice of the Norampac settlement was sent by the claims administrator, Rust Consulting, to more than 150,000 addresses. In response, not a single objection was made and only 34 class members chose to exclude themselves from the class.

---

[4] On March 26, 2015 the Court certified a litigation class with a class period of February 15, 2004 and November 8, 2010.

Significantly, the total amount of purchases made by the 34 class members who have excluded themselves from the Norampac settlement is far below the threshold under which Norampac could have terminated the settlement.

## II.     BACKGROUND

### A.     Summary of Plaintiffs' Allegations

Plaintiffs allege that Defendants, the largest integrated manufacturers of Containerboard Products in North America, engaged in an agreement, combination, or conspiracy to fix, raise, elevate, maintain, or stabilize prices of Containerboard Products sold in the United States by means of coordinated supply restrictions and collusive, lockstep price increase announcements. The CAC further alleges that the U.S. Containerboard Products industry has a history of anticompetitive conduct and acts of concealment.

The record evidence shows that while Norampac had a small percentage of the United States market, it sold approximately 25% of its external capacity to U.S. customers and was the sixth largest integrated producer of Containerboard Products in North America.

Plaintiffs believe that Norampac's participation in the conspiracy secured the conspiracy from arbitrage and imports from Canada. Further, Plaintiffs contend that, like the other Defendants, Norampac engaged in signaling and imposed supply restrictions. In addition, Norampac followed every price increase announcement by Defendants except one (April/May 2007).

**B.**     <u>Procedural History of the Litigation</u>

This class action lawsuit was commenced on September 9, 2010, with the filing of a complaint by Kleen Products, LLC, on behalf of all direct purchasers of Containerboard Products in the United States. Plaintiffs filed the CAC on November 8, 2010.

On January 14, 2011, Defendants filed motions to dismiss. On January 20, 2011, the Court appointed Freed Kanner London & Millen LLC and The Mogin Law Firm, P.C. to serve as Interim Co-Lead Counsel for the Proposed Class. On April 8, 2011, the Court entered a Memorandum Opinion and Order denying Defendants' motions to dismiss (Dkt. No. 193). On May 2, 2011, Defendants filed their Answers denying all material allegations (Dkt. Nos. 194-200). Over the next three years the parties engaged in extensive discovery, including review of millions of pages of documents and taking approximately 85 depositions. The parties also served and responded to additional written discovery, including interrogatories, requests for admission, and document requests.

On April 16, 2014, Plaintiffs moved for leave to file amendments to the CAC. (Dkt. No. 622). The amendments did not change or add a new claim or legal theory to this case, but merely amended the Class Period commencement date to February 15, 2004. The Court granted Plaintiffs' amendments to the CAC on May 13, 2014. (Dkt. No. 642) and Defendants (other than PCA) answered the Amended CAC on June 4, 2014. On October 23, 2014 Plaintiffs filed a second motion for leave to amend the CAC (Dkt. No. 777). The amendments clarified that Plaintiffs seek to hold Defendant RockTenn, formerly known as Smurfit-Stone, liable for Smurfit-Stone's post-bankruptcy conduct, and added allegations regarding the acquisitions by Defendant International Paper of

Defendants Weyerhaeuser and Temple-Inland. The Court granted Plaintiffs' amendments to the CAC on November 19, 2014 (Dkt. No. 806).

Fact discovery was substantially completed on December 1, 2014 and presently the parties are engaged in expert discovery on the merits.

On March 26, 2015, the Court granted Plaintiffs' Motion for Class Certification. (Dkt. No. 871). The Class definition and Class Period alleged in the amendments to the CAC and the class certification order are identical to the Class definition and Class Period for the Norampac Settlement. (Defendants filed a Petition for Permission to Appeal from the Order Granting Class Certification on April 9, 2015.)

Pursuant to the case management schedule, dispositive motions are to be filed by September 1, 2015, and briefing is to close on December 17, 2015. The case is set for trial on May 2, 2016.

