**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KLEEN PRODUCTS LLC, *et al.*, individually and on behalf of all those similarly situated,<br><br>   Plaintiffs,<br><br>  v.<br><br>INTERNATIONAL PAPER, *et al.*,<br><br>   Defendants. | Case No. 1:10-cv-05711<br><br>Hon. Harry D. Leinenweber |

**PLAINTIFFS' REPORT ON FIRST DISTRIBUTION OF SETTLEMENT FUNDS AND MOTIONS FOR ORDER APPROVING: (1) DEADLINE FOR OBJECTIONS TO FINAL DETERMINATION OF QUALIFIED CLAIMS, ALLOWED CLAIMS, ALLOWED PURCHASES, AND PAYMENT AMOUNTS TO QUALIFIED CLAIMANTS; (2) ADOPTION OF PREVIOUSLY APROVED PLAN OF DISTRIBUTION TO PCA AND NORAMPAC SETTLEMENT FUNDS, CONSOLIDATION OF ESCROW ACCOUNTS, FINAL PAYMENT OF SETTLEMENT ADMINISTRATION FEES, AND PAYMENT OF INCOME TAXES; (3) REIMBURSEMENT OF UNPAID CLASS COUNSEL EXPENSES; (4) AWARD OF ATTORNEYS' FEES FROM PCA AND NORAMPAC SETTLEMENTS; (5) PAYMENT OF INCENTIVE AWARDS TO CLASS REPRESENTATIVES; (6) FINAL DISTRIBUTION OF BALANCE OF THE COMBINED SETTLEMENT FUNDS; <u>AND (7) FORMS AND METHODS OF NOTICE TO QUALIFIED CLAIMANTS</u>**

Having completed an initial distribution of $166,583,868.75 to the Class from the $354 million Settlement with Defendants International Paper Company, Temple-Inland LLC/TIN LLC, and Weyerhaeuser Company ("Three-Defendant Settlement"), pursuant to the Court's Final Approval Order dated October 17, 2017 (ECF No. 1411), Plaintiffs now submit this pleading to report on that distribution, and to move the Court for an Order approving: (1) a deadline for objections to the final determination of qualified claims, allowed claims, allowed purchases, and payment amounts to qualified claimants; (2) adoption and application of the previously approved plan of distribution (ECF No. 1382) for the Three-Defendant Settlement to the distribution of funds from the earlier combined settlements of $22.4 million with Packaging Corporation of America ("PCA") and Cascades Canada ULC/Norampac Holdings U.S., Inc. (collectively "Norampac"), consolidation of the two existing settlement escrow accounts, final payment of settlement administration fees, and payment of income taxes; (3) reimbursement of unpaid Class Counsel expenses; (4) an award of attorneys' fees from the PCA and Norampac Settlements; (5) payment of incentive awards to the Class Representatives; (6) final distribution of the balance of the combined settlement funds; and (7) forms and methods of notice to the Qualified Claimants.[1]

**I. Initial Distribution from Three-Defendant Settlement, Request to Set Deadline for Objections to Final Determination of Qualified Claims, Allowed Claims, Allowed Purchases, And Payment Amounts to Qualified Claimants, Status of Combined Settlement Funds, and Request to Consolidate Escrow Accounts and Make Certain Payments**

As set forth in the accompanying Declaration of Steven J. Straub Regarding Distribution ("Straub Decl."), the Court-designated Claims Administrator A.B. Data, Ltd. made a first

---

[1] On December 7, 2018, a three-judge panel of the Seventh Circuit Court of Appeals upheld this Court's summary judgment ruling in favor of Defendants Georgia-Pacific LLC and WestRock CP, LLC. Plaintiffs do not intend to further appeal the Seventh Circuit ruling. In addition, under the terms of the Three-Defendant Settlement Agreement (ECF No. 1351-1 at p. 14), the Pretrial Period (defined therein) expired on October 17, 2018, thereby nullifying the Reduction Clause (also defined therein). Accordingly, Plaintiffs now seek Court approval of all the motions set forth herein to bring this case to its final conclusion.

distribution of $166,583,868.75 to Qualified Claimants. To effectuate this distribution, A. B. Data: (1) disseminated Notice; (2) served as the central contact point for Class Member inquiries, communications, and claims; (3) received, reviewed and processed Claim Forms; (4) calculated each Qualified Claimant's share of the net Three-Defendant Settlement Funds; and (5) distributed funds pursuant to those calculations. *See* Straub Decl., ¶¶ 4-5. The Straub Declaration includes detailed information on each of the steps taken by A.B. Data.