A trier of fact will ultimately evaluate the positions of the parties with respect to the evidence in the case, but for purposes of this Motion, there is no question that the Settlement Agreement has been entered into on the basis of an extremely well-developed record.

## III.     THE SETTLEMENT

### A.     <u>Negotiations and Terms of the Settlement Agreement</u>

On February 17, 2015, the Court entered an Order (Dkt. No. 864) preliminarily approving the settlement with Norampac, conditionally certifying the settlement class, appointing class counsel for the settlement class, approving the notice plan, and setting a final approval hearing date. Since then, Norampac has deposited the $4,800,000 settlement amount into an escrow account at Huntington Bank. All interest earned on the

monies in escrow has been accruing for the benefit of the Settlement Fund (as described more fully in ¶¶ 16-17 of the Settlement Agreement). Norampac has also provided the agreed-upon cooperation pursuant to the Settlement Agreement.

### B. Release, Discharge, and Covenant Not to Sue

The Settlement provides that upon the Settlement Agreement becoming final, as defined in the Settlement Agreement at ¶ 11, all Plaintiffs (and all "Releasors" as defined in the Settlement Agreement at ¶ 5) shall release and discharge Norampac in accordance with the following release and discharge language in the Settlement Agreement:

> In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final as set out in Paragraph 11 of this Agreement, and in consideration of payment of the Settlement Amount, as specified in Paragraph 16 of this Agreement, into the Settlement Fund, and for other valuable consideration, Releasors shall be deemed to have, and by operation of the Final Order and Judgment shall have, fully, completely, finally, and forever released, acquitted, and discharged the Norampac Releasees from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may have on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated, asserted or unasserted, whether in law, in equity, or otherwise, claims, injuries, damages, whenever and however incurred (whether actual, punitive, treble, compensatory, or otherwise), liabilities of any kind, including costs, fees, penalties, or losses of any kind or nature, and the consequences thereof in any way arising out of or relating in any way to any act or omission of the Norampac Releasees (or any of them) concerning the manufacture, supply, distribution, sale or pricing of Containerboard Products up to the date this Agreement becomes final, as defined in Paragraph 11, including but not limited to any conduct alleged, and causes of action asserted or that could have been or could still be alleged or asserted, in any class action complaints filed in this or related Actions, including those arising under any federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, or trade practice law, (the "Released Claims"). Releasors shall not, after the date of this Agreement, seek to establish liability against any Norampac Releasee based, in whole or in part, upon any of the Released Claims or conduct at issue in the Released Claims. Nothing in this Agreement shall be construed to release any

6

other claims, including but not limited to the claims for product defect or personal injury.

(Settlement Agreement at ¶ 13.)

**C.**    <u>**Cooperation**</u>

Pursuant to the Settlement Agreement, Norampac agreed to provide the following cooperation to Plaintiffs in the prosecution of this Action: (i) providing Co-Lead Counsel with copies of all discovery (including, among other things, all documents, interrogatories, requests for admission, etc.) that Norampac produces to any other party in this Action; (ii) providing Co-Lead Counsel a certification regarding Norampac's compliance with Discovery; (iii) making available for interview, not to exceed seven (7) hours in aggregate, such persons as are most knowledgeable about its transactional data, excluding the data relating to Norampac's Thompson and Lancaster plants; (iv) providing Co-Lead Counsel with all non-privileged materials provided by Norampac to any expert or consultant engaged in conjunction with this Action that have not previously been produced to the Plaintiffs; (v) providing Co-Lead Counsel with a stipulation regarding the authentication of the Norampac documents specified therein and their status under FRE 803(6); (vi) producing for interview Charles Malo, Vice President and Chief Operating Officer Packaging, and Marc Andre Depin; CEO and (vii) upon reasonable notice, producing for testimony at trial up to one person within the control of Norampac, whom Co-Lead Counsel have cause to believe may have knowledge of facts related to Plaintiffs' claims as alleged in the Plaintiffs' Consolidated Amended Complaint or the then-operative complaint, selection of such persons to be subject to the consent of Norampac's counsel, which shall not be unreasonably withheld (Norampac agrees to bear reasonable travel expenses incurred by the witness). The parties and their counsel further