Pursuant to the Plan of Distribution approved by the Court on October 17, 2017 (ECF No. 1411), A.B. Data, supervised by Co-Lead Counsel, also made determinations regarding each claimant's eligibility ("Allowed Claimants" and "Allowed Claims"), their Allowed Purchases, and *pro rat*a Payment Amounts to Allowed Claimants. As described in the Straub Declaration, claim forms sent to Class Members were pre-populated with purchase amounts based on Defendants' records produced in discovery. Claimants had the option to (1) accept the pre-populated amounts, (2) attempt to amend the claim form's pre-populated amounts supported by full documentation of the revised amounts,[2] or (3) download general claim forms that were not pre-populated, calculate their own purchase amounts and submit full supporting documentation. *See* Straub Decl., ¶ 6. A.B. Data examined each submitted claim form, communicated with claimants, and ultimately determined Allowed Claimants, Allowed Claims, Allowed Purchases and Payment Amounts.

---

[2] The Claim Form (ECF No. 1409-1, Exhibits 4A-C) approved by the Court (ECF No. 1411) described acceptable proof of purchase documentation for claimants who did not accept the pre-populated amounts: "Claimants that believe that these [pre-populated] amounts are not correct for any reason may strike out the amounts below and indicate the correct amounts. If the amounts below are struck, new amounts entered must be supported with proof of purchase documentation indicating the total purchases for which you are submitting a claim. Supporting documentation should include the product name, number of units, date of purchase, defendant purchased from, and net purchase amount." Co-Lead Counsel instructed A.B. Data not to accept non-compliant documentation. Affidavits and declarations were not accepted as proof of purchase documentation.

The Straub Declaration recommends that the Court approve A.B. Data's administrative determinations in connection with the first distribution to: (a) accept late claims received from Class members by July 15, 2018, perfected claims received between July 15, 2018 and September 25, 2018, and all corrective correspondence received by September 25, 2018; and (b) reject as untimely all deficient claims received after July 17, 2018 and any other claims or corrective correspondence received after September 25, 2018. *See id.*, ¶ 16.[3] To implement these recommendations, Co-Lead Counsel ask that the Court set a deadline of 35 days after publication and mailing of notice to Qualified Claimants for objections to these administrative determinations regarding Allowed Claims, Allowed Purchases and Payment Amounts to Qualified Claimants. Co-Lead Counsel further propose that they respond to any such objection no later than 14 days after the deadline and that the Court set a hearing date 60 days after publication and mailing of notice.

As of this filing, after the first distribution and payment of previously awarded attorneys' fees from the Three-Defendant Settlement, the remaining balance in that Fund is $82,888,560.88 and the balance in the PCA/Norampac Settlement Fund is $14,078,111.36 after deducting advancements of expenses previously approved by the Court. *See* accompanying Joint Declaration of Michael J. Freed and Daniel J. Mogin ("Joint Decl."), ¶ 6. The funds from the Three-Defendant Settlement and the PCA/Norampac Settlement presently are maintained in separate interest-bearing escrow accounts managed by the settlement escrow agent, The Huntington National Bank. *See id.*, ¶ 7. For efficiency purposes and to simplify the proposed distribution, Plaintiffs seek leave to combine those funds into a single escrow account. Plaintiffs also seek leave to pay income taxes

---

[3] The A.B. Data recommendations along with other administrative relief sought in this pleading will be included in a proposed Order submitted to the Court.

3

on the interest earned in those accounts and additional settlement administration fees from the remaining combined Settlement funds. *See id.*, ¶ 8. In addition to work previously performed by A. B. Data (*see* ECF Nos. 1435, 1439), A.B. Data continues to expend significant time and resources in administering a complex claims process involving over 150,000 Class members. A.B. Data currently has $142,857.29 in unpaid invoices for work performed since August 1, 2018 and will incur additional, though substantially less, expense to complete the claims administration process. *See id.*, ¶ 9. Plaintiffs seek leave to pay both current and future A.B. Data invoices from the remaining combined Settlement proceeds.