7

agreed that any statements made by Norampac's counsel in connection with and/or as part of the settlement shall be protected by FRE 408, and shall in no event be discoverable by any person or treated as evidence of any kind, unless otherwise ordered by a Court. (As described more fully in ¶¶ 24-28 of the Settlement Agreement).

As of the date of this Memorandum, Norampac has fulfilled the cooperation provisions of the settlement agreement.

### D.    Mediation

In reaching the Settlement Agreement which is being presented to the Court for final approval, the parties engaged in mediation with Morton Denlow, a former Magistrate Judge of the United States District Court for the Northern District of Illinois.

### E.    Notice of the Proposed Settlement

Pursuant to the order of preliminary approval, on or before April 3, 2015, class members were to be provided with mail notice and publication notice. As set forth in paragraphs 2 and 3 of the Freed Declaration and Exhibits 1 and 2 to the Freed Declaration, these obligations have been met. A list of direct purchasers was derived compiled by the Settlement Administrator, Rust Consulting, Inc. ("Rust"), from customer lists provided by Defendants. Rust mailed the settlement notice in the approved form to direct purchasers on a timely basis. *See* Exhibits 1 and 1-A to the Freed Declaration. In addition, the summary notice was timely published in *The Wall Street Journal* on March 3, 2015. *See* Exhibit 2 to the Freed Declaration. The Settlement Administrator has also created a website, www.containerboardproductscase.com, where Class Members can view the settlement notice and other related documents. *See* Exhibits 1 and 1-B to the Freed Declaration. Further, the Settlement Administrator has established an interactive

voice response system, accessible through a toll-free number, to provide information to class members seeking information about the settlement. *See* Exhibit 1 to the Freed Declaration.

## IV.   ARGUMENT

### A.   The Proposed Settlement is Fair, Reasonable, and Adequate, and Should be Finally Approved by The Court

#### 1.   The Standard for Approval

The standard for final approval of a class action settlement is whether the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e); *see Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002); *Isby v. Bayh*, 75 F.3d 1191, 1198-99 (7th Cir. 1996). There is an overriding public interest in settling litigation, and this is particularly true in class actions. *See Isby*, 75 F.3d at 1196 ("Federal courts naturally favor the settlement of class action litigation."); *accord Redman v. RadioShack Corp.*, 11-C-6741, 2014 WL 497438, at *3 (N.D. Ill. Feb. 7, 2014); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985), *cert. denied*, 478 U.S. 1004 (1986) (noting that there is a general policy favoring voluntary settlements of class action disputes); *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."), *overruled on other grounds*, *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Class action settlements minimize the litigation expenses of the parties and reduce the strain such litigation imposes upon already scarce judicial resources. *Armstrong*, 616 F.2d at 313 (*citing Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).

Evaluation and approval of the Settlement is committed to the sound discretion of the Court. The proper focus "is upon 'the general principles governing approval of class action settlements' and not upon the 'substantive law governing the claims asserted in the litigation.'" *Isby*, 75 F.3d at 1197, quoting *Armstrong*, 616 F.2d at 315. The Court has wide latitude in making this determination. There is "no requirement that an evidentiary hearing be conducted as a precondition to approving a settlement in a class action suit." *Depoister v. Mary M. Holloway Found.*, 36 F.3d 582, 586 (7th Cir. 1994). Therefore, the Court "may limit the fairness hearing to whatever is necessary to aid it in reaching an informed, just and reasoned decision" and should not resort to a full-blown trial on the merits. *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.,* 497 F.3d 615, 635 (6th Cir. 2007) (internal quotation marks and citation omitted).