## II. Request for Reimbursement of Attorney Expenses

To date, Class Counsel have not requested or received reimbursement of any expenses advanced in support of the litigation. By this motion, Class Counsel seek reimbursement from the combined Settlement Funds of $4,097,184.26 for litigation expenses reasonably incurred in connection with commencing and prosecuting this lawsuit. *See id.*, ¶ 10.

Courts regularly award reimbursement of such expenses. *See Spicer v. Chicago Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1256 (N.D. Ill. 1993) (detailing and awarding expenses incurred during litigation); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.") (quoting *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 192 (E.D. Pa. 2000) ("Counsel for each firm has submitted an affidavit attesting to the unreimbursed expenses paid out, and the court sees no reason to disallow any particular category or claim.").

A portion of Class Counsel's total expenses in litigating this case were advanced pursuant to prior Motions granted by the Court.[4] The unreimbursed expenses, detailed more fully in the Joint Declaration[5] reflect primarily: (1) pre-filing investigation; (2) experts and consultants fees and related expenses, including preparing experts for deposition; (3) maintenance of Plaintiffs' document database and other e-discovery related expenses; (4) deposition costs; (5) transcript fees; (6) litigation strategy conferences with experts and among Plaintiffs' counsel; (7) travel for Court-ordered hearings; and (8) costs related to court filings, including filing fees, copying and mailing expenses. Joint Decl. ¶ 10. These expenses were critical in achieving the excellent result obtained for the Class and were fully justified in light of the demands of complex antitrust litigation. Accordingly, Class Counsel ask that their remaining unreimbursed expenses be paid from the combined Settlement Funds.

### III. Request for Attorneys' Fees from the PCA and Norampac Settlement Funds

On September 3, 2014 and May 21, 2015, the Court granted final approval to the $17.6 million settlement with PCA (ECF No. 734) and the $4.8 settlement with Norampac (ECF No. 902), respectively. The PCA settlement included an additional sum of $100,000 for the cost of providing Notice to the Class and both settlements included cooperation clauses (see ECF No. 734 at 2; ECF No. 902 at 2). To date, Class Counsel have not requested any award of fees from the

---

[4] In addition to the initial distribution of $166,583,868.75 to the Class, the Court previously entered Orders authorizing Co-Lead Counsel to use up to $200,000 from the Three-Defendant Settlement to pay for providing Notice to Class Members and related administrative costs (ECF No. 1373), granting three Motions seeking a total of $8.5 million in advancements of litigation expenses (*see* ECF Nos. 750, 767/770, 989, 992, 1038, 1052), and approving two requests (for $413,256.83 and $152,135.54 respectively) to reimburse claims administration fees and expenses incurred by A.B. Data (*see* ECF Nos. 1435, 1437, 1439, 1442).

[5] All Class Counsel firms submitted to Co-Lead Counsel individual Declarations under oath setting forth the amount of their respective unreimbursed expenses and the work each of them performed in litigating this matter. As noted in the Joint Declaration, those individual law firm Declarations can be provided to the Court upon request.

5

PCA and Norampac Settlements. For all of the reasons set forth in their prior petition for attorneys' fees from the Three-Defendant Settlement (ECF No. 1383), Plaintiffs believe that an award of $6.37 million in attorneys' fees from the combined PCA and Norampac Settlements is fair, reasonable, and well within the market rate for complex antitrust cases. The requested attorneys' fees of $6.37 million are equal to 30% of the combined PCA/Norampac Settlement Funds ($6.72 million), reduced by $350,000, which is the total amount of incentive awards requested for the Class Representatives, as more fully discussed below. The requested effective fee percentage is therefore 28.4%.

The work performed by counsel in litigating this case is described in great detail in their prior petition (ECF No. 1383 at pp.3-9) and accompanying declarations (ECF Nos. 1383-2, 1383-3, 1383-4). As set forth in those submissions, Class Counsel are well-deserving of the requested additional fees. Indeed, under the lodestar/multiplier analysis described in Plaintiffs' prior fee petition (*see* ECF No. 1383 at pp. 21-23), even with additional fees of $6.37 million added to the $106.2 million in fees awarded from the Three-Defendant Settlement, total attorneys' fees would still represent a multiplier of only 1.13 times the total Class Counsel lodestar based on historic hourly rates since inception of this case. Class Counsel, particularly Co-Lead Counsel, also spent significant time since the prior fee petition cutoff date of July 31, 2017, primarily related to the appeal of this Court's summary judgment ruling and administration of the Three-Defendant Settlement. *See* Joint Decl. ¶¶ 11-15.