The Court's inquiry "is limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby*, 75 F.3d at 1196. Because the very point of compromise is to avoid determining unsettled issues and the waste and expense of litigation, the court does not "decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands Inc.*, 450 U.S. 79, 99 n.14 (1981). *See also E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d at 889 (the district court is to "refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights"), *cert. denied*, 478 U.S. 1004 (1986); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2d Cir. 1974) (the trial court does not "have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute"); 7B Wright & Miller, Fed. Prac. & Proc. at § 1797.5 ("the

court may not try disputed issues in the case since the whole purpose behind a compromise is to avoid a trial . . . . Rather the judge is restricted to determining whether the terms proposed are fair and reasonable.").

There is not a particular amount that is reasonable in a case, but rather there is "a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (internal quotation marks and citation omitted). "A just result is often no more than an arbitrary point between competing notions of reasonableness." *In re Corrugated Containerboard Antitrust Litig. (II)*, 659 F.2d 1322, 1325 (5th Cir. 1981). Thus, "[i]t is neither required, nor is it possible for a court to determine that the settlement is the fairest possible resolution of the claims of every individual class member; rather, the settlement, taken as a whole, must be fair, adequate and reasonable." *Shy v. Navistar Int'l Corp.*, No. C-3-92-333, 1993 WL 1318607, at *2 (S.D. Ohio May 27, 1993). *See also* 5 MOORE'S FED. PRAC. at § 23.164[2] "a proposed settlement may be fair and adequate even though it amounts to only a fraction of the potential recovery in a fully litigated case").

In evaluating whether a proposed settlement is fair, reasonable, adequate, and should be granted final approval, the Seventh Circuit has established the following as appropriate considerations: (1) the strength of the case for plaintiffs, balanced against the amount offered in settlement; (2) the defendant's ability to pay; (3) the complexity, length, and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of class members

to the settlement; (7) the opinion of competent counsel; and (8) the stage of the proceedings and the amount of discovery completed. *Armstrong*, 616 F.2d at 314. In this case, each of these factors supports final approval of the Settlement or in one instance is neutral.[5]

### 2.     The Settlement is an Excellent Result for the Class

To evaluate the settlement's fairness, a court must make some effort "estimating the range of possible outcomes and ascribing a probability to each point on the range." *Isby,* 75 F.3d at 1199 (*citing Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284-85 (7th Cir. 2002))*, accord* Redman, 2014 WL 497438, at *3. "The uncertain nature of the legal issues implicated by proceeding to trial makes it difficult to calculate a precise probability of success." *In re AT&T Mobility Wireless Data Services Sales Tax Litig.,* 789 F. Supp. 2d 935, 963 (citing *Synfuel Tech., Inc. v. DHL Express, Inc.,* 463 F.3d 646, 653 (7th Cir. 2006)).

The Settlement reached here is the product of intensive settlement negotiations and was reached after a mediation before former Magistrate Judge Morton Denlow. The amount of the settlement is substantial when viewed in light of the fact that Normapac's sales represent only about 0.8% of the U.S. market for Containerboard Products, although it was larger in Canada. The PCA settlement was for $17.6 million for 6% of the U.S. market – nearly $3 million per percentage of the market. The Norampac settlement is approximately $5 million for less than one percent of the market which is more than double the PCA settlement on the basis of the percentage of the market. Further, like the PCA settlement, the Norampac Settlement does not affect the potential full recovery of

---

[5] Settling Defendant Norampac's ability to fund the Settlement is neutral, since Norampac clearly has the ability to pay a judgment in this case.

damages for the Class under the antitrust laws in light of the fact that: (a) Norampac's U.S. sales will remain in the litigation as part of the settlement, and (b) under the provisions of Section 1 of the Sherman Act, 15 U.S.C. § 1, the remaining Defendants will continue to be jointly and severally liable for any judgment which may be entered in this litigation in favor of the Plaintiffs. *See Paper Sys. Inc. v. Nippon Paper Indus. C. Ltd.*, 281 F.3d 629, 632 (7th Cir. 2002) ("…each member of a conspiracy is liable for all damages caused by the conspiracy's entire output.").