### IV.  Incentive Awards for the Class Representatives Are Justified and the Amount Requested Is Reasonable

Class Counsel also petition the Court to approve incentive awards of $50,000 for each of the Class Representatives[6] in this matter. The Class Representatives spent hundreds of hours

---

[6] If approved by the Court, named Plaintiffs Ferraro Foods of North Carolina, LLC and Ferraro Foods, Inc. will receive a single award of $50,000.

6

prosecuting this matter and their efforts were critical to the successful result achieved for the Class. Although the Class Representatives' respective recoveries are comparatively small, each of them devoted significant resources to the case. They took seriously their responsibilities as "private attorneys general" enforcing the antitrust laws, and each made a significant investment of time and assumed potential risks. *See id.*, ¶ 17. The requested incentive awards collectively amount to less than 0.1% of the total recovery to the Class and individually are *de minimis*.

"Incentive awards are justified when necessary to induce individuals to become named representatives." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722-23 (7th Cir. 2001). In determining whether such awards are appropriate, "relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); *Spicer v. Chicago Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1267 (N.D. Ill.1993).

Here, incentive payments of $50,000 to each of the Class Representatives are reasonable and appropriate. All seven Class Representatives provided essential assistance by locating and producing responsive documents and information, participating in teleconferences and meetings with counsel, making employees available to counsel, preparing for and sitting for multiple depositions, and regularly reviewing document retention policies to ensure compliance with preservation obligations. The Class Representatives did so with the understanding that their individual recoveries were likely to be relatively small, but that their investment of significant time and resources would benefit the Class. Moreover, the Class Representatives undertook this effort despite the fact that they remained dependent upon Defendants for the purchase of Containerboard Products throughout the litigation. *See* Joint Decl., ¶ 18.

7

## V. Request to Make Final Distribution to the Class

Following payment of all the items mentioned above, Plaintiffs propose distributing the balance of the combined Settlement funds to the Class pursuant to the same plan of distribution (ECF No. 1382) as was previously approved by the Court (ECF No. 1411) and implemented by A.B. Data with respect to the first distribution of funds from the Three-Defendant Settlement.

## VI. Request to Approve Forms and Method of Notice to Qualified Claimants

Co-Lead Counsel propose to provide notice to Qualified Claimants both by mail and by publication advising them of what has transpired in the case since the last notice, the deadline for objections to the initial determinations of Allowed Claims, Allowed Purchases and Payment Amounts, and the request for additional attorneys' fees, reimbursement of expenses and Class Representative incentive awards. Individual Notice (the "Mail Notice") will be sent via first class mail to all entities already identified by A.B. Data as Qualified Claimants. *See* proposed Mail Notice attached hereto as Exhibit A. Co-Lead Counsel also propose to provide summary notice by publication in the national edition of *The Wall Street Journal* ("Summary Notice"). *See* proposed Summary Notice, attached hereto as Exhibit B. A.B. Data will also publish the notices on the website www.containerboardproductscase.com.

## **CONCLUSION**

For the reasons stated above, Plaintiffs respectfully ask that the Court grant the requested relief and allow Co-Lead Counsel to bring this matter to its final conclusion.

Dated: January 25, 2019

Respectfully submitted,

/s/ *Michael J. Freed*

| | |
|---|---|
| Daniel J. Mogin | Michael J. Freed |
| Jodie Williams | Robert J. Wozniak |
| MOGINRUBIN LLP | FREED KANNER LONDON & |
| One America Plaza | MILLEN LLC |
| 600 West Broadway, Suite 3300 | 2201 Waukegan Road, Ste. 130 |
| San Diego, CA 92101 | Bannockburn, IL 60015 |
| Tel: (619) 687-6611 | Tel: (224) 632-4500 |
| dmogin@moginrubin.com | mfreed@fklmlaw.com |
| jwilliams@moginrubin.com | rwozniak@fklmlaw.com |

*Co-Lead Class Counsel*