Until entering into the settlement, Norampac forcefully contested all aspects of the case. While Plaintiffs believe that their case is strong, any complex litigation matter is inherently costly and risky. This Settlement reduces this risk and provides additional funds for Plaintiffs to continue the litigation against the non-settling Defendants. Along with a monetary benefit, the Settlement has provided additional benefits to the members of the class through cooperation from Norampac as provided in the Settlement Agreement and discussed *supra* in the Cooperation section. In this regard see *In re Packaged Ice Antitrust Litig.*, 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010) ("Courts approving partial settlements in antitrust class actions recognize the significant value of cooperation."); *In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d 997, 1009 (E.D. Wisc. 2010) (recognizing the value of such provisions); *Bell Atl. Corp. v. Bolger*, 2 F.3d. 1034, 1311 (3d Cir. 1993) ("Despite the difficulties they pose to measurement, non-pecuniary benefits . . . may support a settlement.").

As previously noted, these benefits have been achieved without any reduction to the full potential recovery for the Class because: (a) Norampac's sales will remain in the

litigation as part of the Settlement and (b) under Section 1 of the Sherman Act, 15 U.S.C. § 1, the remaining Defendants will continue to be jointly and severally liable for any judgment which may be entered in favor of the Plaintiffs.

In sum, the Settlement Agreement: (1) provides substantial benefits to the Class, (2) is the result of extensive good faith negotiations and was reached under the auspices of a very experienced and well-regarded mediator, (3) was entered into after extensive factual investigation and legal analysis, and (4) in the opinion of experienced Class Counsel, is fair, reasonable, and adequate to the proposed Settlement Class. Accordingly, Class Counsel believe that the Settlement Agreement is in the best interests of the Proposed Settlement Class Members and should be approved by the Court.

### 3. The Settlement Eliminates Norampac From the Case

In determining the fairness of a settlement, courts also consider "the likely complexity, length and expense of the ligation." *Isby*, 75 F.3d at 1196. The Settlement with Norampac removes a well-represented but small adversary from this case, thereby eliminating, motions for summary judgment or partial summary judgment, and trial.

### 4. No Objections to Final Approval of the Settlement and Few Requests for Exclusion

As described above, Class Members were notified of the Settlement by direct mailing and publication notice in *The Wall Street Journal*. Further, communications with Class Members were facilitated by the creation of the website www.containerboardproductscase.com and a toll-free telephone hotline (1-888-764-8864). *See* Exhibit 1 to the Freed Declaration. Rust Consulting mailed 158,190 notices to potential Class Members by first-class mail.

14

Out of more than 150,000 entities that were sent mail notice, there was not a single objector to the Settlement. There have been thirty four (34) requests for exclusion from the Settlement, a remarkably small number in light of the more than 150,000 mailed notices. *See* Exhibit 1-C to the Freed Declaration.  A number of these requests were filed by Canadian purchasers that are almost certainly not within the Class definition. By any measure the number of opt-outs and the amount of Class Member's purchases represented by them is insignificant.

 This exceptionally small number of opt-outs attests to the fairness of the Settlement, particularly since most of the Class Members are businesses and have the necessary resources and counsel to fully vet the Settlement. *See Am. Int'l Grp., Inc. V ACE INA Holdings, Inc.*, 07 CV 2898, 2012 WL 651727, at *6 (N.D. Ill. Feb. 28, 2012), appeal dismissed, 710 F.3d 754 (7th Cir. 2013) (noting that a lack of opposition is particularly meaningful where class members include sophisticated companies).

In addition to the foregoing, counsel for Norampac has advised class counsel that it has complied with 28 U.S.C. § 1715(b), by providing notice of the Settlement to the appropriate Federal and State officials on a timely basis. *See* Exhibit 3 to the Freed Declaration.

### 5.    The Settlement was Negotiated at Arm's-Length and is Not Collusive

The requirement that class action settlements be fair is designed to protect against collusion among the parties. *See In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1383 (D. Md. 1983) (on preliminary approval). When negotiated at arm's-length a proposed settlement is presumptively fair and reasonable. *See Goldsmith v. Tech. Solutions Co.*, No. 92-C-4374, 1995 WL 17009594, at *3 n.2 (N.D. Ill. Oct. 10, 1995).

Thus, a settlement proposed by experienced counsel as the result of arm's-length negotiations is entitled to deference by the court. *See, e.g., Goldsmith*, 1995 WL 17009594, at *3 n.2; *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." (*quoting Hanrahan v. Britt*, 174 F.R.D. 356, 366 (E.D. Pa. 1997)). The initial presumption in favor of such a settlement reflects courts' understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness concerns of Rule 23(e).

The negotiations leading to the Settlement were adversarial, yet professional. Counsel for both parties are highly experienced litigators who have negotiated numerous class action and other antitrust settlements before the present Settlement was achieved. The fact that the settlement was reached after a full-day mediation session led by former Magistrate Judge Morton Denlow, also demonstrates that the parties were not acting collusively.

### 6. The Settlement was Negotiated by Experienced and Informed Counsel for the Class

The Class Counsel who negotiated the Settlement are highly experienced antitrust and class action lawyers.[6] These attorneys have served as lead or co-lead counsel in numerous other class cases around the country and as executive committee members in many more. They have achieved major settlement recoveries in the many cases they have led. Their credentials were known to the Court when they were appointed by the Court as Co-Lead Counsel for the Class.

---

[6] *See* the firm biographies of Interim Class Counsel submitted in connection with the motion to appoint lead counsel (Dkt. No. 100).

In reaching the Settlement, these experienced counsel took into account the numerous legal issues presented by this case and evaluated both the strengths and the various risks presented by these issues.

### 7.    Class Counsel Developed Extensive Factual Information

As previously mentioned, extensive merits discovery closed on December 1, 2014. Numerous Rule 30(b)(6) and substantive depositions were taken including depositions of the parties' experts relating to class certification and plaintiffs' experts on the merits.

This Court has also granted Plaintiffs' motion for class certification, which was supported by two experts' reports and substantial material in support of these reports. As the Court noted in its order certifying the class, "the parties [] submitted an avalanche of briefing and opposing expert reports that set forth the parties' positions on the issues. Included in this briefing are thousands of pages of documents substantiating the parties['] arguments."  Order at p.6. Thus, in negotiating the Settlement, Class Counsel were well informed about the factual, economic, and legal issues of the case.

## V.    Conclusion

For all of the reasons stated in Plaintiffs' Motion for Preliminary Approval, (Dkt. No. 857), which is incorporated herein by reference, and for the additional reasons stated herein, Plaintiffs seek the Court's final approval of the Norampac Settlement. Prior to the final approval hearing, Plaintiffs' counsel will submit a form of Final Order and Judgment for the Court's consideration.

Dated: May 7, 2014

Daniel J. Mogin
THE MOGIN LAW FIRM, P.C.
707 Broadway, Ste. 1000
San Diego, CA 92101
Tel: (619) 687-6611
Email: dmogin@moginlaw.com

Respectfully submitted,

*/s/ Michael J. Freed*

Michael J. Freed
Robert J. Wozniak
FREED KANNER LONDON &
MILLEN LLC
2201 Waukegan Road, Ste. 130
Bannockburn, IL 60015
Tel: (224) 632-4500
Email: mfreed@fklmlaw.com

*Interim Co-Lead Class Counsel*